Mette H. Kurth (SBN 187100)
Andy S. Kong (SBN 243933)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:   213.629.7400
Facsimile:    213.629.7401
E-mail:       kurth.mette@arentfox.com
              kong.andy@arentfox.com

*Proposed* Attorneys for Debtors and Debtors in
Possession

Debtors' Mailing Address
121 Gray Avenue
Santa Barbara, CA 93101

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA BARBARA DIVISION

| | |
|---|---|
| In re:<br><br>**THE WALKING COMPANY**, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes, f/k/a TWC Acquisition Corporation,<br><br>          Debtor. | Case No.:   9:09-bk-15138-RR<br><br>Chapter 11<br><br>**EMERGENCY MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 363, 1107 AND 1108 AUTHORIZING (1) MAINTENANCE OF EXISTING BANK ACCOUNTS, AND (2) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hearing**<br><br>DATE:    TBD<br>TIME:    TBD<br>PLACE:   1415 State Street<br>             Santa Barbara, CA 93101 |

- 1 -

LA/213863.5

1    **TO THE HONORABLE ROBIN L. RIBLET, UNITED STATES**

2    **BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE;**

3    **THE DEBTORS' SECURED LENDER; THE DEBTORS' 20 LARGEST**

4    **UNSECURED CREDITORS; THE BANKS IDENTIFIED HEREIN; AND ALL**

5    **PARTIES ENTITLED TO SPECIAL NOTICE.**

6        The Walking Company ("TWC")[1] hereby moves this Court, on an emergency

7    basis, for entry of an order authorizing the maintenance and continued use of the

8    Company's existing bank accounts and cash management system.[2]

9        The Company currently maintains its accounts (the "Accounts") with the banks

10   listed on Exhibit 1 hereto (the "Banks"). If the Company is required to close the Accounts

11   and open new accounts, it will disrupt the Company's cash flow, which is essential for the

12   operation of the Company's business, and increase the work of the Company's accounting

13   personnel, who are already dealing with the many and varied issues related to these

14   chapter 11 cases. As well, there is no practical justification for requiring that the

15   Company close its processing accounts with the credit card companies, which process

16   credit card charges that relate to many of the Company's sales. Closing the Accounts and

17   opening new accounts would needlessly cost the Company time and money with no

18   discernible benefit to the estates at a time when they are trying to conserve both.

19       As set forth in detail in the annexed Memorandum of Points and Authorities, there

20   are good and sufficient grounds for granting this Motion pursuant to Bankruptcy Code

21   sections 363, 1107, and 1108. The Company is requesting that the Court set the hearing

22   on this Motion at the earliest possible time on whatever notice the Court may direct

23   pursuant to the accompanying *Ex Parte Application for Order Shortening Time for*

24

---

25   [1] TWC's debtor affiliates are its parent company, The Walking Company Holdings, Inc., a
Delaware corporation ("Holdings"), and its subsidiary, Big Dog USA, Inc. ("Big Dog").

26   Holdings and Big Dog have filed joinders to this Motion. (TWC, Holdings and Big Dog are
collectively referred to as the "Company").

27   [2] The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a

28   core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the Cases are proper
pursuant to 28 U.S.C. §§ 1408 and 1409.

LA/213863.5

*Hearing on the Debtors' Emergency First Day Motions*.  The Company requests that the relief sought herein be granted on an emergency basis because the uninterrupted continued use of the Accounts and cash management system is essential to the Company's ability to continue its operations uninterrupted and to adjust smoothly to being debtors in possession operating under chapter 11.

**WHEREFORE**, the Company respectfully requests that this Court enter an order: (a) authorizing the Company to continue using and maintaining its cash management system and existing Accounts, as set forth on Exhibits 1 and 2 hereto; (b) authorizing the Banks, notwithstanding the automatic stay provisions of 11 U.S.C. § 362(a), to continue to offset standard monthly or periodic bank fees against the Accounts in the same manner as such fees were offset prior to the Petition Date (defined below); (c) authorizing the Banks to rely on the representations of the Company with respect to whether any check or other payment order drawn or issued by the Company prior to the Petition Date should be honored pursuant to the Motion and none of the Company's Banks shall have any liability to any party for relying on such representations by the Company as provided for herein; (d) authorizing the Banks to debit the Accounts in the ordinary course of business without the need for further order of this Court for all checks drawn on the Accounts which were cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; and all checks or other items deposited in one of Accounts with such Banks prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Company was responsible for such items prior to the Petition Date; (e) authorizing the Banks to debit the Accounts in the ordinary course of business without the need for further order of this Court for all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the cash

///

///

///

1  management system; and (f) granting to the Company such other and further relief as is

2  necessary and appropriate.

3

4  Dated:  December 7, 2009                **ARENT FOX LLP**

5

6                                          By: /s/ *Mette H. Kurth*
                                           _____
7                                               Mette H. Kurth
                                               Andy S. Kong
8                                               *Proposed* Attorneys for the
                                               Debtors and Debtors in Possession
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA/213863.5

1

# TABLE OF CONTENTS

2                                                                                      **Page**

3

4      I.     STATEMENT OF FACTS ............................................................................5

       A.     General Background ................................................................5

5      B.     Background Related to Cash Management ................................6

6             a.     The Depository Accounts ........................................8

7             b.     The Merchant Bank Accounts (TWC #8061 & BD
                     #3531) ......................................................................8

8             c.     The Restricted Accounts (TWC #8053 & BD #3549) ...........9

9             d.     Operating Accounts (TWC #8079 & BD #3689)...................9

              e.     The Payroll Accounts (TWC #8087 & BD #3556) ................9

10            f.     The Disbursement Accounts (TWC #6415 & BD
                     #4018) ....................................................................10

11            g.     The Customer Refund Account (TWC #8487).....................10

12            h.     Positive Pay System...............................................11

13            i.     The Sweep Accounts (TWC & BD – no account
                     numbers) ...............................................................12

14            j.     Flexible Spending Account ......................................12

15            k.     Health Insurance Account.........................................12

16            l.     401(k) Retirement Savings Custodial Account .....................13

       II.    ARGUMENT .........................................................................14

17     III.   CONCLUSION .....................................................................16

18

19

20

21

22

23

24

25

26

27

28

LA/213863.5

# TABLE OF AUTHORITIES

Page

Federal Cases

Charter Co. v. Prudential Ins. Co. (In re Charter Co.), 778 F.2d 617, 620-21
(11th Cir. 1985) ........................................................................................................ 14

In re Baldwin-United Corp., 79 B.R. 321, 327
(Bankr. S.D. Ohio 1987) ......................................................................................... 14

Federal Statutes

11 U.S.C. § 362(a) ......................................................................................................... 16

- ii -

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

### A.    General Background

Headquartered in Santa Barbara, California, the Company consists of two distinct retail operations.  The Company's operations are largely focused on TWC, which is a leading specialty retailer of authentic comfort footwear, operating 210 stores in premium malls across the nation.  TWC generated approximately 93% of the Company's sales in 2009.  Big Dog is a retailer of a lifestyle collection of popular-priced T-shirts, casual sportswear, and accessories featuring the Big Dog trademark.  Together, TWC and Big Dog employ over 1,600 individuals across the country.

As is set forth in greater detail in the accompanying *Declaration of Andrew D. Feshbach in Support of Emergency "First Day" Motions*, TWC entered a period of strategic expansion from 2006 to 2008 during which it opened approximately 140 new stores.  During this period, TWC agreed to the high rents then commanded by its landlords.  However, after the economy in general, and retail markets in particular, went into serious decline in 2008 and 2009, TWC suffered a decline in sales and it is no longer able to operate profitably while sustaining what are now above-market rents at many of its locations.  During 2009 the Company has sought to implement a turnaround plan for TWC, a key part of which was an attempt to negotiate rent reductions with its landlords.  While the Company was successful in achieving many elements of its turnaround plan, landlords largely refused to provide meaningful rent reductions.

Accordingly, it is now necessary for the Company to pursue a "right sizing" strategy for TWC that will permit it to reorganize around its profitable stores, eliminating those whose continued operation would inhibit a successful reorganization.  The Company commenced these chapter 11 cases on December 7, 2009 (the "Petition Date") in order to implement a pre-negotiated plan of reorganization that is supported, in principal, by many of the company's key creditor constituencies, and that should permit the Company to

LA/213863.5

1    emerge from chapter 11 with a new infusion of $10 million in capital and return to

2    profitability in 2010.  The Company anticipates that it will file its plan of reorganization

3    by the end of December 2009, and it will be seeking confirmation of its plan promptly

4    thereafter.  The Company intends to exit from chapter 11 as early as the end of the first

5    quarter of 2010.

6    **B.    Background Related to Cash Management**

7        The Company maintains a complex cash management system that tracks and

8    concentrates the cash received and expended by the Company.  The Company has used

9    the core cash management system for many years in the ordinary course of its business,

10   and it is necessary to the Company's continued, efficient operations.  A diagram of the

11   Company's cash management system is attached hereto as Exhibit 1.  As shown on the

12   diagram, the Company maintains 37 depository accounts (the "Depository Accounts")

13   with selected banks whose branches are located near the Company's various store

14   locations, 33 by TWC and 4 by Big Dog.  This cash management system is similar to the

15   other cash management systems commonly employed by businesses comparable to the

16   Company in size and complexity.  This system enables the Company to control and

17   maintain corporate funds and ensure cash availability, reduce administrative expenses, and

18   timely and accurately present information regarding cash-flow activity.  Further, failure to

19   maintain the cash management system would constitute a default under the Credit

20   Agreement as well as under the *First Amended, Restated, and Consolidated Loan and*

21   *Security Agreement*, dated as of July 7, 2005 (as amended, the "Prepetition Financing

22   Agreement") with its secured lender, Wells Fargo Retail Finance, LLC ("WFRF").  If the

23   Company were required to close all of its existing bank accounts, this would constitute a

24   major administrative burden, significantly disrupt the Company's operations and its

25   relationship with its secured lender, interrupt the timely collection of funds upon which

26   the Company's operations depend, and severely disrupt the Company's efforts to

27   reorganize.

28

LA/213863.5

## 1.   Overview of the Cash Management System

The key features of the cash management system are described below.   The Company's stores deposit cash proceeds of sales into various depository accounts, and from there the funds are swept three to five times per week into the Company's restricted account.   TWC and Big Dog each also maintain a merchant account at Wells Fargo, N.A. ("Wells Fargo") for the deposit of credit card proceeds.   The merchant accounts are swept daily, and the proceeds are deposited into the Company's restricted account.   Funds from the restricted accounts are then withdrawn daily by WFRF to pay down the obligations under the prepetition credit facility with WFRF (the "Credit Facility").   To the extent the assets of one debtor are used to pay down borrowings of a co-debtor under the Credit Facility, such debtor has an intercompany claim for reimbursement.

Funds needed to pay employees, to pay vendors, to fund claims under the Company's self-insurance program, and to meet other operational obligations are funded by daily draw requests made by the Company upon its Credit Facility.   As draw requests are honored by WFRF, the funds are deposited into either the Big Dog operating account or the TWC operating account, as appropriate.   These two operating accounts are maintained at Wells Fargo, and any funds remaining in the operating accounts at the end of each day are automatically deposited overnight to interest-bearing sweep accounts at WFRF.   All of the Company's accounts are FDIC insured.   In addition, except for certain of the depository accounts described below, all of the Company's accounts are maintained with banks that have been approved as a depository for funds of debtors in possession by the United States Trustee for Region 16.

## 2.   The Bank Accounts

The following is a summary of the bank accounts that comprise the Company's cash management system.[3]

---

[3] The bank accounts listed in this declaration and on the exhibits hereto references only the last four digits of each account number in accordance with the applicable local rules.

LA/213863.5

a. ***The Depository Accounts.*** The Company maintains 37 depository accounts, each of which was selected because it has a branch located near one of the Company's store locations. The depository accounts are identified on the list of accounts attached hereto as Exhibit 1. Thirty-three of these depository accounts are maintained by TWC, and four are maintained by Big Dog. The stores deposit cash proceeds of sales into these depository accounts and funds are swept three times per week into the respective Wells Fargo restricted accounts. These depository accounts are an important part of the Company's cash management system, and if these accounts were closed the Company's collection of funds would be unnecessarily delayed and the administrative burdens on the Company's treasurer would be increased with no offsetting benefit to the Company. No checks are written on the depository accounts.

As reflected on Exhibit 1, 12 of the 37 depository accounts are with banks that have been approved as a depository for funds of debtors in possession by the United States Trustee for Region 16. The remaining 25 accounts are with banks that have not been pre-approved by the United States Trustee for Region 16. However, the Company has confirmed that each of the depository accounts is FDIC insured. Further, the amounts deposited in the depository accounts rarely exceed $15,000 and would never approach the FDIC insurance limits. Thus, the funds maintained in the depository accounts are not at risk.

b. ***The Merchant Bank Accounts (TWC #8061 & BD #3531).*** TWC and Big Dog each maintain a merchant account at Wells Fargo for the deposit of credit card proceeds. The merchant accounts are zero balance ("ZBA") accounts, and funds deposited into the merchant accounts are swept daily into the restricted accounts. Like the depository accounts, the merchant bank accounts are an important part of the Company's cash management system, and if these accounts were closed the Company's collection of funds would be unnecessarily delayed and the administrative burdens on the Company's treasurer would be increased with no offsetting benefit to the Company. No checks are written on the depository accounts.

- 8 -

c.    ***The Restricted Accounts (TWC #8053 & BD #3549).***  As noted above, the Company maintains two restricted accounts with Wells Fargo.  Funds received by the Company through its retail sales, whether received in cash or by credit card payment, are deposited into the restricted accounts, and from there the funds are withdrawn daily by WFRF to pay down the Credit Facility.  The Company does not have access to the funds in the restricted accounts.  The Company is seeking authority to maintain the restricted accounts as the means of making payments with respect to the postpetition credit facility that is being provided to the Company by WFRF.  No checks are written against the restricted accounts, and no party has the ability to withdraw funds from the restricted accounts other than WFRF.  Accordingly, no funds will be withdrawn from the restricted accounts on account of prepetition obligations of the Company, except to the extent that a so-called "roll up" of prepetition debt may be authorized by this Court pursuant an order approving the debtor-in-possession financing.

d.    ***Operating Accounts (TWC #8079 & BD #3689).***  The Company maintains two operating accounts at Wells Fargo, one for TWC and one for Big Dog.  The operating accounts are funded from daily draw requests made on the Credit Facility, and from there funds are transferred as needed to the Company's payroll, disbursement, or customer refund accounts.  Any funds remaining in the operating accounts at the end of each day are automatically deposited overnight to interest-bearing sweep accounts maintained by Wells Fargo, one for TWC and one for Big Dog.  These accounts are a critical part of the Company's cash management system, and if these accounts were closed the Company's ability to receive advances under the Credit Facility and to route those advances to the needed disbursement accounts would be unnecessarily delayed and the administrative burdens on the Company's treasurer would be increased with no offsetting benefit to the Company.  No checks are drawn on the operating accounts.

e.    ***The Payroll Accounts (TWC #8087 & BD #3556).***  The Company maintains two dedicated payroll accounts at Wells Fargo, one for TWC and one for Big Dog.  These payroll accounts are Positive Pay, ZBA accounts that are funded by the

- 9 -

1  operating accounts in amounts necessary to cover the Company's payroll expenses.

2  Payments from the payroll accounts are generally made through ADP, which performs

3  payroll functions on behalf of the company.  Occasionally, payroll payments are made

4  directly to an employee, such as when an employee has been terminated.  Any funds

5  remaining in the payroll accounts are swept daily back into the operating accounts.  The

6  Company is requesting authority to maintain the payroll accounts for the limited purpose

7  of paying prepetition wages and expenses and to fund the Company's postpetition payroll

8  obligations with respect to its employees.  Simultaneously, by separate motion, the

9  Company is seeking authority to authorize the payment of prepetition wages and

10  expenses.

11         f.      ***The Disbursement Accounts (TWC #6415 & BD #4018).***  The

12  Company maintains two controlled disbursement accounts at Wells Fargo, one for TWC

13  and one for Big Dog, against which checks for the Company's expenditures are drawn

14  (other than payroll obligations for TWC and Big Dog and customer refunds for TWC).

15  The disbursement accounts are Positive Pay, ZBA accounts that are funded by transfers

16  from the operating accounts.  Any funds remaining in the disbursement accounts are

17  swept daily back into the operating accounts in amounts necessary to cover the

18  Company's business expenditures.

19         g.      ***The Customer Refund Account (TWC #8487).***  TWC also maintains

20  a customer refund account at Wells Fargo.  The customer refund account is another

21  Positive Pay, ZBA account that is funded by transfers from TWC's operating account in

22  amounts necessary to pay refunds due to its customers.  Payments from the customer

23  refund account are made by check.  Any funds remaining in the customer refund account

24  are swept daily back into TWC's operating account.  The first-day motions include a

25  request by the Company for authority to honor its prepetition customer obligations,

26  including obligations with respect to customer refunds and gift cards.  To the extent that

27  this relief is granted, the customer refund account will be used to honor prepetition

28  customer refunds.

- 10 -

1            h.     ***Positive Pay System.***  As set forth above, the payroll, controlled

2   disbursement, and customer refund accounts are "Positive Pay" disbursement accounts.

3   The Positive Pay system is designed to reduce potential fraud and to reduce administrative

4   costs associated with cash management by permitting the Company to control the

5   payment of checks presented to its bank.   The Positive Pay system works through a

6   sophisticated system of magnetic coding that is imprinted on each disbursement check

7   issued against the Positive Pay account.   Before Wells Fargo can honor any check

8   presented against an account using the Positive Pay system, it must compare critical

9   information magnetically encoded on that check (*e.g.,* check number and amount) to a list

10   of authorized checks that the Company electronically transmits to the bank whenever

11   checks are written.   Wells Fargo will only honor the check if all critical information is

12   successfully verified.   Furthermore, the Company can receive an electronic transmission

13   from Wells Fargo at any time indicating what checks have been presented against its

14   Positive Pay account.

15          These key features of a Positive Pay account, while designed as a protection

16   against fraud, can also be used in connection with a bankruptcy filing to ensure that a

17   debtor's outstanding, prepetition checks will not be honored subsequent to the

18   commencement of its bankruptcy case.   Concurrently with the commencement of the

19   Company's cases, the controller was directed to remove from the Company's list of

20   authorized checks all checks then outstanding, and to promptly transmit this updated list,

21   which will reflect no outstanding, authorized checks, to Wells Fargo.  After this is done, if

22   a check that was outstanding on the Petition Date is presented to Wells Fargo for payment,

23   the critical information magnetically encoded on that check will not match any check on

24   the Company's list of outstanding, authorized checks, and Wells Fargo will be unable to

25   honor that check.  Thus, there is virtually no risk that, if the Positive Pay accounts remain

26   open, prepetition checks could inadvertently be honored.

27          The Positive Pay system took significant time to implement and any disruption to

28   this system, if the disbursement accounts were to be closed and reopened with new

LA/213863.5

1    account numbers, would take several weeks to accomplish.    During that time, the

2    Company could only disburse funds by either issuing wire transfer instructions, which are

3    too costly to be used for most transactions, or operating with the Positive Pay control

4    features, exposing the Company to potential fraud.    The resulting disruption to the

5    Company's operations could have a devastating effect on its relationship with its vendors.

6    The Company's reorganization efforts therefore require that the Positive Pay accounts

7    continue essentially intact, and the Company is requesting authority to keep the Positive

8    Pay accounts open.    In accordance with the DIP Financing Motion, the Company intends

9    to fund the disbursement accounts from the operating accounts.

10            i.        ***The Sweep Accounts (TWC & BD – no account numbers).***    Any

11    funds remaining in the operating accounts at the end of each day are automatically

12    deposited overnight to interest-bearing sweep accounts maintained at Wells Fargo, one for

13    TWC and one for Big Dog.    These sweep accounts are a critical part of the Company's

14    cash management system.    These accounts are depository accounts, and no checks are

15    drawn against them.

16            j.        ***Flexible Spending Account.***    The Company maintains a flexible

17    spending account at Bank of America for the benefit of its employees.    The Company's

18    flexible spending account is funded solely from deductions made from employees'

19    salaries, and it is administered by United Healthcare, which issues the reimbursement

20    checks drawn against that account.    Although the account is funded by employee

21    contributions, the Company has a residual and/or contingent interest in certain funds

22    contained in the account.    Simultaneously, by separate motion, the Company is seeking

23    authority to continue to honor flexible spending benefits in the ordinary course of

24    business.

25            k.        ***Health Insurance Account.***    The Company maintains a health

26    insurance account at Bank of America for the benefit of its participating employees and

27    their dependents.    The account was created in furtherance of the Company's self-insured

28    company-subsidized medical, dental, and vision plans.    The Company uses United

- 12 -

LA/213863.5

1  Healthcare as its plan administrator. The account is funded from TWC's operating

2  account. United Healthcare is authorized to initiate ACH transfers each week from TWC's

3  operating account to the health insurance account in amounts necessary to cover the prior

4  week's paid claims. Participating employees' contributions to the medical and dental

5  plans are deducted from such employees' bi-weekly pay. By separate motion, the

6  Company is seeking authority to continue to honor health insurance benefits in the

7  ordinary course of business.

8                l.    ***401(k) Retirement Savings Custodial Account.*** The Company

9  maintains an employee 401(k) retirement savings custodial account with Fidelity

10  Investments funded by employee deductions made from employees' eligible earnings.

11  Participating employees' contributions to the 401(k) plan are deducted from such

12  employees' bi-weekly pay based on a percentage of eligible earnings elected by the

13  participating employees. Contributions are invested based on the investment elections

14  made by the employees, or if no investment elections are made, contributions are

15  deposited into conservative default investments. Although the Company does not

16  currently make matching contributions, it has done so in the past. The Company has no

17  legal or equitable interest in the funds maintained in the 401(k) account. Further, the

18  Company maintains a 401(k) forfeiture account with Fidelity Investments, which contains

19  approximately $175,000 comprised of matching contributions funded by the Company in

20  the past that were forfeited when employees terminated their employment before their

21  rights to such funds had vested. Upon information and belief, the funds in the forfeiture

22  account are not available to the Company and can only be used to provide matching

23  contributions to employees in the event that the Company chooses to provide matching

24  funds in the future. By separate motion, the Company is seeking authority to continue to

25  honor retirement savings benefits in the ordinary course of business.

26

27

28

## II.

## ARGUMENT

Courts have waived the strict enforcement the U.S. Trustee Guidelines requiring closing prepetition bank accounts and have implemented alternative procedures to achieve the same protection.    The Company respectfully submits that continued use of the Accounts should be approved in these cases as well.    Further, courts commonly approve a debtor's continued use of its prepetition cash management systems and related procedures and transactions used in the ordinary course of a debtor's business.    For example, in *Charter Co. v. Prudential Ins. Co. (In re Charter Co.)*, 778 F.2d 617, 620-21 (11th Cir. 1985), the bankruptcy court authorized, and the Eleventh Circuit upheld, the debtor and its subsidiaries' request "to continue to consolidate the management of its cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtors."    The Eleventh Circuit further held that authorizing the debtor to utilize its prepetition "routine cash management system" was "entirely consistent with the provisions of the Bankruptcy Code ...."    *Id.* at 621; *see also In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987) (noting that debtors' motion to continue existing bank accounts and cash management system was a "simple" matter).

It is essential that the Company maintain its existing bank accounts and cash-management system as described above and that the Court grant this Motion on an expedited basis.    Absent prompt relief, the Company will incur significant and unnecessary costs, enormous interruption to its business, and substantial harm. The relief requested in this Motion is essential to maintaining smooth operations and to preventing an interruption in either the Company's receipt of revenues or its prompt payment of payroll and other obligations that are essential to the maintenance of going-concern operations.    If the Company was required at this time to close all of its prepetition bank accounts and reconstruct its cash management system from scratch, this would constitute a major administrative burden, and the Company's payroll and revenue collection

LA/213863.5

1    activities would suffer a serious interruption, which could cause immediate and

2    irreparable harm to the Company's business operations, interrupt the timely collection of

3    funds upon which its operations depend, and severely prejudice its reorganization efforts.

4         Maintaining the Company's bank accounts and cash management system will not

5    interfere with its performance of its duties as a debtor in possession, including its

6    obligations to segregate and separately account for its prepetition and postpetition

7    financial activities, and will not prejudice any party.  As discussed above, the majority of

8    the accounts comprising the Company's cash management system are depository,

9    concentration, or Positive Pay accounts.  Only prepetition checks related to prepetition

10   obligations that this Court has authorized the Company to honor (*e.g.*, wages, benefits,

11   and certain customer obligation) will be honored.  No other prepetition checks will be

12   cleared through these accounts.  Moreover, in accordance with the U.S. Trustee

13   Guidelines, the Company is in the process of closing its books and records and opening

14   "new" books and records for the postpetition period.  These measures are reasonable and

15   sufficient to ensure that the Company separately accounts for its postpetition financial

16   activities.

17        The U.S. Trustee Guidelines also require that a debtor have a minimum of three

18   new debtor in possession accounts: general, payroll and tax.  The Company hereby seeks a

19   waiver of the U.S. Trustee's requirements that it maintain tax accounts.  It requests

20   instead, that it be allowed to convert the Accounts to "debtor in possession" accounts and

21   continue to utilize them as necessary to best serve their business needs.  The Company's

22   accounting system allows the Company to track the funds for taxes and to assure that

23   those are paid.  Requiring the Company to open additional accounts and segregate taxes

24   would only complicate the Company's cash management system and require the

25   Company to devote more personnel time to maintaining the accounts.

26        The Banks where the Company's accounts are located are federally insured

27   institutions.  Except for certain of the depository accounts, all of the funds are maintained

28   in Wells Fargo, which has been approved as a depository for funds of debtors in

- 15 -

1  possession by the United States Trustee for Region 16 so the funds in these accounts are

2  protected as required by section 345 of the Bankruptcy Code.  Further, the funds held in

3  Depository Accounts that are nonapproved depositories are swept into one of the

4  Company's main accounts at least three times per week and the balance in each of the

5  nonapproved accounts rarely exceeds $5,000, much less the $250,000 FDIC insured

6  amount.  Because the other accounts are federally insured and the balances in the accounts

7  never approach the maximum amount that can be insured (each such account usually

8  contain less than $5,000), these funds are also protected as required pursuant to section

9  345 of the Bankruptcy Code.

## III.

## CONCLUSION

12  **WHEREFORE,** based on this Motion, the accompanying *Declaration of Andrew*

13  *D. Feshbach in Support of Emergency "First Day" Motions*, the *Declaration of Roberta*

14  *J. Morris in Support of Emergency "First Day" Motions*, the record in these cases,

15  including the pleadings and documents filed on behalf of the parties, the arguments and

16  representations of counsel, and any oral or documentary evidence presented at or prior to

17  the time of the hearing on this Motion, the Company respectfully that this Court enter an

18  order: (a) authorizing the Company to continue using and maintaining its cash

19  management system and existing Accounts, as set forth on Exhibits 1 and 2 hereto; (b)

20  authorizing the Banks, notwithstanding the automatic stay provisions of 11 U.S.C. §

21  362(a), to continue to offset standard monthly or periodic bank fees against the Accounts

22  in the same manner as such fees were offset prior to the Petition Date (defined below); (c)

23  authorizing the Banks to rely on the representations of the Company with respect to

24  whether any check or other payment order drawn or issued by the Company prior to the

25  Petition Date should be honored pursuant to the Motion and none of the Company's

26  Banks shall have any liability to any party for relying on such representations by the

27  Company as provided for herein; (d) authorizing the Banks to debit the Accounts in the

28  ordinary course of business without the need for further order of this Court for all checks

LA/213863.5

1 drawn on the Accounts which were cashed at such Bank's counters or exchanged for

2 cashier's checks by the payees thereof prior to the Petition Date; and all checks or other

3 items deposited in one of Accounts with such Banks prior to the Petition Date which have

4 been dishonored or returned unpaid for any reason, together with any fees and costs in

5 connection therewith, to the same extent the Company was responsible for such items

6 prior to the Petition Date; (e) authorizing the Banks to debit the Accounts in the ordinary

7 course of business without the need for further order of this Court for all undisputed

8 prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service

9 charges for the maintenance of the cash management system; and (f) granting to the

10 Company such other and further relief as is necessary and appropriate.

11

12 Dated:  December 7, 2009                **ARENT FOX LLP**

13

14

15                                              By: /s/ *Mette H. Kurth*
                                                    Mette H. Kurth
16                                                  Andy S. Kong
                                                    *Proposed* Attorneys for the
17                                                  Debtors and Debtors in Possession

18

19

20

21

22

23

24

25

26

27

28

LA/213863.5

# EXHIBIT 1

**Exhibit 1**

| Creditor Name | City | State | Account No. (Last Four Digits) | UST Approved (Y/N) |
|---|---|---|---|---|
| American Savings Bank | Honolulu | HI | 5350 | N |
| AMEX | Phoenix | AZ | 1502 | N |
| AmTrust Bank | Beachwood | OH | 5782 | N |
| B of A - Additional Contact | Santa Maria | CA | 2081 | Y |
| B of A - Additional Contact | Santa Maria | CA | 0841 | Y |
| B of A - Additional Contact | Santa Maria | CA | 5335 | Y |
| B of A - Additional Contact | Santa Maria | CA | 9509 | Y |
| Bank of America, N.A. | Woodland Hills | CA | 2081 | Y |
| Bank of America, N.A. | Woodland Hills | CA | 0841 | Y |
| Bank of America, N.A. | Woodland Hills | CA | 5335 | Y |
| Bank of America, N.A. | Woodland Hills | CA | 9509 | Y |
| Bank of Hawaii | Lahaina | HI | 6371 | N |
| Bank of the West | Centenial | CO | 3559 | Y |
| Branch Banking and Trust Company | Wilson | NC | 8303 | N |
| Capital One | New Orleans | LA | 8507 | N |
| Central Bank & Trust | Lexington | KY | 7755 | N |
| Chase Bank | Los Angeles | CA | 2541 | Y |
| Chase Bank | Los Angeles | CA | 6472 | Y |
| Chevy Chase Bank | Arlington | MD | 9791 | N |
| Citibank | Edison | NJ | 0808 | Y |
| Citizens Bank | Pittsburgh | PA | 7389 | N |
| Compass | South Houston | TX | 4660 | N |
| Discover | Phoenix | AZ | 4491 | n |
| Farmington Savings Bank | Farmington | CT | 7829 | N |
| Fidelity | Covington | KY | | N |

**Exhibit 1**

| Creditor Name | City | State | Account No. (Last Four Digits) | UST Approved (Y/N) |
|---|---|---|---|---|
| Fifth Third Bank | Lindhurst | OH | 1825 | N |
| First American Bank | Vernon Hills | IL | 2901 | N |
| First Data | Greenwood Village | CO | 4886 | N |
| First Hawaiian Bank | Wailea | HI | 0363 | N |
| First National Bank | Broomfield | CO | 1297 | N |
| First State Bank | Lake St. Louis | MO | 2060 | N |
| FirstTennessee | Knoxville | TN | 9162 | Y |
| Glen Falls National Bank & Trust | Glens Falls | NY | 4934 | N |
| HSBC | Huntington Station | NY | 3412 | N |
| Huntington National Bank | Dublin | OH | 6886 | N |
| JCB International | Los Angeles | CA | Processed with V/MC | N |
| Key Bank | Cheektowaga | NY | 0883 | N |
| National City | Oak Brook | IL | 0503 | N |
| PNC Bank | Louisville | KY | 1665 | N |
| Regions Bank | Destin | FL | 9126 | N |
| Regions Bank | Panama City Beach | FL | 0990 | N |
| Sovereign Bank | Lancaster | PA | 1904 | N |
| Sovereign Bank | Boston | MA | 2296 | N |
| SunTrust Bank | Orlando | FL | 1081 | Y |
| US Bank | Cincinnati | OH | 3122 | Y |
| Wachovia Bank | Red Bank | NJ | 4350 | Y |
| Wells Fargo | Camarillo | CA | 3531 | Y |
| Wells Fargo | Camarillo | CA | 3689 | Y |
| Wells Fargo | Camarillo | CA | 3556 | Y |
| Wells Fargo | Camarillo | CA | 3549 | Y |
| Wells Fargo | Camarillo | CA | 4018 | Y |

**Exhibit 1**

| Creditor Name | City | State | Account No. (Last Four Digits) | UST Approved (Y/N) |
|---|---|---|---|---|
| Wells Fargo | Camarillo | CA | 4827 | Y |
| Wells Fargo | Camarillo | CA | 8061 | Y |
| Wells Fargo | Camarillo | CA | 8079 | Y |
| Wells Fargo | Camarillo | CA | 8087 | Y |
| Wells Fargo | Camarillo | CA | 8053 | Y |
| Wells Fargo | Camarillo | CA | 6415 | Y |
| Wells Fargo | Boston | MA | (All Wells Accounts) | Y |
| Wells Fargo | Boston | MA | (All Wells Accounts) | Y |
| Wells Fargo | Boston | MA | (All Wells Accounts) | Y |
| Wells Fargo | Boston | MA | (All Wells Accounts) | Y |

# EXHIBIT 2

# Other Bank Accounts
# Cash Management System

File name: P:/Accounting/Naomi/cashchart.xls

(effective 10/1/09)

```
Bank of America
Flexible Spending Account
Account # ending with 6456

United Healthcare Insurance
UHC Administered Plan for
The Walking Company

(employee FBA deductions are deposited
into this account & reimbursement checks
are administered by UHC)
```

```
Bank of America
Health Insurance Claims
Account # ending with 6443

United Healthcare Insurance
UHC Administered Plan for
The Walking Company

(employee health insurance claims
are paid out of this account.  Payments
are administered by UHC)
```

```
Fidelity Investments
Retirement Savings Plan
Plan #38854, Client ID 000738089

The Walking Company Holdings, Inc
Custodial Account

(employee 401k savings account)
```
⟵
```
Fidelity Investments
Retirement Savings Plan

Big Dog Holdings
Forfeiture Account

(employer match forfeited by employees)
```