1  Mette H. Kurth (SBN 187100)
   Andy S. Kong (SBN 243933)
2  **ARENT FOX LLP**
   555 West Fifth Street, 48th Floor
3  Los Angeles, CA  90013-1065
   Telephone:   213.629.7400
4  Facsimile:    213.629.7401
   E-mail:       kurth.mette@arentfox.com
5                kong.andy@arentfox.com

6  *Proposed* Attorneys for Debtors and Debtors in
   Possession
7
   Debtors' Mailing Address
8  121 Gray Avenue
9  Santa Barbara, CA 93101

10            **UNITED STATES BANKRUPTCY COURT**

11            **CENTRAL DISTRICT OF CALIFORNIA**

12              **SANTA BARBARA DIVISION**

13

14  In re:                          Case No.: 09-bk-15138

15                                  Chapter 11

16  **THE WALKING COMPANY,** a      **APPLICATION FOR ORDER
    Delaware corporation, d/b/a Alan's   APPROVING THE EMPLOYMENT OF
17  Shoes, Footworks, Overland Trading   CLEAR THINKING GROUP LLC AS
    Co., Sole Outdoors, and Martini Shoes,   FINANCIAL ADVISOR TO THE
18  f/k/a TWC Acquisition Corporation,   DEBTOR PURSUANT TO SECTIONS
                                    327(a) AND 363 OF THE BANKRUPTCY
19                                  CODE EFFECTIVE AS OF DECEMBER
                  Debtor.          7, 2009**
20
21                                  *[No Hearing Required Unless Requested
                                    Pursuant to L.B.R. 2014-1(b)]*
22

23

24        The  Walking  Company[1],  Inc.  (the  "Debtor"),  as  debtor  and  debtor  in  possession

25  herein  hereby  moves  this  Court  (the  "Application")  for  entry  of  an  Order  pursuant  to

26  Sections 327(a) and 363 of the United States Bankruptcy Code (the "Bankruptcy Code"),

27  ────────────────────

28  [1] TWC's debtor affiliates are its parent company, The Walking Company Holdings, Inc., a Delaware corporation
    ("Holdings"), and Holdings' wholly owned subsidiary, Big Dog USA, Inc. ("Big Dog").  Holdings and Big Dog have
    filed joinders to this Motion.  (TWC, Holdings, and Big Dog are collectively referred to as the "Company").

1  approving the Debtor's agreement with Clear Thinking Group LLC ("CTG") and

2  appointing CTG as the Debtor's financial advisor (the "Application") effective as of

3  December 7, 2009.  In support of the Application, the Debtor relies upon and incorporates

4  by reference the Declaration of Lee Diercks, Partner of Clear Thinking Group LLC in

5  Support of the Application for Order Approving the Employment of Clear Thinking

6  Group LLC as Financial Advisor to the Debtor, annexed hereto as Exhibit A (the "Diercks

7  Declaration").    In further support of this Application, the Debtor relies upon the

8  Declarations of Andrew Feshback and Roberta Roberts, In Support of First Day Pleadings

9  which were filed with the Court, and respectfully represents as follows:

10  **I.**

11  **JURISDICTION AND VENUE**

12  1.  This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§

13  157 and 1334(b).  Venue of these proceedings is proper in this judicial district pursuant to

14  28 U.S.C. §§ 1408 and 1409.  Bankruptcy Code sections 328, 504, and 1103(a), Federal

15  Rules of Bankruptcy Procedure 2014, 2016, and 5002, and Local Bankruptcy Rule 2014-

16  1(b) are the statutory predicates for the relief sought by this Application.

17  **II.**

18  **FACTS**

19  2.  On December 7th, 2009 (the "Petition Date"), the Debtor filed its voluntary

20  petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

21  3.  The Debtor continues to operate its business and manage its properties as a

22  debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No

23  creditors' committee, trustee or examiner has been appointed in this case.

24  **III.**

25  **RELIEF REQUESTED**

26  4.  By this Application, the Debtor seeks authorization to employ CTG as the

27  Debtor's financial advisor in connection with the Debtor's Chapter 11 case pursuant to the

28  terms and conditions of the engagement letter between the Debtor and CTG dated

-2-

NYC/455711.1

1    November 13th, 2009 (the "CTG Agreement"), annexed hereto as Exhibit B. The Debtor

2    proposes to retain CTG on the terms and conditions set forth in the CTG Agreement, with

3    the cost of such services to be paid from the Debtor's estate as contemplated by 28 U.S.C.

4    § 156(c).

5    IV.

6    **BASIS FOR RELIEF**

7         5.    Under Section 327(a) of the Bankruptcy Code, a debtor in possession is

8    authorized to employ professional persons "that do not hold or represent an interest

9    adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in

10    possession] in carrying out [its] duties under this title." 11 U.S.C. § 327(a). Section

11    1107(b) of the Bankruptcy Code modifies Sections 101(14) and 327(a) of the Bankruptcy

12    Code in cases under chapter 11 of the Bankruptcy Code, providing that "a person is not

13    disqualified for employment under Section 327 of [the Bankruptcy Code] by a debtor in

14    possession solely because of such person's employment by or representation of the debtor

15    before the commencement of the case." 11 U.S.C. § 1107(b). Under Section 328(a) of

16    the Bankruptcy Code, a debtor in possession may employ professional persons under

17    section 327(a) of the Bankruptcy Code "on any reasonable terms and conditions of

18    employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11

19    U.S.C. § 328(a).

20         6.    As required by Rule 2014(a) of the Federal Rules of Bankruptcy Procedure

21    (the "Bankruptcy Rules"), this Application sets forth below: (a) the specific facts showing

22    the necessity for CTG's employment; (b) the reasons for the Debtor's selection of CTG as

23    its financial advisor in connection with its Chapter 11 case; (c) the professional services to

24    be provided by CTG; (d) the arrangement between the Debtor and CTG with respect to

25    CTG's compensation; and (e) to the best of the Debtor's knowledge, the extent of CTG's

26    connections, if any, to certain parties in interest in this matter.

27

28

- 3 -

# V.

## FACTS RELEVANT TO REQUESTED RELIEF

A.      **Debtor's Desire to Retain CTG**

7.      Prior to the Petition Date, the Debtor experienced, and continues to experience, financial difficulties, which difficulties have culminated in the filing of this Chapter 11 case.  The Debtor has determined, in the exercise of its business judgment, that the size of its business operations and the reorganization of the same, and the complexity of the financial difficulties attendant upon operations and liquidation of such scope, require it to employ an experienced financial advisor.

B.      **CTG's Qualifications**

8.      The Debtor has selected CTG as its financial advisor because of CTG's diverse experience, knowledge, and reputation in the retail restructuring field, its understanding of the issues involved in Chapter 11 cases, and the Debtor believes that CTG possesses the resources and is well qualified to provide the financial advisory services that will be required.  CTG is a leading advisor to companies as well as creditors in large, complex, and high profile restructurings, and bankruptcies.

9.      Established in 2001, CTG has advised companies and creditors in numerous distressed situations, both in and out of bankruptcy proceedings.  CTG's clients include companies, creditors, corporate parents, and financial sponsors, as well as acquirers of troubled assets.  CTG or its Partners have participated in many restructurings and Chapter 11 cases for retail clients including One Price Clothing, Inc., Jumbo Sports, Inc., Flooring America, Inc., Texas Boot, Inc., Market Antiques & Home Furnishings, Inc., Prints Plus, Inc., Copeland Sports, Inc., Rag Shops, Inc., Sofa Express, Inc., Bag'n Baggage, Inc., Lillian Vernon, Inc., Barbeque Galore, Inc., The Parent Company, Inc., Bachrach, Inc., and Crabtree & Evelyn, Inc., etc.  CTG has a wealth of experience in providing services in retail Chapter 11 cases and has an excellent reputation as a result of the many years of quality services it has rendered on behalf of debtors throughout the United States.

-4-

NYC/455711.1

10.    As described above, the Debtor retained CTG on November 13th, 2009 to serve as its financial advisor in connection with its financial restructuring.  Since then CTG has developed extensive knowledge of the Debtor's business, operations and financial condition.

**C.    Services to be Provided by CTG**

11.    The following CTG professionals will be responsible for providing professional services to the Debtor:  Lee Diercks, Partner; Brian Allen, Managing Director; and other resources or personnel, as required and agreed upon by CTG and the Debtor during the Chapter 11 process.  To date, CTG has provided, and/or will provide on a going-forward basis upon the Court's approval of this Application, the following services:

    (a)    assisting with the preparation of necessary schedules, budgets and court related reporting;

    (b)    assisting in arranging debtor in possession financing for the Debtor, as requested;

    (c)    assisting in the development of financial data and presentations to the Debtor's Board of Directors, various creditors, and other third parties as requested;

    (d)    providing expert witness testimony concerning any of the subjects encompassed by the other financial advisory services as requested;

    (e)    providing such other advisory services as are customarily provided in connection with the analysis and negotiation of a plan under Chapter 11 of the Bankruptcy Code as requested;

    (f)    assisting with court required record retention process as requested; and

    (g)    assisting with all other agreed upon tasks as required and requested by the Debtors during the case.

**D.    Disclosure Concerning Conflicts of Interest**

12.    CTG has informed the Debtor that, except as qualified in the Diercks Declaration annexed to this Application as Exhibit A, CTG has no material connection

- 5 -

NYC/455711.1

1    with the Debtor, its creditors, any other party in interest, its respective attorneys and

2    accountants, the United States Trustee for the Central District of California (the "U.S.

3    Trustee"), or any person employed in the office of the U.S. Trustee in the above-captioned

4    Chapter 11 case

5          13.    Based on the Diercks Declaration, the Debtor believes that CTG (i) does not

6    hold or represent any interest adverse to the Debtor or its estate, and (ii) is a "disinterested

7    person" as that term is defined in Section 101(14) of the Bankruptcy Code.  Moreover, the

8    Debtor believes that employment of CTG is necessary and in the best interest of the

9    Debtor and its estate.

10   **E.    Disclosure of Compensation**

11         14.    Per the CTG Agreement fees for services will be based upon the time

12   devoted on the Debtor's behalf and the experience of those providing the services.  CTG

13   will be billed at standard hourly rates as follows:

| | |
|---|---|
| Partner - | $450.00 |
| Managing Director- | $400.00 |
| Manager- | $350.00 |
| Sr. Consultant- | $275.00 |
| Consultant- | $225.00 |
| Analyst- | $150.00 |
| Administrative- | $75.00 |

21         15.    In addition to the above fees, the Debtor shall further reimburse CTG,

22   pursuant to the CTG Agreement, for all of its reasonable out-of-pocket expenses incurred

23   during this engagement, including, but not limited to, travel and lodging, direct

24   identifiable data processing, document production, publishing services and

25   communication charges, courier services, meals, reasonable fees and expenses of CTG's

26   counsel, and other necessary expenditures, payable upon rendition of invoices setting

27   forth in reasonable detail the nature and amount of such expenses.

28

- 6 -

NYC/455711.1

16.    The fees described above are consistent with CTG's normal and customary billing practices for cases of this size and complexity, which require the level and scope of services outlined in the CTG Agreement.

17.    CTG has provided certain financial advisory services to the Debtor since November 13th, 2009 and has been paid for those services in accordance with the CTG Agreement.   Prior to the Petition Date, CTG was paid approximately $75,000 for the services provided prior to the Petition Date.   Per the CTG Agreement, the Debtor agreed to pay CTG for all prepetition services provided, at the above hourly rates, and pay for all prepetition expenses incurred prior to filing its petition in Bankruptcy Court.   CTG was also provided a $100,000 retainer for post-petition fees and expenses. This retainer is to be held until the approval of any final fee application and applied to the final invoice. If there are any funds remaining from the retainer, these funds will be promptly returned to the Debtor.

F.    **Connections with the Debtors and Other Parties**

18.    To the best of the Debtor's knowledge, information and belief, and except as otherwise stated in the accompanying Diercks Declaration, CTG and its principals have no connection with and no interests adverse to the Debtor, its creditors, the estate, or any other party in interest herein or their respective professionals in matters relating to the Debtor and their estate, and none of the financial professionals comprising or employed by CTG are related to any judge of the United States Bankruptcy Court for the Central District of California, the U.S. Trustee, or any person employed in the Office of the United States Trustee.

19.    To the best of the Debtor's knowledge and except as otherwise disclosed in the Diercks Declaration, CTG: (i) does not hold or represent any interest adverse to the Debtor with respect to the matters for which it is being retained; (ii) CTG is a "disinterested person" as that phrase is defined in the Bankruptcy Code section 101(14) (as modified by Section 1103(b) of the Bankruptcy Code); (iii) neither CTG nor its

- 7 -

1  professionals have any connection with the Debtor, its estate, or its creditors; and (vi)

2  CTG's employment is necessary and is in the best interest of the Debtor's estate.

3  **VI.**

4  **NOTICE AND NO PRIOR APPLICATION**

5       20.     Notice of this Application has been given to the following parties, or in lieu

6  thereof, to their counsel:   (i) the United States Trustee for the Central District of

7  California; (ii) the parties included on the Debtor's list of creditors holding the 30 largest

8  unsecured claims; (iii) Wells Fargo Retail Finance, LLC and Wells Fargo Bank, N.A., the

9  Debtor's prepetition senior secured lender and proposed post petition lender;

10  (iv) landlords with respect to the Debtor's leased property.  In light of the nature of the

11  relief requested, the Debtor respectfully submits that no further notice is necessary.

NYC/455711.1

1

2      **WHEREFORE**, the Debtor respectfully requests that the Court enter an order

3  granting (a) approval of the employment and retention of CTG as financial advisors to the

4  Debtor effective as of December 7, 2009 as set forth in the Application, and (b) such other

5  and further relief to the Debtor as the Court may deem proper.

6

7  Dated: December ___, 2009          THE WALKING COMPANY, INC.

8

9                    By: _____

                          Anthony Wall

10  Submitted by:              Executive Vice President

11  Dated: December 11, 2009

12                    By: _____

                          Mette H. Kurth

13                         ARENT FOX LLP

14                         *Proposed* Attorneys for Debtors and

                         Debtors in Possession

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 9 -

**EXHIBIT A**

Mette H. Kurth (SBN 187100)
Andy S. Kong (SBN 243933)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
E-mail:    kurth.mette@arentfox.com
        kong.andy@arentfox.com

*Proposed* Attorneys for Debtors and Debtors in Possession

Debtors' Mailing Address
121 Gray Avenue
Santa Barbara, CA 93101

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA BARBARA DIVISION

| | |
|---|---|
| In re:<br><br>**THE WALKING COMPANY**, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes, f/k/a TWC Acquisition Corporation,<br><br>Debtor. | Case No.: 09-bk-15138<br><br>Chapter 11<br><br>**DECLARATION OF LEE DIERCKS IN SUPPORT OF APPLICATION FOR ORDER APPROVING THE EMPLOYMENT OF CLEAR THINKING GROUP AS FINANCIAL ADVISOR TO THE DEBTORS PURSUANT TO SECTIONS 327(a) AND 363 OF THE BANKRUPTCY CODE EFFECTIVE AS OF DECEMBER 7, 2009**<br><br>*[No Hearing Required Unless Requested Pursuant to L.B.R. 2014-1(b)]* |

NYC/455716.1

I, Lee Diercks, hereby declare under penalty of perjury:

1.      I am a Partner of the Clear Thinking Group LLC ("CTG") a consulting firm that that specializes in corporate restructuring; operations improvement; litigation analytics; investment banking services; and case management services and with its main office at 401 Towne Centre Drive, Hillsborough, New Jersey 08844; and with regional offices in Los Angeles, CA; Portland, OR; and Atlanta, GA. I have read the Application for an Order Pursuant to Sections 327(a) and 363 of the Bankruptcy Code Authorizing the Employment of Clear Thinking Group LLC as Financial Advisor to the Debtor (the "Application"), executed by Tony Wall on behalf of The Walking Company Holdings, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), and submit this declaration in support thereof.

## CTG'S QUALIFICATIONS

2.      CTG is recognized for its expertise in providing financial advisory services in financially distressed situations, including advising debtors, creditors and other constituents in Chapter 11 proceedings.

3.      I have considerable experience with Chapter 11 restructuring and other distressed company circumstances, advising both debtors and creditors. Chapter 11 retail advisory assignments in which CTG or I have been actively involved include, among others: One Price Clothing, Inc., Jumbo Sports, Inc., Flooring America, Inc., Texas Boot, Inc., Market Antiques & Home Furnishings, Inc., Prints Plus, Inc., Copeland Sports, Inc., Barbecue Galore, Inc.; Rag Shops, Inc., Bag'n Baggage, Inc., Sofa Express, Inc., Lillian Vernon, Inc, The Parent Company, Inc., Bachrach, Inc., and Crabtree & Evelyn, Inc..

4.      My duties as Partner with respect to CTG's engagement to represent the Debtor includes, among other things, strategic advice, advice on asset sale(s) or liquidation options, participation in negotiations among the Debtor and its creditors, suppliers, and other parties in interest, assistance to the Debtor in reviewing the terms, conditions and impact of any proposed liquidation, development of a reorganization plan,

- 1 -

NYC/455716.1

and participation in presentations to the Debtor's prepetition and post-petition secured lenders.

5.    As described in the Application, since November 13th, 2009, CTG has rendered financial advisory services to the Debtor in connection with its business reorganization efforts.  CTG has become familiar with the Debtor's operations and is well qualified to advise the Debtor in connection with such financial and operational matters in a cost-effective and efficient manner.

## DISINTERESTEDNESS OF PROFESSIONALS

6.    Based on the results of the conflict search conducted to date by CTG's compliance department, as described more fully below, and based on my understanding of Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and the practices being followed in other large Chapter 11 cases, to the best of my knowledge, neither I, CTG, nor any member or employee thereof, insofar as I have been able to ascertain, has any connection with the Debtor, its creditors, other parties in interest (as reasonably known to us), its attorneys, the U.S. Trustee, or any person employed in the Office of the U.S. Trustee, except as disclosed or otherwise described herein.

7.    To the best of my knowledge, CTG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

8.    As part of its diverse practice, CTG appears in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of which may represent claimants and parties-in-interest in the chapter 11 Case.  Further, CTG or companies in which it has investments has in the past, and may in the future, be represented by several attorneys and law firms in the legal community, some of whom may be involved in this proceeding.  In addition, CTG has in the past and will likely in the future be working with or against other professionals involved in this case in matters unrelated to the Debtor or this Chapter 11 case.  Based on

our current knowledge of the professionals involved, and to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtor herein in matters upon which CTG is to be employed.

9.    CTG has represented, and will in the future represent, many different clients with various business interests in numerous industries.  These clients are often referred to CTG by intermediaries such as lawyers, investment bankers, lenders and accountants.  Out of an abundance of caution, CTG makes the following disclosures:

(a)    Wells Fargo Retail Finance – CTG has performed work for other borrowers of WFRF that are unrelated to this case, and has provided financial advisory services to WFRF in other unrelated bankruptcy cases or other unrelated financial situations.

(b)    Wells Fargo (various divisions) – CTG has performed work for borrowers of other Wells Fargo Divisions totally unrelated to this case (including WF Foothill, WF Trade Capital, Wachovia Capital Finance, etc.) and has provided financial advisory services to a number of these Wells Fargo Companies that are totally unrelated to this case.

(c)    As part of CTG's Creditors Rights practice, CTG has worked with various attorneys from Arent Fox LLP on cases totally unrelated to this case.  CTG has acted as agent or representative and continues to act as agent or representative of certain creditors in matters unrelated to the Debtor who are members of a creditors committee that has engaged Arent Fox as counsel.

CTG agrees to update the disclosure information from time to time if and when additional parties with an interest in or a relationship with the Debtor are identified by the Debtor, in writing, to CTG.  CTG has undertaken a thorough review of its computerized database that contains the names of clients and other parties of interest with respect to certain

matters.  CTG has run the following parties through its conflicts system:  (a) the Debtor; (b) the Debtor's current officers and directors; (c) the Debtor's secured lenders; and (d) the Debtor's thirty (30) largest unsecured creditors.  CTG's investigation has not revealed any actual or potential conflicts of interest with respect to CTG's proposed representation of the Debtor, except as described herein.

10.    CTG is confident that:  (a) it has not represented, does not represent, and will not represent any parties-in-interest in connection with this Chapter 11 case; and (b) any relationship it may have with any party-in-interest will not interfere with or impair CTG's representation of the Debtor in this Chapter 11 case.  If this Court approves the proposed employment of CTG by the Debtor, CTG will not accept any engagement or perform any services for any entity or person other than the Debtor in this situation.

## PROFESSIONAL SERVICES
## TO BE RENDEREDAND COMPENSATION

11.    The parties have entered into an agreement that would govern the relationship between CTG and the Debtor, a copy of which is attached as <u>Exhibit B</u> to the Application (the "<u>CTG Agreement</u>").  CTG has provided, and/or will provide upon the Court's approval of the Application, such financial advisory services (the "<u>Financial Advisory Services</u>") as CTG and the Debtor shall deem appropriate and feasible in order to advise the Debtor in the course of the Chapter 11 case, including, but not limited to, the following:

    (a)    assisting with the preparation of necessary schedules, budgets and court related reporting;

    (b)    assisting in arranging debtor in possession financing for the Debtor, as requested;

    (c)    assisting in the development of financial data and presentations to the Debtor's Board of Directors, various creditors, and other third parties as requested;

- 4 -

(d)    providing expert witness testimony concerning any of the subjects encompassed by the other financial advisory services as requested;

(e)    providing such other advisory services as are customarily provided in connection with the analysis and negotiation of a plan under Chapter 11 of the Bankruptcy Code as requested;

(f)    assisting with court required record retention process as requested;

(g)    assisting with all other agreed upon tasks as required and requested by the Debtors during the case.

12.    Attached hereto as Exhibit 1 is biographical information for the primary professionals that will be involved in working on this case.

13.    The Financial Advisory Services that CTG will provide to the Debtor are necessary to enable the Debtor to maximize the value of its estate and to emerge from Chapter 11 protection successfully.

14.    Per the CTG Agreement, fees for services will be based upon the time devoted on the Debtor's behalf and the experience of those providing the services.  CTG will bill at standard hourly rates as follows:

| (a) | Partner | $450.00 |
|-----|---------|---------|
| (b) | Managing Director | $400.00 |
| (c) | Manager | $350.00 |
| (d) | Sr. Consultant | $275.00 |
| (e) | Consultant | $225.00 |
| (f) | Analyst | $150.00 |
| (g) | Administrative | $75.00 |

15.    In addition to the above fees, the Debtor shall further reimburse CTG, pursuant to the CTG Agreement, for all of its reasonable out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and

12/11/2009  09:05   9047780133        PUTNAM LUMBER                    PAGE  01/01

communication charges, courier services, meals, reasonable fees and expenses of CTG's counsel, and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

16.    The fees described above are consistent with CTG's normal and customary billing practices for cases of this size and complexity, which require the level and scope of services outlined in the CTG Agreement.

17.    CTG has provided certain financial advisory services to the Debtor since November 13th, 2009 and has been paid for those services on a monthly basis in accordance with the CTG Agreement.   Prior to the Petition Date, CTG was paid $75,000.00 for the services provided prior to the Petition Date. Per the CTG Agreement, the Debtor agreed to pay CTG for all prepetition services provided, at the above hourly rates, and pay for all prepetition expenses incurred prior to filing its petition in Bankruptcy Court. CTG also received a $100,000 post-petition retainer that will be held and applied to the final invoice issued upon approval of a final fee application. If there are any funds remaining from the retainer, these funds will be promptly returned to the Debtor.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 11th day of December 2009, at Los Angeles, California.

                                        Lee A. Diercks

-6-

**EXHIBIT B**



CLEAR
THINKING
GROUP

November 13th, 2009

Ms. Roberta Morris
Chief Financial Officer
The Walking Company Holdings, Inc.
121 Gray Avenue
Santa Barbara, California 93101

Dear Roberta:

Clear Thinking Group LLC (CTG) is pleased that you have asked CTG to serve in the role of
Financial Advisor for The Walking Company Holdings, Inc. ("Company") and its direct and
indirect subsidiaries (collectively, the "Debtors"), prior to and during their Chapter 11 case(s).
This letter will confirm our discussion regarding the Debtors' engagement of CTG and the terms
on which CTG will provide these advisory services to the Debtors.

The purpose of this letter is to establish our agreement with regard to the nature and scope of our
retention and to provide you and the Debtors with a summary of the Debtors' obligations in
connection with our retention. In this connection, CTG will provide professional services as
described hereinafter in this proposal in accordance with applicable standards of the consulting,
bankruptcy, and "turnaround" professions. We understand fully that the US Bankruptcy Court
must approve this agreement prior to our retention after the bankruptcy petition is filed.

## 1.) SCOPE

CTG will act as the Debtors' Financial Advisor and help prepare the Debtor for a Chapter 11
bankruptcy filing. Post filing CTG will act as the Debtors' Financial Advisor and as such assist
in leading the Debtors' Chapter 11 bankruptcy case. CTG will provide the following services
listed in Exhibit A – Scope of Work.

We will employ commercially reasonable efforts with the goal of obtaining results that are
agreeable to all parties involved, but we do not guaranty the results that are to be achieved.

## 2.) RESOURCES PROVIDED

- Lee Diercks, Partner and Brian Allen, Managing Director will be responsible for the day
  to day management of the assignment.
- Other resources, as required during the assignment. Debtors and CTG will agree to the
  necessary resources before they are utilized.

1

## 3.) FEES & EXPENSES

Fees for services will be based upon the time devoted on the Debtors' behalf and the experience of those providing the services. The Debtors' will provide all other resources required. The work will be billed at our standard hourly rates.

*Hourly Fees.* The engagement will be staffed with professionals at various levels, as the tasks require. Our fees will be based on the hours charged at our hourly rates, which currently are:

| | |
|---|---|
| Partner - | $450.00 |
| Managing Director- | $400.00 |
| Manager | $350.00 |
| Sr. Consultant | $275.00 |
| Consultant- | $225.00 |
| Analyst- | $150.00 |
| Administrative- | $75.00 |

*Cash Expenses.* In addition to the fees set forth above, the Debtors shall pay directly, or reimburse CTG directly, for all reasonable out-of-pocket expenses incurred in connection with this assignment such as travel, lodging, postage, telephone, courier services, copying, conference calls, and facsimile charges. Debtors will also pay for all legal expenses associated with CTG's retention and approval by the Bankruptcy Court and all other legal requirements and actions regarding this bankruptcy case. All such billings will be in accordance with standard Bankruptcy Court practices.

*Payment.* Pre-petition fees and expenses will be billed on a weekly basis and invoices are due upon receipt.CTG will apply the Pre-petition retainer against the weekly invoices first before any additional payment is due. Payment is to be by wire transfer.

Post Petition fees and expenses, CTG will provide monthly billing statements indicating hours, fees, and costs incurred, and their basis, in the amounts applied from deposits, and any current balance owed. Payment will be made per court ordered fee procedures.

*Pre-Petition & Post Petition Retainers.* Since the Debtors require CTG to assist the Debtors pre-petition, CTG will require a retainer of $75,000.00 for the services to be provided prior to the petition date and a retainer of $100,000 for post petition work. The Debtors agree to pay CTG for all pre-petition services provided, at the above hourly rates, and pay for all pre-petition expenses incurred prior to filing their petition in bankruptcy court. Any unused portion of the pre-petition retainer will be held by CTG until the conclusion of the case and will be applied to the final fee application. The post-petition retainer will be held by CTG until the conclusion of the case and will be applied to the final fee application.

**4.) RELATION OF THE PARTIES.**

The parties intend that an independent contractor relationship will be created by this agreement and neither party shall be considered an employee, agent or representative of the other. Employees or agents of CTG are not entitled to any of the benefits that the Debtors provide for the Debtors' employees. The Debtors also agree not to solicit, recruit or hire any employees or agents of CTG for a period of two years subsequent to the completion and/or termination of this agreement.

**5.) CONFIDENTIALITY.**

CTG agrees to keep confidential all information obtained from the Debtors. CTG agrees that neither it nor its directors, officers, principals, employees, agents or attorneys will disclose to any other person or entity, or use for any purpose other than specified herein, any information pertaining to the Debtors or any affiliate thereof which is either non-public, confidential or proprietary in nature ("Information") which it obtains or is given access to during the performance of the services provided hereunder. CTG may make reasonable disclosure of Information to third parties in connection with their performance of their obligations and assignments hereunder. In addition, CTG will have the right to disclose to others in the normal course of business its involvement with the Debtors.

Information includes data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models, or any work product relating to the business of the Debtors, its subsidiaries, distributors affiliates, vendors, customers, employees, contractors and consultants. The Debtors acknowledges that all advice (written or oral) given by CTG to the Debtors in connection with CTG's engagement is intended solely for the benefit and use of the Debtors (limited to its management) in considering the transactions to which it relates. The Debtors agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks and programs referred to herein without CTG's prior approval (which shall not be unreasonably withheld) except as required agents from by law. This agreement shall survive the termination of the engagement.

**6.) INDEMNIFICATION.**

Subject to Bankruptcy Court approval after filing a fee application on notice to the US Trustee, the Debtors agree to indemnify, hold harmless and defend us (including our principals, employees and agents) against all claims, liabilities, losses, damages and reasonable expenses as they are incurred, including reasonable legal fees and disbursements of our counsel and the costs of our professional time (at our rates in effect when such future time is required) relating to or arising out of the engagement, including any legal proceeding in which we may be required or agree to participate but in which we are not a party. We, our principals, employees and agents, may, but are not required to, engage a single firm of separate counsel of our choice in connection with any of the matters to which this indemnification agreement relates. This indemnification agreement excludes acts or omissions by CTG due to any gross negligence, willful misconduct, breach of fiduciary duty, bad faith, and self-dealing.

## 7.) TERMINATION AND SURVIVAL.

This agreement may be terminated at any time by written notice by one party to the other, provided, however, that notwithstanding such termination CTG will be entitled to any fees and expenses due under the provisions of the agreement. Such payment obligations shall inure to the benefit of any successor or assignee of CTG. The obligations of the parties under the Indemnification and Confidentiality sections of this agreement shall survive the termination of the agreement as well as the other sections of this agreement, which expressly provide that they shall survive termination of this agreement.

## 8.) GOVERNING LAW.

This agreement is governed by and construed in accordance with the laws of the State of New Jersey with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof. In the event of any dispute arising between us, including any dispute with respect to this agreement, its interpretation, performance or breach, and are unable to agree on a mutually satisfactory resolution, either party may seek relief from the US bankruptcy court.

## 9.) LIMITATIONS.

This is a services engagement. CTG warrants that it will perform services hereunder in good faith and disclaims all other warranties. We will not be liable for any actions, damages, claims, liabilities, costs, expenses or losses arising out of or relating to the services performed hereunder for an aggregate amount in excess of the fees paid by the Debtors to CTG in performing the services that form the basis for the action or claim. In addition, we will not be liable for any delays resulting from circumstances or causes beyond our reasonable control, including without limitation, fire or other casualty, acts of God, strikes or labor disputes, war or other violence, or any law, order or required of any governmental agency or authority.

## 10.) SEVERABILITY.

If any portion of this agreement shall be determined to be invalid or unenforceable, we each agree that the remainder shall be valid and enforceable to the maximum extent possible.

## 11.) NOTICES.

All notices required or permitted to be delivered under this agreement shall be in writing and sent, if to us, to the address set forth at the signature of this letter and, if to you, to:

The Walking Company Holdings, Inc.
121 Gray Avenue
Santa Barbara, California 93101
Attn: Mr. Roberta Morris, CFO

4

All notices under this agreement shall be sufficient if delivered by facsimile or overnight mail.
Any notice shall be deemed to be given upon actual receipt.

## 12.) ENTIRE AGREEMENT.

The Debtors agree that this agreement represents the entire understanding of the terms of our
engagement and that it supersedes any prior understandings or agreements we may have had or
discussed.  The terms and provisions of this agreement may not be modified or amended except
in a writing signed by an authorized representative of the Debtors and CTG.

If these terms meet with your approval, please sign and return the enclosed copy of this proposal
to my attention.

Very truly yours,

Lee Diercks
Partner
Clear Thinking Group LLC
401 Towne Centre Drive
Hillsborough, NJ  08844

Accepted and Acknowledged:

The Walking Company Holdings, Inc.
on behalf of itself and its subsidiaries

By: _____
Roberta Morris
Chief Financial Officer

Dated:  November 13, 2009

5

## Exhibit A – Scope of Work

**Services to be performed:**

- CTG will assist Debtors in preparation of all necessary schedules and budgets prior to the filing of its Chapter 11 petition as appropriate.
- CTG will assist Debtors in negotiations for DIP financing.
- CTG will actively lead and manage the Chapter 11 bankruptcy case on behalf of the Debtors.
- CTG will assist Debtors with the preparation of the necessary schedules, budgets, and court related reporting.
- CTG will assist Debtors with the court required records retention process.
- CTG will assist Debtors with the reorganization planning process as required by the Debtors.
- CTG will provide Debtors with Expert Witness Testimony as required during the case.
- CTG will assist Debtors with all other agreed upon tasks as required by the Debtors.