Mette H. Kurth (SBN 187100)
Andy S. Kong (SBN 243933)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
E-mail:      kurth.mette@arentfox.com
             kong.andy@arentfox.com

*Proposed* Attorneys for Debtors and Debtors in Possession

Debtors' Mailing Address
121 Gray Avenue
Santa Barbara, CA 93101

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA BARBARA DIVISION

| | |
|---|---|
| In re: | Case No.: 09-bk-15138 |
| **THE WALKING COMPANY**, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes, f/k/a TWC Acquisition Corporation, | Chapter 11 |
| | **APPLICATION FOR ORDER APPROVING THE EMPLOYMENT OF TIGER CAPITAL GROUP LLC AS LIQUIDATION CONSULTANT TO THE DEBTOR PURSUANT TO SECTIONS 327(a) AND 363 OF THE PURSUANT TO SECTIONS 327(a) BANKRUPTCY CODE EFFECTIVE AS OF DECEMBER 7, 2009** |
| Debtor. | |
| | *[No Hearing Required Unless Requested Pursuant to L.B.R. 2014-1(b)]* |

The Walking Company, Inc. (the "Debtor")[1], as debtor and debtor in possession herein hereby moves this Court (the "Application") for entry of an Order pursuant to Sections 327(a) and 363 of the United States Bankruptcy Code (the "Bankruptcy Code"), approving the Debtor's

---

[1] TWC's debtor affiliates are its parent company, The Walking Company Holdings, Inc., a Delaware corporation ("Holdings"), and Holdings' wholly owned subsidiary, Big Dog USA, Inc. ("Big Dog"). Holdings and Big Dog have filed joinders to this Motion. (TWC, Holdings, and Big Dog are collectively referred to as the "Company").

NYC\455868.1

1   agreement with Tiger Capital Group LLC ("TIGER") and appointing TIGER as the Debtor's

2   Liquidation Consultant (the "Application") effective as of December 7, 2009.  In support of the

3   Application, the Debtor relies upon and incorporates by reference the Declaration of Albert T.

4   Nassi, Principal of TIGER in Support of the Application for Order Approving the Employment of

5   Tiger Capital Group LLC as Liquidation Consultant to the Debtor, annexed hereto as Exhibit A

6   (the "Nassi Declaration").  In further support of this Application, the Debtor relies upon the

7   Declarations of Andrew Feshbach and Roberta Roberts, In Support of First Day Pleadings which

8   were filed with the Court, and respectfully represents as follows:

9                                             **I.**

10                          **JURISDICTION AND VENUE**

11          1.      This Court has jurisdiction over this Application pursuant to 28 D.S.C. §§ 157 and

12   1334(b).  Venue of these proceedings is proper in this judicial district pursuant to 28 D.S.C.

13   §§1408 and 1409.  Bankruptcy Code sections 328, 504, and 1103(a), Federal Rules of Bankruptcy

14   Procedure 2014, 2016, and 5002, and Local Bankruptcy rule 20141(b) are the statutory predicates

15   for the relief sought by this Application.

16                                            **II.**

17                                        **FACTS**

18          2.      On December 7, 2009 (the "Petition Date"), the Debtor filed its voluntary petition

19   for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

20          3.      The Debtor continues to operate its business and manage its properties as a debtor

21   in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No creditors'

22   committee, trustee or examiner has been appointed in this case.

23                                           **III.**

24                              **RELIEF REQUESTED**

25          4.      By this Application, the Debtor seeks authorization to employ TIGER as the

26   Debtor's liquidation consultant in connection with the Debtor's Chapter 11 case pursuant to the

27   terms and conditions of the Consulting Agreement between the Debtor and TIGER dated

28   December 7, 2009 (the "TIGER Agreement"), annexed hereto as Exhibit B.  The Debtor proposes

NYC\455868.1                          - 2 -

1   to retain TIGER on the terms and conditions set forth in the TIGER Agreement, with the cost of

2   such services to be paid from the Debtor's estate as contemplated by 28 U.S.C. § 156(c).

3   IV.

4   **BASIS FOR RELIEF**

5        5.     Under Section 327(a) of the Bankruptcy Code, a debtor in possession is authorized

6   to employ professional persons "that do not hold or represent an interest adverse to the estate, and

7   that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its]

8   duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code modifies

9   Sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy

10  Code, providing that "a person is not disqualified for employment under Section 327 of [the

11  Bankruptcy Code] by a debtor in possession solely because of such person's employment by or

12  representation of the debtor before the commencement of the case." 11 D.S.C. § 1107(b). Under

13  Section 328(a) of the Bankruptcy Code, a debtor in possession may employ professional persons

14  under section 327(a) of the Bankruptcy Code "on any reasonable terms and conditions of

15  employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 D.S.C.

16  § 328(a).

17       6.     As required by Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the

18  "Bankruptcy Rules"), this Application sets forth below: (a) the specific facts showing the

19  necessity for TIGER's employment; (b) the reasons for the Debtor's selection of TIGER as its

20  liquidation consultant in connection with its Chapter 11 case; (c) the professional services to be

21  provided by TIGER; (d) the arrangement between the Debtor and TIGER with respect to

22  TIGER's compensation; and (e) to the best of the Debtor's knowledge, the extent of TIGER's

23  connections, if any, to certain parties in interest in this matter.

24  V.

25  **FACTS RELEVANT TO REQUESTED RELIEF**

26  **A.   Debtor's Desire to Retain TIGER**

27       7.     Prior to the Petition Date, the Debtor experienced, and continues to experience,

28  financial difficulties, which difficulties have culminated in the filing of this Chapter 11 case. The

1    Debtor has determined, in the exercise of its business judgment, that the size of its business

2    operations and the reorganization of the same, and the complexity of the financial difficulties

3    attendant upon operations and liquidation of such scope, require it to employ an experienced

4    liquidation consultant.

5    **B.    TIGER's Qualifications**

6        8.    The Debtor has selected TIGER as its liquidation consultant because of TIGER's

7    diverse experience, knowledge, and reputation in the retail liquidation field, its understanding of

8    the issues involved in Chapter 11 cases, and the Debtor believes that TIGER possesses the

9    knowledge and resources and is well qualified to provide the liquidation consulting services that

10    will be required.  TIGER is a nationally recognized asset disposition firm.

11        9.    Since 1972, TIGER, its Principals, and its related predecessors have advised

12    companies and creditors in numerous distressed situations, both in and out of bankruptcy

13    proceedings.  TIGER's clients include companies, creditors, corporate parents, and financial

14    sponsors, as well as acquires of troubled assets.  TIGER or its Principals have participated in

15    many restructurings and Chapter 11 cases for retail clients including Kmart, Sears, Mervyns,

16    Gottschalks, Circuit City, Shoe Pavilion, Ritz Camera, Linens 'n things, Steve & Barry's, Value

17    City, KB Toys, Whitehall Jewelers, Lechters, Phar-Mor, Ames, Hills, County Seat, Edison

18    Brothers, Montgomery Ward, Broadway, Liberty House, Herman's Sporting Goods, and many

19    more.  TIGER has a wealth of experience in providing services in retail Chapter 11 cases and has

20    an excellent reputation as a result of the many years of quality services it has rendered on behalf

21    of debtors throughout the United States.

22        10.    As described above, the Debtor retained TIGER on December 7, 2009, to serve as

23    its liquidation consultant in connection with its financial restructuring.  Since then, TIGER has

24    developed extensive knowledge of the Debtor's business, operations and financial condition.

25    **C.    Services to be Provided by TIGER**

26        11.    The following TIGER professionals will be responsible for providing professional

27    services to the Debtor:  Albert T. Nassi, Daniel M. Kane, Alan Cohen, and Steve Goldberger, all

28    Principals of TIGER.  In addition, other resources or personnel, as required and agreed upon by

1   TIGER and the Debtor during the Chapter 11 process, will be utilized.  To date, TIGER has

2   provided, and/or will provide on a going-forward basis upon the Court's approval of this

3   Application, the following services:

4        TIGER shall provide advice and assistance to Debtor's management with respect to:  The

5        Debtor's plans to close the Stores, the identification and selection of such Stores,

6        negotiation with landlords and other interested parties (including employees or

7        representatives of employees) with respect to such closings, and the conduct of

8        liquidation, store closing, or going out of business sales at each such closing store

9        location, and all other aspects of such store closings including with respect to transport

10       and shipment of any inventory not sold in any sale at such stores).

11  **D.    Disclosure Concerning Conflicts of Interest**

12       12.    TIGER has informed the Debtor that, except as qualified in the Nassi's Declaration

13  annexed to this Application as <u>Exhibit A</u>, TIGER has no material connection with the Debtor, its

14  creditors, any other party in interest, its respective attorneys and accountants, the United States

15  Trustee for the Central District of California (the "U.S. Trustee"), or any person employed in the

16  office of the U.S. Trustee in the above-captioned Chapter 11 case.

17       13.    Based on the Nassi's Declaration, the Debtor believes that TIGER (i) does not

18  hold or represent any interest adverse to the Debtor or its estate, and (ii) is a "disinterested

19  person" as that term is defined in Section 101(14) of the Bankruptcy Code.  Moreover, the Debtor

20  believes that employment of TIGER is necessary and in the best interest of the Debtor and its

21  estate.

22  **E.    Disclosure of Compensation**

23       14.    Per the TIGER Agreement, fees for services will be an initial fee of Seventy-five

24  Thousand Dollars ($75,000).  Any additional fee shall be mutually agreed upon by the Debtor and

25  TIGER, with the consent of Wells Fargo Retail Finance, LLC.

26       15.    In addition to the above fees, the Debtor shall further reimburse TIGER, pursuant

27  to the TIGER Agreement, for all of its reasonable out-of-pocket expenses incurred during this

28  engagement, including, but not limited to, supervision, travel, and lodging, meals, bonus, and

1    other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail

2    the nature and amount of such expenses.  TIGER shall not charge any home office expenses

3    except for out of pocket travel and related expenses.

4            16.    The fees described above are consistent with TIGER's normal and customary

5    consulting fees for cases of this size and complexity, which require the level and scope of services

6    outlined in the TIGER Agreement.

7            17.    TIGER has provided certain liquidation consultant services to the Debtor since

8    December 7, 2009, but has not been paid for those services in accordance with the TIGER

9    Agreement, and no retainer has been received by TIGER.

10   **F.    <u>Connections with the Debtors and Other Parties</u>**

11           18.    To the best of the Debtor's knowledge, information and belief, and except as

12   otherwise stated in the accompanying Nassi Declaration, TIGER and its principals have

13   no connection with and no interests adverse to the Debtor, its creditors, the estate, or any

14   other party in interest herein or their respective professionals in matters relating to the

15   Debtor and their estate, and none of the financial professionals comprising or employed

16   by TIGER are related to any judge of the United States Bankruptcy Court for the Central

17   District of California, the U.S. Trustee, or any person employed in the Office of the

18   United States Trustee.

19           19.    To the best of the Debtor's knowledge and except as otherwise disclosed in

20   the Nassi Declaration, TIGER: (i) does not hold or represent any interest adverse to the

21   Debtor with respect to the matters for which it is being retained; (ii) TIGER is a

22   "disinterested person" as that phrase is defined in the Bankruptcy Code section 101(14)

23   (as modified by Section 1103(b) of the Bankruptcy Code); (iii) neither TIGER nor its

24   professionals have any connection with the Debtor, its estate, or its creditors; and (vi)

25   TIGER's employment is necessary and is in the best interest of the Debtor's estate.

26                                    **VI.**

27                    **<u>NOTICE AND NO PRIOR APPLICATION</u>**

28           20.    Notice of this Application has been given to the following parties, or in lieu

NYC\455868.1                              - 6 -

1    thereof, to their counsel:  (i) the United States Trustee for the Central District of California; (ii)

2    the parties included on the Debtor's list of creditors holding the 30 largest unsecured claims; (iii)

3    Wells Fargo Retail Finance, LLC and Wells Fargo Bank, N.A., the Debtor's prepetition senior

4    secured lender and proposed post petition lender; (iv) landlords with respect to the Debtor's

5    leased property.  In light of the nature of the relief requested, the Debtor respectfully submits that

6    no further notice is necessary.

7         //

8         //

9         //

10        //

11        //

12        //

13        //

14        //

15        //

16        //

17        //

18

19

20

21

22

23

24

25

26

27

28

1

   **WHEREFORE,** the Debtor respectfully requests that the Court enter an order granting

2 (a) approval of the employment and retention of TIGER as liquidation consultants to the Debtor

3 effective as of December 7, 2009, as set forth in the Application, and (b) such other and further

4 relief to the Debtor as the Court may deem proper.

5

6 Dated: December ___, 2009                    THE WALKING COMPANY, INC.

7

8                                              By: _____

9                                              Anthony Wall
                                               Executive Vice President
   Submitted by:

10 Dated: December 11, 2009

11                                             By: _____

12                                             Mette H. Kurth
                                               ARENT FOX LLP
13                                             *Proposed* Attorneys for Debtors and
                                               Debtors in Possession

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

1    Mette H. Kurth (SBN 187100)
     Andy S. Kong (SBN 243933)
2    **ARENT FOX LLP**
     555 West Fifth Street, 48th Floor
3    Los Angeles, CA  90013-1065
     Telephone:   213.629.7400
4    Facsimile:   213.629.7401
     E-mail:      kurth.mette@arentfox.com
5               kong.andy@arentfox.com

6    *Proposed* Attorneys for Debtors and Debtors in
     Possession

7

8    Debtors' Mailing Address
     121 Gray Avenue
9    Santa Barbara, CA 93101

10           **UNITED STATES BANKRUPTCY COURT**

11           **CENTRAL DISTRICT OF CALIFORNIA**

12

13             **SANTA BARBARA DIVISION**

14    In re:

15

16    **THE WALKING COMPANY**, a
     Delaware corporation, d/b/a Alan's
17    Shoes, Footworks, Overland Trading
     Co., Sole Outdoors, and Martini Shoes,
18    f/k/a TWC Acquisition Corporation,

19

20               Debtor.

21

22

23

24

---

Case No.: 09-bk-15138

Chapter 11

**DECLARATION OF ALBERT T. NASSI IN SUPPORT OF APPLICATION FOR ORDER APPROVING THE EMPLOYMENT OF TIGER CAPITAL GROUP LLC AS LIQUIDATION CONSULTANT TO THE DEBTOR PURSUANT TO SECTIONS 327(a) AND 363 OF THE BANKRUPTCY CODE EFFECTIVE AS OF DECEMBER 7, 2009**

*[No Hearing Required Unless Requested Pursuant to L.B.R. 2014-1(b)]*

---

25       I, ALBERT T. NASSI, hereby declare under penalty of perjury, as follows:

26       1.      I am a Principal of Tiger Capital Group LLC ("TIGER") as asset disposition and

27    liquidation consulting firm that specializes in the promotion and management of store closing

28    events for both struggling and healthy retailers, with an office at 340 N. Westlake Boulevard,

NYC\455861.1

1   Suite 260, Westlake Village, California 91362, and with regional offices in Boston,

2   Massachusetts, and New York, New York. I have read the Application for an Order Pursuant to

3   Sections 327(a) and 363 of the Bankruptcy Code Authorizing the Employment of Tiger Capital

4   Group LLC as Liquidation Consultant to the Debtor, executed by Tony Wall on behalf of The

5   Walking Company Holdings, Inc., the above-captioned debtor and debtor in possession (the

6   "Debtor"), and submit this Declaration in support thereof.

7   **TIGER'S QUALIFICATIONS**

8       2.      TIGER is recognized for its expertise in providing asset disposition and liquidation

9   consultant services in financially distressed situations, including advising debtors, creditors, and

10   other constituents in Chapter 11 proceedings.

11       3.      I have considerable experience with Chapter 11 restructuring and other distressed

12   company circumstances, advising both debtors and creditors. Chapter 11 retail advisory

13   assignments in which TIGER or I have been actively involved include, among others: Kmart,

14   Sears, Mervyns, Gottschalks, Circuit City, Shoe Pavilion, Ritz Camera, Linens 'n Things, Steve

15   & Barry's, Value City, KB Toys, Whitehall Jewelers, Lechters, Pha-Mor, Ames, Hills, County

16   Seat, Edison Brothers, Montgomery Ward, Broadway, Liberty House, Herman's Sporting Goods,

17   and many more.

18       4.      My duties as Principal with respect to TIGER's engagement to represent the

19   Debtor includes TIGER providing advice and assistance to Debtor's management with respect to:

20   the Debtor's plans to close the Stores, the identification and selection of such Stores, negotiation

21   with landlords and other interested parties (including employees or representatives of employees)

22   with respect to such closings, and the conduct of liquidation, store closing, or going out of

23   business sales at each such closing store location, and all other aspects of such store closings

24   including with respect to transport and shipment of any inventory not sold in any sale at such

25   stores). Biographical information is attached hereto as <u>Exhibit 1</u>.

26       5.      As described in the Application, since December 7, 2009, TIGER has rendered

27   Liquidation Consultant services to the Debtor in connection with its business reorganization

28   efforts. TIGER has become familiar with the Debtor's operations and is well qualified to advise

1    the Debtor in connection with such asset disposition and liquidation consulting matters.

2    ## DISINTERESTEDNESS OF PROFESSIONALS

3    6.    Based on the results of the conflict search conducted to date by TIGER's

4    compliance department, as described more fully below, and based on my understanding of

5    Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and the practices being

6    followed in other large Chapter 11 cases, to the best of my knowledge, neither I, TIGER, nor any

7    Principal or employee thereof, insofar as I have been able to ascertain, has any connection with

8    the Debtor, its creditors, other parties in interest (as reasonably known to us), its attorneys, the

9    U.S. Trustee, or any person employed in the Office of the U.S. Trustee, except as disclosed or

10    otherwise described herein.

11    7.    To the best of my knowledge, TIGER is a "disinterested person" as that term is

12    defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the

13    Bankruptcy Code.

14    8.    As part of its diverse practice, TIGER appears in numerous cases, proceedings,

15    and transactions involving many different attorneys, accountants, investment bankers, and

16    financial consultants, some of which may represent claimants and parties-in-interest in the

17    Chapter 11 Case. Further, TIGER or companies in which it has investments has in the past, and

18    may in the future, be represented by several attorneys and law firms in the legal community, some

19    of whom may be involved in this proceeding. In addition, TIGER has in the past and will likely

20    in the future be working with or against other professionals involved in this case in matters

21    unrelated to the Debtor or this Chapter 11 case. Based on our current knowledge of the

22    professionals involved, and to the best of my knowledge, none of these business relations

23    constitute interests materially adverse to the Debtor herein in matters upon which TIGER is to be

24    employed.

25    9.    TIGER has represented, and will in the future represent, many different clients

26    with various business interests in numerous industries. These clients are often referred to TIGER

27    by intermediaries such as lawyers, investment bankers, lenders and accountants. Out of an

28    abundance of caution, TIGER makes the following disclosures:

NYC\455861.1                                  - 3 -

(a)   Wells Fargo Retail Finance – TIGER has performed work for WFRF that includes Debtor and unrelated borrowers to this case, and has provided appraisal services to WFRF in this case and in other unrelated bankruptcy cases or other unrelated financial situations.

(b)   Wells Fargo (various divisions) – TIGER has performed work for borrowers of other Wells Fargo Divisions totally unrelated to this case (including WF Foothill, WF Trade Capital. WF Business Credit, Wachovia Capital Finance, etc.) and has provided appraisal services to a number of these Wells Fargo Companies that are totally unrelated to this case.

(c)   As part of TIGER's asset disposition practice, TIGER has worked with various attorneys from Arent Fox LLP on cases totally unrelated to this case.

10.   TIGER agrees to update the disclosure information from time to time if and when additional parties with an interest in or a relationship with the Debtor are identified by the Debtor, in writing, to TIGER.  TIGER has undertaken a thorough review of its computerized database that contains the names of clients and other parties of interest with respect to certain matters.  TIGER has run the following parties through its conflicts system: (a) the Debtor; (b) the Debtor's current officers and directors; (c) the Debtor's secured lenders; and (d) the Debtor's thirty (30) largest unsecured creditors.  TIGER's investigation has not revealed any actual or potential conflicts of interest with respect to TIGER's proposed representation of the Debtor, except as described herein.

11.   TIGER is confident that:  (a) it has not represented, does not represent, and will not represent any parties-in-interest in connection with this Chapter 11 case; and (b) any relationship it may have with any party-in-interest will not interfere with or impair TIGER's representation of the Debtor in this Chapter 11 case.  If this Court approves the proposed employment of TIGER by the Debtor, TIGER will not accept any engagement or perform any services for any entity or person other than the Debtor in this situation.

## PROFESSIONAL SERVICES
## TO BE RENDERED AND COMPENSATION

12.    The parties have entered into an agreement that would govern the relationship between TIGER and the Debtor, a copy of which is attached as Exhibit B to the Application (the "TIGER Agreement"). TIGER has provided, and/or will provide upon the Court's approval of the Application, such Liquidation Consultant services (the "Liquidation Consultant Services") as TIGER and the Debtor shall deem appropriate and feasible in order to advise the Debtor in the course of the Chapter 11 case, including, but not limited to, the following:

> TIGER shall provide advice and assistance to Debtor's management with respect to: The Debtor's plans to close the Stores, the identification and selection of such Stores, negotiation with landlords and other interested parties (including employees or representatives of employees) with respect to such closings, and the conduct of liquidation, store closing, or going out of business sales at each such closing store location, and all other aspects of such store closings including with respect to transport and shipment of any inventory not sold in any state at such stores).

13.    Per the TIGER Agreement, fees for services will be an initial fee of Seventy-five Thousand Dollars ($75,000). Any additional fee shall be mutually agreed upon by the Debtor and TIGER, with the consent of Wells Fargo Retail Finance, LLC.

14.    The fees described above are consistent with TIGER's normal and customary billing practices for cases of this size and complexity, which require the level and scope of services outlined in the TIGER Agreement. TIGER has provided certain Liquidation Consultant services to the Debtor since December 7, 2009, and has not been paid for those services in accordance with the TIGER Agreement, and no retain has been received by TIGER.

15.    The Debtors have an extremely short window in which they can maximize the value of their estates through the conduct of the Store Closing Sales. The Debtors, in consultation with TIGER, determined that the Store Closings Sales should be approximately eight (8) weeks in duration in order to capture the ideal market conditions and maximize recoveries from the Store Closing Sales.

NYC\455861.1                                      - 5 -

1       16.    For the reasons described above, I believe that the Debtors are current suffering,

2  and will continue to suffer, immediate and irreparable harm if the Store Closing Motion is not

3  immediately approved and the Debtors continue to be unable to use optimal market techniques for

4  the Store Closing Sales.

5       I declare under penalty of perjury under the laws of the United States that the foregoing is

6  true and correct.

7       Executed this ___ day of December, 2009, at Ventura, California.

8

9                           ALBERT T. NASSI

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15.    The Debtors have an extremely short window in which they can maximize the value of their estates through the conduct of the Store Closing Sales. The Debtors, in consultation with TIGER, determined that the Store Closings Sales should be approximately eight (8) weeks in duration in order to capture the ideal market conditions and maximize recoveries from the Store Closing Sales.

16.    For the reasons described above, I believe that the Debtors are currently suffering, and will continue to suffer, immediate and irreparable harm if the Store Closing Motion is not immediately approved and the Debtors continue to be unable to use optimal marketing techniques for the Store Closing Sales.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 10th day of December, 2009, at Ventura, California.

ALBERT T. NASSI

**EXHIBIT B**

## CONSULTING AGREEMENT

THIS AGREEMENT (the "Agreement") is entered into as of December 7, 2009, by and between The Walking Company Holdings, Inc. (collectively with its subsidiaries, the "Company"), a Delaware corporation, having its corporate offices at 121 Gray Avenue, Santa Barbara, California 93101, and Tiger Capital Group, LLC (the "Consultant"), a Massachusetts limited liability company, having its offices at 340 N. Westlake Boulevard, Suite 260, Westlake Village, California 91362.

WHEREAS, the addresses listed on the attached Schedule "A" (the "Stores") contains merchandise inventory to be liquidated (the "Inventory"); and

WHEREAS, Company wishes to employ Consultant for the purpose of assisting in liquidating the Inventory by conducting so-called "Stores closing" or "total liquidation" sales at the Stores ("Liquidation Sale" or "Sale").

NOW, THEREFORE, in consideration of the premises and of the mutual covenants herein contained, the parties hereto intending to be legally bound hereby agree as follows:

1.    SUPERVISION.  Commencing as of the date of this Agreement, the Company shall cooperate with Consultant.  Consultant shall provide advice and assistance to Company's management with respect to: the Company's plans to close the Stores, the identification and selection of such Stores, negotiation with landlords and other interested parties (including employees or representatives of employees) with respect to such closings, and the conduct of liquidation, store closing, or going out of business sales at each such closing store location, and all other aspects of such store closings (including with respect to transport and shipment of any inventory not sold in any sale at such store).  Consultant shall have complete



and full access at all times to management of the Company and to the books and records of the Company, including but not limited to the scope of reporting requirements set forth in Schedule B. The Company hereby consents to Wells Fargo Retail Finance (the "Agent") contacting Consultant directly with respect to the status of the store closings and liquidation, going out of business and store closing sales and hereby agrees that such communications shall not be restricted or denied in any way provided that the Agent (and the lenders to the Company that the Agent represents (the "Lenders")) shall not have the right to direct the actions of Consultant or to otherwise exercise any control over Consultant. The Company further agrees that Consultant and/or the Company shall deliver to Agent copies of any written reports, work product, information, document or item received by the Company from Consultant, simultaneously with the delivery or receipt of the same, and any other written reports and work product of Consultant that the Agent and Lenders may reasonably request in their discretion.

2.     <u>CONSULTANT FEE</u>. As consideration for Consultant's efforts and services under this Agreement, Consultant shall receive an initial fee of Seventy-five Thousand Dollars ($75,000). Such fee shall be paid in weekly installments of ten thousand dollars ($10,000), with the last installment being for five thousand dollars ($5,000), with the first payment due the week of December 14, 2009. Any additional fee shall be mutually agreed to by the Company and Consultant, with the consent of Agent.

3.     <u>EXPENSES</u>. Company shall reimburse Consultant for the following expenses to the extent such expenses are reasonable and necessary, including any expenses incurred by Consultant and approved by Company which are necessary and related to Consultant's services. Consultant shall charge no home office expense (except for out-of-pocket

-2-



travel and related expenses) for its management representation. Consultant's expenses shall be paid by Company on a weekly basis upon submission of a detailed invoice by Consultant.

4.  **INSURANCE**. Company shall maintain, during the period of each Sale, all insurance in amounts at least equal to the insurance coverage presently in force. Consultant shall maintain insurance that covers the acts of its Consultants, employees, supervisors and any other parties acting for, with, or on its behalf.

5.  **INDEMNIFICATION**. Consultant and Company agree to indemnify, defend and hold each other free and harmless from and against any and all demands, claims, actions or causes of action, assessments, losses, damages, liabilities, obligations, costs and expenses of any kind whatsoever, including, without limitation, attorneys' fees and costs, asserted against, resulting from or imposed upon, or incurred by either party hereto by reason of or resulting from a material breach of any term or condition contained in this Agreement or any willful or intentional act of the other party.

6.  **AGENCY**. The parties hereby agree that Consultant is acting as an Consultant of Company during the period of this Agreement and as such will observe all of the fiduciary duties which the law imposes on Consultants with respect to their principals. No joint venture or partnership has been formed.

7.  **ASSIGNMENT**. Neither party may assign this Agreement without the express written consent of the other party.

8.  **BANKRUPTCY.** In the event Company becomes subject to a voluntary or involuntary filing under the United States Bankruptcy Code or any other state or federal insolvency law or proceeding, Company shall cooperate with Consultant to file a motion as soon

-3-



as practicable seeking assumption and approval of the Consulting Agreement between the parties by the applicable court. The order entered by the Court shall authorize assumption of such Agreement and the conduct of the Sale on the terms contemplated by the Agreement, including the conduct of the Sale free from interference of third parties, and the sale of the merchandise free and clear of any liens or encumbrances.

9.    **NOTICES.** All notices or other consents and communications required under this Agreement or otherwise shall be in writing and effective only upon receipt, and may be hand-delivered or sent via U.S. express mail, Federal Express or another recognized overnight courier. Notices to Company shall be sent to:

> Andrew Feshbach, President
> The Walking Company
> 121 Gray Avenue
> Santa Barbara, CA 93101

And a copy to:      Roberta Morris, Chief Financial Officer
> The Walking Company
> 121 Gray Avenue
> Santa Barbara, CA 93101
>
> and
>
> Mette H. Kurth, Attorney at Law
> Arent Fox, LLP
> 555 West Fifth Street, 48th Floor
> Los Angeles, CA 90013

and notices to Consultant shall be sent to Albert T. Nassi at the address noted above. Either party may designate additional persons be notified.

-4-



10.    **ENTIRE AGREEMENT**. This Agreement contains the entire understanding of the parties with regard to its subject matter and may not be amended or rescinded except by a writing executed by each of the parties hereto. Each party represents that it has the requisite authority to enter into this Agreement upon the terms and conditions set forth herein.

11.    **EXECUTION**. This Agreement may be executed in counterparts by the parties hereto and any signatures received via facsimile transmissions will be binding and effective between the parties until original signatures are obtained.

12.    **GOVERNING LAW**. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California, without giving effect to conflict of laws principles.

THE WALKING COMPANY

By: _____
ROBERTA MORRIS
Chief Financial Officer
Date: _12/7/09_____

TIGER CAPITAL GROUP, LLC

By: _____
ALBERT T. NASSI
Managing Member
Date: _12/8/09_____



-5-



## SCHEDULE A

| # | Code | Name | Owner |
|---|---|---|---|
| 1 | 39 | Chesterfield Mall | CBL |
| 2 | 93 | Oak Park Mall | CBL |
| 3 | 147 | Gardens Of El Paseo | Circle Street Land Company |
| 4 | 303 | Santana Row | RRF San Jose Town & Country |
| 5 | 115 | Pioneer Place | GGP |
| 6 | 229 | Towson Town Center | GGP |
| 7 | 232 | Beachwood Place | GGP |
| 8 | 262 | Riverchase Galleria | GGP |
| 9 | 270 | Augusta Mall | GGP |
| 10 | 338 | Bellemeade Centre | GGP |
| 11 | 370 | Hill Country Galleri | Hill Country Galleria LP |
| 12 | 287 | Palmer Square | Indy |
| 13 | 324 | The Gateway | Inland |
| 14 | 110 | Broadway Plaza | Macerich |
| 15 | 245 | Freehold Raceway | Macerich |
| 16 | 251 | Ben Tan Village | Macerich |
| 17 | 332 | Valley River Mall | Macerich |
| 18 | 331 | Arrowhead Towne Cntr | Macerich |
| 19 | 129 | Downtown Seattle | Maylend Management Company |
| 20 | 296 | Boise St. Town Ctr | O & B Holdings |
| 21 | 298 | Broadway Blvd - Two | Plaza at Williams Center |
| 22 | 327 | Rosedale Center | PPF RTL Rosedale |
| 23 | 172 | The Falls - Miami | Simon |
| 24 | 225 | South Park | Simon |
| 25 | 231 | Circle Center | Simon |
| 26 | 241 | The Avenues | Simon |
| 27 | 246 | Cobba Galleria | Simon |
| 28 | 260 | Pheasant Lane | Simon |
| 29 | 279 | Rockaway Town Square | Simon |
| 30 | 280 | Mall Of New Hampshir | Simon |
| 31 | 288 | Walt Whitman | Simon |
| 32 | 293 | St. John's Town | Simon |
| 33 | 294 | Eastland Mall | Simon |
| 34 | 297 | Ocean County Mall | Simon |
| 35 | 299 | Solomon Pond | Simon |
| 36 | 308 | Wolfchase Galleria | Simon |
| 37 | 347 | Columbia Center | Simon |
| 38 | 367 | Hamilton Town Center | Simon |
| 39 | 377 | Tyrone Square | Simon |
| 40 | 224 | North Lake | Taubman |
| 41 | 237 | Pier 1 Caesars | Taubman |
| 42 | 240 | Stamford Town Center | Taubman |
| 43 | 287 | Partridge Creek | Taubman |
| 44 | 264 | Town Centre | Turnberry |
| 45 | 239 | Trumbull Mall | Westfield |
| 46 | 277 | Annapolis Mall | Westfield |
| 47 | 283 | Southpark Mall | Westfield |
| 48 | 321 | South Center | Westfield |
| 49 | 354 | Enclave/Mette St Louis | Davis Street Land Company |
| 50 | 358 | Shops At Wiregrass | Forest City |
| 51 | 271 | Whaler's Village | GGP |
| 52 | 289 | King's Village | GGP |
| 53 | 326 | Boise Towne Square | GGP |
| 54 | 343 | Foothills Fashion Ml | GGP |
| 55 | 365 | Fallen Timbers | GGP |
| 56 | 368 | Mall Of Louisiana | GGP |
| 57 | 381 | Bississippis Mall | GGP |
| 58 | 380 | Grand Boulevard | Howard Rock Fee, LLC |
| 59 | 242 | Scottsdale Fashn Sq | Macerich |
| 60 | 244 | 29th St. Boulder | Macerich |
| 61 | 275 | The Oaks | Macerich |
| 62 | 281 | La Encantada | Macerich |
| 63 | 374 | Bell Towers | Madison Marquette Retail |
| 64 | 306 | Seminole Hard Rock | Seminole Properties Retail, LL |
| 65 | 361 | Chino Hills | Shoppes at Chino Hills, Inc |
| 66 | 284 | Shops @ Highland Vig | Shops at Highland Village |
| 67 | 198 | Town Center @ Cobb | Simon |
| 68 | 282 | Stanford Mall | Simon |
| 69 | 352 | Boca Town Center | Simon |
| 70 | 356 | Pier Park | Simon |
| 71 | 388 | Treasure Coast Sq | Simon |
| 72 | 360 | Coral Square | Simon |
| 73 | 220 | Wellington Green | Taubman |
| 74 | 276 | Regency Square | Taubman |
| 75 | 247 | Topanga Mall | Westfield |
| 76 | 280 | Brandon Town Center | Westfield |
| 77 | 293 | Old Orchard | Westfield |
| 78 | 341 | Franklin Park | Westfield |
| 79 | 389 | Roseville | Westfield |
| 80 | SO231 | Destin - Silver Sands | Silver Sands Joint Venture Partners |
| 81 | SO234 | Pigeon Forge | David Ober |
| 82 | SO315 | Palm Beach | Prime |
| 83 | SO277 | Opry Mills | Opry Mills LP |
| 84 | SO308 | Lake George | Adirondack Factory Outlet Center |
| 85 | SO321 | Seaport Village | Seaport Village Operating Company, LLC |
| 86 | SO445 | Pigeon Forge II | Robbins Properties |
| 87 | SO460 | Williamsburg VA | Prime |

## SCHEDULE B
### Scope of Reporting Requirements

This Schedule will set forth Tiger Valuation Services' ("Tiger") requirements in order to provide Wells Fargo Retail Finance, LLC with a desktop "Net Recovery Value of Inventory Report" for The Walking Company ("The Company") on a weekly basis beginning on December 17, 2009. The net recovery analysis will include two separate net recovery values:

1. A net recovery value for stores deemed to be "closing" by the Company (currently estimated by the Company to be between 30-90 stores),
2. A net recovery value for "go-forward" stores.

Tiger will perform the analysis for the "closing" stores on a fee basis. Tiger will use the Company's latest closing store list for each analysis.

Tiger will perform the analysis for "go-forward" stores on an "equity bid" basis—that is, our model will reflect the willingness of Tiger's affiliated company, Tiger Capital Group, LLC, to provide an immediate cash guarantee on the inventory.

Our report will include, but may not be limited to:
   a) Limited overview and Summary of Procedures (Scope),
   b) Net Recovery Analysis, including detail of sale expenses, and
   c) Capacity Analysis

**Schedule:**
Based on the Lender's request, Tiger proposes a weekly desktop report schedule wherein the Company provides Tiger with data every Monday, beginning on December 14, 2009 and ending when the Lender no longer requires the service. Tiger will issue each desktop report three business days following receipt of the required data. Tiger's ability to meet this schedule is contingent upon timely delivery of the requested detailed information.

**Required Data:**
In order to begin the process, Tiger requires the following reports:
   • Inventory by SKU by Location as of December 7, 2009.
   • Store-level profit and loss statements for the 12 months ending November 2009.

Tiger would require the following reports every Monday:
   • Inventory by SKU by Location as of close of business the day prior (Sunday).
   • Sales by SKU by Location for the past seven days, Mon-Sun (should include units, gross sales, net sales, and cost of goods sold).
   • New inventory receipts by SKU by Location for the past seven days, Mon-Sun.
   • Month-end profit and loss statements for subsequent months, such as December 2009, as they become available.


