1 | Mette H. Kurth (SBN 187100)
2 | Andy S. Kong (SBN 243933)
  | **ARENT FOX LLP**
3 | 555 West Fifth Street, 48th Floor
  | Los Angeles, CA  90013-1065
  | Telephone:213.629.7400
4 | Facsimile:213.629.7401
5 | E-mail:      kurth.mette@arentfox.com
  |              kong.andy@arentfox.com

6 | *Proposed* Attorneys for Debtors and Debtors in
  | Possession
7 |
8 | Debtors' Mailing Address
  | 121 Gray Avenue
9 | Santa Barbara, CA 93101

FILED & ENTERED

DEC 16 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY rust        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA BARBARA DIVISION

In re:

**THE WALKING COMPANY**[1], a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes, f/k/a TWC Acquisition Corporation,

              Debtor.

Case No.: 9:09-bk-15138-RR

Chapter 11

**INTERIM ORDER PURSUANT TO 11 U.S.C SECTIONS 105, 361, 362, 363 AND 364 AND RUES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) AUTHORIZING INCURRENCE BY THE DEBTORS OF POST PETITION SECURED INDEBTEDNESS WITH PRIORITY OVER ALL SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (2) GRANTING LIENS, (3) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTORS PURSUANT TO 11 U.S.C. SECTION 363 PROVIDING FOR ADEQUATE PROTECTION, (4) MODIFYING THE**

---

[1] The Walking Company Holdings, Big Dog USA, Inc., and The Walking Company have requested joint administration of their chapter 11 cases.

1

2

3

4

5

6

7

8

9

**AUTOMATIC STAY AND (5)
SCHEDULING A FINAL HEARING**

**[EXHIBIT "A" FILED HEREWITH AND
EXHIBIT "B" CONCURRENTLY FILED
HEREIN]**

<u>**Hearing**</u>

**DATE:     December 14, 2009**

**TIME:     11:00 a.m.**

**PLACE:   1415 State Street
                Santa Barbara, CA 93101**

10    THIS MATTER having come before this United States Bankruptcy Court for the

11  Central District of California (this "**Court**") upon the motion (the "**DIP Motion**") by The

12  Walking Company Holdings, Inc. ("**Parent**") Big Dog US, Inc. ("**Big Dog**") and The

13  Walking Company ("**TWC**") (Parent, Big Dog and TWC, each a "**Debtor**", and,

14  collectively, the "**Debtors**"), as a debtors and debtors-in-possession in the above

15  captioned chapter 11 cases (the "**Cases**") seeking, among other things, entry of an interim

16  order (this "**Interim Order**") authorizing the Debtors, as applicable, to:.

17    (i)    Obtain credit and incur debt, pursuant to sections 363, 364(c) and 364(d) of

18  the Bankruptcy Code, on an interim basis for a period (the "**Interim Period**") from the

19  commencement of these Cases through and including January 8, 2010 (or such earlier date

20  on which the Final Order (as defined herein) is entered) up to the aggregate committed

21  amount of $30,000,000 (on terms and conditions more fully described herein), including

22  the Partial Roll-Up (as defined below) of the outstanding balance of the Pre-Petition

23  Facility (as defined below), secured by first priority, valid, priming, perfected and

24  enforceable Liens (as defined in section 101(37) of chapter 11 of title 11 of the United

25  States Code, as amended (the "**Bankruptcy Code**")) on property of the Debtors' estate

26  pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, subject only

27  to Permitted Prior Liens (as defined below), and with priority, over all other

28

1  administrative expenses, as provided in section 364(c)(1) of the Bankruptcy Code, subject

2  to the terms and conditions contained herein;

3  (ii)    (a) Establish that financing arrangement, including a Partial Roll-Up of the

4  outstanding balance of the Pre-Petition Facility (the "**DIP Facility**") pursuant to (I) the

5  terms of the Pre-Petition Financing Agreement, as amended by that certain Ratification

6  and Amendment Agreement (the "**DIP Financing Agreement**")[2], substantially in the

7  form of Exhibit B to the DIP Motion, by and among Big Dog and TWC, each as a

8  borrower, Wells Fargo Retail Finance, LLC, as administrative agent (the "**DIP Agent**"),

9  and the Lenders party thereto (collectively, the "**DIP Lenders**," and, together with the

10  DIP Agent and the Bank Product Providers, the "**DIP Secured Parties**"), and (II) all other

11  agreements, documents, notes, certificates and instruments executed and/or delivered

12  with, to, or in favor of the DIP Secured Parties, including, without limitation, security

13  agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("**UCC**")

14  financing statements and all other related agreements, documents, notes, certificates, and

15  instruments executed and/or delivered in connection therewith or related thereto

16  (collectively, as the same may be amended, modified or supplemented and in effect from

17  time to time, the "**DIP Financing Documents**"); and (b) incur the "**DIP Obligations**"

18  under and as defined in the DIP Financing Agreement (collectively, the **"DIP**

19  **Obligations**");

20  (iii)    Authorize (a) the use of the proceeds of the DIP Facility (net of any amounts

21  used to pay fees, costs and expenses under the DIP Financing Documents) in each case in

22  a manner consistent with the terms and conditions of the DIP Financing Documents, and

23  in accordance with the Budget (as defined below) (subject to any variances thereto

24  permitted under the terms and conditions of the DIP Financing Agreement) solely for (1)

25  working capital and general corporate purposes, (2) payment of costs of administration of

26  these Cases, to the extent set forth in the Budget, and (b) upon entry of this Interim Order,

27

28  [2]Capitalized terms used in this Interim Order but not defined herein shall have the meanings
ascribed to such terms in the DIP Financing Agreement.

1  the automatic conversion of all pre-petition Letters of Credit issued under the Pre-Petition

2  Financing Agreements to Letters of Credit deemed issued under the DIP Financing

3  Documents, and (c) the partial payment of the Pre-Petition Debt (as defined below) in

4  accordance with the terms of this Interim Order and the DIP Financing Documents,

5  subject to the rights of any statutory committee appointed pursuant to section 1102 of the

6  Bankruptcy Code or any other party in interest other than the Debtors as set forth in

7  Section 7 of this Interim Order;

8           (iv)     Authorize the Pre-Petition Agent (for the benefit of the Pre-Petition

9  Lenders) to apply and all Collections (as defined in the Pre-Petition Financing

10  Agreements as such term is defined below) received in the ordinary course of business

11  from and after the Petition Date and prior to the occurrence of the Commitment

12  Termination Date (as defined herein): (a) first, to reduce the Pre-Petition Debt, and (b)

13  second, to reduce the DIP Obligations pursuant and subject to the provisions of this

14  Interim Order;

15          (v)      Grant, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the

16  Bankruptcy Code, the DIP Agent (for the benefit of the DIP Secured Parties) first priority

17  priming, valid, perfected and enforceable Liens, subject only to the Carve-Out (as defined

18  below) and the Permitted Prior Liens (as defined below), upon all of the Debtors' real and

19  personal property except for Avoidance Actions (as defined below) as provided in and as

20  contemplated by this Interim Order, the DIP Facility and the DIP Financing Agreement;

21          (vi)     Grant, pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Agent

22  (for the benefit of the DIP Secured Parties) super-priority administrative claim status in

23  respect of all DIP Obligations, subject to the Carve-Out as provided herein;

24          (vii)    Authorize the use of "cash collateral" as such term is defined in section 363

25  of the Bankruptcy Code (the "**Cash Collateral**") in which the Pre-Petition Secured Parties

26  (as defined below) have an interest;

27          (viii)   (A) Grant the Pre-Petition Agent (for the benefit of the Pre-Petition Secured

28  Parties) (as defined below) the Pre-Petition Replacement Liens and Pre-Petition

Superpriority Claims (each as defined below) to the extent of any Pre-Petition Diminution in Value (as defined below) of the Pre-Petition Agent's interest in the Pre-Petition Collateral (as defined below) as adequate protection for the granting of the DIP Liens (as defined below) to the DIP Agent, the use of Cash Collateral, and for the imposition of the automatic stay; and (B) make Adequate Protection Payments;

(ix)    Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Documents and this Interim Order;

(x)    Schedule a final hearing (the "**Final Hearing**") to consider entry of a final order (the "**Final Order**") granting the relief requested in the DIP Motion on a final basis; and

(xi)    Waive the ten (10) day stay provisions of Federal Rule of Bankruptcy Procedure 6004(h) and provide for immediate effectiveness of this Interim Order.

This Court having considered the DIP Motion, the First Day Declaration (as defined in the DIP Motion), the exhibits attached thereto, the DIP Facility and the DIP Financing Agreement, and the evidence submitted at the hearing on this Interim Order (the "**Interim Hearing**"); and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the local rules of this Court, due and proper notice of the DIP Motion and the Interim Hearing having been given; an Interim Hearing having been held and concluded on December 14, 2009; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estate and their equity holders, and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

(A) **Petition Date.** On December 7, 2009 (the "Petition Date"), each of the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California. The Debtors have continued in the management and operation of their business and property as Debtors-in-Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

(B) **Jurisdiction and Venue.** This Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for these Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

(C) **Committee Formation.** A statutory committee of unsecured creditors has not yet been appointed in these Cases.

(D) **Notice.** The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001 and LBR 4001-2. Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery on the Petition Date, to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) the Internal Revenue Service and all other governmental agencies who are required to receive notice under the local rules of this Court, (iii) the Debtors' consolidated twenty (20) largest unsecured creditors, (iv) counsel to the Pre-Petition Agent (as defined below), (v) the Pre-Petition Agent (as defined below), (vi) counsel to the proposed DIP Agent, and (vii) all other secured creditors of record. Under the circumstances, such notice of the Interim Hearing and the relief requested in the DIP Motion is due and sufficient notice and

1    complies with sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy

2    Rules 2002, 4001(c), 4001(d) and the local rules of this Court.

3         (E)    **Debtors' Acknowledgements and Agreements.**  Without prejudice to the

4    rights of a statutory committee or other parties in interest as set forth in Section 7 below,

5    the Debtors (on behalf of themselves and their estate) admit, stipulate, acknowledge and

6    agree that (collectively, subsections E (i) through E (xii) hereof shall be referred to herein

7    as the "Debtors' Stipulations").

8              (i)     **Pre-Petition Financing Agreements**.  Prior to the commencement of

9              these Cases, Wells Fargo Retail Finance, LLC ("**WFRF**") made certain

10             revolving advances (the "**Pre-Petition Revolving Loans**") to Big Dogs and

11             TWC and issued certain Letters of Credit on behalf of and for the account of

12             Big Dogs and TWC, (the Pre-Petition Revolving Loans, the "**Pre-Petition**

13             **Facility**") pursuant to (a) the First Amended, Restated and Consolidated

14             Loan and Security Agreement, dated as of July 7, 2005, as amended by each

15             of the amendments more particularly described on Exhibit A attached hereto

16             and made a part hereof Big Dogs and TWC, as borrowers on a joint and

17             several basis, Parent, as guarantor, by and among WFRF, or Administrative

18             Agent (the "**Pre-Petition Agent**"), and Lender (the "**Pre-Petition Lender**",

19             collectively with the Pre-Petition Agent and the Bank Product Providers, the

20             "**Pre-Petition Secured Parties**"), and (b) all other agreements, documents,

21             notes, certificates and instruments executed and/or delivered with, to, or in

22             favor of Pre-Petition Secured Parties, including, without limitation, all

23             notes, mortgages, UCC financing statements and all other related

24             agreements, documents, notes, certificates and instruments executed and/or

25             delivered in connection therewith or related thereto (collectively, and as the

26             same may be amended, modified or supplemented and in effect from time to

27             time, the "**Pre-Petition Financing Agreements**");

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

(ii)  **Pre-Petition Debt Amount.**  As of the Petition Date, Big Dogs and TWC were jointly and severally indebted under the Pre-Petition Financing Agreements (a) pursuant to the Pre-Petition Revolving Loans in the approximate principal amount of $26,000,000, plus Letters of Credit in the approximate stated amount of $0; plus interest accrued and accruing, costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services (collectively the "**Pre-Petition Debt**").

(iii)  **Pre-Petition Borrower Collateral.**  To secure the Pre-Petition Debt, each of Big Dog and TWC granted security interests and Liens (the "**Pre-Petition Borrower Liens**") to the Pre-Petition Secured Parties upon substantially all of their respective assets and personal property, including, without limitation, (a) Accounts, (b) Books, (c) Deposit Accounts, (d) Equipment, (e) General Intangibles, (f) Inventory, (g) Investment Property, (h) Negotiable Collateral, (i) Goods, (j) Commercial Tort Claims, (k) money or other assets of Big Dog or TWC that now or hereafter come into the possession, custody, or control of any Pre-Petition Secured Party or any affiliate thereof, (l) the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any and all Accounts, Books, Documents, Equipment, General Intangibles, Instruments, Inventory, Investment Property, Negotiable Collateral, real property, fixtures, leases and leasehold interests, money, deposit accounts, or other tangible or intangible property resulting from the sale, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof, and (m) liens, guaranties, rights, remedies, and privileges pertaining to any of the foregoing, including the right of stoppage in transit.

(collectively, the "**Pre-Petition Borrower Collateral**"), with priority over all other Liens except any Liens otherwise permitted by the Pre-Petition Financing Agreements (which were valid, properly perfected, unavoidable, and senior to the Pre-Petition Liens, they are referred to herein as the "**Permitted Prior Liens**").  To avoid any doubt, the term "**Permitted Prior Liens**" does not include, and specifically excludes, the Liens securing the Pre-Petition Debt, which Pre-Petition Liens and claims are to be subordinated to, and junior to, the Liens and claims of the DIP Secured Parties.

(iv)    **Pre-Petition Guaranty**.  As an inducement to the Pre-Petition Secured Parties to agree to enter into the Pre-Petition Financing Agreements and agree to provide the Pre-Petition Debt, Parent entered into that certain Amended and Restated General Continuing Guaranty, dated as of July 7, 2005 (the "**Pre-Petition Guaranty**") pursuant to which Parent (then known as "Big Dog Holdings, Inc.") guaranteed to the Pre-Petition Secured Parties the prompt repayment of the Pre-Petition Debt and the performance of all of Big Dogs and TWC's other obligations and agreements under the Pre-Petition Financing Agreements (collectively, the "**Pre-Petition Guaranteed Obligations**"; the Pre-Petition Guaranteed Obligations together with the Pre-Petition Debt, the "**Pre-Petition Obligations**").

(v)    **Pre-Petition Guaranty Collateral.**  To secure the Pre-Petition Guaranteed Obligations, Parent granted security interests and Liens (the "**Pre-Petition Guaranty Liens**"; the Pre-Petition Guaranty Liens together with the Pre-Petition Borrower Liens, the "**Pre-Petition Liens**") to the Pre-Petition Secured Parties upon certain of the Parent's assets and personal property, including, without limitation, (a) Accounts, (b) Books, (c) Equipment, (d) General Intangibles, (e) Inventory, (f) Investment Property, (g) Negotiable Collateral, (h) money or other assets of Parent that now or

hereafter come into the possession, custody, or control of any Pre-Petition
Secured Party or any affiliate thereto, and (i) any and all proceeds and
products, whether tangible or intangible, of any of the foregoing
(subparagraphs (a) through (h)), including proceeds of insurance covering
any or all of the foregoing, and any and all Accounts, Books, Equipment,
General Intangibles, Inventory, Investment Property, Negotiable Collateral,
Real Property, money, deposit accounts, or other tangible or intangible
property resulting from the sale, exchange, collection, or other disposition of
any of the foregoing, or any portion thereof or interest therein, and the
proceeds thereof (collectively, the "**Pre-Petition Guarantor Collateral**";
the Pre-Petition Guarantor Collateral, together with the Pre-Petition
Borrower Collateral, the "**Pre-Petition Collateral**"),[3] with priority over all
other Liens except any Permitted Prior Liens.

(vi)    **Pre-Petition Liens**.  (a) As of the Petition Date (i) the Pre-Petition
Liens were valid, binding, enforceable, perfected first-priority Liens and are
not subject to avoidance, recharacterization or subordination pursuant to the
Bankruptcy Code or applicable non-bankruptcy law, and subject only to any
Permitted Prior Liens, (ii) the Pre-Petition Debt constituted legal, valid and
binding obligations of Big Dogs and TWC, enforceable in accordance with
the terms of the Pre-Petition Financing Agreements (other than in respect of
the stay of enforcement arising from section 362 of the Bankruptcy Code),
no offsets, defenses or counterclaims to any of the Pre-Petition Debt exists,
and no portion of the Pre-Petition Debt is subject to avoidance,
recharacterization or subordination pursuant to the Bankruptcy Code or
applicable non-bankruptcy law, (iii) the Pre-Petition Guarantied Obligations

---

[3] The acknowledgment and agreement by Debtors of the Pre-Petition Debt and the related Liens, rights, priorities and protections granted to or in favor of the Pre-Petition Secured Parties, as set forth herein and in the Pre-Petition Financing Agreement, shall constitute a proof of claim on behalf of the Pre-Petition Secured Parties in these Cases.

1    constituted legal, valid and binding obligations of Parent, enforceable in

2    accordance with the terms of the Pre-Petition Guaranty (other than in

3    respect of the stay of enforcement arising from section 362 of the

4    Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-

5    Petition Guarantied Obligations exists, and no portion of the Pre-Petition

6    Guarantied Obligations is subject to avoidance, recharacterization or

7    subordination pursuant to the Bankruptcy Code or applicable non-

8    bankruptcy law, and (iv) the Pre-Petition Obligations constituted allowable

9    secured claims, and (b) on the date that this Interim Order is entered, the

10   Debtors have waived, discharged and released the Pre-Petition Secured

11   Parties, together with their affiliates, agents, attorneys, officers, directors

12   and employees, of any right the Debtors may have (x) to challenge or object

13   to any of the Pre-Petition Obligations, (y) to challenge or object to the

14   security for the Pre-Petition Obligations, and (z) to bring or pursue any and

15   all claims, objections, challenges, causes of action and/or choses in action

16   arising out of, based upon or related to the Pre-Petition Financing

17   Agreements or otherwise

18   The Debtors do not possess and will not assert any claim, counterclaim,

19   setoff or defense of any kind, nature or description which would in any way

20   affect the validity, enforceability and non-avoidability of any of the Pre-

21   Petition Financing Agreements or the Pre-Petition Secured Parties' Liens,

22   and/or security interests in the Pre-Petition Collateral, or any claim of the

23   Pre-Petition Secured Parties pursuant to the Pre-Petition Financing

24   Agreements.

25   (vii)    **<u>Value of Pre-Petition Collateral.</u>**  After due investigation and

26   evaluation by the Debtors, aggregate value of the Pre-Petition Collateral

27   granted to the Pre-Petition Secured Parties pursuant to the Pre-Petition

28   Financing Agreements exceeded the amount of the Pre-Petition Obligations

1    as of the Petition Date and, accordingly, all of the Pre-Petition Obligations

2    constitutes an over-secured claim within the meaning of section 506(b) of

3    the Bankruptcy Code.

4    (viii)    **Priming of DIP Facility.**  In entering into the DIP Financing

5    Documents, and as consideration therefor, the Debtors hereby agree that

6    until such time as all DIP Obligations are indefeasibly paid in full in cash

7    and the DIP Financing Agreement is terminated in accordance with the

8    terms thereof, the Debtors shall not in any way prime or seek to prime the

9    security interests and DIP Liens provided to the DIP Secured Parties under

10    this Interim Order by offering a subsequent lender or a party-in-interest a

11    superior or *pari passu* Lien or claim pursuant to section 364(d) of the

12    Bankruptcy Code or otherwise.

13    (ix)    **Cash Collateral.**  The Pre-Petition Secured Parties have a security

14    interest and Lien in Cash Collateral, including on all amounts on deposit in

15    Big Dog's and TWC's banking, checking, or other deposit accounts and all

16    proceeds of Pre-Petition Borrower Collateral to secure the other deposit

17    accounts and all proceeds of Pre-Petition Borrower Collateral to secure the

18    Pre-Petition Debt, to the same extent and order of priority as that which was

19    held by each such party pre-petition.

20    (F)    **Findings Regarding the Post-Petition Financing.**

21    (i)    **Need for Post-Petition Financing**.  An immediate need exists for

22    Big Dog and TWC to obtain funds from the DIP Facility in order to

23    continue operations and to administer and preserve the value of their estates.

24    The ability of Big Dog and TWC to finance their operations, to preserve and

25    maintain the value of the Debtors' assets continue to obtain inventory and

26    operate their business as a going concern and ultimately successfully

27    reorganize and maximize a return for all creditors requires the availability of

28    working capital from the DIP Facility and the ability to use cash collateral,

the absence of which would immediately and irreparably harm the Debtors, their estates, their creditors and their equity holders and the possibility for a successful reorganization.

(ii)    **No Credit Available on More Favorable Terms**.  The Debtors have been unable to obtain (A) unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, (B) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Bankruptcy Code section 503(b), (C) credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or (D) credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien, in each case, on more favorable terms and conditions than those provided in the DIP Financing Agreement and this Interim Order.  The Debtors are unable to obtain credit for borrowed money without (i) granting to the DIP Secured Parties the DIP Protections (as defined below), and (ii) allowing the Pre-Petition Lenders to consummate a partial roll-up of the Pre-Petition Facility into the DIP Facility by applying all Collections (as defined in the Pre-Petition Financing Agreement) secured in the ordinary course of business prior to the occurrence of the Commitment Termination Date (as defined below) in the following order: (x) first, to reduce the outstanding obligations pursuant to the Pre-Petition Debt, and (y) second, to reduce the DIP Obligations, which arrangement shall be administered pursuant to the terms and conditions this Interim Order and the DIP Financing Agreement (the "**Partial Roll-Up**").

(iii)    **Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any Permitted Prior Liens are valid, senior, perfected and unavoidable.  Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the DIP Secured Parties,

1    the Pre-Petition Secured Parties, and any committee appointed pursuant to

2    section 1102 of the Bankruptcy Code to challenge the validity, priority,

3    perfection and extent of any such Permitted Prior Lien and or security

4    interest, subject to the time periods set forth in Section 7 of this Interim

5    Order.

6    (G)    **Section 506(c) Waiver.**  The DIP Secured Parties and the Pre-Petition

7    Secured Parties will request a waiver of the provisions of section 506(c) of the Bankruptcy

8    Code as part of the DIP Facility and adequate protection, which request will be delayed

9    until the Final Hearing on the DIP Facility.  This Court specifically does not approve such

10    section 506(c) waiver at this time, but will consider the issue further at the Final Hearing.

11    (H)    **Use of Proceeds of the DIP Facility.**  Proceeds of the DIP Facility (net of

12    any amounts used to pay fees, costs and expenses under the DIP Financing Documents)

13    shall be used, in each case in a manner consistent with the terms and conditions of the DIP

14    Financing Agreement, and in accordance with the Budget (as defined below) (subject to

15    any variances thereto permitted under the terms and conditions of the DIP Financing

16    Agreement), solely for (a) working capital and general corporate purposes, (b) payment of

17    costs of administration of these Cases, to the extent set forth in the Budget, (c) repayment

18    of the Pre-Petition Debt and (d) payment to the Issuing Lender (as such term is defined in

19    the DIP Financing Agreement) any amounts which Big Dogs and TWC are required to

20    pay to reimburse the Issuing Lender for any L/C Disbursements, with the understanding

21    that upon entry of this Interim Order, all pre-petition Letters of Credit issued under the

22    Pre-Petition Financing Agreements shall be deemed issued under the DIP Financing

23    Agreement.

24    (I)    **Payment of Pre-Petition Debt; Application of Proceeds of Collateral.**

25    All Collections received in the ordinary course of business prior to the occurrence of the

26    Commitment Termination Date (as defined below) shall be applied: (a) first, to reduce the

27    outstanding obligations pursuant to the Pre-Petition Debt, (b) second, to reduce the DIP

28    Obligations in accordance with the terms of the DIP Financing Agreement, and (c) third,

1  to the extent that no outstanding balance remains due on the DIP Obligations and Pre-

2  Petition Debt to the Debtors to pay ordinary course expenses incurred following the

3  Petition Date in accordance with the Budget.  Such payment will not prejudice the

4  Debtors or their estate, because payment of such amounts is subject to the rights of an

5  official committee or other parties-in-interest under Section 7 below.

6        (J)    **Adequate Protection for Pre-Petition Secured Parties.**  As a result of the

7  grant of the DIP Liens (as defined below), and the use of Cash Collateral authorized

8  herein, the Pre-Petition Secured Parties are entitled to receive adequate protection

9  pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any Pre-Petition

10  Diminution of Value (as defined below) resulting from the automatic stay or any Debtor's

11  use, sale or lease of the Pre-Petition Collateral (including Cash Collateral) during these

12  Cases.  As adequate protection, the Pre-Petition Agent (for the benefit of the Pre-Petition

13  Secured Parties) will receive: (1) the Pre-Petition Replacement Liens, (2) the Pre-Petition

14  Superpriority Claim, and (3) the Adequate Protection Payments.

15        (K)    **Extension of Financing.**  The DIP Secured Parties have indicated a

16  willingness to provide financing to Big Dogs and TWC in accordance with the DIP

17  Financing Agreement and subject to (i) the entry of this Interim Order and a Final Order,

18  and (ii) findings by this Court that such financing is essential to the Debtors' estate, that

19  the DIP Lenders are good faith financiers, and that the DIP Lenders' claims, super-priority

20  claims, security interests and Liens and other protections granted pursuant to this Interim

21  Order (and the Final Order) and the DIP Facility will not be affected by any subsequent

22  reversal, modification, vacatur or amendment of this Interim Order or the Final Order or

23  any other order, as provided in section 364(e) of the Bankruptcy Code.

24        (L)    **Business Judgment and Good Faith Pursuant to Section 364(e).**  The

25  terms and conditions of the DIP Facility (including, without limitation, the Partial Roll-

26  Up) and the DIP Financing Agreement, and the fees paid and to be paid thereunder are (i)

27  fair, reasonable, and the best available under the circumstances, reflect the Debtors'

28  exercise of prudent business judgment consistent with its fiduciary duties, and are

1   supported by reasonably equivalent value and consideration; (ii) the DIP Facility

2   (including, without limitation, the Partial Roll-Up) and use of Cash Collateral were

3   negotiated in good faith and at arms' length between Big Dogs and TWC, on the one

4   hand, and the DIP Secured Parties and the Pre-Petition Secured Parties on the other, and

5   (iii) use of the proceeds to be extended under the DIP Facility (including, without

6   limitation, the Partial Roll-Up) will be so extended in good faith, and for valid business

7   purposes and uses, the consequence of which is that the DIP Secured Parties are entitled to

8   the protection and benefits of section 364(e) of the Bankruptcy Code.  The Partial Roll-Up

9   and any compensation or payment that may be received by the Pre-Petition Secured

10   Parties incremental to what would have been received had such Partial Roll-Up not

11   occurred, constitute compensation for, in consideration for, and solely on account of, the

12   agreement of such Pre-Petition Secured Parties to make DIP Loans and not as payments

13   under, adequate protection for, or otherwise on account of, the Pre-Petition Debt.

14       (M)   **Relief Essential; Best Interest; Good Cause.**  The relief requested in the

15   DIP Motion (and as provided in this Interim Order) is necessary, essential, and

16   appropriate for the continued operation of the Debtors' business and the management and

17   preservation of the Debtors' assets and personal property.  It is in the best interest of the

18   Debtors' estate to be allowed to establish the DIP Facility (including, without limitation,

19   the Partial Roll-Up) contemplated by the DIP Financing Agreement.  Good cause has been

20   shown for the relief requested in the DIP Motion (and as provided in this Interim Order).

21       (N)   **Entry of Interim Order.**  For the reasons stated above, the Debtors have

22   requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

23       **NOW, THEREFORE**, on the DIP Motion of the Debtors and the record before

24   this Court with respect to the DIP Motion, and with the consent of the Debtors, the Pre-

25   Petition Secured Parties, and the DIP Secured Parties to the form and entry of this Interim

26   Order, and good and sufficient cause appearing therefore,

27       **IT IS ORDERED** that:

28

1.    **Motion Granted**.  The DIP Motion is granted on an interim basis in accordance with the terms and conditions set forth in this Interim Order and the DIP Financing Agreement.

2.    **DIP Financing Documents.**

(a)    **Approval of Entry Into DIP Financing Documents.**  The Debtors are each expressly and immediately authorized, empowered and directed to execute and deliver the DIP Financing Documents and to incur and to perform the DIP Obligations up to $30,000,000 in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Documents, and to execute and deliver all instruments, certificates, agreements and documents which may be required or necessary for the performance by the Debtors under the DIP Facility (including, without limitation, the Partial Roll-Up) and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Financing Documents.  Debtors are each hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses and other amounts described in the DIP Financing Agreement and all other DIP Financing Documents as such become due, including, without limitation, closing fees, administrative fees, commitment fees, Letter of Credit fees and reasonable attorneys', financial advisors' and accountants' fees and disbursements as provided for in the DIP Financing Agreement which amounts shall not otherwise be subject to approval of this Court; provided, however, that unresolved disputes as to the reasonableness of any professional fees and expenses may be determined by this Court.  Upon execution and delivery, the DIP Financing Documents shall represent valid and binding obligations of each Debtor enforceable against each Debtor in accordance with their terms.

(b)    **Authorization to Borrow**.

(i)    In order to enable the Debtors to continue to operate their business during the Interim Period and subject to the terms and conditions of this Interim Order, the DIP Financing Agreement, the other DIP Financing Documents, and the Budget (as defined below) (subject to any variances thereto permitted under the terms and

conditions of the DIP Financing Agreement), Big Dog and TWC are each hereby authorized under the DIP Facility to consummate the Partial Roll-Up and to borrow up to a total committed amount of $30,000,000 (including the issuance of Letters of Credit), comprised of a senior revolving credit facility in the amount of up to $30,000,000 (inclusive of a sublimit for Letters of Credit up to $2,000,000), in accordance with the terms and conditions of the DIP Financing Agreement.

(ii)    Upon execution and delivery of the DIP Financing Documents by each of the Debtors party thereto, such DIP Financing Documents shall constitute valid, binding and non-avoidable obligations of such Debtor enforceable against such Debtor in accordance with their respective terms and the terms of this Interim Order for all purposes during these Cases, any subsequently converted cases of the Debtors under chapter 7 of the Bankruptcy Code or after the dismissal of these Cases.  Except as provided in the proviso appearing at the end of this subsection (ii), no obligation, payment, roll up or repayment thereof or recovery on or in respect thereof, transfer or grant of security under the DIP Financing Documents, or this Interim Order shall be stayed, restrained, revocable, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim; provided, however, that this Court reserves the right to unwind, after notice and hearing, the Partial Roll-Up, or a portion thereof (which might include the disgorgement or re-allocation of interest, fees, principal or other incremental consideration paid in respect thereto and not paid on account of the Pre-Petition Debt), for good cause shown upon a successful challenge, thereto by the Official Creditors Committee or any other party in interest (other than the Debtors), prior to entry of the Final Order.  Without limiting the generality of the foregoing, upon entry of this Interim Order, Big Dog and TWC shall be authorized to effect a Partial Roll-Up of the Pre-Petition Debt by applying all Collections (as defined in

1    the Pre-Petition Financing Agreement) which they receive in the ordinary course from and

2    after the Petition Date and prior to the occurrence of the Commitment Termination Date:

3    (x) first, to the Pre-Petition Debt, and (y) second, to the DIP Obligations; provided,

4    however, that any Net Disposition Proceeds (as defined below) from the sale or other

5    disposition of Collateral shall each be distributed (1) first, against the DIP Obligations,

6    and (2) second, to the Pre-Petition Debt.

7    (c)    **Application of DIP Proceeds**.  The proceeds of the DIP Facility (net

8    of any amounts used to pay fees, costs and expenses under the DIP Financing Agreement)

9    shall be used, in each case in a manner consistent with the terms and conditions of the DIP

10    Financing Agreement, and in accordance with the Budget (as defined below) (subject to

11    any variances thereto permitted under the terms and conditions of the DIP Financing

12    Agreement) solely for (i) working capital and general corporate purposes, and (ii)

13    payment of costs of administration of these Cases, to the extent set forth in the Budget or

14    this Interim Order.  Upon entry of this Interim Order, all pre-petition Letters of Credit

15    issued under the Pre-Petition Financing Agreements shall be deemed issued under the DIP

16    Financing Agreement.

17    (d)    **Conditions Precedent**.  The DIP Secured Parties shall have no

18    obligation to make any loan or advance or to issue any Letter of Credit or other financial

19    accommodation under the DIP Financing Agreement during the Interim Period unless the

20    conditions precedent to make such loan or advance or to issue any Letter of Credit or

21    other financial accommodation under the DIP Financing Agreement have been satisfied in

22    full or waived by the DIP Secured Parties in their sole discretion.

23    (e)    **Post-Petition Liens.**  Effective immediately upon the entry of this

24    Interim Order, the DIP Secured Parties are hereby granted pursuant to sections 361, 362,

25    364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming first priority,

26    continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-

27    petition security interests and Liens (collectively, the "**DIP Liens**"), senior and superior

28    in priority to all other secured and unsecured creditors of the Debtors' estate except as

1  otherwise provided in this Interim Order, upon and to all presently owned and hereafter

2  acquired assets and real and personal property of the Debtors, and all products, Proceeds

3  (cash and non-cash), substitutions, and Accessions of or to any of the foregoing; provided,

4  however, that the Collateral shall not include any avoidance action under chapter 5 of the

5  Bankruptcy Code or the proceeds thereof, other than the proceeds of any avoidance action

6  brought pursuant to section 549 of the Bankruptcy Code to recover any post-Petition Date

7  transfer of collateral, and, **provided further, however, that in respect to real estate**

8  **leases, the DIP Liens shall extend only to any Net Disposition Proceeds arising from**

9  **a sale, assignment or other disposition thereof** (collectively, the "**DIP Collateral**" and,

10  together with the Pre-Petition Collateral, the "**Collateral**").

11  (f)   **DIP Lien Priority**.  The DIP Liens to be created and granted to the

12  DIP Secured Parties, as provided herein, (a) are created pursuant to sections 364(c)(2),

13  364(c)(3) and 364(d) of the Bankruptcy Code, (b) are first, valid, prior, perfected,

14  unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim

15  to any of the DIP Collateral, and are subject only to: (x) the Carve Out, and (y) the

16  Permitted Prior Liens.  The DIP Liens shall secure all DIP Obligations.  The DIP Liens

17  shall not be made subject to or *pari passu* with any Lien or security interest by any court

18  order heretofore or hereafter entered in these Cases except for the Permitted Prior Liens

19  and shall be valid and enforceable against any trustee appointed in these Cases, upon the

20  conversion of any of these Cases to cases under chapter 7 of the Bankruptcy Code or in

21  any other proceedings related to any of the foregoing (any "**Successor Cases**"), and/or

22  upon the dismissal of these Cases.  If approved in the Final Order, the DIP Liens shall not

23  be subject to sections 510, 549, 550, 551 or 506(c) of the Bankruptcy Code.

24  (g)   **Enforceable Obligations**.The DIP Financing Documents shall

25  constitute and evidence the valid and binding obligations of the Debtors, which

26  obligations shall be enforceable against the Debtors, their estates and any successors

27  thereto and their creditors, in accordance with their terms.

28

(h)  **Budget**.  From and after the Petition Date, Big Dog and TWC shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreement and this Interim Order and in accordance with the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreement); *provided, however*, that the Budget is hereby modified to provide that, with respect to those landlords who timely filed objections to the DIP Motion, the Budget shall be deemed to be modified to provide for the payment of the "stub rent" due under their unexpired leases of non-residential real property for the post-petition portion of the month of December 2009 (the "Stub Rent") no later than January 6, 2010, and with respect to those landlords who have not filed timely objections to the DIP Motion, the Budget shall be deemed to be modified to provide for the payment of Stub Rent no later than February 5, 2009.  On or before, December 17, 2009, the Debtors shall file with this Court an amended Budget clearly identifying such Stub Rent payments as a separate and distinct line item of the Budget.

(i)  Consistent with the Budget, the Company is authorized to use its Operating Accounts (BD #3689 and TWC #8079) and its Payroll Accounts (BD #8807 and TWC #8087) for the sole purpose of processing employee obligations pursuant to the *Order Granting Emergency Motion For Order Authorizing Debtor In Possession To Honor Certain Prepetition Employee Benefits And Wages In The Ordinary Course Of Business*, including the Big Dog payroll due on December 11, 2009 and The Walking Company payroll due on December 18, 2009.  All Banks of the Company may rely on the representations of the Company with respect to whether any check or other payment order drawn or issued by the Company prior to the Petition Date should be honored pursuant to this or any other order of this Court, and none of the Company's Banks shall have any liability to any party for relying on such representations by the Company as provided for herein.

(j)  **Superpriority Administrative Claim Status**.  Subject to the Carve-Out all DIP Obligations shall be an allowed super-priority administrative expense claim

(the "**DIP Superpriority Claim**" and, together with the DIP Liens, the "**DIP Protections**") with priority (except as otherwise provided in Section 7 below) in any Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330 of the Bankruptcy Code (except as otherwise provided in Section 7 below), 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726(b), 1113 and 1114 of the Bankruptcy Code, and, if approved in the Final Order, section 506(c) of the Bankruptcy Code), whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment.  Other than the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in this proceeding, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to (subject to the Pre-Petition Superpriority Claim as set forth in this Interim Order), or on a parity with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder.

3.    **Authorization to Use Cash Collateral and Proceeds of DIP Financing Agreement.**

(a)    Pursuant to the terms and conditions of this Interim Order, the DIP Facility and the DIP Financing Agreement, and in accordance with the budget attached hereto as Exhibit A, (as the same may be modified, supplemented or updated from time to time consistent with the terms of the DIP Financing Agreement and this Interim Order, the "**Budget**"), Big Dog and TWC are authorized to use Cash Collateral, to use the advances under the DIP Financing Agreement, and to request the issuance of Letters of Credit and to incur reimbursement obligations to the DIP Secured Parties with respect thereto (during the period commencing immediately after the entry of the Interim Order and terminating upon the Commitment Termination Date (as defined below)).  The Budget may be updated (with the consent and/or at the request of the DIP Agent) from time to time, provided that such updated Budget shall be in form and substance acceptable to the DIP Agent, in its reasonable discretion, and the Debtors and the Debtors shall be required always to comply with the Budget and the DIP Financing Agreement pursuant to the terms of the DIP Facility.  Except in connection with the Debtors' closing of up to ninety (90) store locations as contemplated ("**Contemplated Store Closings**") by the Debtors' motion submitted to this Court seeking approval of such Contemplated Store Closings and the Budget, nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estate outside the ordinary course of business or other proceeds resulting therefrom, except as otherwise expressly permitted in the DIP Facility, the DIP Financing Agreement and this Interim Order and in accordance with the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreement and this Interim Order).

(b)    Except as set forth in Section 7 below, no Cash Collateral or advances under the DIP Financing Agreement may be used by the Debtors, any Committee, or any other person or entity to object to or contest in any manner, or raise any defenses to the validity, extent, perfection, priority, or enforceability of the Pre-

Petition Debt, or any Liens or security interests with respect thereto or any other rights or interests of the Pre-Petition Secured Parties, or to assert any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Pre-Petition Secured Parties.

4.    **Adequate Protection for Pre-Petition Secured Parties**.  As adequate protection for the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, the Debtor's use of Cash Collateral and other decline in value arising out of the automatic stay or the Debtor's use, sale, depreciation, or disposition of the Pre-Petition Collateral ("**Pre-Petition Diminution in Value**"), the Pre-Petition Secured Parties shall receive adequate protection as follows:

(a)    **Pre-Petition Replacement Liens**.  Solely to the extent of the Pre-Petition Diminution in Value of the interests of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Secured Parties shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code additional and replacement security interests and Liens in the DIP Collateral (the "**Pre-Petition Replacement Liens**"), which shall be junior only to the DIP Liens, Permitted Prior Liens and the Carve-Out as provided herein.

(b)    **Pre-Petition Superpriority Claim**.  Solely to the extent of the Pre-Petition Diminution in Value of the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Secured Parties shall have an allowed superpriority administrative expense claim pursuant to Bankruptcy Code section 507(b) (the "**Pre-Petition Superpriority Claim**") which shall have priority (except with respect to the DIP Liens, the DIP Superpriority Claim, and the Carve-Out) over any other claims under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to

1  sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726(b),

2  1113, 1114 of the Bankruptcy Code and, if approved in the Final Order, section 506(c) of

3  the Bankruptcy Code, whether or not such expenses or claims may become secured by a

4  judgment or other non-consensual Lien, levy or attachment.

5         (c)    **Adequate Protection Payments**.  The Pre-Petition Secured Parties

6  shall receive adequate protection in the form of (i) deemed repayment of  a portion of the

7  outstanding amount of the Pre-Petition Debt in accordance with this Interim Order in

8  coordination with  the actual application of Collections (as defined in the Pre-Petition

9  Financing Agreement), and (ii) the deeming of all obligations on account of Letters of

10  Credit, cash management services and bank products as being issued and constituting

11  "DIP Obligations" (as defined in the DIP Financing Agreement) under the DIP Financing

12  Agreement (the "**Adequate Protection Payments**").  Subject to Section 2(b)(ii), Section

13  12, Section 17(a), and Section 17(c) of this Interim Order, all Collections received from

14  and after the Petition Date shall be applied against the Pre-Petition Debt in the following

15  order of priority: (a) first, to Pre-Petition Agent's costs and expenses permitted under

16  Section 19(b); and (b) second, to interest on the dates when due thereunder; and (c) third,

17  to the Pre-Petition Debt.

18         (d)    **Adequate Protection Upon Sale of Collateral.**  Upon the sale of

19  any Collateral pursuant to section 363 of the Bankruptcy Code, any such Collateral shall

20  be sold free and clear of any Permitted Prior Liens, the Pre-Petition Liens, and the Pre-

21  Petition Replacement Liens, provided however, that such Liens shall attach to the

22  proceeds of any such sale in the order and priority as set forth in this Interim Order and

23  the DIP Financing Agreement.

24        5.    **Section 507(b) Reservation.**  Nothing herein shall impair or modify the

25  Pre-Petition Secured Parties' rights to seek additional adequate protection in the event that

26  the adequate protection provided to the Pre-Petition Secured Parties hereunder is

27  insufficient to compensate for the Pre-Petition Diminution in Value, as applicable, of the

28

1    interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral during these

2    Cases or any Successor Cases.

3        6.    **Post-Petition Lien Perfection**.  This Interim Order shall be sufficient and

4    conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Pre-

5    Petition Replacement Liens without the necessity of filing or recording any financing

6    statement, deed of trust, mortgage, or other instrument or document which may otherwise

7    be required under the law of any jurisdiction or the taking of any other action (including,

8    for the avoidance of doubt, entering into any deposit account control agreement or

9    securities account control agreements) to validate or perfect the DIP Liens and the Pre-

10   Petition Replacement Liens or to entitle the DIP Liens and the Pre-Petition Liens to the

11   priorities granted herein.  Notwithstanding the foregoing, the DIP Agent and the Pre-

12   Petition Agent may, each in its sole discretion, file such financing statements, mortgages,

13   security agreements, notices of Liens and other similar documents, and are hereby granted

14   relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so,

15   and all such financing statements, mortgages, security agreements, notices and other

16   documents shall be deemed to have been filed or recorded at the time and on the date of

17   the commencement of these Cases.  The Debtors shall execute and deliver to the DIP

18   Agent and the Pre-Petition Agent all such financing statements, mortgages, notices and

19   other documents as the DIP Agent and the Pre-Petition Agent may reasonably request to

20   evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP

21   Liens and the Pre-Petition Replacement Liens granted pursuant hereto.  Each of the DIP

22   Agent and the Pre-Petition Agent in its discretion, may file a photocopy of this Interim

23   Order as a financing statement with any recording officer designated to file financing

24   statements or with any registry of deeds or similar office in any jurisdiction in which the

25   Debtors have real or personal property, and in such event, the subject filing or recording

26   officer shall be authorized to file or record such copy of this Interim Order.  The DIP

27   Agent shall, in addition to the rights granted to it under the DIP Financing Documents, be

28   deemed to be the successor in interest to the Pre-Petition Secured Parties with respect to

1    all third party notifications in connection with the Pre-Petition Financing Agreements, all

2    Pre-Petition Collateral access agreements, all bailments for perfection purposes and all

3    other agreements with third parties (including any agreement with a customs broker,

4    freight forwarder or credit card processor) relating to, or waiving claims against, any Pre-

5    Petition Collateral, including without limitation, each collateral access agreement duly

6    executed and delivered by any landlord of the Debtors and including, for the avoidance of

7    doubt, all deposit account control agreements, securities account control agreements and

8    credit card agreements, provided, that the Pre-Petition Agent shall continue to have all

9    rights pursuant to each of the foregoing, and to the extent that the DIP Agent succeeds to

10    the rights therein of the Pre-Petition Agent, the DIP Agent shall continue to hold any

11    Collateral delivered to it as a bailee for perfection purposes for the benefit of the Pre-

12    Petition Secured Parties.

13           7.        **Reservation of Certain Third Party Rights and Bar of Challenges and**

14    **Claims.**  Nothing in this Interim Order or the DIP Financing Agreement, including,

15    without limitation, the Debtors' Stipulations, shall prejudice whatever rights any official

16    committee(s) or any other party in interest with requisite standing (other than the Debtors)

17    may have (a) to file a contested matter or an adversary proceeding or otherwise to object

18    to or challenge the findings herein, including, but not limited to, those in relation to (i) the

19    validity, extent, perfection, enforceability or priority of the mortgage, security interests

20    and Liens of the Pre-Petition Secured Parties in and to the Pre-Petition Collateral, or (ii)

21    the validity, allowability, priority, status or amount of the Pre-Petition Debt, or (b) to

22    bring suit or otherwise assert any claims or causes of action against any of the Pre-Petition

23    Secured Parties in connection with or related to the Pre-Petition Financing Agreements, or

24    the actions or inactions of any of the Pre-Petition Secured Parties arising out of or related

25    to the Pre-Petition Financing Agreements; provided, however, that, unless any official

26    committee(s) or any other party in interest with requisite standing commences a contested

27    matter or adversary proceeding raising such objection or challenge, including without

28    limitation any claim against the Pre-Petition Secured Parties in the nature of a setoff,

1    counterclaim or defense to the Pre-Petition Debt (including but not limited to, those under

2    sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of

3    suit against any of the Pre-Petition Secured Parties as applicable), within (a) 60 days

4    following the selection of counsel by the official committee of unsecured creditors, or (b)

5    if no official committee of unsecured creditors is appointed, 75 days following entry of

6    the Interim Order (collectively, (a) and (b) shall be referred to as the "**Challenge Period**,"

7    and the date that is the next calendar day after the termination of the Challenge Period, in

8    the event that no contested matter, adversary proceeding or other objection or challenge is

9    raised during the Challenge Period shall be referred to as the "**Challenge Period**

10    **Termination Date**"), upon the Challenge Period Termination Date, (i) any and all such

11    contested matters, adversary proceedings and other objections and challenges by any party

12    (including, without limitation, all creditors, official creditors' committee(s), any chapter

13    11 or chapter 7 trustee appointed herein or in any Successor Cases, receivers,

14    administrators, examiners with expanded powers, responsible officers, other estate

15    representatives appointed in these Cases or any Successor Cases or in any jurisdiction, and

16    all other parties in interest) shall be deemed to be forever waived and barred, (ii) the Pre-

17    Petition Debt shall be deemed to be allowed in full and shall be deemed to be allowed as

18    fully secured claims within the meaning of section 506 of the Bankruptcy Code for all

19    purposes in connection with these Cases and any Successor Cases, (iii) the Liens in favor

20    of the Pre-Petition Secured Parties shall be deemed to have been, as of the Petition Date,

21    legal, valid, binding, perfected security interests and Liens, not subject to

22    recharacterization, subordination or otherwise avoidable, (iv) the Debtors' Stipulations

23    shall be binding on all parties (including, without limitation, all creditors, official

24    creditors' committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any

25    Successor Cases, receivers, administrators, examiners with expanded powers, responsible

26    officers, other estate representatives appointed in these Cases or in any Successor Cases or

27    in any jurisdiction, and all other parties in interest).  To the extent any such contested

28    matter, adversary proceeding or other objection or challenge is filed, the Pre-Petition

1    Secured Parties shall be entitled to include such costs and expenses, including but not

2    limited to reasonable attorneys' fees, incurred in defending the objection or complaint as

3    part of the Pre-Petition Debt in each case, to the extent allowable under section 506(b) of

4    the Bankruptcy Code.

5           8.     **<u>Carve-Out</u>**.  Subject to the terms and conditions contained in this Section 8,

6    the DIP Liens, DIP Superpriority Claims, Pre-Petition Liens, Pre-Petition Replacement

7    Liens and Pre-Petition Superpriority Claim granted hereunder shall be subordinate to the

8    following (the "**Carve-Out**"): (a) allowed administrative fees of the U.S. Trustee's Office

9    pursuant to 28 U.S.C.  Section 1930(a)(6); and (b) allowed reasonable fees and expenses

10   of attorneys and financial advisors employed by the Debtors and any official committee(s)

11   of creditors pursuant to sections 327, 328, 1102 and 1103 of the Bankruptcy Code (the

12   "**Case Professionals**") incurred after the occurrence of the Commitment Termination

13   Date (as defined below) up to $200,000 in the aggregate.  Notwithstanding the foregoing,

14   subject to there being sufficient availability under the DIP Credit Facility, (i) the Debtors

15   may pay compensation and expense reimbursements to the Case Professionals and

16   attorneys and financial advisors employed by the DIP Agent ("**DIP Agent**

17   **Professionals**") prior to the occurrence of the Commitment Termination Date and the

18   dollar limit in clause (b) above on fees and expenses to Case Professionals shall neither be

19   reduced nor increased by the amount of any compensation or reimbursement expenses

20   incurred, ordered or paid prior the occurrence of the Commitment Termination Date and

21   (ii) the Debtors may provide for the payment of the professional fees and expenses of the

22   Case Professionals and the DIP Agent Professionals pursuant to the preceding sentence by

23   causing the deposit of the weekly amount listed in the Budget into a professional fee

24   reserve account ("**Professional Fee Reserve Account**") maintained with Debtors' counsel

25   from which the fees and expenses of the Case Professionals shall be paid when allowed by

26   the Court  or in accordance with any procedure established by the Court for the payment

27   of interim compensation and the fees of the DIP Agent Professionals shall be paid when

28   deemed allowed pursuant to <u>Section 19(b)</u> hereof.  Funds on deposit in the Professional

Fee Reserve shall be used first to pay fees and expenses of the Case Professionals and the

DIP Agent Professionals.  Any funds remaining in the Professional Fee Reserve after

payment in full of the final allowed fees of the Case Professionals and the DIP Agent

Professionals shall be returned to the DIP Agent to the extent necessary to pay any

unsatisfied DIP Obligations or Pre-Petition Obligations. In their discretion, the DIP

Lenders shall fund the Carve-Out, in escrow with the Debtors' counsel who shall deposit

such funds in the Professional Fee Reserve, upon the Commitment Termination Date (as

defined below).  Upon the full and final funding of the Carve-Out, there shall be no

further obligations on the part of the DIP Secured Parties or the Pre-Petition Secured

Parties regarding the Carve-Out or the Professional Fees and Expenses.  The DIP Secured

Parties' obligation to fund or otherwise pay the Carve-Out, including allowed professional

fees, shall be added to and made a part of the DIP Obligations, secured by the DIP

Collateral, and the DIP Secured Parties shall be entitled to all of the rights, claims, Liens,

priorities, and protections under this Interim Order, the DIP Financing Agreement, the

Bankruptcy Code and/or applicable law in connection therewith.  Subject to the

subsequent provisions of this Section 8, the Carve-Out shall exclude any fees and

expenses (x) incurred in connection with the assertion or joinder in any claim,

counterclaim, action, proceeding, application, motion, objection, defenses or other

contested matter, the purpose of which is to seek any order, judgment, determination or

similar relief (A) invalidating, setting aside, avoiding, or subordinating, in whole or in

part, (i) the DIP Obligations, (ii) the Pre-Petition Debt, (iii) the Pre-Petition Liens in the

Pre-Petition Collateral, or (iv) the DIP Secured Parties' and the Pre-Petition Secured

Parties' Liens in the Collateral, or (B) preventing, hindering or delaying, whether directly

or indirectly, the DIP Secured Parties,' or Pre-Petition Secured Parties' assertions or

enforcement of their Liens, security interests or realization upon any DIP Collateral, (y) in

using cash collateral of the DIP Secured Parties and the Pre-Petition Secured Parties

selling or otherwise disposing of any other Collateral, or incurring any indebtedness not

permitted under the DIP Financing Agreement, without the DIP Agent's express written

consent or (z) arising after the conversion of the chapter 11 Cases to cases under chapter 7

of the Bankruptcy Code. The DIP Agent shall implement a Reserve in respect to the

Carve-Out in accordance with the terms and conditions of the DIP Financing Agreement.

Except for the DIP Secured Loan Parties obligation to fund the Carve-Out, nothing herein

shall be construed to obligate the Pre-Petition Secured Parties or the DIP Secured Parties,

in any way, to pay the professional fees or U.S. Trustee Fees, or to assure that the Debtors

have sufficient funds on hand to pay any professional fees or U.S. Trustee Fees.

9.    **Payment of Compensation.**  Nothing herein shall be construed as consent

to the allowance of any professional fees or expenses of any of the Debtors, any official

committee or of any person or shall affect the right of the DIP Secured Parties or the Pre-

Petition Secured Parties to object to the allowance and payment of such fees and expenses

or to permit the Debtors to pay any such amounts not set forth in the Budget.

10.    **Section 506(c) Claims.**  Nothing contained in this Interim Order shall be

deemed a consent by the Pre-Petition Secured Parties or the DIP Secured Parties to any

charge, lien, assessment or claim against the Collateral under section 506(c) of the

Bankruptcy Code or otherwise; provided, however, that during the interim period there

shall be no waiver of section 506(c) of the Bankruptcy Code.

11.    **Collateral Rights**.  Unless the DIP Agent has provided its prior written

consent or all DIP Obligations and Pre-Petition Debt have been indefeasibly paid in full in

cash (or will be paid in full in cash upon entry of an order approving indebtedness

described in subparagraph (a) below), all commitments to lend have terminated, all Letters

of Credit have been secured by cash collateral as required by the DIP Financing

Agreement, all indemnity obligations under the DIP Financing Agreement have been cash

collateralized, there shall not be entered in this proceeding, or in any Successor Cases, any

order which authorizes any of the following:

(a)    the obtaining of credit or the incurring of indebtedness that is secured

by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP

1    Collateral and/or entitled to priority administrative status which is equal or senior to those

2    granted to the DIP Secured Parties or the Pre-Petition Secured Parties; or

3            (b)    the use of Cash Collateral for any purpose other than to pay in full in

4    cash the DIP Obligations or as otherwise permitted in this Interim Order and the DIP

5    Financing Agreement; or

6            (c)    relief from stay by any person other than of the DIP Secured Parties

7    on all or any portion of the Collateral; or

8            (d)    the Debtors' return of goods constituting Collateral pursuant to

9    section 546(h) of the Bankruptcy Code, except as permitted in the DIP Financing

10   Agreement.

11           12.    **Proceeds of Subsequent Financing.**  Without limiting the provisions and

12   protections of Section 11 above, if at any time prior to the repayment in full of all DIP

13   Obligations and the termination of the DIP Secured Parties' obligations to make loans and

14   advances and issue Letters of Credit under the DIP Facility, including subsequent to the

15   confirmation of any chapter 11 plan or plans (the "**Plan**") with respect to the Debtors, and

16   the repayment in full of the Pre-Petition Debt, the Debtors' estate, any trustee, any

17   examiner with enlarged powers or any responsible officer subsequently appointed, shall

18   obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d)

19   in violation of the DIP Financing Agreement, then all of the cash proceeds derived from

20   such credit or debt and all Cash Collateral shall immediately be turned over (a) first, to the

21   DIP Agent for application to the DIP Obligations outstanding pursuant to the terms of the

22   DIP Financing Agreement, and (b) second, to the Pre-Petition Agent for application to the

23   Pre-Petition Debt outstanding pursuant to the Pre-Petition Financing Agreement, in each

24   case, in accordance with the terms of this Interim Order provided, however, that any

25   proceeds of a refinancing, Net Disposition Proceeds (as defined below) from the sale or

26   other disposition of Collateral or Collections received after the occurrence of the

27   Commitment Termination Date (as defined below) shall each be distributed (1) first,

28   against the DIP Obligations, and (2) second, to the Pre-Petition Debt.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

13.    **Commitment Termination Date.**  All (i) DIP Obligations of the Debtors to the DIP Secured Parties shall be immediately due and payable, and (ii) authority to use the proceeds of the DIP Financing Documents and to use Cash Collateral shall cease, both on the date that is the earliest to occur of: (i) April 15, 2010, (ii) the occurrence of any Event of Default or the Termination Date under the DIP Financing Agreement, or (iii) the date upon which a Transaction is closed as contemplated by the DIP Financing Agreement (the "**Commitment Termination Date**").

14.    **Payment from Proceeds of Collateral.**  Subject to the rights, if any, of the holders of any Permitted Prior Liens and the Carve Out, all products and proceeds of the DIP Collateral (including, for the avoidance of doubt, proceeds from receivables and sales in the ordinary course of business, insurance proceeds, and proceeds of all dispositions of Collateral, whether or not in the ordinary course) regardless of whether such Collateral came into existence prior to the Petition Date, shall be remitted directly to the Agent for application in accordance with Section I hereof.

15.    **Disposition of Collateral.**  Except for the Contemplated Store Closings or in connection with a Transaction (each subject to the terms and conditions of the DIP Financing Agreement), the Debtors shall not (a) sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, without the prior written consent of the DIP Secured Parties (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Secured Parties or an order of this Court), except for sales of the Debtors' inventory in the ordinary course of business or except as otherwise provided for in the DIP Financing Agreement and this Interim Order and as approved by the Bankruptcy Court, or (b) assume, reject or assign any Leasehold Interest (as defined in the DIP Financing Agreement) without the prior consultation with the DIP Agent, except as otherwise provided for in the DIP Financing Agreement with respect to the Targeted Stores.

16.    **Transaction Proceeds; Survival of Protections**.  Any and all Net Disposition Proceeds from a Transaction or arising from a Contemplated Store Closing

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    shall, subject to the rights, if any, of any holders of Permitted Prior Liens and the Carve

2    Out, be remitted to the DIP Agent within 2 days of Debtors' receipt thereof for application

3    to the DIP Obligations and the unpaid Pre-Petition Debt in accordance with the terms of

4    the DIP Financing Agreement and this Interim Order.  Unless and until the Pre-Petition

5    Debt and the DIP Obligations are irrevocably repaid in full or have been cash secured to

6    the reasonable satisfaction of the DIP Agent and the Pre-Petition Agent, as applicable, all

7    commitments under the DIP Financing Agreements to lend have irrevocably terminated,

8    all Letters of Credit have been cash secured as required by the DIP Financing Agreement,

9    the protections afforded to the Pre-Petition Secured Parties and the DIP Secured Parties

10   pursuant to this Interim Order or the DIP Financing Agreement, as applicable, and any

11   actions taken pursuant thereto, shall survive the entry of an order confirming a Plan or

12   converting these Cases into Successor Cases, and the DIP Liens, the DIP Superpriority

13   Claim and the Pre-Petition Superpriority Claim shall continue in these proceedings in any

14   Successor Cases, and such Liens, DIP Superpriority Claim and the Pre-Petition

15   Superpriority Claim shall maintain their priority as provided by this Interim Order.

16       17.    **Rights and Remedies Upon Commitment Termination Date**.

17            (a)    Any automatic stay otherwise applicable to the Pre-Petition Secured

18   Parties and the DIP Secured Parties is hereby modified so that after the occurrence of the

19   Commitment Termination Date and at any time thereafter upon five (5) Business Days

20   prior notice of such occurrence, in each case given to each of the Debtors, counsel for the

21   Creditors' Committee, if any, and the U.S. Trustee, the Pre-Petition Secured Parties and

22   the DIP Secured Parties shall be entitled to exercise their rights and remedies in

23   accordance with the Pre-Petition Financing Agreements and the DIP Financing

24   Documents.  Immediately following the giving of notice by the DIP Agent of the

25   occurrence of the Commitment Termination Date: (i) the Debtors shall, subject to the

26   rights, if any, of the holders of any Permitted Prior Liens and the Carve Out, continue to

27   deliver and cause the delivery of the proceeds of Collateral (x) first, to the DIP Agent for

28   application to the DIP Obligations pursuant to the DIP Financing Documents, and (y)

second, to the Pre-Petition Agent for application to the Pre-Petition Debt pursuant to the

Pre-Petition Financing Agreement; in each case, in accordance with this Interim Order;

(ii) the DIP Agent shall continue to apply such proceeds in accordance with the provisions

of this Interim Order and the DIP Financing Documents; (iii) the Debtors shall have no

right to use any of such proceeds, nor any other Cash Collateral other than towards the

satisfaction of the Pre-Petition Debt, the DIP Obligations, and the Carve-Out; and (iv) any

obligation otherwise imposed on the DIP Secured Parties to provide any loan or advance

or to issue any Letters of Credit to or for the benefit of Debtors pursuant to the DIP

Facility shall be suspended.  Following the giving of notice by the DIP Agent of the

occurrence of the Commitment Termination Date, Debtors shall be entitled to an

emergency hearing before this Court solely for the purpose of contesting whether the

Commitment Termination Date has occurred.  If the Debtors do not contest the right of the

Pre-Petition Secured Parties and the DIP Secured Parties to exercise their remedies based

upon whether the Commitment Termination Date has occurred within such time period, or

if the Debtors do timely contest the occurrence of the Commitment Termination Date and

this Court after notice and hearing declines to stay the enforcement thereof, the automatic

stay, as to the Pre-Petition Secured Parties and the DIP Secured Parties shall automatically

terminate at the end of such notice period.

> (b)     If the Pre-Petition Secured Parties or the DIP Secured Parties

exercise any of their rights and remedies upon the occurrence of the Commitment

Termination Date, the DIP Agent may retain one or more agents to sell, lease, or

otherwise dispose of the Collateral.  In any exercise of their rights and remedies upon the

Commitment Termination Date, the DIP Secured Parties are authorized to proceed under

or pursuant to the DIP Financing Agreement.  Without limiting the foregoing, subject to

the terms of the DIP Financing Agreement, in the exercise of the DIP Agent's rights and

remedies upon the Commitment Termination Date, the DIP Agent may by written notice

to the Debtors require the Debtors to file a motion seeking to retain one or more agents to

sell, lease, or otherwise dispose of the Collateral on terms acceptable to the DIP Agent

(the cost of which shall be funded by the DIP Facility or use of Cash Collateral in accordance with the Budget).  The Debtors shall file such motion within ten (10) days of the DIP Agent's request and shall diligently prosecute such motion.  If the Debtors fail to so file the motion, the DIP Agent may, file and prosecute such a motion in the name of the Debtors.

(c)    Subject to the rights, if any, of the holders of any Permitted Prior Liens and the Carve Out, all proceeds realized from any of the foregoing shall be turned over (x) first, to the DIP Agent for application to the DIP Obligations pursuant to the DIP Financing Documents, and (y) second, to the Pre-Petition Agent for application to the Pre-Petition Debt pursuant to the Pre-Petition Financing Agreement; in each case, in accordance with this Interim Order.

(d)    <u>Modification of Automatic Stay</u>.  The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the DIP Financing Agreement as necessary to (1) permit the Debtors to grant the Pre-Petition Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the Pre-Petition Secured Parties and the DIP Secured Parties under the DIP Financing Documents, the DIP Facility, and this Interim Order, as applicable, and (2) authorize the DIP Secured Parties and the Pre-Petition Secured Parties to retain and apply payments hereunder.

(e)    Nothing included herein shall prejudice, impair, or otherwise affect Pre-Petition Secured Parties', any holder of a Permitted Prior Lien or DIP Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors or the DIP Secured Parties' rights, as provided in the DIP Financing Agreement, to suspend or terminate the making of loans under the DIP Financing Agreement.

18.    **Proofs of Claim.**  The Pre-Petition Secured Parties and the DIP Secured Parties will not be required to file proofs of claim in these Cases or Successor Cases.  This Interim Order shall constitute a proof of claim on behalf of the Pre-Petition Secured Parties and the DIP Secured Parties in these Cases.  The Pre-Petition Secured Parties are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend

1    and/or supplement, as they see fit) aggregate proofs of claim in these Cases or any

2    Successor Cases.  Any proof of claim so filed shall be deemed to be in addition and not in

3    lieu of any other proof of claim that may be filed by any of the Pre-Petition Secured

4    Parties.

5            19.    **Other Rights and Obligations.**

6            (a)    **Good Faith Under Section 364(e) of the Bankruptcy Code.  No**

7    **Modification or Stay of this Interim Order**.  Based on the findings set forth in this

8    Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is

9    applicable to the DIP Facility (including, without limitation, the Partial Roll-Up)

10   contemplated by this Interim Order, in the event any or all of the provisions of this Interim

11   Order are hereafter modified, amended or vacated by a subsequent order of this or any

12   other Court, the DIP Secured Parties are entitled to the protections provided in section

13   364(e) of the Bankruptcy Code and no such modification, amendment or vacation shall

14   affect the validity and enforceability of any advances made hereunder or Lien or priority

15   authorized or created hereby.  Notwithstanding any such modification, amendment or

16   vacation, any claim granted to the DIP Secured Parties hereunder arising prior to the

17   effective date of such modification, amendment or vacation of any DIP Protections

18   granted to the DIP Secured Parties shall be governed in all respects by the original

19   provisions of this Interim Order, and the DIP Secured Parties shall be entitled to all of the

20   rights, remedies, privileges and benefits, including the DIP Protections granted herein,

21   with respect to any such claim.  Since the loans made pursuant to the DIP Financing

22   Agreement are made in reliance on this Interim Order, the obligations owed the DIP

23   Secured Parties prior to the effective date of any stay, modification or vacation of this

24   Interim Order cannot, as a result of any subsequent order in these Cases, or in any

25   Successor Cases, be subordinated, lose their Lien priority or superpriority administrative

26   expense claim status, or be deprived of the benefit of the status of the Liens and claims

27   granted to the DIP Secured Parties under this Interim Order and/or the DIP Financing

28   Agreements.

(b) **Expenses**. As provided in the Pre-Petition Financing Agreements and the DIP Financing Documents, all costs and expenses of the DIP Secured Parties and the Pre-Petition Secured Parties in connection with the DIP Financing Documents and Pre-Petition Financing Agreements, as applicable, whether incurred prior to or after the commencement of these Cases, including, without limitation, reasonable, documented legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out of pocket expenses will be paid by the Debtors, whether or not the transactions contemplated hereby are consummated; provided, however, that such costs and expenses shall be paid only after each relevant professional has provided copies of its fee and expense statements to the U.S. Trustee and counsel to any committee appointed pursuant to section 1102 of the Bankruptcy Code reasonably contemporaneously with the delivery of such fee and expense statements to the Debtors. Such statements shall contain reasonable detail as to the number of hours worked and applicable hourly rates, but may be redacted to the extent necessary to delete any information subject to attorney-client privilege, any information constituting attorney work product or any other confidential information and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. The U.S. Trustee, any committee appointed pursuant to section 1102 of the Bankruptcy Code or any other party in interest may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted hereunder, provided that, any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on counsel to the parties seeking reimbursement no later than 10 days after the objecting parties receiving such applicable professional fee invoice, and (ii) it describes with particularity the items and categories of fees, costs and expenses that are subject to the objection and it provides for a specific basis for the objection to each such item of category of fees, costs and expenses; provided, however, further that the Debtors shall promptly pay all amounts that are not subject of

1    any such objection.  Any hearing on an objection to any payment of any fees, costs and

2    expenses of such professionals shall be limited to the reasonableness of the particular

3    items or categories of fees, costs, and expenses which are the subject to such objection.

4    Under no circumstances shall professionals for the DIP Secured Parties or Pre-Petition

5    Secured Parties be required to comply with the U.S. Trustee fee guidelines.

6              (c)    **Binding Effect.**    The provisions of this Interim Order shall be

7    binding upon and inure to the benefit of the DIP Secured Parties, the Pre-Petition Secured

8    Parties, and the Debtors and their respective successors and assigns (including any trustee

9    or other fiduciary hereinafter appointed as a legal representative of the Debtors or with

10   respect to the property of the estate of the Debtors) whether in these Cases, in any

11   Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 Cases.

12             (d)    **No Waiver**.  The failure of the Pre-Petition Secured Parties or the

13   DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under

14   the DIP Financing Documents, the DIP Facility, the Pre-Petition Financing Agreements,

15   or this Interim Order, as applicable, shall not constitute a waiver of any of the Pre-Petition

16   Secured Parties' or the DIP Secured Parties' rights hereunder, thereunder, or otherwise.

17   Notwithstanding anything herein, the entry of this Interim Order is without prejudice to,

18   and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Pre-

19   Petition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under

20   non-bankruptcy law, including without limitation, the rights of the Pre-Petition Secured

21   Parties or the DIP Secured Parties, to (i) request conversion of these Cases to cases under

22   chapter 7, dismissal of these Cases, or the appointment of a trustee in these Cases (but

23   only in the event the Commitment Termination Date has occurred and is continuing), or

24   (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan or

25   (iii) any of the rights, claims or privileges (whether legal, equitable or otherwise) of the

26   DIP Secured Parties or the Pre-Petition Secured Parties.

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    (e)    **No Third Party Rights**.  Except as explicitly provided for herein,

2    this Interim Order does not create any rights for the benefit of any third party, creditor,

3    equity holder or any direct, indirect, or incidental beneficiary.

4    (f)    **No Marshaling**.  None of the DIP Secured Parties nor the Pre-

5    Petition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any

6    other similar doctrine with respect to any of the Collateral.

7    (g)    **Section 552(b).**  The DIP Secured Parties and the Pre-Petition

8    Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of

9    the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the

10    Bankruptcy Code shall not apply to the DIP Secured Parties or the Pre-Petition Secured

11    Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition

12    Collateral or the Collateral.

13    (h)    **Amendment**.  The Debtors and the DIP Agent may amend, modify,

14    supplement or waive any provision of the DIP Financing Documents, provided that such

15    amendment, modification, supplement or waiver, in the judgment of the Debtors and the

16    DIP Agent, is either nonprejudicial to the rights of third parties or is not material.  Except

17    as otherwise provided herein, no waiver, modification, or amendment of any of the

18    provisions hereof shall be effective unless (a) set forth in writing, signed by or on behalf

19    of all the Debtors, the DIP Agent (after having obtained the approval of the DIP Secured

20    Parties as provided in the DIP Financing Documents), and (b) approved by this Court.

21    (i)    **Survival of Interim Order**.  The provisions of this Interim Order, as

22    modified by a Final Order, and any actions taken pursuant hereto shall survive entry of

23    any order which may be entered (i) confirming any Plan in these Cases, (ii) converting

24    these Cases to cases under chapter 7 of the Bankruptcy Code, or (iii) dismissing these

25    Cases, (iv) withdrawing of the reference of these Cases from this Court, or (v) providing

26    for abstention from handling or retaining of jurisdiction of these Cases in this Court, and

27    the terms and provisions of this Interim Order as well as the DIP Protections granted

28    pursuant to this Interim Order and the DIP Financing Documents, shall continue in full

1   force and effect notwithstanding the entry of such order, and such DIP Protections shall

2   maintain their priority as provided by this Interim Order until all the obligations of the

3   Debtors to the DIP Secured Parties pursuant to the DIP Financing Documents, and all

4   obligations of the Debtors to the Pre-Petition Secured Parties under the Pre-Petition

5   Financing Agreements are indefeasibly paid in full and discharged (such payment being

6   without prejudice to any terms or provisions contained in the DIP Facility which survive

7   such discharge by their terms).  The DIP Obligations shall not be discharged by the entry

8   of an order confirming a Plan, the Debtors having waived such discharge pursuant to

9   section 1141(d)(4) of the Bankruptcy Code.  The Debtors shall not propose or support any

10  Plan that is not conditioned upon the payment in full in cash of all of the DIP Obligations

11  and the Pre-Petition Debt, on or prior to the earlier to occur of (i) the effective date of

12  such Plan and (ii) the Commitment Termination Date.

13          (j)     **Inconsistency**.  In the event of any inconsistency between the terms

14  and conditions of the DIP Financing Documents and of this Interim Order, the provisions

15  of this Interim Order shall govern and control.

16          (k)     **Enforceability**.  This Interim Order shall constitute findings of fact

17  and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be

18  fully enforceable *nun pro tunc* to the Petition Date immediately upon execution hereof.

19          (l)     **Objections**.  All objections to the DIP Motion to the extent not

20  withdrawn or resolved, are hereby reserved for consideration at the final hearing.

21          (m)     **No Waivers or Modification of Interim Order**.  The Debtors

22  irrevocably waive any right to seek any modification or extension of this Interim Order

23  without the prior written consent of the DIP Agent and the Pre-Petition Agent, and no

24  such consent shall be implied by any other action, inaction or acquiescence of the DIP

25  Agent or the Pre-Petition Agent.  The court may modify this order at the final hearing.

26          (n)     **Waiver of the Ten (10) Day Stay Under Bankruptcy Rule**

27  **6004(h)**.  The ten (10) day stay provisions of Bankruptcy Rule 6004(h) are waived and

28  shall not apply to this Interim Order.

20.     **Final Hearing.**

(a)     A Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for January 8, 2010, at 1:00 p.m. at the United States Bankruptcy Court for the Central District of California, Santa Barbara, California. If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, then a Final Order may be presented by the Debtors and entered by this Court without a Final Hearing.

(b)     On or before two business days following entry of this Interim Order, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "**Final Hearing Notice**"), together with copies of this Interim Order, the proposed Final Order, and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for any official committee(s), if any; (d) the Office of the United States Trustee, (e) the Internal Revenue Service, (f) counsel to the Pre-Petition Agents, (g) the Pre-Petition Agent, and (h) counsel to the proposed DIP Agent.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order (an "Objecting Party") shall file written objections with the Clerk of this Court no later than December 30, 2009, by 4:00 p.m. California time which objections shall be served so that the same are received on or before such date by: (a) co-counsel for Debtors, (i) Arent Fox LLP, 1675 Broadway, New York, NY 10019-5820, Attn: James M. Sullivan, Esq., Fax: (212) 484-3990, Email: sullivan.james@arentfox.com; and (ii) Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013, Attn: Mette Kurth, Esq., Fax: 213.629.7401, E-Mail: kurth.mette@arentfox.com; (b) counsel for DIP Secured Parties and Pre-Petition Secured Parties, (i) Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111, Attn: Steven B. Levine, Esq., Fax: (617) 289-0418, E-Mail: slevine@brownrudnick.com; and (ii) Hemar, Rousso & Heald LLP, 15910 Ventura Blvd. 12th Floor, Encino, California 91436, Attn: Wayne Terry, Esq., Fax: 818 501 2985, E-

1    Mail: wterry@hemar-rousso.com; (c)  counsel to any Committee; and (d) the U.S.

2    Trustee; and shall be filed with the Clerk of this Court, in each case to allow actual receipt

3    of the foregoing no later than December 30, 2009, at 4:00 p.m. California time (the

4    "Notice Parties").  The Final Hearing Notice shall state that any written replies shall be

5    filed with the Clerk of this Court no later than January 6, 2010, by **12:00 p.m.** California

6    time, which replies shall be served so that the same are received on or before such date by

7    the Notice Parties as well as by the Objecting Party; and shall be filed with the Clerk of

8    this Court, in each case to allow actual receipt of the foregoing no later than December 30,

9    2009, at **12:00 p.m.** California time.

10              (c)      Notwithstanding the terms of this Interim Order, the Official

11    Committee of Unsecured Creditors (the "Creditors Commitee") expressly reserves its

12    rights to object to any provisions of the DIP Motion, this Interim Order, or any further

13    interim or final orders in connection with the Final Hearing and the fact of non-objection

14    shall not be deemed to prejudice the Creditors Committee with respect to any objection

15    that it may lodge with respect to this or any other Orders or the DIP Motion.

16              (d)      **Notwithstanding the terms of this Interim Order, this Court is**

17    **not precluded from entering a further interim orders or the Final Order containing**

18    **provisions that are inconsistent with, or contrary to any of the terms in this Interim**

19    **Order, subject to the protections under section 364(e) and the rights of the DIP**

20    **Secured Parties to terminate the DIP Financing Agreement if such further interim**

21    **orders or Final Order is not acceptable to them**.  In the event this Court modifies any

22    of the provisions of this Interim Order, any further interim orders or the DIP Financing

23    Documents following such further hearing, such modifications shall not affect the rights

24    and priorities of DIP Secured Parties pursuant to this Interim Order with respect to the

25    Collateral, and any portion of the DIP Obligations which arises or is incurred, advanced or

26    paid prior to such modifications (or otherwise arising prior to such modifications), and

27    this Interim Order shall remain in full force and effect except as specifically amended or

28    modified at such Final Hearing.

1            (e)    **Retention of Jurisdiction**.  This Court has and will retain

2    jurisdiction to enforce this Interim Order according to its terms.

3          SO ORDERED by this Court this 16th day of December, 2009.

4

5    ###

6    ###

7    ###

8    ###

9    ###

10    ###

11    ###

12    ###

13    ###

14    ###

15    ###

16    ###

17    ###

18    ###

19    ###

20    ###

21    ###

22

23

24    _Robin Riblet_

25    DATED: December 16, 2009    _____
United States Bankruptcy Judge

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1

# **EXHIBIT A**

2

3          Amendments to Pre-Petition Financing Agreement)

4          First Amendment to First Amended, Restated, and Consolidated Loan and

5    Security Agreement, dated August 31, 2005, among the Debtors, the Pre-Petition Lenders,

6    and the Pre-Petition Agent

7          Second Amendment to First Amended, Restated, and Consolidated Loan

8    and Security Agreement, dated October 23, 2006, among the Debtors, the Pre-Petition

9    Lenders, and the Pre-Petition Agent

10          Third Amendment to First Amended, Restated, and Consolidated Loan and

11    Security Agreement, dated November 28, 2006, among the Debtors, the Pre-Petition

12    Lenders, and the Pre-Petition Agent

13          Fourth Amendment to First Amended, Restated, and Consolidated Loan and

14    Security Agreement, dated April 2, 2007, among the Debtors, the Pre-Petition Lenders,

15    and the Pre-Petition Agent

16          Fifth Amendment to First Amended, Restated, and Consolidated Loan and

17    Security Agreement, dated May 14, 2007, among the Debtors, the Pre-Petition Lenders,

18    and the Pre-Petition Agent

19          Sixth Amendment to First Amended, Restated, and Consolidated Loan and

20    Security Agreement, dated March 24, 2008, among the Debtors, the Pre-Petition Lenders,

21    and the Pre-Petition Agent

22          Seventh Amendment to First Amended, Restated, and Consolidated Loan

23    and Security Agreement, dated May 2, 2008, among the Debtors, the Pre-Petition

24    Lenders, and the Pre-Petition Agent

25          Eighth Amendment to First Amended, Restated, and Consolidated Loan and

26    Security Agreement, dated January 26, 2009, among the Debtors, the Pre-Petition

27    Lenders, and the Pre-Petition Agent

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    　　　　Ninth Amendment to First Amended, Restated, and Consolidated Loan and

2    Security Agreement dated March 20, 2009, among the Debtors, the Pre-Petition Lenders,

3    and the Pre-Petition Agent

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 555 West Fifth Street, 48th Floor, Los Angeles, CA  90013-1065

A true and correct copy of the foregoing document described <u>Interim Order Pursuant to 11 U.S.C. Sections 105, 361, 362, 363 and 364 and Rues 2002, 4001, and 9014 of The Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence by the Debtors of Post Petition Secured Indebtedness with Priority Over All Secured Indebtedness with Administrative Superpriority (2) Granting Liens, (3) Authorizing Use of Cash Collateral by the Debtors Pursuant to 11 U.S.C. Section 363 Providing for Adequate Protection,. (4) Modifying The Automatic Stay and (5) Scheduling a Final Hearing **with Exhibit "A" and Exhibit "B"**</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐   Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On <u>December 15, 2009</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒   Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
Honorable Robin Riblet
United States Bankruptcy Court
1415 State Street
Santa Barbara, California 93101-2511

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 12/15/09 | Andy S. Kong | /s/ Andy S. Kong |
|----------|--------------|------------------|
| _Date_ | _Type Name_ | _Signature_ |

**ATTACHMENT TO PROOF OF SERVICE:**

## II.  SERVED BY OVERNIGHT MAIL:

| Company | Address |
|---|---|
| Aetrex Worldwide Inc | Elizabeth Wasilewski<br>414 Alfred Ave<br>Teaneck, NJ 07666 |
| AMFIT INC | 5408 NE 88th St Ste D 406<br>Vancouver, WA 98665 |
| Anthony Wall | 760 Arcady<br>Santa Barbara, CA 93108 |
| Atlantic City Associates | Robert Fowler Esq<br>601 East Pratt St 6th Fl<br>c o the Cordish Company<br>The Power Plant<br>Baltimore, MD 21202 |
| Bear Stearns Securities Corp Custodian | Robert Schnell IRA<br>10291 Century Woods Dr<br>Los Angeles, CA 90067 |
| Blackwell Partners LLC | 406 Blackwell St Ste 300<br>Durham, NC 27701 |
| Board of Equalization | PO Box 942879<br>Sacramento, CA 94279-0001 |
| Brightleaf Partners LP | c o Brightleaf Capitl LLC<br>324 Blackwell St Ste 520<br>Durham, NC 27701 |
| Brown Rudnick LLP | Steven B Levine<br>One Financial Center<br>Boston, MA 02111 |
| Brown Rudnick LLP | Christopher Carolan<br>7 Times Square<br>New York, NY 10036 |
| CBL and Associates Properties Inc | Howard B Grody SCLS Sr VP Mall Leasing<br>2030 Hamilton Place Blvd CBL Ste 500<br>Chattanooga, TN 37421 |
| CIT Technology Financing Services Inc | 10201 Centurion Parkway North Ste 100<br>Jacksonville, FL 32256 |
| Cotsen Family Foundation | c o Kayne Anderson Capital<br>1800 Ave of the Stars 2nd Fl<br>Los Angeles, CA 90067 |

| Company | Address |
| --- | --- |
| Dansko Inc | Cindy Worthington<br>8 Federal Rd<br>Penn Business Park<br>West Grove, PA 19390 |
| David Wolf | 1956 East Valley Rd<br>Santa Barbara, CA 93108 |
| Deckers Outdoor Corp | Ron Guadagno<br>495 South Fairview Ave Ste A<br>Goleta, CA 93117 |
| Doug Nilsen | 2225 St James Dr<br>Santa Barbara, CA 93105 |
| Dumac LLC | 406 Blackwell St Ste 300<br>Durham, NC 27001-3984 |
| Ecco USA Inc | Ken Abbott<br>16 Delta Drive<br>Londonderry, NH 03053 |
| Employment Development Department | Bankruptcy Group MIC 92E<br>PO Box 826880<br>Sacramento, CA 94280-0001 |
| Erin Anderson and Keith Park Plaintiffs and Class Representatives | c o Westrup Klick LLP<br>444 W Ocean Blvd No 1614<br>Phillip R Poliner<br>Long Beach, CA 90802-4525 |
| Forest City Enterprises | Alan Schmiedicker SCSM Sr VP<br>50 Public Square<br>700 Terminal Tower<br>Cleveland, OH 44113 |
| Franchise Tax Board | Attn Bankruptcy<br>PO Box 2952<br>Sacramento, CA 95812-2952 |
| Franchise Tax Board | PO Box 1673<br>Sacramento, CA 95812-1673 |
| Freeland Realty | Dirk Freeland<br>708 Cathedral Pointe Ln<br>Santa Barbara, CA 93111 |
| Gary Lieberthal Trustee | Lieberthal Trust 3/23/99<br>991 Bel Air Rd<br>Bel Air, CA 90077-3009 |
| General Growth Properties Inc | Mark E Adair<br>110 N Wacker Drive<br>Chicago, IL 60606 |

| Company | Address |
|---|---|
| Hemar Rousso & Heald LLP | Wayne R Terry<br>15910 Ventura Blvd 12th Fl<br>Encino, CA 91436 |
| Internal Revenue Service | PO Box 21126<br>Philadelphia, PA 19114 |
| Internal Revenue Service | Centralized Insolvency Operation<br>11601 Roosevelt Blvd<br>Mail Drop N781<br>Philadelphia, PA 19255-0002 |
| Irell & Manella LLP | Howard Steinberg & Jeff Sklar<br>1800 Avenue of the Stars Ste 900<br>Los Angeles, CA 90067-4276 |
| J Reims & KA Reims Trustee | Reims Family Trust 11/22/91<br>241 South Camden Dr<br>Beverly Hills, CA 90212 |
| Kayne Anderson | Jeff Susskin1800 Avenue of the Stars 2nd<br>FloorLos Angeles, CA 90067 |
| Kayne Anderson | David Shladovsky General Counsel<br>1800 Avenue of the Stars 2nd Floor<br>Los Angeles, CA 90067 |
| Kayne Anderson Capital | Income Partners QP LP<br>1800 Ave of the Stars 2nd Fl<br>Los Angeles, CA 90067 |
| Kayne Anderson Capital Income Partners QP LP | c o Kayne Anderson Capital Advisors LP<br>1800 Ave of the Stars 2nd Fl<br>Los Angeles, CA 90067 |
| Ken Atchison | 20380 Riverbrooke Run<br>Estero, FL 33928 |
| Lee Cox | 6726 Breakers Way<br>Ventura, CA 93001 |
| Macerich | Randy Brant CSM Exec VP Real Estate<br>401 Wilshire Blvd<br>Santa Monica, CA 90401 |
| MBT Masai USA Corp | Brenda Farnsworth<br>515 N River St Ste D<br>Hailey, ID 83333 |
| Michael Grenley | 24931 Marbella Ct<br>Calabasas, CA 91302 |
| Pyramid Management Group | Timothy J Kelley President<br>4 Clinton Square<br>Syracuse, NY 13202-1008 |

| Company | Address |
|---|---|
| RBC Dain Rauscher Cust For C Eric Warden SEP IRA | 510 Marquette Ave Minneapolis, MN 554021106 |
| Richard & Suzanne Kayne | Living Trust Dtd 1/14/09 1800 Ave of the Stars 2nd Fl Los Angeles, CA 90067 |
| Robert P Abate Rev Trust UA 8/29/95 Robert P Abate Trustee | PO Box 541 N Elgin, IL 60123 |
| Robert P Abate Trustee | Robert P Abate Rev Trust Box 541 Elgin, IL 60123 |
| Robert Schnell IRA | c o Kayne Anderson Capita 1800 Ave of the Stars 2nd Fl Los Angeles, CA 90067 |
| Roberta Morris | 1428 San Miguel Ave Santa Barbara, CA 93109 |
| Securities and Exchange Commission | 5670 Wilshire Blvd 11th Fl Los Angeles, CA 90036 |
| Simon Property Group | Bruce S Tobin Chief Operating Officer Leasing 747 Third Ave 21st Fl New York, NY 10017 |
| Susie Minier | 5694 Via Salerno Goleta, CA 93117 |
| Taubman Centers | Jerry M Teitelbaum 200 E Long Lake Rd Bloomfield Hills, MI 48303 |
| The Huntington National Bank | Attn Edward J Kitchen VP 650 Smithfield St Ste 1000 Centre City Tower Pittsburgh, PA 15222 |
| The Kayne Foundation | c o Kayne Anderson Capita 1800 Ave of the Stars 2nd Fl Los Angeles, CA 90067 |
| The Walking Company | Tony Wall Executive VP 121 Gray Ave Santa Barbara, CA 93101 |
| TKC XCIXLLC | Kenneth R Beuley 5935 Carnegie Blvd Ste 200 c o The Keith Corporation Charlotte, NC 28209 |
| Townsgate Road LLC | William Browley 21241 Ventura Blvd Ste 169 Woodland Hills, CA 91364 |

| Company | Address |
|---|---|
| United States Attorneys Office | Civil Process Clerk<br>300 N Los Angeles St<br>Federal Bldg Rm 7516<br>Los Angeles, CA 90012 |
| United States Bankruptcy Court Santa Barbara Division | 1415 State St<br>Chambers Copy<br>Santa Barbara, CA 93101 |
| United States Department of Justice | Attorney General<br>Ben Franklin Station<br>PO Box 683<br>Washington, DC 20044 |
| United States Trustee | Dennis Strayhan<br>21051 Warner Center Ln Ste 115<br>Woodland Hills, CA 91367 |
| UPS | Susan Allen<br>1514 N Graham St<br>Charlotte, NC 28206 |
| Varilease Finance Inc | 6340 South 3000 East Ste 250<br>Salt Lake City, UT 84121 |
| Wells Fargo Financial Leasing Inc | 800 Walnut Street<br>Des Moines, IA 50309 |
| Wells Fargo Retail Finance | Jennifer Cann VP Account Executive &<br>Joseph Burt VP<br>One Boston Place 18th Fl<br>Boston, MA 02108 |
| Wells Fargo Retail Finance LLC | 2450 Colorado Ave Ste 3000WSanta Monica,<br>CA 90404 |
| Westfield Corporation Inc | Scott L Grossman Executive Vice President<br>11601 Wilshire Blvd 12th Fl<br>Los Angeles, CA 90025 |
| Allen Matkins LLP | Willian W Hickins & Ivan Gold<br>Three Embarcadero Ctr 12th Fl<br>San Francisco, CA 94111 |
| Ballard Spahr LLP | David L Pollack & Jeffrey Meyers<br>1735 Market St 51st Fl<br> Mellon Bank Center<br>Philadelphia, PA 19103 |
| Ballard Spahr LLP | Rebecca J Winthrop<br>2029 Century Park East Ste 800<br>Los Angeles, CA 90067-2909 |

| Company | Address |
|---|---|
| Clark & Trevithick | Kimberly S Winick<br>800 Wilshire Blvd 12th Fl<br>Los Angeles, CA 90017 |
| Cozen OConnor | Neal D Colton<br>1900 Market St<br>Philadelphia, PA 19103 |
| Cozen OConnor | Mark E Felger<br>1201 N Market St Ste 1400<br>Wilmington, DE 19801 |
| Faegre & Benson LLP | Lawrence Bass<br>1700 Lincoln St<br>3200 Wells Fargo Center<br>Denver, CO 80203-4532 |
| Katten Muchin Rosenman LLP | c o Thomas J Leanse & Brian D Huben<br>2029 Century Park East Ste 2600<br>Los Angeles, CA 90067-3012 |
| Perkins Coie LLP | John S Kaplan<br>1201 Third Ave 48th Fl<br>Seattle, WA 98101-3099 |
| Perkins Coie LLP | Steven G F Polard<br>1888 Century Park East Suite 1700<br>Los Angeles, CA 90067 |
| Primeshares | Matthew Curry Edwards<br>261 Fifth Ave 22nd Fl<br>New York, NY 10016 |
| Simon Property Group Inc | Attn Ronald M Tucker<br>225 West Washington St<br>Indianapolis, IN 46204 |
| Taubman Landlords | Andrew S Conway<br>200 East Long Lake Rd Ste 300<br>Bloomfield Hills, MI 48304 |
| Allen Matkins Leck Gamble Mallory & Natsis LLP | William W. Huckins<br>Ivan Gold<br>Three Embarcadero Center, 12th Flr.<br>San Francisco, CA 94111-4074 |
| Menter Rudin & Trivelpiece, PC | Kevin Newman<br>308 Maltbie St., Ste. 200<br>Syracuse, NY 13204 |

<u>**NOTE TO USERS OF THIS FORM**</u>:

**1)**  Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)**  The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3)  Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4)  Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief.  <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) <u>Interim Order Pursuant to 11 U.S.C. Sections 105, 361, 362, 363 and 364 and Rues 2002, 4001, and 9014 of The Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence by the Debtors of Post Petition Secured Indebtedness with Priority Over All Secured Indebtedness with Administrative Superpriority (2) Granting Liens, (3) Authorizing Use of Cash Collateral by the Debtors Pursuant to 11 U.S.C. Section 363 Providing for Adequate Protection,. (4) Modifying The Automatic Stay and (5) Scheduling a Final Hearing</u> was entered on the date indicated as Entered on the first page of this judgment or order and will be served in the manner indicated below:

**I.  <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of <u>December 15, 2009,</u> the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Lawrence Bass on behalf of Interested Party Gart Capital Partners
lawrence.bass@hro.com, kris.lundstrom@hro.com

Brian D Fittipaldi on behalf of U.S. Trustee United States Trustee (ND)
brian.fittipaldi@usdoj.gov

Brian D Huben on behalf of Creditor Crossgates Mall Company NewCo, LLC
brian.huben@kattenlaw.com, carole.levine@kattenlaw.com;donna.carolo@kattenlaw.com;laura.nefsky@kattenlaw.com

☒  Service information continued on attached page

**II.  <u>SERVED BY THE COURT VIA U.S. MAIL:</u>** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐  Service information continued on attached page

**III.  <u>TO BE SERVED BY THE LODGING PARTY</u>:** Within 72 hours after receipt of a copy of this judgment or order which bears an Entered stamp, the party lodging the judgment or order will serve a complete copy bearing an Entered stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☒  Service information continued on attached page

## ATTACHMENT TO NOTICE OF ENTERED ORDER:

### I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):

William W Huckins on behalf of Creditor Federal Realty Investment Trust
whuckins@allenmatkins.com, clynch@allenmatkins.com

Andy Kong on behalf of Debtor The Walking Company
Kong.Andy@ArentFox.com

Mette H Kurth on behalf of Debtor The Walking Company
kurth.mette@arentfox.com

Steven G Polard on behalf of Creditor Bellevue Square LLC
spolard@perkinscoie.com

David L Pollack on behalf of Creditor Galleria Mall Investors, LP
pollack@ballardspahr.com

Wayne R Terry on behalf of Creditor Request for Courtesy NEF
wterry@hemar-rousso.com

Ronald M Tucker on behalf of Creditor Simon Property Group, Inc.
rtucker@simon.com, psummers@simon.com;rwoodruff@simon.com;sHclark@simon.com

United States Trustee (ND)
ustpregion16.nd.ecf@usdoj.gov

Kimberly S Winick on behalf of Creditor South Coast Plaza
kwinick@clarktrev.com

Rebecca J Winthrop on behalf of Interested Party Kravco Simon Company
winthropr@ballardspahr.com
_____

## III. TO BE SERVED BY THE LODGING PARTY:

| Company | Address |
| --- | --- |
| Aetrex Worldwide Inc | Elizabeth Wasilewski<br>414 Alfred Ave<br>Teaneck, NJ 07666 |
| AMFIT INC | 5408 NE 88th St Ste D 406<br>Vancouver, WA 98665 |
| Anthony Wall | 760 Arcady<br>Santa Barbara, CA 93108 |
| Atlantic City Associates | Robert Fowler Esq<br>601 East Pratt St 6th Fl<br>c o the Cordish Company<br>The Power Plant<br>Baltimore, MD 21202 |

| Company | Address |
|---|---|
| Bear Stearns Securities Corp Custodian | Robert Schnell IRA<br>10291 Century Woods Dr<br>Los Angeles, CA 90067 |
| Blackwell Partners LLC | 406 Blackwell St Ste 300<br>Durham, NC 27701 |
| Board of Equalization | PO Box 942879<br>Sacramento, CA 94279-0001 |
| Brightleaf Partners LP | c o Brightleaf Capitl LLC<br>324 Blackwell St Ste 520<br>Durham, NC 27701 |
| Brown Rudnick LLP | Steven B Levine<br>One Financial Center<br>Boston, MA 02111 |
| Brown Rudnick LLP | Christopher Carolan<br>7 Times Square<br>New York, NY 10036 |
| CBL and Associates Properties Inc | Howard B Grody SCLS Sr VP Mall Leasing<br>2030 Hamilton Place Blvd CBL Ste 500<br>Chattanooga, TN 37421 |
| CIT Technology Financing Services Inc | 10201 Centurion Parkway North Ste 100<br>Jacksonville, FL 32256 |
| Cotsen Family Foundation | c o Kayne Anderson Capital<br>1800 Ave of the Stars 2nd Fl<br>Los Angeles, CA 90067 |
| Dansko Inc | Cindy Worthington<br>8 Federal Rd<br>Penn Business Park<br>West Grove, PA 19390 |
| David Wolf | 1956 East Valley Rd<br>Santa Barbara, CA 93108 |
| Deckers Outdoor Corp | Ron Guadagno<br>495 South Fairview Ave Ste A<br>Goleta, CA 93117 |
| Doug Nilsen | 2225 St James Dr<br>Santa Barbara, CA 93105 |
| Dumac LLC | 406 Blackwell St Ste 300<br>Durham, NC 27001-3984 |
| Ecco USA Inc | Ken Abbott<br>16 Delta Drive<br>Londonderry, NH 03053 |

| Company | Address |
|---|---|
| Employment Development Department | Bankruptcy Group MIC 92E<br>PO Box 826880<br>Sacramento, CA 94280-0001 |
| Erin Anderson and Keith Park Plaintiffs and Class Representatives | c o Westrup Klick LLP<br>444 W Ocean Blvd No 1614<br>Phillip R Poliner<br>Long Beach, CA 90802-4525 |
| Forest City Enterprises | Alan Schmiedicker SCSM Sr VP<br>50 Public Square<br>700 Terminal Tower<br>Cleveland, OH 44113 |
| Franchise Tax Board | Attn Bankruptcy<br>PO Box 2952<br>Sacramento, CA 95812-2952 |
| Franchise Tax Board | PO Box 1673<br>Sacramento, CA 95812-1673 |
| Freeland Realty | Dirk Freeland<br>708 Cathedral Pointe Ln<br>Santa Barbara, CA 93111 |
| Gary Lieberthal Trustee | Lieberthal Trust 3/23/99<br>991 Bel Air Rd<br>Bel Air, CA 90077-3009 |
| General Growth Properties Inc | Mark E Adair<br>110 N Wacker Drive<br>Chicago, IL 60606 |
| Hemar Rousso & Heald LLP | Wayne R Terry<br>15910 Ventura Blvd 12th Fl<br>Encino, CA 91436 |
| Internal Revenue Service | PO Box 21126<br>Philadelphia, PA 19114 |
| Internal Revenue Service | Centralized Insolvency Operation<br>11601 Roosevelt Blvd<br>Mail Drop N781<br>Philadelphia, PA 19255-0002 |
| Irell & Manella LLP | Howard Steinberg & Jeff Sklar<br>1800 Avenue of the Stars Ste 900<br>Los Angeles, CA 90067-4276 |
| J Reims & KA Reims Trustee | Reims Family Trust 11/22/91<br>241 South Camden Dr<br>Beverly Hills, CA 90212 |
| Kayne Anderson | Jeff Susskin1800 Avenue of the Stars 2nd FloorLos Angeles, CA 90067 |
| Kayne Anderson | David Shladovsky General Counsel<br>1800 Avenue of the Stars 2nd Floor<br>Los Angeles, CA 90067 |

| Company | Address |
|---|---|
| Kayne Anderson Capital | Income Partners QP LP<br>1800 Ave of the Stars 2nd Fl<br>Los Angeles, CA 90067 |
| Kayne Anderson Capital Income Partners QP LP | c o Kayne Anderson Capital Advisors LP<br>1800 Ave of the Stars 2nd Fl<br>Los Angeles, CA 90067 |
| Ken Atchison | 20380 Riverbrooke Run<br>Estero, FL 33928 |
| Lee Cox | 6726 Breakers Way<br>Ventura, CA 93001 |
| Macerich | Randy Brant CSM Exec VP Real Estate<br>401 Wilshire Blvd<br>Santa Monica, CA 90401 |
| MBT Masai USA Corp | Brenda Farnsworth<br>515 N River St Ste D<br>Hailey, ID 83333 |
| Michael Grenley | 24931 Marbella Ct<br>Calabasas, CA 91302 |
| Pyramid Management Group | Timothy J Kelley President<br>4 Clinton Square<br>Syracuse, NY 13202-1008 |
| RBC Dain Rauscher Cust For C Eric Warden SEP IRA | 510 Marquette Ave<br>Minneapolis, MN 554021106 |
| Richard & Suzanne Kayne | Living Trust Dtd 1/14/09<br>1800 Ave of the Stars 2nd Fl<br>Los Angeles, CA 90067 |
| Robert P Abate Rev Trust UA 8/29/95 Robert P Abate Trustee | PO Box 541 N<br>Elgin, IL 60123 |
| Robert P Abate Trustee | Robert P Abate Rev Trust<br>Box 541<br>Elgin, IL 60123 |
| Robert Schnell IRA | c o Kayne Anderson Capita<br>1800 Ave of the Stars 2nd Fl<br>Los Angeles, CA 90067 |
| Roberta Morris | 1428 San Miguel Ave<br>Santa Barbara, CA 93109 |
| Securities and Exchange Commission | 5670 Wilshire Blvd 11th Fl<br>Los Angeles, CA 90036 |
| Simon Property Group | Bruce S Tobin Chief Operating Officer Leasing<br>747 Third Ave 21st Fl<br>New York, NY 10017 |

| Company | Address |
|---|---|
| Susie Minier | 5694 Via Salerno<br>Goleta, CA 93117 |
| Taubman Centers | Jerry M Teitelbaum<br>200 E Long Lake Rd<br>Bloomfield Hills, MI 48303 |
| The Huntington National Bank | Attn Edward J Kitchen VP<br>650 Smithfield St Ste 1000<br>Centre City Tower<br>Pittsburgh, PA 15222 |
| The Kayne Foundation | c o Kayne Anderson Capita<br>1800 Ave of the Stars 2nd Fl<br>Los Angeles, CA 90067 |
| The Walking Company | Tony Wall Executive VP<br>121 Gray Ave<br>Santa Barbara, CA 93101 |
| TKC XCIXLLC | Kenneth R Beuley<br>5935 Carnegie Blvd Ste 200<br>c o The Keith Corporation<br>Charlotte, NC 28209 |
| Townsgate Road LLC | William Browley<br>21241 Ventura Blvd Ste 169<br>Woodland Hills, CA 91364 |
| United States Attorneys Office | Civil Process Clerk<br>300 N Los Angeles St<br>Federal Bldg Rm 7516<br>Los Angeles, CA 90012 |
| United States Bankruptcy Court Santa Barbara Division | 1415 State St<br>Chambers Copy<br>Santa Barbara, CA 93101 |
| United States Department of Justice | Attorney General<br>Ben Franklin Station<br>PO Box 683<br>Washington, DC 20044 |
| United States Trustee | Dennis Strayhan<br>21051 Warner Center Ln Ste 115<br>Woodland Hills, CA 91367 |
| UPS | Susan Allen<br>1514 N Graham St<br>Charlotte, NC 28206 |
| Varilease Finance Inc | 6340 South 3000 East Ste 250<br>Salt Lake City, UT 84121 |
| Wells Fargo Financial Leasing Inc | 800 Walnut Street<br>Des Moines, IA 50309 |

| Company | Address |
|---|---|
| Wells Fargo Retail Finance | Jennifer Cann VP Account Executive & Joseph Burt VP<br>One Boston Place 18th Fl<br>Boston, MA 02108 |
| Wells Fargo Retail Finance LLC | 2450 Colorado Ave Ste 3000WSanta Monica, CA 90404 |
| Westfield Corporation Inc | Scott L Grossman Executive Vice President<br>11601 Wilshire Blvd 12th Fl<br>Los Angeles, CA 90025 |
| Allen Matkins LLP | Willian W Hickins & Ivan Gold<br>Three Embarcadero Ctr 12th Fl<br>San Francisco, CA 94111 |
| Ballard Spahr LLP | David L Pollack & Jeffrey Meyers<br>1735 Market St 51st Fl<br> Mellon Bank Center<br>Philadelphia, PA 19103 |
| Ballard Spahr LLP | Rebecca J Winthrop<br>2029 Century Park East Ste 800<br>Los Angeles, CA 90067-2909 |
| Clark & Trevithick | Kimberly S Winick<br>800 Wilshire Blvd 12th Fl<br>Los Angeles, CA 90017 |
| Cozen OConnor | Neal D Colton<br>1900 Market St<br>Philadelphia, PA 19103 |
| Cozen OConnor | Mark E Felger<br>1201 N Market St Ste 1400<br>Wilmington, DE 19801 |
| Faegre & Benson LLP | Lawrence Bass<br>1700 Lincoln St<br>3200 Wells Fargo Center<br>Denver, CO 80203-4532 |
| Katten Muchin Rosenman LLP | c o Thomas J Leanse & Brian D Huben<br>2029 Century Park East Ste 2600<br>Los Angeles, CA 90067-3012 |
| Perkins Coie LLP | John S Kaplan<br>1201 Third Ave 48th Fl<br>Seattle, WA 98101-3099 |
| Perkins Coie LLP | Steven G F Polard<br>1888 Century Park East Suite 1700<br>Los Angeles, CA 90067 |

| Company | Address |
| --- | --- |
| Primeshares | Matthew Curry Edwards<br>261 Fifth Ave 22nd Fl<br>New York, NY 10016 |
| Simon Property Group Inc | Attn Ronald M Tucker<br>225 West Washington St<br>Indianapolis, IN 46204 |
| Taubman Landlords | Andrew S Conway<br>200 East Long Lake Rd Ste 300<br>Bloomfield Hills, MI 48304 |
| Allen Matkins Leck Gamble Mallory & Natsis LLP | William W. Huckins<br>Ivan Gold<br>Three Embarcadero Center, 12th Flr.<br>San Francisco, CA 94111-4074 |
| Menter Rudin & Trivelpiece, PC | Kevin Newman<br>308 Maltbie St., Ste. 200<br>Syracuse, NY 13204 |