1  Mette H. Kurth (SBN 187100)
   Andy S. Kong (SBN 243933)
2  **ARENT FOX LLP**
   555 West Fifth Street, 48th Floor
3  Los Angeles, CA  90013-1065
   Telephone:      213.629.7400
4  Facsimile:      213.629.7401
   E-mail:      kurth.mette@arentfox.com
5              kong.andy@arentfox.com

6  *Proposed* Attorneys for Debtors and Debtors in
   Possession
7

8  Debtors' Mailing Address
   121 Gray Avenue
9  Santa Barbara, CA 93101

FILED & ENTERED

JAN 14 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY rust        DEPUTY CLERK

10              **UNITED STATES BANKRUPTCY COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12              **SANTA BARBARA DIVISION**

13

14  In re:

15  **THE WALKING COMPANY**, a
    Delaware corporation, d/b/a Alan's
16  Shoes, Footworks, Overland Trading
    Co., Sole Outdoors, and Martini Shoes;
17  f/k/a TWC Acquisition Corporation;
    **BIG DOG USA, INC**., a California
18  corporation, d/b/a Big Dog Sportswear;
    f/k/a Fortune Dogs, Inc.; and **THE**
19  **WALKING COMPANY**
    **HOLDINGS, INC.**, a Delaware
20  corporation, f/k/a Big Dog Holdings,
    Inc. and 190th Shelf Corporation,
21
22                              Debtors.
23  [X]  Affects all Debtors
24  [ ]  Applies only to The Walking
         Company
25
26  [ ]  Applies only to Big Dog USA, Inc.
27  [ ]  Applies only to The Walking
         Company Holdings, Inc.
28

Case No.: 9:09-bk-15138-RR

[Jointly Administered with Case Nos.: 9:09-bk-15137-RR and 9:09-bk-15139-RR]

Chapter 11

**FINAL ORDER PURSUANT TO 11 U.S.C SECTIONS 105, 361, 362, 363 AND 364 AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) AUTHORIZING INCURRENCE BY THE DEBTORS OF POST PETITION SECURED INDEBTEDNESS WITH PRIORITY OVER ALL SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (2) GRANTING LIENS, (3) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTORS PURSUANT TO 11 U.S.C. SECTION 363 PROVIDING FOR ADEQUATE PROTECTION, AND (4) MODIFYING THE AUTOMATIC STAY**

LA/224645.1

1

2 **Hearing**

3 **DATE:**    **January 8, 2010**

4 **TIME:**    **1:00 p.m.**

5 **PLACE:**    **1415 State Street**
**Santa Barbara, CA 93101**

6      IN THIS DISTRICT, AT SANTA BARBARA, CALIFORNIA, ON THE DATE

7 INDICATED BELOW:

8      THIS MATTER having come before this United States Bankruptcy Court for the Central

9 District of California (this "**Court**") upon the motion (the "**DIP Motion**") by The Walking

10 Company Holdings, Inc. ("**Parent**") Big Dog USA, Inc. ("**Big Dog**") and The Walking Company

11 ("**TWC**") (Parent, Big Dog and TWC, each a "**Debtor**", and, collectively, the "**Debtors**"), as a

12 debtors and debtors-in-possession in the above captioned chapter 11 cases (the "**Cases**") seeking,

13 among other things, entry of a final order (this "**Final Order**") authorizing the Debtors, as

14 applicable, to:

15      (i)     Obtain credit and incur debt, pursuant to sections 363, 364(c) and 364(d) of the

16 Bankruptcy Code, on a final basis up to the aggregate committed amount of $30,000,000 (on

17 terms and conditions more fully described herein), including the Partial Roll-Up (as defined

18 below) of the outstanding balance of the Pre-Petition Facility (as defined below), secured by first

19 priority, valid, priming, perfected and enforceable Liens (as defined in section 101(37) of chapter

20 11 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**")) on property of

21 the Debtors' estate pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code,

22 subject only to Permitted Prior Liens (as defined below), and with priority, over all other

23 administrative expenses, as provided in section 364(c)(1) of the Bankruptcy Code, subject to the

24 terms and conditions contained herein;

25      (ii)     (a) Establish that financing arrangement, including a Partial Roll-Up of the

26 outstanding balance of the Pre-Petition Facility (the "**DIP Facility**") pursuant to (I) the terms of

27 the Pre-Petition Financing Agreement, as amended by that certain First Amended and Restated

28 Ratification and Amendment Agreement (which amended and restated in its entirety that certain

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ratification and Amendment Agreement) (the "**DIP Financing Agreement**")[1], substantially in the form filed as __Exhibit C__, by and among Big Dog and TWC, each as a borrower, Wells Fargo Retail Finance, LLC, as administrative agent (the "**DIP Agent**"), and the Lenders party thereto (collectively, the "**DIP Lenders**," and, together with the DIP Agent and the Bank Product Providers, the "**DIP Secured Parties**"), and (II) all other agreements, documents, notes, certificates and instruments executed and/or delivered with, to, or in favor of the DIP Secured Parties, including, without limitation, security agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("**UCC**") financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as the same may be amended, modified or supplemented and in effect from time to time, the "**DIP Financing Documents**"); and (b) incur the "**DIP Obligations**" under and as defined in the DIP Financing Agreement;

(iii)     Authorize (a) the use of the proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Documents) in each case in a manner consistent with the terms and conditions of the DIP Financing Documents, and in accordance with the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreement) solely for (1) working capital and general corporate purposes, (2) payment of costs of administration of these Cases, to the extent set forth in the Budget, and (b) the partial payment of the Pre-Petition Debt (as defined below) in accordance with the terms of this Final Order and the DIP Financing Documents, subject to the rights of any statutory committee appointed pursuant to section 1102 of the Bankruptcy Code or any other party in interest other than the Debtors as set forth in Section 7 of the Final Order;

(iv)     Authorize the DIP Agent (for the benefit of the DIP Secured Parties) to apply all Collections received in the ordinary course of business from and after the date of this Final Order: (a) first, to reduce the Pre-Petition Debt, and (b) second, to reduce the DIP Obligations pursuant

---

[1]     Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms in the DIP Financing Agreement.

and subject to the provisions of the Interim Order (for the interim period only) and this Final

Order;

(v)      Grant, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy

Code, the DIP Agent (for the benefit of the DIP Secured Parties) first priority priming, valid,

perfected and enforceable Liens, subject only to the Carve-Out (as defined below) and the

Permitted Prior Liens (as defined below), upon substantially all of the Debtors' real and personal

property except for Avoidance Actions (as defined below) as provided in and as contemplated by

this Final Order, the DIP Facility and the DIP Financing Agreement;

(vi)     Grant, pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Agent (for

the benefit of the DIP Secured Parties) super-priority administrative claim status in respect of all

DIP Obligations, subject to the Carve-Out as provided herein;

(vii)    Authorize the use of "cash collateral" as such term is defined in section 363 of the

Bankruptcy Code (the "**Cash Collateral**") in which the Pre-Petition Secured Parties (as defined

below) have an interest;

(viii)   (A) Grant the Pre-Petition Agent (for the benefit of the Pre-Petition Secured

Parties) (as defined below) the Pre-Petition Replacement Liens and Pre-Petition Superpriority

Claims (each as defined below) to the extent of any Pre-Petition Diminution in Value (as defined

below) of the Pre-Petition Agent's interest in the Pre-Petition Collateral (as defined below) as

adequate protection for the granting of the DIP Liens (as defined below) to the DIP Agent, the use

of Cash Collateral, and for the imposition of the automatic stay; and (B) make Adequate

Protection Payments; and

(ix)     Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy

Code to the extent necessary to implement and effectuate the terms and provisions of the DIP

Financing Documents and this Final Order.

(x)      Waive the ten (10) day stay provisions of Federal Rule of Bankruptcy Procedure

6004(h) and provide for immediate effectiveness of this Final Order.

This Court having considered the DIP Motion, the First Day Declaration (as defined in the

DIP Motion), the exhibits attached thereto, the DIP Facility and the DIP Financing Agreement, and the evidence submitted at the hearings on the initial Interim Order (the "**Initial Hearing**") and this Final Order (the "**Final Hearing**", and collectively with the Initial Hearing, the "**Hearings**"); and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the local rules of this Court, due and proper notice of the DIP Motion and the Hearings having been given; an Interim Hearing having been held and concluded on December 14, 2009; this Court having entered the Interim Order Pursuant to 11 U.S.C. Sections 105, 361, 362, 363 and 364 and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence by the Debtors of Post Petition Secured Indebtedness with Priority Over all Secured Indebtedness and with Administrative Super Priority, (2) Granting Liens, (3) Authorizing Use of Cash Collateral by the Debtors Pursuant to 11 U.S.C. Section 363 Providing for Adequate Protection, (4) Modifying the Automatic Stay and (5) Scheduling a Final Hearing (the "**Interim Order**") and a Final Hearing having been held on January 8, 2010; and it appearing that approval of the relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and to further the successful administration of the Cases, and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estate and their equity holders, and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and for good and sufficient cause appearing therefore:

(i)        BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING, THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

(A)                **Petition Date**.  On December 7, 2009 (the "Petition Date"), each of the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code with the United States

Bankruptcy Court for the Central District of California.  The Debtors have continued in the management and operation of their business and property as Debtors-in-Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

(B)     **Jurisdiction and Venue**.  This Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for these Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

(C)     **Committee Formation**.  A statutory committee of unsecured creditors ("Committee") was appointed in these Cases on December 14, 2009, and, although it initially filed an objection, based on the changes made to the DIP Facility and this Final Order, now consents to the entry of this Final Order.

(D)     **Notice**.  The Final Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001 and LBR 4001-2.  Notice of the Final Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery on the Petition Date, to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) the Internal Revenue Service and all other governmental agencies who are required to receive notice under the local rules of this Court, (iii) the Debtors' consolidated twenty (20) largest unsecured creditors, (iv) counsel to the Pre-Petition Agent (as defined below), (v) the Pre-Petition Agent (as defined below), (vi) counsel to the proposed DIP Agent, (vii) all other secured creditors of record; and (ix) counsel to the Committee.  Under the circumstances, such notice of the Final Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and the local rules of this Court.

(E)    **Debtors' Acknowledgements and Agreements**.  Without prejudice to the rights of the Committee or other parties in interest as set forth in Section 7 below, the Debtors (on behalf of themselves) admit, stipulate, acknowledge and agree that (collectively, subsections E (i) through E (xii) hereof shall be referred to herein as the "Debtors' Stipulations").

(i)    **Pre-Petition Financing Agreements**.  Prior to the commencement of these Cases, Wells Fargo Retail Finance, LLC ("**WFRF**") made certain revolving advances (the "**Pre-Petition Revolving Loans"**) to Big Dogs and TWC and issued certain Letters of Credit on behalf of and for the account of Big Dogs and TWC, (the Pre-Petition Revolving Loans, the "**Pre-Petition Facility**") pursuant to (a) the First Amended, Restated and Consolidated Loan and Security Agreement, dated as of July 7, 2005, as amended by each of the amendments more particularly described on Exhibit A attached hereto and made a part hereof, Big Dogs and TWC, as borrowers on a joint and several basis, Parent, as guarantor, WFRF, as Administrative Agent (the "**Pre-Petition Agent**"), and Lender (the "**Pre-Petition Lender**", collectively with the Pre-Petition Agent and the Bank Product Providers, the "**Pre-Petition Secured Parties**"), and (b) all other agreements, documents, notes, certificates and instruments executed and/or delivered with, to, or in favor of Pre-Petition Secured Parties, including, without limitation, all notes, mortgages, UCC financing statements and all other related agreements, documents, notes, certificates and instruments executed and/or delivered in connection therewith or related thereto (collectively, and as the same may be amended, modified or supplemented and in effect from time to time, the "**Pre-Petition Financing Agreements**");

(ii)    **Pre-Petition Debt Amount.**  As of the Petition Date, Big Dogs and TWC were jointly and severally indebted under the Pre-Petition Financing Agreements (a) pursuant to the Pre-Petition Revolving Loans in the approximate principal amount of $26,504,497, plus Letters of Credit in the approximate stated amount of

$0; plus interest accrued and accruing, costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services (collectively the "**Pre-Petition Debt**").

(iii)    **Pre-Petition Borrower Collateral.**  To secure the Pre-Petition Debt, each of Big Dog and TWC granted security interests and Liens (the "**Pre-Petition Borrower Liens**") to the Pre-Petition Secured Parties upon substantially all of their respective assets and personal property, including, without limitation, (a) Accounts, (b) Books, (c) Deposit Accounts, (d) Equipment, (e) General Intangibles, (f) Inventory, (g) Investment Property, (h) Negotiable Collateral, (i) Goods, (j) Commercial Tort Claims, (k) money or other assets of Big Dog or TWC that now or hereafter come into the possession, custody, or control of any Pre-Petition Secured Party or any affiliate thereof, (l) the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any and all Accounts, Books, Documents, Equipment, General Intangibles, Instruments, Inventory, Investment Property, Negotiable Collateral, real property, fixtures, leases and leasehold interests, money, deposit accounts, or other tangible or intangible property resulting from the sale, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof, and (m) liens, guaranties, rights, remedies, and privileges pertaining to any of the foregoing, including the right of stoppage in transit (collectively, the "**Pre-Petition Borrower Collateral**"), with priority over all other Liens except any Liens otherwise permitted by the Pre-Petition Financing Agreements (which were valid, properly perfected, unavoidable, and senior to the Pre-Petition Liens, they are referred to herein as the "**Permitted Prior Liens**").  To avoid any doubt, the term

"**Permitted Prior Liens**" does not include, and specifically excludes, the Liens securing the Pre-Petition Debt, which Pre-Petition Liens and claims are to be subordinated to, and junior to, the Liens and claims of the DIP Secured Parties.  To avoid any doubt, the term Pre-Petition Borrower Collateral, in respect to real estate leases shall extend only to the Net Disposition Proceeds arising from a sale, assignment or other disposition thereof.

(iv)    **Pre-Petition Guaranty**.  As an inducement to the Pre-Petition Secured Parties to agree to enter into the Pre-Petition Financing Agreements and agree to provide the Pre-Petition Debt, Parent entered into that certain Amended and Restated General Continuing Guaranty, dated as of July 7, 2005 (the "**Pre-Petition Guaranty**") pursuant to which Parent (then known as "Big Dog Holdings, Inc.") guaranteed to the Pre-Petition Secured Parties the prompt repayment of the Pre-Petition Debt and the performance of all of Big Dogs and TWC's other obligations and agreements under the Pre-Petition Financing Agreements (collectively, the "**Pre-Petition Guarantied Obligations**"; the Pre-Petition Guarantied Obligations together with the Pre-Petition Debt, the "**Pre-Petition Obligations**").

(v)    **Pre-Petition Guaranty Collateral.**  To secure the Pre-Petition Guarantied Obligations, Parent granted security interests and Liens (the "**Pre-Petition Guaranty Liens**"; the Pre-Petition Guaranty Liens together with the Pre-Petition Borrower Liens, the "**Pre-Petition Liens**") to the Pre-Petition Secured Parties upon certain of the Parent's assets and personal property, including, without limitation, (a) Accounts, (b) Books, (c) Equipment, (d) General Intangibles, (e) Inventory, (f) Investment Property, (g) Negotiable Collateral, (h) money or other assets of Parent that now or hereafter come into the possession, custody, or control of any Pre-Petition Secured Party or any affiliate thereto, and (i) any and all proceeds and products, whether tangible or intangible, of any of the foregoing (subparagraphs (a) through (h)), including proceeds of insurance covering any or

all of the foregoing, and any and all Accounts, Books, Equipment, General Intangibles, Inventory, Investment Property, Negotiable Collateral, Real Property, money, deposit accounts, or other tangible or intangible property resulting from the sale, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof (collectively, the "**Pre-Petition Guarantor Collateral**"; the Pre-Petition Guarantor Collateral, together with the Pre-Petition Borrower Collateral, the "**Pre-Petition Collateral**"),[2] with priority over all other Liens except any Permitted Prior Liens.

(vi)    **Pre-Petition Liens**.  (a) As of the Petition Date (i) the Pre-Petition Liens were valid, binding, enforceable, perfected first-priority Liens and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and subject only to any Permitted Prior Liens, (ii) the Pre-Petition Debt constituted legal, valid and binding obligations of Big Dogs and TWC, enforceable in accordance with the terms of the Pre-Petition Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Debt exists, and no portion of the Pre-Petition Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (iii) the Pre-Petition Guaranteed Obligations constituted legal, valid and binding obligations of Parent, enforceable in accordance with the terms of the Pre-Petition Guaranty (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Guaranteed Obligations exists, and no portion of the Pre-Petition Guarantied Obligations is subject to avoidance, recharacterization or subordination pursuant to the

---

[2]    The acknowledgment and agreement by Debtors of the Pre-Petition Debt and the related Liens, rights, priorities and protections granted to or in favor of the Pre-Petition Secured Parties, as set forth herein and in the Pre-Petition Financing Agreement, shall constitute a proof of claim on behalf of the Pre-Petition Secured Parties in these Cases.

Bankruptcy Code or applicable non-bankruptcy law, and (iv) the Pre-Petition

Obligations constituted allowable secured claims, and (b) on the date that the

Interim Order was entered and the date that this Final Order is entered, the Debtors

have waived, discharged and released the Pre-Petition Secured Parties, together

with their affiliates, agents, attorneys, officers, directors and employees, of any

right the Debtors may have (x) to challenge or object to any of the Pre-Petition

Obligations, (y) to challenge or object to the security for the Pre-Petition

Obligations, and (z) to bring or pursue any and all claims, objections, challenges,

causes of action and/or choses in action arising out of, based upon or related to the

Pre-Petition Financing Agreements or otherwise.  The Debtors do not possess and

will not assert any claim, counterclaim, setoff or defense of any kind, nature or

description which would in any way affect the validity, enforceability and non-

avoidability of any of the Pre-Petition Financing Agreements or the Pre-Petition

Secured Parties' Liens, and/or security interests in the Pre-Petition Collateral, or

any claim of the Pre-Petition Secured Parties pursuant to the Pre-Petition

Financing Agreements.

(vii)     **Value of Pre-Petition Collateral.**  After due investigation and evaluation

by the Debtors, aggregate value of the Pre-Petition Collateral granted to the Pre-

Petition Secured Parties pursuant to the Pre-Petition Financing Agreements

exceeded the amount of the Pre-Petition Obligations as of the Petition Date and,

accordingly, all of the Pre-Petition Obligations constitutes an over-secured claim

within the meaning of section 506(b) of the Bankruptcy Code.

(viii)     **Priming of DIP Facility.**  In entering into the DIP Financing Documents,

and as consideration therefore, the Debtors hereby agree that until such time as all

DIP Obligations are indefeasibly paid in full in cash and the DIP Financing

Agreement is terminated in accordance with the terms thereof, the Debtors shall

not in any way prime or seek to prime the security interests and DIP Liens

provided to the DIP Secured Parties under the Interim Order or this Final Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

(ix)     **Cash Collateral.**  The Pre-Petition Secured Parties have a security interest and Lien in Cash Collateral, including on all amounts on deposit in Big Dog's and TWC's banking, checking, or other deposit accounts and all proceeds of Pre-Petition Borrower Collateral, to the same extent and order of priority as that which was held by each such party pre-petition.

(F)     **Findings Regarding the Post-Petition Financing.**

(i)     **Need for Post-Petition Financing**.  An immediate need exists for Big Dog and TWC to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of their estates.  The ability of Big Dog and TWC to finance their operations, to preserve and maintain the value of the Debtors' assets, to continue to obtain inventory and operate their business as a going concern and ultimately successfully reorganize and maximize a return for all creditors requires the availability of working capital from the DIP Facility and the ability to use Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, their estates, their creditors and their equity holders and the possibility for a successful reorganization.

(ii)     **No Credit Available on More Favorable Terms**.  The Debtors have been unable to obtain (A) unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, (B) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Bankruptcy Code section 503(b), (C) credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or (D) credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien, in each case, on more favorable terms and conditions than those

provided in the DIP Financing Agreement, the Interim Order and this Final Order. The Debtors are unable to obtain credit for borrowed money without (i) granting to the DIP Secured Parties the DIP Protections (as defined below), and (ii) allowing the Pre-Petition Lenders to consummate a partial roll-up of the Pre-Petition Facility into the DIP Facility by applying all Collections (as defined in the Pre-Petition Financing Agreement) secured in the ordinary course of business prior to the occurrence of the Commitment Termination Date (as defined below) in the following order: (x) first, to reduce the outstanding obligations pursuant to the Pre-Petition Debt, and (y) second, to reduce the DIP Obligations, which arrangement shall be administered pursuant to the terms and conditions of this Final Order and the DIP Financing Agreement (the "**Partial Roll-Up**").

(iii)    **Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any Permitted Prior Liens are valid, senior, perfected and unavoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the DIP Secured Parties, the Pre-Petition Secured Parties, and any committee appointed pursuant to section 1102 of the Bankruptcy Code to challenge the validity, priority, perfection and extent of any such Permitted Prior Lien and or security interest.

(G)    **Section 506(c) Waiver**.  The DIP Secured Parties and the Pre-Petition Secured Parties have requested a waiver of the provisions of section 506(c) of the Bankruptcy Code as part of the DIP Facility and adequate protection pursuant to this Final Order.

(H)    **Use of Proceeds of the DIP Facility**.  Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Documents) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreement, and in accordance with the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreement), solely for (a) working capital and general corporate purposes, (b) payment of costs of administration of these

Cases, to the extent set forth in the Budget, (c) repayment of the Pre-Petition Debt and (d)

payment to the Issuing Lender (as such term is defined in the DIP Financing Agreement) any

amounts which Big Dogs and TWC are required to pay to reimburse the Issuing Lender for any

L/C Disbursements.

     (I)      **Payment of Pre-Petition Debt; Application of Proceeds of Collateral**.  All

Collections received in the ordinary course of business after the date of entry of this Final Order

shall be applied: (a) first, to reduce the outstanding obligations pursuant to the Pre-Petition Debt,

(b) second, to reduce the DIP Obligations in accordance with the terms of the DIP Financing

Agreement, and (c) third, to the extent that no outstanding balance remains due on the DIP

Obligations and Pre-Petition Obligations, to the Debtors to pay ordinary course expenses incurred

following the Petition Date in accordance with the Budget.  Such payment will not prejudice the

Debtors or their estate, because payment of such amounts is subject to the rights of the Committee

or other parties-in-interest under Section 7 below.

     (J)      **Adequate Protection for Pre-Petition Secured Parties**.  As a result of the grant

of the DIP Liens (as defined below), and the use of Cash Collateral authorized herein, the Pre-

Petition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362,

363 and 364 of the Bankruptcy Code for any Pre-Petition Diminution of Value (as defined below)

resulting from the automatic stay or any Debtor's use, sale or lease of the Pre-Petition Collateral

(including Cash Collateral) during these Cases.  As adequate protection, the Pre-Petition Agent

(for the benefit of the Pre-Petition Secured Parties) will receive: (1) the Pre-Petition Replacement

Liens, (2) the Pre-Petition Superpriority Claim, and (3) the Adequate Protection Payments.

     (K)      **Extension of Financing**.  The DIP Secured Parties have indicated a willingness to

provide financing to Big Dogs and TWC in accordance with the DIP Financing Agreement and

subject to (i) the entry of the Interim Order and this Final Order, and (ii) findings by this Court

that such financing is essential to the Debtors' estate, that the DIP Lenders are good faith

financiers, and that the DIP Lenders' claims, super-priority claims, security interests and Liens

and other protections granted pursuant to this Final Order (and the Interim Order) and the DIP

Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of this Final Order or the Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

(L)    **Business Judgment and Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the DIP Facility (including, without limitation, the Partial Roll-Up) and the DIP Financing Agreement, and the fees paid and to be paid thereunder are (i) fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the DIP Facility (including, without limitation, the Partial Roll-Up) and use of Cash Collateral were negotiated in good faith and at arms' length between Debtors, on the one hand, and the DIP Secured Parties and the Pre-Petition Secured Parties on the other; and (iii) use of the proceeds to be extended under the DIP Facility (including, without limitation, the Partial Roll-Up) will be so extended in good faith, and for valid business purposes and uses, the consequence of which is that the DIP Secured Parties are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.  The Partial Roll-Up and any compensation or payment that may be received by the Pre-Petition Secured Parties incremental to what would have been received had such Partial Roll-Up not occurred, constitute compensation for, in consideration for, and solely on account of, the agreement of such Pre-Petition Secured Parties to make DIP Loans and not as payments under, adequate protection for, or otherwise on account of, the Pre-Petition Debt.

(M)    **Relief Essential; Best Interest; Good Cause**.  The relief requested in the DIP Motion (and as provided in this Final Order) is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' assets and personal property.  It is in the best interest of the Debtors' estate to be allowed to establish the DIP Facility (including, without limitation, the Partial Roll-Up) contemplated by the DIP Financing Agreement.  Good cause has been shown for the relief requested in the DIP Motion (and as provided in this Final Order).

(N)    **Entry of Final Order**.  For the reasons stated above, the Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the DIP Motion of the Debtors and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Pre-Petition Secured Parties, and the DIP Secured Parties to the form and entry of this Final Order, and good and sufficient cause appearing therefore,

**IT IS ORDERED** that:

1.    **Motion Granted**.  The DIP Motion is granted on a final basis in accordance with the terms and conditions set forth in the Interim Order (for the Interim Period only), this Final Order and the DIP Financing Agreement.

2.    **DIP Financing Documents.**

(a)    **Approval of Entry Into DIP Financing Documents.**  The Debtors are each expressly and immediately authorized, empowered and directed to execute and deliver the DIP Financing Documents and to incur and to perform the DIP Obligations up to $30,000,000 in accordance with, and subject to, the terms of this Final Order and the DIP Financing Documents, and to execute and deliver all instruments, certificates, agreements and documents which may be required or necessary for the performance by the Debtors under the DIP Facility (including, without limitation, the Partial Roll-Up and assignments and granting of liens in respect to the Debtors to the DIP Secured Parties of any Debtor's interest in tax refunds payable to such Debtor by the United States of America or any state or local government in respect to any prepetition or post-petition period) and the creation and perfection of the DIP Liens described in and provided for by this Final Order and the DIP Financing Documents.  Debtors are each hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses and other amounts described in the DIP Financing Agreement and all other DIP Financing Documents as such become due, including, without limitation, closing fees, administrative fees, commitment fees, Letter of Credit fees and reasonable attorneys', financial advisors' and accountants' fees and

LA/227805.1

15

disbursements as provided for in the DIP Financing Agreement which amounts shall not

otherwise be subject to approval of this Court; provided, however, that unresolved disputes as to

the reasonableness of any professional fees and expenses may be determined by this Court.  Upon

execution and delivery, the DIP Financing Documents shall represent valid and binding

obligations of each Debtor enforceable against each Debtor in accordance with their terms.

(b)    **Authorization to Borrow**.

i.       In order to enable the Debtors to continue to operate their business

and subject to the terms and conditions of this Final Order, the DIP Financing Agreement, the

other DIP Financing Documents, and the Budget (as defined below) (subject to any variances

thereto permitted under the terms and conditions of the DIP Financing Agreement), Big Dog and

TWC are each hereby authorized under the DIP Facility to consummate the Partial Roll-Up and to

borrow up to a total committed amount of $30,000,000 (including the issuance of Letters of

Credit),  comprised of a senior revolving credit facility in the amount of up to $30,000,000

(inclusive of a sublimit for Letters of Credit up to $2,000,000), in accordance with the terms and

conditions of the DIP Financing Agreement.

ii.      Upon execution and delivery of the DIP Financing Documents by

each of the Debtors party thereto, such DIP Financing Documents shall constitute valid, binding

and non-avoidable obligations of such Debtor enforceable against such Debtor in accordance with

their respective terms and the terms of the Interim Order (for the interim period only) and this

Final Order for all purposes during these Cases, any subsequently converted cases of the Debtors

under chapter 7 of the Bankruptcy Code or after the dismissal of these Cases.  Except as provided

in the proviso appearing at the end of this subsection (ii), no obligation, payment, roll up or

repayment thereof or recovery on or in respect thereof, transfer or grant of security under the DIP

Financing Documents, or this Final Order shall be stayed, restrained, revocable, voidable,

avoidable or recoverable under the Bankruptcy Code or under any applicable law (including

without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any

applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or

similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim; provided, however, that the foregoing shall be subject to Section 7 hereof.  Without limiting the generality of the foregoing, but subject to the provisions of Section 7 thereof, upon entry of this Final Order, Big Dog and TWC shall be authorized  to effect a Partial Roll-Up of the Pre-Petition Debt by applying all Collections (as defined in the Pre-Petition Financing Agreement) which they receive in the ordinary course from and after the Petition Date and prior to the occurrence of the Commitment Termination Date: (x) first, to the Pre-Petition Debt, and (y) second, to the DIP Obligations; provided, however, that any Net Disposition Proceeds (as defined below) from the sale or other disposition of Collateral shall each be distributed (1) first, against the DIP Obligations, and (2) second, to the Pre-Petition Debt.

(c)    **Application of DIP Proceeds**.  The proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreement, and in accordance with the Budget (as defined below) (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreement) solely for (i) working capital and general corporate purposes, and (ii) payment of costs of administration of these Cases, to the extent set forth in the Budget or this Final Order.

(d)    **Conditions Precedent**.  The DIP Secured Parties shall have no obligation to make any loan or advance or to issue any Letter of Credit or other financial accommodation under the DIP Financing Agreement unless the conditions precedent to make such loan or advance or to issue any Letter of Credit or other financial accommodation under the DIP Financing Agreement have been satisfied in full or waived by the DIP Secured Parties in their sole discretion.

(e)    **Post-Petition Liens.**  Effective immediately upon the entry of this Final Order, the DIP Secured Parties are hereby granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests and Liens

(collectively, the "**DIP Liens**"), senior and superior in priority to all other secured and unsecured creditors of the Debtors' estate except for Permitted Prior Liens as otherwise provided in this Final Order, upon and to all presently owned and hereafter acquired assets and real (subject to the proviso at the end of this sentence) and personal property of the Debtors (including, not limited to, any and all tax refunds payable to the Debtors by the United States of American or any state or local government in respect to any prepetition or post-petition period, and all products, Proceeds (cash and non-cash), substitutions, and Accessions of or to any of the foregoing; provided, however, that the Collateral shall not include any avoidance action under chapter 5 of the Bankruptcy Code or the proceeds thereof, other than the proceeds of any avoidance action brought pursuant to section 549 of the Bankruptcy Code to recover any post-Petition Date transfer of collateral, ("**Avoidance Actions**") and, **provided further, however, that in respect to real estate leases, the DIP Liens shall extend only to any Net Disposition Proceeds arising from a sale, assignment or other disposition thereof** (collectively, the "**DIP Collateral**" and, together with the Pre-Petition Collateral, the "**Collateral**").

        (f)      **DIP Lien Priority**.  The DIP Liens to be created and granted to the DIP Secured Parties, as provided herein, (a) are created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, (b) are first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim to any of the DIP Collateral, and are subject only to: (x) the Carve Out, and (y) the Permitted Prior Liens.  The DIP Liens shall secure all DIP Obligations.  The DIP Liens shall not be made subject to or *pari passu* with any Lien or security interest by any court order heretofore or hereafter entered in these Cases except for the Permitted Prior Liens and shall be valid and enforceable against any trustee appointed in these Cases, upon the conversion of any of these Cases to cases under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "**Successor Cases**"), and/or upon the dismissal of these Cases.  The DIP Liens shall not be subject to sections 510, 549, 550, 551 or 506(c) of the Bankruptcy Code.

(g)    **Enforceable Obligations**.    The DIP Financing Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and any successors thereto and their creditors, in accordance with their terms.

(h)    **Budget**.  From and after the Petition Date, Big Dog and TWC shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreement and this Final Order and in accordance with the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreement).

(i)    **Superpriority Administrative Claim Status**.  Subject to the Carve-Out, all DIP Obligations shall be an allowed super-priority administrative expense claim (the "**DIP Superpriority Claim**" and, together with the DIP Liens, the "**DIP Protections**") with priority (except as otherwise provided in Section 7 below) in any Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330 of the Bankruptcy Code (except as otherwise provided in Section 7 below), 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b), 1113 and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment; provided, however, that such Pre-Petition Superiority Claim shall not extend to the recoveries on account of Avoidance Actions.  Other than the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in this proceeding, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to (subject to the Pre-Petition Superpriority Claim as set forth in the Interim Order and this Final

Order), or on a parity with the DIP Protections or the DIP Obligations, or with any other claims of

the DIP Secured Parties arising hereunder.

        3.      **Authorization to Use Cash Collateral and Proceeds of DIP Financing**

**Agreement.**

        (a)      Pursuant to the terms and conditions of this Final Order, the DIP Facility

and the DIP Financing Agreement, and in accordance with the budget filed as <u>Exhibit A</u>, (as the

same may be modified, supplemented or updated from time to time consistent with the terms of

the DIP Financing Agreement and this Final Order, the "**Budget**"), Big Dog and TWC are

authorized to use Cash Collateral, to use the advances under the DIP Financing Agreement, and to

request the issuance of Letters of Credit and to incur reimbursement obligations to the DIP

Secured Parties with respect thereto (during the period commencing immediately after the entry

of the Interim Order and terminating upon the Commitment Termination Date (as defined

below)).  The Budget may be updated (with the consent and/or at the request of the DIP Agent

upon reasonable notice to the Committee) from time to time, provided that such updated Budget

shall be in form and substance acceptable to the DIP Agent, in its reasonable discretion, and the

Debtors and the Debtors shall be required always to comply with the Budget and the DIP

Financing Agreement pursuant to the terms of the DIP Facility.  Except in connection with the

Debtors' closing of up to ninety (90) store locations as contemplated ("**Contemplated Store**

**Closings**") by the Debtors' motion submitted to this Court seeking approval of such

Contemplated Store Closings and the Budget, nothing in this Final Order shall authorize the

disposition of any assets of the Debtors or their estate outside the ordinary course of business or

other proceeds resulting therefrom, except as otherwise expressly permitted in the DIP Facility,

the DIP Financing Agreement and this Final Order and in accordance with the Budget (subject to

any variances thereto permitted under the terms and conditions of the DIP Financing Agreement

and this Final Order).

LA/227805.1

(b)        Except as set forth in Section 7 below, no Cash Collateral or advances under the DIP Financing Agreement may be used by the Debtors, the Committee, or any other person or entity to object to or contest in any manner, or raise any defenses to the validity, extent, perfection, priority, or enforceability of the Pre-Petition Debt, or any Liens or security interests with respect thereto or any other rights or interests of the Pre-Petition Secured Parties, or to assert any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Pre-Petition Secured Parties.

4.        **Adequate Protection for Pre-Petition Secured Parties**.  As adequate protection for the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, the Debtor's use of Cash Collateral and other decline in value arising out of the automatic stay or the Debtor's use, sale, or disposition of the Pre-Petition Collateral ("**Pre-Petition Diminution in Value**"), the Pre-Petition Secured Parties shall receive adequate protection as follows:

(a)        **Pre-Petition Replacement Liens**.  Solely to the extent of the Pre-Petition Diminution in Value of the interests of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Secured Parties shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code additional and replacement security interests and Liens in the DIP Collateral (the "**Pre-Petition Replacement Liens**"), which shall be junior only to the DIP Liens, Permitted Prior Liens and the Carve-Out as provided herein.

(b)        **Pre-Petition Superpriority Claim**.  Solely to the extent of the Pre-Petition Diminution in Value of the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Secured Parties shall have an allowed superpriority administrative expense claim pursuant to Bankruptcy Code section 507(b) (the "**Pre-Petition Superpriority Claim**") which shall have priority (except with respect to the DIP Liens, the DIP Superpriority Claim, and the Carve-Out) over any other claims under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims

against the Debtors and their estate, now existing or hereafter arising, of any kind or nature

whatsoever including, without limitation, administrative expenses of the kinds specified in or

ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c),

546(d), 726(b), 1113, 1114 of the Bankruptcy Code and,  section 506(c) of the Bankruptcy Code,

whether or not such expenses or claims may become secured by a judgment or other non-

consensual Lien, levy or attachment; provided, however, that such Pre-Petition Superiority Claim

shall not extend to the recoveries on account of Avoidance Actions.

       (c)    **Adequate Protection Payments**.  The Pre-Petition Secured Parties shall

receive adequate protection in the form of (i) deemed repayment of  a portion of the outstanding

amount of the Pre-Petition Debt in accordance with this Final Order in coordination with  the

actual application of Collections, and (ii) the deeming of all obligations arising or continuing after

the Petition Date on account of Letters of Credit, cash management services and bank products as

being issued and constituting "DIP Obligations" (as defined in the DIP Financing Agreement)

under the DIP Financing Agreement (the "**Adequate Protection Payments**").  Subject to Section

2(b)(ii), Section 12, Section 17(a), and Section 17(c) of this Final Order, all Collections received

from and after the Petition Date shall be applied against the Pre-Petition Debt in the following

order of priority: (a) first, to Pre-Petition Agent's costs and expenses permitted under Section

19(b); and (b) second, to interest on the dates when due thereunder; and (c) third, to the Pre-

Petition Debt.

       (d)    **Adequate Protection Upon Sale of Collateral.**  Upon the sale of any

Collateral pursuant to section 363 of the Bankruptcy Code, any such Collateral shall be sold free

and clear of any Permitted Prior Liens, the Pre-Petition Liens, and the Pre-Petition Replacement

Liens, provided however, that such Liens shall attach to the proceeds of any such sale in the order

and priority as set forth in this Final Order and the DIP Financing Agreement.

       5.    **Section 507(b) Reservation.**  Nothing herein shall impair or modify the Pre-

Petition Secured Parties' rights to seek additional adequate protection in the event that the

adequate protection provided to the Pre-Petition Secured Parties hereunder is insufficient to

22

compensate for the Pre-Petition Diminution in Value, as applicable, of the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral during these Cases or any Successor Cases.

6.       **Post-Petition Lien Perfection**.  This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Pre-Petition Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreements) to validate or perfect the DIP Liens and the Pre-Petition Replacement Liens or to entitle the DIP Liens and the Pre-Petition Liens to the priorities granted herein.  The Debtors shall execute and deliver to the DIP Agent and the Pre-Petition Agent all such financing statements, mortgages, notices and other documents as the DIP Agent and the Pre-Petition Agent may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Pre-Petition Replacement Liens granted pursuant hereto.  Each of the DIP Agent and the Pre-Petition Agent in its discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order.  The DIP Agent shall, in addition to the rights granted to it under the DIP Financing Documents, be deemed to be the successor in interest to the Pre-Petition Secured Parties with respect to all third party notifications in connection with the Pre-Petition Financing Agreements, all Pre-Petition Collateral access agreements, all bailments for perfection purposes and all other agreements with third parties (including any agreement with a customs broker, freight forwarder or credit card processor) relating to, or waiving claims against, any Pre-Petition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtors and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements and credit card agreements,

provided, that the Pre-Petition Agent shall continue to have all rights pursuant to each of the

foregoing, and to the extent that the DIP Agent succeeds to the rights therein of the Pre-Petition

Agent, the DIP Agent shall continue to hold any Collateral delivered to it as a bailee for

perfection purposes for the benefit of the Pre-Petition Secured Parties.

7.    **Reservation of Certain Third Party Rights and Bar of Challenges and Claims.**

Nothing in this Final Order or the DIP Financing Agreement, including, without limitation, the

Debtors' Stipulations, shall prejudice the rights the Committee has or any other party in interest

with requisite standing (other than the Debtors) may have (a) to file a contested matter or an

adversary proceeding or otherwise to object to or challenge the findings herein, including, but not

limited to, those in relation to (i) the validity, extent, perfection, enforceability or priority of the

mortgage, security interests and Liens of the Pre-Petition Secured Parties in and to the Pre-

Petition Collateral, or (ii) the validity, allowability, priority, status or amount of the Pre-Petition

Debt, or (b) to bring suit or otherwise assert any claims or causes of action against any of the Pre-

Petition Secured Parties in connection with or related to the Pre-Petition Financing Agreements,

or the actions or inactions of any of the Pre-Petition Secured Parties arising out of or related to the

Pre-Petition Financing Agreements; provided, however, that, unless the Committee(s) or any

other party in interest with requisite standing commences a contested matter or adversary

proceeding raising such objection or challenge, including without limitation any claim against the

Pre-Petition Secured Parties in the nature of a setoff, counterclaim or defense to the Pre-Petition

Debt (including but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552

of the Bankruptcy Code or by way of suit against any of the Pre-Petition Secured Parties as

applicable), on or before March 31, 2010, plus the number of days, if any, after (i) January 20,

2010 until the Debtors to file their schedules and statement of financial affairs and (ii) January 12,

2010 until the Pre-Petition Agent has provided to the Committee all of the documents that it relies

upon in asserting the enforceability, validity, priority, perfection, and amount of its Pre-Petition

Debt (the "**Challenge Period Termination Date**").  Upon the Challenge Period Termination

Date, (i) any and all such contested matters, adversary proceedings and other objections and

challenges by any party (including, without limitation, all creditors, the Committee, any chapter 11 or chapter 7 trustee appointed herein or in any Successor Cases, receivers, administrators, examiners with expanded powers, responsible officers, other estate representatives appointed in these Cases or any Successor Cases or in any jurisdiction, and all other parties in interest) shall be deemed to be forever waived and barred, (ii) the Pre-Petition Debt shall be deemed to be allowed in full and shall be deemed to be allowed as fully secured claims within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with these Cases and any Successor Cases, (iii) the Liens in favor of the Pre-Petition Secured Parties shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected security interests and Liens, not subject to recharacterization, subordination or otherwise avoidable, (iv) the Debtors' Stipulations shall be binding on all parties (including, without limitation, all creditors, the Committee, any chapter 11 or chapter 7 trustee appointed herein or in any Successor Cases, receivers, administrators, examiners with expanded powers, responsible officers, other estate representatives appointed in these Cases or in any Successor Cases or in any jurisdiction, and all other parties in interest).  To the extent any such contested matter, adversary proceeding or other objection or challenge is filed, the Pre-Petition Secured Parties shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of the Pre-Petition Debt in each case, to the extent allowable under section 506(b) of the Bankruptcy Code.  The Committee shall be deemed to have standing for purposes of asserting an action pursuant to this Section prior to the Challenge Period Termination Date.  The foregoing provisions concerning the Challenge Period Termination Date shall not be applicable to any subsequently appointed trustee under the Bankruptcy Code.

8.      **Carve-Out**.  Notwithstanding anything herein, the fees and expenses of Case Professionals shall be paid only as allowed by the Bankruptcy Court pursuant to the Bankruptcy Code. Subject to the terms and conditions contained in this Section 8, the DIP Liens, DIP Superpriority Claims, Pre-Petition Liens, Pre-Petition Replacement Liens and Pre-Petition Superpriority Claim granted hereunder shall be subordinate to the following (the "**Carve-Out**"):

(a) allowed administrative fees of the U.S. Trustee's Office pursuant to 28 U.S.C. section

1930(a)(6); (b) accrued and unpaid fees and expenses of all Case Professionals (defined below),

incurred prior to the Commitment Termination Date (irrespective of whether payment thereof is

made before or after the Commitment Termination Date), but not to exceed (i) the amount set

forth in the Budget for the entire Budgeted period for the Case Professionals, less (ii) amounts

actually paid to Case Professionals or funded into the Professional Fee Reserve Account; and

(c) allowed reasonable fees and expenses of attorneys and financial advisors employed by the

Debtors and the Committee pursuant to sections 327, 328, 1102 and 1103 of the Bankruptcy Code

(the "**Case Professionals**") incurred after the occurrence of the Commitment Termination Date

(as defined below) up to $200,000 in the aggregate.  Notwithstanding the foregoing, subject to

there being sufficient availability under the DIP Credit Facility, (i) the Debtors may pay

compensation and expense reimbursements to the Case Professionals prior to the occurrence of

the Commitment Termination Date and the dollar limit in clause (b) above on fees and expenses

to Case Professionals shall neither be reduced nor increased by the amount of any compensation

or reimbursement expenses incurred, ordered or paid prior the occurrence of the Commitment

Termination Date and (ii) the Debtors may provide for the payment of the professional fees and

expenses of the Case Professionals pursuant to the preceding sentence by causing the deposit of

the weekly amount listed in the Budget into a professional fee reserve account ("**Professional Fee**

**Reserve Account**") maintained with Debtors' counsel from which the fees and expenses of the

Case Professionals shall be paid when allowed by the Court  or in accordance with any procedure

established by the Court for the payment of interim compensation.  Funds on deposit in the

Professional Fee Reserve shall be used to pay fees and expenses of the Case Professionals.  Any

funds remaining in the Professional Fee Reserve after payment in full of the final allowed fees of

the Case Professionals shall be returned to the DIP Agent to the extent necessary to pay any

unsatisfied DIP Obligations or Pre-Petition Obligations. In their discretion, the DIP Lenders may

fund the Carve-Out with the Debtors' counsel who shall deposit such funds in the Professional

Fee Reserve, upon the Commitment Termination Date (as defined below).  Upon the full and final

funding of the Carve-Out, there shall be no further obligations on the part of the DIP Secured

Parties or the Pre-Petition Secured Parties regarding the Carve-Out or the Professional Fees and

Expenses.  The DIP Secured Parties' obligation to fund or otherwise pay the Carve-Out, including

allowed professional fees, shall be added to and made a part of the DIP Obligations, secured by

the DIP Collateral, and the DIP Secured Parties shall be entitled to all of the rights, claims, Liens,

priorities, and protections under this Final Order, the DIP Financing Agreement, the Bankruptcy

Code and/or applicable law in connection therewith.  Subject to the subsequent provisions of this

Section 8, the Carve-Out shall exclude any fees and expenses (x) incurred in connection with the

assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection,

defenses or other contested matter, the purpose of which is to seek any order, judgment,

determination or similar relief (A) invalidating, setting aside, avoiding, or subordinating, in whole

or in part, (i) the DIP Obligations, (ii) the Pre-Petition Debt, (iii) the Pre-Petition Liens in the Pre-

Petition Collateral, or (iv) the DIP Secured Parties' and the Pre-Petition Secured Parties' Liens in

the Collateral, or (B) preventing, hindering or delaying, whether directly or indirectly, the DIP

Secured Parties,' or Pre-Petition Secured Parties' assertions or enforcement of their Liens,

security interests or realization upon any DIP Collateral, (y) in using cash collateral of the DIP

Secured Parties and the Pre-Petition Secured Parties selling or otherwise disposing of any other

Collateral, or incurring any indebtedness not permitted under the DIP Financing Agreement,

without the DIP Agent's express written consent or (z) arising after the conversion of the chapter

11 Cases to cases under chapter 7 of the Bankruptcy Code.  The DIP Agent shall implement a

Reserve in respect to the Carve-Out in accordance with the terms and conditions of the DIP

Financing Agreement.  Except for the DIP Secured Loan Parties obligation to fund the Carve-Out

and without duplication of the Carve-Out, the Professional Fee Reserve Account, nothing herein

shall be construed to obligate the Pre-Petition Secured Parties or the DIP Secured Parties, in any

way, to pay the professional fees or U.S. Trustee Fees, or to assure that the Debtors have

sufficient funds on hand to pay any professional fees or U.S. Trustee Fees.

9.    **Payment of Compensation.**  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any official committee or of any person or shall affect the right of the DIP Secured Parties or the Pre-Petition Secured Parties to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts not set forth in the Budget.

10.    **Section 506(c) Claims.**  Upon entry of this Final Order, the right of the Debtors, the Committee or any other party in interest to seek to assert any charge, lien, assessment or claim against the Collateral or the DIP Secured Parties or Prepetition Secured Parties under section 506(c) of the Bankruptcy Code or otherwise are forever waived.  The foregoing provision shall not restrict the right of a subsequently appointed trustee under the Bankruptcy Code to assert any charge, lien, assessment or claim against the Collateral or the DIP Secured Parties or Prepetition Secured Parties under section 506(c) of the Bankruptcy Code.

11.    **Collateral Rights.**  Unless the DIP Agent has provided its prior written consent or all DIP Obligations and Pre-Petition Debt have been indefeasibly paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), all commitments to lend have terminated, all Letters of Credit have been secured by cash collateral as required by the DIP Financing Agreement, all indemnity obligations under the DIP Financing Agreement have been cash collateralized, there shall not be entered in this proceeding, or in any Successor Cases, any order which authorizes any of the following:

(a)    the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status which is equal or senior to those granted to the DIP Secured Parties or the Pre-Petition Secured Parties; or

(b)    the use of Cash Collateral for any purpose other than to pay in full in cash the DIP Obligations or as otherwise permitted in this Final Order and the DIP Financing Agreement; or

(c)    relief from stay by any person other than of the DIP Secured Parties on all or any material portion of the Collateral provided that the DIP Secured Parties do not also obtain relief from stay on the same Collateral; or

(d)    the Debtors' return of goods constituting Collateral pursuant to section 546(h) of the Bankruptcy Code, except as permitted in the DIP Financing Agreement.

12.    **Proceeds of Subsequent Financing.**  Without limiting the provisions and protections of Section 11 above, if at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Secured Parties' obligations to make loans and advances and issue Letters of Credit under the DIP Facility, including subsequent to the confirmation of any chapter 11 plan or plans (the "**Plan**") with respect to the Debtors, and the repayment in full of the Pre-Petition Debt, the Debtors' estate, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Financing Agreement, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over (a) first, to the DIP Agent for application to the DIP Obligations outstanding pursuant to the terms of the DIP Financing Agreement, and (b) second, to the Pre-Petition Agent for application to the Pre-Petition Debt outstanding pursuant to the Pre-Petition Financing Agreement, in each case, in accordance with the terms of this Final Order provided, however, that any proceeds of a refinancing, Net Disposition Proceeds (as defined below) from the sale or other disposition of Collateral or Collections received after the occurrence of the Commitment Termination Date (as defined below) shall each be distributed (1) first, against the DIP Obligations, and (2) second, to the Pre-Petition Debt.

13.    **Commitment Termination Date.**  All (i) DIP Obligations of the Debtors to the DIP Secured Parties shall be immediately due and payable, and (ii) authority to use the proceeds of the DIP Financing Documents and to use Cash Collateral shall cease, both on the date that is the earliest to occur of: (x) April 15, 2010, (y) the occurrence or continuation of any Event of Default or the Termination Date under the DIP Financing Agreement, or (z) the date upon which

a Transaction is closed as contemplated by the DIP Financing Agreement (the "**Commitment Termination Date**").

14.　　**Payment from Proceeds of Collateral.**  Subject to the rights, if any, of the holders of any Permitted Prior Liens and the Carve Out, all products and proceeds of the DIP Collateral (including, for the avoidance of doubt, proceeds from receivables and sales in the ordinary course of business, insurance proceeds, and proceeds of all dispositions of Collateral, whether or not in the ordinary course) regardless of whether such Collateral came into existence prior to the Petition Date, shall be remitted directly to the Agent for application in accordance with Section I hereof.

15.　　**Disposition of Collateral**.  Except for the Contemplated Store Closings or in connection with a Transaction (each subject to the terms and conditions of the DIP Financing Agreement), the Debtors shall not (a) sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, without the prior written consent of the DIP Secured Parties and consultation with the Committee (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Secured Parties or an order of this Court), except for sales of the Debtors' inventory in the ordinary course of business or except as otherwise provided for in the DIP Financing Agreement and this Final Order and as approved by the Bankruptcy Court, or (b) assume, reject or assign any Leasehold Interest (as defined in the DIP Financing Agreement) without the prior consultation with the DIP Agent and the Committee, except as otherwise provided for in the DIP Financing Agreement with respect to the Targeted Stores.

16.　　**Transaction Proceeds; Survival of Protections**.  Any and all Net Disposition Proceeds from a Transaction or arising from a Contemplated Store Closing shall, subject to the rights, if any, of any holders of Permitted Prior Liens and the Carve Out, be remitted to the DIP Agent within 2 days of Debtors' receipt thereof for application to the DIP Obligations and the unpaid Pre-Petition Debt in accordance with the terms of the DIP Financing Agreement and this Final Order.  Unless and until the Pre-Petition Debt and the DIP Obligations are irrevocably repaid in full or have been cash secured to the reasonable satisfaction of the DIP Agent and the

Pre-Petition Agent, as applicable, all commitments under the DIP Financing Agreements to lend have irrevocably terminated, all Letters of Credit have been cash secured as required by the DIP Financing Agreement, the protections afforded to the Pre-Petition Secured Parties and the DIP Secured Parties pursuant to this Final Order or the DIP Financing Agreement, as applicable, and any actions taken pursuant thereto, shall survive the entry of an order confirming a Plan or converting these Cases into Successor Cases, and the DIP Liens, the DIP Superpriority Claim and the Pre-Petition Superpriority Claim shall continue in these proceedings in any Successor Cases, and such Liens, DIP Superpriority Claim and the Pre-Petition Superpriority Claim shall maintain their priority as provided by this Final Order, subject to the Committee's rights pursuant to Section 7 hereof.

17.      **Rights and Remedies Upon Commitment Termination Date**.

(a)      Any automatic stay otherwise applicable to the Pre-Petition Secured Parties and the DIP Secured Parties is hereby modified so that after the occurrence of the Commitment Termination Date and at any time thereafter upon five (5) Business Days prior notice of such occurrence, in each case given to each of the Debtors, counsel for the  Committee, if any, and the U.S. Trustee, the Pre-Petition Secured Parties and the DIP Secured Parties shall be entitled to exercise their rights and remedies in accordance with the Pre-Petition Financing Agreements and the DIP Financing Documents.  Immediately following the giving of notice by the DIP Agent of the occurrence of the Commitment Termination Date (except as otherwise ordered by this Court): (i) the Debtors or Committee shall, subject to the rights, if any, of the holders of any Permitted Prior Liens and the Carve Out, continue to deliver and cause the delivery of the proceeds of Collateral (x) first, to the DIP Agent for application to the DIP Obligations pursuant to the DIP Financing Documents, and (y) second, to the Pre-Petition Agent for application to the Pre-Petition Debt pursuant to the Pre-Petition Financing Agreement; in each case, in accordance with this Final Order; (ii) the DIP Agent shall continue to apply such proceeds in accordance with the provisions of this Final Order and the DIP Financing Documents; (iii) the Debtors shall have no right to seek to use any of such proceeds, nor any other Cash Collateral other than towards the

satisfaction of the Pre-Petition Debt, the DIP Obligations, and the Carve-Out; and (iv) any

obligation otherwise imposed on the DIP Secured Parties to provide any loan or advance or to

issue any Letters of Credit to or for the benefit of Debtors pursuant to the DIP Facility shall be

suspended.  Following the giving of notice by the DIP Agent of the occurrence of the

Commitment Termination Date, Debtors shall be entitled to an emergency hearing before this

Court solely for the purpose of contesting whether the Commitment Termination Date has

occurred.  If the Debtors or Committee do not contest the right of the Pre-Petition Secured Parties

and the DIP Secured Parties to exercise their remedies based upon whether the Commitment

Termination Date has occurred within such time period, or if the Debtors or Committee do timely

contest the occurrence of the Commitment Termination Date and this Court after notice and

hearing declines to stay the enforcement thereof, the automatic stay, as to the Pre-Petition

Secured Parties and the DIP Secured Parties shall automatically terminate at the end of such

notice period.

(b)     If the Pre-Petition Secured Parties or the DIP Secured Parties exercise any

of their rights and remedies upon the occurrence of the Commitment Termination Date, the DIP

Agent, upon notice to the Debtors and Committee, may retain one or more agents to sell, lease, or

otherwise dispose of the Collateral.  In any exercise of their rights and remedies upon the

Commitment Termination Date, the DIP Secured Parties are authorized to proceed under or

pursuant to the DIP Financing Agreement.  Without limiting the foregoing, subject to the terms of

the DIP Financing Agreement, in the exercise of the DIP Agent's rights and remedies upon the

Commitment Termination Date, the DIP Agent may by written notice to the Debtors and

Committee require the Debtors to file a motion seeking to retain one or more agents to sell, lease,

or otherwise dispose of the Collateral on terms acceptable to the DIP Agent (the cost of which

shall be funded by the DIP Facility or use of Cash Collateral in accordance with the Budget).  The

Debtors shall file such motion within ten (10) days of the DIP Agent's request and shall diligently

prosecute such motion.  If the Debtors fail to so file the motion, the DIP Agent may, file and

prosecute such a motion in the name of the Debtors.  Nothing herein shall prejudice or preclude

the Committee from seeking non-consensual use of Cash Collateral following the Commitment Termination Date.

(c)    Subject to the rights, if any, of the holders of any Permitted Prior Liens and the Carve Out, all proceeds realized from any of the foregoing shall be turned over (x) first, to the DIP Agent for application to the DIP Obligations pursuant to the DIP Financing Documents, and (y) second, to the Pre-Petition Agent for application to the Pre-Petition Debt pursuant to the Pre-Petition Financing Agreement; in each case, in accordance with this Final Order.

(d)    Modification of Automatic Stay.  The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the DIP Financing Agreement as necessary to (1) permit the Debtors to grant the Pre-Petition Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the Pre-Petition Secured Parties and the DIP Secured Parties under the DIP Financing Documents, the DIP Facility, and this Final Order, as applicable, and (2) authorize the DIP Secured Parties and the Pre-Petition Secured Parties to retain and apply payments hereunder.

(e)    Nothing included herein shall prejudice, impair, or otherwise affect Pre-Petition Secured Parties', any holder of a Permitted Prior Lien or DIP Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors or the DIP Secured Parties' rights, as provided in the DIP Financing Agreement, to suspend or terminate the making of loans under the DIP Financing Agreement.

18.    **Proofs of Claim.**  The Pre-Petition Secured Parties and the DIP Secured Parties will not be required to file proofs of claim in these Cases or Successor Cases.  This Final Order shall constitute a proof of claim on behalf of the Pre-Petition Secured Parties and the DIP Secured Parties in these Cases.  The Pre-Petition Secured Parties are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) aggregate proofs of claim in these Cases or any Successor Cases.  Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Pre-Petition Secured Parties.

19.    **Other Rights and Obligations.**

(a)    **Good Faith Under Section 364(e) of the Bankruptcy Code.  No Modification or Stay of this Final Order**.  Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility (including, without limitation, the Partial Roll-Up) contemplated by this Final Order, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, the DIP Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or Lien or priority authorized or created hereby.  Notwithstanding any such modification, amendment or vacation, any claim granted to the DIP Secured Parties hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Protections granted to the DIP Secured Parties shall be governed in all respects by the original provisions of this Final Order, and the DIP Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim.  Since the loans made pursuant to the DIP Financing Agreement are made in reliance on this Final Order, the obligations owed the DIP Secured Parties prior to the effective date of any stay, modification or vacation of this Final Order cannot, as a result of any subsequent order in these Cases, or in any Successor Cases, be subordinated, lose their Lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the Liens and claims granted to the DIP Secured Parties under this Final Order and/or the DIP Financing Agreements.

(b)    **Expenses**.  As provided in the Pre-Petition Financing Agreements and the DIP Financing Documents, all costs and expenses of the DIP Secured Parties and the Pre-Petition Secured Parties in connection with the DIP Financing Documents and Pre-Petition Financing Agreements, as applicable, whether incurred prior to or after the commencement of these Cases, including, without limitation, reasonable, documented legal, accounting, collateral examination,

monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out of pocket expenses will be paid by the Debtors, whether or not the transactions contemplated hereby are consummated; provided, however, that such costs and expenses shall be paid only after each relevant professional has provided copies of its fee and expense statements to the U.S. Trustee and counsel to the Committee reasonably contemporaneously with the delivery of such fee and expense statements to the Debtors.  Such statements shall contain reasonable detail as to the number of hours worked and applicable hourly rates, but may be redacted to the extent necessary to delete any information subject to attorney-client privilege, any information constituting attorney work product or any other confidential information and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  The U.S. Trustee, the Committee appointed pursuant to section 1102 of the Bankruptcy Code or any other party in interest may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted hereunder, provided that, any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on counsel to the parties seeking reimbursement no later than 15 days after the objecting parties receiving such applicable professional fee invoice, and (ii) it describes with particularity the items and categories of fees, costs and expenses that are subject to the objection and it provides for a specific basis for the objection to each such item of category of fees, costs and expenses; provided, however, further that the Debtors shall promptly pay all amounts that are not subject of any such objection.  Any hearing on an objection to any payment of any fees, costs and expenses of such professionals shall be limited to the reasonableness of the particular items or categories of fees, costs, and expenses which are the subject to such objection.  Under no circumstances shall professionals for the DIP Secured Parties or Pre-Petition Secured Parties be required to comply with the U.S. Trustee fee guidelines.

(c)    **Binding Effect.**  The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Secured Parties, the Pre-Petition Secured Parties, and the

Debtors and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estate of the Debtors) whether in these Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 Cases.

(d)    **No Waiver**.  The failure of the Pre-Petition Secured Parties or the DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under the DIP Financing Documents, the DIP Facility, the Pre-Petition Financing Agreements, or this Final Order, as applicable, shall not constitute a waiver of any of the Pre-Petition Secured Parties' or the DIP Secured Parties' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Pre-Petition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Pre-Petition Secured Parties or the DIP Secured Parties, to (i) request conversion of these Cases to cases under chapter 7, dismissal of these Cases, or the appointment of a trustee in these Cases (but only in the event the Commitment Termination Date has occurred and is continuing), or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan or (iii) any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties or the Pre-Petition Secured Parties.

(e)    **No Third Party Rights**.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(f)    **No Marshaling**.  None of the DIP Secured Parties nor the Pre-Petition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

(g)    **Section 552(b).**  The DIP Secured Parties and the Pre-Petition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall

not apply to the DIP Secured Parties or the Pre-Petition Secured Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral or the Collateral.

(h)      **Amendment**.  The Debtors and the DIP Agent, with the consent of the Committee, may amend, modify, supplement or waive any provision of the DIP Financing Documents, provided that such amendment, modification, supplement or waiver, in the judgment of the Debtors and the DIP Agent, is either nonprejudicial to the rights of third parties or is not material.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless (a) set forth in writing, signed by or on behalf of all the Debtors, the DIP Agent (after having obtained the approval of the DIP Secured Parties as provided in the DIP Financing Documents), and (b) approved by this Court.

(i)      **Survival of Final Order**.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in these Cases, (ii) converting these Cases to cases under chapter 7 of the Bankruptcy Code, (iii) dismissing these Cases, (iv) withdrawing of the reference of these Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of these Cases in this Court, and the terms and provisions of this Final Order as well as the DIP Protections granted pursuant to this Final Order and the DIP Financing Documents, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections shall maintain their priority as provided by this Final Order until all the obligations of the Debtors to the DIP Secured Parties pursuant to the DIP Financing Documents, and all obligations of the Debtors to the Pre-Petition Secured Parties under the Pre-Petition Financing Agreements are indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms).  The DIP Obligations shall not be discharged by the entry of an order confirming a Plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.  The Debtors shall not propose or support any Plan that is not conditioned upon the payment in full in cash of all of

the DIP Obligations and the Pre-Petition Debt, on or prior to the earlier to occur of (i) the effective date of such Plan and (ii) the Commitment Termination Date.

(j)    **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the DIP Financing Documents, the Interim Order and of this Final Order, the provisions of this Final Order shall govern and control.

(k)    **Enforceability**.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nun pro tunc* to the Petition Date immediately upon execution hereof.

(l)    **Objections Overruled**.  All objections to the DIP Motion (including these raised by the Committee and Genesco, Inc.) are either withdrawn or resolved.

(m)    **No Waivers or Modification of Interim Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Final Order without the prior written consent of the DIP Agent and the Pre-Petition Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent or the Pre-Petition Agent.

(n)    **Waiver of the Ten (10) Day Stay Under Bankruptcy Rule 6004(h)**.  The ten (10) day stay provisions of Bankruptcy Rule 6004(h) are waived and shall not apply to this Final Order.

(o)    **Provision of Information to the Committee**.  The Debtors shall timely provide the financial advisors to the Committee with copies of all documents required to be provided under this Order or the DIP Financing Agreement including, but not limited to, (i) all roll-forward Budgets and any and all amendments to the Budget referenced in Section 6.21(a) of the DIP Financing Agreement, (ii) the Compliance Certificate referenced in Section 6.21(c) thereof; (iii) all financial reports, schedules and other materials or information the Debtors file with this Court or the U.S. Trustee's Office required to be delivered pursuant to Section 6.22 thereof, (iv) all information related to a Transaction required to be delivered to the Lenders pursuant to Section 6.24 thereof, (v) the Weekly Budget Variance Report required to be delivered to the DIP Agent pursuant to Section 7.21(b) thereof, (vi) same store sale reports, (vii) access to

the data room that has been set up for the sale process; (viii) a tracking report showing what third parties have been contacted as potential bidders, which have expressed an interest and which have signed a nondisclosure agreement; (ix) activity/status report on activities of interested parties, including data room activity reports; and (x) any other information which they may reasonably request.  At reasonable times and upon reasonable prior notice, the Debtors shall provide the advisors to the Committee with reasonable access to their premises and financial books and records and an opportunity to speak with the Business Consultant, Store Closing Consultant and Investment Banker.

(p)        By January 13, 2010, WFRF shall provide a legally binding commitment letter (the "Commitment Letter") to provide exit financing to the Debtors on substantially the same terms and conditions as the Pre-Petition Facility conditioned only on (i) the Debtors' delivery of a business plan showing levels of availability and liquidity reasonably satisfactory to WFRF (the "Liquidity Condition"), (ii) no Material Adverse Change (as such term is defined in the Pre-Petition Financing Agreement, except that Material Adverse Change shall not include the filing of these bankruptcy cases by the Debtors or any consequences reasonably expected to flow from such bankruptcy filings) in the Debtors' business, (iii) the entry of an order confirming the Debtors' plan of reorganization on terms and conditions satisfactory to WFRF; and (iv) there being no Default or Event of Default that has occurred and is continuing under the DIP Agreement that has not been waived by WFRF.  By February 7, 2010, the Debtors shall furnish WFRF with a business plan for the post-reorganization period and by February 15, 2010, WFRF shall notify the Debtors and Committee whether such business plan demonstrates sufficient levels of availability and liquidity to satisfy the Liquidity Condition in the Commitment Letter.  If WFRF fails to provide the Commitment Letter by January 13, 2010 or by the later of (i) February 15, 2010 or (ii) 7 days after the Debtors provide its business plan to WFRF, WFRF has not notified the Debtors and the Committee whether the Debtors' business plan satisfies the Liquidity Condition, WFRF agrees that, notwithstanding the Partial Roll Up effected hereunder, the Committee shall be deemed to have reserved its right to seek to cramdown the outstanding

balance of the DIP Obligations as if the Partial Roll-Up had not occurred and the Pre-Petition

Debt was not converted to DIP Obligations as of the effective date of any plan of reorganization

that may be proposed by the Committee pursuant to Bankruptcy Code section 1129(b) and WFRF

shall be deemed to have reserved all of its rights to challenge such cramdown attempt.

(q)    As stated on the record at the hearing held on January 8, 2010, at the Final

DIP Hearing, the Interim Order was extended to January 12, 2010, at 4 p.m. Pacific Time with the

consent of all parties.

IT IS SO ORDERED

###

###

###

###

###

###

###

###

DATED: January 14, 2010

_Robin Riblet_
_____
United States Bankruptcy Judge

| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation, | CHAPTER: 11 |
|---|---|
| | CASE NUMBER: 9:09-bk-15138-RR |
| | [Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
| Debtor(s). | |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: Arent Fox, LLP, 555 West Fifth Street, 48th Floor, Los Angeles, CA  90013-1065

A true and correct copy of the foregoing document described as **FINAL ORDER PURSUANT TO 11 U.S.C SECTIONS 105, 361, 362, 363 AND 364 AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) AUTHORIZING INCURRENCE BY THE DEBTORS OF POST PETITION SECURED INDEBTEDNESS WITH PRIORITY OVER ALL SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (2) GRANTING LIENS, (3) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTORS PURSUANT TO 11 U.S.C. SECTION 363 PROVIDING FOR ADEQUATE PROTECTION, AND (4) MODIFYING THE AUTOMATIC STAY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On January 13, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 13, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 13, 2010 | Simona Filip | /s/ Simona Filip |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

| | |
|---|---|
| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>                                                                Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

## II.  **SERVED BY U.S. MAIL:**

United States Trustee (ND)
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

Brian D Fittipaldi
128 E Carrillo St
Santa Barbara, CA 93101

Ivan M. Gold
Allen Matkins LLP
Three Embarcadero Center, 12th Flr.
San Francisco, CA 94111

Steven B. Levine, Esq.
Brown Rudnick, LLP
One Financial Center
Boston, MA 02111

## III.  **SERVED BY EMAIL**:

- Shirley Cho      scho@pszjlaw.com

- Brian D Fittipaldi      brian.fittipaldi@usdoj.gov

- Brian D Huben      brian.huben@kattenlaw.com

- Evan M. Jones      ejones@omm.com

**SERVED BY PERSONAL DELIVERY :**

The Honorable Robin L. Riblet
United States Bankruptcy Court
Central District of California
1415 State Street
Santa Barbara, California  93101-2511

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                **F 9013-3.1**

| | |
|---|---|
| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br><div align="center">Debtor(s).</div> | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

<div align="center">

### NOTE TO USERS OF THIS FORM:

</div>

**1)**  Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)**  The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3)  Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4)  Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

<div align="center">

## NOTICE OF ENTERED ORDER AND SERVICE LIST

</div>

Notice is given by the court that a judgment or order entitled (*specify*) **FINAL ORDER PURSUANT TO 11 U.S.C SECTIONS 105, 361, 362, 363 AND 364 AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) AUTHORIZING INCURRENCE BY THE DEBTORS OF POST PETITION SECURED INDEBTEDNESS WITH PRIORITY OVER ALL SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (2) GRANTING LIENS, (3) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTORS PURSUANT TO 11 U.S.C. SECTION 363 PROVIDING FOR ADEQUATE PROTECTION, AND (4) MODIFYING THE AUTOMATIC STAY** was entered on the date indicated as entered on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **January 13, 2010**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

☒  Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐  Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an Entered stamp, the party lodging the judgment or order will serve a complete copy bearing an Entered stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☒  Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9021-1.1**

| In re: THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation, <br><br> Debtor(s). | CHAPTER: 11 <br><br> CASE NUMBER: 9:09-bk-15138-RR <br> [Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
| --- | --- |

## I. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>:

- Craig H Averch    caverch@whitecase.com
- Lawrence Bass    lbass@faegre.com
- Shirley Cho    scho@pszjlaw.com
- Emily R Culler    eculler@omm.com
- Lawrence A Diamant    kfinn@rdwlawcorp.com
- Denise Diaz    Denise.Diaz@rmsna.com
- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
- Brian D Huben    brian.huben@kattenlaw.com,
  carole.levine@kattenlaw.com;donna.carolo@kattenlaw.com;laura.nefsky@kattenlaw.com
- William W Huckins    whuckins@allenmatkins.com, clynch@allenmatkins.com
- Steven G Polard    spolard@perkinscoie.com
- David L Pollack    pollack@ballardspahr.com
- Hamid R Rafatjoo    hrafatjoo@pszjlaw.com, hrafatjoo@pszjlaw.com
- Howard Steinberg    hsteinberg@irell.com, awsmith@irell.com
- Wayne R Terry    wterry@hemar-rousso.com
- Ronald M Tucker    rtucker@simon.com,
  psummers@simon.com;rwoodruff@simon.com;shclark@simon.com
- United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov
- Kimberly S Winick    kwinick@clarktrev.com
- Rebecca J Winthrop    winthropr@ballardspahr.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                **F 9021-1.1**

| | |
|---|---|
| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br><div align=center>Debtor(s).</div> | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

## III. <u>TO BE SERVED BY THE LODGING PARTY</u>:


<u>VIA U.S. MAIL</u>

Dennis Strayhan
Office of the United States Trustee
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

Brian Fittipaldi
Office of the United States Trustee
128 E. Carrillo Street
Santa Barbara, CA 93101

Jennifer Cann – Vice President / Account Executive
Joseph Burt – Vice President
Wells Fargo Retail Finance
One Boston Place, 18th Floor
Boston, MA 02108

Steven B. Levine, Esq.
Brown Rudnick, LLP
One Financial Center
Boston, MA 02111

Christopher Carolan, Esq.
Brown Rudnick, LLP
7 Times Square
New York, NY 10036

Wayne R. Terry, Esq.
Hemar, Rousso & Heald LLP
15910 Ventura Blvd., 12th Floor
Encino, CA 91436

Howard Steinberg, Esq.
Jeff Sklar
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067

Ivan M. Gold
Allen Matkins LLP
Three Embarcadero Center, 12th Flr.
San Francisco, CA 94111

Anthony Wall
760 Arcady
Santa Barbara, CA 93108

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                    **F 9021-1.1**

| | |
|---|---|
| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

Bear Stearns Securities Corp Custodian
Robert Schnell IRA
10291 Century Woods Dr
Los Angeles, CA  90067

Cotsen Family Foundation
C/O Kayne Anderson Capital
1800 Ave of the Stars Fl. 2
Los Angeles, CA 90067

David Wolf
1956 East Valley Rd.
Santa Barbara, CA 93108

Doug Nilsen
2225 St. James Drive
Santa Barbara, CA 93105

Gary Lieberthal, Trustee
Lieberthal Trust 3/23/99
991 Bel Air Road
Bel Air, CA 90077-3009

J Reims & Ka Reims, Ttees
Reims Family Trst 11/22/91
241 South Camden Drive
Beverly Hills, CA 90212

Kayne Anderson Capital
Income Partners (QP) LP
1800 Ave of the Stars Fl2
Los Angeles, CA 90067

Lee Cox
6726 Breakers Way
Ventura, CA 93001

Michael Grenley
24931 Marbella Court
Calabasas, CA 91302

Morgan Stanley Prime
Attn: Tammie Koo 4th fl.
1221 Ave of the Americas
New York, NY 10020

RBC Dain Rauscher Cust
For C. Eric Warden Sep IRA
510 Marquette Ave
Minneapolis, MN 55402-1106

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                                              **F 9021-1.1**

In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,

Debtor(s).

CHAPTER: 11

CASE NUMBER: 9:09-bk-15138-RR

[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR]

Richard & Suzanne Kayne
Living Trust dtd 1/14/09
1800 Ave of Stars 2nd Fl
Los Angeles, CA 90067

Robert P. Abate, Trustee
Robert P. Abate Rev Trust
Box 541
Elgin, IL 60123

Bobert Schnell Ira
C/O Kayne Anderson Capital
1800 Ave of the Stars Fl2
Los Angeles, CA 90067

Roberta Morris
1428 San Miguel Ave
Santa Barbara, CA 93108

Susie Minier
5694 Via Salerno
Goleta, CA 93117

The Kayne Foundation
C/O Kayne Anderson Capital
1800 Ave of the Stars Fl2
Los Angeles, CA 90067

Amfit, Inc.
5408 NE 88th Street, Suite D-406
Vancouver, WA 98665

Board of Equalization
PO Box 942879
Sacramento, CA 94279-0001

Kayne Anderson Capital Income partners (QP), LP
c/o Kayne Anderson Capital Advisors, LP
1800 Avenue of the Stars, Second Floor
Los Angeles, CA 90067

Bear Stearns Securities Corp. Custodian
Robert Schnell IRA
10291 Century Woods Dr.
Los Angeles, CA 90067

Blackwell Partners, LLC
406 Blackwell Street, Suite 300
Durham, NC 27701

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                                F 9021-1.1

| | |
|---|---|
| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br><div align="center">Debtor(s).</div> | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

Robert P. Abate Rev Trust UA 8-29-95, Robert P. Abate Trustee
P.O. Box 541N
Elgin, IL 60123

RBC Dain Raucher Cust. For Eric Warden SEP IRA
510 Marquette Avenue
Minneapolis, MN 55402

Wells Fargo Retail Finance, LLC
2450 Colorado Avenue, Suite 3000W
Santa Monica, CA 90404

Wells Fargo Financial Leasing, Inc.
4695 MacArthur Court, Suite 350
Newport Beach, CA 92660

CIT Technology Financing Services, Inc.
10201 Centurian Parkway North Suite 100
Jacksonville, FL 32256

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

Robert K Edmunds
Buchanan Ingersoll & Rooney LLP
600 W Broadway Ste 1100
San Diego, CA 92101

Preit Services, LLC
Klehr Harrison Harvey Branzburg LLP
Jeffrey Kurtzman, Esq
1835 Market St, Ste 1400
Philadelphia, PA 19103

Primeshares
261 Fifth Avenue 22nd Flr
New York, NY 10016

Kevin M. Newman
Menter Rudin & Trivelpiece, PC
308 Maltbie Street, Suite 200
Syracuse, NY 13204

Maureen Bass
Buchanan Ingersoll & Rooney LLP
50 Fountain Plz Ste 800
Key Ctr at Fountain Plz
Buffalo, NY 14202

---

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                      **F 9021-1.1**

| | |
|---|---|
| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br><div align=center>Debtor(s).</div> | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

Mark E Felger
Cozen OConnor
1201 N. Market St Ste 1400
Wilmington, DE 19801


Neal D Colton
Cozen OConnor
1900 Market St
Philadelphia, PA 19103


Taubman Landlords
Andrew S Conway
200 East Long Lake Rd Ste 300
Bloomfield Hills, MI 48304


Linda Boyle
TW Telecom Inc.
10475 Park Meadows Dr No 400
Littleton, CO 80124


Craig Averch
White & Case LLP
633 West Fifth St Ste 1900
Los Angeles, CA 90071-2007


Eastview Mall, LLC
Thomas W. Daniels
1265 Scottsville Road
Rochester, NY 14624


The Shops at Wailea, LP
Christopher J. Muzzi
Moseley Biehl Tsugawa Lau & Muzzi LLLC
Alakea Corporation Tower
1100 Alakea St., 23rd Flr.
Honolulu, HI 96813


Trustees of the Estate of Bernice Pauahi Bishop
Susan Tius
Rush Moore LLP
737 Bishop St., Ste. 2400
Honolulu, HI 96813


Bellevue Square LLC
John S. Kaplan
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                    **F 9021-1.1**

| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation, <br><br> Debtor(s). | CHAPTER: 11 <br><br> CASE NUMBER: 9:09-bk-15138-RR <br> [Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
|---|---|

City of Grapevine, Grapevine-Colleyville ISD
City of Hurst, Arlington Independent School District
c/o Elizabeth Banda
Perdue, Brandon, Fielder, Collins & Mott LLP
P.O. Box 13430
Arlington, TX 76094-0430

Lawrence Bass
Faegre & Benson LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203

UCC Lien Holder
Brightleaf Partners LP
c/o Brightleaf Capital LLC
324 Blackwell St Ste 520
Durham, NC  27701

UCC Lien Holder/Bonholder
Dumac LLC
406 Blackwell St., Ste 300
Durham, NC  27001-3984

UCC Lien Holder
The Huntington National Bank
Attn Edward J. Kitchen VP
650 Smithfield St., Ste. 1000
Centre City Tower
Pittsburgh, PA  15222

UCC Lien Holder
Varilease Finance Inc.
6340 South 3000 East, Ste. 250
Salt Lake City, UT  84121

Counsel for Missouri Department of Revenue
Richard M. Maseles
Missouri Department of Revenue
General Counsel's Office
301 W. High Street, Room 670
PO Box 475
Jefferson City, MO  65105

Patrick E. Mears
Barnes & Thornburg LLP
171 Monroe Avenue, NW, Suite 1000
Grand Rapids, Michigan  49503

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                      **F 9021-1.1**

| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br><div align=center>Debtor(s).</div> | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
|---|---|

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9021-1.1**