

1   Mette H. Kurth (SBN 187100)
    Andy S. Kong (SBN 243933)
2   M. Douglas Flahaut (SBN 245558)
    **ARENT FOX LLP**
3   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
4   Telephone:   213.629.7400
    Facsimile:   213.629.7401
5   E-mail:   kurth.mette@arentfox.com
              kong.andy@arentfox.com
6             flahaut.douglas@arentfox.com

7   *Proposed* Attorneys for Debtors and Debtors in Possession

8   Debtors' Mailing Address
    121 Gray Avenue
9   Santa Barbara, CA 93101

10                 **UNITED STATES BANKRUPTCY COURT**

11                 **CENTRAL DISTRICT OF CALIFORNIA**

12                   **SANTA BARBARA DIVISION**

13   In re:                              Case No.: 9:09-bk-15138-RR

14   **THE WALKING COMPANY**, a          [Jointly Administered with Case Nos.: 9:09-bk-
     Delaware corporation, d/b/a Alan's Shoes,   15137-RR; 9:09-bk-15139-RR]
15   Footworks, Overland Trading Co., Sole
     Outdoors, and Martini Shoes; f/k/a TWC       [Chapter 11]
16   Acquisition Corporation; **BIG DOG USA,**
     **INC.**, a California corporation, d/b/a Big
17   Dog Sportswear; f/k/a Fortune Dogs, Inc.;   **MOTION FOR ENTRY OF AN ORDER**
     and **THE WALKING COMPANY**          **AUTHORIZING AND APPROVING A**
18   **HOLDINGS, INC.**, a Delaware       **LEASE TERMINATION AGREEMENT**
     corporation, f/k/a Big Dog Holdings, Inc.   **BY AND AMONG THE WALKING**
19   and 190th Shelf Corporation,         **COMPANY AND GGP-MALL OF**
                                          **LOUISIANA, L.P.; MEMORANDUM**
20                          Debtors.      **OF POINTS AND AUTHORITIES;**
                                          **DECLARATION OF ANTHONY J.**
21   [X] Affects all Debtors             **WALL**

22   [ ] Applies only to The Walking
23       Company

24   [ ] Applies only to Big Dog USA, Inc.

25   [ ] Applies only to The Walking
         Company Holdings, Inc.

26                                        [NO HEARING REQUIRED]

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    TO THE HONORABLE ROBIN L. RIBLET, UNITED STATES BANKRUPTCY

2    JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; THE LANDLORD

3    AFFECTED BY THIS MOTION; THE DEBTORS' SECURED CREDITORS; COUNSEL

4    FOR THE CREDITORS COMMITTEE; AND ALL PARTIES ENTITLED TO SPECIAL

5    NOTICE:

6         The Walking Company ("TWC") and its debtor affiliates, The Walking Company

7    Holdings, Inc. and Big Dog USA, Inc. ("Big Dog," and collectively, the "Debtors"),

8    hereby move the Court for entry of an order pursuant to Bankruptcy Code section 9019

9    authorizing and approving a lease termination agreement (the "Termination Agreement")

10   by and among TWC ("Tenant") and GGP-Mall of Louisiana, L.P. ("GGP" or the

11   "Landlord").

12        TWC is party to that certain non-residential real property lease dated June 23,

13   2008, by and between TWC, as tenant, and GGP, as landlord (as amended, the "Louisiana

14   Lease") related to TWC's store located in the Mall of Louisiana Shopping Center, Baton

15   Rouge, Louisiana (the "Louisiana Premises"). The Louisiana Lease expires on August 31,

16   2018. Subject to this Court's approval, TWC and GGP have agreed to terminate the

17   Louisiana Lease pursuant to the Termination Agreement, a form of which is attached

18   hereto as Exhibit 1.

19        As set forth in the *Emergency Motion for Order (1) Authorizing the Debtors to*

20   *Conduct Store Closing Sales; (2) Establishing Procedures for the Rejection of Non-*

21   *Residential Real Property Leases; and (3) Authorizing the Immediate Rejection of Certain*

22   *Nonresidential Real Property Leases* (the "Initial Store Closing Motion") [Docket No. 3],

23   the Debtors commenced these chapter 11 cases principally to pursue a "right sizing"

24   strategy that will enable them to reorganize around their profitable stores.

25        To further their "right-sizing" plan, shortly after commencing these chapter 11

26   cases, the Debtors filed a motion seeking authority to close approximately 130 stores, all

27   of which were at above-market rents, and establishing streamlined procedures to handle

28   the rejection of their non-residential real property leases The Court approved the Initial

1    Store Closing Motion in December 2009, and in January 2010 the Debtors filed a motion

2    seeking authority to close approximately 40 additional stores.

3        The Debtors intend to commence a "store closing" sale and terminate operations at

4    the store located at the Louisiana Premises.  Thus, in the next few months the Louisiana

5    Premises will be vacant.  Accordingly, TWC intended to reject the Louisiana Lease to

6    prevent the accrual of additional and unnecessary administrative expenses (such as rent

7    and other lease obligations).  Maintenance of the Louisiana Lease will provide no benefit

8    to the Debtors' estates.

9        Over the last month, the Debtors have engaged in extensive negotiations with

10    respect to their portfolio of commercial real estate leases.  They have now successfully

11    negotiated agreements that provide for the modification of a significant number of their

12    leases, subject to Court approval of these lease modification agreements.  In connection

13    with those negotiations with the Landlord and its affiliates, TWC and the Landlord

14    negotiated and entered into the Termination Agreement, terminating the Louisiana Lease

15    no later than April 30, 2010 in lieu of the Debtors' being forced to reject the Louisiana

16    Lease.

17        Pursuant to the Termination Agreement, on or before that April 30, 2010, TWC

18    will surrender possession of the Louisiana Premises to the Landlord in the condition

19    required pursuant to the Louisiana Lease.  Further, pursuant to the Termination

20    Agreement, the Landlord has agreed to waive and release all prepetition claims, including

21    any lease rejection damages claims under Bankruptcy Code section 502.  In exchange for

22    the waiver of prepetition claims and authorization to conduct "store closing" or similarly

23    styled sales at the Louisiana Premises, TWC will pay the postpetition arrearage of

24    $644.48 to Landlord and waive Landlord's obligations to pay $137,550 in construction

25    costs owed to TWC. The Debtors believe that the Termination Agreement is supported by

26    a valid business justification.

27        **WHEREFORE**, the Debtors respectfully request that the Court enter an Order: (1)

28    granting the Motion; (2) approving and authorizing TWC's entry into the Termination

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

1    Agreement; (3) authorizing the Debtors to perform under the Termination Agreement; and

2    (4) granting such further relief as it deems necessary and appropriate.

3

     Dated:   February 1, 2010                    **ARENT FOX LLP**

4

5

6                                                 By: */s/ Mette H. Kurth*

7                                                     Mette H. Kurth
                                                     *Proposed* Attorneys for the
8                                                     Debtors and Debtors in Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## BACKGROUND

### A.    The Debtors' Real Estate Lease Locations

Headquartered in Santa Barbara, California, the Debtors business consists of two distinct retail operations. The Debtors' operations are largely focused on The Walking Company, which is a leading specialty retailer of authentic comfort footwear. As of December 7, 2009 (the "Petition Date"), The Walking Company operated 210 stores in premium malls across the nation, and it generated approximately 93% of the Debtors' sales in 2009. Big Dog USA, Inc. is a retailer of a lifestyle collection of popular-priced T-shirts, casual sportswear, and accessories featuring the Big Dogs trademark. On a consolidated basis, the Company employs over 1,600 individuals across the country.

As set forth in greater detail in the *Declaration of Andrew D. Feshbach in Support of Emergency "First Day" Motions* [Docket No. 15], the Debtors engaged in a period of significant expansion throughout 2006, 2007, and 2008. Following the deterioration of the economy in the fall of 2008, the Debtors now finds themselves with a significant number of over-market leases and underperforming stores. Accordingly, the Debtors commenced these chapter 11 cases principally to pursue a "right sizing" strategy that will enable them to reorganize around their profitable stores and eliminate those whose continued operation would inhibit a successful reorganization.

### B.    The Debtors' Store Locations

On the Petition Date, the Debtors were parties to over 210 unexpired leases of non-residential real property, which included 210 retail stores, the Debtors' headquarters, and a distribution center. More specifically, the Debtors' corporate headquarters are located at an approximately 24,000 square foot leased office building in Santa Barbara, California, pursuant to a non-residential real property lease. The Debtors also lease a 17,000 square foot office for the TWC merchandising group in Westlake, California and Holdings leases a 230,000 square foot distribution center in Lincolnton, North Carolina. The Debtors are

- 4 -

1   currently using the facilities in the ordinary course of their business operations.  TWC is a

2   party to approximately 207 unexpired leases of non-residential real property relating to

3   TWC stores doing business in 38 states across the country.  Big Dog is a party to two

4   unexpired leases of non-residential real property relating to Big Dog stores doing business

5   in California and Florida.

6       To further their "right-sizing" plan, shortly after commencing these chapter 11

7   cases, the Debtors filed a motion seeking authority to close approximately 130 of their

8   stores, all of which were at above-market rents, and establishing streamlined procedures to

9   handle the rejection of their non-residential real property leases.  The Court approved the

10   Initial Store Closing Motion in December 2009, and in January 2010 the Debtors filed a

11   motion seeking authority to close approximately 40 additional stores. .

12   **C.**    **Lease for the Louisiana Premises**

13       The Debtors intend to commence a "store closing" sale and terminate operations at

14   the store located at the Louisiana Premises.  Thus, in the next few months the Louisiana

15   Premises will be vacant.  Accordingly, TWC intended to reject the Louisiana Lease to

16   prevent the accrual of additional and unnecessary administrative expenses (such as rent

17   and other lease obligations).  Maintenance of the Louisiana Lease will provide no benefit

18   to the Debtors' estates.

19       Over the last month, the Debtors have engaged in extensive negotiations with

20   respect to their portfolio of commercial real estate leases.  They have now successfully

21   negotiated agreements that provide for the modification of a significant number of their

22   leases, subject to Court approval of these lease modification agreements.  In connection

23   with those negotiations, TWC and the Landlord negotiated and entered into the

24   Termination Agreement, terminating the Louisiana Lease no later than April 30, 2010,

25   and preventing the Debtors' from being forced to reject the Louisiana Lease.

26       Pursuant to the Termination Agreement, on or before that April 30, 2010, TWC

27   will surrender possession of the Louisiana Premises to the Landlord in the condition

28   required pursuant to the Louisiana Lease.   Further, pursuant to the Termination

1   Agreement, the Landlord has agreed to waive and release all prepetition claims, including

2   any lease rejection damages claims under Bankruptcy Code section 502. In exchange for

3   the waiver of prepetition claims and authorization to conduct "store closing" or similarly

4   styled sales at the Louisiana Premises, TWC will pay the postpetition arrearage of

5   $644.48 to Landlord and waive Landlord's obligations to pay $137,550 in construction

6   costs owed to TWC. The Debtors believe that the Termination Agreement is supported by

7   a valid business justification.

8       If TWC had simply rejected the Louisiana, the Landlord may have asserted a

9   rejection damage claims under Bankruptcy Code section 502(b)(6), which would be

10  significantly larger than the amount TWC is seeking to release pursuant to the

11  Termination Agreement. While TWC would have disputed such a claim, the Termination

12  Agreement eliminates this potential rejection damage claim, thereby preserving value for

13  the benefit of TWC's stakeholders. Further, the Debtors have entered into this

14  Termination Agreement in connection with the larger restructuring of their real estate

15  portfolio with the Landlord and its affiliates. Thus, in addition to the negotiation of this

16  Termination Agreement, the Debtors have successfully negotiated and entered into lease

17  modifications agreements designed to reduce the Debtors' monthly rent obligations. In

18  the exercise of their business judgment, the Debtors believe that the Termination

19  Agreement is both fair and reasonable in light of the Landlord's potential rejection

20  damage claims against TWC. Accordingly, the Debtors seek this Court's authority to

21  enter into the Termination Agreement.

22  **D.      The Terms of the Termination Agreement**

23          The principal provisions of the Termination Agreement are as follows:

24          *Termination Date:* The termination of the Louisiana Lease shall be effective on the

25  earlier of (a) the close of business hours on April 30, 2010, or (b) the date on which

26  Tenant irrevocably returns possession of the Louisiana Premises (the "Termination

27  Date").

28  ///

- 6 -

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

NYC/461396.2

1     *Tenant's Payments/Release of Claims:* Tenant shall pay existing postpetition

2     arrearages of $644.48 to Landlord upon entry into Termination Agreement.  Tenant

3     waives and releases Landlord's obligation to pay the $137,550.00 Construction Allowance

4     under section 1.8 of the Louisiana Lease.

5     *Release of Prepetition Claims:* Landlord releases Tenant from all rents, charges,

6     costs, expenses and monetary obligations of Tenant arising under the Louisiana Lease

7     prior to the Petition Date.  Postpetition claims arising under the Louisiana Lease are

8     specifically preserved.

9     *Bankruptcy Court Approval:* The effectiveness of Termination Agreement and

10    authority to conduct a "store closing" or similarly styled sale at the Louisiana Premises is

11    conditioned upon an approval of the Termination Agreement by this Court pursuant to a

12    final order (the "Approval Order").

13    *Tenant Releases:* Tenant forever releases and discharges Landlord and its

14    respective subsidiaries, parents and successor corporations, affiliated companies, assigns,

15    future acquiring or acquired entities, and each of their officers, directors, members,

16    shareholders, employees and agents, from any and all claims, demands or causes of action

17    whatsoever against Landlord, its successors and assigns, arising before or after the

18    Termination Date, under or in connection with the Louisiana Lease, the Louisiana

19    Premises, and the Shopping Center (as such term is defined in the Louisiana Lease).

20    **II.**

21    **THIS COURT SHOULD APPROVE THE**

22    **TERMINATION AGREEMENT BECAUSE IT IS FAIR AND**

23    **EQUITABLE AND IN THE BEST INTEREST OF THE ESTATE**

24    **A.**    **Standards for Approval of Compromise of Claim.**

25    Inherent in the grant of jurisdiction to the Court's overall civil proceedings arising

26    under, in or related to cases under Title 11 is the Bankruptcy Court's authority, under 11

27    U.S.C. § 105(a), to enter orders approving compromises.  This power is expressly

28    recognized in the Federal Rule of Bankruptcy Procedure 9019(a), which provides that a

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

NYC/461396.2

court may approve a compromise or settlement after notice is provided pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.1   Approval of the compromise is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A) and (0).[2]

The approval or rejection of a proposed compromise is within the discretion of the court and is to be determined by the particular circumstance of each case.[3] The burden of establishing the fairness of the compromise rests on the proponent.   The Debtors are required to demonstrate that legal evaluations have been made by counsel experienced in such matters and that sufficient investigation has been conducted to enable such counsel to make an informed decision.4   The Debtors satisfy their burden in this case.

In determining the acceptability of a proposed compromise, the following four factors should be considered:

> (a)   The probability of success in the litigation;

> (b)   The difficulties, if any, to be encountered in the matters of collections;

> (c)   The complexity of the litigation fault; and the expense, inconvenience and delay necessarily attending it; and

> (d)   The paramount interest of the creditors and the proper deference to their reasonable views.[5]

Based upon evidence presented to it, a court is not required to decide the questions of law and fact in dispute, but instead to canvas the issues to see whether the "settlement

---

1   Fed. R. Bankr. P. 2002(a)(3) and 9019(a).

2   *See W.J. Services Inc. v. Commercial State Bank of El Campo*, 990 F.2d 233, 234 (5th Cir. 1993); *Druker v. Greene (In re Carla Leather, Inc.)*, 50 B.R. 764, 775 (S.D.N.Y. 1985).

3   *See United States of America v. Alaska National Bank of the North (In re Walsh Construction, Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).

4   *See Feder v. Harrington*, 58 F.R.D. 171, 174-75 (S.D.N.Y. 1972).

5   *See Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986); *See also, Lambert v. Flight Transportation (Flight Transportation Corporation Securities Litigation)*, 730 F.2d 1128, 1135 (8th Cir.1984); *cert. denied nom, Reavis & McGrath v. Antinore*, 469 U.S. 1207, 105 S. Ct. 169, 84 L. Ed. 2d 310 (1985).

1  falls below the lowest point in a range of reasonableness."[6]  When applying the above

2  standards, and "[i]n passing upon the proposed settlement, a court must consider the

3  principle that 'law favors compromise.'[7]

4  **B.    Application of Criteria to the Termination Agreement**

5         Approval of the Termination Agreement pursuant to Bankruptcy Rule 9019(a) is

6  warranted because the Termination Agreement represents a compromise that is fair and

7  equitable, falls well within the range of reasonableness, and satisfies the standards for

8  approval under applicable law.  While TWC could pursue the alternative of rejecting the

9  Louisiana Lease and disputing the Landlord's claim for rejection damages, TWC

10  recognizes that all litigation is accompanied by some risk of loss with its attendant costs,

11  delays, and interruption of all activities necessary to expedite the Debtors' reorganization

12  process.  The Debtors believe that the Termination Agreement will benefit the estates and

13  its creditors by beneficially resolving any potential claims in connection with rejection of

14  the Louisiana Lease without subjecting the Debtors' estates and creditors to any potential

15  litigation over claims asserted by the Landlord.  The Termination Agreement resolves any

16  prepetition claims that the Landlord may have against TWC and is the product of good

17  faith negotiations between TWC and the Landlord.

18         Further, on a larger scale, the Debtors entered into this Termination Agreement in

19  connection with the restructuring of their entire real estate portfolio with the Landlord and

20  its affiliates.  Such restructuring has resulted in the Debtors' entry into a number of lease

21  modifications agreements with the Landlord and its affiliates, which in the near term will

22  substantially reduce the Debtors' monthly rent obligations and allow the Debtors to retain

23  substantially of all of their remaining stores, creating significant benefits for the Debtors'

24  estates.

25

26  6  *Anaconda-Ericsson Inc. (In re Teletronics Services, Inc.)*, 762 F.2d 185, 189 (2nd Cir.
   1985), *quoting, In re W.T. Grant Company*, 699 F.2d 599, 608 (2nd Cir. 1983), *In re*
27  *Martin*, 212 B.R. 316 (B.A.P. 8th Cir. 1997) ("the court does not substitute its
   judgment for that of the trustee, but reviews the issues to see if the settlement falls
28  below the lowest point of reasonableness").

7  *In re Carson*, 82 B.R. 847, 853 (Bankr. S.D. Ohio 1994) (citations omitted).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

NYC/461396.2                                        -9-

## III.

## CONCLUSION

For the reasons set forth herein, and based on the Motion, the notice of the Motion, this Memorandum of Points and Authorities, the record in these cases, the Declarations of Anthony J. Wall, the arguments of counsel at any hearing on this Motion, and other admissible evidence properly brought before the Court at or before the hearing on this Motion, there are good and sufficient grounds for this Court to enter an Order: (1) granting the Motion; (2) approving and authorizing TWC's entry into the Termination Agreement; (3) authorizing the Debtors to perform under the Termination Agreement; and (4) granting such further relief as it deems necessary and appropriate.

Dated: February 1, 2010                    **ARENT FOX LLP**

By: */s/ Mette H. Kurth*
Mette H. Kurth
*Proposed* Attorneys for the
Debtors and Debtors in Possession

## DECLARATON OF ANTHONY J. WALL

I, Anthony J. Wall, declare as follows:

1.      I am over 18 years of age.  If called as a witness, I could and would competently testify with respect to the matters set forth in this declaration from my own personal knowledge or from knowledge gathered from others within the debtors' organization, my review of relevant documents, or my opinion based upon my experience concerning the debtors' operations.

2.      I am the Executive Vice President and General Counsel of The Walking Company Holdings, Inc., f/k/a Big Dog Holdings, Inc., and its two wholly owned subsidiaries, The Walking Company and Big Dog USA, Inc.  In this capacity, I am generally familiar with the legal, business, and financial affairs of the Debtors.  I submit this declaration in support of the Debtors' *Motion for Entry of an Order Authorizing the Debtors to Amend Certain Lease Agreements* (the "Motion").[8]

3.      I have reviewed the Motion and believe that the factual contentions therein are true and correct.  The form *Lease Termination Agreement* is attached hereto as Exhibit 1.  I believe that based upon the analysis contained in the Motion, the Termination Agreement is both fair and reasonable, especially, in light of the Landlord's potential rejection damage claim against TWC.

4.      Overall, I believe the transaction is fair and reasonable and in the best interest of the estates.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of February, 2009, at Santa Barbara, California.

ANTHONY J. WALL

[8]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

# EXHIBIT "1"

# LEASE TERMINATION AGREEMENT

THIS LEASE TERMINATION AGREEMENT (the "Agreement") is made and dated _____ 2010, between GGP-MALL OF LOUISIANA, L.P., a Delaware limited partnership and a debtor in possession ("Landlord") and THE WALKING COMPANY, a Delaware corporation, d/b/a "The Walking Company" ("Tenant").

Under the lease dated June 23, 2008 (which with any and all amendments is the "Lease"), Landlord leased to Tenant premises numbered 645 in the MALL OF LOUISIANA Shopping Center (the "Leased Premises").

Tenant is currently a debtor and debtor in possession in proceedings under Chapter 11 of Title 11 the United States Code, 11 U.S.C. §§101 et seq. (the "Bankruptcy Code"), case No. 09-15138, pending before the United States Bankruptcy Court for the Central District of California, Santa Barbara Division (the "Bankruptcy Court").

Tenant desires to terminate the Lease and surrender the Leased Premises to Landlord on or before April 30, 2010 and Landlord is willing to accept surrender of the Leased Premises subject to the terms and conditions contained in this Agreement.

In consideration of the mutual benefits and covenants contained in this Agreement, and the sum of $10.00 paid by each party to the other and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## THE AGREEMENT

1.        Effective on the earlier of (a) as of the close of business hours on April 30, 2010, or (b) the date on which Tenant irrevocably returns possession of the Leased Premises by delivery of the keys to the Leased Premises (including, without limitation, the codes for any security system located in the Leased Premises) to Landlord or Landlord's designee, confirmed by a writing delivered to Landlord (the earlier of these two alternatives being the "Termination Date"), and subject to the agreements, representations and warranties contained in this Agreement, the Lease is hereby terminated with the same force and effect as if the term of the Lease was fixed to expire on the Termination Date, and Landlord shall have the right to re-enter the Leased Premises as of the Termination Date, as fully as it would or could have done if that were the date of the expiration of the Lease.

2.        Effective as of the Termination Date, Tenant releases, quitclaims and surrenders to Landlord, its successors and assigns all rights of Tenant in and to the Leased Premises, however acquired. Tenant, for itself and its successors and assigns, hereby forever releases and discharges Landlord and its respective subsidiaries, parents and successor corporations, affiliated companies, assigns, future acquiring or acquired entities, and each of their officers, directors, members, shareholders, employees and agents, from any and all claims, demands or causes of action whatsoever against Landlord, its successors and assigns, arising before or after the Termination Date, under or in connection with the Lease, the Leased Premises, and the Shopping Center (as such term is defined in the Lease), the Tenant's use and/or occupancy of the Leased Premises, or the termination or surrender of the Lease and surrender of the Leased Premises. In addition, Tenant forever releases and discharges Landlord from any obligations to be observed or performed by Landlord under the Lease.

3.        Subject to the terms and provisions contained in this Agreement, Landlord agrees to accept the surrender of the Leased Premises as of the Termination Date and, effective as of the Termination Date, forever releases and discharges Tenant from (a) any obligations to be observed and performed by Tenant under the Lease after the Termination Date, and (b) all rents, charges, costs, expenses and monetary obligations of Tenant arising under the Lease prior to December 7, 2009, provided that: (i) Tenant has satisfied, performed and fulfilled all the conditions set forth in this Agreement; (ii) each of the representations and warranties set forth in this Agreement are true and correct; and (iii) Tenant has complied with the terms and provisions contained in this Agreement. If all the

1

12

foregoing conditions are not met on or before the Termination Date, then, in addition to all other rights and remedies Landlord has under this Agreement, in equity or at law, Landlord shall have the unconditional right, upon written notice to Tenant, within a reasonable time following the Termination Date, to terminate this Agreement, and the Lease will continue in full force and effect.

4.    Concurrently with the execution of this Agreement, Tenant shall pay the existing post petition arrearage of $644.48 (as of 1/27/2010) to Landlord.

5.    Tenant hereby waives and releases Landlord's obligation to pay the One hundred thirty-seven thousand five hundred fifty dollars ($137,550.00) Construction Allowance under Reference Provision 1.18 of the Lease.

6.    On or prior to the Termination Date, Tenant will:

(a)    Fulfill all covenants and obligations under the Lease including, but not limited to, the payment of rent, additional rent and all other charges and obligations imposed on Tenant under the Lease which accrue from and after the date of this Agreement to and including the Termination Date. Notwithstanding anything to the contrary contained in this Lease, there will be no year end adjustments, as prescribed by the Lease, for the year in which the Termination Date occurs, and both party do hereby waive (i) any and all rights to reimbursement which may be owed as a result of such year-end adjustments, and (ii) any audit rights either party may have under the Lease. Except as specifically provided in this Agreement, in no event shall Tenant be released or relieved of any liability or obligation imposed on Tenant under the Lease which accrue from and after the December 7, 2009, the date Tenant filed its bankruptcy case, through the Termination Date, or for any event of default by Tenant under the Lease that occurred prior to the Termination Date, or for any act or omission by Tenant which would have constituted an event of default by Tenant under the Lease as of the Termination Date except for the passage of time;

(b)    Completely vacate and surrender the Leased Premises to Landlord in compliance with the terms and provisions contained in the Lease, and deliver the keys to the Leased Premises (including, without limitation, the codes for any security system located in the Leased Premises) to Landlord or Landlord's designee. Any of Tenant's property that is not removed from the Leased Premises on or before the Termination Date may be deemed by Landlord to be abandoned by Tenant and may be retained, sold, transferred or disposed of by Landlord, in Landlord's sole discretion, in which case, Tenant does hereby forever release and relinquish any and all rights Tenant may have over said property. Notwithstanding anything to the contrary contained in this Agreement, if Tenant fails to surrender the Leased Premises to Landlord on or before the Termination Date, then, in addition to all other rights and remedies Landlord has under the Lease, this Agreement, in equity or at law, including, without limitation, Landlord's rights under Article 24 of the Lease, Tenant shall pay Landlord, as liquidated damages and not as a penalty, the sum of $500.00 per day for each day, or portion thereof, following the Termination Date that Tenant fails to vacate and surrender the Leased Premises to Landlord in the condition required under this Agreement and the Lease; and

(c)    Obtain final utility bills and pay all outstanding charges for utility services up to and including the Termination Date. Tenant shall indemnify and hold Landlord harmless against any utility charges or other charges relating to the Leased Premises that are the obligations of Tenant under the Lease.

The terms and provisions contained in this paragraph shall survive the termination of the Lease.

7.    Tenant shall, at its sole expense, promptly file a motion with the Bankruptcy Court seeking approval of this Agreement, which motion shall be duly served upon Landlord's counsel prior to the date set for hearing on the motion. Landlord shall cooperate reasonably with Tenant with respect to the filing and scheduling of such motion, and Tenant shall use reasonable efforts to file a motion seeking approval of Debtor's execution of this Agreement by no later than February 1, 2010. The effectiveness of this Agreement is conditioned on(a) the entry of a final, non-appealable order of the Bankruptcy Court approving this agreement and authorizing its terms and (b) Tenant's execution of amendments to its existing leases with affiliates of Landlord, as identified on Exhibit "A" hereto.

8.    Conditioned on the effectiveness of this Agreement, to the extent that Landlord has filed or does file any proof of claim with respect to the Lease or the Leased Premises with respect to claims arising prior to the filing of

2

13

Tenant's bankruptcy Case, Landlord consents to the expungement of such claims. Landlord further agrees, conditioned on the effectiveness of this Agreement, not to assert any claims against Tenant with respect to the Lease for lease rejection damages under Bankruptcy Code section 502 or otherwise.

9.      Following approval of this Agreement by the Bankruptcy Court, Tenant may commence and conduct a "store closing" or similarly styled sale at the Leased Premises prior to the Termination Date, provided that such sale is conducted in accordance with the "Store Closing Procedures" and other terms of the Order (1) Authorizing Debtors to Conduct Store Closing Sales, etc., filed in the Bankruptcy Court on January 21, 2010.

10.     Tenant warrants and represents to Landlord that as of the date hereof (a) Tenant is the legal and equitable owner of all of Tenant's interest in the Lease, with full power and authority to terminate the Lease and that the individual who has signed this Agreement on behalf of Tenant has authority to execute this Agreement for the purposes and consideration expressed in this Agreement; (b) the Leased Premises have not been subleased and the Lease has not been assigned, transferred, hypothecated, pledged, mortgaged or in any other way encumbered; (c) this Agreement shall not violate or contravene any other agreement, contract, security agreement, lease or indenture to which Tenant is a party or by which Tenant is bound and (d) Tenant has no knowledge of any fact or circumstance which would give rise to any claim, demand, action or cause of action arising out of or in connection with Tenant's occupancy of the Leased Premises and Tenant has no claim, demand, obligation, liability, action or cause of action against Landlord arising out of or in connection with the Lease. . The representations and warranties contained in this paragraph shall survive the termination of the Lease.

11.     Tenant will keep in complete confidence and not divulge the existence, contents or provisions of this Agreement to anyone without the written consent of Landlord (unless Tenant is required to do so by a court of law and/or administrative body, including as Tenant's counsel may reasonably determine is necessary or appropriate in connection with seeking Bankruptcy Court approval of this Agreement. The terms and provisions contained in this paragraph shall survive the termination of the Lease.

12.     If either party begins an action against the other arising out of or in connection with this Agreement, the prevailing party shall be entitled to recover from the losing party reasonable attorneys' fees and costs of suit, as awarded by a court of competent jurisdiction.

13.     Notwithstanding anything to the contrary in this Agreement, all indemnities by Tenant contained in the Lease shall survive the termination of the Lease and are not released, waived, or impaired by this Agreement. The release of liability contained in this Agreement shall not preclude a party from exercising any discovery rights it has against the other party in connection with any civil litigation or arbitration proceedings involving a third (3rd) party.

14.     The provisions in this Agreement are binding on and inure to the benefit of the parties and their respective heirs, legatees, devisees, administrators, executors, successors and assignees, including a trustee, if any, subsequently appointed under chapter 7 or 11 of the Bankruptcy Code.

15.     This Agreement shall be construed under the laws of the state where the Shopping Center is located. Any term that is capitalized but not defined in this Agreement that is capitalized and defined in the Lease shall have the same meaning for purposes of this Agreement as it has for purposes of the Lease.


        IN WITNESS WHEREOF, Landlord and Tenant have executed this Agreement on the day and year first written above.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

14

**THE WALKING COMPANY, a Delaware corporation**

By: _____

Name: _____

Title: _____


**ATTEST:**

_____
                    Secretary

If Tenant is a CORPORATION, the authorized officers must sign on behalf
of the corporation and indicate the capacity in which they are signing. The
Amendment must be executed by the President or Vice-President and the
Secretary or Assistant Secretary, unless the bylaws or a resolution of the
board of directors shall provide otherwise, in which case, the bylaws or a
certified copy of the resolution must be attached to this Amendment. The
appropriate corporate seal must also be affixed


**GGP-MALL OF LOUISIANA, L.P., a Delaware limited partnership and a
debtor in possession**

**By:       MALL OF LOUISIANA HOLDING, INC., a Delaware corporation,
            its general partner**


By: _____

Name: _____

Title: _____

4

15

EXHIBIT "A

| Property ID | Property |
|---|---|
| 900 | ALA MOANA CENTER |
| 610 | ALDERWOOD |
| 1926 | AUGUSTA MALL ANCHOR ACQ |
| 1601 | BEACHWOOD PLACE |
| 1002 | BOISE TOWNE SQUARE |
| 1602 | BRIDGEWATER COMMONS |
| 1603 | CHRISTIANA MALL |
| 810 | CLACKAMAS TOWN CENTER |
| 1607 | FASHION SHOW |
| 615 | GLENDALE GALLERIA (CA) |
| 812 | KENWOOD TOWNE CENTRE (OH) |
| 168 | KINGS' SHOPS |
| 432 | MAYFAIR |
| 858 | NATICK MALL |
| 410 | NORTHBROOK COURT |
| 1618 | OAKBROOK CENTER |
| 1627 | OXMOOR CENTER |
| 430 | PARK CITY CENTER |
| 1629 | PARK MEADOWS |
| 1630 | PERIMETER MALL |
| 1631 | PIONEER PLACE |
| 790 | QUEEN KA'AHUMANU CENTER |
| 1635 | RIDGEDALE CENTER |
| 800 | RIVERCHASE GALLERIA |
| 366 | RIVERTOWN CROSSINGS |
| 1664 | RIVERWALK MARKETPLACE |
| 476 | SAINT LOUIS GALLERIA |
| 151 | STEEPLEGATE MALL |
| 649 | STONEBRIAR CENTRE |
| 484 | THE GRAND CANAL SHOPPES |
| 375 | THE MAINE MALL |
| 1605 | THE MALL IN COLUMBIA |
| 352 | THE SHOPS AT FALLEN TIMBERS |
| 1641 | TOWSON TOWN CENTER |
| 1646 | WATER TOWER PLACE |
| 815 | WHALERS VILLAGE |
| 1654 | WOODBRIDGE CENTER |

16

| In re: THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Arent Fox, LLP, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013-1065

A true and correct copy of the foregoing document described as <u>MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING A LEASE TERMINATION AGREEMENT BY AND AMONG THE WALKING COMPANY AND GGP-MALL OF LOUISIANA, L.P.; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ANTHONY J. WALL</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 1, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II. <u>SERVED BY U.S. MAIL OR OVERNIGHT MAIL</u>**(indicate method for each person or entity served):
On **February 1, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**VIA U.S. MAIL**
Honorable Robin Riblet
United States Bankruptcy Court
1415 State Street, Suite 103
Santa Barbara, California 93101-2511

☐  Service information continued on attached page

**III. <u>SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL</u>** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 1, 2010 | Simona Filip | /s/ Simona Filip |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation, | CHAPTER: 11 |
|---|---|
| | CASE NUMBER: 9:09-bk-15138-RR |
| | [Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
| Debtor(s). | |

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"):

Craig H Averch on behalf of Creditor The Ad Hoc Committee of The Walking Company Holdings, Inc. Noteholders
caverch@whitecase.com

Lawrence Bass on behalf of Interested Party Gart Capital Partners
lbass@faegre.com

Shirley Cho on behalf of Creditor Committee Official Committee Of Unsecured Creditors
scho@pszjlaw.com

Emily R Culler on behalf of Interested Party Genesco, Inc.
eculler@omm.com

Lawrence A Diamant on behalf of Interested Party Kahala Mall
lad@lnbrb.com, katie@lnbrb.com

Denise Diaz on behalf of Debtor The Walking Company Holdings, Inc.
Denise.Diaz@rmsna.com

Robert K Edmunds on behalf of Interested Party Huntington National Bank
robert.edmunds@bipc.com

Brian D Fittipaldi on behalf of U.S. Trustee United States Trustee (ND)
brian.fittipaldi@usdoj.gov

Todd R Gabriel on behalf of Creditor Seaport Village Operating Company
tgabriel@sparberlaw.com

Brian D Huben on behalf of Creditor Crossgates Mall Company NewCo, LLC
brian.huben@kattenlaw.com,
carole.levine@kattenlaw.com;donna.carolo@kattenlaw.com;laura.nefsky@kattenlaw.com

William W Huckins on behalf of Creditor Federal Realty Investment Trust
whuckins@allenmatkins.com, clynch@allenmatkins.com

Steven G Polard on behalf of Creditor Bellevue Square LLC
spolard@perkinscoie.com

David L Pollack on behalf of Creditor Galleria Mall Investors, LP
pollack@ballardspahr.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation, <br><br> Debtor(s). | CHAPTER: 11 <br><br> CASE NUMBER: 9:09-bk-15138-RR <br> [Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
|---|---|

Hamid R Rafatjoo on behalf of Creditor Committee Official Committee Of Unsecured Creditors
hrafatjoo@pszjlaw.com, hrafatjoo@pszjlaw.com

David B Shemano on behalf of Interested Party Courtesy NEF
dshemano@pwkllp.com

Howard Steinberg on behalf of Creditor Richard A. Kayne, Trustee, Richard & Suzanne Kayne Living Trust dated 1/14/99
hsteinberg@irell.com, awsmith@irell.com

Wayne R Terry on behalf of Creditor Request for Courtesy NEF
wterry@hemar-rousso.com

Ronald M Tucker on behalf of Creditor Simon Property Group, Inc.
rtucker@simon.com, psummers@simon.com;rwoodruff@simon.com;shclark@simon.com

United States Trustee (ND)
ustpregion16.nd.ecf@usdoj.gov

Kimberly S Winick on behalf of Creditor South Coast Plaza
kwinick@clarktrev.com

Rebecca J Winthrop on behalf of Interested Party Kravco Simon Company
winthropr@ballardspahr.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009
LA/233610.1

F 9013-3.1