Mette H. Kurth (SBN 187100)
Andy S. Kong (SBN 243933)
M. Douglas Flahaut (SBN 245558)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:    213.629.7400
Facsimile:    213.629.7401
E-mail:    kurth.mette@arentfox.com
        kong.andy@arentfox.com
        flahaut.douglas@arentfox.com

*Proposed* Attorneys for Debtors and Debtors in Possession

Debtors' Mailing Address
121 Gray Avenue
Santa Barbara, CA 93101

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA BARBARA DIVISION

In re:

**THE WALKING COMPANY**, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; **BIG DOG USA, INC.**, a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and **THE WALKING COMPANY HOLDINGS, INC.**, a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,

                    Debtors.

[x]  Affects all Debtors

[ ]  Applies only to The Walking Company

[ ]  Applies only to Big Dog USA, Inc.

[ ]  Applies only to The Walking Company Holdings, Inc.

Case No. 09-15137, 09-15138, and 09-15139

Jointly Administered under Case No. 09-15138

Chapter 11

**DEBTORS' SECOND AMENDED JOINT CHAPTER 11 PLAN (DATED MARCH 9, 2010)**

### Disclosure Statement Hearing

DATE:    March 12, 2010

TIME:    1:00 p.m.

PLACE:    1415 State Street
        Santa Barbara, CA 93101

### Confirmation Hearing

DATE:    April 23, 2010

TIME:    1:00 p.m.

PLACE:    1415 State Street
        Santa Barbara, CA 93101

# TABLE OF CONTENTS

**Page**

TABLE OF EXHIBITS ........................................................................................................... iv

I.      INTRODUCTION ........................................................................................................ 2

II.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................... 2
        A.      General Overview ........................................................................................... 2
        B.      Unclassified Claims ........................................................................................ 4
                1.      Administrative Claims ........................................................................ 4
                2.      Priority Tax Claims ............................................................................ 7
        C.      Classified Claims and Interests ...................................................................... 8
                1.      Classes of Secured Claims ................................................................. 8
                2.      Reclamation Claims ......................................................................... 11
                3.      Classes of Priority Unsecured Claims .............................................. 12
                4.      Class of General Unsecured Claims ................................................. 12
                5.      Class(es) of Interest Holders ........................................................... 15
        D.      Means of Performing Under the Plan ............................................................ 16
                1.      Exit Financing .................................................................................. 16
                2.      Funding for the Plan ......................................................................... 18
                3.      Issuance of New Preferred Stock ..................................................... 18
                4.      Post-confirmation Management ........................................................ 19
                5.      Disbursing Agent ............................................................................. 19

III.    TREATMENT OF MISCELLANEOUS ITEMS .......................................................... 20
        A.      Executory Contracts and Unexpired Leases .................................................. 20
                1.      Assumption of Executory Contracts and Unexpired Leases .............. 20
                2.      Rejection of Executory Contracts and Unexpired Leases .................. 22
                3.      Postpetition Contracts and Leases .................................................... 23
        B.      Changes in Rates Subject to Regulatory Commission Approval ..................... 24
        C.      Retention of Jurisdiction ............................................................................... 24

IV.     MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN AND
        OTHER PROVISIONS .............................................................................................. 26
        A.      Preservation of Claims and Rights Not Expressly Settled, Released, or
                Waived ......................................................................................................... 26
                1.      General Claims and Rights ............................................................... 26

**TABLE OF CONTENTS**
(continued)

Page

2.    Avoidance Actions ............................................................ 26

3.    Waiver of Preference Claims ......................................... 27

B.    The Releases, Waivers & Injunctions ................................... 27

1.    The WFRF Waiver and Injunction .................................. 27

2.    The Noteholder Releases ................................................ 28

3.    The Investor Releases .................................................... 28

4.    The Debtor and Committee Releases .............................. 29

C.    Objections to Claims and Interests ....................................... 30

D.    Distribution of Property ....................................................... 30

1.    Manner of Cash Payment ............................................... 30

2.    Distributions to Persons Holding Allowed Claims in Classes 2 Through 10 ............................................... 30

3.    No Distributions with Respect to Disputed Claims or Interests ............... 31

4.    Unsecured Claims Reserve ............................................ 31

5.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ............... 32

6.    Compliance with Tax Requirements ............................... 34

7.    Setoff and Recoupment ................................................. 34

E.    No Liability for Solicitation or Participation ....................... 34

F.    Limitation of Liability ......................................................... 34

G.    Revocation of the Plan ......................................................... 35

H.    Post-Effective-Date Effect of Evidences of Claims or Interests .......... 35

I.    Successors and Assigns ....................................................... 35

J.    Saturday, Sunday, or Legal Holiday ..................................... 35

K.    Governing Law ..................................................................... 36

L.    Severability of Plan Provisions ............................................ 36

M.    No Admissions ..................................................................... 36

N.    Conditions to Effectiveness of the Plan ............................... 37

V.    THE REORGANIZED DEBTORS ................................................ 37

A.    New Certificate of Incorporation and Bylaws ..................... 37

VI.    EFFECT OF CONFIRMATION OF PLAN ................................... 38

A.    Discharge ............................................................................. 38

B.    Injunction ............................................................................. 39

# TABLE OF CONTENTS
(continued)

**Page**

C.    Retiree Benefits ................................................................................................. 39

D.    Revesting of Property in the Debtor .................................................................... 40

E.    Modification of Plan ........................................................................................... 40

F.    Dissolution of the Committee. .......................................................................... 40

G.    Post-Confirmation Status Report ........................................................................ 41

H.    Quarterly Fees ..................................................................................................... 41

I.    Post-Confirmation Conversion/Dismissal ........................................................... 41

J.    Final Decree ........................................................................................................ 41

VII.    DEFINED TERMS ...................................................................................................... 42

VIII.    RULES OF INTERPRETATION ................................................................................. 53

IX.    RECOMMENDATION AND CONCLUSION ............................................................. 55

1

## **TABLE OF EXHIBITS**

2

SCHEDULE OF ASSUMED AGREEMENTS .............................................................. EXHIBIT 1

3

SCHEDULE OF REJECTED AGREEMENTS ............................................................ EXHIBIT 2

4

CERTIFICATES OF INCORPORATON AND BYLAWS ......................................... EXHIBIT 3

5

COMMITMENT LETTER ......................................................................................... EXHIBIT 4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## INTRODUCTION

The Walking Company, Big Dog USA, Inc., and The Walking Company Holdings, Inc. are the debtors in these Chapter 11 bankruptcy cases. On December 7, 2009, the Debtors commenced bankruptcy cases by filing voluntary Chapter 11 petitions under the Bankruptcy Code. This document is the Chapter 11 Plan proposed by the Debtors. Sent to you in the same envelope as this document is the Disclosure Statement that has been approved by the court, and which is provided to help you understand the Plan.

This is a reorganizing plan. In other words, the Debtors seek to accomplish payments under the Plan primarily by: (a) reducing operating expenses by renegotiating their real estate leases; (b) reducing the amount due under their Notes and obtaining certain economic concessions from the Noteholders and other creditors; (c) increasing their capital through a $10 million Capital Investment and the $30 million Exit Financing; and (d) cash from operations.  The $10 million Capital Investment will be made pursuant to an Investor Commitment Letter between the Investors and the Debtors.  Of this $10 million investment, approximately $8 million will be used to pay for the Debtors' reorganization costs (including an estimated $6 million in Administrative and Priority Unsecured Claims as well as another approximately $2 million to be made available for distributions to unsecured creditors under the Plan).  Any remaining balance will be retained as working capital for the Reorganized Debtors.  The Effective Date of the proposed Plan is the first Business Day that, as determined by the Debtors in their reasonable discretion, meets the conditions set forth in Section IV.N.

# II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or

unimpaired. The Plan provides the treatment each class will receive under the Plan.  The categories set forth in this Section and summarized in the following table classify Claims and Interests for all purposes, including, without limitation, voting, confirmation, and distribution under the Plan.

| CLASS | SUMMARY | VOTING STATUS |
|---|---|---|
| None | Administrative Claims and Administrative Tax Claims | Not Entitled to Vote |
| None | Priority Tax Claims | Not Entitled to Vote |
| Class 1 | WFRF's Secured Claims Against the Debtors Under the Prepetition Credit Facility and DIP Facility | Unimpaired – Deemed to Accept |
| Class 2 | The Noteholders' Secured Claims Against the Debtors Under the Notes | Impaired – Entitled to Vote |
| Class 3 | Other Secured Claims | Unimpaired – Deemed to Accept |
| Class 4 | Reclamation Claims | Unimpaired – Deemed to Accept |
| Class 5 | Priority Unsecured Claims | Unimpaired – Deemed to Accept |
| Class 6 | General Unsecured Claims-Big Dog | Unimpaired – Deemed to Accept |
| Class 7 | General Unsecured Claims-TWC | Unimpaired – Deemed to Accept |
| Class 8 | General Unsecured Claims-Holdings | Unimpaired – Deemed to Accept |
| Class 9 | Intercompany Claims | Unimpaired – Deemed to Accept |
| Class 10 | Employee Stock Option Claims | Impaired – Entitled to Vote |
| Class 11 | Holdings' Existing Common Stock | Unimpaired – Not Entitled to Vote |
| Class 12 | TWC's Existing Common Stock | Unimpaired – Not Entitled to Vote |
| Class 13 | Big Dog's Existing Common Stock | Unimpaired – Not Entitled to Vote |

The treatment set forth below is in full and complete satisfaction of the legal, contractual, or equitable rights in or against the Debtors of each Person holding an Allowed Claim or Allowed Interest.   This treatment supersedes and replaces any agreements or rights those Persons have in or against the Debtors or their respective property.  All distributions provided under the Plan will be tendered to the Person holding the Allowed Claim or Allowed Interest.  Notwithstanding any agreement to the contrary to which a Debtor is or may be a party (including, without limitation, any prepetition intercreditor or subordination agreement, which will be cancelled and in no force or effect as of the Effective Date), any lien securing a Secured Claim will be void as of the Effective Date, and any lien granted under the Plan will be subject to the Plan's terms.

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE, AND NO RIGHTS WILL BE RETAINED, ON ACCOUNT OF ANY CLAIM OR INTEREST THAT IS NOT AN ALLOWED CLAIM OR AN ALLOWED INTEREST.**

**B.**     **Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtors have <u>not</u> placed the following claims in a class. The treatment of these claims is provided below.

**1.**     **Administrative Claims**

Administrative expenses are claims for costs or expenses of administering the Debtors' Reorganization Cases, which are allowed under Bankruptcy Code Section 503(b). The Bankruptcy Code requires that all administrative claims be paid on the Plan's Effective Date, unless a particular claimant agrees to a different treatment.   The Disclosure Statement identifies <u>all</u> of the Debtors' projected Section 503(b) administrative claims, and their treatment is set forth below.

### a.    Allowance of Administrative Claims.

Administrative Claims will be allowed as follows:

***Ordinary-Course Administrative Claims***:   Unless the Debtors or the Reorganized Debtors object to an Ordinary-Course Administrative Claim (which claims include Clerk's Office fees and U.S. Trustee's fees), the Claim will be allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Ordinary-Course Administrative Claim, and the Person holding the Ordinary-Course Administrative Claim need not File any request for payment of its Claim.

***Non-Ordinary-Course   Administrative   Claims:***   A   Non-Ordinary-Course Administrative Claim, other than a 503(b)(9) Claim, will be allowed <u>only</u> if:

> (a)    On or before 60 days after the Effective Date, the Person holding the Claim both Files with the Court a motion requesting that the Debtors or the Reorganized Debtors pay the Non-Ordinary-Course Administrative Claim and serves the motion on the Debtors or Reorganized Debtors and Reorganization Counsel; and

> (b)    The Court, in a Final Order, allows the Non-Ordinary-Course Administrative Claim.

The Court has established April 20, 2010 as the General Bar Date for all persons and entities to file a proof of claim or interest in these cases or requests for allowance of 503(b)(9) Claims.

The Debtors or Reorganized Debtors may File an objection to such a motion, proof of claim, or request for allowance of a 503(b)(9) Claim within the time provided by the Bankruptcy Rules or within any other period that the Court establishes.  **Persons holding Non-Ordinary-Course Administrative Claims who do not timely File and serve a request for payment will be forever barred from asserting those Claims against the Debtors, the Estates, the Reorganized Debtors, or their respective property**.

***Professional Fee Claims.***   The Court must approve all Professional Fee Claims. As set forth below, each professional in question must File and serve a properly noticed

- 5 -

fee application, and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under this Plan.

A Professional Fee Claim will be allowed <u>only</u> if:

(a)    On or before 60 days after the Effective Date, the Person holding the Professional Fee Claim both Files with the Court a motion requesting that the Reorganized Debtors pay the Professional Fee Claim and serves the motion on the Reorganized Debtors and their Reorganization Counsel; and

(b)    The Professional Fee Claim is allowed by a Final Order.

The Reorganized Debtors or any other party in interest may File an objection to such a motion within the time provided by the Bankruptcy Rules or within any other period that the Court establishes. **Persons holding Professional Fee Claims who do not timely File and serve a motion for payment will be forever barred from asserting those Claims against the Debtors, the Estates, the Reorganized Debtors, or their respective property**.

***Administrative Tax Claims.***    An Administrative Tax Claim will be allowed <u>only</u> if:

(a)    On or before the later of: (1) 60 days after the Effective Date; or (2) 120 days after a Debtor files the tax return for the underlying taxes with the applicable governmental unit, the Person holding the Administrative Tax Claim both Files with the Court either a proof of Administrative Tax Claim or a motion requesting that the Reorganized Debtor pay the Administrative Tax Claim and serves the proof of Claim or motion on the Reorganized Debtor and the Debtors' Reorganization Counsel; <u>and</u>

(b)    The Court, in a Final Order, allows the Administrative Tax Claim.

The Reorganized Debtors may File an objection to such a proof of Claim or motion within the time provided by the Bankruptcy Rules or within any other period that the Court establishes. **Persons holding Administrative Tax Claims who do not timely File**

**and serve a proof of Administrative Tax Claim or motion for payment will be forever barred from asserting those Claims against the Debtors, the Estates, the Reorganized Debtors, or their respective property, whether the Administrative Tax Claim is deemed to arise before, on, or after the Effective Date**.

**b.     Treatment of Allowed Administrative Claims.**

Unless the Person holding an Allowed Administrative Claim and the Debtors or Reorganized Debtors agree otherwise, the Disbursing Agent will pay to that Person cash in the Allowed Administrative Claim's full amount, without interest, on or before the later of: (a) as soon as reasonably practicable on or after the Effective Date; (b) 30 days after the date on which the Administrative Claim becomes an Allowed Administrative Claim; or (c) the date on which the Allowed Administrative Claim becomes due and payable; *provided, however,* that holders of Allowed 503(b)(9) Claims will also receive Postpetition Interest on the face amount of their Allowed 503(b)(9) Claims through the date of distribution on account of such Allowed 503(b)(9) Claims.

**2.     Priority Tax Claims**

**a.     Allowance of Priority Tax Claims.**

Priority Tax Claims are certain unsecured income, employment, and other taxes described by Bankruptcy Code Section 507(a)(8). The Bankruptcy Code requires that each holder of a Section 507(a)(8) Priority Tax Claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.  The Disclosure Statement identifies <u>all</u> of the Debtors' Section 507(a)(8) Priority Tax Claims.

**b.     Treatment of Allowed Priority Tax Claims.**

Unless the Person holding an Allowed Priority Tax Claim and the Debtors or Reorganized Debtors agree otherwise, the Reorganized Debtors will pay to that Person, over a period not exceeding six years from the date on which the underlying tax was assessed, deferred cash payments in an aggregate amount equal to the amount of the Allowed Priority Tax Claim, plus simple interest from the Effective Date on the unpaid

balance of the Allowed Priority Tax Claim at the Statutory Interest Rate. The Reorganized Debtors will make these payments in equal semiannual installments. The first installment will be due on the later of: (a) 30 days after the Effective Date; (b) 30 days after the date on which the Priority Tax Claim becomes an Allowed Priority Tax Claim; or (c) 30 days after the date on which the Priority Tax Claim is allowed by a Final Order. Each installment will include simple interest, in arrears, on the unpaid balance of the Allowed Priority Tax Claim at the Statutory Interest Rate but will include no penalty of any kind. The Reorganized Debtors will have the right to pay any unpaid balance on an Allowed Priority Tax Claim in full at any time on or after the Effective Date without premium or penalty of any kind.

## C.    Classified Claims and Interests

### 1.    Classes of Secured Claims

Secured Claims are claims secured by liens on property of the estate. This Section lists all classes containing the Debtors' secured prepetition claims and their treatment under this Plan.

#### a.    Class 1 (WFRF's Secured Claims Against the Debtors Under the Prepetition Credit Facility and DIP Facility)

*Classification:*  Class 1 consists of WFRF's Allowed Secured Claims against the Debtors under the Prepetition Credit Facility and the DIP Facility, which Claims are deemed to be fully secured and allowed in full, including interest and legal fees properly chargeable to the Debtors pursuant to the Prepetition Credit Facility and the DIP Facility. As of the Petition Date, the Debtors acknowledge that the aggregate amount of WFRF's Secured Claims was $25,730,089 plus loans, advances, interest, and legal fees accruing from and after the Petition Date. During the course of these Reorganization Cases, pursuant to the DIP Order, WFRF's pre-petition secured claim has been repaid in full and WFRF has made, and shall continue to make through the Effective Date, post-petition debtor in possession financing loans. Interest and legal fees shall continue to be charged

- 8 -

and paid in accordance with the Prepetition Credit Facility and the DIP Facility until WFRF's Secured Claims have been fully satisfied.

*__Treatment__:*    WFRF has provided TWC and Big Dog with the legally binding WFRF Commitment Letter to, subject to satisfaction of certain generally customary terms and conditions set forth therein, provide Exit Financing to TWC and Big Dog on substantially the same terms and conditions as the Prepetition Credit Facility (including, but not limited to, such Exit Financing's being secured by a duly perfected, first lien security interest on substantially all of the Reorganized Debtors' assets), except as otherwise provided in the WFRF Commitment Letter.  The proceeds of the Exit Financing will be used to refinance the Debtors' obligations under the Prepetition Credit Facility and DIP Obligations upon the Effective Date and to provide financing for working capital, issuance of letters of credit, capital expenditures, and other general corporate purposes of the Reorganized Debtors.  The refinancing of the obligations under the Prepetition Credit Facility and DIP Obligations pursuant to the Exit Facility will be in full satisfaction of all Allowed Class 1 Claims held by WFRF and of all legal, equitable, and contractual rights to which WFRF is entitled under the Prepetition Credit Facility or the DIP Facility.  On or before the Effective Date, TWC and Big Dog will deliver to WFRF the Post-Confirmation Credit Agreement and other documents related thereto substantially consistent with the terms and conditions provided in the WFRF Commitment Letter and the Pre-Petition Credit Facility and DIP Facility and in a principal amount equal to the outstanding balance of the DIP Facility (estimated to be approximately $5 million as of the Effective Date), and Reorganized TWC and Reorganized Big Dog will agree to pay WFRF all amounts due under the Post-Confirmation Credit Agreement in accordance with such legal, equitable, and contractual rights as previously existed under the Prepetition Credit Facility.   The obligations under the Post-Confirmation Credit Agreement will be guaranteed by Reorganized Holdings and secured by duly perfected, first liens on substantially all of the Reorganized Debtors' assets.

b.    **Class 2 (The Noteholders' Secured Claims Against the Debtors Under the Notes)**

*Classification:*  Class 2 consists of the Noteholders' Allowed Secured Claims against the Debtors under the Notes, which Claims are deemed to be fully secured and allowed in full, including interest and legal fees properly chargeable to the Debtors pursuant to the Notes.   As of the Petition Date, the Debtors acknowledge that the aggregate amount of the Noteholders' Secured Claims was $20.21 million**,** which includes principal as well as PIK Interest and interest accrued and owing as of the Petition Date.

*Treatment:*  On the Effective Date, each of the Notes will be Reinstated**;** *provided, however,* that the aggregate principal amount of the Notes will be reduced to $19.5 million, which represents the cancellation of an aggregate of approximately $960,000 in PIK Interest due under the Notes as of the Petition Date, and the principal amount of each Note held by a Noteholder will be reduced by a proportionate amount.   The Reinstated Notes will continue to be secured by substantially all of the assets of the Reorganized Debtors (other than intellectual property relating to Big Dog), and shall also continue to be subject and subordinate in lien priority and right of payment to WFRF's liens and claims under the Exit Facility pursuant to a subordination agreement on substantially the same terms and conditions as the existing subordination agreement executed by each Noteholder in favor of WFRF in connection with the Prepetition Credit Facility and otherwise reasonably satisfactory to WFRF.   The holders of Allowed Class 2 Claims will also receive an aggregate payment of $423,602 in cash on or before the Distribution Date, as provided for under the Notes, which represents the interest owing under the Notes for the first quarter of 2009 plus interest due under the Notes.   The holders of Allowed Class 2 Claims will receive no other distributions or payments under the Plan on account of either principal or accrued and unpaid interest, PIK Interest, or other obligations under the Notes, except as expressly provided for herein.

c.    **Class 3 (Other Secured Claims)**

*Classification:*  Class 3 consists of all Other Secured Claims.

***Treatment:***  Unless the Person holding an Allowed Class 3 Claim and the Debtors or Reorganized Debtors agree otherwise, the Person holding the Allowed Class 3 Claim will receive one or more of the following treatments as soon as reasonably practicable on or after the Effective Date in full satisfaction of its Allowed Class 3 Claim:

    (a)    The Reorganized Debtors will:  (1) cure any default, other than those defaults enumerated in Bankruptcy Code Section 365(b)(2), with respect to that Person's Allowed Class 3 Claim, without recognizing any default interest rate or similar penalty or charge, after which no default will exist; (2) reinstate the maturity date of that Person's Allowed Class 3 Claim to the maturity date that existed before any default, without recognizing any default interest rate or similar penalty or charge; (3) compensate that Person for any actual damages incurred due to that Person's reasonable reliance on any provision that entitled that Person to accelerate its Allowed Class 3 Claim's maturity; and (4) leave unaltered all of that Person's other legal, equitable, or contractual rights with respect to its Allowed Class 3 Claim;

    (b)    The Disbursing Agent will convey to the Person holding the Claim the collateral in which that Person has a security interest; or

    (c)    The Disbursing Agent will pay to the Person holding the Claim cash in the amount of that Person's Allowed Class 3 Claim.

The Debtors or Reorganized Debtors may, in their sole discretion, select which of these treatments each Person holding an Allowed Class 3 Claim will receive.  If, by 14 days before the Confirmation Hearing Date, the Debtors have not notified a Person which treatment has been selected for that Person's Allowed Class 3 Claim, the Reorganized Debtors will be deemed to have selected the treatment set forth in Subparagraph (a), above.

2. **Reclamation Claims**

    a. **Class 4 (Reclamation Claims)**

*Classification*: Class 4 consists of Reclamation Claims.

    *Treatment*: Each holder of an Allowed Class 4 Claim shall receive payment in full of its Allowed Class 4 Claim on or before the Distribution Date, plus Postpetition Interest on the face amount of its Allowed Class 4 Claim through the date of distribution on account of such Allowed Claim.

3. **Classes of Priority Unsecured Claims**

    Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), and (6) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.

    This Section lists all classes containing the Debtor's Section 507 (a) (3), (4), (5), and (6) Priority Unsecured Claims and their treatment under this Plan, and the Disclosure Statement identifies <u>all</u> of the Debtors' Section 507 (a) (3), (4), (5), and (6) Priority Unsecured Claims:

    a. **Class 5 (Priority Unsecured Claims)**

*Classification*: Class 5 consists of all Priority Unsecured Claims other than Priority Tax Claims.

*Treatment*: Unless the Person holding an Allowed Class 5 Claim and the Debtors or the Reorganized Debtors agree otherwise, in writing, the Disbursing Agent will pay to each Person holding the Allowed Class 5 Claim cash equal to the amount of the Allowed Class 5 Claim, plus Postpetition Interest on the face amount of its Allowed Class 5 Claim through the date of distribution on account of such Allowed Claim, on or before the later of: (a) as soon as reasonably practicable on or after the Effective Date; (b) 30 days after the date on which the Claim becomes an Allowed Class 5 Claim; or (c) the date on which the Allowed Class 5 Claim becomes due and payable.

- 12 -

1  **4.    Class of General Unsecured Claims**

2    General unsecured claims are unsecured claims not entitled to priority under

3  Bankruptcy Code Section 507(a). This Section identifies this Plan's treatment of the

4  classes containing <u>all</u> of Debtor's general unsecured claims, and these Claims are

5  identified in full in the Disclosure Statement.

6    **a.    Class 6 (General Unsecured Claims-Big Dog)**

7    ***Classification:***  Class 6 consists of all non-priority, General Unsecured Claims

8  asserted against Big Dog other than Intercompany Claims.

9    ***Treatment:***  Unless the Person holding an Allowed Class 6 Claim and Big Dog or

10  Reorganized Big Dog agree otherwise, in writing, on or before the Distribution Date, the

11  holders of Allowed Class 6 Claims will receive payment in full in cash on account of their

12  Allowed Class 6 Claims, plus Postpetition Interest on the face amount of their Allowed

13  Class 6 Claims through the date of distribution on account of such Allowed Class 6

14  Claims.

15    **b.    Class 7 (General Unsecured Claims-TWC)**

16    ***Classification:***  Class 7 consists of all non-priority, General Unsecured Claims

17  asserted against TWC other than Intercompany Claims.

18    ***Treatment:***  Unless the Person holding an Allowed Class 7 Claim and TWC or

19  Reorganized TWC agree otherwise, in writing, on or before the Distribution Date, the

20  holders of Allowed Class 7 Claims will receive payment in full in cash on account of their

21  Allowed Class 7 Claims, plus Postpetition Interest on the face amount of their Allowed

22  Class 7 Claims through the date of distribution on account of such Allowed Class 7

23  Claims.

24    A settlement agreement has been entered into between Mr. Atchinson and the

25  Debtors pursuant to which, among other things, the Atchinson Claim will be allowed in

26  the total amount of $1.1 million, of which $100,000 will be paid on or before the

27  Distribution Date, and the balance will be paid in full no later than 12 months following

28  the Effective Date, in exchange for which the Debtors will return to Mr. Atchinson the

- 13 -

1    Natural Comfort trademark and provide him with a partial release of the restrictions under

2    the Debtors' Noncompetition and Nonsolicitation Agreement.  The proposed payments to

3    Mr. Atchinson to will be subject to a subordination agreement in favor of WFRF as well

4    as maintenance of a minimum specified level of availability both for a period before and

5    after giving effect to the payment under the Exit Facility.  Provided that such settlement

6    agreement is approved by the Bankruptcy Court, the Allowed Atchinson Claim will

7    receive the treatment provided for in the settlement agreement.

8        A further settlement agreement has been entered into with respect to the class

9    action entitled *Erin Andrews and Keith Park, on behalf of themselves and all others*

10   *similarly situated, vs. The Walking Company, Does 1 through 100, Inclusive, Defendants*,

11   filed on December 31, 2008 in Los Angeles Superior Court as Case No. BC404875.  The

12   complaint, as subsequently amended, alleged that the Debtors incorrectly calculated

13   employees' overtime pay for certain commissioned employees and that, as a result, such

14   commissioned employees were entitled to wages, interest, and penalties.  The parties and

15   their respective counsel have agreed to a settlement of the litigation, which was approved

16   by this Court on March 2, 2010 [Docket #269].  The settlement calls for a total payment

17   of $165,000 to certain claimants as specified therein, with $10,000 carved out for the 3rd

18   party administrator and an additional carve out for the plaintiffs' attorney of not more than

19   $55,000 in fees and not more than $5,000 in costs.  The order approving the settlement

20   calls for the payment to the administrator to be made within 10 days of entry of such

21   order, with the remaining net settlement to be paid on the Effective Date. Accordingly,

22   notwithstanding anything to the contrary in the Plan, the class action plaintiffs will receive

23   the treatment provided for in the settlement agreement and order thereon.

24        **c.      Class 8 (General Unsecured Claims-Holdings)**

25   ___*Classification*___:  Class 8 consists of all non-priority, General Unsecured Claims

26   asserted against Holdings other than Intercompany Claims.

27        ___*Treatment*___:  Unless the Person holding an Allowed Class 8 Claim and Holdings or

28   the Reorganized Holdings agree otherwise, in writing, on or before the Distribution Date,

- 14 -

the holders of Allowed Class 8 Claims will receive payment in full in cash on account of their Allowed Class 8 Claim, plus Postpetition Interest on the face amount of their Allowed Class 8 Claims through the date of distribution on account of such Allowed Class 8 Claims.

### d.    Class 9 (Intercompany Claims)

*Classification:*  Class 9 consists of all Intercompany Claims.

*Treatment:*  The Intercompany Claims will be Reinstated under the Plan, without interest, penalty, or premium of any kind.

### 5.    Class(es) of Interest Holders

Interest holders are the parties who hold ownership interests (*i.e.,* equity interests) in a Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and limited partners. If the Debtor is an individual, the Debtor is the interest holder.

### a.    Class 10 (Employee Stock Option Notes)

*Classification:*  Class 10 consists of all Claims asserted against TWC pursuant to the Employee Stock Option Notes.

*Treatment:*  Each Employee Stock Option Note will be amended to extend its maturity date to the date 18 months from the Effective Date of the Plan.  All interest accrued under each Employee Stock Option Note prior to the Effective Date will be waived by the holders of such Notes.  Commencing from and after the Effective Date interest will resume to accrue on each Employee Stock Option Note at a rate of 7% per annum on the outstanding principal amount thereof and be payable in accordance with the terms of the Employee Stock Option Notes.  If the Company so elects, it may prepay the principal amount of any Employee Stock Option Note within 30 days of the Effective Date at a discount of 20%; *provided, however,* that such prepayments shall not total, in the aggregate, more than $499,000.  All other terms of the Notes will remain the same.

**b.      Class 11 (Holdings' Existing Common Stock)**

***Classification:***    Class 11 consists of Holdings' Existing Common Stock, (including, without limitation, any rights to existing warrants and options).

***Treatment:***  Allowed Class 11 Interests will be Reinstated under the Plan.

**c.      Class 12 (TWC's Existing Common Stock)**

***Classification:***  Class 12 consists of TWC's Existing Common Stock (including, without limitation, any rights to existing warrants and options).

***Treatment:*** Allowed Class 12 Interests will be Reinstated under the Plan.

**d.      Class 13 (Big Dog's Existing Common Stock)**

***Classification:***  Class 13 consists of Big Dog's Existing Common Stock (including, without limitation, any rights to existing warrants and options).

***Treatment:*** Allowed Class 13 Interests will be Reinstated under the Plan.

**D.      Means of Performing Under the Plan**

**1.      Exit Financing**

WFRF has provided TWC and Big Dog with the WFRF Commitment Letter, pursuant to which WFRF has issued a legally binding commitment to provide Exit Financing, subject to satisfaction of certain generally customary terms and conditions set forth therein, to TWC and Big Dog on substantially the same terms and conditions as the Prepetition Credit Facility (including, but not limited to, such Exit Financing's being secured by a duly perfected, first lien security interest on substantially all of the Reorganized Debtors' assets), except as otherwise provided in the WFRF Commitment Letter.  The proceeds of the Exit Financing will be used to refinance the Debtors' obligations under the Prepetition Credit Facility and DIP Obligations upon the Effective Date and to provide financing for working capital, issuance of letters of credit, capital expenditures, and other general corporate purposes of the Reorganized Debtors.  On or before the Effective Date, TWC and Big Dog will deliver to WFRF the Post-Confirmation Credit Agreement and other documents related thereto substantially consistent with the terms and conditions provided in the WFRF Commitment Letter and the Prepetition

Credit Facility and DIP Facility and in a principal amount equal to the outstanding balance of the DIP Facility (estimated to be approximately $5 million as of the Effective Date), and Reorganized TWC and Reorganized Big Dog will agree to pay WFRF all amounts due under the Post-Confirmation Credit Agreement in accordance with such legal, equitable, and contractual rights as previously existed under the Prepetition Credit Facility.   The obligations under the Post-Confirmation Credit Agreement will be guaranteed by Reorganized Holdings and secured by duly perfected, first liens on substantially all of the Reorganized Debtors' assets.  The principal terms and conditions of the Exit Financing are set forth below:

*Borrowers:*  TWC and Big Dog. and each of their presently existing or hereafter formed or acquired subsidiaries.

*Guarantor:* Holdings`

*Agent:* Wells Fargo Retail Finance, LLC.

*Lender:*  Wells Fargo Retail Finance, LLC together with any other financial institution becoming a party to the loan documents.

*L/C Issuing Bank:*  Wells Fargo Bank, N.A., or any other financial institution reasonably acceptable to the agent.

*Credit Facility:*  Senior Secured Asset Based Revolving Credit Facility up to $30,000,000 including a $3,000,000 sub-limit for standby and documentary letters of credit.

*Purpose:*  The proceeds will be used to refinance the Debtors' obligations under the Prepetition Credit Facility and the DIP Facility as well as to provide financing for working capital, issuance of letters of credit, capital expenditures, and other general corporate purposes.

*Priority and Security:* The Exit Facility will be secured by a first priority security interest in all of the Debtors' assets and all proceeds realized thereof.

*Closing Date:*  April 15, 2010 (extendable under certain circumstances to May 7, 2010).

*Maturity*:  Four years from the Closing Date.

*Expenses:*  The Debtors will agree to pay all reasonable costs of WFRF in connection with the Exit Facility.

*Indemnity:*  The Debtors agree to indemnify the agent, lenders, and issuing bank.

## 2.    Funding for the Plan

The Plan will be funded by the following: (a) reducing operating expenses by renegotiating the Debtors' real estate leases; (b) reducing the amount due under the Notes and obtaining certain economic concessions from the Noteholders and certain other creditors; (c) increasing the Debtors' capital through a $10 million Capital Investment and the $30 million Exit Financing; and (d) cash from operations.  The $10 million Capital Investment will be made pursuant to an Investor Commitment Letter between the Investors and the Debtors, which $10 million shall be funded into an escrow account no later than 14 days prior to the Confirmation Hearing Date. Of this $10 million investment, approximately $8 million will be used to pay for the Debtors' reorganization costs (including an estimated $6 million in Administrative and Priority Unsecured Claims as well as another approximately $2 million to be made available for distributions to unsecured creditors under the Plan).  Any remaining balance will be retained as working capital for the Reorganized Debtors.

## 3.    Issuance of New Preferred Stock

The New Preferred Stock will have the attributes set forth in the Investor Commitment Letter attached to the Plan at Exhibit 4.  On or before the Distribution Date, the New Preferred Stock will be issued to the Investors in accordance with the terms of the Investor Commitment Letter.

### 4. Post-confirmation Management

#### a. The Reorganized Debtors' Directors

On the Effective Date, the Board of Directors of each of the Reorganized Debtors will consist of: Fred Kayne, Andrew D. Feshbach, and David Walsh. The membership of the Board of Directors will be subject to an election at the Reorganized Debtors' annual meeting in 2010. The Reorganized Debtors' bylaws will provide for cumulative voting for directors.

#### b. The Reorganized Debtors' Officers

The Reorganized Debtors' officers will initially be the same as the prepetition officers. After the Effective Date, each officer will serve at the pleasure of the Board of Directors, subject to any agreements that each officer may have with the Reorganized Debtors. The initial compensation for the Reorganized Debtors' officers is set forth in the Disclosure Statement.

### 5. Disbursing Agent

The Reorganized Debtors shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

The Disbursing Agent, unless otherwise specified, will make all distributions required under the Plan. The Reorganized Debtors, as Disbursing Agent, will be vested with full authority to take any action or execute any document relating to a conveyance or other transfer that the Debtors could have taken or executed.

The Disbursing Agent may employ or contract with other Persons to make or assist with these distributions. Any Person who the Reorganized Debtors employ to assist with distributions will receive from the Reorganized Debtors—on terms approved by the Reorganized Debtors but without further Court approval—reasonable compensation for the distribution services that they render under the Plan and reimbursement of reasonable out-of-pocket expenses that they incur in connection with those services.

# III.

## TREATMENT OF MISCELLANEOUS ITEMS

**A.**     **Executory Contracts and Unexpired Leases**

    **1.**     **Assumption of Executory Contracts and Unexpired Leases**

        **a.**     **Schedule of Assumed Agreements**

On the Effective Date, the Reorganized Debtors will assume the executory contracts and unexpired leases (except for any agreements that were previously assumed or rejected by Final Order or under Bankruptcy Code Section 365) that are identified on Exhibit 1 (Schedule of Assumed Agreements).   On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the Reorganized Debtors.   The Confirmation Order will constitute a Court order approving the assumption, on the Effective Date, of the executory contracts and unexpired leases then identified on the Schedule of Assumed Agreements.

The Debtors reserve the right to amend the Schedule of Assumed Agreements on or before 14 days before the Confirmation Hearing Date to: (a) delete any executory contract or unexpired lease and provide for its rejection under Section III.A.2; or (b) add any executory contract or unexpired lease and provide for its assumption under this Section.  The Debtors will provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to the executory contracts or unexpired leases affected by the amendment.

        **b.**     **Cure Payments.**

The Schedule of Assumed Agreements also identifies any amounts that the Debtors believe Bankruptcy Code Sections 365(b)(1)(A) or (B) require that the Reorganized Debtors pay to cure defaults under the executory contracts and unexpired leases to be assumed under the Plan.   The Debtors reserve their rights to amend the Schedules of Assumed Agreements, as described in Section III.A.1, on or before 14 days before the Confirmation Hearing Date to modify the cure amount.

As required by Bankruptcy Code Section 365(b)(1), any and all monetary defaults under each executory contract and unexpired lease to be assumed under this Section III.A.1 will be satisfied in one of the following two ways:  (a) the Disbursing Agent will pay to the non-debtor party to the executory contract or unexpired lease the default amount, as set forth on the Schedules of Assumed Agreements, in cash as soon as reasonably practicable on or after the Effective Date; or (b) the Disbursing Agent will satisfy any other terms that are agreed to by both the Debtors and the non-debtor party to any executory contract or unexpired lease that will be assumed.

### c.     Objections to Assumption or Proposed Cure Payments

Any Person who is a party to an executory contract or unexpired lease that will be assumed under the Plan and who either contends that the proposed cure payment specified on the Schedules of Assumed Agreements is incorrect or otherwise objects to the contemplated assumption must File with the Court and serve upon the Debtors and the Debtors' Reorganization Counsel a written statement and supporting declaration stating the basis for its objection.  This statement and declaration must be Filed and served by the later of: (a) 14 days before the Confirmation Hearing Date; or (b) 7 days after the Debtors File and serve the Schedule of Assumed Agreements, or any amendment thereto.  Any Person who fails to timely File and serve such a statement and declaration will be deemed to waive any and all objections to both the proposed assumption and the proposed cure amount.

### d.     The Cure Reserve.

To the extent a timely-filed objection contends that the cure amount should be different than the Debtors' proposed cure amount in the Schedules of Assumed Agreements, the undisputed portion of such cure amount will be paid as set forth above. On or before the Effective Date, the Debtors will transfer to a segregated Cure Reserve on account of any disputed cure amounts an amount to be agreed upon by the Debtor, the objecting party, and the Committee prior to the Effective Date, or such other amount as is determined by the Bankruptcy Court to provide adequate assurance that all cure amounts

will be paid in full as contemplated under the Plan, which Cash shall be free and clear of any and all liens asserted by WFRF "and shall be disregarded for purposes of determining availability under the Exit Financing, including, but not limited to, whether the Debtors are able to satisfy the conditions to the Wells Fargo commitment regarding minimum availability."  Pending resolution of the cure amount, the Debtors will request a status conference with respect to any outstanding objection within approximately 30 days from the Confirmation Hearing Date.  If, at the status conference, the objection has not been resolved to the parties' satisfaction, the Court may then, at the status hearing, set a briefing schedule and a further evidentiary or other hearing to resolve the objections on their merits.  If a dispute arises regarding: (a) the amount of any proposed cure payments; (b) whether the Debtors have provided adequate assurance of future performance under an executory contract or unexpired lease to be assumed; or (c) any other matter pertaining to a proposed assumption, the proposed cure payments will be made within 30 days after entry of a Final Order resolving the dispute and approving the assumption or a Final Order consensually resolving such dispute.

**2.     Rejection of Executory Contracts and Unexpired Leases**

**a.     Schedule of Rejected Agreements**

The Confirmation Order will constitute a Court order approving the rejection, as of the Effective Date, of any and all of the agreements that the Debtors executed before the Petition Date—except for any agreements that were previously assumed or rejected either by a Final Order or under Bankruptcy Code Section 365 or that will be assumed under Section III.A.1—to the extent that these agreements constitute executory contracts or unexpired leases under Code Section 365.  The agreements to be rejected under the Plan include all executory contracts and unexpired leases listed on Exhibit 2 (the Schedule of Rejected Agreements).  (Listing an agreement on the Schedule of Rejected Agreements is not an admission that the agreement is an executory contract or unexpired lease or that the Debtors have any liability under the agreement.)

The Debtors reserve the right to amend the Schedule of Rejected Agreements on or before 14 days before the Confirmation Hearing Date to: (a) delete any executory contract or unexpired lease and provide for its assumption or assumption and assignment under Section III.A.1; or (b) add any executory contract or unexpired lease and provide for its rejection under this Section. The Debtors will provide notice of any amendment to the Schedule of Rejected Agreements to the party or parties to the agreement affected by the amendment. The order confirming the Plan shall constitute an order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, as set forth in the Disclosure Statement.

### b. Bar Date for Rejection Damage Claims

**ANY REJECTED-LEASE ADMINISTRATIVE CLAIM OR OTHER CLAIM FOR DAMAGES ARISING FROM THE REJECTION UNDER THE PLAN OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE MUST BE FILED WITH THE COURT AND SERVED UPON THE REORGANIZED DEBTORS AND THEIR REORGANIZATION COUNSEL WITHIN 30 DAYS AFTER THE MAILING OF NOTICE OF ENTRY OF THE CONFIRMATION ORDER.** Any such damage Claims that are not timely Filed and served will be forever barred and unenforceable against the Debtors, the Reorganized Debtors, the Estates, and their respective property, and Persons holding these Claims will be barred from receiving any distributions under the Plan on account of their Rejected-Lease Administrative Claims or other damage Claims.

### 3. Postpetition Contracts and Leases.

Except as expressly provided in the Plan or the Confirmation Order, all contracts, leases, and other agreements that the Debtors entered into after the Petition Date will remain in full force and effect after the Confirmation Date and the Effective Date.

**B.**      **Changes in Rates Subject to Regulatory Commission Approval**

The Debtors are not subject to governmental regulatory commission approval of their rates.

**C.**      **Retention of Jurisdiction.**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Court will retain jurisdiction over the Debtors' Reorganization Cases after the Effective Date to the fullest extent provided by law, including, without limitation, the jurisdiction to:

(a)      Allow, disallow, determine, liquidate, classify, establish the priority or secured or unsecured status of, estimate, or limit any Claim or Interest;

(b)      Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

(c)      Resolve any motions pending on the Effective Date to assume, assume and assign, or reject any executory contract or unexpired lease to which the Debtors are parties or with respect to which the Debtors may be liable, and to hear, determine, and if necessary, liquidate any and all Claims arising from such a motion;

(d)      Ensure that distributions to Persons holding Allowed Claims and Allowed Interests are accomplished under the Plan provisions;

(e)      Resolve any and all applications, motions, adversary proceedings, and other matters that involve the Debtors and that are pending before the Court on the Effective Date;

(f)      Enter any orders necessary or appropriate to implement, consummate, or enforce the provisions of the Plan and of all contracts, instruments, releases, and other agreements or documents entered into under or in connection with the Plan;

(g)     Resolve any and all controversies, suits, or issues that may arise either in connection with the Plan's consummation, interpretation, or enforcement or in connection with any Person's rights or obligations under the Plan;

(h)     Under Bankruptcy Code Section 1127, modify the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan or Disclosure Statement;

(i)     Remedy—in any manner necessary and appropriate to consummate the Plan and to the extent authorized by the Bankruptcy Code—any defect, omission, or inconsistency in any Court order, the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan or Disclosure Statement;

(j)     Issue injunctions, enter and implement orders, or take any other actions that may be necessary or appropriate to restrict any Person's interference with the Plan's consummation or enforcement;

(k)     Enter and implement any orders that are necessary and appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(l)     Determine any other matters that may arise in connection with, or relate to, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; and

(m)     Enter an order closing the Debtors' Reorganization Cases.

If the Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Section will not effect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

- 25 -

## IV.

## MEANS OF EXECUTION AND IMPLEMENTATION

## OF THE PLAN AND OTHER PROVISIONS

**A.**    **Preservation of Claims and Rights Not Expressly Settled, Released, or Waived**

**1.**    **General Claims and Rights**

As permitted by Bankruptcy Code Section 1123(b)(3), the Reorganized Debtors will be revested with, and may enforce, any claims and rights that the Debtors or the Estates may hold or have against any Person, other than claims or rights that are expressly settled, released, or waived under the Plan.  These claims and rights include, without limitation:

(a)    Any claims or rights under Bankruptcy Code Sections 544 through 550, any similar state-law provisions, or any similar statute or legal theory;

(b)    Any rights of equitable subordination or disallowance;

(c)    Any derivative claims that may be brought by or on behalf of the Debtors or the Estates;

(d)    Any other claims or rights of any kind that either the Debtors or the Estates may have or hold under any applicable law, including any and all claims or rights referred to in the Schedules; and

(e)    Any rights to object to, settle, compromise, or resolve Claims or Interests.

The Reorganized Debtors will retain any related recoveries free and clear of all Claims and Interests and may pursue, settle, or abandon such revested claims and rights, in accordance with their best interests.

**2.**    **Avoidance Actions.**

The Reorganized Debtors will be vested with, and serve as representative of the Estates with respect to, Avoidance Actions, other than claims or rights that are expressly settled, released, or waived under the Plan.  At any time on or before the Exhibit Filing

Date, the Debtors may elect not to prosecute any potential Avoidance Action against a Person if the Debtors determine, in good faith, that: (a) the potential Avoidance Action would not be cost-effective to pursue either because the amounts at issue are *de minimis* when compared to the litigation costs, because there are significant potential defenses to the Avoidance Action, or because successful prosecution of the Avoidance Action would otherwise provide no economic benefit to the Estates; or (b) prosecuting the action would interfere with the Reorganized Debtors' business relationship with that Person, and preservation of such business relationship is important to the Reorganized Debtors' operations.  If, by 14 days before the deadline for objecting to the Plan, the Debtors have not Filed with this Court a Schedule of Avoidance Actions setting forth the Debtors' intent to preserve and pursue a particular Avoidance Action under the Plan, the Reorganized Debtors will be deemed to have waived the right to preserve or pursue such Avoidance Action.

### 3.    Waiver of Preference Claims

Notwithstanding anything to the contrary herein, the Debtors waive any and all claims arising under Bankruptcy Code section 547.

## B.    The Releases, Waivers & Injunctions

### 1.    The WFRF Waiver and Injunction

In consideration for, among other things, the financial accommodations provided by WFRF during the Reorganization Cases, as well as the Exit Financing, the Debtors, the Committee (to the extent that the Committee has standing to pursue claims against WFRF pursuant to the Final DIP Order), the Noteholders, the Investors, and the Reorganized Debtors, (collectively, the "WFRF Releasors")—shall be deemed hereunder to have waived, released and relinquished any and all obligations, debts, losses, damages, liabilities, contracts, controversies, agreements, claims, causes of action, and demands of any kind whatsoever at law or in equity, including without limitation claims under Bankruptcy Code sections 510, 541, 542, 544, 545, 547, 548, 549, 550, 551 or 553 or any

other provisions of the Bankruptcy Code, direct or indirect, known or unknown, discovered or undiscovered, asserted or unasserted: (a) either against WFRF or—solely in their representative capacity as representatives of WFRF—against each of WFRF's officers, directors, shareholders, partners, agents, employees, consultants, attorneys, accountants, advisors, affiliates and other representatives (the "WFRF Releasees"); and (b) arising out of or relating to the Debtors, Claims against the Debtors, the Reorganization Cases, the Plan, the loans, advances and financial accommodations provided to the Debtors by WFRF, the Debtors' business operations and/or management of the affairs of the Debtors and/or their affiliates, arising at any time on or prior to the Effective Date (the "Released Claims").

### 2.    The Noteholder Releases

If Class 2 votes to accept the Plan, in consideration of the cancellation of PIK Interest provided under the Plan with respect to the Noteholders, the Debtors on behalf of the Estate hereby fully and unconditionally release and forever discharge each Noteholder who cast a vote to accept the Plan and their attorneys, agents, advisors, professionals, representatives and assigns (the "Noteholder Releasees'') from and against any and all claims, causes of action, damages, losses, liabilities, obligations, expenses, debts, dues, sums of money, accounts, reckonings, contracts, controversies, known or unknown, fixed or contingent, direct or indirect, accrued or not accrued, liquidated or unliquidated or suspected or unsuspected, in contract or in tort or otherwise, that the Debtors or the Estates ever had, or may now have, whether directly or indirectly, or by assignment or succession, against the Noteholder Releasees, or any of them, for, upon, or by reason of any matter relating to the Notes through the Effective Date.  This release shall be effective as of the Effective Date.

### 3.    The Investor Releases

In consideration for the Capital Investment made by the Investors, the Debtors on behalf of the Estate hereby fully and unconditionally releases and forever discharge the Investors and their attorneys, agents, advisors, professionals, representatives and assigns

(the "Investor Releasees") from and against any and all claims, causes of action, damages, losses, liabilities, obligations, expenses, debts, dues, sums of money, accounts, reckonings, contracts, controversies, known or unknown, fixed or contingent, direct or indirect, accrued or not accrued, liquidated or unliquidated or suspected or unsuspected, in contract or in tort or otherwise, that the Debtors or the Estates ever had, now have or hereafter can, shall or may have, or may claim to have, whether directly or indirectly, or by assignment or succession, against the Investor Releasees, or any of them, for, upon, or by reason of any matter relating to the ownership, management or operation of the Debtors, or to the extent that any Investor is also a Noteholder, for, upon, or by reason of any matter relating to the Notes, through the Effective Date.    This release shall be effective upon the occurrence of both the Effective Date and the date of funding of the Capital Investment pursuant to the Commitment Letter.

### 4.    The Debtor and Committee Releases

Except to the extent arising from willful misconduct or gross negligence, pursuant to section 1125(e) of the Bankruptcy Code, any and all Claims, liabilities, causes of action, rights, damages, costs and obligations held by any party against the Debtors, the Reorganized Debtors, the Committee and their respective present and former members, ex-officio members, officers, directors, trustees, employees, attorneys, accountants, professionals, agents, designees, successors or assigns, and the Debtors and any Professional Persons (acting in such capacity) employed by any of the foregoing entities, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising or accruing, whether or not yet due, in any manner related to the administration of these Reorganization Cases following the Petition Date or the formulation, negotiation, prosecution or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan shall be deemed fully waived, barred, released and discharged in all respects, except as to rights, obligations, duties, claims and responsibilities preserved, created or established by

- 29 -

terms of the Plan; *provided, however*, that, notwithstanding the foregoing, this provision does not limit the nature of any objection to the allowance and payment of any Professional Fees or any Insider compensation. Nothing in this section shall be construed to exculpate any entity from liability for their willful misconduct or gross negligence.

## C. Objections to Claims and Interests

Except as otherwise provided in Section II.B.1.a (regarding allowance of Administrative Claims), notice of designation of a Claim or Interest as a Disputed Claim or Interest must be Filed, and must be served upon the Person holding the Claim or Interest, on or before the Claim Objection Deadline, and any such claim objection must be Filed no later than 30 days thereafter.  The Claim Objection Deadline is the Business Day that is the later of: (a) 30 days after the Effective Date; or (b) 30 days after the date on which the particular proof of Claim or Interest was Filed.

## D. Distribution of Property.

### 1. Manner of Cash Payment

Cash payments to U.S. Persons holding Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Disbursing Agent or, at the Disbursing Agent's option, by wire transfer from a domestic bank.  Cash payments to foreign Persons holding Allowed Claims may be paid, at the Disbursing Agent's option, either in the same manner as payments to U.S. Persons or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

### 2. Distributions to Persons Holding Allowed Claims in Classes 2 Through 10

The Disbursing Agent will make appropriate distributions to Persons holding Allowed Claims in Classes 2 through 10 on or before the Distribution Date.  If a Claim in Class 3 through 8 is allowed after the Distribution Date, the Disbursing Agent will make an appropriate distribution to the Person holding that Claim as and when the Claim becomes Allowed, but in no event later than 30 days after the Claim becomes Allowed.

- 30 -

3.      **No Distributions with Respect to Disputed Claims or Interests.**

Notwithstanding any other Plan provisions, distributions will be made on account of a Disputed Claim or Disputed Interest only after, and only to the extent that, the Disputed Claim or Disputed Interest either becomes an Allowed Claim or Allowed Interest or is deemed to be an Allowed Claim or Allowed Interest for distribution purposes.

4.      **Unsecured Claims Reserve**

On the Effective Date, the Debtors shall transfer to a segregated account Cash on account of all Claims in Classes 4, 5, 6, 7, and 8 in an amount to be established following the Claims Bar Date but prior to the occurrence of the Effective Date and to be determined: (a) jointly by the Debtor, the Committee, the Investors, and WFRF, in their reasonable business judgment, or (b) if the parties are unable to consensually determine such amount, by the Bankruptcy Court. The Debtors reserve the right to seek a claims estimation hearing with respect to any Claims in Classes 4, 6, 7, or 8 to the extent necessary to facilitate the creation of the Unsecured Claims Reserve. The purpose of such Unsecured Claims Reserve is to provide adequate assurance that all Allowed General Unsecured Claims will receive payment in full as contemplated under the Plan. The Cash transferred to the Unsecured Claims Reserve pursuant to the Plan will be free and clear of any and all liens asserted by WFRF and shall be disregarded for purposes of determining availability under the Exit Financing, including, but not limited to, whether the Debtors are able to satisfy the conditions to the Wells Fargo commitment regarding minimum availability.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

5.      **Delivery of Distributions and Undeliverable or Unclaimed Distributions.**

a.      **Delivery of Distributions in General.**

Except as provided in Section IV.D.4., for Undeliverable Distributions, distributions to Persons holding Allowed Claims and Allowed Interests will be made by mail as follows:

(a)    If the Person holding the Allowed Claim or Allowed Interest Filed a Proof of Claim or Interest, distributions will be sent to the address, if any, set forth on the Proof of Claim or Interest;

(b)    If the Person holding the Allowed Claim or Allowed Interest, after Filing a Proof of Claim or Interest, delivered to the Disbursing Agent a written notice of address change, then distributions will be sent to the address set forth in the written notice and not the address set forth on the Proof of Claim or Interest;

(c)    If no proof of Claim or Interest was Filed or if the Filed Proof of Claim or Interest does not set forth a legible and complete address and if the Disbursing Agent has not received a written notice of address change, distributions will be sent to the address set forth in the Schedules; or

(d)    If no proof of Claim or Interest was Filed or if the proof of Claim or Interest does not set forth a legible, complete address; the Disbursing Agent has not received a written notice of address change; and the Debtors' Schedules do not set forth a complete address, then the distribution will be deemed to be an Undeliverable Distribution and no distribution will be made except as otherwise set forth under the Plan.

- 32 -

**b.     Undeliverable Distributions.**

(1)     **Holding and Investment of Undeliverable Property.**

If a distribution to a Person holding an Allowed Claim or Allowed Interest is returned to the Disbursing Agent as an Undeliverable Distribution or is deemed to be an Undeliverable Distribution, the Disbursing Agent will make no further distribution to the Person holding the Claim or Interest unless and until the Disbursing Agent is timely notified in writing of that Person's current address.   Subject to Section IV.D.4.b.(2), Undeliverable Distributions will remain in the Disbursing Agent's possession until they become deliverable.  The Disbursing Agent will hold undeliverable cash distributions in an unsegregated, interest-bearing bank account for the benefit of the Persons entitled to the distributions.  These Persons will be entitled to any interest actually earned on account of the Undeliverable Distributions.  The bank account will be maintained in the name of the Disbursing Agent or Reorganized TWC, but it will be accounted for separately.

(2)     **Distribution of Undeliverable Property after It Becomes Deliverable, and Failure to Claim Undeliverable Property.**

Any Person who is otherwise entitled to an Undeliverable Distribution and who does not, within 60 days after the later of (a) Distribution Date or (b) the date that such distribution becomes an Undeliverable Distribution, provide the Disbursing Agent with a written notice asserting its claim to or interest in that Undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any claim to or interest in that Undeliverable Distribution and will be forever barred from receiving that Undeliverable Distribution or asserting any Claim against the Debtors, the Estates, the Reorganized Debtors, or their property, and the Claim or Interest giving rise to the Undeliverable Distribution will be discharged.

Any Undeliverable Distributions that are not claimed under this Section will be retained by the Reorganized Debtors free from any restrictions.  Nothing in the Plan requires the Debtors, the Reorganized Debtors, or the Disbursing Agent to attempt to

- 33 -

locate any Person holding an Allowed Claim or an Allowed Interest whose distribution is undeliverable.

**6.      Compliance with Tax Requirements.**

The Disbursing Agent will comply with all withholding and reporting requirements imposed on it by governmental units, and all distributions under the Plan will be subject to any such withholding and reporting requirements.

**7.      Setoff and Recoupment.**

Notwithstanding anything to the contrary in the Plan, the Reorganized Debtor may, but need not, set off, recoup, offset, or withhold against the distributions to be made on account of any Allowed Claim or Allowed Interest any claims that the Debtors, the Estates, or the Reorganized Debtors may have against the Persons holding the Allowed Claims or Allowed Interests.  Neither the Debtors nor the Reorganized Debtors will waive or release any claim that they may have against those Persons either by failing to effect such a setoff or recoupment; by allowing any Claim against or Interest in the Debtors, the Estates, or the Reorganized Debtors; or by making a distribution on account of an Allowed Claim or Allowed Interest after the Petition Date.

**E.      No Liability for Solicitation or Participation.**

Subject to the limitations and conditions imposed under Bankruptcy Code Section 1125(e), Persons who—in good faith and in compliance with applicable Bankruptcy Code provisions—either solicit Plan acceptances or rejections or participate in the offer, issuance, sale, or purchase of securities under the Plan will not be liable on account of their solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of Plan acceptances or rejections or the offer, issuance, sale, or purchase of securities.

**F.      Limitation of Liability.**

Neither the Debtors, the Estates, the Reorganized Debtors, WFRF, the Committee or its members, nor any of their employees, officers, directors, agents, members, representatives, or professionals will have or incur any liability to any Person for any act

taken or omission made in good faith and in compliance with the applicable provisions of the Bankruptcy Code under, in connection with, or related to formulating, implementing, confirming, or consummating the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created under or in connection with the Plan.

**G.**    **Revocation of the Plan.**

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date.  If the Plan is not confirmed and the Effective Date does not occur—either because the Debtors revoked or withdrew the Plan or for any other reason—the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will: (a) waive or release any Claims by or against, or any Interests in, any Debtor; or (b) prejudice in any manner any rights that the Debtors, the Estates, or any creditors or equity security holders have in any further proceedings.

**H.**    **Post-Effective-Date Effect of Evidences of Claims or Interests.**

Commencing on the Effective Date, notes, stock certificates, warrants, and other evidences of Claims against, or Interests in, a Debtor will represent only the right to receive the distributions contemplated under the Plan.

**I.**    **Successors and Assigns.**

The rights, benefits, and obligations of any Person named or referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of that Person.

**J.**    **Saturday, Sunday, or Legal Holiday.**

If any payment or act under the Plan should be made or performed on a date that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required date.

**K.      Governing Law.**

The rights and obligations arising under the Plan and any agreements, contracts, documents, or instruments executed in connection with the Plan will be governed by, and construed and enforced in accordance with, California law without giving effect to California law's conflict of law principles, unless a rule of law or procedure is supplied by: (a) federal law (including the Bankruptcy Code and Bankruptcy Rules); or (b) an express choice-of-law provision in any agreement, contract, instrument, or document provided for, or executed under or in connection with, the Plan.

**L.      Severability of Plan Provisions.**

If, before confirmation, the Court holds that any Plan term or provision is invalid, void, or unenforceable, the Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible, consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated.  The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms.

**M.      No Admissions.**

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will:  (a) be deemed to be an admission by a Debtor with respect to any matter set forth in the Plan, including, without limitation, liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgment, or release of any Claims by or against, or any Interests in, a Debtor; or (c) prejudice in any manner the rights of the Debtors, the Estates, or any creditors in any further proceedings.

**N.      Conditions to Effectiveness of the Plan.**

The Plan will not be consummated or become binding unless and until the Effective Date occurs.  The Effective Date is the first Business Day that, as determined by the Debtors in their reasonable discretion, meets the following conditions:  (a) WFRF shall have provided the Debtors with the Exit Financing, a copy of which financing documents will be provided to the Committee for review and comment at least 14 days in advance of the Plan Confirmation Hearing; (b) the Investors shall have provided the Reorganized Debtors with $10 million in additional capital, as provided under the Investor Commitment Letter; (c) it is at least ten days after the Confirmation Date but is in no event after the Closing Deadline; (d) it is a day on which the Confirmation Order is not stayed; and (e) the Unsecured Claims Reserve and the Cure Reserve shall have been funded.  The conditions are for the benefit of the Debtors and WFRF.  The Debtors may waive, in whole or in part, any condition, subject to the consent of WFRF, which consent may not be unreasonably withheld.  To be effective, the waiver must be Filed with the Court.

**V.**

**THE REORGANIZED DEBTORS**

**A.      New Certificate of Incorporation and Bylaws.**

The proposed form of Certificate of Incorporation and Bylaws of the Reorganized Debtors will be attached to the Plan as Exhibit 3 and will be Filed by the Exhibit Filing Date.   Among other things, the Reorganized Debtors' Certificate of Incorporation and Bylaws will:

> (a)      As required by Bankruptcy Code Section 1123(a)(6), prohibit Reorganized Holdings from issuing nonvoting equity securities, subject to amendment of the Certificate of Incorporation or Bylaws as permitted by applicable law; and
>
> (b)      Effectuate the Plan provisions, in each case without any further action by the Reorganized Debtors' stockholders or directors.

The Certificate of Incorporation will also provide that stockholders may not take action by written consent in lieu of a meeting.  Special stockholder meetings may be called only by the Chairman of the Board, the President, or a majority of the Reorganized Debtors' Boards of Directors.

**VI.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.    <u>Discharge</u>**

Any liability imposed by the Plan will <u>not</u> be discharged.  However, this Plan provides that upon the Effective Date, the Debtors will be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C.§ 1141. The rights afforded under the Plan and the treatment of Claims and Interests under the Plan will be in exchange for—and in complete satisfaction, discharge, and release of—all Claims and Interests of any nature whatsoever (including, without limitation, any interest accrued on Claims from and after the Petition Date except as such interested is expressly provided for under the Plan) against the Debtors, the Reorganized Debtors, the Estates, or their property.  Except as otherwise provided in the Plan or the Confirmation Order:

(a)    On the Effective Date, the Debtors, the Estates, the Reorganized Debtors, and their property will, to the fullest extent permitted by Bankruptcy Code Section 1141, be deemed discharged and released from all Claims and Interests including, without limitation, demands, liabilities, Claims, and Interests that arose before the Confirmation Date and all debts of the kind specified in Bankruptcy Code Sections 502(g), 502(h), or 502(i) regardless of whether: (1) a proof of Claim or proof of Interest based on such a debt or Interest is Filed or deemed Filed; (2) a Claim or Interest based on such a debt or Interest is allowable under Bankruptcy Code Section 502; or (3) the Person holding the Claim or Interest based on such a debt or Interest has

accepted the Plan; and

(b)    All Persons will be precluded from asserting against the Debtors, the Estates, the Reorganized Debtors, or their property any other or further Claims or Interests based upon any act or omission, transaction, or other activity of any kind that occurred before the Confirmation Date.

**B.    Injunction**

Except as otherwise provided in the Plan or the Confirmation Order, commencing on the Effective Date, all Persons who have held, currently hold, or may hold a debt, Claim, or Interest discharged under the Plan are permanently enjoined from taking any of the following actions on account of that discharged debt, Claim, or Interest:

(a)    Commencing or continuing in any manner any action or other proceeding against the Debtors, the Estates, the Reorganized Debtors, or their property;

(b)    Enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtors, the Estates, the Reorganized Debtors, or their property;

(c)    Creating, perfecting, or enforcing any lien or encumbrance against the Debtors, the Estates, the Reorganized Debtors, or their property;

(d)    Commencing or continuing any action, in any manner or in any place, which does not comply with or is inconsistent with the Plan provisions or the Confirmation Order.

Any Person injured by a willful violation of this injunction is entitled to recover from the violator actual damages (including, without limitation, costs and attorneys' fees) and, in appropriate circumstances, punitive damages.

**C.    Retiree Benefits.**

The Debtors do not believe that any retiree benefits, as that term is used in Bankruptcy Code Sections 1114 and 1129(a)(13), exist in the Debtors' Reorganization

Cases.  Accordingly, the Plan does not provide for the continuation of any such benefits, and all applicable Claims and Interests, if any, will be subject to the discharge and injunction set forth in Section VI.A.

**D.    Revesting of Property in the Debtor**

Except as otherwise provided in the Plan or in any agreements contemplated under the Plan, the confirmation of the Plan revests all of the property of the Estates in the Reorganized Debtors free and clear of all Claims, liens, encumbrances, or Interests. Commencing on the Effective Date, the Reorganized Debtors may operate their business and use, acquire, or dispose of property or settle or compromise Claims or Interests without Court supervision and free of any restrictions imposed by the Bankruptcy Code or Bankruptcy Rules, other than those restrictions that the Plan or Confirmation Order expressly impose on the Reorganized Debtors.

**E.    Modification of Plan**

Subject to the restrictions set forth in Bankruptcy Code Section 1127, the Reorganized Debtors reserve the right to alter, amend, or modify the Plan before it is substantially consummated.  The Court may require a new disclosure statement and/or revoting on the Plan if the Proponent modifies the plan before confirmation.  The Debtors may also seek to modify the Plan at any time after confirmation so long as (a) the Plan has not been substantially consummated <u>and</u> (b) the Court authorizes the proposed modifications after notice and a hearing.

**F.    Dissolution of the Committee.**

The Committee shall dissolve on the Effective Date, and the members of the Committee and counsel for the Committee will be released and discharged from all rights and duties arising from or related to these Reorganization Cases except for their duties regarding final applications for compensation.  Neither the professionals retained by the Committee nor the Committee members will be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the Effective Date, except for services or expenses relating to their applications for

compensation that were pending on the Effective Date or that were timely Filed after the Effective Date.

### G.    Post-Confirmation Status Report

Within 120 days of the entry of the order confirming the Plan, the Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

### H.    Quarterly Fees

Quarterly fees accruing under 28 U.S.C. § 1930 (a) (6) to date of confirmation shall be paid to the United States Trustee on or before the Effective Date of the plan. Quarterly fees accruing under 28 U.S.C. § 1930 (a) (6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930 (a) (6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

### I.    Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under Bankruptcy Code Section 1112 (b), after the Plan is confirmed, if there is a default in performing under the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

### J.    Final Decree

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or any other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the Reorganization Cases.

# VII.

## __DEFINED TERMS__

The following terms (which appear in the Plan as capitalized terms), when used in the Plan or the accompanying Disclosure Statement, have the meanings set forth below:

**"503(b)(9) Claim"** means a Claim for the value of any goods received by a Debtor within 20 days before the Petition Date, which goods have been sold to the Debtor in the ordinary course of the Debtor's business, and which Claim is entitled to administrative priority under Bankruptcy Code 503(b)(9).

**"Administrative Claim"** means a Claim against a Debtor for administrative costs or expenses that are allowable under Bankruptcy Code Section 503(b).  These costs or expenses may include, without limitation: (a) actual costs or expenses that were incurred after the Petition Date and that were necessary to preserve a Debtor's Estate and operate a Debtor's business (such as employee wages); (b) Professional Fee Claims; (c) Administrative Tax Claims; (d) Ordinary Course Administrative Claims; or (e) Non-Ordinary Course Administrative Claims (such as fees or charges assessed against a Debtor's Estate under 28 U.S.C. § 1930 or Rejected Lease Administrative Claims).

**"Administrative Tax Claim"** means an Administrative Claim or other Claim that is not an Allowed Secured Claim and that a government unit asserts against a Debtor for taxes (or for related interest or penalties) for any tax period that, either in whole or in part, falls within the period beginning on the Petition Date and ending on the Effective Date.

**"Allowed Administrative Claim"** means an Administrative Claim that is allowed as set forth in Section II.B.1.a.

**"Allowed Claim"** means a Claim against a Debtor, other than an Allowed Administrative Claim, to the extent that:

(a)    either: (1) a proof of Claim was timely Filed; or (2) a proof of Claim is deemed timely Filed either under Bankruptcy Rule 3003(b)(1) or by a Final Order; and

(b)    either: (1) the Claim is not a Disputed Claim; (2) the Claim is

allowed by a Final Order; or (3) the Claim is allowed under the Plan.

Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date.  Moreover, any portion of a Claim that is satisfied or released during a Debtor's Reorganization Case is not an Allowed Claim.

**"Allowed Class-Designation / Secured / Unsecured Claim or Interest"** means an Allowed Claim or Allowed Interest in the specified Class or of the specified type.

**"Allowed Interest**" means an Interest in a Debtor to the extent that:

>(a)   either:   (1) a proof of Interest was timely Filed; or (2) a proof of Interest is deemed timely Filed either under Bankruptcy Rule 3003(b)(2) or by a Final Order; <u>and</u>

>(b)   either:   (1) the Interest is not a Disputed Interest; (2) the Interest is allowed by a Final Order; or (3) the Interest is allowed under the Plan.

**"Atchinson Claim"** means the Claims of Ken Atchinson pursuant to the Atchinson Note and the Atchinson Guaranty.

**"Atchinson Guaranty"** means the *Guaranty dated as of January 15, 2008* issued by Holdings to Ken Atchinson pursuant to the Atchinson Note.

**"Atchinson Note"** means the *Subordinated Promissory Note dated as of January 15, 2008* issued by TWC to Ken Atchison in the principal amount of $1,700,000, and guarantied by Holdings pursuant to a *Guaranty dated as of January 15, 2008*

**"Avoidance Action**" means an avoidance action under Bankruptcy Code Sections 544(b), 547, or 548.

**"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, *et seq.*

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

**"Big Dog's Existing Common Stock"** means the common stock that Big Dog issued and that was outstanding immediately before the Effective Date.

**"Business Day"** means a day that is not a Saturday, Sunday, or legal holiday.

**"Capital Investment"** means the $10 million capital investment to be made by the Investors pursuant to the Investor Commitment Letter.

**"Claim"** means a claim—as the term "claim" is defined in Bankruptcy Code Section 101(5)—against a Debtor.

**"Claim Objection Deadline"** means the deadline for objecting to Claims or Interests, as set forth in Section IV.B.

**"Claims Agent"** means Kurtzman Carson Consultants LLC.

**"Class"** means a group of Claims or Interests as classified under Section II.

**"Closing Deadline"** means the "Closing Date" under the WFRF Commitment Letter (*e.g.,* April 15, 2010, subject to extension to May 7, 2010 under certain circumstances set forth therein).

**"Committee"** means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee in these Reorganization Cases.

**"Confirmation Date"** means the date on which the Court enters the Confirmation Order on its docket.

**"Confirmation Hearing Date"** means the first date on which the Court holds a hearing regarding Plan confirmation.

**"Confirmation Order"** means the Court order confirming the Plan under Bankruptcy Code Section 1129.

**"Court"** means the United States Bankruptcy Court for the Central District of California or any other court that exercises jurisdiction over a Debtor's Reorganization Case.

**"Cure Reserve"** means the reserve to be established pursuant to Section III.A.1.d.

**"Debtor(s)"** refers to The Walking Company, Big Dog Holdings, Inc., and/or The Walking Company Holdings, as the case may be.

**"DIP Facility"** means the Court-approved, postpetition financing provided to the Debtors by WFRF during the Cases pursuant to the DIP Order.

**"DIP Order"** means the *Final Order Pursuant to 11 U.S.C Sections 105, 361, 362, 363 and 364 and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (1) Authorizing Incurrence by the Debtors of Post Petition Secured Indebtedness With Priority Over All Secured Indebtedness and With Administrative Superpriority, (2) Granting Liens, (3) Authorizing Use of Cash Collateral by the Debtors Pursuant to 11 U.S.C. Section 363 Providing for Adequate Protection, and (4) Modifying the Automatic Stay* entered by the Court on  2010.

**"Disbursing Agent"** means either the Reorganized Debtors or any Person employed by the Reorganized Debtors, in their sole discretion, to assist the Reorganized Debtors with their duties as Disbursing Agent.

**"Disclosure Statement"** means the *Disclosure Statement Describing Debtors' Joint Chapter 11 Plan of Reorganization (Dated February 1, 2010)*, as it may be amended or modified from time to time.

**"Disputed Claim"** means a Claim:

(a)     As to which a proof of Claim was Filed or is deemed Filed under Bankruptcy Rule 3003(b)(1); and

(b)     As to which the Debtor against which the Claim is asserted, the Reorganized Debtors, or any party in interest entitled to do so has Filed a notice of designation as a Disputed Claim by the Claims Objection Deadline and as to which (a) that objection has not been waived on account of a failure to timely file and serve a claim objection; and (b) that objection has not been overruled, denied by a Final Order, or withdrawn.

Before the Claims Objection Deadline—and except to the extent that a Claim may have been allowed by a Final Order—a Claim is a Disputed Claim only to the extent that:

(a)     The Claim amount specified in the Proof of Claim exceeds the Claim amount listed on the Debtor's Schedules;

(b)     The Claim is listed on the Debtor's Schedules as disputed,

- 45 -

unliquidated, or contingent; or

(c)    The Claim's priority or status as a Secured Claim or Unsecured Claim, as listed on the Proof of Claim, differs from the Claim's priority or status as a Secured Claim or Unsecured Claim, as listed on the Debtor's Schedules.

Notwithstanding the above, to the extent that the Debtors dispute the amount owed pursuant to a Claim but do not dispute some portion of the Claim, the undisputed portion of the Claim shall be treated as an Allowed Claim and only the disputed portion shall be treaded as a Disputed Claim.

**"Disputed Interest"** means any Interest:

(a)    As to which a proof of Interest was Filed, as to which a proof of Interest is deemed Filed under Bankruptcy Rule 3003(b)(2); and

(b)    As to which the Debtor against which the Interest is asserted, the Reorganized Debtors, or any party in interest entitled to do so has timely Filed a notice of designation as a Disputed Interest and as to which (a) that objection has not been waived on account of a failure to timely file and serve an objection; and (b) that objection has not been overruled, denied by a Final Order, or withdrawn.

**"Distribution Date"** means the date, occurring on or as soon as practicable (and in no event more than 30 days) after the Effective Date or such earlier date as may be determined by the Reorganized Debtors' in their reasonable discretion, on which the Disbursing Agent first makes distributions to holders of Allowed Claims under the Plan.

**"Effective Date"** has the meaning set forth in Section IV.N.

**"Eligible Stockholders"** means holders of Holdings' Existing Common Stock of record as of October 1, 2010 who are also accredited investors under Regulation D of the Federal Securities Laws.

**"Employee Stock Option Notes"** means the *Promissory Notes dated as of May 9, 2007* issued by TWC to Roberta Morris, Anthony J. Wall, Douglas Nilsen, David Wolf, and John Otchis.

**"Estates"** means the estates created in the Debtors' Reorganization Cases under Bankruptcy Code Section 541.

"**Exchange Act**" means the Securities Exchange Act of 1934 as codified at 15 U.S.C. § 78a *et seq*., as amended.

**"Exhibit Filing Date"** means the last Business Day that is at least 14 days before the Confirmation Hearing Date.

**"Exit Financing"** means the $30,000,000 Senior Secured Asset Based Revolving Credit Facility to be provided to TWC and Big Dog by WFRF (and other financial institutions, if any, selected by WFRF) pursuant to, and subject to the terms and conditions of, the WFRF Commitment Letter.

**"Exhibit Filing Date"** means the last Business Day that is at least 14 days before the Confirmation Hearing Date.

**"Filed"** means duly and properly filed with the Court and reflected on the Court's official docket.

**"Final Order"** means an order or judgment of the Court entered on the Court's docket:

(a)    That has not been reversed, rescinded, stayed, modified, or amended;

(b)    That is in full force and effect; and

(c)    With respect to which:   (1) the time to appeal or to seek review, remand, rehearing, or a *writ of certiorari* has expired and as to which no timely Filed appeal or petition for review, rehearing, remand, or *writ of certiorari* is pending; or (2) any such an appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a *writ of certiorari* was sought.

**"General Unsecured Claim"** means a Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Unsecured Claim, a Secured Claim, or an Intercompany Claim.

**"Holdings"** means The Walking Company Holdings, Inc., a Delaware corporation.

**"Holdings' Existing Common Stock"** means the common stock that Holdings issued and that was outstanding immediately before the Effective Date.

**"Intercompany Claim"** means a Claim by any Debtor against another Debtor.

**"Interest"** means the interest—as the term "interest" is defined in Bankruptcy Code Section 101(17)—of any Person who holds an equity security in a Debtor.  Interests include all Interests, whether asserted or not, as well as the Holdings' Existing Common Stock, the TWC's Existing Common Stock, and the Big Dog's Existing Common Stock.

**"Investor Commitment Letter"** means the ***[Commitment Letter with Respect to Investment Agreement and Bridge Loan Note],*** a copy of which is attached to the Plan at Exhibit 4.

**"Investors"** means Richard Kayne and the other investors, as defined in the Investor Commitment Letter.

**"New Preferred Stock"** means, as set forth in Section II.D.3, the shares of Reorganized Holdings' preferred stock that will be issued and distributed under the Plan to the Eligible Stockholders.

**"Non-Ordinary-Course Administrative Claim"** means an Administrative Tax Claim, a Professional Fee Claim, a Rejected-Lease Administrative Claim, or a 503(b)(9) Claim.

**"Notes"** means the *8.375% Convertible Notes due 2015* issued by The Walking Company Holdings, Inc. and guarantied by The Walking Company and Big Dog USA, Inc.

**"Noteholder"** means a holder of the Notes.

**"Ordinary-Course Administrative Claims"** means Administrative Claims, other than Non-Ordinary-Course Administrative Claims, based upon liabilities that the Debtors

incur in the ordinary course of their business.  Ordinary-Course Administrative Claims include fees or charges assessed against a Debtor's Estate under 28 U.S.C. § 1930 or by the Court Clerk.

**"Other Secured Claims"** means any Secured Claims that are not expressly classified under Section II.C.1 of the Plan.

**"Person"** means any individual, corporation, general partnership, limited partnership, limited liability company, association, joint-stock company, joint venture, estate, trust, government, political subdivision, governmental unit (as defined in the Bankruptcy Code), or entity.

**"Petition Date"** means December 7, 2009, which is the date on which the Debtors' Reorganization Cases commenced.

**"PIK Interest"** means "payable in kind interest," *e.g.,* a periodic form of payment in which the interest payment is not paid in cash but rather by increasing the principal amount by the amount of the interest.

**"Plan"** means the *Debtors' Joint Chapter 11 Plan of Reorganization (Dated February 1, 2010)*, including any modifications or amendments to the Plan.

**"Post-Confirmation Credit Agreement"** means the credit agreement to be provided by the Debtors to WFRF (and any other financial institutions party thereto from time to time) pursuant to, and subject to the terms and conditions of, the WFRF Commitment Letter and containing substantially the same terms and conditions as provided for in the Prepetition Credit Agreements, except as otherwise provided in the WFRF Commitment Letter.

**"Postpetition Interest"** means postpetition interest that may be owed under applicable non-bankruptcy law from the Petition Date through the date of payment.  The Postpetition Interest Rate under applicable non-bankruptcy law will be deemed to be the contract rate, if applicable, and otherwise the applicable federal judgment rate.

**"Prepetition Credit Facility"** means the senior secured revolving credit facility provided to TWC and Big Dog pursuant to the Prepetition Credit Agreements.

**"Prepetition Credit Agreements"** means, collectively: (a) the *Ratification and Amendment Agreement, dated as of December 7, 2009*; (b) the *First Amended, Restated and Consolidated Loan and Security Agreement, dated as of July 7, 2005*, with attached Exhibits and Schedules; (c) the *Revolving Credit Note, dated as of July 7, 2005*; (d) the *Amended and Restated General Continuing Guaranty, dated as of July 7, 2005*; (e) the *Second Amendment to Guarantor Security Agreement, dated as of July 7, 2005*; (f) the *First Amendment to First Amended, Restated, and Consolidated Loan and Security Agreement, dated as of August 31, 2005, among the Borrowers, the Parent, the Lenders, and the Agent*; (g) the *Second Amendment to First Amended, Restated, and Consolidated Loan and Security Agreement, dated as of October 23, 2006, among the Borrowers, the Parent, the Lenders, and the Agent*; (h) the *Third Amendment to First Amended, Restated, and Consolidated Loan and Security Agreement, dated as of November 28, 2006, among the Borrowers, the Parent, the Lenders, and the Agent*; (i) the *Fourth Amendment to First Amended, Restated, and Consolidated Loan and Security Agreement, dated as of April 2, 2007, among the Borrowers, the Parent, the Lenders, and the Agent*; (j) the *Fifth Amendment to First Amended, Restated, and Consolidated Loan and Security Agreement, dated as of May 14, 2007, among the Borrowers, the Parent, the Lenders, and the Agent*; (k) the *Sixth Amendment to First Amended, Restated, and Consolidated Loan and Security Agreement, dated as of March 24, 2008, among the Borrowers, the Parent, the Lenders, and the Agent*; (l) the *Seventh Amendment to First Amended, Restated, and Consolidated Loan and Security Agreement, dated as of May 2, 2008, among the Borrowers, the Parent, the Lenders, and the Agent*; (m) the *Eighth Amendment to First Amended, Restated, and Consolidated Loan and Security Agreement, dated as of January 26, 2009, among the Borrowers, the Parent, the Lenders, and the Agent*; and (n) the *Ninth Amendment to First Amended, Restated, and Consolidated Loan and Security Agreement, dated as of March 20, 2009, among the Borrowers, the Parent, the Lenders, and the Agent*.

**"Priority Unsecured Claim"** means an Allowed Claim entitled to priority against an Estate under Bankruptcy Code Section 507(a)(3), 507(a)(4), or 507(a)(6).

**"Priority Tax Claim"** means an Allowed Claim entitled to priority against an Estate under Bankruptcy Code Section 507(a)(8).

**"Proponent"** means the Debtors.

**"Professional Fee Claim"** means:

   (a) A Claim under Bankruptcy Code Sections 327, 328, 330, 331, 503, or 1103 for compensation for professional services rendered or expenses incurred on an Estate's behalf; or

   (b) A Claim either under Bankruptcy Code Section 503(b)(4) for compensation for professional services rendered or under Bankruptcy Code Section 503(b)(3)(D) for expenses incurred in making a substantial contribution to an Estate.

**"Reclamation Claim"** means Claims asserted under Bankruptcy Code Section 546(c).

**"Reinstate"** means to leave unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the holder of such Claim or Interest; or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default: (1) to cure any such default that occurred before or after the Petition Date, other than a default of a kind specified in Bankruptcy Code Section 365 (b)(2) or of a kind that Bankruptcy Code Section 365 (b)(2) expressly does not require to be cured; or (2) to reinstate the maturity of such Claim or Interest as such maturity existed before such default.

**"Rejected-Lease Administrative Claim"** means an Administrative Claim for rent or any other obligation arising under an unexpired real-property or personal-property lease that a Debtor rejects under Bankruptcy Code Section 365.

**"Reorganization Case"** means a Debtor's voluntary case that is pending in the Court under chapter 11 of the Bankruptcy Code.

**"Reorganization Counsel"** means Arent Fox, LLP, 555 S. 5th Street, 48th Floor, Los Angeles, California 90017, attention Mette H. Kurth, Esq. and Douglas Flahaut, Esq.

**"Reorganized Debtor(s)"** means the Debtor(s) on and after the Effective Date.

**"Reorganized Holdings"** means Holdings on and after the Effective Date.

**"Reorganized TWC"** means TWC on and after the Effective Date.

**"Reorganized Big Dog"** means Big Dog on and after the Effective Date.

**"Schedule of Assumed Agreements"** means the schedule of executory contracts and unexpired leases that the Reorganized Debtors will assume, as such schedule may be amended or modified on or before the Exhibit Filing Deadline.  The Schedule of Assumed Agreements is attached to the Plan as Exhibit 1.

**"Schedule of Rejected Agreements"** means the schedule of executory contracts and unexpired leases that the Debtors will reject on the Effective Date, as such schedule may be amended or modified on or before the Exhibit Filing Deadline.  The Schedule of Rejected Agreements is attached to the Plan as Exhibit 2.

**"Schedules"** means the *Schedules of Assets and Liabilities* and *Statement of Financial Affairs*, as they may be amended from time to time, that each Debtor Filed in compliance with Bankruptcy Code Section 521(1).

**"SEC"** means the Securities Exchange Commission.

**"Secured Claim"** means a Claim that is secured by a valid and unavoidable lien against property in which an Estate has an interest or that is subject to setoff under Bankruptcy Code Section 553.  A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in that property or to the extent of the amount subject to setoff, as applicable, as determined under Bankruptcy Code Section 506(a).

**"Securities Act"** means the Securities Act of 1933 as codified at 15 U.S.C. § 77a *et seq.*, as amended from time to time.

**"Statutory Interest Rate"** means the applicable rate of interest on tax claims as determined under applicable nonbankruptcy law, as made applicable to these Reorganization Cases pursuant to Bankruptcy Code Section 511.

**"TWC"** means The Walking Company.

**"TWC's Existing Common Stock"** means the common stock that TWC issued and that was outstanding immediately before the Effective Date.

**"Undeliverable Distribution"** means a distribution that was made in accordance with Section IV.D and that is either deemed to be an Undeliverable Distribution under that Section or that the U.S. Post Office returns to the Disbursing Agent marked as undeliverable mail.

**"Unsecured Claim"** means a Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Claim, or a Secured Claim.

**"Unsecured Claims Reserve"** means the reserve to be established pursuant to Section IV.D.4.

**"WFRF Commitment Letter"** means the legally binding commitment letter to provide exit financing to the Debtors, subject to the terms and conditions stated therein, issued by WFRF on January 12, 2010 as provided in the DIP Order.

## VIII.

## **RULES OF INTERPRETATION**

The Plan and Disclosure Statement incorporate the following rules of interpretation.

1.     The rules of construction in Bankruptcy Code Section 102 apply to this Plan.

2.     Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

3.     A term that is used in the Plan or Disclosure Statement and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

4.     Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

5.      Any reference to a document, agreement, or instrument being in a particular form or on particular terms means that the document, agreement, or instrument will be substantially in that form or on those terms.  However, no material change to the form or terms can be made after the Confirmation Date without the consent of any party materially affected.

6.      Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

7.      All Exhibits will be incorporated into the Plan and will be deemed to be included in the Plan when they are Filed.

8.      The phrase "under the Plan" and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan

9.      Unless otherwise specified, all references to Sections or Exhibits are references to this Plan's Sections or Exhibits.

10.      Section captions and headings are used only as convenient references and do not affect this Plan's meaning.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IX.

## <u>RECOMMENDATION AND CONCLUSION</u>

The Debtors believe that Plan confirmation and implementation are preferable to any feasible alternative because the Plan will provide Persons holding Claims and Interests with substantially greater recoveries than the alternatives. **<u>Accordingly, the Debtors urge Persons who hold impaired Claims and Interests to vote to accept the Plan by checking the box marked "Accept" on their ballots and then returning the ballots to the Debtors as directed in the Disclosure Statement.</u>**

Dated: March 9, 2010                    The Walking Company, Big Dog USA, Inc., and
                                        The Walking Company Holdings, Inc.


                                        By  _____
                                              Andrew D. Feshbach
                                              Chief Executive Officer



SUBMITTED BY:


/s/  *Mette H. Kurth*_____
METTE H. KURTH
ARENT FOX LLP
Reorganization Counsel for Debtors
and Debtors in Possession

# EXHIBIT 1

| NAME | VENDOR # | DESCRIPTION OF CONTRACT | TERM START | TERM END | PROOF OF CLAIM AMOUNT, IF ANY* | OBLIGATION CURRENT | CURE AMOUNT | TERMS |
|---|---|---|---|---|---|---|---|---|
| ADP | 83112 | Payroll Services | 10/01/09 | 09/30/10 | | | $    - | |
| ADT Securities, Inc. | Charles S | 000-Westlake Village CA (Installation & Monitoring) | 11/6/2006 | Open | | | $    - | |
| ADT Securities, Inc. | Charles S | 001-Santa Barbara Corporate Offices (Installation & Monitoring) | 10/4/1994 | 10/4/1999 | | | $    - | |
| At&t | | Telephone & Network Services | 08/08/08 | 08/08/10 | | | $ 11,181.77 | |
| At&t Mobility | | Wireless Phones | 02/13/09 | 02/13/11 | | | $ 775.99 | |
| Carolina Industrial Products of NC, Inc. | 14100 | Cables / Wiring Maintenance | Document not dated | | | | $    - | |
| Comm-Solutions | 32256 | Software maintenance - Websense | 11/01/09 | 10/31/10 | | | $ 641.10 | |
| Escalate Retail | 18006 | Software licensing and maintenance | 01/01/10 | 12/31/10 | | | $    - | |
| Fidelity - 401k | | 401k | 12/01/07 | Open | | | $    - | |
| GreatWest | | GW Run-out from previous medical/Dental/Vision Plan | 10/01/09 | 01/01/11 | | | $    - | |
| IBM Corporation | 81854 | Hardware maintenance - iSeries Server | 04/01/09 | 03/31/10 | | | $ 440.30 | |
| Island Pacific | 81736 | Software licensing and maintenance | 01/01/10 | 12/31/10 | | | $    - | |
| Lincoln Financial | | Big Dog Vol Life Insurance | 10/01/09 | Open | | | $    - | |
| Lincoln Financial | | TWC Vol Life Insurance | 10/01/09 | Open | | | $    - | |
| Lincoln Financial | | Big Dog Short Term Disability Insurance | 10/01/09 | Open | | | $    - | |
| Lincoln Financial | | TWC Short Term Disability Insurance | 10/01/09 | Open | | | $    - | |
| Microsoft Licensing, GP | 80528 | Software volume licensing | 07/01/07 | 06/30/10 | | | $    - | |
| New Edge Networks | | DSL Services | 10/12/09 | 11/12/10 | | | $    - | |
| Office Depot | 81978 | Office Supplies | 07/10/06 | 07/10/09 | | | $ 39,004.44 | |
| Sentry Watch Inc. | Charles S | DC-Lincolnton NC (Installation & Monitoring) | | Open | | | $ 71.33 | |
| Sonoco Products Company | None | Cardboard Bailer | 10/01/05 | 10/01/11 | | | $    - | |
| The Board of Trustees of the Leland Stanford Junior University | | Footwear technology agreement | 07/15/08 | 04/01/18 | | | $    - | |
| Travelers Insurance | | Workers Compensation Ins. | 07/29/09 | Open | | | $    - | |
| TW Telecom Holdings, Inc. | | Voice & Data Services – SB Office | 06/30/09 | 06/30/10 | | | $ 4,078.38 | |
| TW Telecom Holdings, Inc. | | Voice Services – Westlake Office | 09/10/09 | 09/10/10 | | | $    - | |
| TW Telecom Holdings, Inc. | | Voice Services – DC | 06/25/09 | 06/25/10 | | | $    - | |
| TW Telecom Holdings, Inc. | | Web Hosting | 12/04/09 | 12/04/10 | | | $    - | |
| UHC - Health Insurance | | Medical/Dental/Vision Insurance | 10/01/09 | 09/30/10 | | | $    - | |
| Varilease Finance | 78474 | Equipment lease - Distribution Center Equipment lease | 04/01/07 | 06/15/11 | | | $ 33,004.30 | |
| | | | | | | | | |
| **MANAGEMENT EMPLOYMENT CONTRACTS** | | | | | | | | |
| | | | | | | | | |
| Adrew Feshbach | N/A | Management / Employment Contract | 09/16/09 | 09/16/11 | | | $    - | |
| Anthony Wall | N/A | Management / Employment Contract | 09/16/09 | 09/16/11 | | | $    - | |
| Lee Cox | N/A | Management / Employment Contract | 09/16/09 | 09/16/11 | | | $    - | |
| Mike Grenley | N/A | Management / Employment Contract | 09/16/09 | 09/16/11 | | | $    - | |
| Roberta Morris | N/A | Management / Employment Contract | 09/16/09 | 09/16/11 | | | $    - | |

| NON-RESIDENTIAL REAL PROPERTY LEASES | | | | | | |
|---|---|---|---|---|---|---|
| Freeland Realty LLC | SB Corporate Office, 121 Gray Ave | | | $ | 56,931.49 | post-petition agreement |
| TKC XCIX, LLC | Lincolnton, NC - Distribution Center | | | $ | - | post-petition agreement |
| Townsgate Road LLC | Westlake Office | | | $ | 85,034.59 | post-petition agreement |
| | | | $ - | $ | 89,237.61 | $ - |

* As the April 20, 2010 Bar Date has not yet passed, debtors have not yet anlaysed the claims that have been filed and may amend this portion at an appropriate time.

58

Plan Exhibit 1-2(a) & Disclosure Statement Exhibit C-2(a)

The Walking Company
Schedule of Assumed Contracts and Leases

Non-Residential Real Property Leases

| Store # | Landlord | Address | Lease Start Date | Lease Term Date | Proof of Claim Amount | Obligation Current | Cure Amount | | Terms |
|---------|----------|---------|------------------|-----------------|----------------------|--------------------|-------------|----|-------|
| 103 | South Bay Center SPE LLC, Forrest City Enterprises | 700 Terminal Tower, Cleveland, OH 44113 | 08/23/07 | 05/31/19 | | Yes | $ | - | Post-petition Settlement Agreement |
| 104 | South Coast Plaza, Management Office | 3333 Bristol at San Diego Fwy, Costa Mesa, CA 92626 | 02/01/05 | 01/31/15 | | Yes | $ | - | Pre-Petition Contract |
| 109 | Bellevue Square LLC | 575 Bellevue Square, Bellevue, WA 98004 | 03/01/09 | 02/28/19 | | Yes | $ | 22,025.70 | Pre-Petition Contract |
| 110 | Macerich Northwestern Associates, Macerich Company | 1275 Broadway Plaza, Walnut Creek, CA 94596 | 03/02/04 | 06/30/14 | | Yes | $ | 3,489.72 | Pre-Petition Contract |
| 111 | MOAC Mall Holdings LLC | 60 East Broadway, Bloomington, MN 55425-5550 | 03/02/04 | 01/31/14 | | Yes | $ | - | Pre-Petition Contract |
| 112 | Santa Anita Shopping Town LP, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 12th Floor, Los Angeles, CA 90025 | 07/01/07 | 06/01/17 | | Yes | $ | 2,147.60 | Post-petition Settlement Agreement |

| 115 | Pioneer Place LP, c/o GGP, Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 03/02/04 | 01/31/10 | | Yes | $ | 9,912.54 | Post-petition Settlement Agreement |
| 118 | Stoneridge Properties LLC, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, IN 46204-3438 | 02/01/09 | 01/31/19 | | Yes | $ | 27,281.78 | Post-petition Settlement Agreement |
| 121 | Taubman Cherry Creek Shopping Ctr LLC, The Taubman Company | 200 East Long Lake Road, PO Box 200, Bloomfield Hills, MI 48303-0200 | 02/01/08 | 01/31/15 | | Yes | $ | 683.54 | Pre-Petition Contract |
| 122 | Short Hills Assoc LLC, The Taubman Company | 200 East Long Lake Road, PO Box 200, Bloomfield Hills, MI 48303-0200 | 02/01/09 | 01/31/18 | | Yes | $ | 7,233.78 | Pre-Petition Contract |
| 124 | Woodfield Mall LLC, The Taubman Company | 200 East Long Lake Road, PO Box 200, Bloomfield Hills, MI 48303-0200 | 02/01/05 | 01/31/13 | | Yes | $ | 4,226.32 | Pre-Petition Contract |
| 126 | Claskamas Associates LP, c/o Jones Lang Wootton | 101 East 52nd Street, New York, NY 10022 | 08/01/07 | 07/31/16 | | Yes | $ | 22,149.40 | Pre-Petition Contract |

60

| 127 | Somerset Collection LP | 100 Galleria Officentre, #247, Southfield, MI 48037-0667 | 01/01/06 | 06/30/17 | Yes | $ | - | Pre-Petition Contract |
|---|---|---|---|---|---|---|---|---|
| 129 | Mayfield Management Company | 516 SE Morrison, Suite 910, Portland, OR 97214 | 01/01/10 | 01/31/12 | Yes | None | | Post-petition Settlement Agreement |
| 131 | Forbes/Cohen FL Prop LP | 100 Galleria Officentre, #247, Southfield, MI 48037-0667 | 01/01/07 | 12/31/16 | Yes | $ | - | Pre-Petition Contract |
| 133 | Braintree Property Assoc LP, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, IN 46204 | 07/01/06 | 12/31/16 | Yes | $ | 17,664.61 | Post-petition Settlement Agreement |
| 134 | The Retail Property Trust, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204 | 04/01/07 | 03/31/17 | Yes | $ | 26,741.63 | Post-petition Settlement Agreement |
| 135 | Bellwether Properties of MA LP, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, IN 46204 | 07/01/06 | 12/31/16 | Yes | $ | 21,625.24 | Post-petition Settlement Agreement |
| 136 | Bell Wether Properties of South Carolina Limited Partnership, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, IN 46204 | 05/01/07 | 04/30/17 | Yes | $ | 12,090.43 | Post-petition Settlement Agreement |

| 137 | Twelve Oaks Mall LLC, The Taubman Company | 200 East Long Lake Road, PO Box 200, Bloomfield Hills, MI 48303-0200 | 03/02/04 | 01/31/11 | | Yes | $ | 21,530.31 | Post-petition Settlement Agreement |
|-----|-------------------------------------------|---------------------------------------------------------------------|----------|----------|--|-----|----|-----------|-----------------------------------|
| 139 | SDG Fashion Mall LP, c/o Simon Properties | 225 W. Washington Street, Indianapolis, IN 46204 | 05/01/05 | 01/31/16 | | Yes | $ | 11,155.86 | Post-petition Settlement Agreement |
| 140 | Tuttle Crossing Assoc II LLC, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204-3438 | 03/02/04 | 01/31/11 | | Yes | $ | 12,037.36 | Post-petition Settlement Agreement |
| 142 | CHERRY HILL CENTER, LLC, New Castle Associates | 200 South Broad Street, The Belview Third Floor, Philadelphia, PA 19102 | 07/01/09 | 06/30/19 | | Yes | $ | - | Pre-Petition Contract |
| 143 | Water Tower LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 09/01/07 | 01/04/17 | | Yes | $ | 72,772.52 | Pre-Petition Contract |
| 144 | Fashion Centre Associates LLC, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46207 | 02/01/08 | 01/31/18 | | Yes | $ | 24,505.35 | Post-petition Settlement Agreement |
| 145 | Northgate Mall Partnership, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204 | 11/01/07 | 10/31/17 | | Yes | $ | 11,689.46 | Post-petition Settlement Agreement |

| 147 | Sherman Oaks Fashion Associates LP, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 12th Floor, Los Angeles, CA 90074-6991 | 10/01/07 | 01/31/18 | | Yes | $ | 19,195.53 | Post-petition Settlement Agreement |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 149 | CHRISTIANA MALL LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 03/01/08 | 02/28/18 | | Yes | $ | 17,312.63 | Post-petition Settlement Agreement |
| 150 | Kenwood Mall LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 03/14/08 | 02/28/18 | | Yes | $ | 27,873.77 | Pre-Petition Contract |
| 151 | Fashion Valley Mall LLC, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 90074-3271 | 07/31/08 | 07/31/18 | | Yes | $ | 51,012.94 | Post-petition Settlement Agreement |
| 152 | Glendale I Mall Assoc LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 09/01/08 | 08/31/18 | | Yes | $ | 29,717.44 | Pre-Petition Contract |
| 155 | HG Galleria I,II,III LP, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, IN 46204-3438 | 07/04/08 | 06/30/18 | | Yes | $ | 50,511.90 | Post-petition Settlement Agreement |
| 156 | New Orleans Riverwalk Assoc, General Growth Properties Inc. | 10275 Little Patuxent Parkway, Columbia, MD 21044 | 01/08/09 | 01/07/10 | | Yes | $ | 3,068.67 | Post-petition Settlement Agreement |

| 161 | WG Park, L.P., c/o Pratt Services LLC | 200 South Broad Street, The Belview Third Floor, Philadelphia, PA 19102 | 02/01/09 | 01/31/19 | | Yes | $ | - | Pre-Petition Contract |
|---|---|---|---|---|---|---|---|---|---|
| 166 | Danbury Mall Assoc LP | 401 Wilshire Blvd, Suite 700, P.O. Box 2172, Santa Monica, CA 90401 | 02/01/09 | 01/31/11 | | Yes | $ | 3,163.38 | Pre-Petition Contract |
| 167 | Perimeter Mall LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 04/01/09 | 03/31/11 | | Yes | $ | 26,468.40 | Pre-Petition Contract |
| 168 | Southgate Plaza LLC, c/o Westfield Corporation, Inc | 11601 Wilshire Blvd, 12th Floor, Los Angeles, CA 90025 | 02/01/09 | 01/31/10 | | Yes | $ | 3,805.32 | Post-petition Settlement Agreement |
| 169 | Bohn & Kouretas, PLC | 2009 N. 14th St, #400, Arlington, VA 22216 | 09/01/09 | 08/31/14 | | Yes | $ | 6,272.36 | Pre-Petition Contract |
| 172 | Falls Shopping Center Assoc LLC, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204-3438 | 02/01/07 | 01/31/17 | | Yes | $ | 12,980.21 | Post-petition Settlement Agreement |
| 173 | Columbia Mall, SPE, LLC, Columbia Regional Office | 10275 Little Patuxent Parkway, Columbia, MD 21044-3456 | 03/02/04 | 01/31/12 | | Yes | $ | 5,972.38 | Pre-Petition Contract |

| 174 | Mission Viejo Associates LP, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204 | 03/02/04 | 01/31/12 | | Yes | $ | 11,988.36 | Post-petition Settlement Agreement |
|---|---|---|---|---|---|---|---|---|---|
| 177 | Dulles Town Ctr Mall LLC, Lerner Corporation | 2000 Tower Oaks Blvd., 8th Floor, Rockville, MD 20852-4208 | 03/02/04 | 01/31/12 | | Yes | $ | 5,324.36 | Pre-Petition Contract |
| 178 | RPS II, L.L.C. | PO Box 2160, Spokane, WA 99210-1615 | 03/02/04 | 01/31/11 | | Yes | $ | 1,752.45 | Pre-Petition Contract |
| 180 | Aventura Mall Venture, M.S. Management Associates Inc | 115 West Washington Street, Indianapolis, IN 46204 | 07/01/08 | 06/30/17 | | Yes | $ | 15,291.06 | Pre-Petition Contract |
| 182 | UTC Venture LLC, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 12th Floor, Los Angeles, CA 90025-1748 | 03/02/04 | 01/31/11 | | Yes | $ | 2,454.32 | Post-petition Settlement Agreement |
| 184 | Montgomery Mall LLC, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 12th Floor, Los Angeles, CA 90025-1748 | 03/02/04 | 01/31/12 | | Yes | $ | 2,588.86 | Pre-Petition Contract |
| 186 | Town Center At Cobb, LLC, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, IN 46204 | 04/03/09 | 03/31/19 | | Yes | $ | 11,021.74 | Post-petition Settlement Agreement |

| 190 | Mall at North Shore LLC, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, IN 46204-3438 | 11/02/08 | 01/31/19 | Yes | $ | 13,195.55 | Post-petition Settlement Agreement |
|-----|---|---|---|---|---|---|---|---|
| 193 | Arden Fair Associates LP | 1689 Arden Fair Way, Suite 1167, Sacramento, CA 95818 | 03/02/04 | 01/31/11 | Yes | $ | 3,815.28 | Pre-Petition Contract |
| 194 | The Shops at Wailea LP, c/o Wailea Retail Assocoates | 810 Richards Street, #900, Honolulu, HI 96813 | 03/02/04 | 01/31/11 | Yes | $ | 3,685.77 | Pre-Petition Contract |
| 206 | Forbes Taubman Orlando LLC | 100 Galleria Officentre, #427, Southfield, MI 48037-0667 | 03/02/04 | 12/31/12 | Yes | $ | - | Pre-Petition Contract |
| 207 | Triangle Town Center, LLC, c/o CBL & Associates MGMT | 5959 Triangle Town Blvd, #2072, Raleigh, NC 27616 | 03/02/04 | 01/31/13 | Yes | $ | 28,516.45 | Post-petition Settlement Agreement |
| 208 | Bohannon Development Co. | Sixty 31st Street, San Mateo, CA 94403-3947 | 03/02/04 | 01/31/13 | Yes | $ | 1,404.53 | Pre-Petition Contract |
| 209 | RREEF America REITII Corp BBB, Preef Asset Manager | 3340 Peachtree Road NE, 2nd Floor, Atlanta, GA 30326 | 06/01/07 | 05/31/11 | Yes | $ | 1,750.60 | Pre-Petition Contract |
| 210 | GGP Natick LP, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 03/02/04 | 01/31/14 | Yes | $ | 20,145.88 | Pre-Petition Contract |

| 211 | Mainplace Shoppingtown LLC, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 12th Floor, Los Angeles, CA 90025-1748 | 03/02/04 | 01/31/11 | | Yes | $ | 1,453.00 | Post-petition Settlement Agreement |
| 212 | Village at Corte Madera, Management Office | 1554 Redwood Highway, Corte Madera, CA 94925 | 03/02/04 | 01/31/11 | | Yes | $ | 10,767.61 | Pre-Petition Contract |
| 215 | Sun Valley Shopping Ctr LLC, The Taubman Company | 200 East Long Lake Road, Bloomfield, MI 48303-0200 | 03/02/04 | 01/31/12 | | Yes | $ | 2,083.88 | Pre-Petition Contract |
| 216 | Stony Point Associates LLC, The Taubman Company | 200 E. Long Lake Rd., #300, PO Box 200, Bloomfield Hills, MI 48303 | 10/01/05 | 02/28/13 | | Yes | $ | 2,644.38 | Pre-Petition Contract |
| 217 | Macarthur Shopping Ctr LLC, The Taubman Company | 200 E. Long Lake Rd., #300, PO Box 200, Bloomfield Hills, MI 48267-0405 | 03/02/04 | 02/28/13 | | Yes | $ | 4,581.49 | Pre-Petition Contract |
| 218 | Woodland, Prelt ServicesLLC | 200 South Broad Street, PO Box 200, Philadelphia, PA 19102 | 03/02/04 | 01/31/11 | | Yes | $ | 753.53 | Pre-Petition Contract |
| 219 | West Farms Mall LLC, The Taubman Company | 200 East Long Lake Road, PO Box 200, Detroit, MI 48267-0555 | 03/02/04 | 01/31/11 | | Yes | $ | 4,780.61 | Post-petition Settlement Agreement |
| 220 | TJ Palm Beach Associates LP | 200 East Long Lake Road, PO Box 200, Bloomfield Hills, MI 48303-0200 | 02/01/09 | 01/31/10 | | Yes | $ | 2,446.84 | Pre-Petition Contract |

| # | Name | Address | | | | | | Amount | Contract Type |
|---|---|---|---|---|---|---|---|---|---|
| 221 | Alderwood Mall LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 12/01/04 | 12/31/14 | | Yes | $ | 18,708.66 | Pre-Petition Contract |
| 222 | EklecCo NewCo LLC, Pyramid Management Group. Inc | 4 Clinton Square, Syracuse, NY 13202-1078 | 06/20/05 | 01/06/15 | | Yes | $ | 20,511.90 | Pre-Petition Contract |
| 223 | Tampa Westshore Associates Limited Partnership, The Taubman Company | 200 East Long Lake Road, PO Box 200, Bloomfield Hills, MI 48303-0200 | 05/21/05 | 01/31/15 | | Yes | $ | 10,638.86 | Post-petition Settlement Agreement |
| 224 | TRG Charlotte LLC, The Taubman Company | 200 East Long Lake Rd., #300, PO Box 200, Bloomfield Hills, MI 48303-0200 | 02/01/09 | 01/31/10 | | Yes | $ | 7,170.44 | Post-petition Settlement Agreement |
| 225 | Southpark Mall Limited Partnership, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, IN 46204 | 05/21/05 | 01/31/16 | | Yes | $ | 16,187.16 | Post-petition Settlement Agreement |
| 226 | King of Prussia Associates, Kravco/Simon | PO Box 1528, King of Prussia, PA 19406 | 03/24/06 | 03/31/16 | | Yes | $ | 20,088.34 | Post-petition Settlement Agreement |
| 227 | Copley Place Associates LLC, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204-3438 | 09/01/09 | 08/31/14 | | Yes | $ | 33,749.33 | Post-petition Settlement Agreement |
| 228 | VF Mall LLC, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 11th Floor, Loa angeles, CA 90025 | 08/01/05 | 01/31/16 | | Yes | $ | 21,133.10 | Post-petition Settlement Agreement |

| 229 | Towson TC LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 10/01/05 | 09/30/15 | Yes | $ | 24,329.45 | Pre-Petition Contract |
|---|---|---|---|---|---|---|---|---|
| 230 | Saint Louis Galleria LLC, c/o GGP | 110 North Wacker Drive, Chicago, IL 60606 | 08/30/05 | 10/31/15 | Yes | $ | 20,835.90 | Pre-Petition Contract |
| 231 | Circle Center Mall LLC, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204 | 11/05/05 | 01/31/16 | Yes | $ | 16,489.60 | Post-petition Settlement Agreement |
| 232 | Beachwood Place Ltd Pshp, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 10/01/05 | 01/31/15 | Yes | $ | 28,378.57 | Pre-Petition Contract |
| 233 | Westcoast Estates GP, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 11/01/05 | 09/30/15 | Yes | $ | 6,501.84 | Pre-Petition Contract |
| 234 | Keystone Florida Property Holding Corp, Kravco/Simon | PO Box 1528, King of Prussia, PA 19406 | 12/12/05 | 02/29/16 | Yes | $ | 15,845.45 | Post-petition Settlement Agreement |
| 235 | Oakbrook Shopping Ctr LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 12/01/05 | 11/30/15 | Yes | $ | 29,553.06 | Pre-Petition Contract |
| 236 | PPR Washington Square LLC | 9585 South West Washington Square Raod, Tigard, OR 97223 | 03/24/06 | 01/31/16 | Yes | $ | 2,210.06 | Pre-Petition Contract |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 237 | Atlantic Pier Associates LLC, Caesars Atlantic City | 2100 Pacific Ave, Atlantic City, NJ 08401 | 10/06/06 | 12/31/16 | Yes | $ 22,437.90 | Post-petition Settlement Agreement |
| 238 | HOCKER OXMOOR, LLC, OXMOOR CENTER MALL | 110 North Wacker Drive, Chicago, IL 60606 | 03/24/06 | 10/31/15 | Yes | $ 20,789.12 | Pre-Petition Contract |
| 239 | Trumbull Shopping Center #2 LLC, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 11th Floor, Los Angeles, CA 90025 | 03/24/06 | 06/30/16 | Yes | $ 5,733.15 | Post-petition Settlement Agreement |
| 240 | Rich-Taubman Associates, The Taubman Company | 200 East Long Lake Road, PO Box 200, Bloomfield Hills, MI 48303- | 04/14/06 | 04/30/16 | Yes | $ 25,217.15 | Post-petition Settlement Agreement |
| 241 | Jacksonville Avenues LP, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, IN 46204 | 09/09/06 | 09/30/16 | Yes | $ 17,292.73 | Post-petition Settlement Agreement |
| 242 | Scottsdale Fashion Square Partnership | 7014-590 East Camelback Road, Scottsdale, AZ 85251 | 05/26/06 | 04/30/16 | Yes | $ 39,437.02 | Post-petition Settlement Agreement |
| 243 | West Town Mall Joint Venture, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, IN 46204 | 08/25/06 | 08/31/16 | Yes | $ 375.98 | Post-petition Settlement Agreement |
| 244 | Westland Garden State Plaza Limited Partnership, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 11th Floor, Los Angeles, CA 90074-6816 | 08/01/06 | 06/30/16 | Yes | $ 19,422.69 | Post-petition Settlement Agreement |
| 245 | Freemall Associates, LLC | 3710 Route 9, Suite 1000, Freehold, NJ 07728 | 09/01/06 | 08/31/16 | Yes | $ 29,604.21 | Post-petition Settlement Agreement |

| 246 | Galleria Mall INvestors LP, c/o General Growth Properties | 1000 Parkwood Circle, #400, Atlanta, GA 30339 | 10/13/06 | 10/31/16 | Yes | $ | - | Pre-Petition Contract |
|---|---|---|---|---|---|---|---|---|
| 247 | Westfield Topanga Owner LP | 11601 Wilshire Blvd, 12th Floor, Los Angeles, CA 90025 | 10/06/06 | 01/31/17 | Yes | $ | 23,502.79 | Post-petition Settlement Agreement |
| 248 | South Hills Village Associates, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, IN 46204 | 09/01/06 | 01/31/17 | Yes | $ | 14,372.85 | Post-petition Settlement Agreement |
| 249 | Crossgates Mall Company NewCo LLC, Pyramid Management Group. Inc | 4 Clinton Square, Syracuse, NY 13202-1078 | 11/10/06 | 11/30/16 | Yes | $ | 24,362.35 | Pre-Petition Contract |
| 250 | Rocksal Mall LLC, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, IN 46204 | 08/10/06 | 08/31/16 | Yes | $ | 14,623.85 | Post-petition Settlement Agreement |
| 251 | SF Shopping Centre Assoc LP, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 11th Floor, Los Angeles, CA 90225 | 03/23/07 | 01/31/17 | Yes | $ | 21,499.29 | Post-petition Settlement Agreement |
| 252 | TWC Chandler LLC | 3111 West Chandler Boulevard, Suite 2142, Chandler, AZ 85226 | 10/31/06 | 12/31/16 | Yes | $ | 8,929.98 | Pre-Petition Contract |

| 253 | GGP Ala Moana LLC | 110 North Wacker Drive, Chicago, IL 60606 | 07/02/06 | 01/31/15 | Yes | $ | 30,983.90 | Pre-Petition Contract |
|---|---|---|---|---|---|---|---|---|
| 254 | Macerich Twenty Ninth Street LLC | 1710 29th Street, #2048, Boulder, CO 80301 | 10/12/06 | 12/31/16 | Yes | $ | 22,237.84 | Post-petition Settlement Agreement |
| 255 | Amerishop Suburban, LP, c/o Kimco Realty Corp | 170 W.Ridgely Rd., Ste. 210, Lutherville, MD 21093 | 11/29/06 | 11/30/16 | Yes | $ | 2,087.40 | Pre-Petition Contract |
| 256 | Lincoln Plaza Associates, c/o Kravco Simon | PO Box 1528, King of Prussia, PA 19406 | 12/15/06 | 12/31/16 | Yes | $ | 10,800.46 | Post-petition Settlement Agreement |
| 257 | Palmer Square LP | 40 Nassau Street, 1st Floor, Princeton, NJ 08542 | 12/23/06 | 01/03/17 | Yes | None | | Post-petition Settlement Agreement |
| 258 | Plaza at Williams Center LLC | 6298 E. Grant Rd., #100, Tucson, AZ 85712 | 04/01/09 | 03/31/13 | Yes | $ | 2,066.81 | CLOSED 1/31/10 - per post-petition settlement agreement |
| 259 | Kamehameha Schools | P.O. Box 3466, Honolulu, HI 96801 | 06/06/04 | 06/30/17 | Yes | None | | Post-petition Settlement Agreement |
| 260 | Brandon Shopping Centers Partners, LTD, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 11th Floor, Los Angeles, CA 90025 | 03/01/07 | 06/30/17 | Yes | $ | 17,690.47 | Post-petition Settlement Agreement |

| 261 | Davis Street Land Co of TN LLC, The Mall at Green Hills | 2126 Abbott Martin Road, Nashville, TN 37215 | 06/22/07 | 06/30/17 | | Yes | None | | Post-petition Settlement Agreement |
|---|---|---|---|---|---|---|---|---|---|
| 262 | Hover Mall Ltd LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 05/18/07 | 04/30/17 | | Yes | $ | 19,543.34 | Post-petition Settlement Agreement |
| 263 | Pyramid Walden Company LP, Pyramid Management Group. Inc | 4 Clinton Square, Syracuse, NY 13202-1078 | 11/15/07 | 11/14/17 | | Yes | $ | 22,084.61 | Pre-Petition Contract |
| 264 | Turnberry/Centra Sub LLC, c/o Turnberry Associates | 19501 Biscayne Blvd #400, Aventura , FL 33180 | 11/14/07 | 11/30/17 | | Yes | $ | 20,306.74 | Post-petition Settlement Agreement |
| 265 | Penn-Ross Joint Venture, c/o M.S. Management Associates | 225 W. Washington Street, Indianapolis, IN 46204 | 05/04/07 | 12/31/17 | | Yes | $ | 12,934.39 | Post-petition Settlement Agreement |
| 266 | GGP-Maine Mall LP | 110 North Wacker Drive, Chicago, IL 60606 | 05/01/07 | 04/30/17 | | Yes | $ | 28,403.36 | Pre-Petition Contract |
| 267 | Forest City Janes Park LLC, Terminal Tower | 50 Public Square, #1360, Cleveland, OH 44113-2267 | 04/26/07 | 04/30/17 | | Yes | None | | Post-petition Settlement Agreement |

| 268 | Eastview Mall LLC, Wilmorite Management Group | 1265 Scottsville Rd., Rochester, NY 14624 | 05/27/07 | 05/26/17 | Yes | $ | 2,277.88 | Pre-Petition Contract |
|---|---|---|---|---|---|---|---|---|
| 269 | Pheasant Lane Realty Trust, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204-3438 | 04/11/07 | 04/10/17 | Yes | $ | 14,194.24 | Post-petition Settlement Agreement |
| 270 | I & G Direct Real Estate 3, LP, c/o JP Morgan Invest Mngmt | 245 Park Ave 2nd Fl, New York, NY 10167 | 05/25/07 | 05/31/17 | Yes | $ | 2,460.10 | Pre-Petition Contract |
| 271 | WV Sub LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 07/29/07 | 01/31/17 | Yes | $ | 35,165.71 | Post-petition Settlement Agreement |
| 272 | Madison / West Towne LLC, CBL Center | 2030 Hamilton Place Boulevard, Suite 500, Chattanooga, TN 37421-6000 | 05/18/07 | 05/31/17 | Yes | $ | 23,435.69 | Post-petition Settlement Agreement |
| 273 | Mayfair Property LLC | 110 North Wacker Drive, Chicago, IL 60606 | 05/05/07 | 04/30/17 | Yes | $ | 16,923.34 | Post-petition Settlement Agreement |
| 274 | QKC Maui Owner, LLC a Delaware Limited Liability Company, Re: Queen Ka'ahumana Center c/o Somera Capital Management LLC | 5383 Hollister Avenue Suite 240, Santa Barbara, CA 93111 | 06/15/07 | 01/31/17 | Yes | $ | 1,904.27 | Pre-Petition Contract |
| 275 | Macerich Oaks LLC, Management Office | 350 West Hillcrest Drive, Thousand Oaks, CA 91360 | 11/14/08 | 01/31/19 | Yes | $ | 22,047.64 | Post-petition Settlement Agreement |

| # | Counterparty | Address | | | | | Amount | Description |
|---|---|---|---|---|---|---|---|---|
| 276 | Taubman Regency Square Assoc LLC, The Taubman Company | 200 East Long Lake Road, PO Box 200, Bloomfield Hills, MI 48303-0200 | 08/31/07 | 01/31/17 | | Yes | $ 9,929.78 | Post-petition Settlement Agreement |
| 277 | Annapolis Mall Ltd Pshp, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 11th Floor, Los Angeles, CA 90025 | 11/01/07 | 01/31/18 | | Yes | $ 19,659.56 | Post-petition Settlement Agreement |
| 278 | Rockaway Center Associates, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204 | 11/21/07 | 11/30/17 | | Yes | $ 15,495.67 | Post-petition Settlement Agreement |
| 279 | AUGUSTA MALL LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 11/08/07 | 10/31/17 | | Yes | $ 16,689.06 | Post-petition Settlement Agreement |
| 280 | MNH Mall LLC, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204 | 08/31/07 | 08/31/17 | | Yes | $ 12,663.17 | Post-petition Settlement Agreement |
| 281 | TWC Tucson LLC | 2905 East Skyline Drive, Tucson, AZ 85718 | 09/28/07 | 01/31/18 | | Yes | $ 28,848.06 | Post-petition Settlement Agreement |
| 283 | Southpark Mall LLC, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 11th Floor, Los Angeles, CA 90025 | 10/26/07 | 01/31/18 | | Yes | $ 14,830.58 | Post-petition Settlement Agreement |

| 284 | Regency Centers LP | 1701 Shoal Creek, #245, Highland Village, TX 75077 | 09/25/07 | 01/31/13 | | Yes | $ 9,945.89 | Post-petition Settlement Agreement |
|---|---|---|---|---|---|---|---|---|
| 285 | The Retail Property Trust, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204 | 11/02/07 | 11/30/17 | | Yes | $ 14,371.13 | Post-petition Settlement Agreement |
| 286 | The Retail Property Trust, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204-3438 | 09/21/07 | 09/30/17 | | Yes | $ 22,489.22 | Post-petition Settlement Agreement |
| 287 | Partridge Creek Fashion Park LLC, The Taubman Company | 200 East Long Lake Rd. #300, PO Box 200, Bloomfield Hills, MI 48303-0200 | 10/18/07 | 01/31/17 | | Yes | $ 13,618.99 | Post-petition Settlement Agreement |
| 288 | St Johns Town Center LLC, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204 | 10/26/07 | 10/31/17 | | Yes | $ 15,839.26 | Post-petition Settlement Agreement |
| 289 | KC Owner, LLC, CoastWood Capital Group LLC | One California Street Suite 2500, San Francisco, CA 94111 | 12/07/07 | 12/06/17 | | Yes | $ 14,532.66 | Post-petition Settlement Agreement |
| 290 | PFP Columbus, LLC, General Counsel | 180 East Broad St. 21st Fl, Columbus, OH 43215 | 11/21/07 | 11/30/17 | | Yes | $ 2,800.54 | Post-petition Settlement Agreement |
| 291 | Westcor San Tan Village LLC | 11411 North Tatum Boulevard, Phoenix, AZ 85028 | 10/25/07 | 12/31/17 | | Yes | $ 27,510.78 | Post-petition Settlement Agreement |

| 292 | SPG Center LLC, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204 | 12/07/07 | 12/31/17 | | Yes | $ | 20,745.43 | Post-petition Settlement Agreement |
|---|---|---|---|---|---|---|---|---|---|
| 293 | Old Orchard Urban Limited Partnership, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 11th Floor, Los Angeles, CA 90025 | 09/07/07 | 01/31/18 | | Yes | $ | 30,802.15 | Post-petition Settlement Agreement |
| 294 | SM Eastland Mall LLC, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204-3438 | 10/12/07 | 10/31/27 | | Yes | $ | 10,959.58 | Post-petition Settlement Agreement |
| 295 | Huntsville Shores, LLC, c/o O&S Holdings, LLC | 9247 Alden Drive, Beverly Hills, CA 90210 | 12/22/07 | 01/31/18 | | Yes | none | | Post-petition Settlement Agreement |
| 297 | Simon Property Group Inc., Simon Property Group Inc | 225 W. Washington Street, Indianapolis, IN 46204 | 12/20/07 | 12/31/17 | | Yes | $ | 13,937.68 | Post-petition Settlement Agreement |
| 298 | Chesterfield Mall LLC, CBL Center | 2030 Hamilton Place Boulevard, Suite 500, Chattanooga, TN 37421-0001 | 12/20/07 | 06/30/18 | | Yes | $ | 21,043.08 | Post-petition Settlement Agreement |
| 299 | Mall at Solomon Pond LLC, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204-3438 | 12/20/07 | 12/31/17 | | Yes | $ | 14,809.53 | Post-petition Settlement Agreement |
| 300 | Caesars Palace Realty Corp | 1801 Century Park East, Suite 2600, Los Angeles, CA 90067 | 04/01/08 | 03/31/18 | | Yes | $ | 52,530.25 | Post-petition Settlement Agreement |

77

| | | | | | | $ | |
|---|---|---|---|---|---|---|---|---|
| 301 | Fashion Show Mall LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 09/01/05 | 10/31/12 | Yes | $ | 31,225.15 | Pre-Petition Contract |
| 302 | Boulevard Invest LLC, Miracle Mile Shops Management | 3663 Las Vegas Blvd. South900, Las Vegas, NV 89109 | 09/01/05 | 08/31/17 | Yes | $ | - | Pre-Petition Contract |
| 303 | Grand Canal Shops II, LLC, c/o GGP | 110 North Wacker Drive, Chicago, IL 60606 | 09/01/10 | 07/31/13 | Yes | $ | 47,516.38 | Pre-Petition Contract |
| 304 | The District at GVR LLC, American Nevada Realty | 901 N. Green Valley Parkway, Suite 200, Henderson, NV 89074 | 07/10/09 | 07/09/11 | Yes | $ | 8,901.85 | Post-petition Settlement Agreement |
| 305 | Frit San Jose Town & Cntry, c/o FRIT | 1626 East Jefferson St, Rockville, MD 20852-4041 | 09/04/05 | 02/28/13 | Yes | $ | 32,170.64 | Post-petition Settlement Agreement |
| 306 | Seminole Properties Retail, LL | 601 East Pratt Street, 6th Floor, Baltimore, MD 21202 | 09/01/05 | 12/31/09 | Yes | $ | 10,040.71 | closed - expired 12/31/09 |
| 307 | Highwood Realty LP | 310 Ward Parkway, Kansas City, MO 64112 | 04/02/07 | 04/30/17 | Yes | $ | - | Pre-Petition Contract |

| 308 | Oak Park Mall LLC, CBL Center | 2030 Hamilton Place Boulevard, Suite 500, Chattanooga, TN 37421-6000 | 04/17/08 | 04/30/18 | | Yes | $ | 15,433.07 | Post-petition Settlement Agreement |
|---|---|---|---|---|---|---|---|---|---|
| 309 | Galleria at Wolfchase LLC, c/o M.S Management Assc | 225 W. Washington Street, Indianapolis, IN 46204 | 10/17/07 | 02/28/18 | | Yes | $ | 19,692.78 | Post-petition Settlement Agreement |
| 310 | University Park Associates, c/o M.S. Management Assc., Inc | 225 W. Washington St, Indianapolis, IN 46204 | 02/01/06 | 03/31/12 | | Yes | $ | 15,255.52 | Post-petition Settlement Agreement |
| 311 | SPG Independence Ctr LLC, c/o M.S. Management Associates, Inc. | 225 W. Washington St., Indianapolis, IN 46204 | 02/01/10 | 01/31/12 | | Yes | $ | 13,325.05 | Post-petition Settlement Agreement |
| 312 | Rouse-Park Meadows LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 04/13/07 | 03/31/17 | | Yes | $ | 28,208.73 | Pre-Petition Contract |
| 313 | Flatiron Property Holding LLC, Management Office | One West Flatiron Crossing Drive Suite 1083, Broomfield, CO 80021 | 07/01/07 | 06/30/17 | | Yes | $ | 6,438.40 | Pre-Petition Contract |
| 314 | Meadowood Mall, LLC, c/o Simon Properties | 225 W. Washington St., Indianapolis, IN 46204-3438 | 02/01/09 | 01/31/19 | | Yes | $ | 20,618.88 | Post-petition Settlement Agreement |

| 315 | Orland LP, M.S. Management Associates Inc | 225 W. Washington Street, Indianapolis, IN 46204 | 04/01/07 | 03/31/17 | | Yes | $ | 13,818.69 | Post-petition Settlement Agreement |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 316 | Woodland Hills Mall LLC, M.S. Management | 225 W. Washington Street, Indianapolis, IN 46204 | 02/01/06 | 01/31/13 | | Yes | $ | 13,202.39 | Post-petition Settlement Agreement |
| 318 | Ridgedale Center LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 02/01/06 | 02/29/12 | | Yes | $ | 31,737.52 | Pre-Petition Contract |
| 320 | Hawthorne LP, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 12th Floor, Los Angeles, CA 90025 | 02/01/07 | 01/31/17 | | Yes | $ | 19,677.59 | Post-petition Settlement Agreement |
| 321 | JG Southcenter LTD, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 12th Floor, Los Angeles, CA 90025 | 02/01/06 | 01/31/11 | | Yes | $ | 25,069.32 | Post-petition Settlement Agreement |
| 322 | Valley River Center LLC, Macerich Company | 401 Wilshire Boulevard Suite 700, P.O. Box 2172 , Santa Monica, CA 90401 | 02/01/06 | 07/31/11 | | Yes | $ | 25,768.32 | Pre-Petition Contract |

| 323 | Brookfield Square Joint Venture, CBL Center | 2030 Hamilton Place Boulevard, Suite 500, Chattanooga, TN 37421-6000 | 02/01/09 | 01/31/11 | Yes | $ | 11,412.00 | Post-petition Settlement Agreement |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 324 | Inland US Management LLC | 90 South 400 West, #330, Salt Lake City, UT 84101-1369 | 02/01/06 | 12/31/11 | Yes | $ | 6,937.93 | Pre-Petition Contract |
| 327 | The Equitable Life Assurance Society of the United States, Jones Lang LaSalle Americas | 10 Rosedale Center, Roseville, MN 55113 | 02/01/06 | 01/31/12 | Yes | $ | 8,953.42 | Pre-Petition Contract |
| 328 | GGP Grandville LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 02/01/06 | 01/31/12 | Yes | $ | 20,986.12 | Pre-Petition Contract |
| 329 | Boise Mall LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 02/01/06 | 12/31/09 | Yes | $ | 5,523.80 | Post-petition Settlement Agreement |
| 330 | Simon Property Group (Texas) LP | 225 W. Washington Street, Indianapolis, IN 46204 | 02/01/06 | 01/31/14 | Yes | $ | 13,845.30 | Post-petition Settlement Agreement |
| 331 | New River Associates | 7700 West Arrowhead Towne Center, Glendale, AZ 85308 | 04/01/09 | 12/31/19 | Yes | $ | 31,647.59 | Post-petition Settlement Agreement |

| 332 | Lexington Joint Venture, CBL Center | 2030 Hamilton Place Boulevard, Suite 500, Chattanooga, TN 37421-6000 | 02/01/06 | 07/31/13 | Yes | $ | 7,653.57 | Post-petition Settlement Agreement |
|---|---|---|---|---|---|---|---|---|
| 336 | Stonebriar Mall Ltd Pshp, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 02/01/06 | 01/31/11 | Yes | none | | Post-petition Settlement Agreement |
| 341 | Westfield Franklin Park LLC, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 12th Floor, Los Angeles, CA 90025 | 02/01/09 | 06/30/16 | Yes | $ | 7,067.69 | Post-petition Settlement Agreement |
| 343 | GGP Foothills LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 02/01/06 | 01/31/10 | Yes | $ | 10,671.45 | Pre-Petition Contract |
| 347 | Columbia Mall Partnership, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204 | 09/01/10 | 01/31/12 | Yes | $ | 7,385.15 | Post-petition Settlement Agreement |
| 352 | Town Center at Boca Raton Trust, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204 | 01/25/08 | 01/31/18 | Yes | $ | 17,895.98 | Post-petition Settlement Agreement |
| 353 | Northwest Ohio Mall LLC, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 12/21/07 | 12/31/17 | Yes | $ | 10,663.71 | Post-petition Settlement Agreement |

| 354 | Gardens SPE II LLC | 73-545 El Paseo Boulevard, Palm Desert, CA 92260 | 12/07/08 | 12/31/18 | Yes | $ 2,102.26 | Post-petition Settlement Agreement |
|---|---|---|---|---|---|---|---|
| 355 | Simon Property Group LP, Simon Property Group LP | 225 W. Washington Street, Indianapolis, IN 46204 | 05/01/08 | 04/30/18 | Yes | $ 9,649.23 | Post-petition Settlement Agreement |
| 356 | Goodforest LLC, Forest City | 50 Public Square, #1360, Cleveland, OH 44113-2267 | 10/30/08 | 10/31/18 | Yes | none | Post-petition Settlement Agreement |
| 357 | Florida Mall Assoc Ltd, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204-3438 | 04/11/08 | 04/30/18 | Yes | $ 13,789.44 | Post-petition Settlement Agreement |
| 358 | Cary Venture Limited Partnership & CBL and Associates Limited Partnership, CBL Center | 2030 Hamilton Place Boulevard, Suite 500, Chattanooga, TN 37421-6000 | 03/28/08 | 03/31/18 | Yes | $ 18,462.05 | Post-petition Settlement Agreement |
| 359 | Kahala Center Company, c/o MMI Realty Servc., Inc | 2 North Lake Ave. #450, Pasadena, CA 91101-1858 | 08/15/08 | 08/31/18 | Yes | $ - | Pre-Petition Contract |
| 360 | Simon Property Group LP, Simon Property Group LP | 225 W. Washington Street, Indianapolis, IN 46204-3438 | 04/18/08 | 04/30/18 | Yes | $ 10,822.15 | Post-petition Settlement Agreement |
| 361 | Shoppes at Chino Hills, Inc | 2555 E. Camelback Rd., Suite 800, Phoenix, AZ 85016 | 05/23/08 | 05/31/18 | Yes | none | Post-petition Settlement Agreement |

| No. | Name | Address | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 362 | Woodbridge Center Property LLC | 110 North Wacker Drive, Chicago, IL 60606 | 05/01/09 | 01/31/12 | | $ | 3,475.56 | Pre-Petition Contract |
| 363 | Horton Plaza LP, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 11th Floor, Los Angeles, CA 90025 | 05/01/08 | 06/30/18 | Yes | $ | 2,261.33 | Post-petition Settlement Agreement |
| 364 | EWH Escondido Assoc LP, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 11th Floor, Los Angeles, CA 90025 | 05/02/08 | 04/30/18 | Yes | $ | 1,870.28 | Post-petition Settlement Agreement |
| 365 | Lancaster Trust, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60606 | 05/01/08 | 04/30/18 | Yes | $ | 11,883.01 | Post-petition Settlement Agreement |
| 367 | Hamilton Town Center LC, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204 | 05/02/08 | 05/31/18 | Yes | $ | 10,341.83 | Post-petition Settlement Agreement |
| 368 | Century City Mall LLC, Westfield Corporation, Inc. | 11601 Wilshire Blvd, 11th Floor, Los Angeles, CA 90025 | 05/01/08 | 06/30/18 | Yes | $ | 76,211.10 | Post-petition Settlement Agreement |
| 369 | Mall of Louisiana LP | 110 North Wacker Drive, Chicago, IL 60606 | 08/08/08 | 08/31/18 | Yes | $ | 12,107.70 | Post-petition Settlement Agreement |

| # | Name | Address | | | | | | Type |
|---|------|---------|---|---|---|---|---|------|
| 370 | Hill Country Galleria, L.P., Barton Oak v | 901 S. MoPac Expressway, Suite 250, Austin, TX 78746 | 06/20/08 | 06/30/18 | Yes | none | | Post-petition Settlement Agreement |
| 371 | Tacoma Mall Pshp, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, IN 46204 | 10/03/08 | 10/31/18 | Yes | $ | 3,440.60 | Post-petition Settlement Agreement |
| 373 | Coconut Point Developers, LLC, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46207 | 09/01/09 | 02/28/17 | Yes | $ | 12,622.97 | Post-petition Settlement Agreement |
| 374 | Bell Tower Shops LLP, Madison Marquette | 1850 M Street NW, 12th Floor, Washington, DC 20036 | 01/15/08 | 03/31/09 | Yes | none | | Post-petition Settlement Agreement |
| 376 | St. Armands Circle LLC, Belmont Associates | 3450 Northlake Boulevard, Suite 210, Palm Beach Gardens, FL 33403 | 01/15/08 | 10/31/20 | Yes | $ | - | Pre-Petition Contract |
| 377 | Simon Capital GP, Simon Property Group | 225 W. Washington Street, Indianapolis, IN 46204 | 01/15/08 | 12/31/15 | Yes | $ | 9,421.07 | Post-petition Settlement Agreement |
| 380 | Howard Rock Fee, LLC, c/o Howard Group | 185 Grand Boulevard, Suite 100, Sandestin, FL 32500 | 04/06/09 | 04/04/19 | Yes | $ | 8,451.45 | Post-petition Settlement Agreement |
| 381 | GGP Steeplegate Inc, General Growth Properties Inc. | 110 North Wacker Drive, Chicago, IL 60674 | 06/13/08 | 06/30/18 | Yes | $ | 11,131.84 | Post-petition Settlement Agreement |

| | | | 05/01/09 | 04/30/24 | | | | Post-petition Settlement Agreement |
|---|---|---|---|---|---|---|---|---|
| 382 | Madison Manhattan Village LLC | 153 E. 53rd St., 33rd Floor, New York, NY 10022 | | | | | | Post-petition Settlement Agreement |
| 383 | Bridgewater Commons Mall LLC | 110 North Wacker Drive, Chicago, IL 60606 | 05/01/09 | 01/31/19 | Yes | $ | 21,706.06 | Post-petition Settlement Agreement |
| 384 | Davis Street Land Co of MO III LLC | 622 Davis Street, Suite 200, Evanston, IL 60201 | 08/16/08 | 08/31/18 | Yes | none | | Post-petition Settlement Agreement |
| 386 | Treasure Coast-JCP Assoc LTD, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, IN 46204-3438 | 03/20/09 | 02/28/19 | Yes | $ | 16,084.79 | Post-petition Settlement Agreement |
| 387 | Temecula Towne Ctr Assc LLC, Forest City | 50 Public Square, #1360, Cleveland, OH 44113-2667 | 05/07/09 | 03/25/19 | Yes | none | | Post-petition Settlement Agreement |
| 389 | Roseville Shoppingtown LLC | 11601 Wilshire Blvd, 11th Floor, Los Angeles, CA 90025 | 06/05/09 | 01/31/20 | Yes | $ | 7,154.97 | Post-petition Settlement Agreement |
| 390 | Coral SC / Ltd Assoc, c/o M.S. Management Associates, Inc. | 225 W. Washington Street, Indianapolis, In 46204-3438 | 04/10/09 | 03/31/19 | Yes | $ | 10,462.75 | Post-petition Settlement Agreement |
| 391 | Briarwood LLC | 225 W. Washington Street, Indianapolis, In 46204-3438 | 10/09/09 | 01/31/11 | Yes | $ | 9,011.94 | Post-petition Settlement Agreement |
| 393 | WMACH LLC, M.S. Associates Inc. | 225 W. Washington Street, Indianapolis, IN 46204 | 10/09/09 | 01/31/11 | Yes | $ | 7,601.20 | Post-petition Settlement Agreement |
| 394 | Shopping Center Associates | 9136 Paysphere Circle, Chicago, IL 60674 | 10/16/09 | 01/31/11 | Yes | $ | 8,824.97 | Post-petition Settlement Agreement |
| 395 | Lawrence Associates | 234 Mall Boulevard, P.O. Box 1528, King of Prussia, PA 19406-1528 | 09/04/09 | 01/31/11 | Yes | $ | 904.12 | Post-petition Settlement Agreement |
| 396 | Mall at Montgomeryville LP, Simon Property Group | 234 Mall Boulevard, P.O. Box 1528, King of Prussia, PA 19406-1528 | 09/04/09 | 01/31/11 | Yes | $ | 10,607.79 | Post-petition Settlement Agreement |

86

Plan Exhibit 1-2(b) / Disclosure Exhibit C-2(b)

The Walking Company
Schedule of Assumed Contracts and Leases

Executory Contracts & Leases (Other Than Real Estate Leases)

| NAME | VENDOR # | CONTRACT ID | DESCRIPTION OF CONTRACT | TERM START | TERM END | PROOF OF CLAIM AMOUNT, IF ANY | OBLIGATION CURRENT | CURE AMOUNT | TERMS |
|---|---|---|---|---|---|---|---|---|---|
| 1803 Job Footwear | 00217 | | Buying Agency Agreement | 03/24/09 | | | | $ - | |
| 3A Footwear Company Limited | | | | | | | | | |
| ADP | 02868 | | Buying Agency Agreement | 08/08/08 | | | | $ - | |
| | 83112 | 74/32W | Payroll Services | 10/01/09 | 09/30/10 | | | $ 2,397.70 | |
| ADT Securities, Inc. | Charles S | H021177401 | 258-Tucson AZ (Installation & Monitoring) | 06/30/05 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H765059608 | 129-Seattle WA (Installation & Monitoring) | 06/19/08 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H765220114 | 151-San Diego CA (Installation & Monitoring) | 08/14/08 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | 15852924 | 161-Willow Grove PA (Installation & Monitoring) | 11/16/06 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H730013189 | 169-Washington DC (Installation & Monitoring) | 04/22/99 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H018429504 | 221-Lynnwood WA (Installation & Monitoring) | 12/09/04 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H021070518 | 228-Santa Clara CA (Installation & Monitoring) | 10/30/06 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H021143818 | 235-Oak Brook IL (Installation & Monitoring) | 12/01/05 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H021184891 | 270-Santa Barbara CA (Installation & Monitoring) | 04/20/07 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H021182855 | 254-Boulder CO (Installation & Monitoring) | 04/06/07 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H021180726 | 257-Princeton NJ (Installation & Monitoring) | 12/12/06 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H021180726 | 257-Princeton NJ (Installation & Monitoring) | 12/19/06 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H028650603 | 264-Las Vegas NV (Installation & Monitoring) | 10/06/07 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H765401460 | 275-Thousand Oaks CA (Installation & Monitoring) | 10/06/08 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H028651761 | 279-Augusta GA (Installation & Monitoring) | 11/01/07 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H021186450 | 284-Highland Village TX (Installation & Monitoring) | 10/11/07 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H028652154 | 292-Palo Alto CA (Installation & Monitoring) | 11/16/07 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | H028653007 | 295-Huntsville AL (Installation & Monitoring) | 12/21/07 | Open | | | $ - | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ADT Securities, Inc. | Charles S | H028657920 | 315-Orland Park IL (Installation & Monitoring) | 05/02/08 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H028654404 | 352-Boca Raton FL (Installation & Monitoring) | 01/10/08 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H028652892 | 353-Maumee OH (Installation & Monitoring) | 12/04/07 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H028658607 | 355-Panama City FL (Installation & Monitoring) | 04/03/08 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H765149219 | 356-Wesley Chapel FL (Installation & Monitoring) | 08/11/08 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H028655507 | 361-Chino Hills CA (Installation & Monitoring) | 05/12/08 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H028653425 | 363-San Diego CA (Installation & Monitoring) | 05/07/08 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H028659405 | 367-Noblesville IN (Installation & Monitoring) | 04/24/08 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H028655312 | 368-Century City CA (Installation & Monitoring) | 05/12/08 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H765220909 | 369-Baton Rouge LA (Installation & Monitoring) | 08/19/08 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H028655508 | 370-Bee Cave TX (Installation & Monitoring) | 05/12/08 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H765224850 | 371-Tacoma WA (Installation & Monitoring) | 09/05/08 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H765625305 | 380-Sandestin FL (Installation & Monitoring) | 03/07/09 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H765542802 | 382-New York NY (Installation & Monitoring) | 01/08/09 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H765149419 | 384-Lake Saint Louis MO (Installation & Monitoring) | 08/12/08 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H021149747 | 228-Santa Clara CA (Installation & Monitoring) | 05/09/06 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H021180234 | 255-Ardmore PA (Installation & Monitoring) | 12/12/06 | Open | | $ - |
| ADT Securities, Inc. | Charles S | FF380060338 | 255-Michigan City IN (Installation & Monitoring) | 05/27/97 | 05/27/02 | | $ - |
| ADT Securities, Inc. | Charles S | H021182084 | 260-Brandon FL (Installation & Monitoring) | 02/16/07 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H021183997 | 267-Bolingbrook IL (Installation & Monitoring) | 04/06/07 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H021183970 | 271-Lahaina HI (Installation & Monitoring) | 04/23/07 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H021184036 | 274-Kahului HI (Installation & Monitoring) | 04/17/07 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H021188741 | 281-Tucson AZ (Installation & Monitoring) | 08/06/07 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H021188376 | 287-Clinton Township MI (Installation & Monitoring) | 08/06/07 | Open | | $ - |
| ADT Securities, Inc. | Charles S | H021188740 | 288-Jacksonville FL (Installation & Monitoring) | 08/06/07 | Open | | $ - |

88

| Company | Person | Account # | Description | Date | Status/Date | Amount |
|---|---|---|---|---|---|---|
| ADT Securities, Inc. | Charles S | H028652790 | 289-Waikoloa HI (Installation & Monitoring) | 12/03/07 | Open | $ - |
| ADT Securities, Inc. | Charles S | H028651090 | 291-Gilbert AZ (Installation & Monitoring) | 10/20/07 | Open | $ - |
| ADT Securities, Inc. | Charles S | H021188742 | 293-Skokie IL (Installation & Monitoring) | 08/06/07 | Open | $ - |
| ADT Securities, Inc. | Charles S | H021182597 | 307-Kansas City MO (Installation & Monitoring) | 03/29/07 | Open | $ - |
| ADT Securities, Inc. | Charles S | H765484789 | 354-Palm Desert CA (Installation & Monitoring) | 11/25/08 | Open | $ - |
| ADT Securities, Inc. | Charles S | H765236658 | 387-Temecula CA (Installation & Monitoring) | 07/30/09 | Open: | $ - |
| ADT Securities, Inc. | Charles S | H021187629 | 259-Honolulu HI (Installation & Monitoring) | 08/02/07 | Open | $ - |
| Aetrex Worldwide, Inc. | | | Equipment Rental Agreement -- Foot Measuring | 04/24/09 | Open | $ 122,307.67 |
| Alarm Specialist Corporation | Charles S | AS 3347 | 376-Sarasota FL (Installation & Monitoring) | 05/01/08 | Open | $ - |
| Alvin Fels | 02863 | | Buying Agency Agreement | 08/13/08 | | $ - |
| Carolina Office Equipment | 14457 | 104264 | Equipment Maintenance -- DC | 03/13/09 | 03/13/10 | $ - |
| Clarks | 02869 | | Buying Agency Agreement | 02/01/08 | Open | $ 35,094.42 |
| Execucare | | 00285 | Execucare | 01/01/09 | Open | $ - |
| First Data/Suntrust Bank | | | Merchant Svcs Bankcard Agreement | 05/20/07 | 05/20/11 | $ 136,695.50 |
| HMAA | | 52889 | Hawaii Medical Insurance | 09/01/09 | Open | $ 1,556.80 |
| Key Finance | 80288 | CW01431360 | Equipment lease - Konica Minolta copier in NC DC | 04/10/09 | 04/10/12 | $ 532.29 |
| Key Finance | 80288 | CW01430105 | Equipment lease - Konica Minolta copier @ Gray Ave in acctg | 03/10/09 | 03/10/12 | $ 370.44 |
| Key Finance | 80288 | CW01265619 | Equipment lease - 2 Konica Minolta copiers in Westlake | 11/10/06 | 11/10/11 | $ 585.20 |
| Li & Fung (Trading) Limited | 01068 | | Buying Agency Agreement | no date | | $ - |
| MDC Associates | 02864 | | Buying Agency Agreement | 07/24/08 | | $ - |
| Mercury International Trading Corporation | 02873 | | Buying Agency Agreement | 07/13/09 | | $ - |
| National Benefit Life Insurance | | 8910-0990099 | New York Temporary Disability Insurance | 11/11/08 | Open | $ - |
| Nick Alexander Imports | 61942 | 4001055124 | Auto lease - 2008 BMW | 03/24/08 | 10/11/11 | $ - |
| Pacific Guardian Life Insurance | | 32998 | Hawaii Temporary Disability Insurance | 03/01/09 | Open | $ - |
| Slippers International Inc. | 01441 | | Buying Agency Agreement | 05/01/09 | | $ 35.18 |
| The Combs Co. Inc. | 01245 | | Buying Agency Agreement | 03/24/08 | | $ - |
| Wells Fargo Merchant Services | | | Merchant Svcs Payment Processing Agreement | 10/12/04 | Auto renewal | $ 50,173.00 |
| | | | | | | $ 349,748.20 |
| | | | | | $ - | $ - |

*Note that some of the cure amounts may have already been paid as of the date of this disclosure statement pursuant to court order authorizing such payment.

Plan Exhibit 1-2(c) / Disclosure Exhibit C-2 (c)

The Walking Company Holdings, Inc.
Schedule of Assumed Contracts and Leases

Intellectual Property

| LICENSOR | TYPE OF LICENSE | ADDRESS OF LICENSOR | LICENSED TERRITORY/LOCATION | CURE AMOUNT |
|---|---|---|---|---|
| SalePoint | Retail-J software for retail store POS | 4330 Auburn Blvd. #1400, Sacramento, CA 95841 | United States | $    - |
| Datavantage Corporation | Store21 software for retail store POS | 30500 Bruce Industrial Parkway | United States | $    20,218.70 |
| Xcellenet | Polling software for retail stores | No longer in business | United States | $    - |

Plan Exhibit 3-3(e) / Disclosure Statement Exhibit C-3(e)

Big Dog USA, Inc.
Schedule of Assumed Contracts and Leases

Non-Residential Real Estate Leases

| Store # | Location | City | Tenant | Landlord | Address | Lease Start Date | Lease Term Date | Proof of Claim Amount | Obligation Current | Curr. Amount | Terms |
|---|---|---|---|---|---|---|---|---|---|---|---|
| B0231 | 10406 US Highway 98 W Space 32 | Miramar Beach | Big Dogs | Silver Sands Joint Venture Partners | 630 Grand Boulevard, Suite 100, Destin, FL 32550 | 05/10/02 | 05/31/12 | | | $ 18,929.38 | |
| B0254 | 2654 Teaster Lane | Pigeon Forge | Big Dogs | Pigeon Forge Associates | 550 Oak Court Drive, Suite 350, Memphis, TN 38117 | 04/01/05 | 01/06/10 | | | $ 6,551.19 | |
| B0277 | 135 Opry Mills Drive | Nashville | Big Dogs | Opry Mills LP | 1300 Wilson Boulevard, Suite 400, Arlington, VA 22209 | 06/01/05 | 05/31/10 | | | $ 2,326.00 | |
| B0306 | 1454 State Route 9 | Lake George | Big Dogs | Adirondack Factory Outlet Center, Inc. | 1454 State Route 9, Lake George, NY 12845 | 01/01/08 | 09/30/09 | | | $ 5,557.60 | |
| B0329 | 849 W Harbor Drive Suite A | San Diego | Big Dogs | San Diego Seaport Village Inc. | 5090 Wailea Alanui, #14406, Wailea, Maui, HI 96753 | 10/01/06 | 09/30/11 | | | $ 13,066.01 | |
| B0445 | 2850 Parkway #6 | Pigeon Forge | Big Dogs | GMAC Commercial Mortgage / Pigeon Forge Factory Outlet Mall | 2200 21st Ave South, Suite 909, Nashville, TN 37212 | 09/01/05 | 12/31/09 | | | $ 12,232.93 | |

Plan Exhibit 1-3(b) / Disclosure Statement Exhibit C-3(b)

Big Dog USA, Inc.
Schedule of Assumed Contracts and Leases

Other Executory Contracts / Leases

| NAME | VENDOR # | DESCRIPTION OF CONTRACT | TERM START | TERM END | PROOF OF CLAIM AMOUNT | OBLIGATION CURRENT | CURE | CURE AMOUNT |
|---|---|---|---|---|---|---|---|---|
| ADP | 83112 | Payroll Services | 10/01/09 | 09/30/10 | | | $ 634.70 | |
| ADT Securities, Inc. | Charles S | 205-Sedona AZ (Installation & Monitoring) | 11/27/1996 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | 219-St. Augustine FL (Installation & Monitoring) | 2/8/1994 | 1/13/2009 | | | | |
| ADT Securities, Inc. | Charles S | 231-Destin FL (Installation & Monitoring) | 5/7/2002 | 5/7/2007 | | | $ - | |
| ADT Securities, Inc. | Charles S | 243-San Marcos (Installation & Monitoring) | 1/4/1995 | 1/4/2000 | | | $ - | |
| ADT Securities, Inc. | Charles S | 255-Ardmore (Installation & Monitoring) | 12/20/2006 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | 275-Gulfport MS (Installation & Monitoring) | 11/1/1995 | 11/1/2000 | | | $ - | |
| ADT Securities, Inc. | Charles S | 300-Boaz AL (Installation & Monitoring) | 6/27/1996 | Open | | | $ - | |
| ADT Securities, Inc. | Charles S | 323-San Diego CA (Installation & Monitoring) | 10/3/1996 | 10/3/2001 | | | $ - | |
| ADT Securities, Inc. | Charles S | 323-San Diego CA (Installation & Monitoring) | 10/22/1996 | 10/22/2001 | | | $ - | |
| ADT Securities, Inc. | Charles S | 342-Sevierville TN (Installation & Monitoring) | 11/10/1997 | 11/10/2002 | | | $ - | |
| ADT Securities, Inc. | Charles S | 347-Max Meadows VA (Installation & Monitoring) | 7/25/1997 | 7/25/2002 | | | $ - | |
| Alarm Watch L.L.C. (same as Sentry Watch) | 46605 | Fire System Inspection -- DC | 10/30/07 | 10/30/12 | | | $ - | |
| CIT Technology Financial Services | 36348 | Equipment lease - 3 Canon copiers (1 Mktg, 2 Graphics) | 12/20/07 | 11/20/10 | | | $ - | |
| East Concept Export (HK) | 72300 | Buying Agency Agreement | 12/11/00 | | | | $ - | |
| Eastrich International Ltd. | 72340 | Buying Agency Agreement | 12/07/00 | | | | $ - | |
| First Data/Suntrust Bank | | Merchant Svcs Bankcard Agreement | 06/31/07 | 05/31/11 | | | $ 10,176.18 | |
| Global Source Merchandising PTE LTD | 74420 | Buying Agency Agreement | 02/11/04 | | | | $ - | |
| Hasler Financial Services, LLC | | Mailing System | 12/23/08 | 12/23/11 | | | $ - | |
| Metropol Textile Representative | 75310 | Buying Agency Agreement | 04/01/03 | | | | $ - | |
| National Benefit Life Insurance | | New York Temporary Disability Insurance | 12/05/00 | Open | | | $ - | |
| Siyrtex Industrial Co., Ltd. | 78354 | Buying Agency Agreement | 12/05/00 | | | | $ - | |
| United Mechanical Corporation | 51369 | HVAC Maintenance -- DC | 02/13/07 | 02/13/11 | | | $ - | |
| UNUM | | Executive Long Term Disability Ins. | | Open | | | $ - | |
| UPS | | Shipping Carrier Agreement | 12/18/06 | 12/18/10 | | | $ 58,386.66 | |
| Xiang Hong Group Co. | 79380 | Buying Agency Agreement | 01/01/01 | | | | $ - | |
| Xpedx (Formerly listed as Intertape) | 56500 | Warehouse Supplies -- Tape | 03/25/08 | Auto renew annually | | | $ - | |
| | | | | | $ - | $ - | $ 69,197.54 | $ - |

93

Plan Exhibit 1-3(c) / Disclosure Statement Exhibit C-3(c)

**Big Dog USA, Inc.**
**Schedule of Assumed Contracts and Leases**

**Intellectual Property**

**B. Licenses Granted To Debtor**

| LICENSOR | TYPE OF LICENSE | ADDRESS OF LICENSOR | LICENSED TERRITORY/LOCATION | CURE |
|---|---|---|---|---|
| IBM Corporation | Software license for retail store POS | P.O. Box 643600, Pittsburgh, PA 15264 | United States | - |
| Park City Group, Inc. | Software license for retail store email | 333 Main St., PO Box 5000, Park City, UT 84060 | United States | - |
| Xcellenet | Polling software for retail stores | No longer in business | United States | - |

# EXHIBIT 2

Plan Exhibit 2-1(a) / Disclosure Exhibit D-1(a)

**The Walking Company Holdings, Inc.**
**Schedule of Rejected Contracts and Leases**

**Non-Residential Real Property Leases**

| Location # | Location | City | Tenant | Landlord | Address | Lease Start Date | Lease Term Date |
|---|---|---|---|---|---|---|---|
| NONE | | | | | | | |
| NONE | | | | | | | |
| NONE | | | | | | | |

96

Plan Exhibit 2-1(b) / Disclosure Exhibit D-1(b)

The Walking Company Holdings, Inc.
Schedule of Rejected Contracts and Leases

Executory Contracts & Leases (Other Than Real Estate Leases)

| NAME | VENDOR # | ADDRESS | PHONE | FAX | CONTRACT ID | DESCRIPTION OF CONTRACT | TERM START | TERM END |
|------|----------|---------|-------|-----|-------------|-------------------------|------------|----------|
| NONE | | | | | | | | |
| NONE | | | | | | | | |
| NONE | | | | | | | | |
| NONE | | | | | | | | |

Plan Exhibit 2-1(c) / Disclosure Exhibit D-1(c)

The Walking Company Holdings, Inc.
Schedule of Rejected Contracts and Leases

Intellectual Property

| LICENSOR | TYPE OF LICENSE | ADDRESS OF LICENSOR | LICENSED TERRITORY/LOCATION |
|---|---|---|---|
| NONE | | | |
| NONE | | | |
| NONE | | | |

98

Plan Exhibit 2-2(a) / Disclosure Statement Exhibit D-2(a)

**The Walking Company**
**Schedule of Rejected Contracts and Leases**

**Non-Residential Real Property Leases Rejected**

| Store # | Name/Location | City | Tenant | Landlord | Address | Lease Start Date | Lease Term Date |
|---|---|---|---|---|---|---|---|
| 282 | Arlington Heights* | Dallas | TWC | Arlington Highlands | 2525 McKinnon Street, Suite 700, Dallas, TX 75201 | 10/28/2007 | 10/31/2017 |
| 258 | Plaza At Williams, Broadway Blvd.** | Tucson | TWC | Plaza at Williams Center LLC | 6289 E. Grant Rd. #100, Tucson, AZ 85712 | 4/1/2009 | 3/31/2013 |
| 375 | John Ringling* | Charlotte | TWC | Bayrock Investment Co. | 1031 South Caldwell Street, Suite 101, Charlotte, NC 28203 | 3/1/2009 | 7/31/2019 |
| 372 | 5th Ave. Naples* | Naples | TWC | Blind Canyon Partnership | P.O. Box 249, Naples, FL 31406-0249 | 9/1/2009 | 8/31/2010 |
| 385 | Pearland* | Chattanooga | TWC | CBL & Associates Management | 2030 Hamilton Place Boulevard, Suite 500, Chattanooga, TN 37421 | 7/30/2008 | 7/31/2018 |
| 379 | Johns Pass Boardwalk* | Madera Beach | TWC | Hubbard Properties, LLC | 198 129th Avenue West, Madera Beach, FL 33708 | 4/11/2008 | 3/27/2018 |
| 378 | John's Pass* | Seminole | TWC | Orcutt Critellie Properties | 13750 77th Ave. North, Seminole, FL 33776 | 3/1/2009 | 4/30/2010 |

* rejected as of 12/7/2009 per court order dated 1/21/2010
** rejected per notice filed 1/26/2010

99

Plan Exhibit 2-2(b) / Disclosure Statement Exhibit D-2-(b)

The Walking Company
Schedule of Rejected Contracts and Leases

Executory Contracts & Leases (Other Than Real Estate Leases)

| NAME | VENDOR # | ADDRESS | PHONE | FAX | CONTRACT ID | DESCRIPTION OF CONTRACT | TERM START | TERM END |
|------|----------|---------|-------|-----|-------------|-------------------------|------------|----------|
| NONE | | | | | | | | |
| NONE | | | | | | | | |
| NONE | | | | | | | | |

Plan Exhibit 2-2(c) / Disclosure Statement Exhibit D-2(c)

The Walking Company Holdings, Inc.
Schedule of Rejected Contracts and Leases

Intellectual Property

| LICENSOR | TYPE OF LICENSE | ADDRESS OF LICENSOR | LICENSED TERRITORY/LOCATION |
|---|---|---|---|
| NONE | | | |
| NONE | | | |
| NONE | | | |

Plan Exhibit 2-3(a) / Disclosure Statement Exhibit D-3(a)

Big Dog USA, Inc.
Schedule of Rejected Contracts and Leases

Non-Residential Real Estate Leases

| Store # | Location | City | Tenant | Landlord | Address | Lease Start Date | Lease Term Date |
|---------|----------|------|--------|----------|---------|------------------|-----------------|
| 459 | Atlantic City NJ* | Baltimore | Big Dog | Atlantic City Assoc TWO LLC | 601 East Pratt Street 6th Floor, Baltimore, MD 21202 | 03/01/07 | 02/28/14 |
| 253 | Birch Run* | Baltimore | Big Dog | Birch Run Outlets II, LLC | 217 East Redwood St. 20th Floor, Baltimore, MD 21202 | 01/25/95 | 01/03/09 |
| 235 | Grove City* | Baltimore | Big Dog | Grove City Factory Shops Partnership | 217 East Redwood St. 20th Floor, Baltimore, MD 21202 | 01/13/94 | 08/31/09 |
| 275 | Gulfport* | Baltimore | Big Dog | Gulfport Factory Shops Limited Partnership | 217 East Redwood St. 20th Floor, Baltimore, MD 21202 | 01/13/95 | 01/04/09 |
| 431 | Long Beach* | Phoenix | Big Dog | Long Beach Town Center, LP | 2425 East Camelback Road, P.O. Box 16281, Suite 750, Phoenix AZ, 85011 | 12/01/06 | 12/31/09 |
| 400 | Jeffersonville* | Baltimore | Big Dog | Ohio Factory Shops | 217 East Redwood St. 20th Floor, Baltimore, MD 21202 | 08/04/99 | 09/30/09 |
| 238 | Ellenton* | Baltimore | Big Dog | Prime | 100 East Pratt Street, 19th Floor, Baltimore, MD 21202 | 07/14/94 | 07/31/09 |
| 384 | Hagerstown* | Baltimore | Big Dog | Prime | 100 East Pratt Street, 19th Floor, Baltimore, MD 21202 | 10/09/98 | 01/10/09 |
| 369 | Lebanon* | Baltimore | Big Dog | Prime | 100 East Pratt Street, 19th Floor, Baltimore, MD 21202 | 08/11/98 | 01/05/09 |
| 202 | Prime Outlets at Huntley* | Baltimore | Big Dog | Prime | 100 East Pratt Street, 19th Floor, Baltimore, MD 21202 | 09/01/94 | 08/31/06 |
| 460 | 5715 Richmond Road #62A | Williamsburg | Big Dogs | Williamsburg Outlets LLC | 217 East Redwood Street, 20th Floor, Baltimore, MD 21202 | 03/20/07 | 12/31/09 |
| 265 | 333 Five Cities Drive #113 | Pismo Beach | Big Dogs | Prime Outlets at Pismo Beach, LLC | 217 East Redwood Street, 20th Floor, Baltimore, MD 21202 | 07/01/05 | 12/31/09 |
| 257 | Queenstown* | Baltimore | Big Dog | Second Horizon Group LP | 217 East Redwood St. 20th Floor, Baltimore, MD 21202 | 04/01/95 | 03/31/11 |

*Rejected as of 12/7/2009 per
1/21/2010 court order.

102

Plan Exhibit 2-3(b) / Disclosure Statement Exhibit D-3(b)

Big Dog USA, Inc.
Schedule of Rejected Contracts and Leases

Other Executory Contracts / Leases

Contracts

| NAME | VENDOR # | ADDRESS | PHONE | FAX | CONTRACT ID | DESCRIPTION OF CONTRACT | TERM START | TERM END |
|------|----------|---------|-------|-----|-------------|-------------------------|------------|----------|
| NONE | | | | | | | | |
| NONE | | | | | | | | |
| NONE | | | | | | | | |
| NONE | | | | | | | | |
| NONE | | | | | | | | |

103

Plan Exhibit 2-3(c) / Disclosure Statement Exhibit D-3(c)

**Big Dog USA, Inc.**
**Schedule of Rejected Contracts and Leases**

**Intellectual Property**

**B. Licenses Granted To Debtor**

| LICENSOR | TYPE OF LICENSE | ADDRESS OF LICENSOR | LICENSED TERRITORY/LOCATION |
|----------|-----------------|---------------------|----------------------------|
| NONE | | | |
| NONE | | | |
| NONE | | | |

104

# EXHIBIT 3

# Exhibit 3

## Certificate of Incorporation and Bylaws of the Reorganized Debtors

## - TO BE FILED ON OR BEFORE THE EXHIBIT FILING DATE -

# EXHIBIT 4

~~Richard A. Kayne~~
*Chief Executive Officer*

January 28, 2010

The Walking Company Holdings, Inc.
The Walking Company
Big Dog USA, Inc.
121 Gray Avenue
Santa Barbara, CA 93101

Gentlemen:

I understand that The Walking Company Holdings, Inc. ("Holdings"), The Walking Company and Big Dog USA, Inc. (collectively, the "Company") commenced jointly administered cases under chapter 11 of the Bankruptcy Code on December 7, 2009, and the Company intends to file with the Bankruptcy Court a chapter 11 plan of reorganization (the "Plan") that contains, among other things, the terms and conditions set forth in this Commitment Letter (as defined below) and is based on the economics reflected in Exhibit "A" hereto. A draft of the Plan is attached hereto as Exhibit "B."

Understanding the current circumstances of the Company, I am pleased to provide the Company with a binding commitment (the "Commitment") to purchase a to-be-issued new series of preferred stock from Holdings (collectively, the "Securities") on the terms and subject to the conditions set out below and on the Term Sheet attached hereto as Exhibit "C" (the "Term Sheet") to this commitment letter (including the Term Sheet, the "Commitment Letter"). The aggregate purchase price for the Securities to be purchased by me and/or my designees (collectively, the "Investors" or "Purchasers") shall be equal to $10,000,000.

I further understand that the proceeds to be received by Holdings from the issuance and sale of the Securities will be used to make payments under the Plan. Of the $10 million of such proceeds, approximately $8 million will be used to pay for the Company's reorganization costs and short-term cash requirements to emerge from bankruptcy. The $2 million remaining balance as working capital for the reorganized company.

The Purchasers' commitment to purchase the Securities shall be subject to the conditions precedent set forth in the Term Sheet.

This Commitment Letter shall constitute the entire agreement between the parties hereto with respect to the purchase and sale of the Securities, and shall supersede any prior oral or written term sheets or other agreements, commitments, undertakings, or understandings concerning the subject matter hereof.

*Kayne Anderson Capital Advisors, L.P.*
*1800 Avenue of the Stars • Second Floor • Los Angeles, California 90067*
*Tel 310 284 5574   Fax 310 284 6490*
*e-mail: rkayne@kaynecapital.com*

21834755

108

This Commitment Letter shall be governed by, and construed in accordance with, the internal laws of the State of Delaware without regard to conflicts of law or choice of law principles.

This Commitment Letter may be executed in multiple counterparts, each of which shall be deemed an original and part of one instrument, and a signature hereto sent by facsimile transmission or by pdf shall be as binding as delivery of a manually executed counterpart hereof.

This Commitment Letter may be modified or amended only by the written agreement of all of the parties hereto.

This Commitment Letter is not assignable by the Company without the prior written consent of the Investors and is intended to be solely for the benefit of the Company (and not any of its stockholders, affiliates, creditors or any other persons).

This Commitment Letter will expire at 6:00 p.m. (Pacific time) on February 1, 2010, unless accepted in writing by the Company on or before such time and, assuming this Commitment Letter has not previously expired, will thereafter expire at 6:00 p.m. (Pacific time) on (i) the Effective Date (as such term is defined in the Plan) unless definitive documentation, in form and substance reasonably satisfactory to the Investors, for the purchase and sale of the Securities is executed and delivered and all conditions precedent for the closing have been satisfied (or waived by the Investors) on or prior to such date or (ii) August 15, 2010 if the Effective Date has not occurred by such date.

[Remainder of Page Left Blank; Signatures Appear on Following Page]

If you agree to and accept the terms and conditions of this Commitment Letter, please acknowledge the same by executing this Commitment Letter in the space indicated below and returning the signed copy to us before the first expiration date described above.

Sincerely,

Richard Kayne

Agreed to and accepted by:

The Walking Company Holdings, Inc.
The Walking Company
Big Dog USA, Inc.

By:_____
    Name:
    Title:

## TERM SHEET

This term sheet (the "Term Sheet") is attached to and made a part of that certain commitment letter dated as of January 28, 2010 (the "Commitment Letter") from Richard Kayne (including his named designees, the "Investors" or "Purchasers"), to The Walking Company Holdings, Inc., The Walking Company and Big Dog USA, Inc. (collectively, the "Company"). This Term Sheet summarizes the material terms and conditions of the Securities (as defined in the Commitment Letter) to be purchased by the Investors as contemplated by the Commitment Letter. This Term Sheet is further conditioned upon satisfaction of the conditions precedent outlined herein.

| | |
|---|---|
| Issuer: | The Walking Company Holdings, Inc. |
| Investors: | Richard Kayne and/or his designees |
| Securities: | $10 million in newly issued preferred stock (the "Preferred Stock"). |
| Dividends: | Cumulative, quarterly compounding, dividends at a rate of 10% per annum. Dividends will be payable quarterly in arrears commencing three months after the Effective Date (as defined in the Commitment Letter) |
| Ranking: | Senior to all other classes and series of capital stock of the Issuer |
| Voting Rights: | The Preferred Stock shall be voting, with rights described herein . |
| Special Consent Rights: | Without the prior written consent of the Purchasers, the Issuer shall not take any of the following actions: (a) authorize or create a series or class of stock senior to or on a parity with the Preferred Stock; (b) increase or decrease the authorized number of shares of Preferred Stock, or alter the powers, preferences or rights of the Preferred Stock; (c) declare or pay any dividend or distribution on any common stock; (d) amend the charter documents of the Issuer; (e) take any other action which adversely affects the holders of the Preferred Stock disproportionately to the holders of the common stock; or (f) take action over such other matters as are customary in transactions of this type. |

| | |
|---|---|
| Liquidation Preference: | In the event of any liquidation, dissolution or winding up of the Issuer (a sale, transfer or other disposition of all or substantially all of the assets of the Issuer, or an acquisition of control of the Issuer by another person or entity, whether by merger, consolidation, reorganization or similar transaction or otherwise, shall be treated as a liquidation for purposes of this provision), the holders of Preferred Stock will be entitled to receive in preference to the holders of common stock or any other junior stock of the Issuer an amount in cash equal to $10 million (the "Original Purchase Price"), plus cumulative but unpaid dividends. After payment to the Preferred Stock, the balance, if any, will be paid pro-rata to the holders of the common stock. |
| Conversion: | The Preferred Stock shall be non-convertible. |
| Mandatory Redemption: | The Preferred Stock shall be redeemed in full or in part to the extent of proceeds paid by investors from the Rights Offering. |
| Registration Rights of Preferred Stock: | None. |
| Rights Offering: | The Issuer will use its reasonable commercial efforts to consummate a $10 million rights offering of shares of its common stock (with oversubscription rights) as promptly as reasonably practicable, with a closing to take place no later than January 31, 2011 (the "Rights Offering"). To the extent holders of common stock subscribe for and purchase shares of the Issuer's common stock in the Rights Offering, the net cash proceeds thereof will be used to redeem the Preferred Stock at a price equal to the Original Purchase Price plus cumulative but unpaid dividends. Assuming the successful completion of the entire Rights Offering, after the closing of the Rights Offering, holders of the common stock issued in the Rights Offering will own 90% of the outstanding equity in the Issuer, as reorganized under the Plan. The common stock issued in the Rights Offering will be unregistered and will not have any registration rights. |
| Board Representation: | If the Issuer fails to complete the Rights Offering on or prior to January 31, 2011, pursuant to which the Issuer receives at least $6 million of gross proceeds, the Purchasers shall be entitled to designate, appoint and vote for a majority of the authorized number of directors of the Issuer. At the closing, the Issuer and its stockholders will enter into a voting agreement, in form and substance satisfactory to the Purchasers, with respect to such matters. |

| Conditions Precedent to Closing: | The purchase of the Preferred Stock is subject to the following conditions precedent: |
|---|---|

(i) satisfaction of each of the terms and conditions set forth in the Commitment Letter and the Plan;

(ii) the negotiation, execution and delivery of definitive documentation, in form and substance reasonably satisfactory to the Investors, for the purchase and sale of the Securities that is consistent with the Term Sheet;

(iii) the effectiveness of a Plan that is consistent in all material respects with the economics of Schedule A and includes no material modifications of the Plan terms as attached, and will include approval of the issuance of the Securities; and

(iv) no change, event, occurrence, effect or development shall have occurred after the date of this Commitment Letter that, individually or in the aggregate, has had, or would reasonably be expected to have, a material adverse effect on the business, assets, liabilities, results of operations, condition (financial or otherwise) or prospects of the Issuer taken as a whole

| Net Operating Losses: | The parties hereto agree that certain terms of the Preferred Stock and the Rights Offering may need to be revised in order to preserve the Issuer's ability to fully utilize its net operating losses ("NOLs") and other tax benefits. Each of the parties agrees to work to create a mutually advantageous tax structure. |
|---|---|
| Transaction Fees: | The Issuer will pay all reasonable costs and expenses incurred by or on behalf of Investors associated with the Commitment Letter, the preparation and negotiation of definitive documentation and the closing of the transactions contemplated hereby and by the definitive documentation. |
| Covenants: | Usual and customary affirmative and negative covenants for transactions of this type, including that the proceeds of the issuance of the Securities are used as described in the Commitment Letter. |

| | |
|---|---|
| Representations and Warranties: | Usual and customary for transactions of this type, including without limitation, corporate existence and good standing, corporate power and authority, due authorization, no conflict with material agreements, and enforceability. |
| Advisory Fee: | $2.5 million payable in cash to the Investors upon the earliest to occur of (1) the closing of the Rights Offering; (ii) a liquidation, dissolution or winding up of the Issuer as contemplated under the "Liquidation Preference" above; and (iii) January 31, 2011. |
| Governing Law: | Delaware |

<table>
<tr>
<td>In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s).</td>
<td>CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR]</td>
</tr>
</table>

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: Arent Fox, LLP, 555 West Fifth Street, 48th Floor, Los Angeles, CA  90013-1065

A true and correct copy of the foregoing document described as **DEBTORS' SECOND AMENDED JOINT CHAPTER 11 PLAN (DATED MARCH 9, 2010)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 19, 2010** checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **March 19, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March    , 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 19, 2010 | Adriane Lark Madkin | /s/ Adriane Lark Madkin |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
|---|---|

## I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Craig H Averch on behalf of Creditor The Ad Hoc Committee of The Walking Company Holdings, Inc.
Noteholders
caverch@whitecase.com

Lawrence Bass on behalf of Interested Party Gart Capital Partners
lbass@faegre.com

William C Beall on behalf of Interested Party Courtesy NEF
artyc@aol.com

Shirley Cho on behalf of Creditor Committee Official Committee Of Unsecured Creditors
scho@pszjlaw.com

Emily R Culler on behalf of Interested Party Genesco, Inc.
eculler@omm.com

Lawrence A Diamant on behalf of Interested Party Kahala Mall
lad@lnbrb.com, katie@lnbrb.com

Denise Diaz on behalf of Debtor The Walking Company Holdings, Inc.
Denise.Diaz@rmsna.com

Robert K Edmunds on behalf of Interested Party Huntington National Bank
robert.edmunds@bipc.com, timothy.palmer@bipc.com;jacqueline.forjais@bipc.com

Belkys Escobar on behalf of Creditor County of Loudoun
belkys.escobar@loudoun.gov

Brian D Fittipaldi on behalf of U.S. Trustee United States Trustee (ND)
brian.fittipaldi@usdoj.gov

Todd R Gabriel on behalf of Creditor Seaport Village Operating Company
tgabriel@sparberlaw.com

Brian D Huben on behalf of Creditor Crossgates Mall Company NewCo, LLC
brian.huben@kattenlaw.com,
carole.levine@kattenlaw.com;donna.carolo@kattenlaw.com;laura.nefsky@kattenlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                   F 9013-3.1

In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,

Debtor(s).

CHAPTER: 11

CASE NUMBER: 9:09-bk-15138-RR
[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR]

William W Huckins on behalf of Creditor Federal Realty Investment Trust
whuckins@allenmatkins.com, clynch@allenmatkins.com

Nathan E Jones on behalf of Creditor US Debt Recovery III, LP
info@usdrllc.com

Steven G Polard on behalf of Creditor Bellevue Square LLC
spolard@perkinscoie.com

David L Pollack on behalf of Creditor Galleria Mall Investors, LP
pollack@ballardspahr.com

Hamid R Rafatjoo on behalf of Creditor Committee Official Committee Of Unsecured Creditors
hrafatjoo@pszjlaw.com, hrafatjoo@pszjlaw.com

Diane W Sanders on behalf of Creditor San Marcos CISD
austin.bankruptcy@publicans.com

David B Shemano on behalf of Interested Party Courtesy NEF
dshemano@pwkllp.com

Howard Steinberg on behalf of Creditor Richard A. Kayne, Trustee, Richard & Suzanne Kayne Living Trust dated 1/14/99
hsteinberg@irell.com, awsmith@irell.com

Wayne R Terry on behalf of Creditor Request for Courtesy NEF
wterry@hemar-rousso.com

Ronald M Tucker on behalf of Creditor Simon Property Group, Inc.
rtucker@simon.com, psummers@simon.com;rwoodruff@simon.com;shclark@simon.com

United States Trustee (ND)
ustpregion16.nd.ecf@usdoj.gov

Kimberly S Winick on behalf of Creditor South Coast Plaza
kwinick@clarktrev.com

Rebecca J Winthrop on behalf of Interested Party Kravco Simon Company
winthropr@ballardspahr.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_January 2009_

**F 9013-3.1**

| | |
|---|---|
| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

## II.  SERVED BY U.S. MAIL OR OVERNIGHT:

### VIA OVERNIGHT DELIVERY

Honorable Robin Riblet
United States Bankruptcy Court
1415 State Street, Suite 103
Santa Barbara, California 93101-2511

### VIA U.S. MAIL

Dennis Strayhan
Office of the United States Trustee
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

Brian Fittipaldi
Office of the United States Trustee
128 E. Carrillo Street
Santa Barbara, CA 93101

Steven B. Levine, Esq.
Brown & Rudnick, LLP
One Financial Center
Boston, MA  02111

U.S. Securities and Exchange Commission
Los Angeles Regional Office
Rosalind Tyson, Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, CA  90036-3648

U.S. Securities and Exchange Commission
SEC Headquarters
100 F Street, NE
Washington, DC  20549

Howard Steinberg, Esq.
Jeff Sklar, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067

Hamid R. Rafatjoo, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., Suite 1100
Los Angeles, CA  90067

Craig Averch
White & Case LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA  90071-2007

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                               **F 9021-1.1**