# Exhibit A

# SPARBER ANNEN MORRIS & GABRIEL

## A PROFESSIONAL LAW CORPORATION · FOUNDED 1974

RICHARD E. SPARBER
RICHARD J. ANNEN*
MELVIN E. MORRIS
TODD R. GABRIEL
MICHAEL W. JACOBS
———
*MICHIGAN
E-Mail: tgabriel@sparberlaw.com

701 "B" STREET, SUITE 1400
SAN DIEGO, CALIFORNIA 92101-8164
(619) 239-3600 TEL
(619) 239-5601 FAX
WEBSITE: WWW.SPARBERLAW.COM

L. MAXWELL ANASTOPULOS, P.C.*
OF COUNSEL

*CERTIFIED SPECIALIST
TAXATION LAW
THE STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

April 1, 2010

*Sent by Overnite Express*
Mette H. Kurth, Esq.
Andy S. Kong, Esq.
M. Douglas Flahaut, Esq.
ARENT FOX, LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065

Re:    *In re Walking Company*; USBC Case No. 9:09-bk-15138-RR
[Jointly Administered with Case Nos. 9:09-bk-15137 and 9:09-bk-15139-RR]

Dear Counsel:

Our offices represent creditor Seaport Village Operating Company, LLC (Landlord). The Landlord leases commercial space to Big Dog USA, Inc., which is designated as Store No. BD323 on Big Dog USA, Inc.'s Schedule of Assumed Contracts and Leases—Non-Residential Real Estate Leases. A copy of the schedule is attached.

We are contacting you about the $13,066.01 cure amount that Big Dog USA, Inc., has listed in schedules. As you are aware, as part of the assumption process, landlords are entitled to a cure of all existing defaults. 11 USC § 365(b)(1). According to the Landlord's records, the cure amount listed by Big Dogs, Inc., is insufficient.

In conjunction with its duty, the Debtors must compensate the landlord for any actual pecuniary loss, including the payment of attorneys' fees. *See* 11 U.S.C. § 365(b)(1)(B). Attorneys' fees payable pursuant to the Lease are compensable. *Andrew v. KMR Corp.*, 17 B.R. 438, 439 (Bankr. 9th Cir. 1982); *In re Westworld Community Healthcare, Inc.*, (Bankr. CD Cal. 1989) 95 B.R. 730 *see also Track Auto Corp.*, 277 B.R. 655 (Bankr. E.D.Va. 2002, aff'd., 288 B.R. 114 (E.D. Va. 2003), rev'd. on other grounds, 317 F.3d 277 (4th Cir. 2004); *see also In re Shangri-La*, 167 F.3d 843 (4th Cir. 1999). *LJC Corp. v. Boyle*, 768 F.2d 1489, 1494-6 (D.C. Cir. 1985); *In re BAB Enterprises, Inc.*, 100 B.R. 982 (Bankr. W.D. Tenn. 1989); *In re Westview 74 Street Drug Corp.*, 59 B.R. 747, 752-4 (Bankr. S.D.N.Y.

Mette H. Kurth, Esq.
Andy S. Kong, Esq.
M. Douglas Flahaut, Esq.
April 1, 2010
Page 2

1986); *In Re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 321 (Bankr. S.D.N.Y. 1986). Accordingly, as part of its pecuniary loss and cure amount, Seaport Village Operating Company, LLC, is entitled to attorneys' fees in connection with the Debtors' obligation to cure all monetary defaults under the Lease.

As of the date hereof, the approximate amount outstanding under the Lease including unpaid rent, late charges, common area maintenance, taxes and insurance to date, is $16,311.49, as set forth in the attached Proof of Claim with supporting documentation, a copy of which is attached. Also, the Proof of Claim lists the attorneys' fees that had been incurred as of February 25, 2010. Additional fees have been incurred since that date, and the current amount is now $4,671.89. Therefore, the current cure amount is $20,983.38

The deadline to file an objection is April 9, 2010. The Landlord would like to avoid having to file an objection and requests the you confirm that the cure amount will be corrected to include these charges.

Please let me know if you have any questions.

Sincerely,

SPARBER ANNEN MORRIS & GABRIEL, APLC

Todd R. Gabriel

TRG:lge
Enclosures
4883-156/251016.1

Mette H. Kurth (SBN 187100)
Andy S. Kong (SBN 243933)
M. Douglas Flahaut (SBN 245558)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:   213.629.7400
Facsimile:   213.629.7401
E-mail:      kurth.mette@arentfox.com
             kong.andy@arentfox.com
             flahaut.douglas@arentfox.com

*Proposed* Attorneys for Debtors and Debtors in Possession

Debtors' Mailing Address
121 Gray Avenue
Santa Barbara, CA 93101

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA BARBARA DIVISION

| | |
|---|---|
| In re:<br><br>**THE WALKING COMPANY**, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; **BIG DOG USA, INC.**, a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and **THE WALKING COMPANY HOLDINGS, INC.**, a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>                   Debtors.<br><br>[x] Affects all Debtors<br><br>[ ] Applies only to The Walking Company<br><br>[ ] Applies only to Big Dog USA, Inc.<br><br>[ ] Applies only to The Walking Company Holdings, Inc. | Case No. 09-15137, 09-15138, and 09-15139<br><br>Jointly Administered under Case No. 09-15138<br><br>Chapter 11<br><br>**DEBTORS' SECOND AMENDED JOINT CHAPTER 11 PLAN (DATED MARCH 9, 2010)**<br><br>**Disclosure Statement Hearing**<br><br>DATE:    March 12, 2010<br>TIME:    1:00 p.m.<br>PLACE:    1415 State Street<br>               Santa Barbara, CA 93101<br><br>**Confirmation Hearing**<br><br>DATE:    April 23, 2010<br>TIME:    1:00 p.m.<br>PLACE:    1415 State Street<br>               Santa Barbara, CA 93101 |

LA/248491.1

Plan Exhibit 1-3(a) / Disclosure Statement Exhibit K-3(a)

Big Dog USA, Inc.
Schedule of Assumed Contracts and Leases

Non-Residential Real Estate Leases

| Store # | Location | City | Tenant | Landlord | Address | Lease Start Date | Lease Term Date | Proof of Claim Amount | Obligation Current | Cure Amount | Terms |
|---|---|---|---|---|---|---|---|---|---|---|---|
| B0231 | 10406 US Highway 98 W Space 32 | Miramar Beach | Big Dogs | Silver Sands Joint Venture Partners | 600 Grand Boulevard, Suite 100, Destin, FL 32550 | 05/10/02 | 05/31/12 | | | $ 18,523.38 | |
| B0254 | 2654 Teaster Lane | Pigeon Forge | Big Dogs | Pigeon Forge Associates | 530 Oak Court Drive, Suite 300, Memphis, TN 38117 | 04/01/05 | 01/06/10 | | | $ 6,551.19 | |
| B0277 | 138 Opry Mills Drive | Nashville | Big Dogs | Opry Mills LP | 1500 Wilson Boulevard, Suite 400, Arlington, VA 22209 | 06/01/05 | 05/31/10 | | | $ 2,328.00 | |
| B0306 | 1454 State Route 9 | Lake George | Big Dogs | Adirondack Factory Outlet Center, Inc. | 1454 State Route 9, Lake George, NY 12845 | 01/01/08 | 09/30/09 | | | $ 5,557.60 | |
| B0323 | 849 W Harbor Drive Suite A | San Diego | Big Dogs | San Diego Seaport Village Inc. | 3200 Wailea Alanui, #1406, Wailea, Maui, HI 96753 | 10/01/06 | 09/30/11 | | | $ 13,096.01 | |
| B0445 | 2850 Parkway #5 | Pigeon Forge | Big Dogs | GMAC Commercial Mortgage / Pigeon Forge Factory Outlet Mall | 2100 21st Ave South, Suite 309, Nashville, TN 37212 | 03/01/05 | 12/31/09 | | | $ 12,232.93 | |

Case 9:09-bk-15138-RR   Doc 373-3   Filed 04/08/10   Entered 04/08/10 15:59:29   Desc
Exhibit A to Todd Gabriel Declaration   Page 6 of 21
Case 9:09-bk-15138-RR   Claim 101   Filed 02/26/10   Desc Main Document   Page 1 of
3

B10 (Official Form 10) (12/08)

| United States Bankruptcy Court - Central District of California | PROOF OF CLAIM |
|---|---|

| | |
|---|---|
| **Name of Debtor:**<br>THE WALKING COMPANY | **Case Number:**<br>09-16138-RR |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| **Name of Creditor** (The person or other entity to whom the debtor owes money or property):<br>SEAPORT VILLAGE OPERATING COMPANY, LLC | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| **Name and address where notices should be sent:**<br>Attn: Terry B. Hall, CPM<br>849 West Harbor Drive, Suite D<br>San Diego, CA 92101<br><br>Telephone number: (619) 235-4014 | **Court Claim Number:** _____<br>(If known)<br><br>**Filed on:** _____ |
| **Name and address where payment should be sent (if different from above):**<br><br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:** $16,830.68<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>■ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)<br><br>☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4). |
| **2. Basis for Claim:** Real Property Lease and License Agreements; See Exhibit A attached<br>(See instruction #2 on reverse side.) | ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). |
| **3. Last four digits of any number by which creditor identifies debtor:** _____<br><br>   **3a. Debtor may have scheduled account as:** _____<br>   (See instruction #3a on reverse side.) | ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7). |
| **4. Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other<br>Describe:<br><br>**Value of Property:** $_____ **Annual Interest Rate** _____<br><br>**Amount of arrearage and other charges as of time case filed included in secured claim, if any** $_____ **Basis for perfection:** _____<br><br>**Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____ | ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br><br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(_____).<br><br>**Amount entitled to priority:**<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | **FOR COURT USE ONLY** |
| **Date:**<br><br>2·25·10 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>_signature_ Terry B. Hall, CPM, General Manager |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Case 9:09-bk-15138-RR    Doc 373-3    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
Exhibit A to Todd Gabriel Declaration    Page 7 of 21
Case 9:09-bk-15138-RR    Claim 101    Filed 02/26/10    Desc Main Document    Page 2 of
3

B10 (Official Form 10) (12/08) - Page 2

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### ITEMS TO BE COMPLETED IN PROOF OF CLAIM FORM

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).** If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

Case 9:09-bk-15138-RR    Doc 373-3    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
Exhibit A to Todd Gabriel Declaration    Page 8 of 21
Case 9:09-bk-15138-RR    Claim 101    Filed 02/26/10    Desc Main Document    Page 3 of
3

## ATTACHMENT TO PROOF OF CLAIM

In re The Walking Company
United States Bankruptcy Court
Central District of California, Santa Barbara Division
Case No. 09-15138-RR
Creditor: Seaport Village Operating Company, LLC

Leased Property: At Seaport Village, San Diego, California: (1) 849 West Harbor Drive, Suite A (Retail); (2) 219 sq. ft. Upstairs in Bldg. W-6-4 (Storage I), 853 W. Harbor Drive; (3) 20 sq. ft. Upstairs in Bldg. W-6 (Storage II, Container A), 853 W. Harbor Drive; 20 sq. ft. Upstairs in Bldg. W-6 (Storage II, Container A), 853 W. Harbor Drive,  San Diego, CA, 92101[1]

| | |
|---|---|
| Balance due as of 12/6/09 Petition Date | $15,830.98[2] |
| Balance due for 12/7/09-12/31/09 Post-Petition Rent | $    480.51[3] |
| SUBTOTAL | $16,311.49 |
| Post-Petition attorney's fees and costs | $ 2,933.26[4] |

---

[1]A copy of the Lease and Amendments of Lease are collectively attached hereto as Exhibit "A

[2]A copy of the CM Receivables Ledger is attached hereto as Exhibit "B"

[3]The monthly charges are reflected on Exhibit "B"

[4]Post-petition attorney's fees and costs continue to be incurred.

250577.2

# Exhibit A

SAN DIEGO SEAPORT VILLAGE

LEASE AGREEMENT

Between

SAN DIEGO SEAPORT VILLAGE, LTD.

and

Big Dog USA, Inc.
a California Corporation

dba

Big Dog Sportswear

Dated: _____9/20/96_____

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARTICLE 1 - BASIC LEASE TERMS | | 1 |
| ARTICLE 2 - PARTIES | | 3 |
| 2.1 | Parties | 3 |
| ARTICLE 3 - SHOPPING CENTER AND PREMISES | | 3 |
| 3.1 | Shopping Center | 3 |
| 3.2 | Premises | 3 |
| 3.3 | Floor Area | 3 |
| 3.4 | Relocation | 4 |
| ARTICLE 4 - TERM | | 5 |
| 4.1 | Term | 5 |
| 4.2 | Delivery | 5 |
| 4.3 | Surrender of Premises; No Holding Over | 5 |
| ARTICLE 5 - RENT | | 5 |
| 5.1 | Minimum Annual Rent | 5 |
| 5.2 | Cost of Living Increase | 5 |
| 5.3 | Percentage Rent | 6 |
| 5.4 | Statement of Gross Sales | 6 |
| 5.5 | Definition of Gross Sales | 7 |
| 5.6 | Taxes | 8 |
| 5.7 | Additional Rent | 9 |
| 5.8 | Failure to Pay Items Required Under Article 5 | 9 |
| 5.9 | Address for Payments | 9 |
| 5.10 | Returned Checks | 9 |
| 5.11 | Landlord's Option to Terminate | 10 |
| ARTICLE 6 - CONSTRUCTION OF IMPROVEMENTS | | 10 |
| 6.1 | Building Construction | 10 |
| 6.2 | Improvement Construction | 10 |
| 6.3 | Condition of Premises | 10 |
| 6.4 | Delivery of Possession for Tenant's Work | 10 |
| ARTICLE 7 - POSSESSION AND USE | | 10 |
| 7.1 | Permitted Uses | 10 |
| ARTICLE 8 - UTILITIES SERVICES | | 11 |
| 8.1 | Tenant's Responsibilities | 11 |
| ARTICLE 9 - INDEMNITY-INSURANCE-WAIVER OF SUBROGATION | | 11 |
| 9.1 | Indemnity by Tenant | 11 |
| 9.2 | Release and Waiver of Subrogation | 11 |
| 9.3 | Tenant's Insurance Obligations | 11 |
| 9.4 | Landlord's Insurance | 12 |
| 9.5 | Insurance Use Restrictions | 13 |
| 9.6 | Increases in Insurance Coverage | 13 |
| ARTICLE 10 - MASTER LEASE | | 13 |
| 10.1 | Subject to Master Lease | 13 |
| ARTICLE 11 - ALTERATIONS BY TENANT | | 14 |
| 11.1 | Alterations | 14 |
| 11.2 | Insurance for Permitted Alterations | 14 |
| ARTICLE 12 - MECHANIC'S LIENS | | 14 |
| 12.1 | Tenant's Covenants | 14 |
| 12.2 | Contest of Lien | 14 |
| 12.3 | Right to Cure | 15 |
| 12.4 | Notice of Lien | 15 |
| 12.5 | Notice of Nonresponsibility | 15 |

ARTICLE 13 - SIGNS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
  13.1 Restrictions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
  13.2 Landlord's Authority and Responsibility . . . . . . . . . . . . 15
  13.3 Removal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
  13.4 Sign Criteria . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ARTICLE 14 - TRADE FIXTURES, PERSONAL
PROPERTY AND IMPROVEMENTS . . . . . . . . . . . . . . . . . . . . . . 16
  14.1 Trade Fixtures and Personal Property . . . . . . . . . . . . . 16
  14.2 Improvements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
  14.3 Personal Property Taxes and Assessments . . . . . . . . . 16
  14.4 Removal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARTICLE 15 - ASSIGNING, MORTGAGING, SUBLETTING,
CHANGE IN OWNERSHIP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
  15.1 Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
  15.2 First Two Years . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
  15.3 Remaining Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
  15.4 Procedures For Obtaining Landlord's and Port District's Consent . . 18
  15.5 Port District's Consent Required . . . . . . . . . . . . . . . . . 18
  15.6 Documentation and Expenses . . . . . . . . . . . . . . . . . . . 18
  15.7 Consideration to Landlord . . . . . . . . . . . . . . . . . . . . . . 18
  15.8 Right of Refusal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
  15.9 No Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
  15.10 Consent To Approved Third Parties . . . . . . . . . . . . . . 20

ARTICLE 16 - TENANT'S CONDUCT OF BUSINESS . . . . . . . . . 20
  16.1 Operating Covenants; Days and Hours . . . . . . . . . . . . 20
  16.2 New Locations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
  16.3 Quality of Operation . . . . . . . . . . . . . . . . . . . . . . . . . . 21
  16.4 Rules and Regulations . . . . . . . . . . . . . . . . . . . . . . . . 22

ARTICLE 17 - REPAIRS AND MAINTENANCE . . . . . . . . . . . . . 22
  17.1 Tenant's Obligations . . . . . . . . . . . . . . . . . . . . . . . . . 22
  17.2 Landlord's Obligations . . . . . . . . . . . . . . . . . . . . . . . . 23

ARTICLE 18 - DAMAGE OR DESTRUCTION . . . . . . . . . . . . . . 23
  18.1 Reconstruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
  18.2 Election to Terminate . . . . . . . . . . . . . . . . . . . . . . . . . 24
  18.3 No Abatement of Rent . . . . . . . . . . . . . . . . . . . . . . . . 24
  18.4 Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

ARTICLE 19 - COMMON AREA . . . . . . . . . . . . . . . . . . . . . . . . . 24
  19.1 Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
  19.2 Use Of Common Area . . . . . . . . . . . . . . . . . . . . . . . . 24
  19.3 Operating Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . 25
  19.4 Method of Payment . . . . . . . . . . . . . . . . . . . . . . . . . . 26
  19.5 Landlord's Rights to Determine Common Area . . . . . . . 27
  19.6 Release of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
  19.7 Charged Parking; Validation . . . . . . . . . . . . . . . . . . . . 27
  19.8 Control of Common Area . . . . . . . . . . . . . . . . . . . . . . 28

ARTICLE 20 - BANKRUPTCY - INSOLVENCY . . . . . . . . . . . . . 28
  20.1 Right of Termination . . . . . . . . . . . . . . . . . . . . . . . . . 28
  20.2 Assumption and Assignment . . . . . . . . . . . . . . . . . . . 28
ARTICLE 21 - DEFAULT BY TENANT . . . . . . . . . . . . . . . . . . . . 29
  21.1 Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
  21.2 Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
  21.3 Landlord's Rights and Remedies . . . . . . . . . . . . . . . . . 30
  21.4 Landlord's Damages . . . . . . . . . . . . . . . . . . . . . . . . . 30
  21.5 Fixtures and Personal Property . . . . . . . . . . . . . . . . . . 31
  21.6 No Limitation of Remedies . . . . . . . . . . . . . . . . . . . . . 31
  21.7 No Landlord Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . 31
  21.8 Tenant's Waivers . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
  21.9 Chronic Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
  21.10 Late Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

21.11 Performance By Landlord ................................................
21.12 Landlord's Damages For Rejection In Bankruptcy .................... 32
                                                                              32

ARTICLE 22 - DEFAULT BY LANDLORD .......................................
22.1 Landlord's Default; No Right of Termination .......................... 33
22.2 Limitation ........................................................... 33
22.3 Notice to Mortgagees ............................................... 33
                                                                              33

ARTICLE 23 - EMINENT DOMAIN ............................................
23.1 Taking Resulting in Termination .................................... 33
23.2 Award ............................................................... 33
23.3 Partial Taking ....................................................... 33
23.4 Transfer Under Threat of Taking .................................... 34
                                                                              34

ARTICLE 24 - ATTORNEYS' FEES .............................................
24.1 Attorney's Fees ..................................................... 34
24.2 Survival of Obligations ............................................. 34
                                                                              34

ARTICLE 25 - SALE OF PREMISES BY LANDLORD ......................... 34
25.1 Release of Landlord ................................................ 34

ARTICLE 26 - SUBORDINATION, ATTORNMENT ..........................
26.1 Subordination ...................................................... 35
26.2 Attornment ......................................................... 35
26.3 Lease Subject to Restrictions ...................................... 35
26.4 Estoppel Certificate ............................................... 35
26.5 Tenant Defined ..................................................... 35
26.6 Tenant's Financial Statements ..................................... 35
                                                                              35

ARTICLE 27 - QUIET POSSESSION .......................................... 36
27.1 Quiet Possession ................................................... 36
ARTICLE 28 - MARKETING FUND ........................................... 36
28.1 Tenant's Contribution; Purposes ................................... 36
28.2 Grand Re-Openings ................................................ 36
28.3 Landlord's Right to Change Marketing Fund Format ............... 36
28.4 Late Charge ........................................................ 37
28.5 Annual Adjustment ................................................ 37
28.6 No Interest in Fund ................................................ 37
28.7 Tenant Advertising ................................................. 37
                                                                              37

ARTICLE 29 - CAPTIONS AND TERMS; PARTIES; NOTICES ..............
29.1 Reference Only ..................................................... 38
29.2 Parties ............................................................. 38
29.3 Notices ............................................................. 38
                                                                              38

ARTICLE 30 - OBLIGATIONS OF SUCCESSORS ......................... 38
30.1 Construction; Successors .......................................... 38

ARTICLE 31 - CONSENTS AND APPROVALS .............................
31.1 Consents Required ................................................. 38
31.2 Reimbursement to Landlord ....................................... 38
                                                                              39

ARTICLE 32 - SECURITY DEPOSIT ........................................
32.1 Security Deposit .................................................... 39
32.2 Use and Restoration ............................................... 39
32.3 Bankruptcy ......................................................... 39
32.4 Transfer of Security Deposit ....................................... 39
                                                                              39

ARTICLE 33 - ENVIRONMENTAL MATTERS .............................
33.1 No Use of Hazardous Materials .................................... 39
33.2 Compliance with Environmental Laws ............................. 39
33.3 Notices ............................................................. 39
33.4 Release of Liability ................................................ 40
33.5 Indemnification .................................................... 40
33.6 Additional Insurance or Financial Capacity ....................... 40
                                                                              40

ARTICLE 34 - MISCELLANEOUS ............................................................. 41
34.1 Relationship of Parties; No Exclusive Right ............................. 41
34.2 Severability ....................................................................... 41
34.3 Warrant of Authority .......................................................... 41
34.4 Entire Agreement; Amendments ........................................... 41
34.5 Right to Lease .................................................................. 41
34.6 Governing Law; Forum; Construction ..................................... 41
34.7 Waiver of Consent Limitation .............................................. 41
34.8 Force Majeure .................................................................. 41
34.9 Waiver of Rights of Redemption .......................................... 41
34.10 Nondiscrimination ............................................................ 42
34.11 Cooperation With Port District ........................................... 42
34.12 Lender Requirements ....................................................... 42
34.13 Quality and Suitability of Merchandise ................................. 42
34.14 Violations by Other Tenants ............................................. 42
34.15 Subject to Port District Act .............................................. 42
34.16 No Warranties by Landlord ................................................ 42
34.17 Time Is of Essence; "Person" Defined .................................. 42
34.18 San Diego Convention and Visitors Bureau ........................... 42
34.19 No Pictorial or Other Representations of Shopping Center ......... 43
34.20 Tenant's Permissible Merchandise ....................................... 43
34.21 Exhibits ......................................................................... 43
34.22 Labor Disputes ................................................................ 43
34.23 Name of Shopping Center .................................................. 43
34.24 Catalog Sales .................................................................. 43
34.25 Landlord's Right of Entry .................................................. 43
34.26 Lease to Be Signed .......................................................... 43
34.27 No Merger ....................................................................... 44
34.28 Interest .......................................................................... 44
34.29 Remedies Cumulative ........................................................ 44
34.30 Brokers .......................................................................... 44
34.31 Assignment of Leases; Lender's Consent ............................... 44
34.32 Mutual Waiver of Right to Jury Trial .................................... 45

## INDEX OF DEFINED TERMS

Page

Additional Percentage Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 (F)

Beginning Index . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Commencement Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Common Area . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Floor Area . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Gross Sales . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Index . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Landlord . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Landlord's Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Lease . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Lease Interest Rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Master Lease . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Minimum Annual Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Occupancy Transaction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Operating Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Percentage Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Port District . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Premises . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Rules and Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Shopping Center . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tenant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tenant's Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

SAN DIEGO SEAPORT VILLAGE

LEASE AGREEMENT

ARTICLE 1

BASIC LEASE TERMS

1.1  Date:

1.2  Landlord (Section 2.1):  San Diego Seaport Village, Ltd.,
a California limited partnership

(a)    Rent Payment Address:

San Diego Seaport Village, Inc.
849 West Harbor Drive, Suite D
San Diego, California 92101

(b)    Notice Address:

San Diego Seaport Village, Inc.
c/o Don Lowry, Esq.
3200 Wailea Alanui #1406
Wailea Maui, Hawaii    96753

and to:

San Diego Seaport Village, Inc.
849 West Harbor Drive, Suite D
San Diego, California 92101

1.3  Tenant (Section 2.1):    Big Dog USA, Inc. a California Corp.

Notice Address:
To the Premises and (Section 29.3)

Robert Huebel
Sr. Vice President
121 Gray Ave
Santa Barbara, CA  93101
(805) 963-8727

1.4  Premises Location (Section 3.2):

849 W. Harbor Dr. Ste A
San Diego, CA 92101

1.5  Floor Area of Premises (Section 3.3):

919 (irregular) Sq.Ft.

1.6  Term (Section 4.1)

(a)    Commencing No Later Than:         Sept. 15, 1996

(b)    For A Term Of:                     Five (5) years

(c)    Maximum Tenant Construction Period:   --

(d)    Actual Commencement Date:          --

(e)    Expiration Date:                   Sept. 14, 2001

*Opened for Business 10/. 5/96*

20003431
Retail Sublease
C5/dm/September 17, 1996

- 1 -

INITIALS

1.7 <u>Minimum Annual Rent</u> (Section 5.1):
Yrs. 1 - 2   Fifty five thousand and no/100 dollars per annum
Yrs. 3 - 5   Sixty thousand and no/100 dollars per annum
Four thousand five hundred eighty three and 34/100 dollars ($4,583.34) (one months
minimum rent) is payable upon execution of this lease.
Each year is payable in twelve equal monthly installments

1.8 <u>Percentage Rent</u> (Section 5.3):

Ten (10%) per month payable as follows:
Yrs. 1-2, Ten (10%) percent in excess of $555,000 per annum paid monthly
Yrs. 3-5, Ten (10%) percent in excess of $600,000 per annum paid monthly

1.9 <u>Security Deposit</u> (Section 32.1):

1.10 <u>Use</u> (Section 7.1):

See Exhibit B

1.11 <u>Trade Name</u> (Section 7 and Exhibit B):

Big Dog Sportswear

1.12 <u>Marketing Fund Contribution</u> (Section 28.1):

Two thousand two hundred five and 60/100 dollars per annum payable in twelve equal
monthly installments vs. 1.5% of sales, not to exceed $15,000 per annum

1.13 <u>Contents</u>:  This Lease consists of the following:

Pages 1-45

Sections 1.1 - 34.32

Exhibit A-1:  Site Plan (Existing)

Exhibit B:   Description of Premises, Authorized Uses and Trade Name

Exhibit C:   Construction Obligations

Exhibit D:   Form of Guaranty of Lease

Exhibit E:   Form of Estoppel Certificate

Exhibit F:   Rules and Regulations

References in this Article 1 to other articles are for convenience and designate some
of the other articles where references to the foregoing basic lease terms appear.  Each reference
in this Lease to any of the basic lease terms contained in this Article 1 shall be construed to
incorporate all of the terms provided under each such basic lease term.  In the event of any conflict
between any basic lease term and the balance of the Lease, the latter shall control.



ARTICLE 2

PARTIES

2.1   Parties. This lease ("Lease") is dated for reference purposes only as of the date specified in Section 1.1, and is made and entered into by and between the landlord whose name is as specified in Section 1.2 ("Landlord") and the tenant whose name is as specified in Section 1.3 ("Tenant"), upon the terms and conditions hereinafter set forth.

ARTICLE 3

SHOPPING CENTER AND PREMISES

3.1   Shopping Center. As used herein, the term "Shopping Center" shall mean and refer to those areas of land and water together with structures, improvements, facilities, landscaping, waterscaping, parking, pedestrian walkways and other features located therein and thereon, as may be designated by Landlord from time to time, constituting, or which may hereafter constitute, the retail center called "San Diego Seaport Village" (or such other name as Landlord may in its sole discretion designate) in the City of San Diego, County of San Diego, State of California. Any such property, structures, improvements, facilities, landscaping, waterscaping, parking, pedestrian walkways, and other features may be reconfigured, relocated, expanded or contracted from time to time with the prior written consent of the San Diego Unified Port District ("Port District") by Landlord in Landlord's sole discretion; provided that (subject to the provisions of Section 3.4 below) Tenant's Premises shall not be changed without Tenant's prior written consent. In addition, Landlord may designate areas of land and water (including property, structures, improvements, facilities, landscaping, waterscaping, parking, pedestrian walkways and other features located thereon) not presently owned or leased by Landlord as portions of the "Shopping Center" if such areas, as a result of reciprocal easement agreements or other types of arrangements, become a part of the operations of the Shopping Center. Exhibit "A-1" attached hereto generally depicts the Shopping Center in its present configuration. Nothing depicted in Exhibit "A-1" shall be construed as any representation or warranty as to the present or future configuration of the Shopping Center or the location of any improvements or other features thereon or thereof.

3.2   Premises. Landlord hereby leases and demises unto Tenant and Tenant hereby leases and takes from Landlord, for the term, at the rental, and upon the covenants and conditions herein set forth, the space in the Shopping Center referred to herein as the "Premises," and described on Exhibit "B" attached hereto and depicted on Exhibit "A-1," subject, however, to the provisions of Section 3.4 below. The Floor Area (as defined below) of the Premises is set forth in Section 1.5, provided that the same is an approximation, and Landlord makes no representation as to the exact Floor Area. Landlord reserves the exclusive right to the use of the exterior walls, roof and exterior portions of the Premises (but not its storefront), the area beneath said Premises, and the area above said Premises. The use thereof together with the right to install, maintain, use, repair, and replace pipes, ducts, conduits, wires, utility installations and structural elements within and/or leading through the Premises serving other parts of the Shopping Center are hereby reserved unto Landlord. Such reservation in no way affects maintenance obligations imposed by this Lease.

3.3   Floor Area. As used in this Lease the term "Floor Area" means all areas available or held for the exclusive use and occupancy of occupants or future occupants of Seaport Village, including Tenant, measured from (i) the outside faces of all perimeter walls other than any party wall separating such Premises from other leasable areas; (ii) the center line of any such party wall; (iii) the outside face of any interior wall where the floor extends to an interior wall; and (iv) the building and/or lease line adjacent to any entrance to such Premises. No deduction or exclusion from Floor Area shall be made by reason of columns, ducts, stairs, elevators, escalators, shafts, or other interior construction or equipment. Floor Area shall not include upper story, basement or mezzanine space not used for sales floor purposes unless deemed to be Floor Area under the terms of the rental agreement demising such space, and a structured garage shall not be considered Floor Area. At any time after the Commencement Date, Landlord may have the Premises measured by an architect, engineer or other professional measurer and give Tenant written notice thereof. If such measurement determines that the Floor Area of the Premises differs from that specified in Section 1.5, then effective as of the Commencement Date the Minimum Annual Rent shall be proportionately adjusted, and the Floor Area of the Premises as determined by such measurement shall be deemed to be the Floor Area of the Premises for all purposes of this Lease. At any time within thirty (30) days following the Commencement Date, Tenant may, at Tenant's sole cost and expense, have the Premises measured and give written notice of the

results of such measurement to Landlord. If such measurement determines that the Floor Area of the Premises differs from that specified in Section 1.5 by more than one percent (1%) and Landlord verifies the accuracy of such measurement, then effective as of the Commencement Date the Minimum Annual Rent shall be proportionally adjusted, and the Floor Area of the Premises as determined by such measurement, as so verified by Landlord, shall be deemed to be the Floor Area of the Premises for all purposes of this Lease. If Tenant fails to give such written notice of its measurement within said thirty (30) day period following the Commencement Date, then the Floor Area of the Premises shall be conclusively deemed to be that specified in Section 1.5, subject, however, to the right of Landlord to re-measure the Premises and cause the Floor Area to be changed as provided in this Section 3.3.

3.4    Relocation.

(a)    In the event Tenant's premises are in the initial or major portion of an expansion of the Shopping Center, Landlord shall have the right (subject to the prior written consent of the Port District) at any time, upon at least ninety (90) days' written notice to Tenant, to relocate Tenant to new space in the Shopping Center (as the Shopping Center may be or may have been added to or otherwise altered), provided, that the Premises to which Tenant shall be relocated (the "New Premises") shall have the same approximate Floor Area as is being presently contained as is contained in the existing Premises. Landlord's notice shall be accompanied by a floor plan of the New Premises. The New Premises shall be leased to Tenant on the same terms and conditions as herein provided, except that in the event the Floor Area of the New Premises shall be more or less than the Floor Area contained in the existing Premises, there shall be a proportionate adjustment of the Minimum Annual Rent. The failure of Tenant to relocate its Premises in accordance with the provisions of this Lease shall constitute a default under this Lease. If such relocation is not reasonably acceptable to Tenant, Tenant may terminate this Lease on 30 days' notice, whereupon Landlord shall reimburse Tenant the unamortized costs of Tenant's leasehold improvements and trade fixtures that cannot be reused and the cost of moving.

(b)    Tenant shall submit to Landlord within thirty (30) days following the date Tenant completes renovation and opens for business in the New Premises, an affidavit signed and verified by Tenant setting forth the costs and expenses (accompanied with copies of paid receipts for each item) reasonably incurred by Tenant in connection with the relocation. Within thirty (30) days following Landlord's approval of Tenant's list of expenses, Landlord shall reimburse Tenant for such expenses provided that in no event shall Landlord's reimbursement obligations hereunder exceed the sum of $50,000.00. for expenses of relocation may include moving expenses, the unamortized cost of Tenant's leasehold improvements to the existing Premises and trade fixtures (to the extent paid for by Tenant and to the extent such leasehold improvements and trade fixtures cannot be used in the New Premises), and the sums expended by Tenant for new leasehold improvements and trade fixtures required as a result of such relocation.

(c)    Except as provided above, Landlord shall not be liable or responsible in any way for damages or injuries suffered by Tenant pursuant to a relocation in accordance with the provisions of this Section 3.4, including but not limited to, loss of good will, business or profits. Tenant agrees that all of the obligations of this Lease, including the payment of rent, shall continue throughout the period of relocating. Tenant shall, not later than the date specified in Landlord's notice, vacate and surrender the existing Premises, relocate to the New Premises, and prepare the New Premises for occupancy, all at Tenant's sole cost and expense, subject to the reimbursement provisions set forth above. Tenant agrees to open for business in the New Premises as quickly as is reasonably possible under the circumstances. Immediately following the date of relocation by Tenant, Landlord and Tenant shall execute a supplemental agreement specifying the location of the New Premises and the new Minimum Annual Rent to be paid pursuant to this Lease and Landlord shall submit to the Port District such documentation as it shall require. All additional rent payable under this Lease shall be adjusted pro rata based upon the differential, if any, in the Floor Area of the existing Premises and the New Premises, and effective the date of relocation, all additional rent charges computed with reference to the Floor Area of the existing Premises shall be based upon the Floor Area of the New Premises.



## ARTICLE 4

### TERM

4.1   Term. This Lease shall become legally binding on the parties as of the date of this Lease specified in Article 1.1.   The term of this Lease shall commence on the "Commencement Date" and shall continue for the period of time specified in Section 1.6(b), plus any partial month at the commencement of the term.   The Commencement Date shall be the earliest to occur of the following: (a) the number of days specified in Section 1.6(c) after delivery of the Premises to Tenant; (b) the date Tenant opens for business to the public; (c) the date specified in Section 1.6(a).   If Landlord for any reason cannot deliver possession of the Premises to Tenant on or before the Commencement Date, this Lease shall not be void or voidable nor shall Landlord be liable to Tenant for any damage resulting therefrom, but in that event rent shall be waived for the period between the Commencement Date and the first to occur of Section 4.1(a) or (b).   Upon determination of the actual Commencement Date, Landlord and Tenant shall enter and initial the date in Section 1.6(d) of this Lease and all duplicate originals of this Lease, and Landlord shall submit a completed copy of Section 1.6(d) to the Port District.

4.2   Delivery. "Delivery" shall mean the date that Landlord makes available to Tenant the keys to the Premises with permission to occupy.   However, Tenant shall not perform alterations to the Premises, or commence retail operations therein until the last to occur of the following:   (a) delivery to Landlord of certificates evidencing compliance with the insurance requirements imposed by this Lease; (b) compliance with the provisions of Article 6 and Exhibit "C" inclusive of obtaining Landlord's and the Port District's written approval of Tenant plans, and (c) Tenant's procuring a building permit. If the term of this Lease has not commenced within three (3) years from the date of execution hereof, it shall be automatically terminated.

4.3   Surrender of Premises; No Holding Over. Tenant agrees, at midnight on the last day of the term or on the earlier termination of this Lease, to surrender the Premises, including all improvements, alterations, additions and installations made by Tenant (or any subtenant), from time to time, which Tenant is not required or permitted to remove pursuant to the provisions of this Lease, in good order, condition and repair, reasonable wear and tear excepted.

No act or thing done by Landlord or its agents during the term hereof shall be deemed an acceptance of a surrender of the Premises, and no agreement to accept such surrender shall be valid unless in writing and signed by Landlord.

If Tenant fails to surrender the Premises upon the expiration or earlier termination of this Lease, Tenant agrees to and shall indemnify and hold Landlord harmless from any and all loss or liability, including costs and attorneys' fees, resulting from such failure to surrender the Premises, including but not limited to any claims made by, or loss of rent from, any succeeding tenant based on or resulting from such failure to surrender.   Nothing contained herein shall be construed as a consent or approval to Tenant's occupancy or possession of the Premises beyond the expiration or earlier termination of this Lease.

## ARTICLE 5

### RENT

5.1   Minimum Annual Rent. Tenant agrees to pay as rent for the use and occupancy of the Premises, at the times and in the manner hereinafter provided, the minimum annual rent specified in Section 1.7 ("Minimum Annual Rent").   The minimum annual rent shall commence to accrue when the Landlord delivers the Premises to Tenant, or when the Tenant opens for business, whichever is earlier.   The Minimum Annual Rent specified in Section 1.7 hereof shall be payable in twelve (12) equal monthly installments during each year, in advance, on the first day of each month, without set-off or deduction, commencing on the first day of the term of this Lease. Should the rent period commence on a day of the month other than the first day of such month, then the rent for the first fractional month shall be computed on a daily basis for the period from the date of commencement to the end of such calendar month in an amount equal to one-three hundred sixtieth (1/360) of the said

20033431
Retail Sublease
CS/dm/September 17, 1996

Minimum Annual Rent for each such day, and thereafter shall be computed and paid as aforesaid. Minimum Annual Rent shall never be less than the Minimum Annual Rent specified in Section 1.7 as adjusted by Section 5.2.

5.2



5.3   Percentage Rent.

(a)   Tenant shall also pay to Landlord as additional rent a sum equal to a percentage of the Gross Sales (defined below) of Tenant made from or upon the Premises during each calendar month ("Percentage Rent"). The Percentage Rent shall be computed for each calendar month immediately following the end of such month. Tenant shall pay to Landlord the amount by which the sum so computed as a percentage of Gross Sales of Tenant during said month exceeds the installment of Minimum Annual Rent which shall be payable by Tenant for such month, pursuant to Section 5.1 hereof, and Tenant shall make payments of Percentage Rent to Landlord no later than days following the end of such month. The percentage of Gross Sales herein referred to shall be the percentage specified as "Percentage Rent" in Section 1.8 hereof.

20003431
Retail Sublease
CS/dm/September 17, 1995

-6-

