Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
Exhibit A (cont) to Todd Gabriel Declaration    Page 1 of 20
Case 9:09-bk-15138-RR    Claim 101 Part 3    Filed 02/26/10    Desc Exhibit A (contd)
Page 26 of 41

2.15    Coordination of Work. Tenant's Work shall be coordinated under Landlord's direction with the work being done or to be performed by Landlord for or by other tenants in the Shopping Center so that Tenant's Work shall not interfere with or delay the completion of other construction work in the Shopping Center. The decision of Landlord or its contractor with respect to matters of coordination shall be final and conclusive.

2.16    Performance of Work. Tenant's Work shall be performed in a thoroughly first-class and workmanlike manner in conformity with Tenant's Final Approved Plans and shall be in good and usable condition at the date of completion.

(a)    Tenant shall be required to obtain and pay for all necessary permits and/or fees with respect to Tenant's Work.

(b)    Each contractor and subcontractor shall be required to obtain approval from Landlord for any space outside the Premises within the Shopping Center that such contractor or subcontractor desires to use for storage, handling, and moving of his materials and equipment, as well as for the location of any field office and/or facilities for his personnel.

(c)    The contractors and subcontractors shall be required to remove from the Premises and dispose of, at least once a week and more frequently as Landlord may direct, all debris and rubbish caused by or resulting from the construction and, upon completion of Tenant's Work, remove all temporary structures, surplus materials, debris and rubbish of whatever kind remaining in the building or within the Shopping Center that has been brought in or created by the contractors and subcontractors in the construction of Tenant's Work. If any contractor or subcontractor shall neglect, refuse or fail to remove any such debris, rubbish, surplus material or temporary structures within two (2) days after notice to Tenant from Landlord with respect thereto, Landlord may cause the same to be removed by contract otherwise as Landlord may determine expedient, and charge the cost thereof to Tenant.

(d)    Tenant's Work shall comply in all respects with the following:

(i)    The Building Code of San Diego and/or state, county, city or other laws, codes, ordinances and regulations, as each may apply according to the rulings of the controlling public official, agent or other person.

(ii)    Applicable standards of the National Board of Fire Underwriters and National Electrical Code.

(iii)    Building material manufacturer's specifications.

(e)    Tenant's contractor shall provide written notice to Landlord or Landlord's contractor of any work to be done on weekends or other than normal job hours. Tenant's Work shall not be performed out of normal job hours without the prior written consent of Landlord.

(f)    Tenant and Tenant's contractor shall comply with all applicable laws, codes, rules and regulations governing the performance of Tenant's Work, including all applicable safety regulations established by Landlord's contractor for the Shopping Center.

(g)    Tenant's contractor or subcontractors shall not post signs on any part of the Shopping Center or the Premises.

(h)    Any and all work performed by Tenant or Tenant's contractor shall be performed in a manner so as to avoid any labor dispute which results in a stoppage or impairment of work, deliveries or any other service in the Shopping Center. If there shall be any such stoppage or impairment as the result of any such labor dispute, Tenant shall immediately undertake such action as may be necessary to eliminate such dispute or potential dispute, including, without limitation, (i) removing all disputants from the job site until such time as the labor dispute no

Case 9:09-bk-15138-RR   Doc 373-6   Filed 04/08/10   Entered 04/08/10 15:59:29   Desc
Exhibit A (cont) to Todd Gabriel Declaration   Page 2 of 20
Case 9:09-bk-15138-RR   Claim 101 Part 3   Filed 02/26/10   Desc Exhibit A (contd)
Page 27 of 41

longer exists, (ii) seeking a temporary restraining order and other injunctive relief with regard to illegal union activities or a breach of contract between Tenant and Tenant's contractor, and (iii) filing appropriate unfair labor practice charges.

2.17   Utilities. Tenant shall obtain and convey to Landlord all approvals with respect to electrical, water, gas and telephone work as may be required by the respective utility company supplying the service. Tenant shall obtain utility service, including meter, from the utility supplying service, unless Landlord elects to supply service and/or meters.

2.18   Acceptance of Tenant's Work. Landlord's acceptance of Tenant's Work as being complete in accordance with Tenant's Final Approval Plans shall be subject to Landlord's inspection and written approval. Tenant shall give Landlord prior written notification of the anticipated completion date of Tenant's Work. Under no circumstances will the Tenant open for business without a "Certificate of Occupancy" from the City of San Diego.

2.19   Notice of Completion. Within ten (10) days after completion of construction of Tenant's Work, Tenant shall execute and file a Notice of Completion with respect thereto and furnish a copy thereof to Landlord upon recordation, failing which, Landlord may itself execute and file the same on behalf of Tenant as Tenant's agent for such purpose.

2.20   Expansion Joints. If an expansion joint occurs within the Premises, it is Tenant's responsibility to install finish floor covering to or covering such joint in a workmanlike manner, and Landlord shall not accept responsibility for any finish floor covering applied to or installed over the expansion joint.

2.21   Prohibited Work.

(a)   Notwithstanding anything to the contrary contained in this Lease, Tenant is hereby prohibited from doing any of the following in or about the Premises: structural work; work relating to the roofing and waterproofing systems; and all fire sprinkler and fire protection work and engineering. Any such work which is required on the Premises which is beyond the scope of work set forth in this Exhibit "C" shall be performed by Landlord, at the sole cost and expense of Tenant.

(b)   Notwithstanding anything to the contrary contained in this Lease, in the event that any work specified in Section 2.21(a) above which is beyond that described in Article 1 above is required, or if any air conditioning equipment in addition to that provided by Landlord is required, Tenant shall deliver to Landlord an amount equal to the estimated cost of such work or equipment prior to the commencement of such work or the purchase of such equipment. In the event that the cost of such work or the purchase of such equipment shall exceed the amount paid by Tenant, Tenant shall pay such deficiency to Landlord immediately upon receipt from Landlord of an invoice therefor.

2.22   Certificate of Occupancy Not Conclusive. The fact that Tenant shall have obtained a temporary Certificate of Occupancy shall not be deemed to mean that Tenant's Work was performed in accordance with this Exhibit "C." If Tenant's Work is not in conformance herewith, and such nonconformance is not cured immediately upon notice thereof to Tenant, Landlord may terminate the Lease.

3.   IMPROVEMENTS ALLOWANCE

3.1   Allowance. In the event an amount is set forth in Section 1.13 of the Lease for a Tenant improvement allowance, Landlord shall pay said sum (the "Improvements Allowance") to Tenant as partial reimbursement of Tenant's expenses in improving and/or remodeling and/or renovating the Premises. Such sum shall be paid by Landlord to Tenant not later than fifteen (15) days following the latest of the following dates:

Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
Exhibit A (cont) to Todd Gabriel Declaration    Page 3 of 20
Case 9:09-bk-15138-RR    Claim 101 Part 3    Filed 02/26/10    Desc. Exhibit A (contd).
Page 28 of 41

(a)   The date upon which all required permits or certificates of occupancy for the Premises have been issued by all applicable governmental authorities;

(b)   The date upon which Tenant has opened for business at the Premises;

(c)   The date upon which Landlord has received both of the following: (i) the certificates of Landlord's and Tenant's architects that Tenant's work has been completed in accordance with Tenant's Final Approved Plans, and (ii) unconditional lien releases or other satisfactory evidence that Tenant's Work has been completed free of all existing or potential liens or claims of liens by any contractor, subcontractor, mechanic, laborer or material supplier.

(d)   The date upon which Landlord has issued its letter of acceptance as provided in Section 2.9 above.

3.2   <u>Limitation on Improvement Allowance; Refund upon Default</u>.   Tenant acknowledges and agrees that, regardless of the actual costs incurred by Tenant in carrying out and completing Tenant's Work, Landlord's obligation to reimburse Tenant for such costs is defined and limited by the provisions of this Section 3.2, and any costs in performing Tenant's Work in excess of the amount of the Improvements Allowance shall be the sole obligation of Tenant. The Improvements Allowance shall be applied only toward the actual cost and expense of improvements that will become the property of Landlord upon the expiration or earlier termination of the Lease, and shall not be applied toward, among other things, the cost of Tenant's Removable Property (as defined in the Lease). Tenant further acknowledges and understands that Landlord has agreed to pay the Improvements Allowance in anticipation of Tenant's occupying the Premises for the full initial term and in consideration of the rents accruing to Landlord during such period. Tenant agrees that, in the event that this Lease is terminated for Tenant's breach prior to the expiration of the initial term, Landlord shall be entitled to recover from Tenant the unamortized portion of the Improvements Allowance. For purposes of this Section 3.2, the unamortized portion of the Improvements Allowance shall be equal to the amount of the Improvements Allowance reduced by an amount determined by multiplying the amount of the Improvements Allowance by a fraction, the numerator of which shall be equal to the total number of days from the Commencement Date to the date of Tenant's breach and the denominator of which shall be equal to the total number of days in the initial term.

Case 9:09-bk-15138-RR   Doc 373-6   Filed 04/08/10   Entered 04/08/10 15:59:29   Desc
              Exhibit A (cont) to Todd Gabriel Declaration   Page 4 of 20
     Case 9:09-bk-15138-RR   Claim 101 Part 3   Filed 02/26/10   Desc Exhibit A (contd)
                    Page 29 of 41

EXHIBIT "D"

GUARANTY OF LEASE

THIS GUARANTY OF LEASE (the "Guaranty") is entered into this ___ day of _____, 19___, by _____

_____
(collectively, if more than one, "Guarantor") and in favor of San Diego Seaport Village, Ltd., a California limited partnership ("Landlord"), in light of the following facts:

A. WHEREAS, Landlord has entered into, or intends to enter into, a certain lease of even date herewith executed by and between Landlord and _____ ("Tenant"), covering certain premises commonly known at the present as Seaport Village, located in San Diego, California, as the same may hereafter be amended (the "Lease"); and

B. WHEREAS, Landlord has required as a condition to its execution of the Lease that the undersigned guarantee the full performance of the obligations of Tenant under the Lease; and

C. WHEREAS, Guarantor is desirous that Landlord enter into said Lease with Tenant.

NOW, THEREFORE, for good and valuable consideration, including but not limited to the execution of the Lease by Landlord, receipt of which is hereby acknowledged by each of the undersigned, Guarantor hereby unconditionally and irrevocably agrees as follows:

1. Guarantor unconditionally guarantees to Landlord the full, complete, and timely payment and performance of each and all of the terms, covenants and conditions of the Lease and any amendments thereto required to be performed by Tenant, including but not limited to, the payment of all rent, additional rent, taxes, insurance premiums, Common Area charges, and any and all other charges or sums, or any portion thereof, to accrue or become due from Tenant to Landlord pursuant to the terms of the Lease ("Monetary Obligations").

2. If Tenant fails to pay any Monetary Obligations when due under the Lease, then, within ten (10) days following written notice to Guarantor by Landlord, Guarantor shall pay to Landlord any such Monetary Obligations as may be due and owing from Tenant to Landlord by reason of Tenant's failure so to perform.

3. If Tenant fails to perform any covenants, terms or conditions of the Lease as required to be performed, other than any Monetary Obligations ("Non-Monetary Obligations"), then, upon written notice to Guarantor by Landlord, Guarantor shall commence and complete performance of the Non-Monetary Obligations within five (5) business days after the date of Landlord's notice to Guarantor of such failure by Tenant to so perform, provided in the event the performance by Guarantor cannot be completed within five (5) business days, Guarantor shall commence performance within that time and diligently pursue completion thereof within a reasonable period of time but not to exceed thirty (30) days.

4. In addition to the payment of Monetary Obligations and the performance of any and all Non-Monetary Obligations which may be required of Guarantor by reason of Tenant's failure to perform, Guarantor hereby agrees to pay to Landlord any and all damages and expenses incurred by Landlord as a direct and proximate result of Tenant's failure to pay or perform Tenant's obligations under the Lease. Guarantor further agrees to pay the Landlord interest on any and all sums due and owing to Landlord by reason of Tenant's failure to pay same, which interest shall be at the highest rate allowed by law at the time.

5. Landlord shall have the right, in the event of any failure of Tenant to pay the Monetary Obligations or to perform any Non-Monetary Obligations, to proceed against Tenant or Guarantor, or both, and to enforce against Guarantor or Tenant, or both, any and all rights that Landlord may have to the Monetary Obligations or to effect the Non-Monetary Obligations or damages therefor without giving prior notice to Tenant or Guarantor and without making demands on either. Guarantor understands and agrees that its liability under this Guaranty shall be primary and that, in any right of action which may accrue to Landlord under the Lease or this

Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
           Exhibit A (cont) to Todd Gabriel Declaration    Page 5 of 20
  Case 9:09-bk-15138-RR    Claim 101 Part 3    Filed 02/26/10    Desc Exhibit A (contd)
                                  Page 30 of 41

Guaranty, Landlord, at its option, may proceed against Guarantor without having taken any action or obtained any judgment against Tenant. Guarantor understands and agrees that any failure or delay of Landlord to enforce any of its rights under the Lease or under this Guaranty shall in no way affect Guarantor's obligations under this Guaranty. Guarantor hereby waives to the fullest extent permitted by applicable law each of the following: any and all notices, presentments, and notices of nonpayment or nonperformance, except as otherwise specifically provided herein; the right to require Landlord to proceed against Tenant, exhaust any security which Landlord now holds or may hold in the future from Tenant, or pursue any other right or remedy available to Landlord; any and all rights to participate in any security deposit held by Landlord now or in the future; all defenses based upon the disability of Tenant, release of Tenant's liability for any reason whatsoever, or any statute of limitations controlling obligations accruing under the Lease or this Guaranty; any and all rights it may have now or in the future to require or demand that Landlord pursue any right or remedy Landlord may have as against Tenant or any third party; the provisions of California Civil Code Sections 2809, 2810, 2819, 2845, 2847, 2848, 2849, and 2850; the provisions of California Code of Civil Procedure Sections 580(a), 580(d), and 726; and any and all other defenses of whatsoever nature to the fullest extent which they may be waived under applicable law. Guarantor understands and agrees that such waivers may materially impair or eliminate Guarantors' rights as against Tenant or another Guarantor, including any right of contribution or subrogation, if any. Each Guarantor further agrees that nothing contained herein shall prevent Landlord from exercising any rights available to it under the Lease or as to any other Guarantor and the exercise of any of the aforesaid rights shall not constitute a legal or equitable discharge of such Guarantor. Each Guarantor understands that the exercise by Landlord of certain rights and remedies contained in the Lease or herein may affect or eliminate such Guarantor's right of subrogation or contribution and that such Guarantor may therefore incur a partially or totally non-reimbursable liability hereunder; nevertheless, each Guarantor hereby authorizes and empowers Landlord to exercise, in its sole discretion, any rights and remedies, or any combination thereof, which may then be available, since it is the intent and purpose of the Guarantors that their obligations hereunder be absolute, independent, and unconditional under any and all circumstances. Notwithstanding any foreclosure of any lien with respect to Tenant's property, whether by exercise of the power of sale, an action for judicial foreclosure or by acceptance of a deed in lieu of foreclosure, each Guarantor shall remain bound under this Guaranty.

6. Guarantor understands and agrees that its obligations under this Guaranty in no way shall be affected by any extension or amendment of the Lease and in no way shall any such occurrence release, discharge or exonerate Guarantor from its obligations under this Guaranty.

7. Guarantor understands and agrees that if Tenant becomes insolvent or is adjudicated bankrupt, whether by voluntary or involuntary petition, or if any bankruptcy action involving Tenant is commenced or filed, or if a petition for reorganization, arrangement, or similar relief is filed against Tenant, or if a receiver of any part of Tenant's property or assets is appointed by any court, Guarantor will pay to Landlord the amount of all accrued, unpaid and accruing Monetary Obligations to the date when the trustee or administrator accepts the Lease and commences paying same and perform or pay for any Non-Monetary Obligations to such date; provided, however, that at such time as the trustee or administrator rejects the Lease, Guarantor shall pay to Landlord all accrued, unpaid and accruing Monetary Obligations and perform or pay for any Non-Monetary Obligations under the Lease for the remainder of the term of the Lease. If the Lease is rejected, then at Landlord's option, Guarantor shall either (i) pay to Landlord an amount equal to the Monetary Obligations which would have been payable for the unexpired term of the Lease reduced to its present value as provided in Section 21.2, or (ii) execute and deliver to Landlord a new lease for the balance of the term of the Lease with the same terms and conditions of the Lease and with the Guarantor as tenant. Any operation of any present or future debtor's relief act or similar act or law or decision of any court, shall in no way affect the obligations of Guarantor or Tenant to perform any of the terms, covenants or conditions of the Lease or of this Guaranty.

8. Any notices required under this Guaranty shall be in writing and shall be mailed certified, return receipt requested, postage prepaid, to Guarantor at the address set forth under its signature on this Guaranty or to Landlord at 849 West Harbor Drive, Suite D, San Diego, California 92101, or at such other place as may be designated by that party upon written notice from time to time to the other party. This Guaranty shall extend to any and all obligations of Tenant to Landlord under the Lease and to any amendments to the Lease. Guarantor shall have no right of subrogation against Tenant until such time as all of Tenant's obligations to Landlord under the Lease have been fully paid and discharged, and Guarantor shall hold in trust for

Case 9:09-bk-15138-RR   Doc 373-6   Filed 04/08/10   Entered 04/08/10 15:59:29   Desc
Exhibit A (cont) to Todd Gabriel Declaration   Page 6 of 20
Case 9:09-bk-15138-RR   Claim 101 Part 3   Filed 02/26/10   Desc Exhibit A (contd)
Page 31 of 41

Landlord's benefit any sums hereafter received from Tenant prior to satisfaction of all obligations of Guarantor hereunder. This Guaranty may be assigned in whole or in part by Landlord upon written notice to Guarantor. The terms and provisions of this Guaranty shall be binding upon and inure to the benefit of the heirs, successors, personal representatives, administrators, and assigns of the parties hereto. This Guaranty constitutes the full and complete agreement between the parties hereto, and it is understood and agreed that the provisions hereof may be modified only by a writing executed by both parties hereto. As used herein, the masculine shall include the feminine and neuter, and the singular shall include the plural, and vice versa where the context so requires. If any term, provision, covenant or condition of this Guaranty is held to be void, invalid, or unenforceable, the remainder of the provisions herein shall remain in full force and effect and shall no way be affected, impaired or invalidated. This Guaranty is governed by the laws of the State of California. It is understood and agreed that this Guaranty is unconditional and continuing and is a guarantee of payment and performance and not of collection. The obligations of Guarantor, if more than one, shall be joint and several under this Guaranty, and Landlord shall be entitled to pursue its rights and remedies hereunder against any one or all of the persons or entities named as Guarantor herein, and no one Guarantor shall have any right to require or demand that Landlord pursue any right or remedy which Landlord may have against any other Guarantor or to first proceed against any other Guarantor.

9. In the event it becomes necessary for Landlord to enforce any of the terms and provisions of this Guaranty, and Landlord uses the services of any attorney in order to secure compliance with such provisions or recover damages therefor, whether or not suit be instituted, including appeals and bankruptcy and insolvency proceedings, Guarantor shall reimburse Landlord upon demand for any and all attorneys' fees and expenses so incurred by Landlord, including witness fees and expenses; provided that if Guarantor shall be the prevailing party in any legal action between Landlord and Guarantor, Guarantor shall be entitled to recover for the fees of its attorneys and such other expenses in such amount as the court may adjudge reasonable.

"GUARANTOR"

_____

Address: _____
_____
_____

_____

Address: _____
_____
_____

_____

Address: _____
_____
_____

20036752
cs/cs/exhibits
03/17/06

EXHIBIT "D" - Page 3

Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
       Exhibit A (cont) to Todd Gabriel Declaration    Page 7 of 20
Case 9:09-bk-15138-RR    Claim 101 Part 3    Filed 02/26/10    Desc Exhibit A (contd)
                         Page 32 of 41

EXHIBIT "E"

## TENANT ESTOPPEL CERTIFICATE

THE UNDERSIGNED (the "Tenant"), having the power and authority to do so, does this _____ day of _____, 19___, hereby represents to San Diego Seaport Village, Ltd., a California limited partnership ("Landlord"), and _____ (the "Recipient"), the following:

1. Tenant is the tenant of a portion (the "Premises") of Seaport Village in San Diego, California (the "Shopping Center"), under a Lease Agreement dated _____, 19___ (the "Lease"). The Premises are described as follows: _____

2. The Lease, as of the date hereof, except as provided in the Lease, is in full force and effect and, except as specifically set forth in item "(A)" below, has not been modified or amended in any respect whatsoever, and constitutes Tenant's and Landlord's complete agreement with respect to use and occupancy of the Premises. True and correct copies of the Lease and any modifications or amendments thereto are attached hereto as Exhibit "A." The term "Lease" as used herein shall include any such modifications or amendments.

3. The Landlord has performed all covenants under the Lease required to be performed prior to the date hereof; Landlord is not in default under any of the terms of the Lease and, to Tenant's knowledge, no event has occurred which, with the passage of time or giving of notice, or both, would constitute a default by Landlord.

4. The lease term commenced on _____, 19___, and shall expire (unless sooner terminated or extended as provided in the Lease) on _____, 19___, and there are no options to renew, except as follows: _____. (If none, insert "None.")

5. Tenant has not assigned or entered into any sublease of the Lease, except as follows: _____. (If none, insert "None.")

6. Except as specifically set forth in item "(B)" below, there are no claims of default, offset, defense or counterclaim to the payment of rent and other charges payable by Tenant, Tenant asserts no claim against Landlord in regard to any obligations of Landlord relating to the Premises or Shopping Center, and Landlord has made no commitments to Tenant for repairs or improvements to the Premises or Shopping Center other than as specifically set forth in the Lease.

7. Tenant has no option or right of first refusal to purchase the Premises, the Shopping Center, or any part or portion thereof.

8. Tenant is not in default under any of the terms or provisions of the Lease, and no event has occurred which with the passage of time or giving of notice, or both, would constitute a default by Tenant.

9. Tenant has been granted no concessions or free rent except as set forth in the Lease.

10. Tenant has paid Landlord the sum of $_____ as a Security Deposit, the sum of $_____ as last month's rent, and has not prepaid any other rent under the Lease.

11. The Minimum Annual Rent currently payable pursuant to the Lease is $_____, and the monthly installments thereof have been paid through _____. Percentage rent due pursuant to the Lease has been paid through _____.

EXHIBIT "E" - Page 1

Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
Exhibit A (cont) to Todd Gabriel Declaration    Page 8 of 20
Case 9:09-bk-15138-RR    Claim 101 Part 3    Filed 02/26/10    Desc Exhibit A (contd)
Page 33 of 41

12. Tenant agrees that the information furnished herein may be supplied to others, including, but not limited to, the Landlord and any lender who extends credit in connection with the purchase of the Shopping Center or Premises, and that such others may rely upon the truth and accuracy of all the statements herein contained. This Estoppel Certificate shall inure to the benefit of the heirs, successors, and assigns of Recipient and such other persons or entities.

13. Tenant understands that the Recipient intends to and may expend or advance funds or otherwise change its position in reliance upon the statements made in this Estoppel Certificate, and Tenant hereby agrees that Recipient may do so.

(A) Lease Amendment(s):*

_____
_____
_____
_____
_____
_____

(B) Tenant Claims:*

_____
_____
_____
_____
_____
_____

IN WITNESS WHEREOF, the undersigned has caused this statement to be duly executed as of the day and year first above written.

TENANT:

x  _____
   _____

x  _____
   _____

* If none, please state "NONE" in the provided space. If no comment is made, it will be conclusively presumed there is none.

20038252
cs/cl/exhibits                    EXHIBIT "E" - Page 2

Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
Exhibit A (cont) to Todd Gabriel Declaration    Page 9 of 20
Case 9:09-bk-15138-RR    Claim 101 Part 3    Filed 02/26/10    Desc Exhibit A (contd)
Page 34 of 41

SEAPORT VILLAGE SHOPPING CENTER
TENANT RULES AND REGULATIONS
Effective as of 9-20-96

Tenant agrees to abide by the following Rules and Regulations established for the use of the Shopping Center, as provided in Tenant's Lease (initially capitalized terms shall have the same meaning as in Tenant's Lease):

1. **Credit Cards.** Tenant agrees to accept Bank Americard, Master Charge, Visa and any other credit cards deemed necessary by Landlord at all times during the term of Tenant's Lease.

2. **Seasonal Activities.** Tenant will cooperate by appropriate decoration of the Premises in promotional and public relations activities of the Shopping Center for holidays such as Christmas, Easter, Valentine's Day, Halloween, and other special days selected by Landlord from time to time.

3. **Security Regulations and Shoplifting.** Tenant shall observe all security regulations issued by Landlord and comply with instructions and/or directions of Landlord's duly authorized security personnel for the protection of the Shopping Center and all tenants therein. Tenant will cooperate in all procedures and programs calculated to discourage shoplifting in the Shopping Center.

4. **Confidential Shoppers Program.** Landlord shall have the right to institute and maintain a Confidential Shoppers Program which is intended to assist Tenant in maintaining the highest quality of its food, beverages, products, goods, and services provided on the Premises. Landlord may from time to time, and without Tenant's knowledge, send persons to Tenant's Premises for the purpose of assessing the quality of Tenant's food, beverages, products, goods, and services. At the conclusion of said visit, Landlord shall prepare a written report which shall be furnished to Tenant within fifteen (15) days after said visit. Tenant shall make every effort to remedy any deficiency described in such report.

5. **Garbage.** Garbage shall be in a watertight container that does not permit any dripping or odors to escape, and shall be removed to a location designated by Landlord at such time or times as Landlord may designate by rules and regulations adopted by Landlord in Landlord's discretion. Tenant shall not burn any trash or garbage in or about the leased Premises.

6. **Awnings, Projections, Curtains, Blinds, Shades.** No awnings or other projections shall be attached to the outside walls of any building in the Shopping Center without the prior written consent of Landlord and the Port District. No curtains, blinds or shades shall be attached to or hung in or used in connection with any window or door of the Premises, without the consent of Landlord and the Port District. Such awnings, projections, curtains, blinds, shades or other fixtures shall be of a quality, type, design and color, and attached in a manner approved by Landlord and the Port District.

7. **Windows and Light.** The sashes, sash doors, skylights, windows and doors that reflect or admit light and air into the halls, passageways or other public places shall not be covered or obstructed by Tenant, nor shall any bottles, parcels or other articles be placed on windowsills.

8. **Water and Wash Closets.** The water and wash closets and other plumbing fixtures shall not be used for any purposes other than those for which they were constructed, and no sweepings, rubbish, rags or other substances shall be thrown therein. Tenant agrees that all damages resulting from any misuse of the fixtures shall be borne by the Tenant who, or whose servants, employees, agents, visitors or licensees, shall have caused the same.

9. **Disturbances.** Tenant shall not make, or permit to be made, any unseemly or disturbing noises, or disturb or interfere with the occupants of the Premises or neighboring premises or the common areas, or those having business with them whether by the use of any musical instrument, amplified sounds, unmusical noise, whistling, singing, or in any other way. Tenant shall not permit anything to be thrown out of the doors, windows, or skylights,

Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
Exhibit A (cont) to Todd Gabriel Declaration    Page 10 of 20
Case 9:09-bk-15138-RR    Claim 101 Part 3    Filed 02/26/10    Desc Exhibit A (contd)
Page 35 of 41

down the passageways, or off any balconies. Tenant shall not do anything or permit anything to be done on or from Tenant's Premises which will disturb the quiet enjoyment of any other tenant of its premises or which will constitute a public or private nuisance.

10. **Risk of Fire.** Tenant shall not do anything in the Premises or the Shopping Center, or bring or keep anything therein, which will in any way increase or tend to increase the risk of fire or the rate of fire insurance, or which shall conflict with the regulations of the fire department or any law or ordinance, with any insurance policy on the premises or any part thereof, or with any rules or regulations established by any administrative body or official having jurisdiction.

11. **Flammables.** Neither Tenant, nor any of Tenant's servants, employees, agents, visitors, invitees, or licensees shall at any time bring or keep upon the Premises or the Shopping Center any flammable, combustible or explosive fluid, chemical or substance.

12. **Limits on Advertising.** Landlord shall have the right to prohibit any advertising by Tenant which in Landlord's opinion tends to impair the reputation of the Shopping Center or its desirability as a shopping center for retail sales, and upon written notice from Landlord, Tenant shall refrain from or discontinue such advertising. Except as otherwise expressly allowed by Tenant's Lease, with respect to advertising on the Premises or the Shopping Center, no advertising medium, device, instrument or apparatus shall be utilized that can be heard or experienced outside the Premises, including without limitation, flashing lights, search lights, phonographs, organs, radios, stereos, or television.

13. **Limits on Sales.** No auction, fire, bankruptcy, or going-out-of-business sale shall be conducted on the Premises or in, at, or about the Shopping Center, except pursuant to court order.

14. **Use of Premises.** All floor areas, including vestibules, entrances and returns, doors, fixtures, windows and plate glass, shall be maintained in a safe, neat and clean condition. The Premises shall not be used for lodging or sleeping or for any immoral or illegal purpose.

15. **Common Area.** Neither Tenant, nor any of Tenant's servants, employees, agents, visitors, invitees, or licensees, or any other person, without prior written consent of Landlord, shall in or on any part of the common area:

    (a)    Vend, peddle, or solicit orders for sale or distribution of any merchandise, device, service, periodical, book pamphlet, or other matter whatsoever.

    (b)    Exhibit any sign, placard, banner, notice, or other written material.

    (c)    Solicit signatures on any petition or for any other purposes, disseminate any information in connection therewith, or distribute any circular, booklet, handbill, placard, or other material which has no relationship to any purpose for which the Shopping Center was built or is being used.

    (d)    Solicit membership in any organization, group, or association, or contribution for any purpose which has no relationship to the Shopping Center.

    (e)    Parade, rally, patrol, picket, demonstrate, or engage in any conduct that might tend to interfere with or impede the use of any of the common area by any customer, business invitee, employee, or tenant of the Shopping Center, create a disturbance, attract attention, or harass, annoy, disparage, or be detrimental to the interest of any of the retail establishments within the Shopping Center.

    (f)    Use any portion of the common area for any purpose when none of the retail establishments within the Shopping Center is open for business or employment.

    (g)    Throw, discard, or deposit any paper, glass, or extraneous matter of any kind, except in designated receptacles, or create litter or hazards of any kind.

    (h)    Deface, damage, or demolish any sign, light standard, or fixture, landscaping material, or other improvement within the Shopping Center, or the property of

Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
Exhibit A (cont) to Todd Gabriel Declaration    Page 11 of 20
Case 9:09-bk-15138-RR    Claim 101 Part 3    Filed 02/26/10    Desc Exhibit A (contd)
Page 36 of 41

customers, business invitees, or employees situated within the Shopping Center.

The listing above of specific items as being prohibited is not intended to be exclusive, but to indicate in general the manner in which the right to use the common area solely as a means of access and convenience in shopping at the retail establishment in the Shopping Center is limited and controlled by Landlord for the benefit of the public and all of the tenants of the Shopping Center.

16. <u>Canvassing, Soliciting and Peddling</u>. Canvassing, soliciting and peddling in the Shopping Center is prohibited and Tenant shall cooperate to prevent the same.

17. <u>Condition of Handtrucks</u>. There shall not be used in the Premises, or in the common areas, either by Tenant or by jobbers or others, in the delivery or receipt of merchandise, any handtrucks, except those equipped with rubber tires and side guards.

18. <u>Freight</u>. All freight must be moved into, within, and out of the Premises only during such hours and according to such rules as may be promulgated from time to time by Landlord.

19. <u>Inventory Levels</u>. Landlord shall have the right to require Tenant to maintain inventory levels necessary to conduct sales activities in accordance with the Shopping Center standards.

20. <u>Interior Lighting</u>. Tenant shall install permanent interior lighting which will remain on until at least 3:00 a.m. seven (7) days a week. Lighting shall be spots or floods with white bulbs only. If required by Landlord, Tenant shall install and maintain automatic timers for said interior lighting.

21. <u>Exterior Lighting</u>. All exterior lights which are controlled from within the Premises shall remain on from at least dusk until at least 3:00 a.m. seven (7) days a week and shall be turned off during daylight hours. If required by Landlord, Tenant shall install and maintain automatic timers for said exterior lighting.

22. <u>Exterior Walls, Roof and Foundations</u>. Tenant shall not mark, drive nails, screw, or drill into or paint in or in anyway deface the exterior walls, roof, foundations, bearing walls or pillars without the prior written consent of Landlord. The expense of repairing any breakage, stoppage, or damage resulting from a violation of this rule shall be borne by Tenant.

23. <u>Wires</u>. No boring or cutting for wires shall be allowed, except with the prior written consent of Landlord.

24. <u>Machinery, Equipment, Safes and Fixtures</u>. No machinery of any kind will be allowed in the Premises without written consent of Landlord. Landlord may limit the weight, size and position of all machinery, equipment, safes, and fixtures used in the Premises. This provision, however, shall not apply to customary office equipment or trade fixtures or package handling equipment. In the event that Tenant shall require heavy equipment, fixtures, or machinery in the Premises, Tenant shall notify Landlord of such fact and shall pay the costs of structural bracing to accommodate same. Tenant shall not use any machinery or equipment in the Premises, even though its installation may have been permitted, which may cause any unreasonable noise, jar, or tremor to the floors or walls, or which because of its weight it might cause injuries to the floor of the Premises. All damages caused to the Premises or the Shopping Center by delivering, installing, or moving and maintaining heavy equipment, fixtures, safes or machinery shall be repaired at the expense of Tenant.

25. <u>Right to Exclude or Expel</u>. Landlord reserves the right to exclude or expel from the Shopping Center any person who in the judgment of Landlord is intoxicated, under the influence of liquor or drugs, or who shall in any manner do any act in violation of the law, or these Rules and Regulations.

26. <u>Loitering</u>. Tenant's employees and agents shall not loiter in the parking area or in the landscaped areas or other driveways, entrances, and exits to the Shopping Center, and they shall use the same only as passageways to and from their respective work areas.

27. <u>Entrances and Exits</u>. Landlord reserves the right to keep the Shopping

Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
   Exhibit A (cont) to Todd Gabriel Declaration    Page 12 of 20
Case 9:09-bk-15138-RR    Claim 101 Part 3    Filed 02/26/10    Desc Exhibit A (contd)
                              Page 37 of 41

Center closed and keep locked any and all entrances and exit doors of the Shopping Center and gates or doors closed in the parking areas thereof during such hours as Landlord may deem to be advisable for the adequate protection of the Shopping Center and all tenants therein.

28.   Parking. The parking of vehicles used by Tenant and Tenant's employees shall be restricted to the area designated from time to time by Landlord.

29.   Waiver. No waiver of any rule or regulation by Landlord shall be effective unless expressed in writing and signed by Landlord or their authorized agent.

30.   Safety Equipment. Tenant shall install in the Premises and maintain at all times, in good working order, portable fire extinguishers, first-aid kits, and smoke detectors, all of types reasonably approved by Landlord, as well as such other safety equipment as Landlord may reasonably require.

31.   Prohibited Activities. Tenant shall not, without the prior written consent of the Landlord and the Port District, which may be withheld in their sole and absolute discretion:

(a)   Sell merchandise from vending machines or allow any coin operated vending or gaming machines, newspaper racks, pay telephones, or other coin operated devices on the Premises.

(b)   Use or suffer or permit any person or persons to use the Premises or any part thereof for conducting therein a secondhand store, auction, distress or fire sale or bankruptcy or going-out-of-business sale, or for any use or purpose in violation of the laws of the United States of America, or the laws, ordinances, regulations and requirements of the state, county and city where the Shopping Center is situated, or other lawful authorities, and that the Premises, and every part thereof, shall be kept by Tenant in a clean and wholesome condition, free of any objectionable noises, odors, or nuisances, and that all health and police, and other legal regulations shall, in all respects and at all times, be fully complied with by Tenant.

(c)   Operate any televisions, radios or other video or audio equipment on, in or about the Premises.

(d)   Display, sell merchandise, allow carts, portable signs, devices or any other objects to be stored or to remain outside the defined exterior walls or roof and permanent doorways of the Premises, or in hallways. Tenant shall remove any of said objects maintained in violation hereof within three (3) days of receipt of written notice to do so by Landlord or Landlord shall be entitled to remove said objects.

(e)   Erect on the roof or exterior walls of the Premises any aerial or antenna. Any aerial or antenna so installed without such written consent shall be subject to removal without notice at any time. Promptly upon demand of Landlord, Tenant shall reimburse Landlord for its costs and expenses in removing any of said objects, and such amounts shall be deemed additional rent payable hereunder.

(f)   Solicit in any manner in any of the Common Area of the Shopping Center.

32.   Deliveries. Tenant shall use its best efforts to complete, or cause to be completed, all deliveries, loading, unloading and services to the Premises prior to 10:00 a.m. of each day. Tenant shall use its best efforts to cause no delivery trucks or other vehicles servicing the Premises to park or stand in front of, or at the rear of, the Premises from 10:00 a.m. to 9:00 p.m. of each day.

33.   Inconsistency with Lease. In the event of any inconsistency between these Rules and Regulations, or any amendments or modifications thereto, and the provisions of Tenant's Lease, the provisions of the Lease, which are incorporated by reference herein, shall govern and control.

20038752
sjdj/exhibits                              EXHIBIT "F"

Case 9:09-bk-15138-RR Doc 373-6 Filed 04/08/10 Entered 04/08/10 15:59:29 Desc
Exhibit A (cont) to Todd Gabriel Declaration Page 13 of 20
Case 9:09-bk-15138-RR Claim 101 Part 3 Filed 02/26/10 Desc Exhibit A (contd)
Page 38 of 41

Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
         Exhibit A (cont) to Todd Gabriel Declaration    Page 14 of 20
Case 9:09-bk-15138-RR    Claim 101 Part 3    Filed 02/26/10    Desc  Exhibit A (contd)
                         Page 39 of 41

## SECOND AMENDMENT OF LEASE

THIS SECOND AMENDMENT OF LEASE (this "Amendment") dated Aug. 31, 2006, is made and entered into by and between SEAPORT VILLAGE OPERATING COMPANY, LLC, a Delaware limited liability company ("Landlord"), and Big Dog USA, Inc, a California corporation dba Big Dog Sportswear ("Tenant").

### WITNESSETH:

WHEREAS, Landlord's predecessor-in-interest and Tenant entered into a lease dated September 20, 1996, and Letter Agreement dated September 17, 1996, and First Letter Amendment dated September 22, 2001, and Second Letter Amendment dated September 22, 2001, and Third Letter Amendment dated November 11, 2002, and Amendment to Sublease dated September 22, 2001 (collectively the "Lease"), for the lease of approximately 919 square feet in 849 W. Harbor Drive, Suite A, space W8-A (Retail); 219 square feet in 853 W. Harbor Drive, space W6-4 (Storage I); and 20 square feet at 853 W. Harbor Drive, space W6 (Storage II-container "a"); and 20 square feet at 853 W. Harbor Drive, space W6-2 (Storage III-container "b"), (collectively the "Premises") within the shopping center known as San Diego Seaport Village, located in San Diego, California (the "Center"); and

WHEREAS, the parties desire to amend the Lease in the manner hereinafter set forth.

NOW, THEREFORE, for valuable consideration, the tender, receipt and sufficiency of which are acknowledged, the Lease is hereby amended as follows:

### TERMS:

1. **Effective Date:** The "Effective Date" of this Amendment shall be the date this Amendment is fully executed by Landlord and Tenant.

2. **Amendment to Lease:** Notwithstanding any provision of the Lease, the Lease is hereby amended as follows:

    (a) Article 1, Section 1.6 of the Basic Lease Terms is amended such that the term of the Lease, unless sooner terminated under provisions of the Lease, shall expire on September 30, 2011. In addition, commencing on April 1, 2008, Landlord shall have the unilateral right to terminate this lease with ninety (90) days written notice to Tenant in the event there is a renovation of the shopping center. Tenant shall have no right or option to extend or renew the term of the Lease.

    (b) Article 1, Section 1.7 of the Basic Lease Terms is amended such that commencing on October 1, 2006 (the "Start Date"), Minimum Annual Rent shall equal:

    Retail Space: Eighty-Two Thousand Six Hundred Twenty and no/100th dollars ($82,620.00) per year;
    Storage I: Six Thousand Two Hundred Forty and no/100th dollars ($6,240.00) per year;
    Storage II (container "a"): One Thousand Eighty and no/100th dollars ($1,080.00) per year;
    Storage III (container "b"): One Thousand Eighty and no/100th dollars ($1,080.00) per year

    Each rental shall be adjusted on October 1, 2007 and on each October 1 of the remaining term as provided for in Section 5.2 of the Lease (however Extension Index and Beginning Index will be that which is published nearest to October 1 instead of January 1). Notwithstanding anything to the contrary elsewhere in the Lease, the Minimum Annual Rent shall increase not less than three percent (3%) nor more than six percent (6%) over the prior twelve (12) months Minimum Annual Rent.

    (c) Article 19, Section 19.4(b) is amended such that the statement showing Operating Expenses provided by Landlord to Tenant, shall be furnished within ninety (90) days following the end of each calendar quarter, or at Landlord's option, each calendar year of the Lease.

    (d) Article 13, Section 13.4 is amended to add the following: "Should Landlord's sign criteria be modified or amended at any time during the Term of this Lease, Tenant shall, within ninety (90) days thereafter, refurbish and/or replace its signs, at Tenant's sole cost and expense, to conform with said modified or amended criteria.

agr flcp.wrw
July 28, 2006

1

Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
Exhibit A (cont) to Todd Gabriel Declaration    Page 15 of 20
Case 9:09-bk-15138-RR    Claim 101 Part 3    Filed 02/26/10    Desc  Exhibit A (contd)
Page 40 of 41

(e)    Article 17, Section 17.1(a), Repairs and Maintenance: Tenant shall, within 90 days after the Effective Date of this Amendment, at its sole cost and expense, make the following repairs/refurbishing to the Retail Premises:  refurbish wood floors.

3.    **Entire Agreement**: This Amendment contains all of the agreements of the parties hereto with respect to the matters contained herein, and no prior agreement, arrangement or understanding pertaining to any such matters shall be effective for any purpose. Nothing in this Amendment shall be deemed to waive or modify any of the provisions of the Lease, except as expressly stated herein.

4.    **Attorneys' Fees**: If any party to this Amendment commences an action against another party hereto arising out of or in connection with this Amendment, the prevailing party shall be entitled to recover from the losing party reasonable attorneys' fees and costs of suit as part of its judgment.

5.    **Ratification**: Except as hereby amended, the Lease shall remain unmodified and, as hereby amended, is ratified and confirmed.

6.    **Successors**: The provisions of this Amendment shall bind and inure to the benefit of the heirs, representatives, successors and assigns of the parties hereto.

7.    **Defined Terms**: All capitalized terms not otherwise defined in this Amendment shall have the meanings given them in the Lease.

8.    **Exculpation**: Should Landlord be a partnership, corporation or limited liability company, the obligations of Landlord under the Lease, as amended hereby, do not constitute the personal obligations of the individual partners of the partnership, shareholders, officers or directors of the corporation, or members, managers or officers of the limited liability company constituting Landlord, as the case may be, and Tenant shall look solely to the Center and the net rents, profits and other income from the operation of the Center, and to no other asset of Landlord, for satisfaction of any liability in respect of the Lease, as amended hereby. Tenant shall not seek recourse against the individual partners of the partnership, shareholders, officers or directors of the corporation or members, managers of officers of the limited liability company constituting Landlord, as the case may be, nor against any of their personal assets for such satisfaction. It is expressly understood and agreed that any money judgment resulting from any default or other claim arising under the Lease, as amended hereby, against Landlord shall be satisfied only out of the Center and net rents, issues, profits and other income from the operation of the Center.

9.    **Confidentiality**: Tenant hereby represents and warrants that it and its representatives, servants, agents and employees (collectively, "Agents") shall make a good faith effort to keep the terms and provisions of this Amendment strictly confidential throughout the term of the Lease, except to the extent necessary: (a) to carry out the purpose of the Lease; (b) in connection with any administrative or judicial proceeding in which Tenant is involved and required to divulge such information; (c) to disclose information to Tenant's attorneys, accountants and advisors; (d) in connection with any SEC or other similar filings by Tenant; or (e) if required in good faith for financing or accounting reasons. If Tenant or any of its Agents violates this provision, Tenant shall indemnify Landlord for all of Landlord's costs, expenses, liabilities and damages related thereto, including without limitation, the reasonable costs of legal counsel, investigation costs and court costs.

10.    **Brokers**: Landlord has retained GMS Realty, LLC, as its broker or agent in connection with this transaction. Landlord will pay the compensation of the company retained by it in respect of this Amendment, pursuant to Landlord's agreement with said company.

Except as expressly set forth herein, Landlord and Tenant represent and warrant that there are no claims for brokerage commissions or finders' fees in connection with the execution of this Amendment, and each shall indemnify the other against and hold it harmless from all liability arising from any such claim arising through it including, without limitation, the cost of attorneys' fees and court costs in connection therewith.

///

///

///

aprilsp.wn
July 28, 2006

2

Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
    Exhibit A (cont) to Todd Gabriel Declaration    Page 16 of 20
Case 9:09-bk-15138-RR    Claim 101 Part 3    Filed 02/26/10    Desc Exhibit A (contd)
                              Page 41 of 41

IN WITNESS WHEREOF, this Amendment is entered into by the parties as of the day and year first above written.

"LANDLORD"

SEAPORT VILLAGE OPERATING
COMPANY, LLC, a Delaware
limited liability company

By: GMS Realty, LLC
    a Delaware limited liability
    company, its Manager

By: _____
Name: Stephen M. Bowers
Title: Chief Operating Officer

"TENANT"

BIG DOG USA, INC., a California corporation
dba Big Dog Sportwear

By: _____
Name: Anthony Wall
Title: Executive Vice President

agr15spww
July 28, 2005

3

Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
Exhibit A (cont) to Todd Gabriel Declaration    Page 17 of 20
Case 9:09-bk-15138-RR    Claim 101 Part 4    Filed 02/26/10    Desc Exhibit B    Page 1 of 3

# Exhibit B

Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
Exhibit A (cont) to Todd Gabriel Declaration    Page 18 of 20
Case 9:09-bk-15138-RR    Claim 101 Part 4    Filed 02/26/10    Desc Exhibit B    Page 2 of 3

| Database: | GMS_PROD | | | Aged Delinquencies | | | | Page: | 1 |
|---|---|---|---|---|---|---|---|---|---|
| BLDG: | 903 | | | TRC Production Database | | | | Date: | 2/26/2010 |
| | | | | SEAPORT VILLAGE OPERATING CO. | | | | Time: | 09:13 AM |
| | | | | Date: 2/25/2010 | | | | | |

| Invoice Date | Category | | Source | Amount | Current | 30 | 60 | 90 | 120 |
|---|---|---|---|---|---|---|---|---|---|

**903-H04655    BIG DOG STORAGE    SHAWNA    W64    Master Occupant Id: 903BDSG-2    Current    Day Due:    1    Delq Day:    Last Payment:    2/1/2010    1382.46**

| 10/1/2009 | RST | RENT STORAGE | CH | 16.89 | 0.00 | 0.00 | 0.00 | 0.00 | 16.89 |
| 11/1/2009 | CAM | COMMON AREA RECOVER | CH | 182.50 | 0.00 | 0.00 | 0.00 | 182.50 | 0.00 |
| 11/1/2009 | ELE | ELECTRIC RECOVERIES | CH | 30.00 | 0.00 | 0.00 | 0.00 | 30.00 | 0.00 |
| 11/1/2009 | RST | RENT STORAGE | CH | 579.97 | 0.00 | 0.00 | 0.00 | 579.97 | 0.00 |
| 12/1/2009 | CAM | COMMON AREA RECOVER | CH | 17.98 | 0.00 | 0.00 | 17.98 | 0.00 | 0.00 |
| 12/1/2009 | ELE | ELECTRIC RECOVERIES | CH | 30.00 | 0.00 | 0.00 | 30.00 | 0.00 | 0.00 |
| 12/1/2009 | RST | RENT STORAGE | CH | 130.96 | 0.00 | 0.00 | 130.96 | 0.00 | 0.00 |
| 1/22/2010 | UR | UTILITIES REIMBURSEMEN (Reconciliation 2009) | NC | -31.69 | 0.00 | -31.69 | 0.00 | 0.00 | 0.00 |

| | CAM | COMMON AREA RECOVERY | | 200.48 | 0.00 | 0.00 | 17.98 | 182.50 | 0.00 |
| | ELE | ELECTRIC RECOVERIES | | 60.00 | 0.00 | 0.00 | 30.00 | 30.00 | 0.00 |
| | RST | RENT STORAGE | | 727.82 | 0.00 | 0.00 | 130.96 | 579.97 | 16.89 |
| | UR | UTILITIES REIMBURSEMENTS | | -31.69 | 0.00 | -31.69 | 0.00 | 0.00 | 0.00 |
| | **BIG DOG STORAGE Total:** | | | **956.61** | **0.00** | **-31.69** | **178.94** | **792.47** | **16.89** |

Handwritten: <17.34> 17.98 35.32; 24.19 30.00 5.81; 18.71 130.96 112.25; Post, Pre; 25.32 -31.69; 153.38 +; + 16.89

**903-H04654    BIG DOGS    JAKE-EXT 1285    W8-D    Master Occupant Id: 903BIG-2    Current    Day Due:    1    Delq Day:    Last Payment:    2/8/2010    7863** (handwritten: 1464.34)

| 8/19/2009 | LAT | LATE FEE | CH | 1,030.33 | 0.00 | 0.00 | 0.00 | 0.00 | 1,030.33 |
| 11/1/2009 | CAM | COMMON AREA RECOVER | CH | 1,406.78 | 0.00 | 0.00 | 0.00 | 1,406.78 | 0.00 |
| 11/1/2009 | INS | INSURANCE RECAPTURE | CH | 50.54 | 0.00 | 0.00 | 0.00 | 50.54 | 0.00 |
| 11/1/2009 | MKT | MARKETING FUND RECOVI | CH | 205.38 | 0.00 | 0.00 | 0.00 | 205.38 | 0.00 |
| 11/1/2009 | MKT | MARKETING FUND RECOVI | CH | 164.42 | 0.00 | 0.00 | 0.00 | 164.42 | 0.00 |
| 11/1/2009 | PKE | PARKING EQUIPMENT | CH | 23.00 | 0.00 | 0.00 | 0.00 | 23.00 | 0.00 |
| 11/1/2009 | RRS | RENT RETAIL SHOPS | CH | 7,679.01 | 0.00 | 0.00 | 0.00 | 7,679.01 | 0.00 |
| 11/1/2009 | TAX | RE TAX RECAPTURE | CH | 591.07 | 0.00 | 0.00 | 0.00 | 591.07 | 0.00 |
| 11/20/2009 | LAT | LATE FEE | CH | 1,115.05 | 0.00 | 0.00 | 0.00 | 1,115.05 | 0.00 |
| 12/1/2009 | CAM | COMMON AREA RECOVER | CH | 317.66 | 0.00 | 0.00 | 317.66 | 0.00 | 0.00 |
| 12/1/2009 | INS | INSURANCE RECAPTURE | CH | 11.41 | 0.00 | 0.00 | 11.41 | 0.00 | 0.00 |
| 12/1/2009 | MKT | MARKETING FUND RECOVI | CH | 430.28 | 0.00 | 0.00 | 430.28 | 0.00 | 0.00 |
| 12/1/2009 | MKT | MARKETING FUND RECOVI | CH | 205.38 | 0.00 | 0.00 | 205.38 | 0.00 | 0.00 |
| 12/1/2009 | PKE | PARKING EQUIPMENT | CH | 5.19 | 0.00 | 0.00 | 5.19 | 0.00 | 0.00 |
| 12/1/2009 | RRS | RENT RETAIL SHOPS | CH | 1,733.97 | 0.00 | 0.00 | 1,733.97 | 0.00 | 0.00 |
| 12/1/2009 | TAX | RE TAX RECAPTURE | CH | 133.47 | 0.00 | 0.00 | 133.47 | 0.00 | 0.00 |

| | CAM | COMMON AREA RECOVERY | | 1,724.44 | 0.00 | 0.00 | 317.66 | 1,406.78 | 0.00 |
| | INS | INSURANCE RECAPTURE | | 61.95 | 0.00 | 0.00 | 11.41 | 50.54 | 0.00 |
| | LAT | LATE FEE | | 2,145.38 | 0.00 | 0.00 | 0.00 | 1,115.05 | 1,030.33 |
| | MKT | MARKETING FUND RECOVERY | | 1,005.46 | 0.00 | 0.00 | 635.66 | 369.80 | 0.00 |
| | PKE | PARKING EQUIPMENT | | 28.19 | 0.00 | 0.00 | 5.19 | 23.00 | 0.00 |
| | RRS | RENT RETAIL SHOPS | | 9,412.98 | 0.00 | 0.00 | 1,733.97 | 7,679.01 | 0.00 |
| | TAX | RE TAX RECAPTURE | | 724.54 | 0.00 | 0.00 | 133.47 | 591.07 | 0.00 |
| | **BIG DOGS Total:** | | | **15,102.94** | **0.00** | **0.00** | **2,837.36** | **11,235.25** | **1,030.33** |

Handwritten: 45.38, 1.63, 16563, .74, 247.71, 19.07, Post, Pre; 292.28, 9.78, 430.28, 3875, 4.45, 148-26.0, 114.40; $430.16, 2357.20, Total

**903-H04657    BIG DOG III STORAGE CONTAINER    SHAWNA    W62    Master Occupant Id: 903BIGDG-2    Current    Day Due:    1    Delq Day:    Last Payment:    2/1/2010    477.74** (handwritten 147.78)

| 10/1/2009 | RST | RENT STORAGE | CH | 2.92 | 0.00 | 0.00 | 0.00 | 0.00 | 2.92 |
| 11/1/2009 | RST | RENT STORAGE | CH | 100.38 | 0.00 | 0.00 | 0.00 | 100.38 | 0.00 |
| 12/1/2009 | RST | RENT STORAGE | CH | 22.67 | 0.00 | 0.00 | 22.67 | 0.00 | 0.00 |

Case 9:09-bk-15138-RR    Doc 373-6    Filed 04/08/10    Entered 04/08/10 15:59:29    Desc
Exhibit A (cont) to Todd Gabriel Declaration    Page 19 of 20
Case 9:09-bk-15138-RR    Claim 101 Part 4    Filed 02/26/10    Desc Exhibit B    Page 3 of 3

| Database: | GMS_PROD | | Aged Delinquencies | | | | Page: | 2 |
|---|---|---|---|---|---|---|---|---|
| BLDG: | 903 | | TRC Production Database SEAPORT VILLAGE OPERATING CO. Date: 2/25/2010 | | | | Date: Time: | 2/26/2010 09:13 AM |

| Invoice Date | Category | | Source | Amount | Current | 30 | 60 | 90 | 120 |
|---|---|---|---|---|---|---|---|---|---|
| | RST | RENT STORAGE | | 125.97 | 0.00 | 0.00 | 22.67 | 100.38 | 2.92 |
| | **BIG DOG III STORAGE CONTAINER Total:** | | | 125.97 | 0.00 | 0.00 | 22.67 | 100.38 | 2.92 |
| 903-N04858 | BIG DOG STORAGE II SHAWNA 805-963-972... | | Master Occupant Id: 903DOG W9: Current | | | | Pay Due: Last Payment: | Late Day: 2/1/2010 | 71... |
| 10/1/2009 | RST | RENT STORAGE | CH | 2.92 | 0.00 | 0.00 | 0.00 | 0.00 | 2.92 |
| 11/1/2009 | RST | RENT STORAGE | CH | 100.38 | 0.00 | 0.00 | 0.00 | 100.38 | 0.00 |
| 12/1/2009 | RST | RENT STORAGE | CH | 22.67 | 0.00 | 0.00 | 22.67 | 0.00 | 0.00 |
| | RST | RENT STORAGE | | 125.97 | 0.00 | 0.00 | 22.67 | 100.38 | 2.92 |
| | **BIG DOG STORAGE II Total:** | | | 125.97 | 0.00 | 0.00 | 22.67 | 100.38 | 2.92 |
| | CAM | COMMON AREA RECOVERY | | 1,924.92 | 0.00 | 0.00 | 335.64 | 1,589.28 | 0.00 |
| | ELE | ELECTRIC RECOVERIES | | 60.00 | 0.00 | 0.00 | 30.00 | 30.00 | 0.00 |
| | INS | INSURANCE RECAPTURE | | 61.95 | 0.00 | 0.00 | 11.41 | 50.54 | 0.00 |
| | LAT | LATE FEE | | 2,145.38 | 0.00 | 0.00 | 0.00 | 1,115.05 | 1,030.33 |
| | MKT | MARKETING FUND RECOVERY | | 1,005.46 | 0.00 | 0.00 | 635.66 | 369.80 | 0.00 |
| | PKE | PARKING EQUIPMENT | | 28.19 | 0.00 | 0.00 | 5.19 | 23.00 | 0.00 |
| | RRS | RENT RETAIL SHOPS | | 9,412.98 | 0.00 | 0.00 | 1,733.97 | 7,679.01 | 0.00 |
| | RST | RENT STORAGE | | 979.76 | 0.00 | 0.00 | 176.30 | 780.73 | 22.73 |
| | TAX | RE TAX RECAPTURE | | 724.54 | 0.00 | 0.00 | 133.47 | 591.07 | 0.00 |
| | UR | UTILITIES REIMBURSEMENTS | | -31.69 | 0.00 | -31.69 | 0.00 | 0.00 | 0.00 |
| | **BLDG 903 Total:** | | | 16,311.49 | 0.00 | -31.69 | 3,061.64 | 12,228.48 | 1,053.06 |
| | CAM | COMMON AREA RECOVERY | | 1,924.92 | 0.00 | 0.00 | 335.64 | 1,589.28 | 0.00 |
| | ELE | ELECTRIC RECOVERIES | | 60.00 | 0.00 | 0.00 | 30.00 | 30.00 | 0.00 |
| | INS | INSURANCE RECAPTURE | | 61.95 | 0.00 | 0.00 | 11.41 | 50.54 | 0.00 |
| | LAT | LATE FEE | | 2,145.38 | 0.00 | 0.00 | 0.00 | 1,115.05 | 1,030.33 |
| | MKT | MARKETING FUND RECOVERY | | 1,005.46 | 0.00 | 0.00 | 635.66 | 369.80 | 0.00 |
| | PKE | PARKING EQUIPMENT | | 28.19 | 0.00 | 0.00 | 5.19 | 23.00 | 0.00 |
| | RRS | RENT RETAIL SHOPS | | 9,412.98 | 0.00 | 0.00 | 1,733.97 | 7,679.01 | 0.00 |
| | RST | RENT STORAGE | | 979.76 | 0.00 | 0.00 | 176.30 | 780.73 | 22.73 |
| | TAX | RE TAX RECAPTURE | | 724.54 | 0.00 | 0.00 | 133.47 | 591.07 | 0.00 |
| | UR | UTILITIES REIMBURSEMENTS | | -31.69 | 0.00 | -31.69 | 0.00 | 0.00 | 0.00 |
| | **Grand Total:** | | | 16,311.49 | 0.00 | -31.69 | 3,061.64 | 12,228.48 | 1,053.06 |

Handwritten annotations:

Near RST rows: "Total Post" "Pre" "19.43" "Total Pre: $122.73"

Bottom handwritten totals:

Post Petition
<6.13>
480.16
3.24
3.24
───
*480.51

Pre Petition
$962.74
14,622.78
122.73
122.73
───
$15,830.98

OverniteExpress 

60103-000261-V10



Next Day Overnite -- P

Zone:570

**Bill To:** 60108   Date: 4/1/2010
**From:** Leenora Eddleman
Sparber Annen Morris & Gabriel, APLC
701 B Street
Ste:1400
San Diego, CA 92101
6192393600

Billing Reference:4883-156



SPECIAL INSTRUCTIONS:

**To:** METTE H. KURTH, ESQ
ARENT FOX, LLP
555 WEST FIFTH STREET
Ste:48TH F
Los Angeles, CA 90013
6192393600

Number of Pieces: 1



Please fold this page in half and place it in the pouch on your shipment. Only one copy is required by Overnite Express.
WARNING: Use only the printed label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with cancellation of your Overnite Express account or OverniteShip Online Profile. Shipments with invalid account or credit card numbers will not be delivered.