| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Mette H. Kurth (SBN 187100)<br>Andy S. Kong (SBN 243933)<br>M. Douglas Flahaut (SBN 245558)<br>ARENT FOX LLP<br>555 West Fifth Street, 48th Floor<br>Los Angeles, CA 90013-1065<br>Telephone: (213) 629-7400<br>Facsimile: (213) 629-7401<br><br>*Attorney for* Debtors and Debtors in Possession | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:<br>THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br><div align="right">Debtor.</div> | CHAPTER 11<br><br>CASE NUMBER<br>9:09-bk-15138-RR<br>[Jointly Administered with Case Nos.: 9:09-bk-15137-RR and 9:09-bk-15139-RR)<br><br><div align="center">(No Hearing Required)</div> |

## NOTICE OF MOTION UNDER LOCAL BANKRUPTCY RULE 9013-1(o) FOR:

> DEBTORS' OMNIBUS MOTION FOR AN ORDER APPROVING CERTAIN SETTLEMENT AGREEMENTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ANTHONY J. WALL IN SUPPORT THEREOF

1.  TO *(specify name)*: The Honorable Robin L. Riblet, United States Bankruptcy Judge and All Interested Parties

2.  NOTICE IS HEREBY GIVEN that Movant in the above-captioned matter will move this Court for an Order granting the relief sought as set forth in the Motion filed by Movant, a brief description of which is contained in the Description of Relief Sought attached hereto and served and filed herewith. Said Motion is based upon the grounds set forth in the said Motion and accompanying Description of Relief Sought. Said Motion is made pursuant to Local Bankruptcy Rule 9013-1(o), which provides for granting of motions without a hearing. (Check appropriate box below):

    ☒   The full Motion is attached hereto.

    ☐   The full Motion has been filed with the Bankruptcy Court and a detailed description of the relief sought is attached hereto.

3.  **Deadline for Opposition Papers and Request for a Hearing:** Pursuant to Local Bankruptcy Rule 9013-1(o), any party objecting to the accompanying Motion may file and serve a written objection and request a hearing of this Motion. If you fail to file a written response within 14 days of the date of service of this Notice, the Court may treat such failure as a waiver of your right to oppose this Motion and may grant the requested relief.

Dated: April 9, 2010

Arent Fox LLP _____
*Law Firm Name*

By: /s/ M. Douglas Flahaut _____

Date Notice Mailed: April 9, 2010

Name: M. Douglas Flahaut _____
*Attorney for Movant*

---

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2009*

**F 9013-1.2**

American LegalNet, Inc.
www.FormsWorkflow.com

# Motion

1   Mette H. Kurth (SBN 187100)
    Andy S. Kong (SBN 243933)
2   M. Douglas Flahaut (SBN 245558)
    **ARENT FOX LLP**
3   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
4   Telephone:213.629.7400
    Facsimile: 213.629.7401
5   E-mail:      kurth.mette@arentfox.com
                 kong.andy@arentfox.com
6                flahaut.douglas@arentfox.com

7   Attorneys for Debtors and Debtors in Possession

8   Debtors' Mailing Address
    121 Gray Avenue
9   Santa Barbara, CA 93101

10                    **UNITED STATES BANKRUPTCY COURT**

11                    **CENTRAL DISTRICT OF CALIFORNIA**

12                       **SANTA BARBARA DIVISION**

13

| 14 | In re: | Case No.: 9:09-bk-15138-RR |
|---|---|---|
| 15 | **THE WALKING COMPANY**, a Delaware corporation, d/b/a Alan's Shoes, | [Jointly Administered with Case Nos.: 9:09-bk-15137-RR; 9:09-bk-15139-RR] |
| 16 | Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC | Chapter 11 |
| 17 | Acquisition Corporation; **BIG DOG USA, INC.**, a California corporation, d/b/a Big | |
| 18 | Dog Sportswear; f/k/a Fortune Dogs, Inc.; and **THE WALKING COMPANY** | **DEBTORS' OMNIBUS MOTION FOR AN ORDER APPROVING CERTAIN** |
| 19 | **HOLDINGS, INC.**, a Delaware corporation, f/k/a Big Dog Holdings, Inc. | **SETTLEMENT AGREEMENTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF** |
| 20 | and 190th Shelf Corporation, | **ANTHONY J. WALL IN SUPPORT THEREOF** |
| 21 | Debtors. | |

22   [ X ]  Affects all Debtors

23   [ ] Applies only to The Walking
          Company
24

25   [ ] Applies only to Big Dog USA, Inc.

26   [ ] Applies only to The Walking
          Company Holdings, Inc.

27

28

**TO THE HONORABLE ROBIN L. RIBLET, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; THE PARTIES AFFECTED BY THIS MOTION; THE DEBTORS' SECURED CREDITORS; COUNSEL FOR THE CREDITORS' COMMITTEE; AND ALL PARTIES ENTITLED TO SPECIAL NOTICE:**

The Walking Company ("TWC") and its debtor affiliates, The Walking Company Holdings, Inc. ("Holdings") and Big Dog USA, Inc. ("Big Dog") (collectively, the "Debtors"), hereby move the Court pursuant to Federal Rule of Bankruptcy Procedure 9019 for an order approving certain compromises and settlement agreements as outlined below.

As discussed in greater detail in the annexed Memorandum of Points and Authorities, there are good and sufficient grounds for granting this motion (the "Motion") pursuant to 11 U.S.C. §§ 105 and 323(a), Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, and Rule 9013-1 and 9019-1 of the Local Bankruptcy Rules. In connection with their reorganization efforts, the Debtors have entered into multiple settlement agreements with respect to outstanding litigation and certain other claims against the Debtors (collectively, the "Disputed Claims"). Specifically, this Motion seeks approval of nine settlement agreements. The terms and conditions of each settlement agreement are summarized below, and true and correct copies of each settlement agreement are attached hereto as Exhibits 1 – 9 (individually a "Settlement Agreement" and collectively the "Settlement Agreements"). Among other things, certain of the Disputed Claims raise significant, complex issues, and absent a consensual resolution of the Disputed Claims, all present litigation risk and would require the Debtors to incur additional costs to resolve through litigation or claim objections. To avoid such extensive, costly litigation, the Debtors have negotiated the Settlement Agreements. The Debtors believe, in the exercise of their reasonable business judgment, that these Settlement Agreements are reasonable and in the best interest of their estates and creditors, and that the cost of litigating the issues related to the Disputed Claims would outweigh the benefits

1  provided by the Settlement Agreements.  This Motion is made on the grounds that the

2  Settlement Agreements and compromises reflected therein are in the best interest of the

3  Debtors estates and creditors.

4      **WHEREFORE**, the Debtors respectfully request this Court enter an order: (1)

5  approving the compromises and Settlement Agreements described in this Motion; (2)

6  authorizing the Debtors to enter compromises on substantially the terms and conditions set

7  forth in the Settlement Agreements; (3) authorizing the Debtors to execute any and all

8  documents necessary to effectuate the Settlement Agreements; (4) allowing the Disputed

9  Claims as set forth in the Settlement Agreements and this Motion, and otherwise

10  disallowing the Disputed Claims; and (5) granting to the Debtors any and other further

11  relief as may be necessary and appropriate.

12
    Dated:  April 9, 2010                    **ARENT FOX LLP**
13

14

15                                  By: */s/ M. Douglas Flahaut*_____
                                         M. Douglas Flahaut
16                                       Attorneys for the
                                         Debtors and Debtors in Possession
17

18

19

20

21

22

23

24

25

26

27

28

3

1

## MEMORANDUM OF POINTS & AUTHORITIES

2

### I.

3

### BACKGROUND FACTS

4 Headquartered in Santa Barbara, California, the Debtors' business consists of two

5 distinct retail operations. The Debtors' operations are largely focused on TWC, which is a

6 leading specialty retailer of authentic comfort footwear. TWC generated approximately

7 93% of the Debtors' sales in 2009. Big Dog is a retailer of a lifestyle collection of

8 popular-priced T-shirts, casual sportswear, and accessories featuring the Big Dog's

9 trademarks. On a consolidated basis, the Debtors employ over 1,600 individuals across

10 the country.

11 On December 7, 2009 (the "Petition Date"), the Debtors commenced bankruptcy

12 cases by filing voluntary Chapter 11 petitions under the Bankruptcy Code. Since the

13 Petition Date, as authorized under Bankruptcy Code Sections 1107 and 1108, the Debtors

14 have operated their business and managed their affairs as debtors in possession. The

15 above-captioned chapter 11 cases are being jointly administered for procedural purposes.

16 On February 1, 2010, the Debtors filed their *Original Joint Chapter 11 Plan*

17 *(Dated February 1, 2010)* [Doc. No. 223] (as subsequently amended, the "Plan") along

18 with their *Disclosure Statement for Debtors' Original Joint Chapter 11 Plan (Dated*

19 *February 1, 2010)* [Doc. No. 224] (as subsequently amended, the "Disclosure

20 Statement"). A hearing on the adequacy of the Debtors' Disclosure Statement was held

21 on March 12, 2010 and the Disclosure Statement was approved. A hearing on the

22 confirmation of the Debtors' Plan is set for April 23, 2010.

23

### II.

24

### THE SETTLEMENT AGREEMENTS[1]

25 In connection with their reorganization efforts, the Debtors have entered into

26 multiple Settlement Agreements with respect to certain Disputed Claims. Specifically,

27

28 ---
[1] To the extent the settlement descriptions in this motion conflict with the actual Settlement Agreements attached hereto as Exhibits "1 – 9", the actual Settlement Agreements shall control.

4

1   this Motion seeks approval of nine Settlement Agreements. The terms and conditions of

2   each Settlement Agreement are summarized below, and true and correct copies of each

3   Settlement Agreement are attached hereto as Exhibits 1 – 9.   The Debtors' General

4   Counsel, in consultation with the Debtors' bankruptcy counsel, has reviewed the Disputed

5   Claims and evaluated the probability of success in objecting to those claims and has taken

6   those probabilities into consideration when deciding whether or not to enter into the

7   Settlement Agreements

8      Among other things, certain of the Disputed Claims raise significant, complex

9   issues, and absent a consensual resolution of the Disputed Claims, all present litigation

10   risk and would require the Debtors to incur additional costs to resolve through litigation or

11   claim objections.   To avoid such extensive, costly litigation, the Debtors have negotiated

12   the Settlement Agreements.   The Debtors believe, in the exercise of their reasonable

13   business judgment, that these Settlement Agreements are reasonable and in the best

14   interest of their estates and creditors, and that the cost of litigating the issues related to the

15   Disputed Claims would outweigh the benefits provided by the Settlement Agreements.

16   **A.**    **The Smartwool Settlement**

17      Smartwool Corporation ("Smartwool") is a major supplier of goods to TWC. As of

18   the Petition Date, Smartwool asserted that the outstanding invoices with respect to goods

19   that it had shipped to TWC prior to the Petition Date totaled $112,621.71.[2]   TWC's

20   Schedules of Assets and Liabilities filed on January 20, 2010 reflected a total, general

21   unsecured, prepetition claim for Smartwool in the amount of $112,598.97.   However,

22   TWC now asserts that it was entitled to apply various credits towards Smartwool's pre-

23   petition claim.   Additionally TWC asserts that certain post-petition credits should be

24   applied to Smartwool's post-petition invoices. In order to settle the parties' disputes, the

25   parties entered into a Settlement Agreement dated March 2, 2010 (the "Smartwool

26   Agreement").  The Smartwool Agreement stipulates that Smartwool's total allowed pre-

27

28

[2]  Smartwool has not filed a formal proof of claim in these cases.  However, based on its discussions with Smartwool, the Debtors believe that Smartwool would have filed a proof of claim for at least $112,621.71 if the Debtors had not entered into the attached Settlement Agreement.

1    petition claim against TWC shall be $27,279.71 and that TWC shall have a post-petition

2    credit of $51,067.00 to be applied to Smartwool's post-petition invoices.   A true and

3    correct copy of the Smartwool Agreement is attached as Exhibit 1.

4    **B.**    **The Unit 1016 Atlantic City Lease Dispute and Settlement**

5        On November 20, 2008, Atlantic City Associates Number Two (S-1) LLC the

6    landlord with respect to a leased Big Dog store located in Atlantic City, filed suit against

7    Big Dog in the Superior Court of New Jersey.   A default judgment was entered against

8    Big Dog and the Debtors listed the lawsuit in their schedules filed on January 20, 2010,

9    though they did not schedule Atlantic City Associates Number Two (S-1) LLC as an

10   unsecured creditor.

11       Based upon the default judgment, Atlantic City Associates Number Two (S-1) LLC

12   asserts a general unsecured claim against Big Dog of $130,008.01 plus attorneys' fees and

13   other charges.[3]   The Debtors dispute the amount claimed by Atlantic City Associates

14   Number Two (S-1) LLC and believe the judgment could be set aside.   Through the

15   Settlement Agreement attached hereto as Exhibit 2, however, the parties have agreed to

16   settle their disputes by stipulating that Atlantic City Associates Number Two (S-1) LLC

17   shall have an allowed general unsecured claim against Big Dog in the amount of $75,000

18   in full satisfaction of all claims associated with this lease.

19   **C.**    **The 7603 Carson Boulevard Lease Dispute and Settlement**

20       On or about March 3, 2010 CREA/PPC Long Beach Town Center PO, LLC, the

21   landlord with respect to a leased Big Dog store located in Long Beach, California, filed

22   Proof of Claim # 173 in the Big Dog chapter 11 case asserting a general unsecured claim

23   against Big Dog in the amount of $25,044 on account of an alleged breach of its lease.

24   The Debtors did not list CREA/PPC Long Beach Town Center PO, LLC as an unsecured

25   creditor on their schedules and dispute the claimed amount based on the landlord's

26

27   [3]   Atlantic City Associates (S-1) LLC has not filed a formal proof of claim in these cases.  However, based on the
     Debtors' discussions with Atlantic City Associates (S-1) LLC, the Debtors believe that Atlantic City Associates
28   (S-1) LLC would have filed a proof of claim against Big Dog for at least $130,008.01 if the Debtors had not
     entered into the attached settlement.

1    mitigation obligations and certain rent offsets.  By the Settlement Agreement attached

2    hereto as Exhibit 3, the parties have agreed to settle this dispute by stipulating that

3    CREA/PPC Long Beach Town Center PO, LLC shall have an allowed general unsecured

4    claim against Big Dog of $8,300 in full satisfaction of its claim.

5    **D.    The 655 Fifth Avenue Lease Dispute and Settlement**

6          Minanis, Inc., the landlord with respect to a leased store located at 655 Fifth

7    Avenue South in Naples, Florida, asserted a general unsecured claim against TWC in the

8    amount of $63,532.20 on account of an alleged breach of lease.[4]  The Debtors scheduled

9    this claim in the amount of $9,594.86 and dispute the amount claimed by Minanis, Inc.

10   based on the landlord's mitigation obligations and certain rent offsets.  By the Settlement

11   Agreement attached hereto as Exhibit 4, the parties have agreed to settle this dispute by

12   stipulating that Minanis, Inc. shall have an allowed general unsecured claim against TWC

13   of $18,000 in full satisfaction of all its claims against the Debtors with respect to this

14   lease.

15   **E.    The 168 John's Pass Boardwalk Lease Dispute and Settlement**

16         Hubbard Properties LLC, the landlord with respect to a leased store located at 168

17   John's Pass Boardwalk, Madeira Beach, Florida asserted a general unsecured claim

18   against TWC of $50,076 on account of an alleged breach of lease.[5]   The Debtors

19   scheduled this claim in the amount of $7,925.68 and dispute the amount claimed by

20   Hubbard Properties LLC based on the landlord's mitigation obligations and certain rent

21   offsets.  By the Settlement Agreement attached hereto as Exhibit 5, the parties have

22   agreed to settle this dispute by stipulating that Hubbard Properties LLC shall have an

23   allowed general unsecured claim against TWC of $13,000 in full satisfaction of its claim.

24

25

26   [4]   Minanis, Inc. has not filed a formal proof of claim in these cases.  However, based upon the Debtors' discussions
          with Minanis, Inc., the Debtors believe that Minanis, Inc. would have filed a proof of claim against TWC for at

27        least $63,532.20 if the Debtors had not entered into the attached settlement.
     [5]   Hubbard Properties, LLC has not filed a formal proof of claim in these cases.  However, based upon the Debtors'

28        discussions with Hubbard Properties, LLC, the Debtors believe that Hubbard Properties, LLC would have filed a
          proof of claim against TWC for at least $50,076 if the Debtors had not entered into the attached settlement.

**F.      The 206 John's Pass Boardwalk Lease Dispute and Settlement**

Orcutt/Critelli Properties, the landlord with respect to a leased store located at 206 John's Pass Boardwalk, Madeira Beach, Florida, asserts a prepetition claim against TWC for $5,600 on account of an alleged breach of lease.[6]  The Debtors did not schedule an unsecured claim in connection with this lease and dispute the amount claimed by Orcutt/Critelli Properties based on the landlord's mitigation obligations and certain rent offsets.  By the Settlement Agreement attached hereto as Exhibit 6, the parties have agreed to settle this dispute by stipulating that Orcutt/Critelli Properties shall have an allowed general unsecured claim of $1,300 against TWC in full satisfaction of its claim.

**G.      The 362 John Ringling Boulevard Suite C Lease Dispute and Settlement**

On or about January 11, 2010, Bayrock Investment Co., the landlord with respect to a leased store located at 362 John Ringling Boulevard, Suite C, Sarasota, Florida, filed proof of claim no. 46 in the TWC bankruptcy asserting a pre-petition claim of $50,317.15 on account of an alleged breach of lease.  The Debtors scheduled this claim in the amount of $7,605.94 and dispute the amount claimed by Bayrock Investment Co. based on the landlord's mitigation obligations and certain rent offsets.  By the Settlement Agreement attached hereto as Exhibit 7, the parties have agreed to settle this dispute by stipulating that Bayrock Investment Co. shall have an allowed general unsecured claim of $25,159 against TWC in full satisfaction of its claim.

**H.      The Ken Atchison Settlement**

In 2008, as part of the acquisition of the Natural Comfort shoe chain, including the "Natural Comfort" trademark, TWC issued a $1,700,000, three-year unsecured promissory note to the seller, Ken Atchison (the "Atchison Note").  Holdings guaranteed the Atchison Note. The principal portion of the Atchison Note is payable on January 15, 2011, subject to a subordination agreement in favor of Wells Fargo Retail Finance, LLC ("WFRF").  The Atchison Note bears an interest rate of 7.0% and accrued interest is

---

[6]   Orcutt/Critelli Properties have not filed a formal proof of claim in these cases.  However, based upon the Debtors' discussions with Orcutt/Critelli Properties, the Debtors believe that Orcutt/Critelli Properties would have filed a proof of claim against TWC for at least $5,600 if the Debtors had not entered into the attached settlement.

8

1  payable quarterly. In connection with the sale, Mr. Atchison provided the Debtors with a

2  Noncompetition and Nonsolicitation Agreement (the "Noncompete Agreement"). The

3  Noncompete Agreement provides that until January 2018 neither Ken Atchison nor his

4  affiliates will, directly or indirectly, engage or plan to become engaged in any business

5  that sells certain comfort shoe brands with the exception of a store in Gatlinburg, TN.

6       In exchange for a $600,000 reduction of the note, the Debtors have agreed to assign

7  to Ken Atchison all of their interests in the "Natural Comfort" trade mark and amend the

8  Noncompete Agreement to limit its geographic scope to a 5 mile radius from any TWC

9  store existing as of the Plan's Effective Date. TWC will then issue an amended and

10  restated note in favor of Ken Atchison in the amount of $1,100,000, which will be

11  guaranteed by Holdings. A copy of the agreement with respect to the Atchison Note is

12  attached hereto as Exhibit 8.

13  I.  **The Employee Stock Option Note Settlement**

14       On May 9, 2007, Holdings purchased from certain of its officers vested employee

15  stock options held by them that would otherwise have expired on or before May 9, 2008.

16  Options for a total of 245,000 shares were purchased from the following five officers:

17  Roberta Morris, Anthony J. Wall, Douglas Nilsen, David Wolf, and John Otchis. The

18  purchase price was $16.00 per share, less the exercise price of the options, which ranged

19  from $6.50 to $10.00 per share. The $16.00 price represented a discount of approximately

20  5% from the May 9, 2007 closing price of $16.80. The net purchase price was

21  $1,965,000. Holdings paid for the options by delivery of employee stock option notes

22  bearing interest at 7% per annum and payable in two equal installments on April 10, 2008

23  and April 10, 2009 (the "Option Notes").

24       Holdings paid the first installment of principal due under the Option Notes. The

25  final installment of principal came due on April 10, 2009 (the Maturity Date), but was not

26  paid. Holdings continued, however, to pay interest at the rate of 7% per annum on the

27  Option Notes. On the Petition Date, as reflected on the Holdings' Schedules of Assets

28  and Liabilities, the total amount outstanding under the Option Notes was approximately

1 | $995,312.

2 | The Settlement Agreement executed January 28, 2010 by and between Holdings

3 | and the holders of the Option Notes settles the amount of principal owed to each note

4 | holder, extends the term of payment by 1 year with respect to each note holder, and

5 | provides that Holdings may prepay any of the Option Notes in full at a 20% discount if

6 | the note is paid within 30 days of the Effective Date as defined in the Plan.  A true and

7 | correct copy of the Settlement Agreement with respect to the Option Notes is attached

8 | hereto as Exhibit 9.

9 | ### III.

10 | ### ARGUMENT

11 | **A.**    **Standards for Approval of Compromises of Claim**

12 | Bankruptcy Rule 9019(a) provides that:

13 |
14 | On motion by the [debtor in possession] and after a hearing on
notice to creditors, the United States trustee, the debtor and
indenture trustees as provided in Rule 2002 and to such other
15 | entities as the court may designate, the court may approve a
compromise or settlement.[7]

16 |

17 | The approval or rejection of a proposed compromise is within the discretion of the

18 | Court and is to be determined by the particular circumstance of each case.[8]  The Ninth

19 | Circuit has long recognized that "[t]he bankruptcy court has great latitude in approving

20 | compromise agreements."[9]  "The purpose of a compromise agreement is to allow the

21 | [debtor in possession] and the creditors to avoid the expenses and burdens associated with

22 | litigating sharply contested and dubious claims."[10]  Accordingly, in approving a settlement

23 | agreement, the Court need conduct neither an exhaustive investigation into the validity,

24 |

25 | [7]  Fed. R. Bankr. P. 9019(a).

26 | [8]  *See United States of America v. Alaska National Bank of the North (In re Walsh Construction, Inc.)*,
669 F.2d 1325, 1328 (9th Cir. 1982).

27 | 9   *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).

28 | 10  *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir.), cert. denied, 479 U.S.
854 (1986).

1    nor a mini-trial on the merits, of the claims sought to be compromised.[11]   Rather, it is

2    sufficient that the Court find that the settlement was negotiated in good faith and is

3    reasonable, fair, and equitable.[12]

4         The burden of establishing the fairness of the compromise rests on the proponent.[13]

5    The debtor or trustee is required to demonstrate that legal evaluations have been made by

6    counsel experienced in such matters and that sufficient investigation has been conducted

7    to enable such counsel to make an informed decision.[14]

8         In determining the acceptability of a proposed compromise in this Circuit, the court

9    should consider the factors set forth in the *A&C Properties* case: (a) The probability of

10   success in the litigation; (b) the difficulties, if any, to be encountered in the matter of

11   collection; (c) the complexity of the litigation involved, and the expense, inconvenience,

12   and delay necessarily attending it; and (d) the paramount interest of the creditors and a

13   proper deference to their reasonable views.[15]

14        Consideration of these factors does not require the Court to decide the questions of

15   law and fact raised in the controversies sought to be settled, or to determine whether the

16   settlement presented is the best one that could possibly have been achieved.   Rather, the

17   Court need only canvass the issues to determine whether the settlement falls "below the

18   lowest point in the zone of reasonableness."[16]   Finally, although the Court should give

19   deference to the reasonable views of creditors, "objections do not rule.   It is well

20

21   _____

     11  *United States v. Alaska National Bank (In re Walsh Constr., Inc.),* 669 F.2d 1325, 1328 (9th Cir.
22       1982).

     12  *In re A & C Properties,* 784 F.2d at 1381.
23

     13  *See Id.*
24
     14  *See Feder v. Harrington,* 58 F.R.D. 171, 174-75 (S.D.N.Y. 1972).

25   15  *Martin v. Kane (In re A&C Properties),* 784 F.2d 1377, 1381 (9th Cir. 1986); *see also, Lambert v.
         Flight Transportation (Flight Transportation Corporation Securities Litigation),* 730 F.2d 1128, 1135
         (8th Cir.1984); *cert. denied nom, Reavis & McGrath v. Antinore,* 469 U.S. 1207, 105 S. Ct. 169, 84 L.
26       Ed. 2d 310 (1985).

27   16  *Newman v. Stein,* 464 F.2d 689, 698 (2d Cir.), *cert. denied sub nom. Benson v. Newman,* 409 U.S.
         1039 (1972); *see also Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Services, Inc.),* 762 F.2d
28       185, 189 (2d Cir. 1985); *Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608 (2d Cir.), *cert.
         denied,* 464 U.S. 822 (1983).

established that compromises are favored in bankruptcy."[17]

**B.    The Settlement Agreements Are Fair And Equitable and Satisfy the A & C Properties Factors**

The application of the A&C Properties factors to the compromises before this Court demonstrates the reasonableness and fairness of the proposed settlements and compromises.  At least three of the *A&C Properties* factors weigh in favor of approving the instant settlements.  First the Debtors' General Counsel, in consultation with the Debtors' bankruptcy counsel, has reviewed the claims against the Debtors and evaluated the probability of success in objecting to those claims and has taken those probabilities into consideration when deciding whether or not to enter into the Settlement Agreements. Second, the significant expense and inconvenience associated with objecting to the instant claims and continuing to litigate in and outside of the Bankruptcy Court was considered by the Debtors when deciding to enter into the Settlement Agreements.    Third, the paramount interests of the creditors are served by these Settlement Agreements in two ways: First, all creditors benefit because these Settlement Agreements are an integral part of the Debtors' Plan, which the Debtors believe will provide a greater return to all creditors than the other possible options.  Second the Settlement Agreements are in the interests of the individual creditors that are parties to the Settlement Agreements because the agreements avoid the costs associated with continued litigation and provide the creditors with an allowed claim on the Plan's distribution date.

The creditor in each of the disputes outlined above asserted a significant claim against the Debtors, which the Debtors disputed in whole or in part.  However, upon consideration of: (1) the potential costs, complexities, and uncertainty involved in litigating these disputes in state court or objecting to these claims in bankruptcy court, which litigation would be intensively fact-based; and (2) the relative strength of the Debtors' position vis-à-vis each individual creditor, the Debtors believe that the Settlement Agreements are reasonable and are in the best interest of the Debtors' estates.

---

[17]    *In re Carson,* 82 B.R. 847, 853 (Bankr. S.D. Ohio 1994) (internal citations omitted); *In re Lee WayHolding Co.,* 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990).

**C.    Manner and Form of Notice.**

No trustee or examiner has been appointed in these Chapter 11 Cases. The Debtors have provided notice of filing of the Motion to:  (a) the U.S. Trustee; (b) counsel to WFRF, the Debtors' secured lender; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to the plaintiffs / claimants who are parties to the Settlement Agreements; (e) all creditors whose interests are affected by this Motion; and (f) any persons entitled to special notice2.  Due to the nature of the relief requested, the Debtors respectfully submit that no further notice of this Motion is required.

<div align="center">

**IV.**

**CONCLUSION**

</div>

**WHEREFORE**, based on the foregoing Motion and Memorandum of Points and Authorities and the Declaration of Anthony J. Wall; the Notice of the Motion; all pleadings and records on file in these cases; all matters that are subject to judicial notice; and all other evidence that may be introduced at or prior to any hearing on this Motion, the Debtors respectfully request this Court enter an order: (1) approving the compromises and Settlement Agreements described in this Motion; (2) authorizing the Debtors to enter compromises on substantially the terms and conditions set forth in the Settlement Agreements; (3) authorizing the Debtors to execute any and all documents necessary to effectuate the Settlement Agreements; (4) allowing the Disputed Claims as set forth in the Settlement Agreements and this Motion, and otherwise disallowing the Disputed Claims; and (5) granting to the Debtors any and other further relief as may be necessary and appropriate.

DATED: April 9, 2010

/s/ *M. Douglas Flahaut*
M. DOUGLAS FLAHAUT
ARENT FOX LLP
Attorneys for the Debtors and Debtors in Possession

## DECLARATON OF ANTHONY J. WALL

I, Anthony J. Wall, declare as follows:

1.    I am over 18 years of age.  If called as a witness, I could and would competently testify with respect to the matters set forth in this declaration from my own personal knowledge or from knowledge gathered from others within the Debtors' organization, my review of relevant documents, or my opinion based upon my experience concerning the Debtors' operations.

2.    I am the Executive Vice President and General Counsel of The Walking Company Holdings, Inc., f/k/a Big Dog Holdings, Inc., and its two wholly owned subsidiaries, The Walking Company and Big Dog USA, Inc.  In this capacity, I am generally familiar with the legal, business, and financial affairs of the Debtors.  I submit this declaration in support of the Debtors' Omnibus Motion for an Order Approving Certain Settlement Agreements (the "Motion").

3.    Headquartered in Santa Barbara, California, the Debtors' business consists of two distinct retail operations.  The Debtors' operations are largely focused on TWC, which is a leading specialty retailer of authentic comfort footwear.  TWC generated approximately 93% of the Debtors' sales in 2009.  Big Dog is a retailer of a lifestyle collection of popular-priced T-shirts, casual sportswear, and accessories featuring the Big Dog's trademarks.  On a consolidated basis, the Debtors employ over 1,600 individuals across the country.

4.    On December 7, 2009 (the "Petition Date"), the Debtors commenced bankruptcy cases by filing voluntary Chapter 11 petitions under the Bankruptcy Code. Since the Petition Date, as authorized under Bankruptcy Code Sections 1107 and 1108, the Debtors have operated their business and managed their affairs as debtors in possession.  The above-captioned chapter 11 cases are being jointly administered for procedural purposes.

5.    On February 1, 2010, the Debtors filed their Original Joint Chapter 11 Plan (Dated February 1, 2010) [Doc. No. 223] (as subsequently amended, the "Plan") along

with their Disclosure Statement for Debtors' Original Joint Chapter 11 Plan (Dated February 1, 2010) [Doc. No. 224] (as subsequently amended, the "Disclosure Statement"). A hearing on the adequacy of the Debtors' Disclosure Statement was held on March 12, 2010 and the Disclosure Statement was approved. A hearing on the confirmation of the Debtors' Plan is set for April 23, 2010.

6.    I have reviewed the Motion and believe that the factual contentions therein are true and correct. As General Counsel to the Debtors, part of my job is to evaluate claims asserted against the Debtors. Specifically, I have reviewed those claims that are the subject of the Settlement Agreements attached to the Motion as Exhibits 1 – 9. I have also thoroughly reviewed the Settlement Agreements themselves. In light of the complexity of the underlying claims, the cost of litigation, and the Debtors' chances of successfully litigating the matter or otherwise resolving the matter without a stipulation, it is my opinion that the Settlement Agreements are in the best interest of the Debtors, the Debtors' creditors, and the Debtors' estates.

7.    In addition to valid business justifications supporting the Settlement Agreements, the Settlement Agreements attached were executed in good faith and are the product of arm's length negotiations between the Debtors and the various other parties. Over the course of the past three months I personally was involved in the negotiations leading to the Settlement Agreements and can attest that the final agreements struck by the parties were done so without any collusion between the parties. Rather, as discussed above, there were valid business reasons for each of the Settlement Agreements considering the contingencies involved, the costs of litigation, and all other relevant factors.

///

///

///

///

///

15

8.    Overall, I believe the Settlement Agreements are fair and reasonable and in the best interest of the estates.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of April, 2010, at Santa Barbara, California.

ANTHONY J. WALL

16

# EXHIBIT 1

March 2, 2010


SMARTWOOL CORPORATION
3495 Airport Circle
Steamboat Springs, CO  80487

   As you know, on December 7, 2009 (the "Petition Date") The Walking Company
("TWC") filed a voluntary petition for relief under Chapter 11 of Title 11, United States code
(the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of
California (the "Bankruptcy Court").  Prior to the Petition Date, and in the ordinary course of
business, SmartWool shipped goods to TWC in accordance with invoices that remain unpaid in
the claim amount of $112,621.71.  SmartWool agrees to allow TWC certain pre-petition and
post-petition credits solely for the purpose of this agreement and not on an ongoing basis.  By
this letter agreement (the "Agreement") TWC and SmartWool seek to reconcile and agree upon
such amounts.

   SmartWool agrees solely for the purposes of this agreement to allow TWC an $85,342.00
credit against SmartWool's $112,621.71 pre-petition claim, leaving SmartWool with a net pre-
petition claim of $27,279.71. TWC agrees, within two weeks of the execution of this agreement
to amend its Schedules of Asset and Liabilities, as well as Exhibit H to its First Amended
Disclosure Statement (General Unsecured Claims), to reflect that SmartWool has a pre-petition
claim of $27,279.71 (net of such credit), and TWC agrees that such amount shall not be subject
to further claims, defenses or set offs by TWC.  SmartWool agrees that it will not object to the
scheduling of its prepetition claim in such amount and will not make a pre-petition claim in
excess of $27,279.71.


{NY095136;1}

TWC and SmartWool further agree that TWC may apply $51,067.00 as a credit towards post-petition invoices as they become due. TWC shall provide SmartWool with a detailed analysis of its application of the $51,067.00 against post-petition invoices immediately after its application of same.

TWC and SmartWool shall pay their own expenses, including attorneys' fees and costs, incurred in connection with this matter or any matter within the scope of this Agreement. This Agreement records the complete understanding of the parties regarding SmartWool's pre-petition claim and TWC's post-petition credit and supersedes any and all prior or contemporaneous statements or communications, whether written or oral, all of which are merged into and survived solely by this Agreement.

Nothing in this Agreement is intended nor shall it be construed to affect, in any way, any rights, claims and/or interest of The Timberland Company in this case as against the Debtor or otherwise.

THE WALKING COMPANY

By: _____ 3/4/10
121 Gray Avenue
Santa Barbara, CA 93101

ACKNOWLEDGED AND AGREED TO:

Dated: March 4 , 2010

SMART WOOL CORPORATION

By: _____
ROBERT RANOFTL , Title CONTROLLER
3495 Airport Circle
Steamboat Springs, CO 80487

{NY095136;1}

# EXHIBIT 2

## STIPULATION DETERMINING THE TREATMENT OF CLAIM/S

This Stipulation (the "Stipulation") is entered into by and among The Walking Company (the "Company") and its debtor affiliates, The Walking Company Holdings, Inc. ("Holdings") and Big Dog USA, Inc. ("Big Dog") (collectively, the "Debtors"), on one hand, and Atlantic City Associates (S-1), LLC ("Creditor"), on the other hand. This Stipulation is based on the following facts:

## RECITALS

A. The Debtors commenced voluntary cases (the "Cases") under Chapter 11 of the United States Bankruptcy Code on December 7, 2009 (the "Petition Date"), which cases are pending before the United States Bankruptcy Court for the Central District of California (the "Court"). The Debtors are operating their business and managing their affairs as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

B. Creditor was a lessor of commercial real property (shopping center space commonly known as Unit 1016 located in the area of Atlantic City known as "The Walk") to Big Dog pursuant to a lease dated July 18, 2006 (collectively with any and all amendments or modifications thereto, the "Lease");

C. A dispute later arose regarding Big Dog's obligations and performance under the Lease and, on or about November 20, 2008, Creditor filed a lawsuit ("Lawsuit") in the Superior Court of New Jersey, Law Division, Atlantic County, Docket No.: ATL-L-4051-08 asserting various causes of action and damages;

D. Creditor has asserted that it is entitled to a general unsecured claim against Big Dog in the amount of $130,008.01 (the "Total Claim") and intends to file a proof of claim in the Cases in the Total Claim Amount plus attorneys' fees and other charges due under the Lease and applicable law; and

E. Big Dog disputes the amount of the Total Claim, believes that it may have grounds to set aside the judgment entered in the Lawsuit, and believes that it has valid defenses to the Lawsuit. Accordingly, Big Dog disputes that Creditor is entitled to an allowed general unsecured claim in the Total Claim amount;

F. Big Dog, in its business judgment, believes it is in the best interest of its bankruptcy estate and its creditors to resolve this matter in accordance with the terms set forth in this Stipulation.

## AGREEMENT

**NOW, THEREFORE**, based upon the foregoing recitals, in consideration of the promises and mutual covenants contained in this Stipulation, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtors and Creditor (collectively, the "Parties") agree as follows:

1. The Allowed Pre-Petition Claim.   Creditor will receive an allowed claim against Big Dog in the total amount of Seventy-Five Thousand Dollars ($75,000)(the "Allowed Claim"), which will be allowed as a general unsecured claim against Big Dog. Big Dog agrees that Creditor shall receive, on account of its Allowed Claim, a payment in cash or cash equivalents in the amount of the Allowed Claim, by no later than May 15, 2010 (the "Payment Deadline"). Upon Creditor's receipt of the payment in full of the Allowed Claim by the Payment Deadline, all of the Creditor's claims against Big Dog and its bankruptcy estate shall be deemed to be paid in full, with any unpaid balance released, and any other claims that have been scheduled on behalf of, or filed by Creditor in the above-reference Bankruptcy Cases, or that Creditor may otherwise seek to assert in these Cases, will be deemed to be disallowed in their entirety without further Order of this Court.

2.   General Releases by Creditor.   Upon Creditor's receipt of full payment of the Allowed Claim by the Payment Deadline, Creditor, on behalf of itself and its predecessors, successors, heirs, and assigns, hereby fully and forever releases and discharges the Debtors and their predecessors, successors, assigns, managers, principals, shareholders, directors, officers, employees, agents, and attorneys and all entities affiliated with any of them from any and all claims, actions, rights, agreements, or liabilities—whether arising under federal or state statute or common law. This is a general release that covers all known and unknown claims arising out of all known and unknown facts from the beginning of time through the date of this Stipulation, including without limitation any claims relating to or arising from or in connection with the Lease. This is not a release of—and the only exception to this release pertains to—the Allowed Claim and any claims against the Parties relating to their obligations under this Stipulation.

3.   General Releases by the Company.   Upon Creditor's receipt of full payment of the Allowed Claim by the Payment Deadline, the Debtors, on behalf of themselves and their predecessors, successors, assigns, managers, principals, shareholders, directors, officers, employees, agents, and attorneys and all entities affiliated with any of them, hereby fully and forever releases and discharges the Creditor and its predecessors, successors, heirs, and assigns from any and all claims, actions, rights, agreements, or liabilities—whether arising under federal or state statute or

common law—based upon or arising out of any events, facts, or circumstances. This is a general release that covers all known and unknown claims arising out of all known and unknown facts from the beginning of time through the date of this Stipulation. This is not a release of any claims against the Parties relating to their obligations under this Stipulation.

4.   <u>Waiver of California Civil Code Section 1542</u>.   Each of the Parties acknowledges familiarity with California Civil Code section 1542, which provides that:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

To the full extent that they may lawfully do so, the Parties expressly waive and relinquish all rights and benefits that they have or may have under California Civil Code section 1542 or any similar law. Each of the Parties acknowledges that he, she, or it has been advised by counsel as to the significance of a waiver of Section 1542 as it applies to unknown claims and that the waivers in this Stipulation are made knowingly and voluntarily. Each of the Parties further acknowledges that, to the extent he, she, or it has not fully investigated or does not know about any facts, events, or circumstances occurring at any time in the past through the effective date of this Stipulation, those unknown facts, events, and circumstances, and in particular, any and all unknown claims arising out of them, are hereby expressly waived and released.

5.   <u>No Assignments</u>.   Each of the Parties represents and warrants that there has been no assignment or transfer whatsoever of any of the claims or any of the Parties' interests in any of the claims released herein. Each of the Parties agrees to defend and indemnify the other persons and entities released in this Stipulation against any claim based upon, arising out of, or arising in connection with any such assignment or transfer.

6.   <u>No Oral Modifications</u>.   This Stipulation may not be modified except as mutually agreed to in writing.

7.   <u>Successors and Assigns</u>.   All of the terms, covenants, and conditions contained in this Stipulation will inure to the benefit of, and be binding upon, Creditor, Debtors, their successors, and their permitted assigns, including without limitation, any trustee appointed in this case.

8.   <u>Other Documents</u>.   The Debtors and Creditor will execute any other and further documents or instructions and perform any other and further acts as may be

necessary or appropriate to consummate the transactions contemplated under this Stipulation.

9.   Counterparts.  This Stipulation may be executed in several counterparts, and any and all such executed counterparts will constitute a single agreement binding on each party to this Stipulation.  Facsimiles of signatures may be taken as the actual signatures, and each party agrees to furnish the other with documents bearing the original signatures within five business days after the facsimile transmission.

10.   Court Approval.  Promptly after the parties' execute this Stipulation, Big Dog will file a motion requesting bankruptcy court approval of this stipulation, and will exercise reasonable diligence and efforts to obtain such court approval consistent with the requirements of the Bankruptcy Code and Bankruptcy Rules.  In the event that the Bankruptcy Court does not approve such motion, or even if approved Big Dog fails to make the payment as and when required by Paragraph 1 above, this Stipulation shall be null and void as if the parties had never entered into it.

IN WITNESS WHEREOF, the Debtors, on the one hand, and Creditor, on the other hand, do hereby execute this Stipulation on January _28_, 2010.

THE WALKING COMPANY, THE WALKING COMPANY HOLDINGS, INC., AND BIG DOG USA, INC.

By: _____
          ANTHONY J. WALL
Its:_____ Executive Vice President

ATLANTIC CITY ASSOCIATES NUMBER TWO (S-1), LLC

By: _____

Its: _Authorized Person_____

# EXHIBIT 3

STIPULATION DETERMINING THE TREATMENT OF CLAIM/S

This Stipulation (the "Stipulation") is entered into by and among The Walking Company (the "Company") and its debtor affiliates, The Walking Company Holdings, Inc. ("Holdings") and Big Dog USA, Inc. ("Tenant") (collectively, the "Debtors"), on one hand, and CREA/PPC Long Beach Towne Center PO, LLC, a Delaware limited liability company ("Landlord" or "Creditor"), on the other hand. This Stipulation is based on the following facts:

RECITALS

A. The Debtors commenced voluntary cases (the "Cases") under Chapter 11 of the United States Bankruptcy Code on December 7, 2009 (the "Petition Date"), which cases are pending before the United States Bankruptcy Court for the Central District of California (the "Court"). The Debtors are operating their business and managing their affairs as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

B. Landlord and Tenant previously entered into that certain Sublease Agreement, dated October 12, 2001, as amended by that Sublease Modification Agreement #1, dated October 26, 2006 (collectively, the "Lease") pursuant to which Tenant leased from Landlord certain premises located at 7603 Carson Boulevard, Long Beach, California ("Premises").

C. Landlord has asserted that it is entitled to a total claim against Tenant of $25,044 (the "Total Claim") for an alleged breach of the Lease by Tenant. Landlord has filed or intends to file a proof of claim in the Cases in the Total Claim amount.

D. Debtors dispute that the Total Claim is owing to Landlord and believe that they have valid defenses and offsets to the Total Claim amount based upon, among other things, Landlord's mitigation obligations and other credits.

AGREEMENT

NOW, THEREFORE, based upon the foregoing recitals, in consideration of the promises and mutual covenants contained in this Stipulation, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtors and Landlord (collectively, the "Parties") agree as follows:

1. The Allowed Pre-Petition Claims.  Creditor will receive an allowed claim against Tenant in the total amount of Eight Thousand Three Hundred Dollars ($8,300) (the "Allowed Claim"), which will be allowed as a general unsecured claim against Tenant.  Tenant agrees that Creditor shall receive, on account of its Allowed Claim, a payment in cash or cash equivalents in the amount of the Allowed Claim, by no later than May 15, 2010 (the "Payment Deadline"). Upon Creditor's receipt of the payment in full

of the Allowed Claim by the Payment Deadline, all of the Creditor's claims against Tenant and its bankruptcy estate shall be deemed to be paid in full, with any unpaid balance released, and any other claims that have been scheduled on behalf of, or filed by Creditor in the above-reference Bankruptcy Cases, or that Creditor may otherwise seek to assert in these Cases, will be deemed to be disallowed in their entirety without further Order of this Court.

2.    General Releases by Landlord.    Landlord, on behalf of itself and its predecessors, successors, heirs, and assigns, hereby fully and forever releases and discharges the Debtors and their predecessors, successors, assigns, managers, principals, shareholders, directors, officers, employees, agents, and attorneys and all entities affiliated with any of them from any and all claims, actions, rights, agreements, or liabilities—whether arising under federal or state statute or common law-- based upon or arising out of any events, facts, or circumstances, including without limitation, any claim arising from, in connection with, or pursuant to the Lease.  This is a general release that covers all known and unknown claims arising out of all known and unknown facts from the beginning of time through the date of this Stipulation.  This is not a release of—and the only exception to this release pertains to—the Allowed Claim and any claims against the Parties relating to their obligations under this Stipulation.

3.    General Releases by Tenant.    The Debtors, on behalf of themselves and their predecessors, successors, assigns, managers, principals, shareholders, directors, officers, employees, agents, and attorneys and all entities affiliated with any of them, hereby fully and forever releases and discharges Landlord and its predecessors, successors, heirs, and assigns from any and all claims, actions, rights, agreements, or liabilities—whether arising under federal or state statute or common law—based upon or arising out of any events, facts, or circumstances.  This is a general release that covers all known and unknown claims arising out of all known and unknown facts from the beginning of time through the date of this Stipulation.  This is not a release of any claims against the Parties relating to their obligations under this Stipulation.

4.    Waiver of California Civil Code Section 1542.    Each of the Parties acknowledges familiarity with California Civil Code section 1542, which provides that:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

To the full extent that they may lawfully do so, the Parties expressly waive and relinquish all rights and benefits that they have or may have under California Civil Code section 1542 or any similar law. Each of the Parties acknowledges that he, she, or it has been advised by counsel as to the significance of a waiver of Section 1542 as it applies to unknown claims and that the waivers in this Stipulation are made knowingly and voluntarily. Each of the Parties further acknowledges that, to the extent he, she, or it has not fully investigated or does not know about any facts, events, or circumstances occurring at any time in the past through the effective date of this Stipulation, those unknown facts, events, and circumstances, and in particular, any and all unknown claims arising out of them, are hereby expressly waived and released.

5.    No Assignments. Each of the Parties represents and warrants that there has been no assignment or transfer whatsoever of any of the claims or any of the Parties' interests in any of the claims released herein. Each of the Parties agrees to defend and indemnify the other persons and entities released in this Stipulation against any claim based upon, arising out of, or arising in connection with any such assignment or transfer.

6.    No Oral Modifications. This Stipulation may not be modified except as mutually agreed to in writing.

7.    Successors and Assigns. All of the terms, covenants, and conditions contained in this Stipulation will inure to the benefit of, and be binding upon, Landlord, Debtors, their successors, and their permitted assigns, including without limitation, any trustee appointed in this case.

8.    Other Documents. The Debtors and Landlord will execute any other and further documents or instructions and perform any other and further acts as may be necessary or appropriate to consummate the transactions contemplated under this Stipulation.

9.    Counterparts. This Stipulation may be executed in several counterparts, and any and all such executed counterparts will constitute a single agreement binding on each party to this Stipulation. Facsimiles of signatures may be taken as the actual signatures, and each party agrees to furnish the other with documents bearing the original signatures within five business days after the facsimile transmission.

10.    Court Approval. Promptly after the parties' execute this Stipulation, Tenant will file a motion requesting bankruptcy court approval of this stipulation, and will exercise reasonable diligence and efforts to obtain such court approval consistent with the requirements of the Bankruptcy Code and Bankruptcy Rules. In the event that the Bankruptcy Court does not approve such motion, or even if approved Tenant fails to make the payment as and when required by Paragraph 1 above, this Stipulation shall be

null and void as if the parties had never entered into it.

IN WITNESS WHEREOF, the Debtors, on the one hand, and Landlord, on the other hand, do hereby execute this Stipulation on January ~~February~~ 2, 2010.

THE WALKING COMPANY, THE WALKING
COMPANY HOLDINGS, INC., AND BIG DOG USA,
INC.

By: _____

Its: _____
    ANTHONY J. WALL
    Executive Vice President


LONG BEACH TOWNE CENTER PO, LLC, A
DELAWARE LIMITED PARTNERSHIP

By: _____

Its: _____VP_____

# EXHIBIT 4

STIPULATION DETERMINING THE TREATMENT OF CLAIM/S

This Stipulation (the "Stipulation") is entered into by and among The Walking Company ("Tenant") and its debtor affiliates, The Walking Company Holdings, Inc. ("Holdings") and Big Dog USA, Inc. (collectively, the "Debtors"), on one hand, and Minanis, Inc. ("Landlord"), on the other hand. This Stipulation is based on the following facts:

RECITALS

A. The Debtors commenced voluntary cases (the "Cases") under Chapter 11 of the United States Bankruptcy Code on December 7, 2009 (the "Petition Date"), which cases are pending before the United States Bankruptcy Court for the Central District of California (the "Court"). The Debtors are operating their business and managing their affairs as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

B. Landlord (as successor in interest to Blind Canyon Partnership) and Tenant (as successor to Ken Atchinson), are parties to that certain Lease, dated August 12, 2002, as amended by that certain Assignment and Assumption of Lease and Consent of Landlord, dated January 1, 2007, and that certain Letter Agreement, dated May 26, 2009 (collectively, the "Lease") pursuant to which Tenant leased from Landlord approximately 1340 square feet located at 655 Fifth Avenue South, Naples, Florida.

C. The Lease has been rejected in the Debtors Bankruptcy Cases.

D. Landlord has asserted that it is entitled to a total claim against Tenant of $ 63,532.20 (the "Total Claim").

E. Debtors dispute that the Total Claim is owing to Landlord and believe that they have valid defenses and offsets to the Total Claim amount based upon, among other things, Landlord's mitigation obligations and other credits.

AGREEMENT

NOW, THEREFORE, based upon the foregoing recitals, in consideration of the promises and mutual covenants contained in this Stipulation, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtors and Landlord (collectively, the "Parties") agree as follows:

1. Incorporation of Recitals. The above Recitals are incorporated herein as if set forth fully hereat.

2. The Allowed Pre-Petition Claims. Creditor will receive an allowed claim against Tenant in the total amount of Eighteen Thousand Dollars ($18,000) (the "Allowed Claim"), which will be allowed as a general unsecured claim against Tenant. Tenant

agrees that Creditor shall receive, on account of its Allowed Claim, a payment in cash or cash equivalents in the amount of the Allowed Claim, by no later than May 15, 2010 (the "Payment Deadline"). Upon Creditor's receipt of the payment in full of the Allowed Claim by the Payment Deadline, all of the Creditor's claims against Tenant and its bankruptcy estate shall be deemed to be paid in full, with any unpaid balance released, and any other claims that have been scheduled on behalf of, or filed by Creditor in the above-reference Bankruptcy Cases, or that Creditor may otherwise seek to assert in these Cases, will be deemed to be disallowed in their entirety without further Order of this Court.

3.    General Releases by Landlord. Landlord, on behalf of itself and its predecessors, successors, heirs, and assigns, hereby fully and forever releases and discharges the Debtors and their predecessors, successors, assigns, managers, principals, shareholders, directors, officers, employees, agents, and attorneys and all entities affiliated with any of them from any and all claims, actions, rights, agreements, or liabilities—whether arising under federal or state statute or common law-- based upon or arising out of any events, facts, or circumstances, including without limitation, any claim arising from, in connection with, or pursuant to the Lease. This is a general release that covers all known and unknown claims arising out of all known and unknown facts from the beginning of time through the date of this Stipulation. This is not a release of—and the only exception to this release pertains to—the Allowed Claim and any claims against the Parties relating to their obligations under this Stipulation.

4.    General Releases by Tenant. The Debtors, on behalf of themselves and their predecessors, successors, assigns, managers, principals, shareholders, directors, officers, employees, agents, and attorneys and all entities affiliated with any of them, hereby fully and forever releases and discharges Landlord and its predecessors, successors, heirs, and assigns from any and all claims, actions, rights, agreements, or liabilities—whether arising under federal or state statute or common law—based upon or arising out of any events, facts, or circumstances. This is a general release that covers all known and unknown claims arising out of all known and unknown facts from the beginning of time through the date of this Stipulation. This is not a release of any claims against the Parties relating to their obligations under this Stipulation.

5.    Waiver of California Civil Code Section 1542. Each of the Parties acknowledges familiarity with California Civil Code section 1542, which provides that:

> A general release does not extend to claims which the creditor
> does not know or suspect to exist in his or her  favor at the time
> of executing the release, which if known by him or her must
> have materially affected his or her settlement with the debtor.

To the full extent that they may lawfully do so, the Parties expressly waive and relinquish all rights and benefits that they have or may have under California Civil Code section 1542 or any similar law. Each of the Parties acknowledges that he, she, or it has been advised by counsel as to the significance of a waiver of Section 1542 as it applies to unknown claims and that the waivers in this Stipulation are made knowingly and voluntarily. Each of the Parties further acknowledges that, to the extent he, she, or it has not fully investigated or does not know about any facts, events, or circumstances occurring at any time in the past through the effective date of this Stipulation, those unknown facts, events, and circumstances, and in particular, any and all unknown claims arising out of them, are hereby expressly waived and released.

6.        No Assignments. Each of the Parties represents and warrants that there has been no assignment or transfer whatsoever of any of the claims or any of the Parties' interests in any of the claims released herein. Each of the Parties agrees to defend and indemnify the other persons and entities released in this Stipulation against any claim based upon, arising out of, or arising in connection with any such assignment or transfer.

7.        No Oral Modifications. This Stipulation may not be modified except as mutually agreed to in writing.

8.        Successors and Assigns. All of the terms, covenants, and conditions contained in this Stipulation will inure to the benefit of, and be binding upon, Landlord, Debtors, their successors, and their permitted assigns, including without limitation, any trustee appointed in this case.

9.        Other Documents. The Debtors and Landlord will execute any other and further documents or instructions and perform any other and further acts as may be necessary or appropriate to consummate the transactions contemplated under this Stipulation.

10.        Counterparts. This Stipulation may be executed in several counterparts, and any and all such executed counterparts will constitute a single agreement binding on each party to this Stipulation. Facsimiles of signatures may be taken as the actual signatures, and each party agrees to furnish the other with documents bearing the original signatures within five business days after the facsimile transmission.

11.    Court Approval. Promptly after the parties' execute this Stipulation, Tenant will file a motion requesting bankruptcy court approval of this stipulation, and will exercise reasonable diligence and efforts to obtain such court approval consistent with the requirements of the Bankruptcy Code and Bankruptcy Rules. In the event that the Bankruptcy Court does not approve such motion, or even if approved Tenant fails to

[Remainder of page intentionally left blank.]

make the payment as and when required by Paragraph 1 above, this Stipulation shall be

null and void as if the parties had never entered into it.

IN WITNESS WHEREOF, the Debtors, on the one hand, and Landlord, on the

other hand, do hereby execute this Stipulation on January 29 , 2010.

THE WALKING COMPANY, THE WALKING COMPANY
HOLDINGS, INC., AND BIG DOG USA, INC.

By: _____

Its: _____
ANTHONY J. WALL
Executive Vice President

MINANIS, INC.

By: _____

Its: V. P. _____

# EXHIBIT 5

STIPULATION DETERMINING THE TREATMENT OF CLAIM/S

This Stipulation (the "Stipulation") is entered into by and among The Walking Company ("Tenant") and its debtor affiliates, The Walking Company Holdings, Inc. ("Holdings") and Big Dog USA, Inc. (collectively, the "Debtors"), on one hand, and Hubbard Properties LLC. ("Landlord"), on the other hand. This Stipulation is based on the following facts:

RECITALS

A. The Debtors commenced voluntary cases (the "Cases") under Chapter 11 of the United States Bankruptcy Code on December 7, 2009 (the "Petition Date"), which cases are pending before the United States Bankruptcy Court for the Central District of California (the "Court"). The Debtors are operating their business and managing their affairs as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

B. Landlord and Tenant are parties to that certain Lease, dated December 24, 2007, as amended by that certain Amendment to Lease Agreement, dated May 7, 2009 (collectively, the "Lease") pursuant to which Tenant leased from Landlord approximately 975 square feet located at 168 John's Pass Boardwalk, Madeira Beach, Florida.

C. The Lease has been rejected in the Debtors Bankruptcy Cases.

D. Landlord has asserted that it is entitled to a total claim against Tenant of $ 50,076 (the "Total Claim").

E. Debtors dispute that the Total Claim is owing to Landlord and believe that they have valid defenses and offsets to the Total Claim amount based upon, among other things, Landlord's mitigation obligations and other credits.

AGREEMENT

NOW, THEREFORE, based upon the foregoing recitals, in consideration of the promises and mutual covenants contained in this Stipulation, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtors and Landlord (collectively, the "Parties") agree as follows:

1. Incorporation of Recitals. The above Recitals are incorporated herein as if set forth fully hereat.

2. The Allowed Pre-Petition Claims. Creditor will receive an allowed claim against Tenant in the total amount of Thirteen Thousand Dollars ($13,000)(the "Allowed Claim"), which will be allowed as a general unsecured claim against Tenant. Tenant agrees that Creditor shall receive, on account of its Allowed Claim, a payment in cash or cash equivalents in the amount of the Allowed Claim, by no later than May 15, 2010 (the "Payment Deadline"). Upon Creditor's receipt of the payment in full of the Allowed

Claim by the Payment Deadline, all of the Creditor's claims against Tenant and its bankruptcy estate shall be deemed to be paid in full, with any unpaid balance released, and any other claims that have been scheduled on behalf of, or filed by Creditor in the above-reference Bankruptcy Cases, or that Creditor may otherwise seek to assert in these Cases, will be deemed to be disallowed in their entirety without further Order of this Court.

3.    General Releases by Landlord.  Landlord, on behalf of itself and its predecessors, successors, heirs, and assigns, hereby fully and forever releases and discharges the Debtors and their predecessors, successors, assigns, managers, principals, shareholders, directors, officers, employees, agents, and attorneys and all entities affiliated with any of them from any and all claims, actions, rights, agreements, or liabilities—whether arising under federal or state statute or common law-- based upon or arising out of any events, facts, or circumstances, including without limitation, any claim arising from, in connection with, or pursuant to the Lease.  This is a general release that covers all known and unknown claims arising out of all known and unknown facts from the beginning of time through the date of this Stipulation.  This is not a release of—and the only exception to this release pertains to—the Allowed Claim and any claims against the Parties relating to their obligations under this Stipulation.

4.    General Releases by Tenant.  The Debtors, on behalf of themselves and their predecessors, successors, assigns, managers, principals, shareholders, directors, officers, employees, agents, and attorneys and all entities affiliated with any of them, hereby fully and forever releases and discharges Landlord and its predecessors, successors, heirs, and assigns from any and all claims, actions, rights, agreements, or liabilities—whether arising under federal or state statute or common law—based upon or arising out of any events, facts, or circumstances.  This is a general release that covers all known and unknown claims arising out of all known and unknown facts from the beginning of time through the date of this Stipulation.  This is not a release of any claims against the Parties relating to their obligations under this Stipulation.

5.    Waiver of California Civil Code Section 1542.  Each of the Parties acknowledges familiarity with California Civil Code section 1542, which provides that:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

To the full extent that they may lawfully do so, the Parties expressly waive and relinquish all rights and benefits that they have or may have under California Civil Code section 1542 or any

similar law. Each of the Parties acknowledges that he, she, or it has been advised by counsel as to the significance of a waiver of Section 1542 as it applies to unknown claims and that the waivers in this Stipulation are made knowingly and voluntarily. Each of the Parties further acknowledges that, to the extent he, she, or it has not fully investigated or does not know about any facts, events, or circumstances occurring at any time in the past through the effective date of this Stipulation, those unknown facts, events, and circumstances, and in particular, any and all unknown claims arising out of them, are hereby expressly waived and released.

6.      No Assignments. Each of the Parties represents and warrants that there has been no assignment or transfer whatsoever of any of the claims or any of the Parties' interests in any of the claims released herein. Each of the Parties agrees to defend and indemnify the other persons and entities released in this Stipulation against any claim based upon, arising out of, or arising in connection with any such assignment or transfer.

7.      No Oral Modifications. This Stipulation may not be modified except as mutually agreed to in writing.

8.      Successors and Assigns. All of the terms, covenants, and conditions contained in this Stipulation will inure to the benefit of, and be binding upon, Landlord, Debtors, their successors, and their permitted assigns, including without limitation, any trustee appointed in this case.

9.      Other Documents. The Debtors and Landlord will execute any other and further documents or instructions and perform any other and further acts as may be necessary or appropriate to consummate the transactions contemplated under this Stipulation.

10.      Counterparts. This Stipulation may be executed in several counterparts, and any and all such executed counterparts will constitute a single agreement binding on each party to this Stipulation. Facsimiles of signatures may be taken as the actual signatures, and each party agrees to furnish the other with documents bearing the original signatures within five business days after the facsimile transmission.

11.   Court Approval. Promptly after the parties' execute this Stipulation, Tenant will file a motion requesting bankruptcy court approval of this stipulation, and will exercise reasonable diligence and efforts to obtain such court approval consistent with the requirements of the Bankruptcy Code and Bankruptcy Rules. In the event that the Bankruptcy Court does not approve such motion, or even if approved Tenant fails to make the payment as and when required by Paragraph 1 above, this Stipulation shall be null and void as if the parties had never entered into it.

[Remainder of page intentionally left blank.]

IN WITNESS WHEREOF, the Debtors, on the one hand, and Landlord, on the

other hand, do hereby execute this Stipulation on January _____, 2010.

THE WALKING COMPANY, THE WALKING COMPANY
HOLDINGS, INC., AND BIG DOG USA, INC.

By: _____

Its: _____

HUBBARD PROPERTIES LLC

By: _Patricia Hubbard_____

Its: _C.F.O._____

# EXHIBIT 6

STIPULATION DETERMINING THE TREATMENT OF CLAIM/S

This Stipulation (the "Stipulation") is entered into by and among The Walking
Company ("Tenant") and its debtor affiliates, The Walking Company Holdings, Inc. ("Holdings")
and Big Dog USA, Inc. (collectively, the "Debtors"), on one hand, and Orcutt/Critelli Properties
("Landlord"), on the other hand. This Stipulation is based on the following facts:

RECITALS

A. The Debtors commenced voluntary cases (the "Cases") under Chapter 11 of the United
States Bankruptcy Code on December 7, 2009 (the "Petition Date"), which cases are pending before
the United States Bankruptcy Court for the Central District of California (the "Court"). The
Debtors are operating their business and managing their affairs as debtors and debtors in possession
pursuant to Bankruptcy Code sections 1107 and 1108.

B. Landlord and Tenant are parties to that certain Lease, dated January 8, 2008, as
amended by that certain First Amendment to Lease, dated February 3, 2009 (collectively, the
"Lease") pursuant to which Tenant leased from Landlord approximately 450 square feet located
at 206 John's Pass Boardwalk, Madeira Beach, Florida.

C. The Lease has been rejected in the Debtors Bankruptcy Cases.

D. Landlord has asserted that it is entitled to a total claim against Tenant of $_____
(the "Total Claim").

E. Debtors dispute that the Total Claim is owing to Landlord.

AGREEMENT

NOW, THEREFORE, based upon the foregoing recitals, in consideration of the
promises and mutual covenants contained in this Stipulation, and for other good and valuable
consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtors and
Landlord (collectively, the "Parties") agree as follows:

1. Incorporation of Recitals. The above Recitals are incorporated herein as if set forth
fully hereat.

2. The Allowed Pre-Petition Claims. Landlord will receive an allowed claim against
Tenant in the total amount of $1,300 (the "Allowed Claim"), which will be allowed as a general
unsecured claim against Tenant. Except as provided for herein, the Total Claim will be
disallowed, and any other claims that have been scheduled on behalf of, or filed by Landlord in
the above-referenced Bankruptcy Cases, or that Landlord may otherwise seek to assert in these
Cases, will be deemed to be disallowed in their entirety without further Order of this Court.

3. General Releases by Landlord. Landlord, on behalf of itself and its predecessors,
successors, heirs, and assigns, hereby fully and forever releases and discharges the Debtors and

their predecessors, successors, assigns, managers, principals, shareholders, directors, officers, employees, agents, and attorneys and all entities affiliated with any of them from any and all claims, actions, rights, agreements, or liabilities—whether arising under federal or state statute or common law-- based upon or arising out of any events, facts, or circumstances, including without limitation, any claim arising from, in connection with, or pursuant to the Lease. This is a general release that covers all known and unknown claims arising out of all known and unknown facts from the beginning of time through the date of this Stipulation. This is not a release of—and the only exception to this release pertains to—the Allowed Claim and any claims against the Parties relating to their obligations under this Stipulation.

4.      General Releases by Tenant. The Debtors, on behalf of themselves and their predecessors, successors, assigns, managers, principals, shareholders, directors, officers, employees, agents, and attorneys and all entities affiliated with any of them, hereby fully and forever releases and discharges Landlord and its predecessors, successors, heirs, and assigns from any and all claims, actions, rights, agreements, or liabilities—whether arising under federal or state statute or common law—based upon or arising out of any events, facts, or circumstances. This is a general release that covers all known and unknown claims arising out of all known and unknown facts from the beginning of time through the date of this Stipulation. This is not a release of any claims against the Parties relating to their obligations under this Stipulation.

5.      Waiver of California Civil Code Section 1542. Each of the Parties acknowledges familiarity with California Civil Code section 1542, which provides that:

> A general release does not extend to claims which the creditor
> does not know or suspect to exist in his or her favor at the time
> of executing the release, which if known by him or her must
> have materially affected his or her settlement with the debtor.

To the full extent that they may lawfully do so, the Parties expressly waive and relinquish all rights and benefits that they have or may have under California Civil Code section 1542 or any similar law. Each of the Parties acknowledges that he, she, or it has been advised by counsel as to the significance of a waiver of Section 1542 as it applies to unknown claims and that the waivers in this Stipulation are made knowingly and voluntarily. Each of the Parties further acknowledges that, to the extent he, she, or it has not fully investigated or does not know about any facts, events, or circumstances occurring at any time in the past through the effective date of this Stipulation, those unknown facts, events, and circumstances, and in particular, any and all unknown claims arising out of them, are hereby expressly waived and released.

6.      No Assignments. Each of the Parties represents and warrants that there has been

no assignment or transfer whatsoever of any of the claims or any of the Parties' interests in any of the claims released herein. Each of the Parties agrees to defend and indemnify the other persons and entities released in this Stipulation against any claim based upon, arising out of, or arising in connection with any such assignment or transfer.

7.        No Oral Modifications. This Stipulation may not be modified except as mutually agreed to in writing.

8.        Successors and Assigns. All of the terms, covenants, and conditions contained in this Stipulation will inure to the benefit of, and be binding upon, Landlord, Debtors, their successors, and their permitted assigns, including without limitation, any trustee appointed in this case.

9.        Other Documents. The Debtors and Landlord will execute any other and further documents or instructions and perform any other and further acts as may be necessary or appropriate to consummate the transactions contemplated under this Stipulation.

10.        Counterparts. This Stipulation may be executed in several counterparts, and any and all such executed counterparts will constitute a single agreement binding on each party to this Stipulation. Facsimiles of signatures may be taken as the actual signatures, and each party agrees to furnish the other with documents bearing the original signatures within five business days after the facsimile transmission.

IN WITNESS WHEREOF, the Debtors, on the one hand, and Landlord, on the other hand, do hereby execute this Stipulation on January 28, 2010.

THE WALKING COMPANY, THE WALKING COMPANY HOLDINGS, INC., AND BIG DOG USA, INC.

By: _____

Its: EXEC. VP

ORCUTT/CRITELLI PROPERTIES

By: _Gaetano Critelli_____
Gaetano Critelli

Its: General Partner_____

# EXHIBIT 7

STIPULATION DETERMINING THE TREATMENT OF CLAIM/S

This Stipulation (the "Stipulation") is entered into by and among The Walking Company ("Tenant") and its debtor affiliates, The Walking Company Holdings, Inc. ("Holdings") and Big Dog USA, Inc. (collectively, the "Debtors"), on one hand, and Bayrock Investment Co. ("Landlord"), on the other hand. This Stipulation is based on the following facts:

RECITALS

A. The Debtors commenced voluntary cases (the "Cases") under Chapter 11 of the United States Bankruptcy Code on December 7, 2009 (the "Petition Date"), which cases are pending before the United States Bankruptcy Court for the Central District of California (the "Court"). The Debtors are operating their business and managing their affairs as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

B. Landlord and Tenant (as successor to Natural Comfort Footwear, Inc.), are parties to that certain Lease, dated May 20, 2005, as amended by that certain Assignment and Assumption of Lease and Consent of Landlord, dated January 4, 2008 (collectively, the "Lease") pursuant to which Tenant leased from Landlord approximately 1592 square feet located at 362 John Ringling Boulevard, Suite C, Sarasota, Florida.

C. The Lease has been rejected in the Debtors Bankruptcy Cases.

D. Landlord has asserted that it is entitled to a total claim against Tenant of $50,317.15 (the "Total Claim").

E. Debtors dispute that the Total Claim is owing to Landlord and believe that they have valid defenses and offsets to the Total Claim amount based upon, among other things, Landlord's mitigation obligations and other credits.

AGREEMENT

NOW, THEREFORE, based upon the foregoing recitals, in consideration of the promises and mutual covenants contained in this Stipulation, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtors and Landlord (collectively, the "Parties") agree as follows:

1. Incorporation of Recitals. The above Recitals are incorporated herein as if set forth fully hereat.

2. The Allowed Pre-Petition Claims. Creditor will receive an allowed claim against Tenant in the total amount of Twenty-Five Thousand One Hundred Fifty-Nine Dollars ($25,159) (the "Allowed Claim"), which will be allowed as a general unsecured claim against Tenant. Tenant agrees that Creditor shall receive, on account of its Allowed Claim, a payment in cash or cash equivalents in the amount of the Allowed Claim, by no later than May 15, 2010 (the "Payment Deadline"). Upon Creditor's receipt of the

payment in full of the Allowed Claim by the Payment Deadline, all of the Creditor's claims against Tenant and its bankruptcy estate shall be deemed to be paid in full, with any unpaid balance released, and any other claims that have been scheduled on behalf of, or filed by Creditor in the above-reference Bankruptcy Cases, or that Creditor may otherwise seek to assert in these Cases, will be deemed to be disallowed in their entirety without further Order of this Court.

3.    General Releases by Landlord.  Landlord, on behalf of itself and its predecessors, successors, heirs, and assigns, hereby fully and forever releases and discharges the Debtors and their predecessors, successors, assigns, managers, principals, shareholders, directors, officers, employees, agents, and attorneys and all entities affiliated with any of them from any and all claims, actions, rights, agreements, or liabilities—whether arising under federal or state statute or common law-- based upon or arising out of any events, facts, or circumstances, including without limitation, any claim arising from, in connection with, or pursuant to the Lease.  This is a general release that covers all known and unknown claims arising out of all known and unknown facts from the beginning of time through the date of this Stipulation.  This is not a release of—and the only exception to this release pertains to—the Allowed Claim and any claims against the Parties relating to their obligations under this Stipulation.

4.    General Releases by Tenant.  The Debtors, on behalf of themselves and their predecessors, successors, assigns, managers, principals, shareholders, directors, officers, employees, agents, and attorneys and all entities affiliated with any of them, hereby fully and forever releases and discharges Landlord and its predecessors, successors, heirs, and assigns from any and all claims, actions, rights, agreements, or liabilities—whether arising under federal or state statute or common law—based upon or arising out of any events, facts, or circumstances.  This is a general release that covers all known and unknown claims arising out of all known and unknown facts from the beginning of time through the date of this Stipulation.  This is not a release of any claims against the Parties relating to their obligations under this Stipulation.

5.    Waiver of California Civil Code Section 1542.  Each of the Parties acknowledges familiarity with California Civil Code section 1542, which provides that:

A general release does not extend to claims which the creditor
does not know or suspect to exist in his or her  favor at the time
of executing the release, which if known by him or her must
have materially affected his or her settlement with the debtor.

To the full extent that they may lawfully do so, the Parties expressly waive and relinquish all rights and benefits that they have or may have under California Civil Code section 1542 or any

similar law. Each of the Parties acknowledges that he, she, or it has been advised by counsel as to the significance of a waiver of Section 1542 as it applies to unknown claims and that the waivers in this Stipulation are made knowingly and voluntarily. Each of the Parties further acknowledges that, to the extent he, she, or it has not fully investigated or does not know about any facts, events, or circumstances occurring at any time in the past through the effective date of this Stipulation, those unknown facts, events, and circumstances, and in particular, any and all unknown claims arising out of them, are hereby expressly waived and released.

6.      No Assignments. Each of the Parties represents and warrants that there has been no assignment or transfer whatsoever of any of the claims or any of the Parties' interests in any of the claims released herein. Each of the Parties agrees to defend and indemnify the other persons and entities released in this Stipulation against any claim based upon, arising out of, or arising in connection with any such assignment or transfer.

7.      No Oral Modifications. This Stipulation may not be modified except as mutually agreed to in writing.

8.      Successors and Assigns. All of the terms, covenants, and conditions contained in this Stipulation will inure to the benefit of, and be binding upon, Landlord, Debtors, their successors, and their permitted assigns, including without limitation, any trustee appointed in this case.

9.      Other Documents. The Debtors and Landlord will execute any other and further documents or instructions and perform any other and further acts as may be necessary or appropriate to consummate the transactions contemplated under this Stipulation.

10.     Counterparts. This Stipulation may be executed in several counterparts, and any and all such executed counterparts will constitute a single agreement binding on each party to this Stipulation. Facsimiles of signatures may be taken as the actual signatures, and each party agrees to furnish the other with documents bearing the original signatures within five business days after the facsimile transmission.

11.     Court Approval. Promptly after the parties' execute this Stipulation, Tenant will file a motion requesting bankruptcy court approval of this stipulation, and will exercise reasonable diligence and efforts to obtain such court approval consistent with the requirements of the Bankruptcy Code and Bankruptcy Rules. In the event that the Bankruptcy Court does not approve such motion, or even if approved Tenant fails to make the payment as and when required by Paragraph 1 above, this Stipulation shall be null and void as if the parties had never entered into it.


[Remainder of page intentionally left blank.]

IN WITNESS WHEREOF, the Debtors, on the one hand, and Landlord, on the

other hand, do hereby execute this Stipulation on January 29, 2010.


THE WALKING COMPANY, THE WALKING COMPANY
HOLDINGS, INC., AND BIG DOG USA, INC.

By: _____
        ANTHONY J. WALL
Its:___Executive Vice President_____


BAYROCK INVESTMENT CO.

By: _____

Its: _____

# EXHIBIT 8

RE: Note resolution

From: "christophersgresta@hotmail.com" <christophersgresta@hotmail.com>   View Contact     Mon, January 25, 2010 5:35:31 PM
To: MOM <adougherty6020@yahoo.com>

## STIPULATION DETERMINING THE TREATMENT OF CLAIM/S

This Stipulation (the "Stipulation") is entered into by and among The Walking Company (the "Company") and its debtor affiliates, The Walking Company Holdings, Inc. ("Holdings") and Big Dog USA, Inc. (collectively, the "Debtors"), on one hand, and Ken Atchison ("Creditor"), on the other hand. This Stipulation is based on the following facts:

### RECITALS

A. The Company issued to Creditor a Subordinated Promissory Note dated as of January 15, 2008 in the principal amount of $1,700,000 (the "Note"). The Note is guaranteed by Holdings pursuant to a Guaranty dated as of January 15, 2008 (the "Guaranty").

B. The Debtors commenced voluntary cases (the "Bankruptcy Cases") under Chapter 11 of the United States Bankruptcy Code on December 7, 2009 (the "Petition Date"), which cases are pending before the United States Bankruptcy Court for the Central District of California (the "Court"). The Debtors are operating their business and managing their affairs as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108;

### AGREEMENT

NOW, THEREFORE, based upon the foregoing recitals, in consideration of the promises and mutual covenants contained in this Stipulation, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtors and Creditor (collectively, the "Parties") agree as follows:

1. The Allowed Pre-Petition Claims. Creditor will receive an allowed general unsecured claim against the Debtors in the amount of $1,100,000 (the "Allowed Claim"). Any other claims that have been scheduled on behalf of, or filed by, Creditor in the above-reference Bankruptcy Cases will be disallowed in their entirety. In lieu of any treatment otherwise to be provided to holders of allowed general unsecured claims against the Debtors pursuant to a confirmed chapter 11 plan in these cases, the Allowed Claim shall be satisfied as follows:

a. On the Effective Date, the Company will issue to Creditor an Amended and Restated Subordinated Promissory Note in substantially the form attached hereto as Exhibit A (the "New Note") in the principal amount of $1,100,000, providing that $100,000 of the principal amount shall be paid on the date thirty (30) days after the Effective Date (as defined below) and the $1,000,000 balance shall be paid on the one-year anniversary of the Effective Date. Creditor agrees to execute and deliver on the Effective Date a subordination agreement in regard to the New Note with the Company's lender, Wells Fargo Retail Finance. The Note will be guaranteed by Holdings pursuant to a guaranty substantially in the form of the Guaranty.

b. On the Effective Date, (i) the Company will assign to Creditor all of its rights title and interest in the trademark NATURAL COMFORT and (ii) the parties will amend their Noncompetition and Nonsolicitation Agreement dated as of January 15, 2008 to provide that the geographical scope is limited to a five-mile radius from any The Walking Company stores existing as of the Effective Date.

c. For a period of six months following the Effective Date, Creditor may (but shall not be obligated to) give written notice to the Company that Creditor requests an assignment of the Company's Lease for Bell Tower and/or Tyrone Square on 60 days notice. In such event, the Company will agree to assign such Lease(s) to Creditor for no further consideration, subject to any required landlord approval and approval of the Bankruptcy Court. It shall be the obligation of Creditor to seek, at its expense, such landlord approval. Creditor shall indemnify the Company for any legal fees or other costs that may be imposed on the Company by such landlords as a requirement of such consent to assignment. If such consent is obtained, the Company will file a motion with the Bankruptcy Court seeking approval of such assignment, and upon entry of an Order approving such assignment, the Company shall turn over possession to Creditor of the related store premises, as-is, taking with it only all inventory, equipment and materials (such as signs and posters) that bear trademarks or other indicia of The Walking Company.

d. The Effective Date is the date on which the Court has entered an order in the Bankruptcy Cases both: (a) approving this Stipulation; and (b) confirming a chapter 11 plan of reorganization in the Debtors' chapter 11 cases (the "Plan").

2. General Releases by Creditor. Creditor, on behalf of himself and his predecessors, successors, heirs, and assigns, hereby fully and forever releases and discharges the Debtors and their predecessors, successors, assigns, managers, principals, shareholders, directors, officers, employees, agents, and attorneys and all entities affiliated with any of them from any and all claims, actions, rights, agreements, or liabilities—whether arising under federal or state statute or common law. This is a general release that covers all known and unknown claims arising out of all known and unknown facts from the beginning of time through the date of this Stipulation. This is not is not a release of—and the only exception to this release pertains to—the Allowed Claim and any claims against the parties relating to their obligations under this Stipulation.

3. General Releases by the Debtors. Each Debtor, on behalf of itself and its predecessors, successors, assigns, managers, principals, shareholders, directors, officers, employees, agents, and attorneys and all entities affiliated with any of them, hereby fully and forever releases and discharges the Creditor and his predecessors, successors, heirs, and assigns from any and all claims, actions, rights, agreements, or liabilities—whether arising under federal or state statute or common law—based upon or arising out of any events, facts, or circumstances. This is a general release that covers all known and unknown claims arising out of all known and unknown facts from the beginning of time through the date of this Stipulation. This is not is not a release of any claims against the parties relating to their obligations under this Stipulation.

4. Waiver of California Civil Code Section 1542. Each of the parties acknowledges familiarity with California Civil Code section 1542, which provides that

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

To the full extent that they may lawfully do so, the parties expressly waive and relinquish all rights and benefits that they have or may have under California Civil Code section 1542 or any similar law. Each of the parties acknowledges that he, she, or it has been advised by counsel as to the significance of a waiver of Section 1542 as it applies to unknown claims and that the waivers in this Stipulation are made knowingly and voluntarily. Each of the parties further acknowledges that, to the extent he, she, or it has not fully investigated or does not know about any facts, events, or circumstances occurring at any time in the past through the effective date of this Stipulation, those unknown facts, events, and circumstances, and in particular, any and all unknown claims arising out of them, are hereby expressly waived and released.

5. No Assignments. Each of the parties represents and warrants that there has been no assignment or transfer whatsoever of any of the claims or any of the parties' interests in any of the claims released herein. Each of the parties agrees to defend and indemnify the other persons and entities released in this Stipulation against any claim based upon, arising out of, or arising in connection with any such assignment or transfer.

6. No Oral Modifications. This Stipulation may not be modified except as mutually agreed to in writing.

7. Successors and Assigns. All of the terms, covenants, and conditions contained in this Stipulation will inure to the benefit of, and be binding upon, Creditor, the Debtors, their successors, and their permitted assigns, including without limitation, any trustee appointed in this case.

8. Other Documents. The Debtors and Creditor will execute any other and further documents or instructions and perform any other and further acts as may be necessary or appropriate to consummate the transactions contemplated under this Stipulation.

9. Counterparts. This Stipulation may be executed in several counterparts, and any and all such executed counterparts will constitute a single agreement binding on each party to this Stipulation. Facsimiles of signatures may be taken as the actual signatures, and each party agrees to furnish the other with documents bearing the original signatures within five business days after the facsimile transmission.

10. Reasonable Best Efforts. The parties each agree to use their reasonable best efforts to satisfy conditions within that party's control.

IN WITNESS WHEREOF, The Debtors and Creditor do hereby execute this Stipulation as of January 3 1, 2010.

THE WALKING COMPANY, THE WALKING
COMPANY HOLDINGS, INC., AND BIG DOG
USA, INC.

By:
Anthony J. Wall
Executive VP and General Counsel

CREDITOR:
By: _____
Ken Atchison

## SUBORDINATED PROMISSORY NOTE

$1,100,000.00 [EFFECTIVE DATE], 2010

FOR VALUE RECEIVED, The Walking Company, a Delaware corporation ("Maker"), promises to pay to Ken Atchison ("Payee"), in lawful money of the United States of America, the principal sum of One Million One Hundred Thousand Dollars and 00/100 ($1,100,000.00), together with interest in arrears on the unpaid principal balance at seven percent (7%) per annum.

**1. PAYMENTS**

**1.1 PRINCIPAL AND INTEREST**

One Hundred Thousand Dollars ($100,000) of the principal amount of this Note shall be due and payable thirty (30) days from the Effective Date and the entire principal balance of this Note shall be due and payable on the first (1st) anniversary of the date of this Note (the "Note Date"). Interest on the unpaid principal balance of this Note shall be due and payable on the last day of each calendar quarter commencing at the end of the first full quarter succeeding the Note Date. The annual interest rate shall be seven percent (7%). Interest shall be calculated on the basis of a year of 365 or 366 days, as applicable, and charged for the actual number of days elapsed.

**1.2 MANNER OF PAYMENT**

All payments of principal and interest on this Note shall be made by check mailed or delivered to Payee's principal business office or at such other place in the United States of America as Payee shall designate to Maker in writing or, if elected by Maker, by wire transfer of immediately available funds to an account designated by Payee in writing. If any payment of principal or interest on this Note is due on a day which is not a Business Day, such payment shall be due on the next succeeding Business Day, and such extension of time shall be taken into account in calculating the amount of interest payable under this Note.

**1.3 PREPAYMENT**

Maker may, without premium or penalty, at any time and from time to time, prepay all or any portion of the outstanding principal balance due under this Note, provided that each such prepayment is accompanied by accrued interest on the amount of principal prepaid calculated to the date of such prepayment.

**1.4 SUBORDINATION**

Pursuant to a Subordination Agreement of even date herewith, all indebtedness due to Payee and all rights of Payee under this Note and any liens securing such indebtedness shall be subject and subordinate to all indebtedness due by Maker to Wells Fargo Retail Finance, LLC, as Arranger, Agent and the Lender under a [Loan and Security Agreement].

**2. DEFAULTS**

**2.1 EVENTS OF DEFAULT**

The occurrence of any one or more of the following events with respect to Maker shall constitute an event of default hereunder ("Event of Default"):

(a) If Maker shall fail to pay when due any payment of principal or interest on this Note and such failure continues for fifteen (15) days after Payee notifies Maker thereto in writing.

(b) If, pursuant to or within the meaning of the United States Bankruptcy Code or any other federal or state law relating to insolvency or relief of debtors (a "Bankruptcy Law"), Maker shall (a) commence a voluntary case or proceeding; (ii) consent to the entry of an order for relief against it in an involuntary case; (iii) consent to the appointment of a trustee, receiver, assignee, liquidator or similar official; (iv) make an assignment for the benefit of its creditors; or (v) admit in writing its inability to pay its debts as they become due.

(c) If a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that (a) is for relief against Maker in an involuntary case, (ii) appoints a trustee, receiver, assignee, liquidator or similar official for Maker or substantially all of Maker's properties, or (iii) orders the liquidation of Maker, and in each case the order or decree is not dismissed within 120 days.

**2.2 NOTICE BY MAKER**

Maker shall notify Payee in writing within five days after the occurrence of any Event of Default of which Maker acquires knowledge.

**2.3 REMEDIES**

Upon the occurrence of an Event of Default hereunder (unless all Events of Default have been cured or waived by Payee), Payee may, at its option, (1) by written notice to Maker, declare the entire unpaid principal balance of this Note, together with all accrued interest thereon, immediately due and payable regardless of any prior forbearance, and (ii) exercise any and all rights and remedies available to it under applicable law, including, without limitation, the right to collect from Maker all sums due under this Note. Maker shall pay all reasonable costs and expenses incurred by or on behalf of Payee in connection with Payee's exercise of any or all of its rights and remedies under this Note, including, without limitation, reasonable attorneys' fees.

**3. MISCELLANEOUS**

**3.1 WAIVER**

The rights and remedies of Payee under this Note shall be cumulative and not alternative. No waiver by Payee of any right or remedy under this Note shall be effective unless in a writing signed by Payee. Neither the failure nor any delay in exercising any right, power or privilege under this Note will operate as a waiver of such right, power or privilege and no single or partial exercise of any such right, power or privilege by Payee will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege. To the maximum extent permitted by applicable law, (a) no claim or right of Payee arising out of this Note can be discharged by Payee, in whole or in part, by a waiver or renunciation of the claim or right unless in a writing, signed by Payee; (b) no waiver that may be given by Payee will be applicable except in the specific instance for which it is given; and (c) no notice to or demand on Maker will be deemed to be a waiver of any obligation of Maker or of the right of Payee to take further action without notice or demand as provided in this Note. Maker hereby waives presentment, demand, protest and notice of dishonor and protest.

**3.2 NOTICES**

Any notice required or permitted to be given hereunder shall be given in accordance with Section    13.5 of the Agreement.

**3.3 SEVERABILITY**

If any provision in this Note is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Note will remain in full force and effect. Any provision of this Note held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

**3.4 GOVERNING LAW**

This Note will be governed by and construed under the laws of the State of California without regard to conflicts-of-laws principles that would require the application of any other law.

**3.5 PARTIES IN INTEREST**

This Note shall bind Maker and its successors and assigns. This Note shall not be assigned or transferred by Maker without the express prior written consent of Payee, except by operation of law. Payee may assign its rights under this Note at its sole discretion.

**3.6 SECTION HEADINGS, CONSTRUCTION**

The headings of Sections in this Note are provided for convenience only and will not affect its construction or interpretation. All references to "Section" or "Sections" refer to the corresponding Section or Sections of this Note unless otherwise specified.

All words used in this Note will be construed to be of such gender or number as the circumstances require. Unless otherwise expressly provided, the words "hereof" and "hereunder" and similar references refer to this Note in its entirety and not to any specific section or subsection hereof.

IN WITNESS WHEREOF, Maker has executed and delivered this Note as of the date first stated above.

"MAKER":

THE WALKING COMPANY

By: _____

Title: _____

Hotmail: Trusted email with Microsoft's powerful SPAM protection. Sign up now.

# EXHIBIT 9

## NOTE EXTENSION AGREEMENT

This Note Extension Agreement (the "Agreement") is entered into as of January 28, 2010 among The Walking Company Holdings, Inc. (the "Company") and each of the individuals listed as signatories below (the "Holder(s)").

The Company issued to each Holder a Promissory Note dated as of May 9, 2007 in the original principal amount listed by the name of each Holder below (the "Note(s)"). The first installment of principal due under the Notes was paid to the Holders. The final installment of principal was due April 10, 2009 (the "Maturity Date"), but has not been paid.

The Company and it subsidiaries (collectively, the "Debtors") commenced voluntary cases under Chapter 11 of the United States Bankruptcy Code (the "Code) on December 7, 2009 (the "Petition Date"), which cases are pending before the United States Bankruptcy Court for the Central District of California (the "Court"). Debtors are operating their businesses and managing their affairs as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. Each Holder acknowledges that the obligation of the Company under his or het Note is an unsecured pre-petition debt, and as such is subject to compromise in the bankruptcy proceedings.

The Company and each Holder hereby agree as follows:

1.   Each Note is hereby amended to extend its Maturity Date to the date one year from the effective date (the "Effective Date") of the confirmation of the Company's plan of reorganization under Chapter 11 of the Code (the "Plan"). All interest accrued under each Note prior the Effective Date is waived by each Holder. Commencing from and after the Effective Date, interest on the unpaid balance of each Note will resume to accrue and be payable as provided in the Notes (quarterly, at the rate of 7% per annum). As provided in each Note, the Company will continue have the right to elect to prepay any Note. If the Company so elects and prepays the unpaid principal balance of a Note in full within 30 days of the Effective Date, the Holder of that Note agrees that the Company shall be entitled to discount the unpaid principal balance of such Note by 20%, and such Holder agrees in that situation to accept payment of 80% of the then-unpaid principal balance of the Note, along with any then-accrued and unpaid interest through the date of prepayment (calculated on the undiscounted principal balance) as payment in full of the Company's obligations under such Note. All other terms of the Notes will remain the same.

2.   Each Holder agrees that upon the Company assuming such Holder's Note as amended hereby, the Company's obligation under and relating to such Holder's Note and under Bankruptcy Code Section 365(d)(3) will be fully satisfied and all other claims arising or related to periods prior to the assumption of such Note will be deemed waived.

3.   This Agreement may be executed in counterparts (and, when countersigned by the Company, will be binding on each Holder who signs it, regardless of whether any or all of the other Holders sign it as well).

01/28/2010 10:48 FAX                                                    003

THE WALKING COMPANY HOLDINGS, INC.

By: _____                    Unpaid Principal Amount of Note
       Andrew Feshbach, CEO

_____
Robert Morris                                              $158,750

_____
Anthony Wall                                               $200,000

_____
Douglas Nilsen                                             $400,000

_____
David Wolf                                                 $200,000

_____
John Otchis                                                $ 23,750

THE WALKING COMPANY HOLDINGS, INC.

By: _____         **Unpaid Principal Amount of Note**
      Andrew Feshback, CEO

_____         $158,750
Robert Morris

_____         $200,000
Anthony Wall

_____         $400,000
Douglas Nilsen

_____         $200,000
David Wolf

_____         $ 23,750
John Otchis

legal\deals\2010 plan/option notes/extension agreement

| | |
|---|---|
| In re: THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation, <br><br>Debtor(s). | CHAPTER: 11 <br><br> CASE NUMBER: 9:09-bk-15138-RR <br> [Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Arent Fox, LLP, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013-1065

A true and correct copy of the foregoing document described as **DEBTORS' OMNIBUS MOTION FOR AN ORDER APPROVING CERTAIN SETTLEMENT AGREEMENTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ANTHONY J. WALL IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 9, 2010** checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **April 9, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 9, 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| April 9, 2010 | Adriane Lark Madkin | */s/ Adriane Lark Madkin* |
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
LA/222070.1

**F 9013-3.1**

| In re: THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
| --- | --- |

## I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

Craig H Averch on behalf of Creditor The Ad Hoc Committee of The Walking Company Holdings, Inc. Noteholders
caverch@whitecase.com

Lawrence Bass on behalf of Interested Party Gart Capital Partners
lbass@faegre.com

William C Beall on behalf of Interested Party Courtesy NEF
artyc@aol.com

Shirley Cho on behalf of Creditor Committee Official Committee Of Unsecured Creditors
scho@pszjlaw.com

Emily R Culler on behalf of Interested Party Genesco, Inc.
eculler@omm.com

Lawrence A Diamant on behalf of Interested Party Kahala Mall
lad@lnbrb.com, katie@lnbrb.com

Denise Diaz on behalf of Debtor The Walking Company Holdings, Inc.
Denise.Diaz@rmsna.com

Robert K Edmunds on behalf of Interested Party Huntington National Bank
robert.edmunds@bipc.com, timothy.palmer@bipc.com;jacqueline.forjais@bipc.com

Belkys Escobar on behalf of Creditor County of Loudoun
belkys.escobar@loudoun.gov

Brian D Fittipaldi on behalf of U.S. Trustee United States Trustee (ND)
brian.fittipaldi@usdoj.gov

Todd R Gabriel on behalf of Creditor Seaport Village Operating Company
tgabriel@sparberlaw.com

Philip A Gasteier on behalf of Interested Party Kahala Center Company
pag@lnbrb.com

Fredric Glass on behalf of Creditor Fair Harbor Capital, LLC
fglass@fairharborcapital.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                          **F 9013-3.1**

| | |
|---|---|
| In re: THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

Brian D Huben on behalf of Creditor Crossgates Mall Company NewCo, LLC
brian.huben@kattenlaw.com,
carole.levine@kattenlaw.com;donna.carolo@kattenlaw.com;laura.nefsky@kattenlaw.com

William W Huckins on behalf of Creditor Federal Realty Investment Trust
whuckins@allenmatkins.com, clynch@allenmatkins.com

Nathan E Jones on behalf of Creditor US Debt Recovery III, LP
info@usdrllc.com

Kevin M Newman on behalf of Creditor Crossgates Mall Company NewCo, LLC
knewman@menterlaw.com

Steven G Polard on behalf of Creditor Bellevue Square LLC
spolard@perkinscoie.com

David L Pollack on behalf of Creditor Galleria Mall Investors, LP
pollack@ballardspahr.com

Hamid R Rafatjoo on behalf of Creditor Committee Official Committee Of Unsecured Creditors
hrafatjoo@pszjlaw.com, hrafatjoo@pszjlaw.com

Diane W Sanders on behalf of Creditor San Marcos CISD
austin.bankruptcy@publicans.com

David B Shemano on behalf of Interested Party Courtesy NEF
dshemano@pwkllp.com

Howard Steinberg on behalf of Creditor Richard A. Kayne, Trustee, Richard & Suzanne Kayne Living Trust dated 1/14/99
hsteinberg@irell.com, awsmith@irell.com

Wayne R Terry on behalf of Creditor Request for Courtesy NEF
wterry@hemar-rousso.com

Ronald M Tucker on behalf of Creditor Simon Property Group, Inc.
rtucker@simon.com, psummers@simon.com;rwoodruff@simon.com;shclark@simon.com

United States Trustee (ND)
ustpregion16.nd.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                            **F 9013-3.1**

| In re: THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
| --- | --- |

Kimberly S Winick on behalf of Creditor South Coast Plaza
kwinick@clarktrev.com

Rebecca J Winthrop on behalf of Interested Party Kravco Simon Company
winthropr@ballardspahr.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                     **F 9013-3.1**

| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br><br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
| --- | --- |

## II. SERVED BY U.S. MAIL OR OVERNIGHT:

### VIA OVERNIGHT MAIL

Honorable Robin Riblet
United States Bankruptcy Court
1415 State Street, Suite 103
Santa Barbara, California 93101-2511

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
LA/257534.1

F 9021-1.1

| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190ᵗʰ Shelf Corporation,                                                  Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: Arent Fox, LLP, 555 West Fifth Street, 48th Floor, Los Angeles, CA  90013-1065

A true and correct copy of the foregoing document described as **NOTICE OF MOTION UNDER LOCAL BANKRUPTCY RULE 9013-1(o) FOR:  DEBTORS' OMNIBUS MOTION FOR AN ORDER APPROVING CERTAIN SETTLEMENT AGREEMENTS; [with motion attached]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 9, 2010** checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On **April 9, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 9, 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 9, 2010 | Adriane Lark Madkin | /s/ Adriane Lark Madkin |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation, <br><br> Debtor(s). | CHAPTER: 11 <br><br> CASE NUMBER: 9:09-bk-15138-RR <br> [Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
|---|---|

## I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Craig H Averch on behalf of Creditor The Ad Hoc Committee of The Walking Company Holdings, Inc.
Noteholders
caverch@whitecase.com

Lawrence Bass on behalf of Interested Party Gart Capital Partners
lbass@faegre.com

William C Beall on behalf of Interested Party Courtesy NEF
artyc@aol.com

Shirley Cho on behalf of Creditor Committee Official Committee Of Unsecured Creditors
scho@pszjlaw.com

Emily R Culler on behalf of Interested Party Genesco, Inc.
eculler@omm.com

Lawrence A Diamant on behalf of Interested Party Kahala Mall
lad@lnbrb.com, katie@lnbrb.com

Denise Diaz on behalf of Debtor The Walking Company Holdings, Inc.
Denise.Diaz@rmsna.com

Robert K Edmunds on behalf of Interested Party Huntington National Bank
robert.edmunds@bipc.com, timothy.palmer@bipc.com;jacqueline.forjais@bipc.com

Belkys Escobar on behalf of Creditor County of Loudoun
belkys.escobar@loudoun.gov

Brian D Fittipaldi on behalf of U.S. Trustee United States Trustee (ND)
brian.fittipaldi@usdoj.gov

Todd R Gabriel on behalf of Creditor Seaport Village Operating Company
tgabriel@sparberlaw.com

Philip A Gasteier on behalf of Interested Party Kahala Center Company
pag@lnbrb.com

Fredric Glass on behalf of Creditor Fair Harbor Capital, LLC
fglass@fairharborcapital.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
LA/257534.1

**F 9013-3.1**

| In re: THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
|---|---|

Brian D Huben on behalf of Creditor Crossgates Mall Company NewCo, LLC
brian.huben@kattenlaw.com,
carole.levine@kattenlaw.com;donna.carolo@kattenlaw.com;laura.nefsky@kattenlaw.com

William W Huckins on behalf of Creditor Federal Realty Investment Trust
whuckins@allenmatkins.com, clynch@allenmatkins.com

Nathan E Jones on behalf of Creditor US Debt Recovery III, LP
info@usdrllc.com

Kevin M Newman on behalf of Creditor Crossgates Mall Company NewCo, LLC
knewman@menterlaw.com

Steven G Polard on behalf of Creditor Bellevue Square LLC
spolard@perkinscoie.com

David L Pollack on behalf of Creditor Galleria Mall Investors, LP
pollack@ballardspahr.com

Hamid R Rafatjoo on behalf of Creditor Committee Official Committee Of Unsecured Creditors
hrafatjoo@pszjlaw.com, hrafatjoo@pszjlaw.com

Diane W Sanders on behalf of Creditor San Marcos CISD
austin.bankruptcy@publicans.com

David B Shemano on behalf of Interested Party Courtesy NEF
dshemano@pwkllp.com

Howard Steinberg on behalf of Creditor Richard A. Kayne, Trustee, Richard & Suzanne Kayne Living Trust dated 1/14/99
hsteinberg@irell.com, awsmith@irell.com

Wayne R Terry on behalf of Creditor Request for Courtesy NEF
wterry@hemar-rousso.com

Ronald M Tucker on behalf of Creditor Simon Property Group, Inc.
rtucker@simon.com, psummers@simon.com;rwoodruff@simon.com;shclark@simon.com

United States Trustee (ND)
ustpregion16.nd.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
LA/257534.1

**F 9013-3.1**

| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190ᵗʰ Shelf Corporation,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
| --- | --- |

Kimberly S Winick on behalf of Creditor South Coast Plaza
kwinick@clarktrev.com

Rebecca J Winthrop on behalf of Interested Party Kravco Simon Company
winthropr@ballardspahr.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
LA/257534.1

F 9013-3.1

In re: THE WALKING COMPANY, a Delaware corporation. d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS. INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,

Debtor(s).

CHAPTER: 11

CASE NUMBER: 9:09-bk-15138-RR

[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR]

## II. SERVED BY U.S. MAIL OR OVERNIGHT:

### VIA U.S. MAIL

Honorable Robin Riblet
United States Bankruptcy Court
1415 State Street, Suite 103
Santa Barbara, California 93101-2511

Dennis Strayhan
Office of the United States Trustee
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

Brian Fittipaldi
Office of the United States Trustee
128 E. Carrillo Street
Santa Barbara, CA 93101

Jennifer Cann – Vice President / Account Executive
Joseph Burt – Vice President
Wells Fargo Retail Finance
One Boston Place, 18th Floor
Boston, MA 02108

Ivan M. Gold
Allen Matkins LLP
Three Embarcadero Center, 12th Flr.
San Francisco, CA 94111

Anthony Wall
760 Arcady
Santa Barbara, CA 93108

Bear Stearns Securities Corp Custodian
Cotsen Family Foundation
c/o Kayne Anderson Capital
1800 Ave of the Stars Fl. 2
Los Angeles, CA 90067

David Wolf
1956 East Valley Rd.
Santa Barbara, CA 93108

Doug Nilsen
2225 St. James Drive
Santa Barbara, CA 93105

Gary Lieberthal, Trustee
Lieberthal Trust 3/23/99
991 Bel Air Road
Bel Air, CA 90077-3009

Kayne Anderson Capital
Income Partners (QP) LP
1800 Ave of the Stars Fl2
Los Angeles, CA 90067

Lee Cox
6726 Breakers Way
Ventura, CA 93001

Dumac LLC
RBC Dain Rauscher Cust
For C. Eric Warden Sep IRA
510 Marquette Ave
Minneapolis, MN 55402-1106

Richard & Suzanne Kayne
Living Trust dtd 1/14/09
1800 Ave of Stars 2nd Fl
Los Angeles, CA 90067

Robert P. Abate, Trustee
Robert P. Abate Rev Trust
Box 541
Elgin, IL 60123

his form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
LA/257534.1
LA/257534.1

F 9021-1.1

In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation.
                                                        Debtor(s).

CHAPTER: 11

CASE NUMBER: 9:09-bk-15138-RR

[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR]

Roberta Morris
1428 San Miguel Ave
Santa Barbara, CA 93108

The Kayne Foundation
c/o Kayne Anderson Capital
1800 Ave of the Stars Fl2
Los Angeles, CA 90067

Amfit, Inc.
5408 NE 88th Street, Suite D-406
Vancouver, WA 98665

Board of Equalization
PO Box 942879
Sacramento, CA 94279-0001

Kayne Anderson Capital Income partners (QP), LP
c/o Kayne Anderson Capital Advisors, LP
1800 Avenue of the Stars, Second Floor
Los Angeles, CA 90067

Bear Stearns Securities Corp. Custodian
Blackwell Partners, LLC
406 Blackwell Street, Suite 300
Durham, NC 27701

Robert P. Abate Rev Trust UA 8-29-95,
Robert P. Abate Trustee
P.O. Box 541N
Elgin, IL 60123

RBC Dain Raucher Cust. For Eric Warden SEP IRA
510 Marquette Avenue
Minneapolis, MN 55402

Wells Fargo Retail Finance, LLC
2450 Colorado Avenue, Suite 3000W
Santa Monica, CA 90404

Wells Fargo Financial Leasing, Inc.
800 Walnut Street
Des Moines, IA 50309

CIT Technology Financing Services, Inc.
10201 Centurian Parkway North Suite 100
Jacksonville, FL 32256

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

Preit Services, LLC
Klehr Harrison Harvey Branzburg LLP
Primeshares
261 Fifth Avenue 22nd Flr
New York, NY 10016

Kevin M. Newman
Menter Rudin & Trivelpiece, PC
308 Maltbie Street, Suite 200
Syracuse, NY 13204

The Shops at Wailea, LP
Trustees of the Estate of Bernice Pauahi Bishop
Susan Tius
Rush Moore LLP
737 Bishop St., Ste. 2400
Honolulu, HI 96813

Bellevue Square LLC
City of Grapevine, Grapevine-Colleyville ISD
City of Hurst, Arlington Independent School District
c/o Elizabeth Banda
Perdue, Brandon, Fielder, Collins & Mott LLP
P.O. Box 13430
Arlington, TX 76094-0430

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,

Debtor(s).

CHAPTER: 11

CASE NUMBER: 9:09-bk-15138-RR
[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR]

UCC Lien Holder
Brightleaf Partners LP
c/o Brightleaf Capital LLC
324 Blackwell St Ste 520
Durham, NC  27701

UCC Lien Holder/Bondholder
Dumac LLC
406 Blackwell St., Ste 300
Durham, NC  27001-3984

UCC Lien Holder
The Huntington National Bank
Attn Edward J. Kitchen VP
650 Smithfield St., Ste. 1000
Centre City Tower
Pittsburgh, PA  15222

UCC Lien Holder
Varilease Finance Inc.
6340 South 3000 East, Ste. 250
Salt Lake City, UT  84121

BDO Seidman, LLP
3200 Bristol Street, 5th Fl.
Costa Mesa, CA 92626

Todd R. Gabriel, Esq.
Sparber Annen Morris & Gabriel, APLC
701 "B" Street, Suite 1400
San Diego, CA  92101-8164

Kohner, Mann & Kailas, S.C.
Attn:  Samuel C. Wisotzkey
Washington Building
Barnabas Business Center
4650 N. Port Washington Rd.
Milwaukee, WI  53212-1059

Evan M. Jones, Esq.
Michael Reed
McCreary, Veselka, Bragg & Allen, P.C.
P. O. Box 1269
Round Rock, Texas  78680

Ken Atchison
20380 Riverbrooke Run
Estero FL 33928

John Otchis
1463 Las Positas Place
Santa Barbara, CA  93105

Atlantic City Associates Number Two (S-1) LLC
c/o The Cordison Company
601 East Pratt Street, 6th Floor
Balitmore, MD 21202

CREA/PPC Long Beach Town Center PO, LLC
Attn: Paul E. Van Hoomissen
Jackson DeMarco Tidus & Peckenpaugh
2030 Main St. Ste 1200
Irvine, CA 92614

Long Beach Towne Center LP
P.O. Box 16281
2425 East Camanback Road, Suite 750
Phoenix, AZ 85011-6281

Vestac Property Management
P.O. Box 16281
Phoenix, AZ 85011

Minanis, Inc.
C/O Blind Canyon Partnership
P.O. Box 249
Naples, FL  31406

Hubbard Properties, LLC
168 129th Ave. West
Madera Beach FL 33708

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009
LA/257534.1

F 9021-1.1

| | |
|---|---|
| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes. Footworks. Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br><br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

Orcutt/Critelli Properties
13750 77th Ave. North
Seminole, FL  33776

Bayrock Investment Co.
1031 South Caldwell St. Ste. 101
Charlotte, NC 28203

Bayrock Investment Co.
c/o Ryan Owen
1819 Main St. Ste 610
Sarasota, FL  34236

Robert Ranftl, Controller
Smartwool Corporation
3495 Airport Circle
Steamboat Springs, CO  80487

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| | |
|---|---|
| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

## III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL:

### VIA EMAIL (Pursuant to Written Agreement)

| | |
|---|---|
| Acevedo, Ana: | aacevedo@omm.com |
| Bass, Maureen T.: | maureen.bass@bipc.com |
| Bernstein, Alberto: | mdtcbkc@miamidade.gov |
| Boyle, Linda: | linda.boyle@twtelecom.com |
| Carolan, Christopher J. | ccarolan@brownrudnick.com |
| Clark, Charles: | cclark@jdtplaw.com |
| Colton, Neal: | ncolton@cozen.com |
| Conway, Andrew: | aconway@taubman.com |
| Cruz, Lisa: | lcruz@thekeithcorp.com |
| Daniels, Thomas W.: | tdaniels@wilmorite.com |
| Felger, Mark | mfelger@cozen.com |
| Freeland, Dirk and Jill: | freeland@cox.net |
| Kaplan, John S.: | jkaplan@perkinscoie.com |
| Kurtzman, Jeffrey: | jkurtzman@klehr.com |
| Lawrence, Stefan S.: | stefan.s.lawrence@wellsfargo.com |
| Levine, Steven B.: | slevine@brownrudnick.com |
| Maseles, Richard: | richard.maseles@dor.mo.gov |
| Mears, Patrick: | patrick.mears@btlaw.com |
| Muzzi, Christopher J.: | cmuzzi@hilaw.us |
| Nixon, Justin B.: | jnixon@dumac.duke.edu |
| Robert Schnell IRA: | roberts@fortunecasuals.com |
| Robert Schnell Trust: | roberts@fortunecasuals.com |
| Rubert, Teresa: | trubert@wilmorite.com |
| Schnell, Robert: | roberts@fortunecasuals.com |
| Shladovsky, David: | dshladovsky@kaynecapital.com |
| Suss, J.: | jsuss@gte.net |
| Ward, Rebecca: | rebeccaward@forestcity.net |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                      F 9013-3.1
LA\257534.1