1   Mette H. Kurth (SBN 187100)
    Andy S. Kong (SBN 243933)
2   M. Douglas Flahaut (SBN 245558)
    **ARENT FOX LLP**
3   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
4   Telephone:    213.629.7400
    Facsimile:    213.629.7401
5   E-mail:    kurth.mette@arentfox.com
               kong.andy@arentfox.com
6              flahaut.douglas@arentfox.com

7   Attorneys for Debtors and Debtors in Possession

8   Debtors' Mailing Address
    121 Gray Avenue
9   Santa Barbara, CA 93101

10                **UNITED STATES BANKRUPTCY COURT**

11                **CENTRAL DISTRICT OF CALIFORNIA**

12                   **SANTA BARBARA DIVISION**

13   In re:                                    Case No.: 9:09-bk-15138-RR

14   **THE WALKING COMPANY**, a                Chapter 11
     Delaware corporation, d/b/a Alan's Shoes,
15   Footworks, Overland Trading Co., Sole     [Jointly Administered with Case Nos.: 9:09-bk-
     Outdoors, and Martini Shoes; f/k/a TWC    15137-RR; 9:09-bk-15139-RR]
16   Acquisition Corporation; **BIG DOG USA,
     INC.**, a California corporation, d/b/a Big
17   Dog Sportswear; f/k/a Fortune Dogs, Inc.;
     and **THE WALKING COMPANY**              **NOTICE OF FILING OF
18   **HOLDINGS, INC.**, a Delaware            SUPPLEMENTAL EXHIBIT 3 TO THE
     corporation, f/k/a Big Dog Holdings, Inc. DEBTORS SECOND AMENDED JOINT
19   and 190th Shelf Corporation,              CHAPTER 11 PLAN (DATED MARCH 9,
                                               2010)
20                         Debtors.

21   [X]  Affects all Debtors

22   [ ]  Applies only to The Walking
          Company
23
24   [ ]  Applies only to Big Dog USA, Inc.

25   [ ]  Applies only to The Walking
          Company Holdings, Inc.
26

27

28                                    - 1 -

1    **TO THE HONORABLE ROBIN L. RIBLET, UNITED STATES**

2    **BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE;**

3    **THE DEBTORS' SECURED LENDERS; THE COMMITTEE OF UNSECURED**

4    **CREDITORS; ALL PARTIES ENTITLED TO SPECIAL NOTICE; AND ALL**

5    **OTHER PARTIES IN INTEREST:**

6    Please take notice that above-captioned debtors (the "Debtors") hereby file the

7    following supplemental exhibit to the *Debtors' Second Amended Joint Chapter 11 Plan*

8    *(Dated March 9, 2010)* (the "Plan"):

9    1.    Attached hereto as Exhibit 1 through Exhibit 6 are proposed Amended and

10   Restated Certificates of Incorporation and Amended and Restated Bylaws for The

11   Walking Company Holdings, Inc.; The Walking Company; and Big Dog USA, Inc. The

12   Amended and Restated Certificates of Incorporation and Amended and Restated Bylaws

13   are in substantially the form as the Debtors intend to adopt upon their emergence from the

14   above-captioned bankruptcies.

15   2.    These documents are filed as supplemental Exhibit 3 to the Plan.

16

17   DATED: April 9, 2010                    /s/ *M. Douglas Flahaut*
                                             M. DOUGLAS FLAHAUT.
18                                           ARENT FOX LLP
                                             Attorneys for the Debtors and Debtors in
19                                           Possession

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

# EXHIBIT "1"

## AMENDED AND RESTATED
## CERTIFICATE OF INCORPORATION
## OF
## THE WALKING COMPANY HOLDINGS, INC.

It is hereby certified that:

(1)   The name of the corporation is The Walking Company Holdings, Inc. (hereinafter, the "Corporation").

(2)   The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on December 31, 1993 under the name "190th Shelf Corporation". The Certificate of Incorporation of the Corporation was amended and restated on September 15, 1997 under the name "Big Dog Holdings, Inc." Effective on May 7, 2008, the Walking Company Holdings, Inc. was merged with and into Big Dog Holdings, Inc. with Big Dog Holdings, Inc. being the surviving company with the name "The Walking Company Holdings, Inc."

(3)   The Corporation and its subsidiaries filed a joint plan of reorganization (the "Joint Plan") pursuant to which, under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), a confirmation order of the United States Bankruptcy Court for the Central District of California, a court having jurisdiction of a proceeding under the Bankruptcy Code, was entered and that such order provides for the making and filing of this Amended and Restated Certificate of Incorporation.

(4)   This Amended and Restated Certificate of Incorporation amends and, as amended, restates in its entirety the Certificate of Incorporation and has been duly made, executed and acknowledged by the officers of the Corporation in accordance with Sections 242, 245 and 303 of the General Corporation Law of the State of Delaware.

(5)   The text of the Certificate of Incorporation of the Corporation is hereby amended and restated to read in its entirety as follows:

## ARTICLE I

### NAME

The name of the corporation is The Walking Company Holdings, Inc. (the "Corporation").

## ARTICLE II

### REGISTERED OFFICE

The address of the Corporation's registered office in the State of Delaware is 1209 Orange Street, in the City of Wilmington, County of New Castle, and the name of its registered agent at that address is The Corporation Trust Company.

## ARTICLE III

### PURPOSE

The purpose of the Corporation is to engage in any lawful activity for which corporations may be organized under the General Corporation Law of the State of Delaware (the "DGCL").

## ARTICLE IV

### CAPITAL STOCK

Section 1. <u>Authorized Shares</u>. The total number of shares of stock that the Corporation shall have authority to issue is 103,000,000 shares, consisting of: (1) 100,000,000 shares of Common Stock, par value $.01 per share ("Common Stock"); and (2) 3,000,000 shares of Preferred Stock, par value $.01 per share ("Preferred Stock"), issuable in one or more series as hereinafter provided, of which 10,000 shares have been designated as "Series A Preferred Stock," the powers, preferences, special rights and privileges of which are set forth on <u>Exhibit A</u> attached hereto and hereby incorporated herein by this reference.

Section 2. <u>Common Stock</u>. Except as otherwise provided in this Amended and Restated Certificate of Incorporation (including any Certificate of Designation for any series of Preferred Stock then outstanding) or by applicable law, the voting, dividend and liquidation rights of the holders of Common Stock are as follows:

(a) *Voting Rights.* Each record holder of Common Stock shall be entitled at any annual or special meeting of stockholders with respect to each share of Common Stock held by such holder as of the applicable record date, to one vote per share in person or by proxy on all matters submitted to a vote of the stockholders of the Corporation, subject to Section 6.3 of Exhibit A attached hereto relating to the right of the holders of the Series A Preferred Stock to elect the Series A Preferred Directors.

(b) *Dividends and Distributions.* The holders of Common Stock shall be entitled to receive such dividends and other distributions in cash, property or shares of stock of the Corporation as may be declared thereon by the Board of Directors of this Corporation (the "Board of Directors") from time to time out of assets or funds of the Corporation legally available therefor.

(c)       *Liquidation Rights.* In the event of any dissolution, liquidation or winding-up of the affairs of the Corporation, whether voluntary or involuntary, after payment or provision for payment of the debts and other liabilities of the Corporation, the remaining assets and funds of the Corporation, if any, shall be divided among and paid ratably to the holders of Common Stock then outstanding in proportion to the number of shares held by them.

Section 3. Preferred Stock. The Board of Directors is hereby authorized, subject to compliance with the applicable protective provisions which have been or may be granted to the holders of Series A Preferred Stock and any limitations prescribed by law, to provide by resolution or resolutions for the issuance of additional shares of Preferred Stock in one or more series and, by filing a certificate of designation with the Secretary of State pursuant to the DGCL setting forth a copy of such resolution or resolutions (a "Certificate of Designations"), to establish from time to time the number of shares to be included in each such series, and to fix the designation, powers, preferences, and rights of the shares of each such series and the qualifications, limitations, and restrictions thereof. Each series of the Preferred Stock shall be appropriately designated by a distinguishing letter or title, prior to the issue of any shares thereof.

Notwithstanding the provisions of Section 242(b)(2) of the DGCL, subject to compliance with the applicable protective provisions which have been or may be granted to the holders of Series A Preferred Stock: (i) the number of authorized shares of Preferred Stock may be increased or decreased (but not below the number of shares thereof then outstanding) from time to time by the affirmative vote of the holders of at least a majority of the Corporation's then outstanding shares of Preferred Stock, and (ii) the number of authorized shares of Common Stock may be increased or decreased (but not below the number of shares thereof then outstanding) from time to time by the affirmative vote of the holders of at least a majority of the Corporation's then outstanding shares of Common Stock.

Section 4. Non-voting securities. Pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the Bankruptcy Code, the Corporation will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase capital stock of the Corporation); provided, however, that this provision (i) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (ii) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Corporation and (iii) in all events may be amended or eliminated in accordance with applicable law as from time to time in effect.

## ARTICLE V

## BOARD OF DIRECTORS

Section 1. Powers of the Board. The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors. In addition to the powers and authority expressly conferred upon them by applicable law or by this Amended and Restated Certificate of Incorporation or the Bylaws of the Corporation, the directors are hereby

6

empowered to exercise all such powers and do all such acts and things as may be exercised or done by the Corporation.

Section 2. <u>Number of Directors</u>. Subject to Section 6.3 of Exhibit A attached hereto relating to the right of the holders of the Series A Preferred Stock to elect the Series A Preferred Directors], the total number of directors constituting the entire Board of Directors shall be determined as set forth in the Bylaws of the Corporation, with the precise number of directors to be determined from time to time exclusively by a vote of a majority of the entire Board of Directors, but in no case will a decrease in the number of directors shorten the term of any incumbent director.

Section 3. <u>Removal of Directors</u>. Except as otherwise provided in this Amended and Restated Certificate of Incorporation, including any Certificate of Designations for any series of Preferred Stock with respect to any directors elected by the holders of such series and except as otherwise required by applicable law, any or all of the directors of the Corporation may be removed from office, with or without cause, only by the affirmative vote of the holders of a majority of the voting power of the Corporation's then outstanding capital stock entitled to vote generally in the election of directors, voting together as a single class.

Section 4. <u>Vacancies</u>. Except as otherwise provided in this Amended and Restated Certificate of Incorporation, including any Certificate of Designations for any series of Preferred Stock with respect to any directors elected (or to be elected) by the holders of such series, any vacancies in the Board of Directors for any reason and any newly created directorships resulting by reason of any increase in the number of directors may be filled only by the Board of Directors (and not by the stockholders), acting by majority of the remaining directors then in office, although less than a quorum, or by a sole remaining director, and any directors so appointed shall hold office until the next meeting of stockholders at which directors are to be elected and until their successors are elected and qualified.

Section 5. <u>Bylaws</u>. In furtherance and not in limitation of the power conferred upon the Board of Directors by law, the Board of Directors shall have the power to adopt, amend, alter, change or repeal any and all Bylaws of the Corporation. In addition, the stockholders of the Corporation may adopt, amend, alter, change or repeal any and all Bylaws of the Corporation by the affirmative vote of the holders a majority of the voting power of the Corporation's then outstanding capital stock, voting together as a single class.

Section 6. <u>Elections of Directors</u>. Elections of directors need not be by written ballot unless otherwise provided in the Bylaws of the Corporation.

Section 7. <u>Officers</u>. Except as otherwise expressly delegated by resolution of the Board of Directors, the Board of Directors shall have the exclusive power and authority to appoint and remove executive officers of the Corporation.

## ARTICLE VI

### STOCKHOLDERS

Section 1. <u>Actions by Consent</u>. Any action of the stockholders required or permitted to be taken at any regular or special meeting thereof may be taken without any such meeting, notice of meeting or vote if a consent in writing setting forth the action thereby taken is signed by the holders of outstanding stock having not less than the number of votes that would have been necessary to authorize such action at a meeting at which all shares entitled to vote were present and voted. Prompt notice of the taking of any such action shall be given to any stockholders entitled to vote who have not so consented in writing.

Section 2. <u>Special Meetings of Stockholders</u>. Except as may be provided in this Amended and Restated Certificate of Incorporation, including any Certificate of Designations for any series of Preferred Stock, special meetings of stockholders of the Corporation may be called only by the Chairman of the Board of Directors, the President of the Corporation or by the Secretary upon direction of either the Board of Directors pursuant to a resolution adopted by a majority of the entire Board of Directors or the holders of a majority of the capital stock of this Corporation then outstanding.

**ARTICLE VII**

DIRECTOR LIABILITY

To the fullest extent permitted by applicable law, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is prohibited by the DGCL as it presently exists or may hereafter be amended; provided, that no subsequent amendment shall adversely affect any right of a director with respect to any event occurring prior to the time of such amendment. Any amendment, modification or repeal of the foregoing sentence shall not adversely affect any right or protection of a director of the Corporation with respect to any acts or omissions of such director occurring prior to the time of such amendment, modification or repeal.

**ARTICLE VIII**

INDEMNIFICATION

Section 1. <u>Right of Indemnification</u>. The Corporation shall indemnify and hold harmless, to the fullest extent not prohibited by applicable law as it presently exists or may hereafter be amended, any person (a "<u>Covered Person</u>") who was or is made or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (a "<u>Proceeding</u>"), by reason of the fact that he or she is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, enterprise or nonprofit entity, including service with respect to employee benefit plans, against all liabilities, losses, expenses (including attorneys' fees), judgments, fines, penalties and amounts paid in settlement actually and reasonably incurred by such Covered Person in connection with any such Proceeding. Notwithstanding the preceding sentence, except as otherwise provided in Section 3

of this Article VIII, the Corporation shall be required to indemnify a Covered Person in connection with a Proceeding (or part thereof) commenced by such Covered Person only if the commencement of such Proceeding (or part thereof) by the Covered Person was authorized in the specific case by the Board of Directors.

Section 2. <u>Prepayment of Expenses</u>. The Corporation shall to the fullest extent not prohibited by applicable law pay the expenses (including attorneys' fees) incurred by a Covered Person in defending any Proceeding in advance of its final disposition, <u>provided</u>, <u>however</u>, that, to the extent required by law, such payment of expenses in advance of the final disposition of the Proceeding shall be made only upon receipt of an undertaking by the Covered Person to repay all amounts advanced if it should be ultimately determined that the Covered Person is not entitled to be indemnified for such amounts under this Article VIII or otherwise.

Section 3. <u>Claims</u>. If a claim for indemnification (following the final disposition of the Proceeding with respect to which indemnification is sought, including any settlement of such Proceeding) or advancement of expenses under this Article VIII is not paid in full within thirty days after a written claim therefor by the Covered Person has been received by the Corporation, the Covered Person may file suit to recover the unpaid amount of such claim and, if successful in whole or in part, shall be entitled to be paid the expense of prosecuting such claim to the fullest extent not prohibited by applicable law. In any such action the Corporation shall have the burden of proving that the Covered Person is not entitled to the requested indemnification or advancement of expenses under this Article VIII and applicable law.

Section 4. <u>Non-Exclusivity of Rights</u>. The rights conferred on any Covered Person by this Article VIII shall not be exclusive of any other rights which such Covered Person may have or hereafter acquire under any statute, any other provision of this Amended and Restated Certificate of Incorporation, the Bylaws of the Corporation, or any agreement, vote of stockholders or disinterested directors or otherwise.

Section 5. <u>Amendment or Repeal</u>. Any right to indemnification or to advancement of expenses of any Covered Person arising hereunder shall not be eliminated or impaired by an amendment to or repeal of this Article VIII after the occurrence of the act or omission that is the subject of the Proceeding for which indemnification or advancement of expenses is sought.

Section 6. <u>Other Indemnification and Advancement of Expenses</u>. This Article VIII shall not limit the right of the Corporation, to the extent and in the manner permitted by law, to indemnify and to advance expenses to persons other than Covered Persons when and as authorized by appropriate corporate action.

**ARTICLE IX**

<u>AMENDMENT</u>

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation or in any amendment hereto, in the manner now or hereafter prescribed by statute, and, except as otherwise provided in

this Amended and Restated Certificate of Incorporation or by applicable law, all rights conferred on stockholders and/or directors herein are granted subject to this reservation.

*(Signature page follows)*

**IN WITNESS WHEREOF**, **THE WALKING COMPANY HOLDINGS, INC.** has caused this Amended and Restated Certificate of Incorporation to be executed by its duly authorized officer this ____ day of April, 2010.

**THE WALKING COMPANY HOLDINGS, INC.**

By: _____

     Name:  Anthony J. Wall
     Title:   Executive Vice President, General Counsel and Secretary

<u>EXHIBIT A</u>

TERMS OF

SERIES A PREFERRED STOCK

OF

THE WALKING COMPANY HOLDINGS, INC.

# POWERS, PREFERENCES, PRIVILEGES AND RIGHTS

## OF

## SERIES A PREFERRED STOCK

## OF

## THE WALKING COMPANY HOLDINGS, INC.

The Walking Company Holdings, Inc. (the "Corporation"), a corporation organized and existing under the General Corporation Law of the State of Delaware (the "DGCL"), pursuant to the authority expressly granted to and vested in the Board of Directors of the Corporation (the "Board of Directors") by the Amended and Restated Certificate of Incorporation of the Corporation (the "Certificate of Incorporation"), which authorizes the issuance, by the Corporation, of up to 3,000,000 shares of preferred stock, par value $.01 per share (the "Preferred Stock"), designates the Series A Preferred Stock of the Corporation pursuant to Section 303 of the DGCL with the following powers, preferences and rights (capitalized terms used herein but not defined in Section 1 through Section 7 below have the meanings ascribed to them in Section 1):

1.   **Definitions.**  For purpose of this Exhibit A, the following definitions apply:

1.1   **"Available Funds and Assets"** has the meaning provided in Section 4.

1.2   **"Board"** means the Board of Directors of the Corporation.

1.3   "Business Day" means any day except Saturday, Sunday and any day on which banking institutions in the State of California generally are authorized or required by law or other governmental actions to close.

1.4   **"Corporation"** means The Walking Company Holdings, Inc., a Delaware corporation.

1.5   **"Common Stock"** means the common stock, $0.01 par value of the Corporation.

1.6   **"Dividend Payment Date"** means March 15, June 15, September 15 and December 15 of each calendar year or, if such day is a non-Business Day, the immediately succeeding Business Day.

1.7   **"Dividend Period"** means each quarterly period commencing on and including the first day, and ending on and including the last day, of the calendar quarter immediately preceding each calendar

quarter in which a Dividend Payment Date occurs; provided, however, that the first Dividend Period shall commence on and include the Original Issue Date and end on and include _____, 2010.

1.8    **"Dividend Rate"** means ten percent (10%) per annum.

1.9    **"Holders of a Majority of the Series A Preferred Stock"** means, at any time, the holders of more than 50% of the shares of Series A Preferred Stock then outstanding.

1.10    **"Investment Agreement"** means that certain Investment Agreement dated as of April 8, 2010, by and between the Corporation and the initial Investors (as defined therein), as amended, supplemented or otherwise modified from time to time.

1.11    **"Original Issue Date"** means the date on which any shares of Series A Preferred Stock are first issued by the Corporation.

1.12    **"Original Issue Price"** means One Thousand Dollars ($1,000) per share of Series A Preferred Stock.

1.13    **"Redemption Date"** shall have the meaning provided in Section 5.4.

1.14    **"Redemption Notice"** shall have the meaning provided in Section 5.4.

1.15    **"Redemption Price"** shall have the meaning provide in Section 5.1.

1.16    **"Rights Offering"** has the meaning set forth in the Investment Agreement.

1.17    **"Series A Preferred Stock"** means the Series A Preferred Stock, $0.01 par value per share, of the Corporation.

2.    **Ranking.** The Series A Preferred Stock shall rank senior and prior to the Common Stock and all other classes and series of capital stock issued by the Corporation now or hereafter authorized, issued or outstanding.

3.    **Dividend Rights.**

3.1    **Series A Preferred Stock.** The holders of shares of Series A Preferred Stock shall be entitled to receive on each share, if, as and when declared by the Board (or any duly authorized committee thereof) and in preference to the shares of Common Stock, but only out of funds legally available therefor, cumulative cash dividends for each Dividend Period in an amount equal to (i) the Dividend Rate, multiplied by the sum of (a) the Original Issue Price (subject to appropriate adjustments in the event of any stock dividend, stock split, combination or other similar recapitalization affecting

such shares) plus (b) all accrued and unpaid dividends thereon for any prior Dividend Periods, plus (ii) all accrued and unpaid dividends thereon for any prior Dividend Periods. Such dividends shall be fully cumulative and shall accrue from the Original Issue Date whether or not earned or declared and whether or not there are profits, surplus or other funds of the Corporation legally available therefor, shall compound quarterly to the extent not paid with respect to any Dividend Period until paid, and shall be payable quarterly in arrears on each Dividend Payment Date. The first Dividend Payment Date shall be _____, 2010. Each dividend shall be payable to holders of record as they appear on the stock books of the Corporation at the close of business on such record dates, not more than forty-five (45) calendar days nor less than ten (10) calendar days preceding the Dividend Payment Date therefor, as shall be determined by the Board (or a duly authorized committee thereof). Dividends shall be calculated on a basis of a 360-day year, consisting of twelve (12) thirty day months, and for the actual number of days elapsed in such Dividend Period.

3.2    **No Participation Rights.**    The Corporation shall not declare or pay any additional dividends or distributions on the Series A Preferred Stock in excess of the preferential dividends specified in this Section 3. The Series A Preferred Stock shall not be entitled to participate in any dividends that may be declared or paid with respect to the Common Stock or any other capital stock of the Corporation.

3.3    **Priority of Dividends**. So long as any shares of Series A Preferred Stock remains outstanding, no dividends or distributions with respect to the Common Stock or any other capital stock of the Corporation may be declared or paid or set apart for payment unless and until full cumulative dividends on the Series A Preferred Stock shall have been paid for all prior Dividend Periods and for the current Dividend Period, or declared in full and a sum sufficient for the payment thereof reserved and set apart.

4.    **Liquidation Rights**. In the event of any liquidation, dissolution, or winding up of the Corporation, whether voluntary or involuntary, the funds and assets that may be legally distributed to the Corporation's stockholders (the "**Available Funds and Assets**") shall be distributed to the stockholders as follows:

4.1    **Series A Preferred Stock.** The holders of Series A Preferred Stock shall be entitled to be paid, prior and in preference to any payment or distribution to the holders of Common Stock or any

15

other capital stock of the Corporation, an amount per share in cash
equal to the Original Issue Price (subject to appropriate
adjustments in the event of any stock dividend, stock split,
combination or other similar recapitalization affecting such shares)
plus all accrued and unpaid dividends thereon, to and including the
date full payment of such amount shall be tendered to the holders
of the Series A Preferred Stock with respect to such liquidation,
dissolution or winding up.  If upon any liquidation, dissolution or
winding up of Corporation, the Available Funds and Assets to be
distributed to the holders of the Series A Preferred Stock shall be
insufficient to permit the payment to such holders of their full
preferential amount described in this Section 4, then all of the
Available Funds and Assets shall be distributed among the holders
of the then outstanding shares of Series A Preferred Stock pro rata
according to the number of outstanding shares of Series A
Preferred Stock held by each holder thereof.

4.2    **No Participation Rights.**  If there are any Available Funds and
Assets remaining after the payment or distribution (or the setting
aside for payment or distribution) to the holders of shares of
Series A Preferred Stock of their full preferential amounts
described above in this Section 4, then all such remaining
Available Funds and Assets shall be distributed ratably to the
holders of the then outstanding Common Stock or other capital
stock of the Corporation.

4.3    **Merger or Sale of Assets.**  Each of the following transactions
shall be deemed to be a liquidation, dissolution or winding up of
the Corporation as those terms are used in this Section 4:  (a) any
reorganization, consolidation, merger or similar transaction or
series of related transactions (each, a "combination transaction")
with or into another entity, except for a combination transaction in
which the holders of the capital stock of this Corporation
outstanding immediately prior to the combination transaction
continue to hold more than 50.0% of the outstanding voting power
of the capital stock of the Corporation or surviving or acquiring
entity outstanding immediately after the combination transaction
(or such surviving or acquiring corporation's parent corporation if
the surviving corporation is owned by the parent corporation); or
(b) any transfer (whether by merger, consolidation or otherwise) to
any person, entity or group of affiliated persons or entities of
securities of the Corporation if, after such transfer, such person,
entity or group would hold 50.0% or more of the outstanding
voting stock of the Corporation; or (c) the sale, transfer or other
disposition of all or substantially all of the assets of the
Corporation; or (d) a liquidation, dissolution or winding up of the
Corporation; provided, however, that a transaction the sole purpose
of which is to change the state of incorporation of the Corporation

shall not constitute a liquidation, dissolution or winding up of the Corporation.

**5.    Redemption.**

5.1    **Mandatory Redemption**. Subject to the terms and conditions of this Section 5 and subject to any liquidation preference rights which may have been previously invoked under Section 4 above, the Corporation shall upon completion of the Rights Offering redeem the Series A Preferred Stock pro rata among all holders of the shares of Series A Preferred Stock then outstanding according to the number of shares held by each holder thereof on the designated Redemption Date with the aggregate net cash proceeds received by it from the Rights Offering. The price to be paid to the holders of Series A Preferred Stock upon redemption shall be an amount per share in cash equal to (i) the Original Issue Price (subject to appropriate adjustments in the event of any stock dividend, stock split, combination or similar recapitalization affecting such shares) plus (ii) all accrued and unpaid dividends thereon, to and including the Redemption Date (the "**Redemption Price**").

5.2    **Optional Redemption.** The Corporation may at any time, at the option of the Board, redeem in whole or in part the shares of Series A Preferred Stock then outstanding by paying cash therefor equal to the Redemption Price.

5.3    **Insufficient Funds.** If, upon any Redemption Date designated by the Corporation under this Section 5 for the redemption of shares of Series A Preferred Stock, the funds and assets of the Corporation legally available therefor shall be insufficient to redeem all of the shares of Series A Preferred Stock, then any such unredeemed shares shall be redeemed at the next designated Redemption Date to the full extent of legally available funds of the Corporation at such time, and any such unredeemed shares shall continue to be so carried forward until redeemed. Any shares of Series A Preferred Stock which are subject to redemption hereunder but which have not been so redeemed shall remain outstanding and shall be entitled to all dividend, liquidation, and other rights, preferences, privileges, and restrictions of the Series A Preferred Stock respectively until such shares have been redeemed.

5.4    **Redemption Notice**. At least twenty (20) days, but not more than thirty (30) days, prior to the date fixed for the completion of the Rights Offering under Section 5.1 or the date fixed for any optional redemption of the Series A Preferred Stock under Section 5.2 (in either case, the "**Redemption Date**"), written notice shall be

mailed by the Corporation, first class, postage prepaid, to each holder of record (at the close of business on the Business Day next preceding the day on which notice is given) of the Series A Preferred Stock to be redeemed, at the address last shown on the records of the Corporation for such holder, notifying such holder of the redemption to be effected, the Redemption Date, the number of such holder's shares of Series A Preferred Stock to be redeemed and the place at which payment may be obtained and calling upon such holder to surrender to the Corporation, in the manner and at the place designated, the certificate or certificates representing the shares to be redeemed (the "**Redemption Notice**").

5.5    **Partial Redemption.**  No redemption shall be made under this Section 5 of only a part of the then outstanding shares of Series A Preferred Stock, unless the Corporation shall effect such redemption pro rata among all holders of the shares of Series A Preferred Stock then outstanding according to the number of shares held by each holder thereof on the designated Redemption Date.

5.6    **Surrender of Certificates.**  On or after each designated Redemption Date, each holder of shares of Series A Preferred Stock to be redeemed shall surrender to the Corporation the certificate(s) representing such shares, in the manner and at the place designated in the Redemption Notice, and thereupon the Redemption Price for such shares shall be payable to the order of the person whose name appears on such certificate(s) as the owner thereof, and each surrendered certificate shall be canceled and retired.  If less than all of the shares represented by such certificate or certificates are redeemed, the Corporation shall promptly issue a new certificate representing the unredeemed shares.

5.7    **Effect of Redemption.**  If, on the Redemption Date, the Redemption Price shall have been paid in cash in full or sufficient funds, in cash, shall have been irrevocably deposited in trust to effect such redemption, then notwithstanding that the certificate or certificates evidencing any of the shares of Series A Preferred Stock so called for redemption shall not have been surrendered, all dividends with respect to such shares shall cease to accrue after the Redemption Date, such shares shall not thereafter be transferred on the Corporation's books and the rights of all the holders such shares with respect to such shares shall terminate after the Redemption Date, except only the right of the holders to receive the redemption price without interest upon surrender of their certificate or certificates therefor.  Any shares of Series A Preferred Stock not redeemed shall remain outstanding and entitled to all dividend, liquidation, and other rights, preferences,

privileges, and restrictions of the Series A Preferred Stock respectively until such shares have been redeemed.

6.    **Voting Rights; Protective Provisions; Rights Offering.**

6.1    **Voting Rights.** Except as set forth in this Certificate of Incorporation or as required by law, the holders of shares of Series A Preferred Stock shall not have any voting rights.

6.2    **Protective Provisions.** For so long as any shares of Series A Preferred Stock remain outstanding, the Corporation shall not, without first obtaining the prior written consent of the Holders of a Majority of the Series A Preferred Stock, take any of the following actions:

(a)    Authorize, create or issue, or obligate itself to issue, whether by merger, consolidation or otherwise, any class or series of capital stock of the Corporation that is senior to, or on a parity with, the Series A Preferred Stock with respect to any rights, powers, preferences or privileges;

(b)    increase or decrease the authorized number of shares of Series A Preferred Stock;

(c)    alter or change the rights, powers, preferences or privileges of the Series A Preferred Stock;

(d)    declare or pay any dividend or distribution on the Common Stock or any other capital stock of the Corporation;

(e)    amend, alter or repeal any provisions of the Certificate of Incorporation or Bylaws of the Corporation so as to adversely affect any right, preference, privilege or power of the Series A Preferred Stock; or

(f)    take any other action which adversely affects the holders of the Series A Preferred Stock disproportionately to the holders of the Common Stock.

6.3    **Rights Offering.** Reference is made to Section 4.4 of the Investment Agreement with respect to the Corporation's obligations to consummate the Rights Offering.

(a)    If, at the close of business on January 31, 2011, there remains outstanding shares of Series A Preferred Stock that have an aggregate Original Issue Price of more than $4,000,000, then, in such event, the authorized number of directors constituting the Board shall automatically be increased by a number of directors which, when added to the number of directors existing at such time, would

constitute a majority of the then-authorized number of directors (such number of directors being referred to as the "Series A Preferred Directors"), and the holders of the Series A Preferred Stock then outstanding, voting as a single class, shall be entitled exclusively to elect the Series A Preferred Directors.  Without limiting the generality of the foregoing, as an example, if, on January 31, 2011, the authorized number of directors of the Corporation is three, such authorized number of directors shall automatically be increased to seven and the holders of the Series A Preferred Stock shall be entitled to elect four of the seven directors.  The right of the holders of Series A Preferred Stock, voting as a single class, to elect the Series A Preferred Directors under this Section 6.3 shall continue until such time as all of the shares of Series A Preferred Stock shall have been repurchased or redeemed by the Corporation upon proper notice and sufficient funds, in cash, shall have been irrevocably deposited in trust to effect such redemption.

(b)    The Series A Preferred Directors shall be elected by a plurality of the votes cast by the holders of the Series A Preferred Stock in any election, and each Series A Preferred Director shall serve until his or her successor is duly elected and qualified or until such Series A Preferred Director's right to hold the office terminates, whichever occurs earlier, subject to such Series A Preferred Director's earlier death, disqualification, resignation or removal.  The election shall take place at (i) either (A) a special meeting called in accordance with Section 6.3(c) below if the request referred to in Section 6.3 is received more than 60 days before the date fixed for the Corporation's next annual or special meeting of stockholders or (B) the next annual or special meeting of stockholders if the request is received within 60 days of the date fixed for the Corporation's next annual or special meeting of stockholders, and (ii) at each subsequent annual meeting of stockholders, or special meeting held in place thereof, until such time as all of the shares of Series A Preferred Stock shall have been repurchased or redeemed by the Corporation upon proper notice and sufficient funds, in cash, shall have been irrevocably deposited in trust to effect such redemption.

(c)    At any time when the voting rights in favor of the shares of Series A Preferred Stock set forth in this Section 6.3 shall have vested, a proper officer of the Corporation shall call or

20

cause to be called, upon the written request of the Holders of a Majority of the Series A Preferred Stock, a special meeting of the holders of Series A Preferred Stock by mailing or causing to be mailed to such holders a notice of such special meeting to be held not fewer than ten or more than 30 days after the date such notice is given. The record date for determining the holders of the Series A Preferred Stock entitled to notice of and to vote at such special meeting will be the close of business on the third Business Day immediately preceding the day on which such notice is mailed. At any such annual or special meeting, the holders of the Series A Preferred Stock, voting as a single class, shall be entitled exclusively to elect the Series A Preferred Directors. The holders of a majority of the shares of Series A Preferred Stock then outstanding, present in person or by proxy, will constitute a quorum for the election of the Series A Preferred Directors. Notice of all meetings at which holders of the Series A Preferred Stock shall be entitled to vote will be given to such holders at their addresses shown on the records of the Corporation for such holders. At any such meeting or adjournment thereof in the absence of a quorum, the holders of a majority of the Series A Preferred Stock, present in person or proxy, shall have the power to adjourn the meeting for the election of the Series A Preferred Directors, without notice other than an announcement at the meeting, until a quorum is present.

(d)     Any vacancy in the office of any Series A Preferred Director may be filled only by the action of a majority of the Series A Preferred Directors remaining in office, or if none remains in office, by a plurality of the votes cast by the holders of shares of Series A Preferred Stock then outstanding, voting as a single class. Any Series A Preferred Director may be removed, with or without cause, only by a vote of the Holders of a Majority of the Series A Preferred Stock. Each of the Series A Preferred Directors shall be entitled to one vote on any matter.

(e)     So long as any shares of Series A Preferred Stock remain outstanding, the Bylaws of the Corporation shall at all times contain provisions adequate to permit the holders of shares of Series A Preferred Stock to elect the Series A Preferred Directors under the circumstances and in the manner provided in this Section 6.3.

7.     **Waiver of Rights, Preferences or Privileges.**  Any right, power, preference or privilege of the Series A Preferred Stock may be waived by a writing

signed by the Holders of a Majority of the Series A Preferred Stock, and such waiver shall be binding on all holders of shares of Series A Preferred Stock.

# EXHIBIT "2"

## AMENDED AND RESTATED BYLAWS OF

## THE WALKING COMPANY HOLDINGS, INC.

### (a Delaware corporation)

### ARTICLE I - CORPORATE OFFICES

#### 1.1 REGISTERED OFFICE.

The registered office of The Walking Company Holdings, Inc. (the "Corporation") shall be fixed in the Corporation's certificate of incorporation, as the same may be amended from time to time (including any exhibits thereto, the "Certificate of Incorporation").

#### 1.2 OTHER OFFICES.

The Corporation's board of directors (the "Board") may at any time establish other offices at any place or places where the Corporation is qualified to do business.

### ARTICLE II - MEETINGS OF STOCKHOLDERS

#### 2.1 PLACE OF MEETINGS.

Meetings of stockholders shall be held at any place, within or outside the State of Delaware, designated by the Board. The Board may, in its sole discretion, determine that a meeting of stockholders shall not be held at any place, but may instead be held solely by means of remote communication as authorized by Section 211(a)(2) of the Delaware General Corporation Law (the "DGCL"). In the absence of any such designation or determination, stockholders' meetings shall be held at the Corporation's principal executive office.

#### 2.2 ANNUAL MEETING.

The annual meeting of stockholders shall be held each year. The Board shall designate the date and time of the annual meeting. At the annual meeting, directors shall be elected and other proper business properly brought before the meeting in accordance with Section 2.4 of this Article II may be transacted.

#### 2.3 SPECIAL MEETING.

A special meeting of the stockholders may be called at any time by the Board, chairperson of the Board, chief executive officer or president (in the absence of a chief executive officer), but such special meetings may not be called by any other person or persons.

No business may be transacted at such special meeting other than the business specified in such notice to stockholders. Nothing contained in this paragraph of this Section 2.3 shall be construed as limiting, fixing, or affecting the time when a meeting of stockholders called by action of the Board may be held.

## 2.4 ADVANCE NOTICE PROCEDURES FOR BUSINESS BROUGHT BEFORE A MEETING.

(i) At an annual meeting of the stockholders, only such business shall be conducted as shall have been properly brought before the meeting. To be properly brought before an annual meeting, business must be (a) brought before the meeting by the Corporation and specified in the notice of meeting given by or at the direction of the Board, (b) brought before the meeting by or at the direction of the Board, or (c) otherwise properly brought before the meeting by a stockholder who (A) was a stockholder of record of the Corporation (and, with respect to any beneficial owner, if different, on whose behalf such business is proposed, only if such beneficial owner was the beneficial owner of shares of the Corporation) both at the time of giving the notice provided for in this Section 2.4 and at the time of the meeting, (B) is entitled to vote at the meeting, and (C) has complied with all of the notice procedures set forth in this Section 2.4 as to such business. The foregoing clause (c) shall be the exclusive means for a stockholder to propose business to be brought before an annual meeting of the stockholders. Stockholders shall not be permitted to propose business to be brought before a special meeting of the stockholders, and the only matters that may be brought before a special meeting are the matters specified in the notice of meeting given by or at the direction of the person calling the meeting pursuant to Article II, Section 2.3 of these Bylaws. Stockholders seeking to nominate persons for election to the Board must comply with the notice procedures set forth in Article II, Section 2.5 of these Bylaws, and this Section 2.4 shall not be applicable to nominations except as expressly provided in Article II, Section 2.5 of these Bylaws.

(ii) Without qualification, for business to be properly brought before an annual meeting by a stockholder, the stockholder must (a) provide Timely Notice (as defined below) thereof in writing and in proper form to the Secretary of the Corporation and (b) provide any updates or supplements to such notice at the times and in the forms required by this Section 2.4. To be timely, a stockholder's notice must be delivered to or mailed and received at the principal executive offices of the Corporation not less than ninety (90) days nor more than one hundred twenty (120) days prior to the first anniversary of the preceding year's annual meeting; *provided, however,* that in the event that the date of the annual meeting is more than thirty (30) days before or more than sixty (60) days after such anniversary date, notice by the stockholder to be timely must be so delivered, or mailed and received, not earlier than the one hundred twentieth (120) day prior to such annual meeting and not later than the ninetieth (90th) day prior to such annual meeting or, if later, the tenth (10th) day following the day on which public disclosure of the date of such annual meeting was first made (such notice within such time periods, "Timely Notice"). In no event shall any adjournment or postponement of an annual meeting or the announcement thereof commence a new time period for the giving of Timely Notice as described above.

## 2.5 ADVANCE NOTICE PROCEDURES FOR NOMINATIONS OF DIRECTORS.

(i) Nominations of any person for election to the Board at an annual meeting or at a special meeting (but only if the election of directors is a matter specified in the notice of meeting given by or at the direction of the person calling such special meeting) may be made at such meeting only (a) by or at the direction of the Board, including by any committee or persons appointed by the Board, or (b) by a stockholder who (A) was a stockholder of record of the Corporation (and, with respect to any beneficial owner, if different, on whose behalf such nomination is proposed to be made, only if such beneficial owner was the beneficial owner of shares of the Corporation) both at the time of giving the notice provided for in this Section 2.5 and at the time of the meeting, (B) is entitled to vote at the meeting and (C) has complied with this Section 2.5 as to such nomination. The foregoing clause (b) shall be the exclusive means for

a stockholder to make any nomination of a person or persons for election to the Board to be considered by the stockholders at an annual meeting or special meeting.

(ii) Without qualification, for a stockholder to make any nomination of a person or persons for election to the Board at an annual meeting, the stockholder must (a) provide Timely Notice (as defined in Section 2.4(ii) of these bylaws) thereof in writing and in proper form to the Secretary of the Corporation and (b) provide any updates or supplements to such notice at the times and in the forms required by this Section 2.5.

## 2.6 NOTICE OF STOCKHOLDERS' MEETINGS.

Unless otherwise provided by law, the Certificate of Incorporation or these bylaws, the notice of any meeting of stockholders shall be sent or otherwise given in accordance with either Section 2.7 or Section 8.1 of these bylaws not less than ten (10) nor more than sixty (60) days before the date of the meeting to each stockholder entitled to vote at such meeting. The notice shall specify the place, if any, date and hour of the meeting, the means of remote communication, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called.

## 2.7 MANNER OF GIVING NOTICE; AFFIDAVIT OF NOTICE.

Notice of any meeting of stockholders shall be deemed given:

(i) if mailed, when deposited in the United States mail, postage prepaid, directed to the stockholder at his or her address as it appears on the Corporation's records; or

(ii) if electronically transmitted as provided in Section 8.1 of these bylaws.

An affidavit of the secretary or an assistant secretary of the Corporation or of the transfer agent or any other agent of the Corporation that the notice has been given by mail or by a form of electronic transmission, as applicable, shall, in the absence of fraud, be prima facie evidence of the facts stated therein.

## 2.8 QUORUM.

Unless otherwise provided by law, the Certificate of Incorporation or these bylaws, the holders of a majority in voting power of the stock issued and outstanding and entitled to vote, present in person or represented by proxy, shall constitute a quorum for the transaction of business at all meetings of the stockholders. If, however, such quorum is not present or represented at any meeting of the stockholders, then either (i) the chairperson of the meeting or (ii) a majority in voting power of the stockholders entitled to vote at the meeting, present in person or represented by proxy, shall have power to adjourn the meeting from time to time in the manner provided in Section 2.9 of these bylaws until a quorum is present or represented. At such adjourned meeting at which a quorum is present or represented, any business may be transacted that might have been transacted at the meeting as originally noticed.

## 2.9 ADJOURNED MEETING; NOTICE.

When a meeting is adjourned to another time or place, unless these bylaws otherwise require, notice need not be given of the adjourned meeting if the time, place, if any, thereof, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken. At the adjourned meeting, the Corporation may transact any

business which might have been transacted at the original meeting. If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

### 2.10 CONDUCT OF BUSINESS.

The chairperson of any meeting of stockholders shall determine the order of business and the procedure at the meeting, including such regulation of the manner of voting and the conduct of business.

### 2.11 VOTING.

The stockholders entitled to vote at any meeting of stockholders shall be determined in accordance with the provisions of Section 2.13 of these bylaws, subject to Section 217 (relating to voting rights of fiduciaries, pledgors and joint owners of stock) and Section 218 (relating to voting trusts and other voting agreements) of the DGCL.

Except as may be otherwise provided in the Certificate of Incorporation or these bylaws, each stockholder shall be entitled to one (1) vote for each share of capital stock held by such stockholder.

At all meetings of stockholders for the election of directors at which a quorum is present a plurality of the votes cast shall be sufficient to elect a director. All other elections and questions presented to the stockholders at a meeting at which a quorum is present shall, unless otherwise provided by the Certificate of Incorporation, these bylaws, the rules or regulations of any stock exchange applicable to the Corporation, or applicable law or pursuant to any regulation applicable to the Corporation or its securities, be decided by the affirmative vote of the holders of a majority in voting power of the shares of stock of the Corporation which are present in person or by proxy and entitled to vote thereon.

### 2.12 STOCKHOLDER ACTION BY WRITTEN CONSENT WITHOUT A MEETING.

Any action of the stockholders required or permitted to be taken at any regular or special meeting thereof may be taken without any such meeting, notice of meeting or vote if a consent in writing setting forth the action thereby taken is signed by the holders of outstanding stock having not less than the number of votes that would have been necessary to authorize such action at a meeting at which all shares entitled to vote were present and voted. Prompt notice of the taking of any such action shall be given to any stockholders entitled to vote who have not so consented in writing.

### 2.13 RECORD DATE FOR STOCKHOLDER NOTICE; VOTING; GIVING CONSENTS.

In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board may fix, in advance, a record date, which record date shall not precede the date on which the resolution fixing the record date is adopted and which shall not be more than sixty (60) nor less than ten (10) days before the date of such meeting, nor more than sixty (60) days prior to any other such action.

If the Board does not so fix a record date:

(i) The record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.

(ii) The record date for determining stockholders for any other purpose shall be at the close of business on the day on which the Board adopts the resolution relating thereto.

A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; *provided, however*, that the Board may fix a new record date for the adjourned meeting.

## 2.14 PROXIES.

Each stockholder entitled to vote at a meeting of stockholders may authorize another person or persons to act for such stockholder by proxy authorized by an instrument in writing or by a transmission permitted by law filed in accordance with the procedure established for the meeting, but no such proxy shall be voted or acted upon after three (3) years from its date, unless the proxy provides for a longer period. The revocability of a proxy that states on its face that it is irrevocable shall be governed by the provisions of Section 212 of the DGCL. A proxy may be in the form of a telegram, cablegram or other means of electronic transmission which sets forth or is submitted with information from which it can be determined that the telegram, cablegram or other means of electronic transmission was authorized by the stockholder.

## 2.15 LIST OF STOCKHOLDERS ENTITLED TO VOTE.

The Officer (as such term is defined in Section 15) who has charge of the stock ledger of the Corporation shall prepare and make, at least ten (10) days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. The Corporation shall not be required to include electronic mail addresses or other electronic contact information on such list. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting for a period of at least ten (10) days prior to the meeting: (i) on a reasonably accessible electronic network, provided that the information required to gain access to such list is provided with the notice of the meeting, or (ii) during ordinary business hours, at the Corporation's principal executive office. In the event that the Corporation determines to make the list available on an electronic network, the Corporation may take reasonable steps to ensure that such information is available only to stockholders of the Corporation. If the meeting is to be held at a place, then the list shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present. If the meeting is to be held solely by means of remote communication, then the list shall also be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of the meeting. Such list shall presumptively determine the identity of the stockholders entitled to vote at the meeting and the number of shares held by each of them.

## 2.16 INSPECTORS OF ELECTION.

Before any meeting of stockholders, the Board shall appoint an inspector or inspectors of election to act at the meeting or its adjournment and make a written report thereof. The number of inspectors shall be either one (1) or three (3). If any person appointed as inspector fails to appear

GENBUS/731586.1

or fails or refuses to act, then the chairperson of the meeting may, and upon the request of any stockholder or a stockholder's proxy shall, appoint a person to fill that vacancy.

Such inspectors shall: (i) determine the number of shares outstanding and the voting power of each, the number of shares represented at the meeting, the existence of a quorum, and the authenticity, validity, and effect of proxies; (ii) receive votes or ballots; (iii) hear and determine all challenges and questions in any way arising in connection with the right to vote; (iv) count and tabulate all votes; (v) determine when the polls shall close; (vi) determine the result; and (vii) do any other acts that may be proper to conduct the election or vote with fairness to all stockholders.

The inspectors of election shall perform their duties impartially, in good faith, to the best of their ability and as expeditiously as is practical. If there are three (3) inspectors of election, the decision, act or certificate of a majority is effective in all respects as the decision, act or certificate of all. Any report or certificate made by the inspectors of election is prima facie evidence of the facts stated therein.

## ARTICLE III - DIRECTORS

### 3.1 POWERS

Subject to the provisions of the DGCL and any limitations in the Certificate of Incorporation or these bylaws relating to action required to be approved by the stockholders (or any class or series thereof) or by the outstanding shares, the business and affairs of the Corporation shall be managed and all corporate powers shall be exercised by or under the direction of the Board.

### 3.2 NUMBER OF DIRECTORS.

Subject to the provisions in the Certificate of Incorporation, the authorized number of directors shall be determined from time to time by resolution of the Board, provided the Board shall consist of at least three (3) members. No reduction of the authorized number of directors shall have the effect of removing any director before that director's term of office expires.

### 3.3 ELECTION, QUALIFICATION AND TERM OF OFFICE OF DIRECTORS.

Except as provided in Section 3.4 of these bylaws, each director, including a director elected to fill a vacancy, shall hold office until the expiration of the term for which elected and until such director's successor is elected and qualified or until such director's earlier death, resignation or removal. Directors need not be stockholders unless so required by the Certificate of Incorporation or these bylaws. The Certificate of Incorporation or these bylaws may prescribe other qualifications for directors.

### 3.4 RESIGNATION AND VACANCIES.

Any director may resign at any time upon notice given in writing or by electronic transmission to the Corporation. When one or more directors so resigns and the resignation is effective at a future date, a majority of the directors then in office, including those who have so resigned, shall have power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective, and each director so chosen shall hold office as provided in this section in the filling of other vacancies.

Unless otherwise provided in the Certificate of Incorporation or these bylaws, vacancies and newly created directorships resulting from any increase in the authorized number of directors elected by all of the stockholders having the right to vote as a single class may be filled by a

majority of the directors then in office, although less than a quorum, or by a sole remaining director and each director so chosen shall hold office until the next annual meeting and until his or her successor is duly elected and qualified. If the directors are divided into classes, a person so elected by the directors then in office to fill a vacancy or newly created directorship shall hold office until the next election of the class for which such director shall have been chosen and until his or her successor shall have been duly elected and qualified.

If at any time, by reason of death or resignation or other cause, the Corporation should have no directors in office, then any Officer or any stockholder or an executor, administrator, trustee or guardian of a stockholder, or other fiduciary entrusted with like responsibility for the person or estate of a stockholder, may call a special meeting of stockholders in accordance with the provisions of the Certificate of Incorporation or these bylaws, or may apply to the Court of Chancery for a decree summarily ordering an election as provided in Section 211 of the DGCL.

If, at the time of filling any vacancy or any newly created directorship, the directors then in office constitute less than a majority of the whole Board (as constituted immediately prior to any such increase), then the Court of Chancery may, upon application of any stockholder or stockholders holding at least ten percent (10%) of the total number of the shares at the time outstanding having the right to vote for such directors, summarily order an election to be held to fill any such vacancies or newly created directorships, or to replace the directors chosen by the directors then in office as aforesaid, which election shall be governed by the provisions of Section 211 of the DGCL as far as applicable.

### 3.5 PLACE OF MEETINGS; MEETINGS BY TELEPHONE.

The Board may hold meetings, both regular and special, either within or outside the State of Delaware.

Unless otherwise restricted by the Certificate of Incorporation or these bylaws, members of the Board, or any committee designated by the Board, may participate in a meeting of the Board, or any committee, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting pursuant to this bylaw shall constitute presence in person at the meeting.

### 3.6 REGULAR MEETINGS.

Regular meetings of the Board may be held without notice at such time and at such place as shall from time to time be determined by the Board.

### 3.7 SPECIAL MEETINGS; NOTICE.

Special meetings of the Board for any purpose or purposes may be called at any time by the chairperson of the Board, the chief executive officer, the president, the secretary or a majority of the authorized number of directors.

Notice of the time and place of special meetings shall be: (i) delivered personally by hand, by courier or by telephone; (ii) sent by United States first-class mail, postage prepaid; (iii) sent by facsimile; or

(iv) sent by electronic mail, directed to each director at that director's address, telephone number, facsimile number or electronic mail address, as the case may be, as shown on the Corporation's records.

GENBUS/731586.1

If the notice is (i) delivered personally by hand, by courier or by telephone, (ii) sent by facsimile or (iii) sent by electronic mail, it shall be delivered or sent at least twenty-four (24) hours before the time of the holding of the meeting. If the notice is sent by United States mail, it shall be deposited in the United States mail at least four (4) days before the time of the holding of the meeting. Any oral notice may be communicated to the director. The notice need not specify the place of the meeting (if the meeting is to be held at the Corporation's principal executive office) nor the purpose of the meeting.

### 3.8 QUORUM.

At all meetings of the Board, a majority of the authorized number of directors shall constitute a quorum for the transaction of business. The vote of a majority of the directors present at any meeting at which a quorum is present shall be the act of the Board, except as may be otherwise specifically provided by statute, the Certificate of Incorporation or these bylaws. If a quorum is not present at any meeting of the Board, then the directors present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum is present.

A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for that meeting.

### 3.9 BOARD ACTION BY WRITTEN CONSENT WITHOUT A MEETING.

Unless otherwise restricted by the Certificate of Incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board, or of any committee thereof, may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

### 3.10 FEES AND COMPENSATION OF DIRECTORS.

Unless otherwise restricted by the Certificate of Incorporation or these bylaws, the Board shall have the authority to fix the compensation of directors.

### 3.11 REMOVAL OF DIRECTORS.

Except as otherwise provided by the DGCL, the Board of Directors or any individual director may be removed from office at any time with or without cause by the affirmative vote of the holders of a majority of the voting power of all the then outstanding shares of voting stock of the Corporation entitled to vote at an election of directors.

No reduction of the authorized number of directors shall have the effect of removing any director prior to the expiration of such director's term of office.

## ARTICLE IV - COMMITTEES

### 4.1 COMMITTEES OF DIRECTORS.

The Board may designate one (1) or more committees, each committee to consist of one (1) or more of the directors of the Corporation. The Board may designate one (1) or more

directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.

### 4.2 COMMITTEE MINUTES.

Each committee shall keep regular minutes of its meetings and report the same to the Board when required.

## ARTICLE V - OFFICERS

### 5.1 OFFICERS.

The officers of the Corporation shall be a president and a secretary. The Corporation may also have, at the discretion of the Board, a chairperson of the Board, a vice chairperson of the Board, a chief executive officer, a chief financial officer or treasurer, one (1) or more vice presidents, one (1) or more assistant vice presidents, one (1) or more assistant treasurers, one (1) or more assistant secretaries, and any such other officers as may be appointed in accordance with the provisions of these bylaws. Any number of offices may be held by the same person.

### 5.2 APPOINTMENT OF OFFICERS.

The officers of this Corporation (each an "Officer" and together the "Officers") will be those Officers appointed from time to time by the Board or by any other Officer empowered to do so. The Board shall have sole power and authority to appoint executive Officers. As used herein, the term "executive Officer" shall mean the President, any Officer in charge of a principal business unit, division, or function, or any other Officer who performs a policy-making function.

### 5.3 SUBORDINATE OFFICERS.

The Board may appoint, or empower the chief executive officer or, in the absence of a chief executive officer, the president, to appoint, such other Officers and agents as the business of the Corporation may require. Each of such Officers and agents shall hold office for such period, have such authority, and perform such duties as are provided in these bylaws or as the Board may from time to time determine.

### 5.4 REMOVAL AND RESIGNATION OF OFFICERS.

Subject to the rights, if any, of an Officer under any contract of employment, any Officer may be removed, either with or without cause, by an affirmative vote of the majority of the Board at any regular or special meeting of the Board or, except in the case of an Officer chosen by the Board, by any Officer upon whom such power of removal may be conferred by the Board.

Any Officer may resign at any time by giving written notice to the Corporation. Any resignation shall take effect at the date of the receipt of that notice or at any later time specified in that notice. Unless otherwise specified in the notice of resignation, the acceptance of the resignation shall not be necessary to make it effective. Any resignation is without prejudice to the rights, if any, of the Corporation under any contract to which the Officer is a party.

### 5.5 VACANCIES IN OFFICES.

Any vacancy occurring in any office of the Corporation shall be filled by the Board or as provided in Section 5.2.

### 5.6 AUTHORITY AND DUTIES OF OFFICERS.

GENBUS/731586.1

All Officers of the Corporation shall respectively have such authority and perform such duties in the management of the business of the Corporation as may be designated from time to time by the Board or the stockholders and, to the extent not so provided, as generally pertain to their respective offices, subject to the control of the Board.

## ARTICLE VI - RECORDS AND REPORTS

### 6.1 MAINTENANCE AND INSPECTION OF RECORDS.

The Corporation shall, either at its principal executive office or at such place or places as designated by the Board, keep a record of its stockholders listing their names and addresses and the number and class of shares held by each stockholder, a copy of these bylaws as amended to date, accounting books and other records.

Any stockholder of record, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose the Corporation's stock ledger, a list of its stockholders, and its other books and records and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder. In every instance where an attorney or other agent is the person who seeks the right to inspection, the demand under oath shall be accompanied by a power of attorney or such other writing that authorizes the attorney or other agent so to act on behalf of the stockholder. The demand under oath shall be directed to the Corporation at its registered office in Delaware or at its principal executive office.

### 6.2 INSPECTION BY DIRECTORS.

Any director shall have the right to examine the Corporation's stock ledger, a list of its stockholders, and its other books and records for a purpose reasonably related to his or her position as a director. The Court of Chancery is hereby vested with the exclusive jurisdiction to determine whether a director is entitled to the inspection sought. The Court may summarily order the Corporation to permit the director to inspect any and all books and records, the stock ledger, and the stock list and to make copies or extracts therefrom. The Court may, in its discretion, prescribe any limitations or conditions with reference to the inspection, or award such other and further relief as the Court may deem just and proper.

## ARTICLE VII - GENERAL MATTERS

### 7.1 EXECUTION OF CORPORATE CONTRACTS AND INSTRUMENTS.

The Board, except as otherwise provided in these bylaws, may authorize any Officer or Officers, or agent or agents, to enter into any contract or execute any instrument in the name of and on behalf of the Corporation; such authority may be general or confined to specific instances. Unless so authorized or ratified by the Board or within the agency power of an Officer, no Officer, agent or employee shall have any power or authority to bind the Corporation by any contract or engagement or to pledge its credit or to render it liable for any purpose or for any amount.

### 7.2 STOCK CERTIFICATES.

The shares of the Corporation shall be represented by certificates, provided that the Board may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be uncertificated shares. Any such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the Corporation. Notwithstanding the adoption

GENBUS/731586.1

of such a resolution by the Board, every holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of the Corporation by the chairperson or vice-chairperson of the Board, or the president or vice-president, and by the treasurer or an assistant treasurer, or the secretary or an assistant secretary of the Corporation representing the number of shares registered in certificate form. Any or all of the signatures on the certificate may be a facsimile. In case any Officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate has ceased to be such Officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such Officer, transfer agent or registrar at the date of issue.

### 7.3 SPECIAL DESIGNATION ON CERTIFICATES.

If the Corporation is authorized to issue more than one class of stock or more than one series of any class, then the powers, the designations, the preferences and the relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights shall be set forth in full or summarized on the face or back of the certificate that the Corporation shall issue to represent such class or series of stock; *provided, however*, that, except as otherwise provided in Section 202 of the DGCL, in lieu of the foregoing requirements, there may be set forth on the face or back of the certificate that the Corporation shall issue to represent such class or series of stock a statement that the Corporation will furnish without charge to each stockholder who so requests the powers, the designations, the preferences and the relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights.

### 7.4 LOST CERTIFICATES.

Except as provided in this Section 7.4, no new certificates for shares shall be issued to replace a previously issued certificate unless the latter is surrendered to the Corporation and cancelled at the same time. The Corporation may issue a new certificate of stock or uncertificated shares in the place of any certificate theretofore issued by it, alleged to have been lost, stolen or destroyed, and the Corporation may require the owner of the lost, stolen or destroyed certificate, or such owner's legal representative, to give the Corporation a bond sufficient to indemnify it against any claim that may be made against it on account of the alleged loss, theft or destruction of any such certificate or the issuance of such new certificate or uncertificated shares.

### 7.5 CONSTRUCTION; DEFINITIONS.

Unless the context requires otherwise, the general provisions, rules of construction and definitions in the DGCL shall govern the construction of these bylaws. Without limiting the generality of this provision, the singular number includes the plural, the plural number includes the singular, and the term "person" includes both a corporation and a natural person.

### 7.6 DIVIDENDS.

The Board, subject to any restrictions contained in either (i) the DGCL or (ii) the Certificate of Incorporation, may declare and pay dividends upon the shares of its capital stock. Dividends may be paid in cash, in property or in shares of the Corporation's capital stock.

The Board may set apart out of any of the funds of the Corporation available for dividends a reserve or reserves for any proper purpose and may abolish any such reserve. Such purposes shall include but not be limited to equalizing dividends, repairing or maintaining any property of the Corporation, and meeting contingencies.

GENBUS/731586.1

## 7.7 FISCAL YEAR.

The fiscal year of the Corporation shall be fixed by resolution of the Board and may be changed by the Board.

## 7.8 SEAL.

The Corporation may adopt a corporate seal, which shall be adopted and which may be altered by the Board. The Corporation may use the corporate seal by causing it or a facsimile thereof to be impressed or affixed or in any other manner reproduced.

## 7.9 TRANSFER OF STOCK.

Shares of the Corporation shall be transferable in the manner prescribed by law and in these bylaws. Shares of stock of the Corporation shall be transferred on the books of the Corporation only by the holder of record thereof or by such holder's attorney duly authorized in writing, upon surrender to the Corporation of the certificate or certificates representing such shares endorsed by the appropriate person or persons (or by delivery of duly executed instructions with respect to uncertificated shares), with such evidence of the authenticity of such endorsement or execution, transfer, authorization and other matters as the Corporation may reasonably require, and accompanied by all necessary stock transfer stamps. No transfer of stock shall be valid as against the Corporation for any purpose until it shall have been entered in the stock records of the Corporation by an entry showing the names of the persons from and to whom it was transferred.

## 7.10 STOCK TRANSFER AGREEMENTS.

The Corporation shall have power to enter into and perform any agreement with any number of stockholders of any one or more classes of stock of the Corporation to restrict the transfer of shares of stock of the Corporation of any one or more classes owned by such stockholders in any manner not prohibited by the DGCL.

## 7.11 REGISTERED STOCKHOLDERS.

The Corporation:

(i) shall be entitled to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends and to vote as such owner;

(ii) shall be entitled to hold liable for calls and assessments the person registered on its books as the owner of shares; and

(iii) shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of another person, whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of Delaware.

## 7.12 WAIVER OF NOTICE.

Whenever notice is required to be given under any provision of the DGCL, the Certificate of Incorporation or these bylaws, a written waiver, signed by the person entitled to notice, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time of the event for which notice is to be given, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the stockholders

need be specified in any written waiver of notice or any waiver by electronic transmission unless so required by the Certificate of Incorporation or these bylaws.

## ARTICLE VIII - NOTICE BY ELECTRONIC TRANSMISSION

### 8.1 NOTICE BY ELECTRONIC TRANSMISSION.

Without limiting the manner by which notice otherwise may be given effectively to stockholders pursuant to the DGCL, the Certificate of Incorporation or these bylaws, any notice to stockholders given by the Corporation under any provision of the DGCL, the Certificate of Incorporation or these bylaws shall be effective if given by a form of electronic transmission consented to by the stockholder to whom the notice is given. Any such consent shall be revocable by the stockholder by written notice to the Corporation. Any such consent shall be deemed revoked if:

(i) the Corporation is unable to deliver by electronic transmission two (2) consecutive notices given by the Corporation in accordance with such consent; and

(ii) such inability becomes known to the secretary or an assistant secretary of the Corporation or to the transfer agent, or other person responsible for the giving of notice.

However, the inadvertent failure to treat such inability as a revocation shall not invalidate any meeting or other action.

Any notice given pursuant to the preceding paragraph shall be deemed given:

(i) if by facsimile telecommunication, when directed to a number at which the stockholder has consented to receive notice;

(ii) if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice;

(iii) if by a posting on an electronic network together with separate notice to the stockholder of such specific posting, upon the later of (A) such posting and (B) the giving of such separate notice; and

(iv) if by any other form of electronic transmission, when directed to the stockholder.

An affidavit of the secretary or an assistant secretary or of the transfer agent or other agent of the Corporation that the notice has been given by a form of electronic transmission shall, in the absence of fraud, be prima facie evidence of the facts stated therein.

### 8.2 DEFINITION OF ELECTRONIC TRANSMISSION.

An "electronic transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

## ARTICLE IX - AMENDMENTS

### 9.1  BY THE BOARD OF DIRECTORS.

Subject to the provisions of the Certificate of Incorporation, these Bylaws may be altered, amended or repealed or new Bylaws may be adopted by the affirmative vote of a majority of the directors present at any regular or special meeting of the Board of Directors at which a quorum is present; provided, however, that Article X of these bylaws may not be altered, amended or repealed without the prior written consent of the holders of at least sixty-six and two-thirds percent (66 2/3%) of the shares of Series A Preferred Stock then outstanding.

### 9.2  BY THE STOCKHOLDERS.

Subject to the provisions of the Certificate of Incorporation, these Bylaws may be altered, amended or repealed or new Bylaws may be adopted by the affirmative vote of the holders of at least a majority of the shares of the capital stock of the corporation issued and outstanding and entitled to vote at any regular meeting of stockholders, or at any special meeting of stockholders, provided notice of such alteration, amendment, repeal or adoption of new bylaws shall have been stated in the notice of such special meeting; provided further, however, that Article X of these bylaws may not be altered, amended or repealed without the prior written consent of the holders of at least sixty-six and two-thirds percent (66 2/3%) of the shares of Series A Preferred Stock then outstanding.

## ARTICLE X – SERIES A PREFERRED SHARES

### 10.1 RIGHTS RELATING TO SERIES A PREFERRED SHARES

Notwithstanding anything to the contrary contained herein or otherwise, the provisions of these bylaws, including, without limitation, the provisions of Articles II and III hereof, shall be subject to (and to that extent limited or otherwise modified by) the powers, preferences, privileges and rights of the Series A Preferred Stock, par value $0.01 per share, of the Corporation as set forth in the Certificate of Incorporation.  For the avoidance of doubt, this Article X shall apply to each provision in these bylaws whether or not any such provision expressly refers to the Certificate of Incorporation.  In the event of any conflict between the provisions of these bylaws and the provisions of the Certificate of Incorporation, the provisions of the Certificate of Incorporation shall control.

GENBUS/731586.1

## CERTIFICATE OF SECRETARY

The undersigned, being the duly elected Secretary of The Walking Company Holdings, Inc., a Delaware corporation, hereby certifies that the Amended and Restated Bylaws to which this Certificate is attached were duly adopted by the Board of Directors of said Corporation effective April ___, 2010.

_____

Anthony Wall, Secretary

# EXHIBIT "3"

# AMENDED AND RESTATED
# CERTIFICATE OF INCORPORATION
## OF
# THE WALKING COMPANY

It is hereby certified that:

(1)   The name of the corporation is The Walking Company (hereinafter, the "Corporation").

(2)   The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on March 30, 2004 under the name "BDTWC, INC.".  Effective on April 30, 2004, The Walking Company was merged with and into BDTWC, INC, with BDTWC, INC. being the surviving company with the name "The Walking Company".

(3)   The Corporation, The Walking Company Holdings, Inc. and Big Dog USA, Inc. filed a joint plan of reorganization pursuant to which, under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), a confirmation order of the United States Bankruptcy Court for the Central District of California, a court having jurisdiction of a proceeding under the Bankruptcy Code, was entered and that such order provides for the making and filing of this Amended and Restated Certificate of Incorporation.

(4)   This Amended and Restated Certificate of Incorporation amends and, as amended, restates in its entirety the Certificate of Incorporation and has been duly made, executed and acknowledged by the officers of the Corporation in accordance with Sections 242, 245 and 303 of the General Corporation Law of the State of Delaware.

(5)   The text of the Certificate of Incorporation of the Corporation is hereby amended and restated to read in its entirety as follows:

## ARTICLE I

The name of the corporation is The Walking Company (the "Corporation").

## ARTICLE II

The address of the Corporation's registered office in the State of Delaware is 1209 Orange Street, in the City of Wilmington, County of New Castle, and the name of its registered agent at that address is The Corporation Trust Company.

## ARTICLE III

The purpose of the Corporation is to engage in any lawful activity for which corporations may be organized under the General Corporation Law of the State of Delaware (the "DGCL").

## ARTICLE IV

Section 1. <u>Authorized Shares</u>. The total number of shares of stock that the Corporation shall have authority to issue is 100,000 shares of Common Stock, par value $.001 per share.

Section 2. <u>Non-voting securities</u>. Pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the Bankruptcy Code, the Corporation will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase capital stock of the Corporation); provided, however, that this provision (i) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (ii) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Corporation and (iii) in all events may be amended or eliminated in accordance with applicable law as from time to time in effect.

## ARTICLE V

To the fullest extent permitted by applicable law, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is prohibited by the DGCL as it presently exists or may hereafter be amended; provided, that no subsequent amendment shall adversely affect any right of a director with respect to any event occurring prior to the time of such amendment. Any amendment, modification or repeal of the foregoing sentence shall not adversely affect any right or protection of a director of the Corporation with respect to any acts or omissions of such director occurring prior to the time of such amendment, modification or repeal.

## ARTICLE VI

Section 1. <u>Right of Indemnification</u>. The Corporation shall indemnify and hold harmless, to the fullest extent not prohibited by applicable law as it presently exists or may hereafter be amended, any person (a "Covered Person") who was or is made or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (a "Proceeding"), by reason of the fact that he or she is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, enterprise or nonprofit entity, including service with respect to employee

41

benefit plans, against all liabilities, losses, expenses (including attorneys' fees), judgments, fines, penalties and amounts paid in settlement actually and reasonably incurred by such Covered Person in connection with any such Proceeding. Notwithstanding the preceding sentence, except as otherwise provided in Section 3 of this Article VI, the Corporation shall be required to indemnify a Covered Person in connection with a Proceeding (or part thereof) commenced by such Covered Person only if the commencement of such Proceeding (or part thereof) by the Covered Person was authorized in the specific case by the Board of Directors.

Section 2. <u>Prepayment of Expenses</u>. The Corporation shall to the fullest extent not prohibited by applicable law pay the expenses (including attorneys' fees) incurred by a Covered Person in defending any Proceeding in advance of its final disposition, <u>provided, however,</u> that, to the extent required by law, such payment of expenses in advance of the final disposition of the Proceeding shall be made only upon receipt of an undertaking by the Covered Person to repay all amounts advanced if it should be ultimately determined that the Covered Person is not entitled to be indemnified for such amounts under this Article VI or otherwise.

Section 3. <u>Claims</u>. If a claim for indemnification (following the final disposition of the Proceeding with respect to which indemnification is sought, including any settlement of such Proceeding) or advancement of expenses under this Article VI is not paid in full within thirty days after a written claim therefor by the Covered Person has been received by the Corporation, the Covered Person may file suit to recover the unpaid amount of such claim and, if successful in whole or in part, shall be entitled to be paid the expense of prosecuting such claim to the fullest extent not prohibited by applicable law. In any such action the Corporation shall have the burden of proving that the Covered Person is not entitled to the requested indemnification or advancement of expenses under this Article VI and applicable law.

Section 4. <u>Non-Exclusivity of Rights</u>. The rights conferred on any Covered Person by this Article VI shall not be exclusive of any other rights which such Covered Person may have or hereafter acquire under any statute, any other provision of this Amended and Restated Certificate of Incorporation, the Bylaws of the Corporation, or any agreement, vote of stockholders or disinterested directors or otherwise.

Section 5. <u>Amendment or Repeal</u>. Any right to indemnification or to advancement of expenses of any Covered Person arising hereunder shall not be eliminated or impaired by an amendment to or repeal of this Article VI after the occurrence of the act or omission that is the subject of the Proceeding for which indemnification or advancement of expenses is sought.

Section 6. <u>Other Indemnification and Advancement of Expenses</u>. This Article VI shall not limit the right of the Corporation, to the extent and in the manner permitted by law, to indemnify and to advance expenses to persons other than Covered Persons when and as authorized by appropriate corporate action.

## ARTICLE VII

In furtherance, and not in limitation, of the powers conferred by law, the Board of Directors is express authorized and empowered to adopt, amend or repeal the Bylaws of the Corporation; provided, however, that any Bylaws adopted by the Board of Directors under the powers hereby conferred may be amended or repealed by the Board of Directors or by the stockholders having voting power with respect thereto; and the Corporation may in its Bylaws confer powers upon the Board of Directors in addition to the foregoing and in addition to the powers and authorities expressly conferred upon the Board of Directors by law.

## ARTICLE VIII

The Corporation shall not be governed by the provisions of Section 203 of the DGCL.

*(Signature page follows)*

**IN WITNESS WHEREOF, THE WALKING COMPANY** has caused this Amended and Restated Certificate of Incorporation to be executed by its duly authorized officer this ___ day of April, 2010.

**THE WALKING COMPANY**

By: _____
     Name: Anthony J. Wall
     Title: Executive Vice President, General
     Counsel and Secretary

# EXHIBIT "4"

## AMENDED AND RESTATED BYLAWS OF

## THE WALKING COMPANY

### (a Delaware corporation)

## ARTICLE I - CORPORATE OFFICES

### 1.1 REGISTERED OFFICE.

The registered office of The Walking Company (the "Corporation") shall be fixed in the Corporation's certificate of incorporation, as the same may be amended from time to time (including any exhibits thereto, the "Certificate of Incorporation").

### 1.2 OTHER OFFICES.

The Corporation's board of directors (the "Board") may at any time establish other offices at any place or places where the Corporation is qualified to do business.

## ARTICLE II - MEETINGS OF STOCKHOLDERS

### 2.1 PLACE OF MEETINGS.

Meetings of stockholders shall be held at any place, within or outside the State of Delaware, designated by the Board. The Board may, in its sole discretion, determine that a meeting of stockholders shall not be held at any place, but may instead be held solely by means of remote communication as authorized by Section 211(a)(2) of the Delaware General Corporation Law (the "DGCL"). In the absence of any such designation or determination, stockholders' meetings shall be held at the Corporation's principal executive office.

### 2.2 ANNUAL MEETING.

The annual meeting of stockholders shall be held each year. The Board shall designate the date and time of the annual meeting. At the annual meeting, directors shall be elected and other proper business properly brought before the meeting in accordance with Section 2.4 of this Article II may be transacted.

### 2.3 SPECIAL MEETING.

A special meeting of the stockholders may be called at any time by the Board, chairperson of the Board, chief executive officer or president (in the absence of a chief executive officer), but such special meetings may not be called by any other person or persons.

No business may be transacted at such special meeting other than the business specified in such notice to stockholders. Nothing contained in this paragraph of this Section 2.3 shall be construed as limiting, fixing, or affecting the time when a meeting of stockholders called by action of the Board may be held.

### 2.4 ADVANCE NOTICE PROCEDURES FOR BUSINESS BROUGHT BEFORE A MEETING.

(i) At an annual meeting of the stockholders, only such business shall be conducted as shall have been properly brought before the meeting. To be properly brought before an annual meeting, business must be (a) brought before the meeting by the Corporation and specified in the notice of meeting given by or at the direction of the Board, (b) brought before the meeting by or at the direction of the Board, or (c) otherwise properly brought before the meeting by a stockholder who (A) was a stockholder of record of the Corporation (and, with respect to any beneficial owner, if different, on whose behalf such business is proposed, only if such beneficial owner was the beneficial owner of shares of the Corporation) both at the time of giving the notice provided for in this Section 2.4 and at the time of the meeting, (B) is entitled to vote at the meeting, and (C) has complied with all of the notice procedures set forth in this Section 2.4 as to such business. The foregoing clause (c) shall be the exclusive means for a stockholder to propose business to be brought before an annual meeting of the stockholders. Stockholders shall not be permitted to propose business to be brought before a special meeting of the stockholders, and the only matters that may be brought before a special meeting are the matters specified in the notice of meeting given by or at the direction of the person calling the meeting pursuant to Article II, Section 2.3 of these Bylaws. Stockholders seeking to nominate persons for election to the Board must comply with the notice procedures set forth in Article II, Section 2.5 of these Bylaws, and this Section 2.4 shall not be applicable to nominations except as expressly provided in Article II, Section 2.5 of these Bylaws.

(ii) Without qualification, for business to be properly brought before an annual meeting by a stockholder, the stockholder must (a) provide Timely Notice (as defined below) thereof in writing and in proper form to the Secretary of the Corporation and (b) provide any updates or supplements to such notice at the times and in the forms required by this Section 2.4. To be timely, a stockholder's notice must be delivered to or mailed and received at the principal executive offices of the Corporation not less than ninety (90) days nor more than one hundred twenty (120) days prior to the first anniversary of the preceding year's annual meeting; *provided, however*, that in the event that the date of the annual meeting is more than thirty (30) days before or more than sixty (60) days after such anniversary date, notice by the stockholder to be timely must be so delivered, or mailed and received, not earlier than the one hundred twentieth (120) day prior to such annual meeting and not later than the ninetieth (90th) day prior to such annual meeting or, if later, the tenth (10th) day following the day on which public disclosure of the date of such annual meeting was first made (such notice within such time periods, "Timely Notice"). In no event shall any adjournment or postponement of an annual meeting or the announcement thereof commence a new time period for the giving of Timely Notice as described above.

### 2.5 ADVANCE NOTICE PROCEDURES FOR NOMINATIONS OF DIRECTORS.

(i) Nominations of any person for election to the Board at an annual meeting or at a special meeting (but only if the election of directors is a matter specified in the notice of meeting given by or at the direction of the person calling such special meeting) may be made at such meeting only (a) by or at the direction of the Board, including by any committee or persons appointed by the Board, or (b) by a stockholder who (A) was a stockholder of record of the Corporation (and, with respect to any beneficial owner, if different, on whose behalf such nomination is proposed to be made, only if such beneficial owner was the beneficial owner of shares of the Corporation) both at the time of giving the notice provided for in this Section 2.5 and at the time of the meeting, (B) is entitled to vote at the meeting and (C) has complied with this Section 2.5 as to such nomination. The foregoing clause (b) shall be the exclusive means for a stockholder to make any nomination of a person or persons for election to the Board to be considered by the stockholders at an annual meeting or special meeting.

(ii) Without qualification, for a stockholder to make any nomination of a person or persons for election to the Board at an annual meeting, the stockholder must (a) provide Timely Notice (as defined in Section 2.4(ii) of these bylaws) thereof in writing and in proper form to the Secretary of the Corporation and (b) provide any updates or supplements to such notice at the times and in the forms required by this Section 2.5.

### 2.6 NOTICE OF STOCKHOLDERS' MEETINGS.

Unless otherwise provided by law, the Certificate of Incorporation or these bylaws, the notice of any meeting of stockholders shall be sent or otherwise given in accordance with either Section 2.7 or Section 8.1 of these bylaws not less than ten (10) nor more than sixty (60) days before the date of the meeting to each stockholder entitled to vote at such meeting. The notice shall specify the place, if any, date and hour of the meeting, the means of remote communication, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called.

### 2.7 MANNER OF GIVING NOTICE; AFFIDAVIT OF NOTICE.

Notice of any meeting of stockholders shall be deemed given:

(i) if mailed, when deposited in the United States mail, postage prepaid, directed to the stockholder at his or her address as it appears on the Corporation's records; or

(ii) if electronically transmitted as provided in Section 8.1 of these bylaws.

An affidavit of the secretary or an assistant secretary of the Corporation or of the transfer agent or any other agent of the Corporation that the notice has been given by mail or by a form of electronic transmission, as applicable, shall, in the absence of fraud, be prima facie evidence of the facts stated therein.

### 2.8 QUORUM.

Unless otherwise provided by law, the Certificate of Incorporation or these bylaws, the holders of a majority in voting power of the stock issued and outstanding and entitled to vote, present in person or represented by proxy, shall constitute a quorum for the transaction of business at all meetings of the stockholders. If, however, such quorum is not present or represented at any meeting of the stockholders, then either (i) the chairperson of the meeting or (ii) a majority in voting power of the stockholders entitled to vote at the meeting, present in person or represented by proxy, shall have power to adjourn the meeting from time to time in the manner provided in Section 2.9 of these bylaws until a quorum is present or represented. At such adjourned meeting at which a quorum is present or represented, any business may be transacted that might have been transacted at the meeting as originally noticed.

### 2.9 ADJOURNED MEETING; NOTICE.

When a meeting is adjourned to another time or place, unless these bylaws otherwise require, notice need not be given of the adjourned meeting if the time, place, if any, thereof, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken. At the adjourned meeting, the Corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjourned

meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

### 2.10 CONDUCT OF BUSINESS.

The chairperson of any meeting of stockholders shall determine the order of business and the procedure at the meeting, including such regulation of the manner of voting and the conduct of business.

### 2.11 VOTING.

The stockholders entitled to vote at any meeting of stockholders shall be determined in accordance with the provisions of Section 2.13 of these bylaws, subject to Section 217 (relating to voting rights of fiduciaries, pledgors and joint owners of stock) and Section 218 (relating to voting trusts and other voting agreements) of the DGCL.

Except as may be otherwise provided in the Certificate of Incorporation or these bylaws, each stockholder shall be entitled to one (1) vote for each share of capital stock held by such stockholder.

At all meetings of stockholders for the election of directors at which a quorum is present a plurality of the votes cast shall be sufficient to elect a director. All other elections and questions presented to the stockholders at a meeting at which a quorum is present shall, unless otherwise provided by the Certificate of Incorporation, these bylaws, the rules or regulations of any stock exchange applicable to the Corporation, or applicable law or pursuant to any regulation applicable to the Corporation or its securities, be decided by the affirmative vote of the holders of a majority in voting power of the shares of stock of the Corporation which are present in person or by proxy and entitled to vote thereon.

### 2.12 STOCKHOLDER ACTION BY WRITTEN CONSENT WITHOUT A MEETING.

Any action of the stockholders required or permitted to be taken at any regular or special meeting thereof may be taken without any such meeting, notice of meeting or vote if a consent in writing setting forth the action thereby taken is signed by the holders of outstanding stock having not less than the number of votes that would have been necessary to authorize such action at a meeting at which all shares entitled to vote were present and voted. Prompt notice of the taking of any such action shall be given to any stockholders entitled to vote who have not so consented in writing.

### 2.13 RECORD DATE FOR STOCKHOLDER NOTICE; VOTING; GIVING CONSENTS.

In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board may fix, in advance, a record date, which record date shall not precede the date on which the resolution fixing the record date is adopted and which shall not be more than sixty (60) nor less than ten (10) days before the date of such meeting, nor more than sixty (60) days prior to any other such action.

If the Board does not so fix a record date:

(i) The record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on

which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.

(ii) The record date for determining stockholders for any other purpose shall be at the close of business on the day on which the Board adopts the resolution relating thereto.

A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; *provided, however*, that the Board may fix a new record date for the adjourned meeting.

### 2.14 PROXIES.

Each stockholder entitled to vote at a meeting of stockholders may authorize another person or persons to act for such stockholder by proxy authorized by an instrument in writing or by a transmission permitted by law filed in accordance with the procedure established for the meeting, but no such proxy shall be voted or acted upon after three (3) years from its date, unless the proxy provides for a longer period. The revocability of a proxy that states on its face that it is irrevocable shall be governed by the provisions of Section 212 of the DGCL. A proxy may be in the form of a telegram, cablegram or other means of electronic transmission which sets forth or is submitted with information from which it can be determined that the telegram, cablegram or other means of electronic transmission was authorized by the stockholder.

### 2.15 LIST OF STOCKHOLDERS ENTITLED TO VOTE.

The Officer (as such term is defined in Section 15) who has charge of the stock ledger of the Corporation shall prepare and make, at least ten (10) days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. The Corporation shall not be required to include electronic mail addresses or other electronic contact information on such list. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting for a period of at least ten (10) days prior to the meeting: (i) on a reasonably accessible electronic network, provided that the information required to gain access to such list is provided with the notice of the meeting, or (ii) during ordinary business hours, at the Corporation's principal executive office. In the event that the Corporation determines to make the list available on an electronic network, the Corporation may take reasonable steps to ensure that such information is available only to stockholders of the Corporation. If the meeting is to be held at a place, then the list shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present. If the meeting is to be held solely by means of remote communication, then the list shall also be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of the meeting. Such list shall presumptively determine the identity of the stockholders entitled to vote at the meeting and the number of shares held by each of them.

### 2.16 INSPECTORS OF ELECTION.

Before any meeting of stockholders, the Board shall appoint an inspector or inspectors of election to act at the meeting or its adjournment and make a written report thereof. The number of inspectors shall be either one (1) or three (3). If any person appointed as inspector fails to appear or fails or refuses to act, then the chairperson of the meeting may, and upon the request of any stockholder or a stockholder's proxy shall, appoint a person to fill that vacancy.

Such inspectors shall: (i) determine the number of shares outstanding and the voting power of each, the number of shares represented at the meeting, the existence of a quorum, and the authenticity, validity, and effect of proxies; (ii) receive votes or ballots; (iii) hear and determine all challenges and questions in any way arising in connection with the right to vote; (iv) count and tabulate all votes; (v) determine when the polls shall close; (vi) determine the result; and (vii) do any other acts that may be proper to conduct the election or vote with fairness to all stockholders.

The inspectors of election shall perform their duties impartially, in good faith, to the best of their ability and as expeditiously as is practical. If there are three (3) inspectors of election, the decision, act or certificate of a majority is effective in all respects as the decision, act or certificate of all. Any report or certificate made by the inspectors of election is prima facie evidence of the facts stated therein.

## ARTICLE III - DIRECTORS

### 3.1 POWERS

Subject to the provisions of the DGCL and any limitations in the Certificate of Incorporation or these bylaws relating to action required to be approved by the stockholders (or any class or series thereof) or by the outstanding shares, the business and affairs of the Corporation shall be managed and all corporate powers shall be exercised by or under the direction of the Board.

### 3.2 NUMBER OF DIRECTORS.

Subject to the provisions in the Certificate of Incorporation, the authorized number of directors shall be determined from time to time by resolution of the Board, provided the Board shall consist of at least three (3) members. No reduction of the authorized number of directors shall have the effect of removing any director before that director's term of office expires.

### 3.3 ELECTION, QUALIFICATION AND TERM OF OFFICE OF DIRECTORS.

Except as provided in Section 3.4 of these bylaws, each director, including a director elected to fill a vacancy, shall hold office until the expiration of the term for which elected and until such director's successor is elected and qualified or until such director's earlier death, resignation or removal. Directors need not be stockholders unless so required by the Certificate of Incorporation or these bylaws. The Certificate of Incorporation or these bylaws may prescribe other qualifications for directors.

### 3.4 RESIGNATION AND VACANCIES.

Any director may resign at any time upon notice given in writing or by electronic transmission to the Corporation. When one or more directors so resigns and the resignation is effective at a future date, a majority of the directors then in office, including those who have so resigned, shall have power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective, and each director so chosen shall hold office as provided in this section in the filling of other vacancies.

Unless otherwise provided in the Certificate of Incorporation or these bylaws, vacancies and newly created directorships resulting from any increase in the authorized number of directors elected by all of the stockholders having the right to vote as a single class may be filled by a majority of the directors then in office, although less than a quorum, or by a sole remaining director and each director so chosen shall hold office until the next annual meeting and until his

or her successor is duly elected and qualified. If the directors are divided into classes, a person so elected by the directors then in office to fill a vacancy or newly created directorship shall hold office until the next election of the class for which such director shall have been chosen and until his or her successor shall have been duly elected and qualified.

If at any time, by reason of death or resignation or other cause, the Corporation should have no directors in office, then any Officer or any stockholder or an executor, administrator, trustee or guardian of a stockholder, or other fiduciary entrusted with like responsibility for the person or estate of a stockholder, may call a special meeting of stockholders in accordance with the provisions of the Certificate of Incorporation or these bylaws, or may apply to the Court of Chancery for a decree summarily ordering an election as provided in Section 211 of the DGCL.

If, at the time of filling any vacancy or any newly created directorship, the directors then in office constitute less than a majority of the whole Board (as constituted immediately prior to any such increase), then the Court of Chancery may, upon application of any stockholder or stockholders holding at least ten percent (10%) of the total number of the shares at the time outstanding having the right to vote for such directors, summarily order an election to be held to fill any such vacancies or newly created directorships, or to replace the directors chosen by the directors then in office as aforesaid, which election shall be governed by the provisions of Section 211 of the DGCL as far as applicable.

### 3.5 PLACE OF MEETINGS; MEETINGS BY TELEPHONE.

The Board may hold meetings, both regular and special, either within or outside the State of Delaware.

Unless otherwise restricted by the Certificate of Incorporation or these bylaws, members of the Board, or any committee designated by the Board, may participate in a meeting of the Board, or any committee, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting pursuant to this bylaw shall constitute presence in person at the meeting.

### 3.6 REGULAR MEETINGS.

Regular meetings of the Board may be held without notice at such time and at such place as shall from time to time be determined by the Board.

### 3.7 SPECIAL MEETINGS; NOTICE.

Special meetings of the Board for any purpose or purposes may be called at any time by the chairperson of the Board, the chief executive officer, the president, the secretary or a majority of the authorized number of directors.

Notice of the time and place of special meetings shall be: (i) delivered personally by hand, by courier or by telephone; (ii) sent by United States first-class mail, postage prepaid; (iii) sent by facsimile; or

(iv) sent by electronic mail, directed to each director at that director's address, telephone number, facsimile number or electronic mail address, as the case may be, as shown on the Corporation's records.

If the notice is (i) delivered personally by hand, by courier or by telephone, (ii) sent by facsimile or (iii) sent by electronic mail, it shall be delivered or sent at least twenty-four (24) hours before the time of the holding of the meeting. If the notice is sent by United States

mail, it shall be deposited in the United States mail at least four (4) days before the time of the holding of the meeting. Any oral notice may be communicated to the director. The notice need not specify the place of the meeting (if the meeting is to be held at the Corporation's principal executive office) nor the purpose of the meeting.

### 3.8 QUORUM.

At all meetings of the Board, a majority of the authorized number of directors shall constitute a quorum for the transaction of business. The vote of a majority of the directors present at any meeting at which a quorum is present shall be the act of the Board, except as may be otherwise specifically provided by statute, the Certificate of Incorporation or these bylaws. If a quorum is not present at any meeting of the Board, then the directors present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum is present.

A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for that meeting.

### 3.9 BOARD ACTION BY WRITTEN CONSENT WITHOUT A MEETING.

Unless otherwise restricted by the Certificate of Incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board, or of any committee thereof, may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

### 3.10 FEES AND COMPENSATION OF DIRECTORS.

Unless otherwise restricted by the Certificate of Incorporation or these bylaws, the Board shall have the authority to fix the compensation of directors.

### 3.11 REMOVAL OF DIRECTORS.

Except as otherwise provided by the DGCL, the Board of Directors or any individual director may be removed from office at any time with or without cause by the affirmative vote of the holders of a majority of the voting power of all the then outstanding shares of voting stock of the Corporation entitled to vote at an election of directors.

No reduction of the authorized number of directors shall have the effect of removing any director prior to the expiration of such director's term of office.

## ARTICLE IV - COMMITTEES

### 4.1 COMMITTEES OF DIRECTORS.

The Board may designate one (1) or more committees, each committee to consist of one (1) or more of the directors of the Corporation. The Board may designate one (1) or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.

4.2 COMMITTEE MINUTES.

Each committee shall keep regular minutes of its meetings and report the same to the Board when required.

## ARTICLE V - OFFICERS

5.1 OFFICERS.

The officers of the Corporation shall be a president and a secretary. The Corporation may also have, at the discretion of the Board, a chairperson of the Board, a vice chairperson of the Board, a chief executive officer, a chief financial officer or treasurer, one (1) or more vice presidents, one (1) or more assistant vice presidents, one (1) or more assistant treasurers, one (1) or more assistant secretaries, and any such other officers as may be appointed in accordance with the provisions of these bylaws. Any number of offices may be held by the same person.

5.2 APPOINTMENT OF OFFICERS.

The officers of this Corporation (each an "Officer" and together the "Officers") will be those Officers appointed from time to time by the Board or by any other Officer empowered to do so. The Board shall have sole power and authority to appoint executive Officers. As used herein, the term "executive Officer" shall mean the President, any Officer in charge of a principal business unit, division, or function, or any other Officer who performs a policy-making function.

5.3 SUBORDINATE OFFICERS.

The Board may appoint, or empower the chief executive officer or, in the absence of a chief executive officer, the president, to appoint, such other Officers and agents as the business of the Corporation may require. Each of such Officers and agents shall hold office for such period, have such authority, and perform such duties as are provided in these bylaws or as the Board may from time to time determine.

5.4 REMOVAL AND RESIGNATION OF OFFICERS.

Subject to the rights, if any, of an Officer under any contract of employment, any Officer may be removed, either with or without cause, by an affirmative vote of the majority of the Board at any regular or special meeting of the Board or, except in the case of an Officer chosen by the Board, by any Officer upon whom such power of removal may be conferred by the Board.

Any Officer may resign at any time by giving written notice to the Corporation. Any resignation shall take effect at the date of the receipt of that notice or at any later time specified in that notice. Unless otherwise specified in the notice of resignation, the acceptance of the resignation shall not be necessary to make it effective. Any resignation is without prejudice to the rights, if any, of the Corporation under any contract to which the Officer is a party.

5.5 VACANCIES IN OFFICES.

Any vacancy occurring in any office of the Corporation shall be filled by the Board or as provided in Section 5.2.

5.6 AUTHORITY AND DUTIES OF OFFICERS.

All Officers of the Corporation shall respectively have such authority and perform such duties in the management of the business of the Corporation as may be designated from time to time by the Board or the stockholders and, to the extent not so provided, as generally pertain to their respective offices, subject to the control of the Board.

## ARTICLE VI - RECORDS AND REPORTS

### 6.1 MAINTENANCE AND INSPECTION OF RECORDS.

The Corporation shall, either at its principal executive office or at such place or places as designated by the Board, keep a record of its stockholders listing their names and addresses and the number and class of shares held by each stockholder, a copy of these bylaws as amended to date, accounting books and other records.

Any stockholder of record, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose the Corporation's stock ledger, a list of its stockholders, and its other books and records and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder. In every instance where an attorney or other agent is the person who seeks the right to inspection, the demand under oath shall be accompanied by a power of attorney or such other writing that authorizes the attorney or other agent so to act on behalf of the stockholder. The demand under oath shall be directed to the Corporation at its registered office in Delaware or at its principal executive office.

### 6.2 INSPECTION BY DIRECTORS.

Any director shall have the right to examine the Corporation's stock ledger, a list of its stockholders, and its other books and records for a purpose reasonably related to his or her position as a director. The Court of Chancery is hereby vested with the exclusive jurisdiction to determine whether a director is entitled to the inspection sought. The Court may summarily order the Corporation to permit the director to inspect any and all books and records, the stock ledger, and the stock list and to make copies or extracts therefrom. The Court may, in its discretion, prescribe any limitations or conditions with reference to the inspection, or award such other and further relief as the Court may deem just and proper.

## ARTICLE VII - GENERAL MATTERS

### 7.1 EXECUTION OF CORPORATE CONTRACTS AND INSTRUMENTS.

The Board, except as otherwise provided in these bylaws, may authorize any Officer or Officers, or agent or agents, to enter into any contract or execute any instrument in the name of and on behalf of the Corporation; such authority may be general or confined to specific instances. Unless so authorized or ratified by the Board or within the agency power of an Officer, no Officer, agent or employee shall have any power or authority to bind the Corporation by any contract or engagement or to pledge its credit or to render it liable for any purpose or for any amount.

### 7.2 STOCK CERTIFICATES.

The shares of the Corporation shall be represented by certificates, provided that the Board may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be uncertificated shares. Any such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the Corporation. Notwithstanding the adoption of such a resolution by the Board, every holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of the Corporation by the chairperson or vice-chairperson of the Board, or the president or vice-president, and by the treasurer or an assistant treasurer, or the secretary or an assistant secretary of the Corporation representing the number of shares registered in certificate form. Any or all of the signatures on the certificate may be a facsimile. In case any Officer, transfer agent or registrar who has signed or whose facsimile

signature has been placed upon a certificate has ceased to be such Officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such Officer, transfer agent or registrar at the date of issue.

### 7.3 SPECIAL DESIGNATION ON CERTIFICATES.

If the Corporation is authorized to issue more than one class of stock or more than one series of any class, then the powers, the designations, the preferences and the relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights shall be set forth in full or summarized on the face or back of the certificate that the Corporation shall issue to represent such class or series of stock; *provided, however,* that, except as otherwise provided in Section 202 of the DGCL, in lieu of the foregoing requirements, there may be set forth on the face or back of the certificate that the Corporation shall issue to represent such class or series of stock a statement that the Corporation will furnish without charge to each stockholder who so requests the powers, the designations, the preferences and the relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights.

### 7.4 LOST CERTIFICATES.

Except as provided in this Section 7.4, no new certificates for shares shall be issued to replace a previously issued certificate unless the latter is surrendered to the Corporation and cancelled at the same time. The Corporation may issue a new certificate of stock or uncertificated shares in the place of any certificate theretofore issued by it, alleged to have been lost, stolen or destroyed, and the Corporation may require the owner of the lost, stolen or destroyed certificate, or such owner's legal representative, to give the Corporation a bond sufficient to indemnify it against any claim that may be made against it on account of the alleged loss, theft or destruction of any such certificate or the issuance of such new certificate or uncertificated shares.

### 7.5 CONSTRUCTION; DEFINITIONS.

Unless the context requires otherwise, the general provisions, rules of construction and definitions in the DGCL shall govern the construction of these bylaws. Without limiting the generality of this provision, the singular number includes the plural, the plural number includes the singular, and the term "person" includes both a corporation and a natural person.

### 7.6 DIVIDENDS.

The Board, subject to any restrictions contained in either (i) the DGCL or (ii) the Certificate of Incorporation, may declare and pay dividends upon the shares of its capital stock. Dividends may be paid in cash, in property or in shares of the Corporation's capital stock.

The Board may set apart out of any of the funds of the Corporation available for dividends a reserve or reserves for any proper purpose and may abolish any such reserve. Such purposes shall include but not be limited to equalizing dividends, repairing or maintaining any property of the Corporation, and meeting contingencies.

### 7.7 FISCAL YEAR.

The fiscal year of the Corporation shall be fixed by resolution of the Board and may be changed by the Board.

### 7.8 SEAL.

56

The Corporation may adopt a corporate seal, which shall be adopted and which may be altered by the Board. The Corporation may use the corporate seal by causing it or a facsimile thereof to be impressed or affixed or in any other manner reproduced.

## 7.9 TRANSFER OF STOCK.

Shares of the Corporation shall be transferable in the manner prescribed by law and in these bylaws. Shares of stock of the Corporation shall be transferred on the books of the Corporation only by the holder of record thereof or by such holder's attorney duly authorized in writing, upon surrender to the Corporation of the certificate or certificates representing such shares endorsed by the appropriate person or persons (or by delivery of duly executed instructions with respect to uncertificated shares), with such evidence of the authenticity of such endorsement or execution, transfer, authorization and other matters as the Corporation may reasonably require, and accompanied by all necessary stock transfer stamps. No transfer of stock shall be valid as against the Corporation for any purpose until it shall have been entered in the stock records of the Corporation by an entry showing the names of the persons from and to whom it was transferred.

## 7.10 STOCK TRANSFER AGREEMENTS.

The Corporation shall have power to enter into and perform any agreement with any number of stockholders of any one or more classes of stock of the Corporation to restrict the transfer of shares of stock of the Corporation of any one or more classes owned by such stockholders in any manner not prohibited by the DGCL.

## 7.11 REGISTERED STOCKHOLDERS.

The Corporation:

(i) shall be entitled to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends and to vote as such owner;

(ii) shall be entitled to hold liable for calls and assessments the person registered on its books as the owner of shares; and

(iii) shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of another person, whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of Delaware.

## 7.12 WAIVER OF NOTICE.

Whenever notice is required to be given under any provision of the DGCL, the Certificate of Incorporation or these bylaws, a written waiver, signed by the person entitled to notice, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time of the event for which notice is to be given, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the stockholders need be specified in any written waiver of notice or any waiver by electronic transmission unless so required by the Certificate of Incorporation or these bylaws.

## ARTICLE VIII - NOTICE BY ELECTRONIC TRANSMISSION

### 8.1 NOTICE BY ELECTRONIC TRANSMISSION.

Without limiting the manner by which notice otherwise may be given effectively to stockholders pursuant to the DGCL, the Certificate of Incorporation or these bylaws, any notice to stockholders given by the Corporation under any provision of the DGCL, the Certificate of Incorporation or these bylaws shall be effective if given by a form of electronic transmission consented to by the stockholder to whom the notice is given. Any such consent shall be revocable by the stockholder by written notice to the Corporation. Any such consent shall be deemed revoked if:

(i) the Corporation is unable to deliver by electronic transmission two (2) consecutive notices given by the Corporation in accordance with such consent; and

(ii) such inability becomes known to the secretary or an assistant secretary of the Corporation or to the transfer agent, or other person responsible for the giving of notice.

However, the inadvertent failure to treat such inability as a revocation shall not invalidate any meeting or other action.

Any notice given pursuant to the preceding paragraph shall be deemed given:

(i) if by facsimile telecommunication, when directed to a number at which the stockholder has consented to receive notice;

(ii) if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice;

(iii) if by a posting on an electronic network together with separate notice to the stockholder of such specific posting, upon the later of (A) such posting and (B) the giving of such separate notice; and

(iv) if by any other form of electronic transmission, when directed to the stockholder.

An affidavit of the secretary or an assistant secretary or of the transfer agent or other agent of the Corporation that the notice has been given by a form of electronic transmission shall, in the absence of fraud, be prima facie evidence of the facts stated therein.

### 8.2 DEFINITION OF ELECTRONIC TRANSMISSION.

An "electronic transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

## ARTICLE IX - AMENDMENTS

### 9.1  BY THE BOARD OF DIRECTORS.

Subject to the provisions of the Certificate of Incorporation, these Bylaws may be altered, amended or repealed or new Bylaws may be adopted by the affirmative vote of a majority of the directors present at any regular or special meeting of the Board of Directors at which a quorum is present.

## 9.2  BY THE STOCKHOLDERS.

Subject to the provisions of the Certificate of Incorporation, these Bylaws may be altered, amended or repealed or new Bylaws may be adopted by the affirmative vote of the holders of at least a majority of the shares of the capital stock of the corporation issued and outstanding and entitled to vote at any regular meeting of stockholders, or at any special meeting of stockholders, provided notice of such alteration, amendment, repeal or adoption of new bylaws shall have been stated in the notice of such special meeting.

## CERTIFICATE OF SECRETARY


The undersigned, being the duly elected Secretary of The Walking Company, a Delaware corporation, hereby certifies that the Amended and Restated Bylaws to which this Certificate is attached were duly adopted by the Board of Directors of said Corporation effective April __, 2010.


_____  ____

Anthony Wall, Secretary

# EXHIBIT "5"

## AMENDED AND RESTATED

## ARTICLES OF INCORPORATION
## OF
## BIG DOG USA, INC.

Andrew D. Feshbach and Anthony J. Wall hereby certifies that:

1.      That    Andrew D. Feshbach is the President and Anthony J. Wall is the Executive Vice President, General Counsel and Secretary Big Dog USA, Inc., a California corporation (the "Corporation").

2.      The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of California on December 31, 1993 under the name "Big Dog International Holdings Ltd." ("BDIHL"). A Certificate of Amendment was filed with the Secretary of State of the State of California on January 5, 1995 changing the name of BDIHL to Dig Dog USA, Inc.

3.      The Corporation, The Walking Company, a Delaware corporation and The Walking Company Holdings, Inc., a Delaware corporation, filed a joint plan of reorganization pursuant to which, under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), a confirmation order of the United States Bankruptcy Court for the Central District of California, a court having jurisdiction of a proceeding under the Bankruptcy Code, was entered and that such order provides for the making and filing of this Amended and Restated Certificate of Incorporation.

4.      The Articles of Incorporation of the Corporation are hereby amended and restated to read in their entirety as follows:

### ARTICLE I

The name of the Corporation is Big Dog USA, Inc.

### ARTICLE II

The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California, other than the banking business, the trust company business, or the practice of a profession permitted to be incorporated by the California Corporations Code.

### ARTICLE III

The Corporation is authorized to issue only one class of shares, and the total number of shares that the Corporation is authorized to issue is ten thousand (10,000).

### ARTICLE IV

Section 1.        The liability of the directors of the Corporation for monetary damages shall be eliminated to the fullest extent permissible under California law.

Section 2.  Non-voting securities. Pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the Bankruptcy Code, the Corporation will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase capital stock of the Corporation); provided, however, that this provision (i) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (ii) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Corporation and (iii) in all events may be amended or eliminated in accordance with applicable law as from time to time in effect.

5.      The Amended and Restated Articles of Incorporation of the Corporation have been approved by the Board of Directors.

6.      The total number of shares outstanding and entitled to vote with respect to the Amended and Restated Articles of Incorporation of the Corporation were one hundred (100).  The sole shareholder approved the Amended and Restated Articles of Incorporation; hence, the number of shares voting in favor of the Amended and Restated Articles of Incorporation equaled or exceed the vote required.

        We further declare under penalty of perjury, under the laws of the State of California that the matters set forth in these Amended and Restated Articles of Incorporation are true and correct of our own knowledge.

Dated: April ___, 2010

                                        BIG DOG USA, INC.


                                        By:_____
                                            Andrew D. Feshbach, President


                                        By:_____
                                            Anthony J. Wall, Executive Vice
                                            President, General Counsel and
                                            Secretary

# EXHIBIT "6"

AMENDED AND RESTATED BYLAWS

OF

BIG DOG USA, INC.

ARTICLE I

CORPORATE OFFICES

### 1.1 PRINCIPAL OFFICE

The board of directors shall fix the location of the principal executive office of the corporation at any place within or outside the State of California. If the principal executive office is located outside such state and the corporation has one or more business offices in such state, then the board of directors shall fix and designate a principal business office in the State of California.

### 1.2 OTHER OFFICES

The board of directors may at any time establish branch or subordinate offices at any place or places where the corporation is qualified to do business.

ARTICLE II

MEETINGS OF SHAREHOLDERS

### 2.1 PLACE OF MEETINGS

Meetings of shareholders shall be held at any place within or outside the State of California designated by the board of directors. In the absence of any such designation, shareholders' meetings shall be held at the principal executive office of the corporation.

### 2.2 ANNUAL MEETING

The annual meeting of shareholders shall be held each year on a date and at a time designated by the board of directors. In the absence of such designation, the annual meeting of shareholders shall be held on the 1st day of December in each year at 10:00 a.m. However, if such day falls on a legal holiday, then the meeting shall be held at the same time and place on the next succeeding full business day. At the meeting, directors shall be elected, and any other proper business may be transacted.

### 2.3 SPECIAL MEETING

A special meeting of the shareholders may be called at any time by the board of directors, or by the chairman of the board, or by the president, or by one or more shareholders holding shares in the aggregate entitled to cast not less than ten percent (10%) of the votes at that meeting.

If a special meeting is called by any person or persons other than the board of directors or the president or the chairman of the board, then the request shall be in writing, specifying the time of such meeting and the general nature of the business proposed to be transacted, and shall be delivered personally or sent by registered mail or by telegraphic or other facsimile transmission to the chairman of the board, the president, any vice president or the secretary of the corporation. The officer receiving the request shall cause notice to be promptly given to the shareholders entitled to vote, in accordance with the provisions of Sections 2.4 and 2.5 of these bylaws, that a meeting will be held at the time requested by the person or persons calling the meeting, so long as that time is not less than thirty-five (35) nor more than sixty (60) days after the receipt of the request. If the notice is not given within twenty (20) days after receipt of the request, then the person or persons requesting the meeting may give the

notice. Nothing contained in this paragraph of this Section 2.3 shall be construed as limiting, fixing or affecting the time when a meeting of shareholders called by action of the board of directors may be held.

2.4    NOTICE OF SHAREHOLDERS' MEETINGS

All notices of meetings of shareholders shall be sent or otherwise given in accordance with Section 2.5 of these bylaws not less than ten (10) (or, if sent by third-class mail pursuant to Section 2.5 of these bylaws, thirty (30)) nor more than sixty (60) days before the date of the meeting. The notice shall specify the place, date, and hour of the meeting and (i) in the case of a special meeting, the general nature of the business to be transacted (no business other than that specified in the notice may be transacted) or (ii) in the case of the annual meeting, those matters which the board of directors, at the time of giving the notice, intends to present for action by the shareholders (but subject to the provisions of the next paragraph of this Section 2.4 any proper matter may be presented at the meeting for such action). The notice of any meeting at which directors are to be elected shall include the name of any nominee or nominees who, at the time of the notice, the board intends to present for election.

If action is proposed to be taken at any meeting for approval of (i) a contract or transaction in which a director has a direct or indirect financial interest, pursuant to Section 310 of the Corporations Code of California (the "Code"), (ii) an amendment of the articles of incorporation, pursuant to Section 902 of the Code, (iii) a reorganization of the corporation, pursuant to Section 1201 of the Code, (iv) a voluntary dissolution of the corporation, pursuant to Section 1900 of the Code, or (v) a distribution in dissolution other than in accordance with the rights of outstanding preferred shares, pursuant to Section 2007 of the Code, then the notice shall also state the general nature of that proposal.

2.5    MANNER OF GIVING NOTICE; AFFIDAVIT OF NOTICE

Written notice of any meeting of shareholders shall be given either (i) personally or (ii) by first-class mail or (iii) by third-class mail but only if the corporation has outstanding shares held of record by five hundred (500) or more persons (determined as provided in Section 605 of the Code) on the record date for the shareholders' meeting, or (iv) by telegraphic or other written communication. Notices not personally delivered shall be sent charges prepaid and shall be addressed to the shareholder at the address of that shareholder appearing on the books of the corporation or given by the shareholder to the corporation for the purpose of notice. If no such address appears on the corporation's books or is given, notice shall be deemed to have been given if sent to that shareholder by mail or telegraphic or other written communication to the corporation's principal executive office, or if published at least once in a newspaper of general circulation in the county where that office is located. Notice shall be deemed to have been given at the time when delivered personally or deposited in the mail or sent by telegram or other means of written communication.

If any notice addressed to a shareholder at the address of that shareholder appearing on the books of the corporation is returned to the corporation by the United States Postal Service marked to indicate that the United States Postal Service is unable to deliver the notice to the shareholder at that address, then all future notices or reports shall be deemed to have been duly given without further mailing if the same shall be available to the shareholder on written demand of the shareholder at the principal executive office of the corporation for a period of one (1) year from the date of the giving of the notice.

An affidavit of the mailing or other means of giving any notice of any shareholders' meeting, executed by the secretary, assistant secretary or any transfer agent of the corporation giving the notice, shall be prima facie evidence of the giving of such notice.

2.6    QUORUM

The presence in person or by proxy of the holders of a majority of the shares entitled to vote thereat constitutes a quorum for the transaction of business at all meetings of shareholders. The shareholders present at a duly called or held meeting at which a quorum is present may continue to do business until adjournment, notwithstanding the withdrawal of enough shareholders to leave less than a quorum, if any action taken (other than adjournment) is approved by at least a majority of the shares required to constitute a quorum.

66

## 2.7    ADJOURNED MEETING; NOTICE

Any shareholders' meeting, annual or special, whether or not a quorum is present, may be adjourned from time to time by the vote of the majority of the shares represented at that meeting, either in person or by proxy. In the absence of a quorum, no other business may be transacted at that meeting except as provided in Section 2.6 of these bylaws.

When any meeting of shareholders, either annual or special, is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place are announced at the meeting at which the adjournment is taken. However, if a new record date for the adjourned meeting is fixed or if the adjournment is for more than forty-five (45) days from the date set for the original meeting, then notice of the adjourned meeting shall be given. Notice of any such adjourned meeting shall be given to each shareholder of record entitled to vote at the adjourned meeting in accordance with the provisions of Sections 2.4 and 2.5 of these bylaws. At any adjourned meeting the corporation may transact any business which might have been transacted at the original meeting.

## 2.8    VOTING

The shareholders entitled to vote at any meeting of shareholders shall be determined in accordance with the provisions of Section 2.11 of these bylaws, subject to the provisions of Sections 702 through 704 of the Code (relating to voting shares held by a fiduciary, in the name of a corporation or in joint ownership).

The shareholders' vote may be by voice vote or by ballot; provided, however, that any election for directors must be by ballot if demanded by any shareholder at the meeting and before the voting has begun.

Except as provided in the last paragraph of this Section 2.8, or as may be otherwise provided in the articles of incorporation, each outstanding share, regardless of class, shall be entitled to one vote on each matter submitted to a vote of the shareholders. Any shareholder entitled to vote on any matter may vote part of the shares in favor of the proposal and refrain from voting the remaining shares or, except when the matter is the election of directors, may vote them against the proposal; but, if the shareholder fails to specify the number of shares which the shareholder is voting affirmatively, it will be conclusively presumed that the shareholder's approving vote is with respect to all shares which the shareholder is entitled to vote.

If a quorum is present, the affirmative vote of the majority of the shares represented and voting at a duly held meeting (which shares voting affirmatively also constitute at least a majority of the required quorum) shall be the act of the shareholders, unless the vote of a greater number or a vote by classes is required by the Code or by the articles of incorporation.

At a shareholders' meeting at which directors are to be elected, a shareholder shall be entitled to cumulate votes (i.e., cast for any candidate a number of votes greater than the number of votes which such shareholder normally is entitled to cast) if the candidates' names have been placed in nomination prior to commencement of the voting and the shareholder has given notice prior to commencement of the voting of the shareholder's intention to cumulate votes. If any shareholder has given such a notice, then every shareholder entitled to vote may cumulate votes for candidates in nomination either (i) by giving one candidate a number of votes equal to the number of directors to be elected multiplied by the number of votes to which that shareholder's shares are normally entitled or (ii) by distributing the shareholder's votes on the same principle among any or all of the candidates, as the shareholder thinks fit. The candidates receiving the highest number of affirmative votes, up to the number of directors to be elected, shall be elected; votes against any candidate and votes withheld shall have no legal effect.

## 2.9    VALIDATION OF MEETINGS; WAIVER OF NOTICE; CONSENT

The transactions of any meeting of shareholders, either annual or special, however called and noticed, and wherever held, shall be as valid as though they had been taken at a meeting duly held after regular call and notice, if a quorum be present either in person or by proxy, and if, either before or after the meeting, each person entitled to vote, who was not present in person or by proxy, signs a written waiver of notice or a consent to the holding of the meeting or an approval of the minutes thereof. The waiver of notice or consent or approval need not specify either

the business to be transacted or the purpose of any annual or special meeting of shareholders, except that if action is taken or proposed to be taken for approval of any of those matters specified in the second paragraph of Section 2.4 of these bylaws, the waiver of notice or consent or approval shall state the general nature of the proposal. All such waivers, consents, and approvals shall be filed with the corporate records or made a part of the minutes of the meeting.

Attendance by a person at a meeting shall also constitute a waiver of notice of and presence at that meeting, except when the person objects at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened. Attendance at a meeting is not a waiver of any right to object to the consideration of matters required by the Code to be included in the notice of the meeting but not so included, if that objection is expressly made at the meeting.

### 2.10    SHAREHOLDER ACTION BY WRITTEN CONSENT WITHOUT A MEETING

Any action which may be taken at any annual or special meeting of shareholders may be taken without a meeting and without prior notice, if a consent in writing, setting forth the action so taken, is signed by the holders of outstanding shares having not less than the minimum number of votes that would be necessary to authorize or take that action at a meeting at which all shares entitled to vote on that action were present and voted.

In the case of election of directors, such a consent shall be effective only if signed by the holders of all outstanding shares entitled to vote for the election of directors. However, a director may be elected at any time to fill any vacancy on the board of directors, provided that it was not created by removal of a director and that it has not been filled by the directors, by the written consent of the holders of a majority of the outstanding shares entitled to vote for the election of directors.

All such consents shall be maintained in the corporate records. Any shareholder giving a written consent, or the shareholder's proxy holders, or a transferee of the shares, or a personal representative of the shareholder, or their respective proxy holders, may revoke the consent by a writing received by the secretary of the corporation before written consents of the number of shares required to authorize the proposed action have been filed with the secretary.

If the consents of all shareholders entitled to vote have not been solicited in writing and if the unanimous written consent of all such shareholders has not been received, then the secretary shall give prompt notice of the corporate action approved by the shareholders without a meeting. Such notice shall be given to those shareholders entitled to vote who have not consented in writing and shall be given in the manner specified in Section 2.5 of these bylaws. In the case of approval of (i) a contract or transaction in which a director has a direct or indirect financial interest, pursuant to Section 310 of the Code, (ii) indemnification of a corporate "agent," pursuant to Section 317 of the Code, (iii) a reorganization of the corporation, pursuant to Section 1201 of the Code, and (iv) a distribution in dissolution other than in accordance with the rights of outstanding preferred shares, pursuant to Section 2007 of the Code, the notice shall be given at least ten (10) days before the consummation of any action authorized by that approval.

### 2.11    RECORD DATE FOR SHAREHOLDER NOTICE; VOTING; GIVING CONSENTS

For purposes of determining the shareholders entitled to notice of any meeting or to vote thereat or entitled to give consent to corporate action without a meeting, the board of directors may fix, in advance, a record date, which shall not be more than sixty (60) days nor less than ten (10) days before the date of any such meeting nor more than sixty (60) days before any such action without a meeting, and in such event only shareholders of record on the date so fixed are entitled to notice and to vote or to give consents, as the case may be, notwithstanding any transfer of any shares on the books of the corporation after the record date, except as otherwise provided in the Code.

If the board of directors does not so fix a record date:

(a)   the record date for determining shareholders entitled to notice of or to vote at a meeting of shareholders shall be at the close of business on the business day next preceding the day on which notice is given or, if notice is waived, at the close of business on the business day next preceding the day on which the meeting is held; and

(b)   the record date for determining shareholders entitled to give consent to corporate action in writing without a meeting, (i) when no prior action by the board has been taken, shall be the day on which the first written consent is given, or (ii) when prior action by the board has been taken, shall be at the close of business on the day on which the board adopts the resolution relating to that action, or the sixtieth (60th) day before the date of such other action, whichever is later.

The record date for any other purpose shall be as provided in Article VIII of these bylaws.

## 2.12   PROXIES

Every person entitled to vote for directors, or on any other matter, shall have the right to do so either in person or by one or more agents authorized by a written proxy signed by the person and filed with the secretary of the corporation. A proxy shall be deemed signed if the shareholder's name is placed on the proxy (whether by manual signature, typewriting, telegraphic transmission or otherwise) by the shareholder or the shareholder's attorney-in-fact. A validly executed proxy which does not state that it is irrevocable shall continue in full force and effect unless (i) the person who executed the proxy revokes it prior to the time of voting by delivering a writing to the corporation stating that the proxy is revoked or by executing a subsequent proxy and presenting it to the meeting or by voting in person at the meeting, or (ii) written notice of the death or incapacity of the maker of that proxy is received by the corporation before the vote pursuant to that proxy is counted; provided, however, that no proxy shall be valid after the expiration of eleven (11) months from the date of the proxy, unless otherwise provided in the proxy. The dates contained on the forms of proxy presumptively determine the order of execution, regardless of the postmark dates on the envelopes in which they are mailed. The revocability of a proxy that states on its face that it is irrevocable shall be governed by the provisions of Sections 705(e) and 705(f) of the Code.

## 2.13   INSPECTORS OF ELECTION

Before any meeting of shareholders, the board of directors may appoint an inspector or inspectors of election to act at the meeting or its adjournment. If no inspector of election is so appointed, then the chairman of the meeting may, and on the request of any shareholder or a shareholder's proxy shall, appoint an inspector or inspectors of election to act at the meeting. The number of inspectors shall be either one (1) or three (3). If inspectors are appointed at a meeting pursuant to the request of one (1) or more shareholders or proxies, then the holders of a majority of shares or their proxies present at the meeting shall determine whether one (1) or three (3) inspectors are to be appointed. If any person appointed as inspector fails to appear or fails or refuses to act, then the chairman of the meeting may, and upon the request of any shareholder or a shareholder's proxy shall, appoint a person to fill that vacancy.

Such inspectors shall:

(a)   determine the number of shares outstanding and the voting power of each, the number of shares represented at the meeting, the existence of a quorum, and the authenticity, validity, and effect of proxies;

(b)   receive votes, ballots or consents;

(c)   hear and determine all challenges and questions in any way arising in connection with the right to vote;

(d)   count and tabulate all votes or consents;

(e)   determine when the polls shall close;

(f)   determine the result; and

(g)    do any other acts that may be proper to conduct the election or vote with fairness to all shareholders.

ARTICLE III

DIRECTORS

### 3.1    POWERS

Subject to the provisions of the Code and any limitations in the articles of incorporation and these bylaws relating to action required to be approved by the shareholders or by the outstanding shares, the business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of the board of directors.

### 3.2    NUMBER OF DIRECTORS

The authorized number of directors of the corporation shall be not less than three (3) nor more than five (5), provided however that, (i) so long as the corporation has only one (1) shareholder, the number may be one (1), (ii) so long as the corporation has only two (2) shareholders, the number my be two (2), and (iii) at any time after the corporation has more than two shareholders, the number of directors shall be three (3) unless otherwise fixed by the board within the limits specified above.

The indefinite number of directors may be changed, or a definite number may be fixed without provision for an indefinite number, by a duly adopted amendment to the articles of incorporation or by an amendment to this bylaw duly adopted by the vote or written consent of holders of a majority of the outstanding shares entitled to vote; provided, however, that an amendment reducing the fixed number or the minimum number of directors to a number less than three (3) cannot be adopted if the votes cast against its adoption at a meeting, or the shares not consenting in the case of an action by written consent, are equal to more than sixteen and two-thirds (16-2/3%) of the outstanding shares entitled to vote thereon.  No amendment may change the stated maximum number of authorized directors to a number greater than two (2) times the stated minimum number of directors minus one (1).

No reduction of the authorized number of directors shall have the effect of removing any director before that director's term of office expires.

### 3.3    ELECTION AND TERM OF OFFICE OF DIRECTORS

Directors shall be elected at each annual meeting of shareholders to hold office until the next annual meeting. Each director, including a director elected to fill a vacancy, shall hold office until the expiration of the term for which elected and until a successor has been elected and qualified.

### 3.4    RESIGNATION AND VACANCIES

Any director may resign effective on giving written notice to the chairman of the board, the president, the secretary or the board of directors, unless the notice specifies a later time for that resignation to become effective.  If the resignation of a director is effective at a future time, the board of directors may elect a successor to take office when the resignation becomes effective.

Vacancies in the board of directors may be filled by a majority of the remaining directors, even if less than a quorum, or by a sole remaining director; however, a vacancy created by the removal of a director by the vote or written consent of the shareholders or by court order may be filled only by the affirmative vote of a majority of the shares represented and voting at a duly held meeting at which a quorum is present (which shares voting affirmatively also constitute a majority of the required quorum), or by the unanimous written consent of all shares entitled to vote thereon.  Each director so elected shall hold office until the next annual meeting of the shareholders and until a successor has been elected and qualified.

A vacancy or vacancies in the board of directors shall be deemed to exist (i) in the event of the death, resignation or removal of any director, (ii) if the board of directors by resolution declares vacant the office of a director who has been declared of unsound mind by an order of court or convicted of a felony, (iii) if the authorized number of directors is increased, or (iv) if the shareholders fail, at any meeting of shareholders at which any director or directors are elected, to elect the number of directors to be elected at that meeting.

The shareholders may elect a director or directors at any time to fill any vacancy or vacancies not filled by the directors, but any such election other than to fill a vacancy created by removal, if by written consent, shall require the consent of the holders of a majority of the outstanding shares entitled to vote thereon.

## 3.5    PLACE OF MEETINGS; MEETINGS BY TELEPHONE

Regular meetings of the board of directors may be held at any place within or outside the State of California that has been designated from time to time by resolution of the board. In the absence of such a designation, regular meetings shall be held at the principal executive office of the corporation. Special meetings of the board may be held at any place within or outside the State of California that has been designated in the notice of the meeting or, if not stated in the notice or if there is no notice, at the principal executive office of the corporation.

Any meeting, regular or special, may be held by conference telephone or similar communication equipment, so long as all directors participating in the meeting can hear one another; and all such directors shall be deemed to be present in person at the meeting.

## 3.6    REGULAR MEETINGS

Regular meetings of the board of directors may be held without notice if the times of such meetings are fixed by the board of directors.

## 3.7    SPECIAL MEETINGS; NOTICE

Special meetings of the board of directors for any purpose or purposes may be called at any time by the chairman of the board, the president, any vice president, the secretary or any two directors.

Notice of the time and place of special meetings shall be sent by first-class mail or telegram, charges prepaid, or delivered personally or by telephone, including a voice messaging system or other system or technology designed to record and communicate messages, telegraph, facsimile, electronic mail, or other electronic means, to each director at that director's place of contact as it is shown on the records of the corporation. If the notice is mailed, it shall be deposited in the United States mail at least four (4) days before the time of the holding of the meeting. If the notice is delivered personally or by any authorized means other than mail, it shall be delivered at least forty-eight (48) hours before the time of the holding of the meeting. The notice need not specify the purpose or the place of the meeting, if the meeting is to be held at the principal executive office of the corporation.

## 3.8    QUORUM

A majority of the authorized number of directors shall constitute a quorum for the transaction of business, except to adjourn as provided in Section 3.10 of these bylaws. Every act or decision done or made by a majority of the directors present at a duly held meeting at which a quorum is present shall be regarded as the act of the board of directors, subject to the provisions of Section 310 of the Code (as to approval of contracts or transactions in which a director has a direct or indirect material financial interest), Section 311 of the Code (as to appointment of committees), Section 317(e) of the Code (as to indemnification of directors), the articles of incorporation, and other applicable law.

A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for that meeting.

### 3.9   WAIVER OF NOTICE

Notice of a meeting need not be given to any director (i) who signs a waiver of notice or a consent to holding the meeting or an approval of the minutes thereof, whether before or after the meeting, or (ii) who attends the meeting without protesting, prior thereto or at its commencement, the lack of notice to such directors. All such waivers, consents, and approvals shall be filed with the corporate records or made part of the minutes of the meeting. A waiver of notice need not specify the purpose of any regular or special meeting of the board of directors.

### 3.10   ADJOURNMENT

A majority of the directors present, whether or not constituting a quorum, may adjourn any meeting to another time and place.

### 3.11   NOTICE OF ADJOURNMENT

Notice of the time and place of holding an adjourned meeting need not be given unless the meeting is adjourned for more than twenty-four (24) hours. If the meeting is adjourned for more than twenty-four (24) hours, then notice of the time and place of the adjourned meeting shall be given before the adjourned meeting takes place, in the manner specified in Section 3.7 of these bylaws, to the directors who were not present at the time of the adjournment.

### 3.12   BOARD ACTION BY WRITTEN CONSENT WITHOUT A MEETING

Any action required or permitted to be taken by the board of directors may be taken without a meeting, provided that all members of the board individually or collectively consent in writing to that action. Such action by written consent shall have the same force and effect as a unanimous vote of the board of directors. Such written consent and any counterparts thereof shall be filed with the minutes of the proceedings of the board.

### 3.13   FEES AND COMPENSATION OF DIRECTORS

Directors and members of committees may receive such compensation, if any, for their services and such reimbursement of expenses as may be fixed or determined by resolution of the board of directors. This Section 3.13 shall not be construed to preclude any director from serving the corporation in any other capacity as an officer, agent, employee or otherwise and receiving compensation for those services.

### 3.14   APPROVAL OF LOANS TO OFFICERS

The corporation may, upon the approval of the board of directors alone, make loans of money or property to, or guarantee the obligations of, any officer of the corporation or its parent or subsidiary, whether or not a director, or adopt an employee benefit plan or plans authorizing such loans or guaranties provided that (i) the board of directors determines that such a loan or guaranty or plan may reasonably be expected to benefit the corporation, (ii) the corporation has outstanding shares held of record by 100 or more persons (determined as provided in Section 605 of the Code) on the date of approval by the board of directors, and (iii) the approval of the board of directors is by a vote sufficient without counting the vote of any interested director or directors.

## ARTICLE IV

## COMMITTEES

### 4.1   COMMITTEES OF DIRECTORS

The board of directors may, by resolution adopted by a majority of the authorized number of directors, designate one (1) or more committees, each consisting of two or more directors, to serve at the pleasure of the board. The board may designate one (1) or more directors as alternate members of any committee, who may replace any absent member at any meeting of the committee. The appointment of members or alternate members of a

committee requires the vote of a majority of the authorized number of directors. Any committee, to the extent provided in the resolution of the board, shall have all the authority of the board, except with respect to:

(a)    the approval of any action which, under the Code, also requires shareholders' approval or approval of the outstanding shares;

(b)    the filling of vacancies on the board of directors or in any committee;

(c)    the fixing of compensation of the directors for serving on the board or any committee;

(d)    the amendment or repeal of these bylaws or the adoption of new bylaws;

(e)    the amendment or repeal of any resolution of the board of directors which by its express terms is not so amendable or repealable;

(f)    a distribution to the shareholders of the corporation, except at a rate or in a periodic amount or within a price range determined by the board of directors; or

(g)    the appointment of any other committees of the board of directors or the members of such committees.

## 4.2    MEETINGS AND ACTION OF COMMITTEES

Meetings and actions of committees shall be governed by, and beld and taken in accordance with, the provisions of Article III of these bylaws, Section 3.5 (place of meetings), Section 3.6 (regular meetings), Section 3.7 (special meetings and notice), Section 3.8 (quorum), Section 3.9 (waiver of notice), Section 3.10 (adjournment), Section 3.11 (notice of adjournment), and Section 3.12 (action without meeting), with such changes in the context of those bylaws as are necessary to substitute the committee and its members for the board of directors and its members; provided, however, that the time of regular meetings of committees may be determined either by resolution of the board of directors or by resolution of the committee, that special meetings of committees may also be called by resolution of the board of directors, and that notice of special meetings of committees shall also be given to all alternate members, who shall have the right to attend all meetings of the committee. The board of directors may adopt rules for the government of any committee not inconsistent with the provisions of these bylaws.

## ARTICLE V

## OFFICERS

### 5.1    OFFICERS

The officers of the corporation shall be a president, a secretary, and a chief financial officer. The corporation may also have, at the discretion of the board of directors, a chairman of the board, one or more vice presidents, one or more assistant secretaries, one or more assistant treasurers, and such other officers as may be appointed in accordance with the provisions of Section 5.3 of these bylaws. Any number of offices may be held by the same person.

### 5.2    ELECTION OF OFFICERS

The officers of the corporation, except such officers as may be appointed in accordance with the provisions of Section 5.3 or Section 5.5 of these bylaws, shall be chosen by the board, subject to the rights, if any, of an officer under any contract of employment.

5.3    SUBORDINATE OFFICERS

The board of directors may appoint, or may empower the president to appoint, such other officers as the business of the corporation may require, each of whom shall hold office for such period, have such authority, and perform such duties as are provided in these bylaws or as the board of directors may from time to time determine.

5.4    REMOVAL AND RESIGNATION OF OFFICERS

Subject to the rights, if any, of an officer under any contract of employment, any officer may be removed, either with or without cause, by the board of directors at any regular or special meeting of the board or, except in case of an officer chosen by the board of directors, by any officer upon whom such power of removal may be conferred by the board of directors.

Any officer may resign at any time by giving written notice to the corporation. Any resignation shall take effect at the date of the receipt of that notice or at any later time specified in that notice; and, unless otherwise specified in that notice, the acceptance of the resignation shall not be necessary to make it effective. Any resignation is without prejudice to the rights, if any, of the corporation under any contract to which the officer is a party.

5.5    VACANCIES IN OFFICES

A vacancy in any office because of death, resignation, removal, disqualification or any other cause shall be filled in the manner prescribed in these bylaws for regular appointments to that office.

5.6    CHAIRMAN OF THE BOARD

The chairman of the board, if such an officer be elected, shall, if present, preside at meetings of the board of directors and exercise and perform such other powers and duties as may from time to time be assigned to him by the board of directors or as may be prescribed by these bylaws. If there is no president, then the chairman of the board shall also be the chief executive officer of the corporation and shall have the powers and duties prescribed in Section 5.7 of these bylaws.

5.7    PRESIDENT

Subject to such supervisory powers, if any, as may be given by the board of directors to the chairman of the board, if there be such an officer, the president shall be the chief executive officer of the corporation and shall, subject to the control of the board of directors, have general supervision, direction, and control of the business and the officers of the corporation. He shall preside at all meetings of the shareholders and, in the absence or nonexistence of a chairman of the board, at all meetings of the board of directors. He shall have the general powers and duties of management usually vested in the office of president of a corporation, and shall have such other powers and duties as may be prescribed by the board of directors or these bylaws.

5.8    VICE PRESIDENTS

In the absence or disability of the president, the vice presidents, if any, in order of their rank as fixed by the board of directors or, if not ranked, a vice president designated by the board of directors, shall perform all the duties of the president and when so acting shall have all the powers of, and be subject to all the restrictions upon, the president. The vice presidents shall have such other powers and perform such other duties as from time to time may be prescribed for them respectively by the board of directors, these bylaws, the president or the chairman of the board.

5.9    SECRETARY

The secretary shall keep or cause to be kept, at the principal executive office of the corporation or such other place as the board of directors may direct, a book of minutes of all meetings and actions of directors,

74

committees of directors and shareholders. The minutes shall show the time and place of each meeting, whether regular or special (and, if special, how authorized and the notice given), the names of those present at directors' meetings or committee meetings, the number of shares present or represented at shareholders' meetings, and the proceedings thereof.

The secretary shall keep, or cause to be kept, at the principal executive office of the corporation or at the office of the corporation's transfer agent or registrar, as determined by resolution of the board of directors, a share register, or a duplicate share register, showing the names of all shareholders and their addresses, the number and classes of shares held by each, the number and date of certificates evidencing such shares, and the number and date of cancellation of every certificate surrendered for cancellation.

The secretary shall give, or cause to be given, notice of all meetings of the shareholders and of the board of directors required to be given by law or by these bylaws. He shall keep the seal of the corporation, if one be adopted, in safe custody and shall have such other powers and perform such other duties as may be prescribed by the board of directors or by these bylaws.

### 5.10    CHIEF FINANCIAL OFFICER

The chief financial officer shall keep and maintain, or cause to be kept and maintained, adequate and correct books and records of accounts of the properties and business transactions of the corporation, including accounts of its assets, liabilities, receipts, disbursements, gains, losses, capital, retained earnings, and shares. The books of account shall at all reasonable times be open to inspection by any director.

The chief financial officer shall deposit all money and other valuables in the name and to the credit of the corporation with such depositaries as may be designated by the board of directors. He shall disburse the funds of the corporation as may be ordered by the board of directors, shall render to the president and directors, whenever they request it, an account of all of his transactions as chief financial officer and of the financial condition of the corporation, and shall have such other powers and perform such other duties as may be prescribed by the board of directors or these bylaws.

### ARTICLE VI

### INDEMNIFICATION OF CORPORATE AGENTS

The corporation shall indemnify each of its agents against expenses, judgments, fines, settlements or other amounts, actually and reasonably incurred by such person by reason of such person having been made or having been threatened to be made a party to a proceeding to the fullest extent permissible by the provisions of Section 317 of the California Corporations Code, as amended from time to time, and the corporation shall advance the expenses reasonably expected to be incurred by such agent, in defending any such proceeding upon receipt of the undertaking required by subdivision (f) of such Section. The terms "agent," "proceeding" and "expenses" appearing in this Article VI shall have the same meaning as those terms have in Section 317 of the California Corporations Code.

### ARTICLE VII

### RECORDS AND REPORTS

### 7.1    MAINTENANCE AND INSPECTION OF SHARE REGISTER

The corporation shall keep either at its principal executive office or at the office of its transfer agent or registrar (if either be appointed), as determined by resolution of the board of directors, a record of its shareholders listing the names and addresses of all shareholders and the number and class of shares held by each shareholder.

A shareholder or shareholders of the corporation who holds at least five percent (5%) in the aggregate of the outstanding voting shares of the corporation or who holds at least one percent (1%) of such voting shares and has filed a Schedule 14A with the Securities and Exchange Commission relating to the election of directors, may (i) inspect and copy the records of shareholders' names, addresses, and shareholdings during usual business hours on

five (5) days' prior written demand on the corporation, (ii) obtain from the transfer agent of the corporation, on written demand and on the tender of such transfer agent's usual charges for such list, a list of the names and addresses of the shareholders who are entitled to vote for the election of directors, and their shareholdings, as of the most recent record date for which that list has been compiled or as of a date specified by the shareholder after the date of demand. Such list shall be made available to any such shareholder by the transfer agent on or before the later of five (5) days after the demand is received or five (5) days after the date specified in the demand as the date as of which the list is to be compiled.

The record of shareholders shall also be open to inspection on the written demand of any shareholder or holder of a voting trust certificate, at any time during usual business hours, for a purpose reasonably related to the holder's interests as a shareholder or as the holder of a voting trust certificate.

Any inspection and copying under this Section 7.1 may be made in person or by an agent or attorney of the shareholder or holder of a voting trust certificate making the demand.

## 7.2    MAINTENANCE AND INSPECTION OF BYLAWS

The corporation shall keep at its principal executive office or, if its principal executive office is not in the State of California, at its principal business office in California the original or a copy of these bylaws as amended to date, which bylaws shall be open to inspection by the shareholders at all reasonable times during office hours. If the principal executive office of the corporation is outside the State of California and the corporation has no principal business office in such state, then the secretary shall, upon the written request of any shareholder, furnish to that shareholder a copy of these bylaws as amended to date.

## 7.3    MAINTENANCE AND INSPECTION OF OTHER CORPORATE RECORDS

The accounting books and records and the minutes of proceedings of the shareholders, of the board of directors, and of any committee or committees of the board of directors shall be kept at such place or places as are designated by the board of directors or, in absence of such designation, at the principal executive office of the corporation. The minutes shall be kept in written form, and the accounting books and records shall be kept either in written form or in any other form capable of being converted into written form.

The minutes and accounting books and records shall be open to inspection upon the written demand of any shareholder or holder of a voting trust certificate, at any reasonable time during usual business hours, for a purpose reasonably related to the holder's interests as a shareholder or as the holder of a voting trust certificate. The inspection may be made in person or by an agent or attorney and shall include the right to copy and make extracts. Such rights of inspection shall extend to the records of each subsidiary corporation of the corporation.

## 7.4    INSPECTION BY DIRECTORS

Every director shall have the absolute right at any reasonable time to inspect all books, records, and documents of every kind as well as the physical properties of the corporation and each of its subsidiary corporations. Such inspection by a director may be made in person or by an agent or attorney. The right of inspection includes the right to copy and make extracts of documents.

## 7.5    ANNUAL REPORT TO SHAREHOLDERS; WAIVER

The board of directors shall cause an annual report to be sent to the shareholders not later than one hundred twenty (120) days after the close of the fiscal year adopted by the corporation. Such report shall be sent at least fifteen (15) days (or, if sent by third-class mail, thirty-five (35) days) before the annual meeting of shareholders to be held during the next fiscal year and in the manner specified in Section 2.5 of these bylaws for giving notice to shareholders of the corporation.

The annual report shall contain (i) a balance sheet as of the end of the fiscal year, (ii) an income statement, (iii) a statement of changes in financial position for the fiscal year, and (iv) any report of independent accountants

or, if there is no such report, the certificate of an authorized officer of the corporation that the statements were prepared without audit from the books and records of the corporation.

The foregoing requirement of an annual report shall be waived so long as the shares of the corporation are held by fewer than one hundred (100) holders of record.

### 7.6    FINANCIAL STATEMENTS

If no annual report for the fiscal year has been sent to shareholders, then the corporation shall, upon the written request of any shareholder made more than one hundred twenty (120) days after the close of such fiscal year, deliver or mail to the person making the request, within thirty (30) days thereafter, a copy of a balance sheet as of the end of such fiscal year and an income statement and statement of changes in financial position for such fiscal year.

If a shareholder or shareholders holding at least five percent (5%) of the outstanding shares of any class of stock of the corporation makes a written request to the corporation for an income statement of the corporation for the three-month, six-month or nine-month period of the then current fiscal year ended more than thirty (30) days before the date of the request, and for a balance sheet of the corporation as of the end of that period, then the chief financial officer shall cause that statement to be prepared, if not already prepared, and shall deliver personally or mail that statement or statements to the person making the request within thirty (30) days after the receipt of the request. If the corporation has not sent to the shareholders its annual report for the last fiscal year, the statements referred to in the first paragraph of this Section 7.6 shall likewise be delivered or mailed to the shareholder or shareholders within thirty (30) days after the request.

The quarterly income statements and balance sheets referred to in this section shall be accompanied by the report, if any, of any independent accountants engaged by the corporation or by the certificate of an authorized officer of the corporation that the financial statements were prepared without audit from the books and records of the corporation.

### 7.7    REPRESENTATION OF SHARES OF OTHER CORPORATIONS

The chairman of the board, the president, any vice president, the chief financial officer, the secretary or assistant secretary of this corporation, or any other person authorized by the board of directors or the president or a vice president, is authorized to vote, represent, and exercise on behalf of this corporation all rights incident to any and all shares of any other corporation or corporations standing in the name of this corporation. The authority herein granted may be exercised either by such person directly or by any other person authorized to do so by proxy or power of attorney duly executed by such person having the authority.

## ARTICLE VIII

## GENERAL MATTERS

### 8.1    RECORD DATE FOR PURPOSES OTHER THAN NOTICE AND VOTING

For purposes of determining the shareholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the shareholders entitled to exercise any rights in respect of any other lawful action (other than action by shareholders by written consent without a meeting), the board of directors may fix, in advance, a record date, which shall not be more than sixty (60) days before any such action. In that case, only shareholders of record at the close of business on the date so fixed are entitled to receive the dividend, distribution or allotment of rights, or to exercise such rights, as the case may be, notwithstanding any transfer of any shares on the books of the corporation after the record date so fixed, except as otherwise provided in the Code.

If the board of directors does not so fix a record date, then the record date for determining shareholders for any such purpose shall be at the close of business on the day on which the board adopts the applicable resolution or the sixtieth (60th) day before the date of that action, whichever is later.

8.2    CHECKS; DRAFTS; EVIDENCES OF INDEBTEDNESS

From time to time, the board of directors shall determine by resolution which person or persons may sign or endorse all checks, drafts, other orders for payment of money, notes or other evidences of indebtedness that are issued in the name of or payable to the corporation, and only the persons so authorized shall sign or endorse those instruments.

8.3    CORPORATE CONTRACTS AND INSTRUMENTS; HOW EXECUTED

The board of directors, except as otherwise provided in these bylaws, may authorize any officer or officers, or agent or agents, to enter into any contract or execute any instrument in the name of and on behalf of the corporation; such authority may be general or confined to specific instances. Unless so authorized or ratified by the board of directors or within the agency power of an officer, no officer, agent or employee shall have any power or authority to bind the corporation by any contract or engagement or to pledge its credit or to render it liable for any purpose or for any amount.

8.4    CERTIFICATES FOR SHARES

A certificate or certificates for shares of the corporation shall be issued to each shareholder when any of such shares are fully paid. The board of directors may authorize the issuance of certificates for shares partly paid provided that these certificates shall state the total amount of the consideration to be paid for them and the amount actually paid. All certificates shall be signed in the name of the corporation by the chairman of the board or the vice chairman of the board or the president or a vice president and by the chief financial officer or an assistant treasurer or the secretary or an assistant secretary, certifying the number of shares and the class or series of shares owned by the shareholder. Any or all of the signatures on the certificate may be facsimile.

In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed on a certificate ceases to be that officer, transfer agent or registrar before that certificate is issued, it may be issued by the corporation with the same effect as if that person were an officer, transfer agent or registrar at the date of issue.

8.5    LOST CERTIFICATES

Except as provided in this Section 8.5, no new certificates for shares shall be issued to replace a previously issued certificate unless the latter is surrendered to the corporation and canceled at the same time. The board of directors may, in case any share certificate or certificate for any other security is lost, stolen or destroyed, authorize the issuance of replacement certificates on such terms and conditions as the board may require; the board may require indemnification of the corporation secured by a bond or other adequate security sufficient to protect the corporation against any claim that may be made against it, including any expense or liability, on account of the alleged loss, theft or destruction of the certificate or the issuance of the replacement certificate.

8.6    CONSTRUCTION; DEFINITIONS

Unless the context requires otherwise, the general provisions, rules of construction, and definitions in the Code shall govern the construction of these bylaws. Without limiting the generality of this provision, the singular number includes the plural, the plural number includes the singular, and the term "person" includes both a corporation and a natural person.

ARTICLE IX

AMENDMENTS

9.1    AMENDMENT BY SHAREHOLDERS

New bylaws may be adopted or these bylaws may be amended or repealed by the vote or written consent of holders of a majority of the outstanding shares entitled to vote; provided, however, that if the articles of

incorporation of the corporation set forth the number of authorized directors of the corporation, then the authorized number of directors may be changed only by an amendment of the articles of incorporation.

9.2    AMENDMENT BY DIRECTORS

Subject to the rights of the shareholders as provided in Section 9.1 of these bylaws, bylaws, other than a bylaw or an amendment of a bylaw changing the authorized number of directors (except to fix the authorized number of directors pursuant to a bylaw providing for a variable number of directors), may be adopted, amended or repealed by the board of directors.

CERTIFICATE OF SECRETARY

The undersigned, being the duly elected Secretary of Big Dog USA, Inc., a California corporation, hereby certifies that the Amended and Restated Bylaws to which this Certificate is attached were duly adopted by the Board of Directors of said Corporation effective April __, 2010.

Anthony Wall, Secretary

| | |
|---|---|
| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>                                                                            Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: Arent Fox, LLP, 555 West Fifth Street, 48th Floor, Los Angeles, CA  90013-1065

A true and correct copy of the foregoing document described as **NOTICE OF FILING OF SUPPLEMENTAL EXHIBIT 3 TO THE DEBTORS SECOND AMENDED JOINT CHAPTER 11 PLAN (DATED MARCH 9, 2010)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 9, 2010** checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **April 9, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 9, 2010** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 9, 2010 | Simona Filip | */s/ Simona Filip* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                    **F 9013-3.1**
LA/222070.1

| | |
|---|---|
| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>                                                                 Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

## I.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>


Craig H Averch on behalf of Creditor The Ad Hoc Committee of The Walking Company Holdings, Inc. Noteholders
caverch@whitecase.com

Lawrence Bass on behalf of Interested Party Gart Capital Partners
lbass@faegre.com

William C Beall on behalf of Interested Party Courtesy NEF
artyc@aol.com

Shirley Cho on behalf of Creditor Committee Official Committee Of Unsecured Creditors
scho@pszjlaw.com

Emily R Culler on behalf of Interested Party Genesco, Inc.
eculler@omm.com

Lawrence A Diamant on behalf of Interested Party Kahala Mall
lad@lnbrb.com, katie@lnbrb.com

Denise Diaz on behalf of Debtor The Walking Company Holdings, Inc.
Denise.Diaz@rmsna.com

Robert K Edmunds on behalf of Interested Party Huntington National Bank
robert.edmunds@bipc.com, timothy.palmer@bipc.com;jacqueline.forjais@bipc.com

Belkys Escobar on behalf of Creditor County of Loudoun
belkys.escobar@loudoun.gov

Brian D Fittipaldi on behalf of U.S. Trustee United States Trustee (ND)
brian.fittipaldi@usdoj.gov

Todd R Gabriel on behalf of Creditor Seaport Village Operating Company
tgabriel@sparberlaw.com

Philip A Gasteier on behalf of Interested Party Kahala Center Company
pag@lnbrb.com

Fredric Glass on behalf of Creditor Fair Harbor Capital, LLC
fglass@fairharborcapital.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                            **F 9013-3.1**

82

<table>
<tr><td>In re: THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s).</td><td>CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR]</td></tr>
</table>

Brian D Huben on behalf of Creditor Crossgates Mall Company NewCo, LLC
brian.huben@kattenlaw.com,
carole.levine@kattenlaw.com;donna.carolo@kattenlaw.com;laura.nefsky@kattenlaw.com

William W Huckins on behalf of Creditor Federal Realty Investment Trust
whuckins@allenmatkins.com, clynch@allenmatkins.com

Nathan E Jones on behalf of Creditor US Debt Recovery III, LP
info@usdrllc.com

Kevin M Newman on behalf of Creditor Crossgates Mall Company NewCo, LLC
knewman@menterlaw.com

Steven G Polard on behalf of Creditor Bellevue Square LLC
spolard@perkinscoie.com

David L Pollack on behalf of Creditor Galleria Mall Investors, LP
pollack@ballardspahr.com

Hamid R Rafatjoo on behalf of Creditor Committee Official Committee Of Unsecured Creditors
hrafatjoo@pszjlaw.com, hrafatjoo@pszjlaw.com

Diane W Sanders on behalf of Creditor San Marcos CISD
austin.bankruptcy@publicans.com

David B Shemano on behalf of Interested Party Courtesy NEF
dshemano@pwkllp.com

Howard Steinberg on behalf of Creditor Richard A. Kayne, Trustee, Richard & Suzanne Kayne Living Trust dated 1/14/99
hsteinberg@irell.com, awsmith@irell.com

Wayne R Terry on behalf of Creditor Request for Courtesy NEF
wterry@hemar-rousso.com

Ronald M Tucker on behalf of Creditor Simon Property Group, Inc.
rtucker@simon.com, psummers@simon.com;rwoodruff@simon.com;shclark@simon.com

United States Trustee (ND)
ustpregion16.nd.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                F 9013-3.1

83

| | |
|---|---|
| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>                                                                    Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

Kimberly S Winick on behalf of Creditor South Coast Plaza
kwinick@clarktrev.com

Rebecca J Winthrop on behalf of Interested Party Kravco Simon Company
winthropr@ballardspahr.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_January 2009_                                                                                   **F 9013-3.1**

84

| | |
|---|---|
| In re: THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation, <br><br>                                                    Debtor(s). | CHAPTER: 11 <br><br> CASE NUMBER: 9:09-bk-15138-RR <br> [Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

## II. SERVED BY U.S. MAIL :

Honorable Robin Riblet
United States Bankruptcy Court
1415 State Street, Suite 103
Santa Barbara, California 93101-2511

Dennis Strayhan
Office of the United States Trustee
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

Brian Fittipaldi
Office of the United States Trustee
128 E. Carrillo Street
Santa Barbara, CA 93101

Jennifer Cann – Vice President / Account Executive
Joseph Burt – Vice President
Wells Fargo Retail Finance
One Boston Place, 18th Floor
Boston, MA 02108

Ivan M. Gold
Allen Matkins LLP
Three Embarcadero Center, 12th Flr.
San Francisco, CA 94111

Anthony Wall
760 Arcady
Santa Barbara, CA 93108

Bear Stearns Securities Corp Custodian
Cotsen Family Foundation
c/o Kayne Anderson Capital
1800 Ave of the Stars Fl. 2
Los Angeles, CA 90067

David Wolf
1956 East Valley Rd.
Santa Barbara, CA 93108

Doug Nilsen
2225 St. James Drive
Santa Barbara, CA 93105

Gary Lieberthal, Trustee
Lieberthal Trust 3/23/99
991 Bel Air Road
Bel Air, CA 90077-3009

Kayne Anderson Capital
Income Partners (QP) LP
1800 Ave of the Stars Fl2
Los Angeles, CA 90067

Lee Cox
6726 Breakers Way
Ventura, CA 93001

Dumac LLC
RBC Dain Rauscher Cust
For C. Eric Warden Sep IRA
510 Marquette Ave
Minneapolis, MN 55402-1106

Richard & Suzanne Kayne
Living Trust dtd 1/14/09
1800 Ave of Stars 2nd Fl
Los Angeles, CA 90067

Robert P. Abate, Trustee
Robert P. Abate Rev Trust
Box 541
Elgin, IL 60123

Roberta Morris
1428 San Miguel Ave
Santa Barbara, CA 93108

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

F 9021-1.1

85

In re: THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190ᵗʰ Shelf Corporation,

Debtor(s).

CHAPTER: 11

CASE NUMBER: 9:09-bk-15138-RR

[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR]

The Kayne Foundation
c/o Kayne Anderson Capital
1800 Ave of the Stars Fl2
Los Angeles, CA 90067

Amfit, Inc.
5408 NE 88th Street, Suite D-406
Vancouver, WA 98665

Board of Equalization
PO Box 942879
Sacramento, CA 94279-0001

Kayne Anderson Capital Income partners (QP), LP
c/o Kayne Anderson Capital Advisors, LP
1800 Avenue of the Stars, Second Floor
Los Angeles, CA 90067

Bear Stearns Securities Corp. Custodian
Blackwell Partners, LLC
406 Blackwell Street, Suite 300
Durham, NC 27701

Robert P. Abate Rev Trust UA 8-29-95,
Robert P. Abate Trustee
P.O. Box 541N
Elgin, IL 60123

RBC Dain Raucher Cust. For Eric Warden SEP
IRA
510 Marquette Avenue
Minneapolis, MN 55402

Wells Fargo Retail Finance, LLC
2450 Colorado Avenue, Suite 3000W
Santa Monica, CA 90404

Wells Fargo Financial Leasing, Inc.
800 Walnut Street
Des Moines, IA 50309

CIT Technology Financing Services, Inc.
10201 Centurian Parkway North Suite 100
Jacksonville, FL 32256

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

Preit Services, LLC
Klehr Harrison Harvey Branzburg LLP
Primeshares
261 Fifth Avenue 22nd Flr
New York, NY 10016

Kevin M. Newman
Menter Rudin & Trivelpiece, PC
308 Maltbie Street, Suite 200
Syracuse, NY 13204

The Shops at Wailea, LP
Trustees of the Estate of Bernice Pauahi Bishop
Susan Tius
Rush Moore LLP
737 Bishop St., Ste. 2400
Honolulu, HI 96813

Bellevue Square LLC
City of Grapevine, Grapevine-Colleyville ISD
City of Hurst, Arlington Independent School
District
c/o Elizabeth Banda
Perdue, Brandon, Fielder, Collins & Mott LLP
P.O. Box 13430
Arlington, TX 76094-0430

UCC Lien Holder
Brightleaf Partners LP
c/o Brightleaf Capital LLC
324 Blackwell St Ste 520
Durham, NC  27701

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| | |
|---|---|
| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |

UCC Lien Holder/Bondholder
Dumac LLC
406 Blackwell St., Ste 300
Durham, NC  27001-3984

UCC Lien Holder
The Huntington National Bank
Attn Edward J. Kitchen VP
650 Smithfield St., Ste. 1000
Centre City Tower
Pittsburgh, PA  15222

UCC Lien Holder
Varilease Finance Inc.
6340 South 3000 East, Ste. 250
Salt Lake City, UT  84121

BDO Seidman, LLP
3200 Bristol Street, 5th Fl.
Costa Mesa, CA 92626

Todd R. Gabriel, Esq.
Sparber Annen Morris & Gabriel, APLC
701 "B" Street, Suite 1400
San Diego, CA  92101-8164

Kohner, Mann & Kailas, S.C.
Attn:  Samuel C. Wisotzkey
Washington Building
Barnabas Business Center
4650 N. Port Washington Rd.
Milwaukee, WI  53212-1059

Evan M. Jones, Esq.
Michael Reed
McCreary, Veselka, Bragg & Allen, P.C.
P. O. Box 1269
Round Rock, Texas  78680

Richard J. Annen, Esq.
Todd R. Gabriel, Esq.
ARBER ANNEN MORRIS & GABRIEL, APLC
701 "B" Street, Suite 1400
San Diego, CA 92101-8109

Josefina Fernandez McEvoy
FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, California 90067-1506

William C. Beall
Eric W. Burkhardt
BEALL & BURKHARDT
1114 State Street
La Arcada Building, Suite 200
Santa Barbara, California, 93101

U.S. Securities and Exchange Commission
Los Angeles Regional Office
Rosalind Tyson, Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90036-3648

U.S. Securities and Exchange Commission
SEC Headquarters
100 F Street, NE
Washington, DC 20549

Ada County Prosecuting Attorneys Office
Greg H Bower & Elizabeth M Taylor
Prosecuting Attorney & Deputy Prosecuting
Attorney Civil Division
200 W Front St Rm 3191
Boise, ID 83702

Fish Window Cleaning
Mr Neil Traverse
PO Box 597
Menomonee Falls, WI 53051

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

F 9021-1.1

87

| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation,<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 9:09-bk-15138-RR<br><br>[Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
|---|---|

Jackson DeMarco Tidus & Peckenpaugh
Charles M Clark
2030 Main St Ste 1200
Irvine, CA 92614

Elizabeth Weller
Linebarger Goggan Blair & Sampson, LLP
2323 Bryan Street, Suite 1600
Dallas, TX  75201

his form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9021-1.1**

88

| In re:  THE WALKING COMPANY, a Delaware corporation, d/b/a Alan's Shoes, Footworks, Overland Trading Co., Sole Outdoors, and Martini Shoes; f/k/a TWC Acquisition Corporation; BIG DOG USA, INC., a California corporation, d/b/a Big Dog Sportswear; f/k/a Fortune Dogs, Inc.; and THE WALKING COMPANY HOLDINGS, INC., a Delaware corporation, f/k/a Big Dog Holdings, Inc. and 190th Shelf Corporation, | CHAPTER: 11 |
|---|---|
| | CASE NUMBER: 9:09-bk-15138-RR |
| | [Jointly Administered with Case Nos. 9:09-bk-15137-RR and 9:09-bk-15139-RR] |
| Debtor(s). | |

## III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL:

### VIA EMAIL (Pursuant to Written Agreement)

Acevedo, Ana:                aacevedo@omm.com

Bass, Maureen T.:            maureen.bass@bipc.com

Bernstein, Alberto:          mdtcbkc@miamidade.gov

Boyle, Linda:                linda.boyle@twtelecom.com

Carolan, Christopher J.       ccarolan@brownrudnick.com

Clark, Charles:              cclark@jdtplaw.com

Colton, Neal:                ncolton@cozen.com

Conway, Andrew:              aconway@taubman.com

Cruz, Lisa:                  lcruz@thekeithcorp.com

Daniels, Thomas W.:          tdaniels@wilmorite.com

Felger, Mark                 mfelger@cozen.com

Freeland, Dirk and Jill:      freeland@cox.net

Kaplan, John S.:             jkaplan@perkinscoie.com

Kurtzman, Jeffrey:           jkurtzman@klehr.com

Lawrence, Stefan S.:         stefan.s.lawrence@wellsfargo.com

Levine, Steven B.:           slevine@brownrudnick.com

Maseles, Richard:            richard.maseles@dor.mo.gov

Mears, Patrick:              patrick.mears@btlaw.com

Muzzi, Christopher J.:        cmuzzi@hilaw.us

Nixon, Justin B.:            jnixon@dumac.duke.edu

Robert Schnell IRA:          roberts@fortunecasuals.com

Robert Schnell Trust:        roberts@fortunecasuals.com

Rubert, Teresa:             trubert@wilmorite.com

Schnell, Robert:             roberts@fortunecasuals.com

Shladovsky, David:           dshladovsky@kaynecapital.com

Suss, J.:                    jsuss@gte.net

Ward, Rebecca:               rebeccaward@forestcity.net

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                        **F 9013-3.1**
LA/222070.1